**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY, NEWARK DIVISION**

| | |
|---|---|
| The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Jersey City and the City of Jersey City Rent Leveling Board,<br><br>Defendants. | Case No. 2:23-cv-22291-MCA-JRA |

**PLAINTIFFS' STATEMENT OF**
**POSITION FOR CASE SCHEDULING CONFERENCE**

For purposes of the March 8, 2024 initial scheduling conference in this case, Plaintiffs ("Portside") respectfully submit this statement related to scheduling and the potential resolution of this case. Portside submits that the parties and the public have a shared interest in the prompt resolution of this case. Portside suggests herein an efficient schedule that seeks to balance the need for expedition with the provision of adequate time for trial preparation, if trial is necessary. As part of the effort toward an expeditious resolution, Portside further requests permission to file a motion for judgment on the pleadings that could resolve pivotal legal issues.

**Introduction**

This case concerns Portside's federal and state law challenges to an extraordinary November 2023 decision of the Jersey City Rent Leveling Board (the "Board") concerning two companion apartment buildings in Jersey City (the "City"), called Portside Towers. The Portside Towers buildings were developed, operated, and taxed for nearly thirty years on the understanding, shared by Plaintiffs, Defendants, and tenants at Portside Towers, that they were exempt from the City's local rent control scheme. A New Jersey statute, N.J.S.A. § 2A:42-84.2 (the "Exemption

1

Statute"), provides that all multiple unit dwellings constructed after 1987 are exempt from local rent control for thirty years following construction. The owners, the City, and the tenants treated Portside Towers as exempt from rent control pursuant to the Exemption Statute for nearly three decades following their construction in the 1990s.

In 2023, however, the Board purported to retroactively determine that Portside Towers had never been exempt from rent control. The sole basis for that decision was that an administrative notice to a local construction official could not be located for one of the Portside Towers buildings, nearly thirty years after the notice supposedly should have been sent. In reaching that conclusion, the politically-appointed Board overruled the decision of the Rent Leveling Bureau official who was authorized to receive evidence and resolve the matter in the first instance, and who concluded that Portside Towers are exempt. The Board announced its decision during a public meeting before a "sold out crowd" (in the words of the Board chairman), during which commissioners made speeches about their decision to "side with the tenants."

As Portside will demonstrate in this case, the Board's decision violates the United States and New Jersey constitutions and otherwise violates New Jersey law. The Board retroactively stripped Portside of a vested regulatory right—a state-granted exemption from local rent control— that had been in place for nearly three decades without authority, compensation, or due process and on grounds that were arbitrary and capricious. It also purported to retroactively strip Portside of contractual rights to certain rents under its leases with residents. For those reasons and others, Portside will demonstrate that the Board's decision should be declared unlawful.

In the interim, however, the Board's decision has created substantial and ongoing confusion and uncertainty for Portside, its tenants, and the City. On a near-daily basis, certain tenants dispute the amount of rent that must be paid. Some tenants and tenants' groups have taken

the position that tenants need not pay any rent, or should pay only partial rent.  Others have demanded refunds of rents paid years prior.  If Portside prevails in this action, those tenants face financial disruption when they are required to pay any rents they wrongfully withhold and/or may be subject to eviction.  Meanwhile, because of the confusion, Portside is losing substantial revenue that it may never be able to recoup.  Without clarity, Portside's ability to make informed operating and investing decisions—which affect tenants and the City—is impaired.

For all of those reasons, Portside respectfully submits that all parties and the public share an interest in the swift resolution of this case.  Portside suggests two mechanisms to achieve that goal: (1) a motion for judgment on the pleadings addressing certain pivotal legal issues; and (2) a reasonably accelerated schedule for remaining proceedings (if any) following the threshold legal motion.  Both points are further detailed below.

<u>Statement Of Position</u>

**I.     Portside Seeks To File A Motion For Judgment On The Pleadings.**

Portside submits that threshold legal issues in this case are amenable to resolution as a matter of law through a motion for judgment on the pleadings to be filed pursuant Fed. R. Civ. P. 12(c).  The legal issues that Portside seeks to raise in that motion are: (a) the Board's decision to retroactively strip Portside of the state-granted rent control exemption violates and is preempted by the New Jersey Exemption Statute; and (b) the Board's decision violates the Due Process Clause of the United States Constitution.  Each ground is briefly described below.

**The Board's decision violates the New Jersey Exemption Statute.**  With respect to the first ground, the Exemption Statute provides:

> In any municipality which has enacted or which hereafter enacts a rent control or rent leveling ordinance . . . those provisions of the ordinance which limit the periodic or regular increases in base rentals of dwelling units shall not apply to multiple dwellings constructed after [June 25, 1987], for a period of time not to

3

exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less.

N.J.S.A. § 2A:42-84.2.  The Exemption Statute further provides that municipalities and other subordinate units of government have no authority to "limit, diminish, alter or impair" the exemption afforded by the statute, *i.e.*:

No municipality, county or other political subdivision of the State, or agency or instrumentality thereof, shall adopt any ordinance, resolution, or rule or regulation, or ***take any other action, to limit, diminish, alter or impair any exemption*** afforded pursuant to [the Exemption Statute].

*Id.* (emphasis added).

