**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC, | ) ) ) ) | Civil Action No. 2:23-cv-22291-MCA-JRA |
| Plaintiffs, | ) | |
| v. | ) ) | |
| The City of Jersey City and the City of Jersey City Rent Leveling Board, | ) ) ) | **BRIEF IN SUPPORT OF MOTION TO INTERVENE AND STAY** |
| Defendants. | ) ) | |

## PRELIMINARY STATEMENT

Application is being made by the current and former tenants, who make up the Portside Towers East Tenant Association ("PTETA") and Portside Towers West Tenant Association ("PTWTA"), the true parties in interest in the subject litigation, to enter this matter as intervenors to protect their substantial interests in the outcome of this matter. The proposed intervenors, as the directly affected tenants with a substantial interest in the outcome of this case, respectfully request that the Court grant their motion to intervene and take jurisdiction of Plaintiffs' parallel Prerogative Writ claim currently pending in the Superior Court of New Jersey, Hudson County, Docket No. HUD-L-004447-23 ("Tenant PW Action").

1

For the reasons set forth herein, PTETA and PTWTA (jointly "Tenant Associations" or "Intervenors") respectfully request that the Court grant their motion to intervene in the instant action to protect their member tenants' (the "Tenants" or "Intervenors") significant interest in the determination as to whether the Plaintiffs are entitled to exemption from the City of Jersey City Rent Control Ordinance, Chapter 260 ("Ordinance"). The Intervenors are compelled to enter this case as Intervenors given the inability and/or disinterest of the City of Jersey City ("City") and City of Jersey City Rent Leveling Board ("RLB") (collectively, "City Defendants") in adequately protecting the most basic of needs of hundreds of Tenant Association families - access to rent controlled housing without the threat of unlawful eviction, coercion or reprisal. At present, despite the RLB Decision, the Bureau continues to create additional barriers to resolution as more fully explained in the Intervenors' Answer. The Landlord's egregious conduct and pattern of deception in concealing the rent control status of the buildings for over two decades constitutes the type of 'intentional inducement or trickery' that justifies the application of equitable tolling to the Tenants' claims.

Given the Plaintiffs' actions in drastically increasing tenant rents at both Buildings prior to and following the decision of the RLB on November 3, 2023 [1] ("RLB Decision"), tenants have suffered severe financial hardship, emotional

---

[1] The RLB Decision was served to all relevant parties on November 6, 2023.

distress, and housing instability, with many facing the imminent threat of homelessness and irreparable harm to their lives and well-being. This Court's determination will directly impact the fundamental right to shelter and livelihood of numerous member tenants. The RLB Decision concluded that, "*both buildings and all units therein are and have been for the duration of their occupancies <u>subject to rent control</u>.*" This unequivocal determination, based on a thorough examination of the facts and the law, must be given deference by this Court. Therefore, the Buildings are indisputably subject to the Ordinance, a conclusion firmly grounded in the record before the RLB, and must be upheld by this Court to ensure the integrity of the rent control system and protect the rights of the tenants.

New Jersey courts have consistently held that rent control ordinances must be strictly enforced according to their plain language and that rent control boards have no discretion to disregard or modify the clear mandates of the law. See, e.g., Osoria v. West New York Rent Control Bd., 410 N.J. Super. 437, 443-44 (App. Div. 2009); Schulmann Realty Group v. Hazlet Twp. Rent Control Bd., 290 N.J. Super. 176, 183 (App. Div. 1996). In the instant action, in addition to its "takings" claims, Plaintiffs are asking the Court to find that the RLB Decision was wholly incorrect. In the Tenant PW Action, the Tenant Associations are challenging the number of years the RLB declared as the number of years that Plaintiffs are required to recalculate their rental rates (the "Lookback Period")

3

It has however become clear that the need for intervention and for one court to hear the PW matters not only behooves the tenants' interests but would also avoid discrepant decisions in regard to common questions of law or fact, allowing for unnecessary cost or delay.