In this case, the Board violated the Exemption Statute by purporting to strip Portside of the "exemption afforded pursuant to [the statute]," after a settled understanding of nearly thirty years that Portside Towers are exempt.  The Board's sole basis for this ruling was a determination that Portside had not proven that its predecessors had provided an administrative notice for one of the two buildings to a City construction official in the 1990s.  While the Exemption Statute contains provisions describing such a notice (N.J.S.A. §§ 2A:42-84.3, 84.4), nothing in the law provides that the notice is a *prerequisite* to receiving the exemption, or that an owner must prove, decades later, that it provided such a notice, upon pain of a retroactive forfeiture.  The Board's decision imposing those requirements, and the City's related rent control ordinance that authorized those findings, violate and are preempted by the Exemption Statute.

Indeed, before the Board's decision, the official that led the City's Rent Leveling Bureau ruled in 2022 that Portside Towers are exempt from rent control under the state Exemption Statute.  After full and fair hearings, that official held that Portside's predecessor provided adequate notice with respect to one of the Portside buildings, and that, with respect to the other, there was no doubt that the City was on notice of the claim of rent control exemption.  As noted, the Board reversed

4

that decision in 2023, in a public meeting in which commissioners made statements such as "owners are not doing what they are supposed to do to allow the tenant to get their due." The Board's decision was met with cheers from a crowd packed with tenants and tenants' groups.

Portside submits that the Board's decision is exactly the type of local governmental action that is prohibited under the Exemption Statute, as well as the Due Process Clause (discussed below). Interpreting and applying the Exemption Statute—including whether an owner must prove to a municipality that an administrative notice was sent nearly thirty years ago or face forfeiture of the state-granted right—can be addressed on the pleadings, as a matter of law, and in service of a prompt resolution of this action.

**The Board's Decision Violates the Due Process Clause.** In addition, the Board's decision to strip Portside's exemption after nearly three decades violates the Due Process Clause. In brief, acting without authority to require a property owner to prove that an administrative notice was sent decades in the past, by a predecessor owner, upon pain of losing a valuable legal right, violates fundamental requirements of due process. The circumstances of this case are especially egregious, as the City's own construction official refused to accept delivery of one notice regarding Portside Towers' rent control exemption in the 1990s, and there is no dispute that the City was on notice for decades regarding Portside Towers' exemption. These fundamental due process deficiencies can be addressed on the pleadings, as a matter of law. Moreover, Federal Rules 1 (providing "the just, speed, and inexpensive determination of every action and proceeding," *see Romero v. Cnty. Of Bergen*, 2017 U.S. Dist. LEXIS 28864, at *3 (D.N.J. Feb. 28, 2017), and 12(c) (which contemplates judgment on the pleadings prior to discovery), and the Rules generally empower the Court with "broad control over case schedules" and the authority to "expedite

disposition of an action." *See Nazario v. Sharinn & Lipshie, P.C.*, 2020 WL 205896, at \*1 (D.N.J. Jan. 14, 2020).

For each reason, Portside respectfully requests permission to file its motion for judgment on the pleadings.

## II.    The Parties Have Proposed An Agreed Accelerated Schedule For Any Remaining Proceedings.

If Portside's motion for judgment on the pleadings does not resolve this case, Portside submits that a relatively accelerated schedule is appropriate for all remaining proceedings.  As discussed above, all interested parties—including Portside, the City, and tenants—will benefit from the prompt resolution of the litigation, as continued uncertainty about the Board's decision is detrimental to all.  Federal courts recognize that expedited proceedings are appropriate where factors such as "confusion," financial harm, and constitutional violations are ongoing during the pendency of a litigation.  *See Business Assoc. of Univ. City v. Landrieu*, 660 F.2d 867, 872, 877 (3d Cir. 1981); *United States v. Nicolet, Inc.*, 712 F. Supp. 1193, 1200 (E.D. Pa. 1989).

Here, the parties met and conferred regarding the case schedule, and while in light of the circumstances of the case, Portside had proposed a further expedited schedule, the parties reached compromise.  Through the Joint Plan the parties submitted to the Court, they propose the following schedule:

1.  Fed. R. Civ. P. 26 Disclosures due on <u>March 7, 2024</u>.

2.  E-Discovery conference pursuant to L. Civ. R. 26.1(d) on <u>March 21, 2024</u>.

3.  Service of initial written discovery due on <u>April 1, 2024</u>.

4.  Motions to amend or to add parties to be filed by <u>May 1, 2024</u>.

5.  Factual discovery to be completed by <u>October 15, 2024</u>.

6.  Plaintiff's expert report due on <u>November 30, 2024</u>.

6

7. Defendant's expert report due on <u>January 30, 2025</u>.

8. Expert depositions to be completed by <u>March 31, 2025</u>.

9. Dispositive motions to be served no later than <u>60 calendar</u> days after completion of discovery.

Respectfully submitted,

The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC

By: */s/ Derek D. Reed*

*Attorney for Plaintiffs The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC*

Derek D. Reed, Esq. (Attorney ID # 038062003)
Jeffrey Plaza, Esq.
EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED
A Professional Corporation
60 Park Place, Suite 1016
Newark, New Jersey 07102
(973) 643-0040

Terri L. Mascherin
Andrew W. Vail
Daniel J. Weiss
JENNER & BLOCK LLC
353 North Clark Street
Chicago, Illinois 60654
Phone: (312) 222-9350
Facsimile: (312) 840-7375

*Attorneys for Plaintiffs*