The Intervenors satisfy each of the requirements of Federal Rule of Civil Procedure 24(a) and are therefore entitled to intervene as of right in this action. First, the application to intervene is timely and will not cause undue delay or prejudice to the rights of any party. Secondly, the Intervenors have a significant interest in supporting the RLB's determination that the Buildings have always been subject to rent control (the default in Jersey City) and that the Plaintiffs are not entitled to exemption from the Ordinance - the protection of the possessory interest of the Intervenors in their homes. Third, given that the Plaintiffs seek exemption from the Ordinance, the failure of the City Defendants to vigorously defend this complaint will have a direct, significant impact on the tenants' interests. The RLB and Bureau have already, clearly demonstrated their lack of motivation in enforcing the Ordinance; allowing the Plaintiffs to impose improper rents on the underrepresented tenants for decades (until a group of tenants filed petitions with the Bureau), and, by subsequently failing to apply the correct Lookback Period. Granting intervention and injunctive relief to the Tenants will serve the strong public interest in enforcing rent control laws, preserving affordable housing, and protecting tenants' rights, which are

essential to the social and economic well-being of the community. It is only since Intervenors' counsel pointed out the clearly established Ordinance requirements, with regard to Recalculating the Base Rate, that the Bureau clarified its position. Further, the Bureau and City have failed to enforce the Ordinance after the RLB's determination that the Ordinance applies to the Buildings, and that Portside is not exempt from the Ordinance. The Bureau and City have been put on notice, on numerous occasions, that the Plaintiffs are, as these matters pend, continuing to wrongfully increase rents, in violation of the Ordinance, and have not acted to address such violations.

Intervenors further request that this Court exercise its supplemental jurisdiction and hear the Tenant PW Action, along with any related Declaratory Judgement claims as delineated in Intervenors' Answer and Cross-Complaint. The Tenant PW Action contests the RLB's interpretation of the Lookback Period. Plaintiffs argue the same issue here, but conversely seek to drastically shorten the Lookback Period.  The Tenants' claims and the Landlord's federal action involve numerous common questions of law and fact, including the interpretation of the rent control ordinance, the validity of the Board's decision, and the appropriate scope of relief for affected tenants. Consolidation will promote efficiency, avoid duplicative proceedings, and prevent inconsistent rulings on these overlapping issues. The prerogative writ process applicable to this matter has its foundation in New Jersey

state law, however for purposes of judicial economy alone, the overlapping prerogative writ claims should be heard together in Federal District Court.

Finally, since adjudication of the Prerogative Writ actions could render Plaintiffs' "takings" claims moot, and for that matter, any additional claims that Intervenors may have in the future, we respectfully request that following consolidation of the Tenant PW Action, the prerogative writ and any declaratory judgment claims be addressed first.

## FACTUAL AND PROCEDURAL BACKGROUND

PTETA is an unincorporated tenant's association consisting of tenants with a consolidated mailing address of 155 Washington Street, Jersey City. PTWTA is an unincorporated tenant's association consisting of tenants with a consolidated mailing address of 100 Warren Street, Jersey City (jointly "Intervenors"). According to the Complaint, Plaintiff, The Towers at Portside Urban Renewal Company, LLC ("Portside"), presently owns the two residential apartment buildings that are the subject of this suit; one with an address of 100 Warren Street ("100 Warren") and the other at 155 Washington Street ("155 Washington") (jointly, the "Buildings"). Portside avers that co-Plaintiff Equity Residential Management, LLC ("Equity") is an affiliate of Portside and is the Buildings' management company, and agent for Portside.

6

Nothing contained herein shall be construed as an admission or acceptance of any fact alleged by Plaintiffs in their Complaint or waiver of any claim, cross-claim or affirmative defense by Intervenors. However for the sole purpose of Intervenors' Motion to Intervene, we assume the following: that this Court has subject matter jurisdiction to adjudicate  this Complaint, that the Newly Constructed Multiple Dwelling Act, N.J.S.A. 2A:42-84.1, *et seq.* (the "Act") provides an exemption from rent control for certain qualifying multi-family apartment buildings constructed since 1987 in municipalities that enact rent control or rent leveling ordinances, and that the RLB issued a decision dated November 3, 2023 declaring that Portside is not entitled to any exemption ("RLB Decision"). *See*, ECF Document No. 1-3, p. 1-11, Page ID 54-63.

Since construction of the Towers in the 1990s, Portside and its predecessor owners, agents and management companies, including Equity, have been imposing rent increases on its unwitting tenants in violation of the Act and in violation of the Ordinance. Tenants at the Buildings have been issued various rent increase notifications, all without proper Notices to Quit, many in excess of the 4% permitted by the Ordinance, with increases ranging up to and exceeding, an unconscionable 60%.  As a result of these extraordinary increases, the Tenants reached out to City officials to ascertain the applicability of rent control for the Towers. Those inquiries, and petitions to the Office of Landlord/Tenant Relations Bureau of Rent Leveling

("Bureau"), eventually resulted in the RLB Decision at issue in this litigation, in which the RLB unanimously adopted a motion holding that the rent control exemption claimed by Portside was not properly filed and that there the default of rent control simply continued from the beginning of the occupancy of the units. The RLB noted in its decision that, "due to the failure of the Property Owner and its predecessor to comply with the notice requirement in N.J.S.A. 2A:42-84.4, both buildings and all units therein are and have been *for the duration of their occupancies subject to rent control*." ECF Document No. 1-3 at p 10/11, Page ID 62 [Emphasis added], and further, that "[a]ny interpretation to the contrary would render the notice provisions voluntary or mere surplusage whereas the Statute provides that the property owner "shall" provide the required notice in order to obtain the exemption." Id.

While properly deciding that Portside failed to satisfy the Notice provision of the Act, the RLB did not address other grounds submitted by the Tenants for their position that the properties were not exempt, specifically, that the original mortgage note would limit the term of any exemption to 100 Warren, *assuming arguendo*, same were granted, to four years from September 27, 1992, and that the tenants were never given a pre rental notice, as required by N.J.S.A. 2A:42-84.3.

The RLB also held that it was the Bureau's policy to provide a "lookback window" of six years for illegal rent petitions, coinciding with the statute of

limitations for a cause of action for breach of contract, and instructed the Bureau to adjust the rents for all units in the Buildings to comply with the City's rent control regulations going back six years from the date of the first petition for each building.

On December 19, 2023, following the RLB Decision, the PTWTA, PTETA, and tenants Jessica Brann and Joel Rothfus filed the Tenant PW Action. While agreeing with the RLB Decision holding that the Buildings have always been subject to rent control, the Tenant PW Action asserts that the RLB Decision to limit the rent Lookback Period to what they were six years prior to the filings is contrary to law. Intervenors, in the Tenant PW Action, argue that every increase since 1998 is void, predicated on the rationale provided in the RLB Decision.

Intervenors assert that Plaintiffs here have engaged in a pattern of egregious, willful, and ongoing violations of the Rent Control Ordinance, both prior to and following the RLB Decision, which has caused significant harm to tenants and undermined the purpose of rent control in Jersey City. For decades, Portside and its agents have imposed outrageous rent increases while not entitled to do so by law. As if that conduct is not reprehensible enough, Plaintiffs have, in multiple instances, retaliated against its tenants following the RLB Decision by imposing draconian rent increases on lease renewals (in some instances greater than 40%), with full knowledge that they were barred from imposing _any_ increase until the Bureau issued its legal rent determinations after review of required historical information relative

9

to the leases and occupancy at the Towers. At the same time, and notwithstanding the RLB Decision, the increase of rents pursuant to Ordinance Sec. 260-3, is a continuing violation of law.   Portside, in a continued and flagrant effort to take advantage of its innocent tenants, has sought to convert leases automatically to month-to-month agreements if the renewing tenants did not accept new leases with the unlawful rate hikes, thus placing the tenants at risk of facing eviction if the lease renewals with improper rates were rejected or the tenants were just plain not able to afford the increases.

## LEGAL ARGUMENT

**I.    THE TENANT ASSOCIATIONS AND THEIR REPRESENTATIVES ARE ENTITLED TO INTERVENE AS OF RIGHT**

Pursuant to Federal Rule of Civil Procedure 24 (a), a movant will be granted the right to intervene when the movant establishes that:

1. The application to intervene is timely;
2. The applicant has a sufficient interest in the litigation;
3. The interest may be affected or impaired, as a practical matter by the disposition of the action; and
4. the interest is not adequately represented by an existing party in the litigation.

*See* In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig., 418 F.3d 277, 314 (3d Cir. 2005) citing to Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987). "Rule 24(a) is to be liberally construed in favor of intervention." NLRB v. Frazier, 144 F.R.D. 650, 655 (D.N.J. 1992).

10

### a.  <u>The Motion to Intervene is Timely</u>

The Complaint in this matter was filed on November 10, 2023. A Rule 16 Conference occurred on March 12, 2024, before Magistrate Judge Jose R. Almonte. Upon information and belief no discovery has been conducted to date, however the record below is comprised partially of those documents appearing as exhibits to the Complaint.

The timeliness of a motion to intervene is "'determined from all the circumstances and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" <u>In re Fine Paper Antitrust Litigation</u>, 695 F.2d 494, 500 (3d Cir. 1982) (citing <u>NAACP v. New York</u>, 413 U.S. 345, 366(1973)). The court in <u>Mt. Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.</u>, 72 F.3d 361, 369 (3d Cir. 1995), listed three factors for courts to consider in assessing timeliness: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. Here, the litigation has barely commenced, no proceedings of substance have occurred, and discovery has not been conducted. No party has been or will be prejudiced by the filing of the motion to intervene less than three (3) months following the filing of the Complaint and where the Bureau has yet to review the significant amount of information in its possession in its arduous task of recalculating rents for the Towers.

**b. <u>The Intervenors Have a Substantial Protected Interest in the Litigation</u>**

Fed. R. Civ. P. 24(a) provides in pertinent part that the court must grant intervention as of right where the intervenor "claims an interest relating to the property or transaction that is the subject of the action." Here, the action has at its core the tenants' possessory interest in their homes. An interest that faces dramatic challenges if Plaintiffs are allowed to impose draconian and unlawful increases in rent should the RLB Decision be reversed.

Both prior to and following the RLB Decision, the Tenants have been confronted with rent increases that are unauthorized by the Ordinance, with some increases exceeding 60%. It was only after the tenants brought these draconian increases to the attention of the City, the RLB and the Bureau, that the Plaintiffs have now limited those new increases to 4%. Increases that they did not have the legal authority to issue, and that were on top of the already clearly established illegal rates. **<u>Any increase</u>** is in violation of the Ordinance, at this stage. These unconscionable increases have not only brought economic hardship to its tenants, but will cause some to lose their homes, with the risk of impact on their livelihoods.  As a result, any decisions as to whether the Buildings were subject to rent control since the inception of the tenancies, or if any, shall have a significant impact on the tenants of the buildings.

12

c. **The Court's Decision Will Affect the Tenant's Interests in Their Property**

Rule 24(a) further provides that the court grant the request to intervene where "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Although, as explained, *supra,* the Tenants are stakeholders in, and will be directly and materially impacted by the outcome of the claims before this Court, absent intervention, they will be unable to have any say in protecting their rights. Once there is full and final adjudication of the applicability of the Exemption, "the die is cast". This Court's decision as to whether the Plaintiffs were and are exempt from the Ordinance will thereafter control all legal rent determinations made by the RLB for the Buildings.

d. **The Tenants' Interests Will Not Be Adequately Represented by the Defendants City of Jersey City and the City of Jersey City Rent Leveling Board.**

The interests of the City, the RLB and Intervenors, while initially aligned on the question of the applicability of rent control, are not coterminous. The RLB and Bureau have heretofore demonstrated a selective enforcement of the Ordinance; allowing the Plaintiffs to impose improper rents on the underrepresented tenants for decades (until a group of tenants filed petitions to the Bureau). There is no reason to believe they will now have the fortitude to stand up to the mega-corporate interests posed by the Plaintiffs. Significantly, the RLB also failed to apply the correct legal interpretation of the Lookback Period, causing Intervenors to file the Tenant PW

13

Action.   Finally, while the City, RLB and Bureau will likely face political and financial pressure to cave to the will of Plaintiffs, the Intervenors sole interest is proper interpretation and application of the Act and the Ordinance and the well-being of the Tenants.

## II.    IN THE ALTERNATIVE, THE TENANT ASSOCIATION INTERVENOR APPLICANTS ARE ENTITLED TO PERMISSIVE INTERVENTION

Fed. R. Civ. P. 24(b)(1)(B), Permissive Intervention, provides that the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." "[D]enial of intervention as of right does not automatically mandate a denial of permissive intervention." Hoots v. Commonwealth of Pennsylvania, 672 F.2d 1133 (3d Cir. 1982). The determination of whether to allow a party to intervene is left to the sound discretion of the court. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As set forth above, the Tenant Associations and its members are stakeholders in the outcome of the claims before this court. However, those interests are not synonymous with the interests of the City and RLB, and as made obvious by the need for Intervenors to file their own claim against the RLB in Hudson County Superior Court, will require separate representation to be properly heard here.

14

### III.   THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER THE TENANT PW ACTION

Congress codified the judicially created doctrines of pendent and ancillary jurisdiction under the name "Supplemental Jurisdiction" at 28 U.S.C. §(s) 1367. Section 1367 embodies the jurisdictional standard established in United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). *See* Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995); Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991). MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1102 (3d Cir. 1995). 28 U.S.C. § 1367 provides that the district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction as they form part of the same case or controversy."

Establishing supplemental jurisdiction over a state claim requires showing three elements: 1) the underlying federal claim has "substance sufficient to confer subject matter jurisdiction on the court; 2) the state and federal claims "derive from a common nucleus of operative fact, and 3) the state and federal claims "would ordinarily be expected to be tried in one judicial proceeding." MCI Telecomms. Corp. v. Teleconcepts Inc., 71 F.3d 1086, 1102 (3d. Cir., 1995). Section 1367 specifically contemplates a court's exercise of supplemental jurisdiction over third-party complaints. *See* 28 U.S.C. § 1367(a) [Emphasis added] ("*Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional*

15

*parties.*"); <u>Zurich Am. Ins. Co. v. R.M. Shoemaker Co</u>., 519 F. App'x 90, 91 (3d. Cir. 2013) (affirming District Court's exercise of supplemental jurisdiction over a third-party complaint under section 1367).

While courts are not permitted to take jurisdiction over tangentially related claims, "total congruity between the operative facts of the two cases is unnecessary." <u>Nanavati v. Burdette Tomlin Mem'l Hosp.</u>, 857 F.2d 96, 105 (3d Cir.,1988); <u>cert denied</u> 489 U.S. 1078 (1989).  Permitting courts to exercise supplemental jurisdiction promotes "judicial economy, convenience and fairness to litigants." <u>United Mine Workers of Am. v. Gibbs,</u> 383 U.S. 715, 726 (1966); *See* <u>Skevofilax v. Quigley</u>, 810 F.2d 378, 385 (district court has ancillary jurisdiction over a cross-claim for garnishment by a judgment creditor against a nonparty to the original lawsuit, where the non-party may owe the judgment debtor an obligation to indemnify against the judgment); <u>Ambromovage v. United Mine Workers of America,</u> 726 F.2d 972, 989-91 (3d. Cir. 1984) (holding that the district court had power to hear defendant's counterclaim raising a set law set-off in conjunction with plaintiff federal question claim because an important factual question which implicates the entire "factual matrix" of the case was common to both the federal claim and ancillary counterclaim).

Here, the Complaint and the Tenant PW Action, clearly share a common nucleus of operative fact - the facts and claims are not tangential. Plaintiffs bring a host of

16

Constitutional claims and related state law claims against the RLB. Count VI, however is a Claim in Lieu of Prerogative Writ, which is provided for by N.J. Ct. R. 4:69-6 and Count VII is a request for declaratory relief concerning the actions of a local board. A party may bring an action in the Superior Court of New Jersey Law Division pursuant to a complaint in lieu of prerogative writ, to appeal the determination of the Rent Leveling Board. Here, Portside brought their claim in lieu of prerogative writ as Count VI of the Complaint. Conversely, the Tenants brought their Complaint in lieu of prerogative writ in the Superior Court of New Jersey, Hudson County, Law Division, docketed at HUD-L4447-23. There cannot be a more obvious common nucleus of operative fact than those facts that make up the controversy between two opposing sides appealing the same RLB Decision.  Having this matter decided by two separate courts, creates the possibility of inconsistent decisions. Moreover, the evidence and testimony offered in both cases would be virtually identical. Therefore, judicial economy would also be best served by having this court take jurisdiction over the inextricably related state claims.

   a.  **This Court Has Jurisdiction to Set Aside a Municipal Board Decision**

   The Third Circuit in Nat'l Amusements, Inc. v Borough of Palmyra, relied on Rivkin v. Dover Twp. Rent Leveling Bd., in holding that an action in lieu of prerogative writ, "permits a 'court [to] set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or

17

otherwise contrary to law.'" *See. e.g*., Nat'l Amusements Inc. v. Borough of Palmyra, 716 F.3d 57, 63 (3d Cir. 2013) (alteration in original) (quoting Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 671 A.2d 567. 581 (N.J. 1996)). This Court has supplemental jurisdiction to adjudicate Plaintiff's action in lieu of prerogative writ, challenging the Board's denial on state law grounds under pursuant to 28 U.S.C. §1367.

It would be an inefficient use of judicial resources to address the same discovery disputes, or legal challenges, in separate matters (in two separate courts), based on the same alleged facts. At present, the Superior Court has not scheduled a Case Management Conference in the Tenant PW Action, both cases are in the same procedural posture, with the Case Management Conference in the Tenant PW Action not yet having occurred, and the pre-trial conference in the instant action, having only recently occurred, there has been no record established in either case, other than the record below. There is a high degree of likelihood that unless these cases are heard by the same court, the Tenant PW Action and the Plaintiffs' prerogative writ claims in this Court could suffer conflicting outcomes, despite there being nearly identical legal and factual issues.

The issues to be adjudicated in the two PW actions are directly connected. Adjudication involves an interpretation of the same Ordinance and with the same parties, documents and witnesses. Further, the parties here will not be prejudiced if

18

both prerogative writs are heard at the same time in this Court (in fact, there will be economies to so proceeding). However, the Tenant Associations will be prejudiced if consolidation is not granted by being forced to prosecute two actions simultaneously, with limited resources.

### IV. <u>COUNTS I THROUGH V OF PORTSIDE'S COMPLAINT SHOULD BE STAYED PENDING RESOLUTION OF THE PREROGATIVE WRIT AND DECLARATORY WRIT ACTIONS IN THE THIS COURT</u>

The court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket …." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936).  In assessing whether a stay should be granted courts address the following:

1) Judicial efficiency as measured by the stage of the civil litigation and the stay's potential to simplify the issues;
2) Harm or unfair prejudice to the non-moving party that will result from the grant of a stay; and
3) The hardship and inequity to the moving party if the stay is denied.

<u>ADP, Inc. v. Wise Payments Ltd.</u>, 2022 U.S. Dist. LEXIS 128596 at *8.

A stay (alternatively, bifurcation), of Counts I through V of Portside's Complaint is warranted in this matter in order to allow the Prerogative Writ and Declaratory Writ claims to be heard before this Court. The outcome of the Prerogative Writ and Declaratory Judgments proceedings may render the other Federal claims in this matter moot, thus saving judicial resources. Since the instant proceeding is in its early stages, the parties will not be prejudiced by a short stay.

19

Further, Intervenors, acting on behalf of the tenants of the Portside buildings, who have limited resources and are already suffering from Plaintiffs' ongoing violations of the Rent Control Ordinance, will be substantially harmed if a stay is not granted. Tenants will be forced to simultaneously prosecute two matters while continuing to face illegal rent increases, harassment, and the threat of eviction, placing an undue burden on their ability to protect their rights and maintain their housing.

## **CONCLUSION**

The proposed Intervenor Tenant Associations respectfully request that the Court grant their motion to intervene, simultaneously exercising its supplemental jurisdiction over the Tenant PW Action, and issue a stay, or alternatively bifurcate Counts I through V of Portside's Complaint, pending the resolution of the Prerogative Writ and Declaratory Judgement claims in this Court.

Granting this motion to intervene is essential to protect the tenants' rights, prevent further harm from Plaintiffs' ongoing violations of the Rent Control Ordinance, and ensure that the ordinance is enforced consistently and effectively. Failure to do so could result in devastating consequences for the tenants and irreparable damage to the integrity of Jersey City's rent control system.

Respectfully submitted,

/s/ *Mollie Hartman Lustig*
Mollie Hartman Lustig, Esq.
McLaughlin & Stern, LLP
1 Elm Street, Suite 2
Westfield, New Jersey 07090
Tel: (212) 448–1100
mlustig@mclaughlinstern.com

/s/ *Eric J. Nemeth*
Eric J. Nemeth, Esq.
Eric J. Nemeth, P.C.
55 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel: (973) 539–2122
enemeth@ejcounsel.com

*Attorneys for Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus and Michele Hirsch.*