## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE TOWERS AT PORTSIDE URBAN RENEWAL COMPANY, LLC and EQUITY RESIDENTIAL MANAGEMENT, LLC<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF JERSEY CITY and THE CITY OF JERSEY CITY RENT LEVELING BOARD,<br><br>Defendants. | Civil Action No.: 2:23-cv-22291-MCA-JRA<br><br>**CERTIFICATION OF MOLLIE HARTMAN LUSTIG, ESQ. IN SUPPORT OF INTERVENORS' MOTION TO INTERVENE** |

MOLLIE HARTMAN LUSTIG, of full age, certifies as follows:

1. I am an attorney at law of the State of New Jersey and Partner with the law firm of McLaughlin Stern, LLP, with an office located at 1 Elm Street, Suite 2, Westfield, New Jersey 07090. We, alongside Eric J. Nemeth, Esq., of Eric J. Nemeth, P.C., are the attorneys for the intervenors in this matter, Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch (collectively, "Intervenors"). As such, I have personal knowledge of the facts herein.

2. This Certification is submitted in support of Intervenors' Motion to Intervene pursuant to Federal Rules of Civil Procedure 24.

3. Attached hereto pursuant to Fed. R. Civ. P. 24(c) as **Exhibit A** is a Proposed Answer with cross claims and counter claims.

4.  Attached hereto as **Exhibit B** is a true and correct copy of <u>ADP, Inc. v. Wise Payments</u> <u>Ltd.</u>, Civil Action No. 21-12457 (JXN) (JSA), 2022 U.S. Dist. LEXIS 128596 (D.N.J. July 19, 2022).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:    April 1, 2024

/s/ Mollie Hartman Lustig
Mollie Hartman Lustig, Esq.
McLaughlin & Stern, LLP
1 Elm Street, Suite 2
Westfield, New Jersey 07090
Tel: (212) 448–1100
mlustig@mclaughlinstern.com

*Attorneys for Portside Towers East*
*Tenant Association, Portside Towers*
*West Tenant Association, Kevin*
*Weller, Jessica Brann, and Joel*
*Rothfus*

# EXHIBIT A

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

THE TOWERS AT PORTSIDE URBAN
RENEWAL COMPANY, LLC and EQUITY
RESIDENTIAL MANAGEMENT, LLC

            Plaintiffs,

v.

THE CITY OF JERSEY CITY and THE CITY
OF JERSEY CITY RENT LEVELING BOARD,

            Defendants.

v.

PORTSIDE TOWERS EAST TENANT
ASSOCIATION, PORTSIDE TOWERS WEST
TENANT ASSOCIATION, KEVIN WELLER,
JESSICA BRANN, JOEL ROTHFUS, and
MICHELE HIRSCH

            Intervenors and Cross
            Claimants.

Civil Action No.: 2:23-cv-22291-MCA-JRA

**ANSWER WITH
CROSSCLAIMS AND
COUNTERCLAIMS**

Intervenors Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus and Michele Hirsch ("Intervenor-Defendants"), by and through their attorneys, McLaughlin & Stern, LLP, hereby answer Plaintiffs' Complaint dated November 10, 2023 ("Complaint") as follows:

**<u>NATURE OF ACTION</u>**

1.      Paragraph 1 of the Complaint purports to set forth the nature of the action and appears to contain no allegations to which a responsive pleading is required. To the extent, if any,

that Paragraph 1 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

2.　　　Paragraph 2 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 2 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

3.　　　The first sentence of Paragraph 3 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 3 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 of the Complaint.

4.　　　LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 4 of the Complaint.

5.　　　DENY the allegations set forth in the first sentence of Paragraph 5 of the Complaint. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 5 of the Complaint.

6.　　　The first sentence of Paragraph 6 of the Complaint purports to describe and/or characterize the City of Jersey City Rent Leveling Board's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their

proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in the first sentence of Paragraph 6 of the Complaint. DENY the remaining allegations set forth in Paragraph 6 of the Complaint.

7.      Paragraph 7 of the Complaint purports to describe and/or characterize the City of Jersey City Rent Leveling Board's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 7 of the Complaint.

8.      DENY the allegations set forth in Paragraph 8 of the Complaint.

9.      The first two sentences of Paragraph 9 of the Complaint purports to describe and/or characterize the City of Jersey City Rent Leveling Board's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in the first two sentences of Paragraph 9 of the Complaint. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 9 of the Complaint.

10.     LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 10 of the Complaint.

11.     DENY the allegations set forth in Paragraph 11 of the Complaint.

12. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 12 of the Complaint.

13. The second sentence of Paragraph 13 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that this sentence may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations. DENY the remaining allegations set forth in Paragraph 13 of the Complaint.

## SUMMARY OF CLAIMS

14. Paragraph 14 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 14 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

15. Paragraph 15 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 15 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

16. Paragraph 16 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 16 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

4

17.     Paragraph 17 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 17 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

18.     Paragraph 18 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 18 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

19.     Paragraph 19 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 19 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

20.     Paragraph 20 of the Complaint, including subparagraphs a. through d. thereof, purport to set forth the nature of the action and appear to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 20 of the Complaint, including subparagraphs a. through d. thereof, may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

## **PARTIES**

21.     LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 21 of the Complaint.

22.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 22 of the Complaint.

23.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 23 of the Complaint.

24.    ADMIT the allegations set forth in Paragraph 24 of the Complaint.

## JURISDICTION AND VENUE

25.    Paragraph 25 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 25 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

26.    Paragraph 26 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 26 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

27.    Paragraph 27 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 27 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

**FACTUAL BACKGROUND**

A.    **New Jersey Temporarily Exempts From Rent Control Buildings with Four or More Apartments Constructed After 1987[1].**

28.    Paragraph 28 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 28 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

29.    Paragraph 29 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 29 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

30.    Paragraph 30 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 30 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

31.    Paragraph 31 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 31 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

32.    Paragraph 32 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if

---

[1] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

any, that Paragraph 32 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

### B. Jersey City's Rent Control Scheme[2]

33.     ADMIT only that Jersey City has adopted a rent control ordinance. DENY the allegations set forth in the last sentence of Paragraph 33 of the Complaint. The remainder of Paragraph 33 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that the remainder of Paragraph 33 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

34.     Paragraph 34 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 34 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

35.     Paragraph 35 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 35 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

36.     Paragraph 36 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 36 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

---

[2] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

**C.**    **Portside Towers Is Constructed And First Rented During the Exemption Period[3].**

37.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 37 of the Complaint.

38.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 38 of the Complaint.

39.    ADMIT the allegations contained in Paragraph 39 of the Complaint.

40.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 40 of the Complaint.

41.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 41 of the Complaint.

42.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint. To the extent, if any, that a different

---

[3] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

9

response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 42 of the Complaint.

43. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 43 of the Complaint.

44. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 44 of the Complaint.

45. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 45 of the Complaint.

**D.      Portside Towers Is Treated As Exempt From Rent Control For Many Years[4].**

46. DENY the allegations set forth in the first sentence of Paragraph 46 of the Complaint. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 46 of the Complaint.

47. DENY the allegations set forth in Paragraph 47 of the Complaint.

---

[4] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

48.     LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 48 of the Complaint.

49.     LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 49 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 49 of the Complaint.

50.     DENY the allegations set forth in the first sentence of Paragraph 50 of the Complaint. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 50 of the Complaint.

### E.     The Administrator Correctly Finds That Portside Towers Is Exempt[5].

51.     DENY the allegations set forth in Paragraph 51 of the Complaint.

52.     LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 52 of the Complaint.

53.     Paragraph 53 of the Complaint purports to describe and/or characterize the Rent Leveling Administrator's decision, which speaks for itself, and Intervenor-Defendants deny any

---

[5] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 53 of the Complaint.

54. Paragraph 54 of the Complaint purports to describe and/or characterize the Rent Leveling Administrator's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 54 of the Complaint.

55. The first two and last sentences of Paragraph 55 of the Complaint purports to describe and/or characterize the Rent Leveling Administrator's decision and tenant arguments, which speak for themselves, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in the first two and last sentences of Paragraph 55 of the Complaint. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 55 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 55 of the Complaint.

56. Paragraph 56 of the Complaint purports to describe and/or characterize the Rent Leveling Administrator's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 56 of the Complaint.

57.     Paragraph 57 of the Complaint purports to describe and/or characterize the Rent Leveling Administrator's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 57 of the Complaint.

**F.     The Board Erroneously Finds That Portside Towers Does Not Qualify For The Exemption[6].**

58.      DENY the allegations set forth in Paragraph 58 of the Complaint.

59.     ADMIT the allegations set forth in Paragraph 59 of the Complaint.

60.     DENY the allegations set forth in Paragraph 60 of the Complaint.

61.     ADMIT only those allegations set forth in the first sentence of Paragraph 61 of the Complaint. The remainder of Paragraph 61 of the Complaint purports to describe and/or characterize the City of Jersey City Rent Leveling Board's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 61 of the Complaint.

62.     Paragraph 62 of the Complaint purports to describe and/or characterize the City of Jersey City Rent Leveling Board's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 62 of the Complaint.

---

[6] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

13

63.    Paragraph 63 of the Complaint purports to describe and/or characterize the City of Jersey City Rent Leveling Board's decision, which speaks for itself, and Intervenor-Defendants deny any descriptions and/or characterizations and leave Plaintiffs to their proofs. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 63 of the Complaint.

## G.    The Board's Decision Creates Irreparable Harm[7].

64.    Paragraph 64 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 64 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

65.    The first sentence of Paragraph 65 of the Complaint purports to set forth or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that the first sentence of Paragraph 65 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 65 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 65 of the Complaint.

66.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Complaint. To the extent, if any, that a different

---

[7] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 66 of the Complaint.

## COUNT I

**THE BOARD'S DECISION AND THE ORDINANCE VIOLATE THE TAKINGS CLAUSES OF THE U.S. CONSTITUTION AND THE NEW JERSEY CONSTITUTION[8]**

67.    Inasmuch as Paragraph 67 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 66 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 66 of the Complaint as though fully set forth herein, and note that Paragraph 67 of the Complaint contains no allegations to which a responsive pleading is required.

68.    Paragraph 68 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 68 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

69.    Paragraph 69 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 69 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

70.    Paragraph 70 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 70 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

---

[8] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

71.      Paragraph 71 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 71 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

72.      Paragraph 72 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 72 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

73.      Paragraph 73 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 73 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

74.      Paragraph 74 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 74 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

75.      Paragraph 75 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 75 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

**A.** **The Ordinance and the Board's Decision Violate the Takings Clauses By Depriving Portside Of Its Right To The Exemption And Its Right to Charge Market Rent Without Compensation[9]**

76. Paragraph 76 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 76 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

77. Paragraph 77 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 77 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

78. Paragraph 78 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 78 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

79. Paragraph 79 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 79 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

80. Paragraph 80 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if

---

[9] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

any, that Paragraph 80 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

81.    Paragraph 81 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 81 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

82.    Paragraph 82 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 82 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

83.    The first, second and last sentences of Paragraph 83 of the Complaint purport to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that the first, second and last sentences of Paragraph 83 the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations. DENY Plaintiffs' allegation that it "disclosed to tenants that the buildings were exempt." LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 83 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 83 of the Complaint.

84.    DENY Plaintiffs' allegation that through leases it disclosed to tenants that the buildings were exempt from rent control. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 84 of the Complaint. To

the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 84 of the Complaint.

85.    Paragraph 85 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 85 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

### B.    The Ordinance Violates The Takings Clauses By Diminishing The Value Of Portside Towers Without Compensation.[10]

86.    Inasmuch as Paragraph 86 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 85 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 85 of the Complaint as though fully set forth herein, and note that Paragraph 86 of the Complaint contains no allegations to which a responsive pleading is required.

87.    Paragraph 87 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 87 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

88.    The first two sentences of Paragraph 88 of the Complaint purport to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that the first two sentences of Paragraph 88 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining

---

[10] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

19

allegations in Paragraph 88 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 88 of the Complaint.

89.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 89 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in the first sentence of Paragraph 89 of the Complaint. The remainder of Paragraph 89 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that the remainder of Paragraph 89 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

90.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 90 of the Complaint.

91.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 91 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 91 of the Complaint.

92.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 92 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 92 of the Complaint.

20

93. Paragraph 93 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 93 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

94. Paragraph 94 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 94 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

95. The first sentence of Paragraph 95 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that the first sentence of Paragraph 95 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 95 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 95 of the Complaint.

96. Paragraph 96 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 96 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

21

**C.**   **The Board's Decision And The Ordinance Violates The Takings Clauses By Enacting A Physical Taking Of Portside's Property**[11]

97.   Inasmuch as Paragraph 97 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 96 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 96 of the Complaint as though fully set forth herein and note that Paragraph 97 of the Complaint contains no allegations to which a responsive pleading is required.

98.   Paragraph 98 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 98 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

99.   LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 99 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 99 of the Complaint.

100.   Paragraph 100 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 100 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

---

[11] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

## COUNT II

### THE ORDINANCE VIOLATES THE DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION AND NEW JERSEY CONSTITUTION[12]

101.    Inasmuch as Paragraph 101 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 100 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 100 of the Complaint as though fully set forth herein, and note that Paragraph 101 of the Complaint contains no allegations to which a responsive pleading is required.

102.    Paragraph 102 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 102 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

103.    Paragraph 103 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 103 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

104.    Paragraph 104 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 104 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

105.    Paragraph 105 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if

---

[12] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

any, that Paragraph 105 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

106.    Paragraph 106 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 106 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

107.    Paragraph 107 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 107 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

## COUNT III

### THE ORDINANCE VIOLATES THE CONTRACTS CLAUSES OF THE UNITED STATES CONSTITUTION AND NEW JERSEY CONSTITUTION[13]

108.    Inasmuch as Paragraph 108 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 107 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 107 of the Complaint as though fully set forth herein, and note that Paragraph 108 of the Complaint contains no allegations to which a responsive pleading is required.

109.    Paragraph 109 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 109 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

---

[13] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

24

110.    Paragraph 110 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 110 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

111.    Paragraph 111 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 111 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

112.    Paragraph 112 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 112 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

113.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 113 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 113 of the Complaint.

114.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 114 of the Complaint.

115.    DENY the allegations set forth in the third sentence of Paragraph 115 of the Complaint. The remainder of Paragraph 115 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required.

To the extent, if any, that the remainder of Paragraph 115 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

**COUNT IV**

**THE ORDINANCE IS UNLAWFULLY CONFISCATORY UNDER NEW JERSEY LAW[14]**

116.    Inasmuch as Paragraph 116 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 115 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 115 of the Complaint as though fully set forth herein, and note that Paragraph 116 of the Complaint contains no allegations to which a responsive pleading is required.

117.    Paragraph 117 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 117 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

118.    The first sentence of Paragraph 118 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that the first sentence of Paragraph 118 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations. LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations in Paragraph 118 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the remaining allegations set forth in Paragraph 118 of the Complaint.

---

[14] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

119.    Paragraph 119 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 119 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

120.    LACK KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations in Paragraph 120 of the Complaint. To the extent, if any, that a different response from Intervenor-Defendants is required, Intervenor-Defendants DENY the allegations set forth in Paragraph 120 of the Complaint.

121.    Paragraph 121 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 121 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

### COUNT V

### VIOLATION OF N.J.S.A. § 2A:42-84.2 AND PREEMPTION BY SAME[15]

122.    Inasmuch as Paragraph 122 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 121 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 121 of the Complaint as though fully set forth herein, and note that Paragraph 122 of the Complaint contains no allegations to which a responsive pleading is required.

123.    Paragraph 123 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if

---

[15] Intervenor-Defendants are utilizing all titles used by Plaintiffs in their Complaint for clarity purposes only. To the extent, if any, that this title may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

any, that Paragraph 123 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

124.    Paragraph 124 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 124 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

125.    Paragraph 125 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 125 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

126.    Paragraph 126 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 126 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

127.    Paragraph 127 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 127 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

128.    Paragraph 128 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 128 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

28

129.    Paragraph 129 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 129 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

130.    Paragraph 130 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 130 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

## COUNT VI

### CLAIM IN LIEU OF PREROGATIVE WRIT

131.    Inasmuch as Paragraph 131 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 130 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 130 of the Complaint as though fully set forth herein and note that Paragraph 131 of the Complaint contains no allegations to which a responsive pleading is required.

132.    Paragraph 132 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 132 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

133.    Paragraph 133 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 133 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

29

134.    Paragraph 134 of the Complaint, including subparagraphs a. through o. thereof, purport to set forth one or more legal conclusions and appear to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 134 of the Complaint, including subparagraphs a. through o. thereof, may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

## COUNT VII

### DECLARATORY JUDGMENT

135.    Inasmuch as Paragraph 135 of the Complaint purports to reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 134 of the Complaint, Intervenor-Defendants replead and incorporate by reference their answers to Paragraphs 1 through 134 of the Complaint as though fully set forth herein, and note that Paragraph 135 of the Complaint contains no allegations to which a responsive pleading is required.

136.    Paragraph 136 of the Complaint purports to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 136 of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

137.    Paragraph 137 of the Complaint, including subparagraphs a. through e. thereof, purport to set forth one or more legal conclusions and appears to contain no allegations to which a responsive pleading is required. To the extent, if any, that Paragraph 137 of the Complaint, including subparagraphs a. through e. thereof, may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

## AS TO THE "PRAYER FOR RELIEF" REQUESTED PARAGRAPH OF THE COMPLAINT

Intervenor-Defendants DENY the appropriateness or permissibility of the relief sought by Plaintiffs and DENY that Plaintiffs and their counsel are entitled to any and all relief sought in the "Prayer for Relief" Paragraph of the Complaint. To the extent, if any, that the RELIEF REQUESTED Paragraph of the Complaint may be read as setting forth allegations of fact, Intervenor-Defendants DENY those allegations.

## AFFIRMATIVE DEFENSES

Without admitting any allegations asserted in the Complaint, and without waiving any of Intervenor-Defendants' denials of fact, and without waiving any other argument or defense, Intervenor-Defendants state the following affirmative defenses:

### First Affirmative Defense

The Complaint fails to state a claim, in whole or in part, upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, insofar as they lack standing to sue and/or there is no actual case or controversy between the parties.

### Fourth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of *in pari delicto* and/or unclean hands.

### Fifth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of estoppel.

### Sixth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of laches.

31

**Seventh Affirmative Defense**

Plaintiffs' claims are preempted by Federal Law.

**Eighth Affirmative Defense**

If a plaintiff suffered any damages as a result of the matters alleged in the Complaint, such damages were caused in whole or in part by that plaintiff's own culpable conduct. Any judgment recovered by a plaintiff must be reduced in proportion to the extent that their culpable conduct contributed to the alleged damages.

**Ninth Affirmative Defense**

Plaintiffs' claims are barred, in whole or in part, by the doctrines of accord, satisfaction, waiver, estoppel, consent, comparative fault, contributory fault, and/or laches.

**Tenth Affirmative Defense**

Plaintiffs are not entitled to any equitable relief because they have an equitable remedy at law.

**Eleventh Affirmative Defense**

Plaintiffs' claims for damages must be dismissed to the extent that they have failed, refused, and/or neglected to mitigate or avoid the damages or injuries complained of in the Complaint, or to the extent that they have been mitigated.

**Twelfth Affirmative Defense**

Plaintiffs are not entitled to declaratory or injunctive relief.

**Thirteenth Affirmative Defense**

Plaintiffs are not entitled to pre-judgment or post-judgment interest.

**Fourteenth Affirmative Defense**

Plaintiffs' claims are not entitled to a trial by jury due to a voluntary waiver.

## Fifteenth Affirmative Defense

Lack of personal jurisdiction.

## Sixteenth Affirmative Defense

Plaintiffs' claims are barred by documentary evidence.

## Seventeenth Affirmative Defense

Any damages allegedly sustained by Plaintiffs were caused, in whole or in part, by reason of the culpable conduct of Plaintiffs or a third party. Any judgment recovered by Plaintiffs must be reduced in proportion to the extent that their or any third party's culpable conduct contributed to the alleged damages.

## Eighteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction.

## Nineteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, insofar as Plaintiffs seek any remedy to which they are not entitled under applicable law.

## Twentieth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not suffer any actual injury or damage.

## Twenty-First Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because of Plaintiffs' failure to name an indispensable party or parties.

## Twenty-Second Affirmative Defense

Plaintiffs' claims for injunctive relief are barred, in whole or in part, insofar as Plaintiffs have not suffered irreparable harm.

33

## CROSSCLAIMS AND COUNTERCLAIMS

Intervenors Portside Towers East Tenant Association ("PTETA"), Portside Towers West Tenant Association ("PTWTA"),[16] Kevin Weller, Jessica Brann, Joel Rothfus and Michele Hirsch (collectively, "Intervenors"), by and through their attorneys, McLaughlin & Stern, LLP, and Eric J. Nemeth, P.C., hereby allege as follows:

## PARTIES

1.      PTWTA and PTETA are unincorporated tenants' associations consisting of current and former tenants of 100 Warren Street ("100 Warren" or "Portside West") and 155 Washington Street ("155 Washington" or "Portside East")  (collectively, with "Buildings")"), adjacent multi-family dwellings located in Jersey City, New Jersey. Tenants residing in the Buildings, along with former tenants, have authorized PTWTA and PTETA to act on their behalf in this matter.

2.      Jessica Brann ("Brann") is a tenant residing in 155 Washington (Portside East) and is a member of PTETA.

3.      Joel Rothfus ("Rothfus") is a tenant residing in 100 Warren (Portside West) and is a member of PTWTA.

4.      Kevin Weller ("Weller") is a tenant residing in 155 Washington (Portside East) and is a member and President of PTETA.

5.      Michele Hirsch ("Hirsch") is a tenant residing in 100 Warren (Portside West) and is a member and President of PTWTA.

6.      Cross-claim Defendant the City of Jersey City Rent Leveling Board ("RLB"), has its offices located at 4 Jackson Square, Jersey City, New Jersey 07305, and is a municipal board of Cross-claim Defendant the City of Jersey City ("City") established pursuant to Jersey City

---

[16] The PTETA and PTWTA are comprised of former and current tenants of the Buildings.

34

Municipal Code ("Ordinance"), Sec. 260-11 concerning rent control. The RLB's powers include, *inter alia*, to issue and promulgate procedural rules and regulations to implement the purposes of the Ordinance; to supply information to tenants and landlords; to hold hearings and adjudicate appeals on certain matters within its purview. These powers explicitly include adjudicating tenant appeals that seek reduced rents and other hearings concerning corrections to rent determinations in accordance with the provisions of the Ordinance and other applicable laws.

7.      The Jersey City Bureau of Rent Leveling ("Bureau") [17] is established within the Department of Housing, Economic Development and Commerce, the head of which is the Rent Leveling Administrator. The Bureau is tasked with, *inter alia*, remedying violations of the Ordinance by adjusting rentals, accepting and reviewing applications, bringing appropriate legal charges for violations of the Ordinance, and generally enforcing the Ordinance and related state statutes affecting the rights of tenants.

8.      Counterclaim Defendant the Towers at Portside Urban Renewal Company, L.L.C. ("Portside"), is a New Jersey limited liability company and the owner of the Buildings.

9.      Upon information and belief, Counterclaim Defendant Equity Residential Management, LLC ("Equity"), is the management company for Portside.

**JURISDICTION AND VENUE**

10.     The Court has jurisdiction over Intervenors' crossclaims and counterclaims pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, the Declaratory Judgment Act, 28 U.S.C § 2201 et seq.

---

[17] The Bureau is referred to by myriad different names (e.g. Ordinance uses "Bureau of Rent Leveling", "Jersey City Rent Leveling Bureau"; the RLB Decision uses Jersey City Office of Landlord/Tenant Relations Bureau of Rent Leveling). All such references shall mean the Bureau created by Ordinance Sec. 260-9.

**BACKGROUND**
**Relevant State and Local Laws**

11.     Newly Constructed Multiple Dwelling Act, N.J.S.A. 2A:42-84.1, *et seq.* (the "Act")

permits developers of new construction projects to claim exemptions from municipal rent control

ordinances, provided explicit and strict eligibility criteria are timely satisfied. More specifically,

pursuant to the Act, developers must file written notifications with municipal officials at least 30

days before certificates of occupancy are issued claiming an exemption from rent control

ordinances. N.J.S.A. 2A:42-84.4. Developers must also concurrently serve tenants with statements

on the applicable exemption status as well as the durations of same, prior to tenants entering into

leases in the affected units. The foregoing are strict prerequisites set by the statute and failure to

comply with the statute's requirements means that an owner could not claim an exemption from

municipal rent control. N.J.S.A. 2A:42-84.3.

12.     More specifically, the Act limits a developer's ability to claim exemption from rent

increases as follows:

> a.      The exemption only applies to multiple dwellings constructed after the
> effective date of the act, i.e., 1987. N.J.S.A. § 2A:42-84.2. Multiple
> Dwelling, in turn, is defined as "any building or structure and land
> appurtenant thereto containing four or more dwelling units, other than
> dwelling units constructed for occupation by senior citizens, rented or
> offered for rent to four or more tenants or family units." N.J.S.A. § 2A:42-
> 84.1(e);

b.     The Act limits the period of exemption for "a period of time, not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less." N.J.S.A. § 2A:42-84.2;

c.     The act requires that: "the owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owners claim of exemption from an ordinance under this act…." N.J.S.A. § 2A:42-84.4;

d.     The owner of a multiple dwelling claiming an exemption under the Act has two separate notice requirements concerning prospective tenants and those tenants entering into leases.

e.     Prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, the owner shall furnish the prospective tenant with a written statement that the multiple dwelling in which the premises are located is exempt from rent control for such time as may remain in the exemption period.

f.     Each lease offered to a prospective tenant for any dwelling unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption.

37

13.    N.J.S.A. § 2A:42-84.4 provides as follows:

> The owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption from an ordinance under this act, including therein a statement of the date upon which the exemption period so claimed shall commence, such information as may be necessary to effectively locate and identify the multiple dwelling for which the exemption is claimed, and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed. The owner shall, at least 30 days prior to the date of the termination of the exemption period afforded pursuant to this act, file with the municipal construction official a notice of the date of termination of the exemption period for the affected multiple dwelling. *Emphasis added.*

14.    On or about February 7, 1986, the City adopted its Ordinance.

15.    The Ordinance incorporated provisions mirroring state law's stringent rules – i.e., mandating that developers wishing to be considered for an exemption submit comprehensive exemption claims to the City's construction office 30 days prior to a certificate of occupancy being issued, or otherwise forfeit eligibility. Amendments predicated access for exemption review upon this synchronization of notifications purposefully designed by legislature as a jurisdictional imperative for qualification.

16.    However, even where an exemption from "those provisions of the ordinance which limit the periodic or regular increases in base rentals of multiple dwelling units" applies, owners are still required to comply with other provisions of the Ordinance. See N.J.S.A. § 2A:42-84.2.

17.    For example, the Ordinance not only has various filing and reporting requirements that apply regardless of any statutory exemption, but also specifies how, and by how much, building owners of rental units are permitted to increase rents if they are not otherwise exempt.

The Ordinance at Chapter 260-3 governs allowable rent increases for landlords that are not exempt pursuant to N.J.S.A. § 2A:42-84.1 et seq.

18.    In addition, pursuant to the Ordinance at Chapter 260-3(H), a landlord shall register its rent roll with the Bureau in order to qualify for any rental increase. Pursuant to Chapter 260-9(E), "No … rent roll registration will be deemed filed with the [RLB] unless and until submitted on the [RLB's] official forms and accompanied by all appropriate supporting documents and information and the required filing fees."

19.    Moreover, pursuant to Chapter 260-3(J), "[t]he landlord shall provide each tenant a copy of the Truth-in-Renting Statement and subsequent amendments to said statement and be in full compliance with the landlord identity disclosure provision contained within the statement in order to qualify for any rental increase." These Truth-in-Renting Statements are a product of The Truth-in-Renting Act, N.J.S.A. 46:8-43 et seq.

20.    The current Truth-in-Renting Statements issued by the New Jersey Department of Community Affairs, Division of Codes and Standards, sets forth at page 22, under the heading "Identity of Landlord", language from N.J.S.A. §§ 46:8-27 to 37 and specifically, N.J.S.A. § 46:8-28. This latter provision is from New Jersey's Landlord Identity Law ("Landlord Identity Law"), N.J.S.A. §§ 46:8-27 through 46:8-37, which provides, among other things, that every landlord must comply with certain registration and disclosure requirements and requires that same be provided to every tenant.

21.     Specifically, the Landlord Identity Law, requires that the certificate of registration

contain the following identifying information:

     a.    The name and address of the record owner or owners and the record owners of the rental business, if not the same persons;

     b.    If the record owner is a corporation, the name and address of the registered agent and corporate officers of said corporation;

     c.    If the address of any record owner is not located in the county in which the premises are located, the name and address of a person who resides in the county in which the premises are located and is authorized to accept notices from a tenant and to issue receipts therefor and to accept service of process on behalf of the record owner;

     d.    The name and address of the managing agent of the premises, if any;

     e.    The name and address, including dwelling unit, apartment or room number of the superintendent, janitor, custodian or other individual employed by the record owner or managing agent to provide regular maintenance service, if any;

     f.    "The name, address and telephone number of an individual representative of the record owner or managing agent who may be reached or contacted at any time in the event of an emergency affecting the premises … and who has authority to make emergency decisions concerning the building … and shall, at all times, have access to a current list of building tenants that shall be made available to emergency personnel…."

     g.    The name and address of every holder of a recorded mortgage on the premises;

     h.    If fuel oil is used to heat the building and the landlord furnishes the heat in the building, the name and address of the fuel oil dealer servicing the building and the grade of fuel oil used.

40

22.      Chapter 260-2(F)(1) of the Ordinance incorporates identical requirements as those found in the Landlord Identity Law at N.J.S.A. §§ 46:8-28(a) through (f), differing only with the additions of sections (g) and (h) as follows:

     a.    Chapter 260(F)(1)(g) requires that the landlord include "a list of the base monthly rents of each housing space, by apartment or room number, within the dwelling as of January 1, 1983."

     b.    Chapter 260-2(F)(2) requires that between January 1 and March 3 of each calendar year, all owners and/or landlords of dwellings shall file with the Bureau a new landlord registration statement for each dwelling owned.

     c.    Chapter 260-2(G) also requires that the same information be posted at all times in the lobby, hallway or other conspicuous place within the dwelling.

23. Furthermore, Chapter 260-2(G) states that if any information contained in the statement changes, the landlord shall inform each occupant or tenant of the change in writing within 30 days and correct the information posted within seven days after the change. Section § 260-3 of the Ordinance provides the relevant language concerning allowable increases to rents in buildings that are subject to rent control.

     A.    At the expiration of a lease or at the termination of a lease of a periodic tenant, no landlord of any dwelling as defined in § 260-1 may request or receive a percentage increase in rent which is greater than four percent or the percentage difference between the consumer price index three months prior to the expiration or termination of the lease and three months prior to the commencement of the lease term, whichever is less. For a periodic tenant or for a tenant whose lease term shall be less than one year, said tenant shall not suffer or be caused to pay more than one rent increase in any 12-month period, commencing 15 months prior to and ending three months prior to, the effective date of the proposed increase, whichever is less. However, as a result of the COVID-19 pandemic, no landlord may request or receive any rental increase at the expiration of a lease or the

41

expiration of any periodic tenancy until the end of the state of emergency or six months from adoption of these amendments, whichever comes first.

B.      No more than one such cost-of-living rental increase in any one twelve-month period shall be permitted irrespective of the number of different tenants occupying said housing space during said 12-month period.

C.      Vacant space.

(1)      In the event of a vacant housing space, the landlord may raise the rental above the cost-of-living increase without prior application being made to the Bureau of Rent Leveling, and only if he or she has made capital improvements to the housing space. Such capital improvements will entitle the landlord to increase the base rent of the vacant unit by the following amount:

(a)      For capital improvements up to $5,000.00 in value, the vacant unit's monthly base rent shall be increased by $1.35 per $100.00 of improvement; and

(b)      For capital improvements in excess of $5,000.00, the vacant unit's monthly base rent shall increase by $1.55 per $100.00 of improvement.

(2)      It shall be the sole responsibility of the landlord to register the new rent of any improved unit with the Division of Tenant/Landlord Relations pursuant to § 260-2 of this chapter. No capital improvements shall be recognized under this provision unless they are made in accordance with applicable city codes and the appropriate permits are obtained. It shall be the responsibility of the landlord to document to the Bureau of Rent Leveling and prove the cost of any capital improvements in vacant housing space for which he or she desires to increase the rental.

(3)      The landlord seeking a rent increase under this subsection shall pay an application fee of $75.00 per unit.

D.      The landlord shall supply the following information in writing to any new tenant within the first 10 days of a new tenant's tenancy: the name of and rent paid by all tenants who occupied the apartment rented by the new tenant during the prior 12 months. The landlord shall keep a written record of

42

the information described herein. The landlord shall make this record available to the Rent Leveling Administrator or Board upon request.

E.      It shall be unlawful for any landlord to charge a tenant for the use of a washing machine, refrigerator, cooking stove, air conditioner or any other appliances wherever such appliances were permitted and allowed by the landlord without extra charge. The use of such appliances shall be considered as included in the former rents. Any such extra charge in such situation shall be considered as an unauthorized increase in rents and shall be unlawful unless approved by the Rent Leveling Board. Any landlord who has heretofore charged for such appliances shall be in violation of this chapter and shall be liable for punishment as such.

F.      Any landlord seeking a major capital improvement rent increase based upon a substantial improvement of the dwelling and/or housing space must include in the notice to the tenant a landlord certification that said dwelling and housing space is in substantial compliance as defined by this chapter. All work done on the structure and premises must have been with approval of the appropriate agency or department as evidenced by requisite permits. The completed construction must be in accord with building, fire and other code regulations. A certificate of occupancy, where required by law, and a certificate of code compliance, including a housing inspection report based upon an actual inspection made within six months of the date of the landlord's application, must be produced as evidence. For the purpose of this section only, "substantial improvement" shall mean that the cost of the capital improvements exceeds 50% of the current assessed value, as adjusted to 100% by the county tax equalization ratio prior to the improvements being made.

(1)     If a landlord is determined to be in substantial compliance the increase shall be payable from the date set forth in the original notice of rent increase.

(2)     If a landlord is determined not to be in substantial compliance at the time of the hearing, then the Board may grant provisional approval for the capital improvement and rent increase with such approval to be reviewed within six months. In the event that the subject property is brought into substantial compliance within the six-month period, then the provisional approval shall become final.

43

(3)     In the event that the subject property is not brought into substantial compliance within the six-month period, but the owner has within this period made significant progress toward substantial compliance, the provisional approval shall continue with a further review being scheduled within the following three months. If the property is brought into substantial compliance within the additional three months, the provisional approval shall become final.

(4)     In the event that the owner has not brought the property into substantial compliance or made significant progress toward substantial compliance within the six-month initial period or fails to bring the property into substantial compliance after being accorded the additional three-month extension, the owner provisional approval shall terminate and any capital improvement rent increase collected shall be immediately refunded to the tenant who paid the increase.

(5)     Any capital improvement rent increase approved pursuant to this section shall take effect from the date of determination by the Board upon proper notice as required by the laws of the State of New Jersey.

G.     Any landlord seeking a hardship increase shall include with the application an actual inspection report from the local building or property maintenance department based upon an inspection made within six months prior to the application. An application without said inspection report shall be void. The hearing officer may request an inspection if no inspection report is included in such application. The determination of substantial compliance shall be made by the Rent Leveling Board upon reviewing the list of violations, if any, set forth in the inspection report. If there are any objections thereto, then either party may file a complaint with the Board and a hearing shall be scheduled. The Chairperson of the Board shall intervene whenever necessary, upon request of any party to an application, to assure a prompt inspection by the appropriate department.

(1)     If a landlord is determined to be in substantial compliance, then the hardship request shall be processed subject to the requirements set forth in § 260-10 of this chapter.

(2)     If a landlord is determined not to be in substantial compliance at the time of the hearing on the hardship

44

application, and the Board determines, after hearing, that the application would otherwise be granted, then the Board may grant provisional approval for the hardship application with such approval to be reviewed within six months. In the event that the subject property is brought into substantial compliance within the six-month period, then the provisional approval shall become final.

(3) In the event that the subject property is not brought into substantial compliance within the six-month period but the owner has, within this period, made significant progress toward substantial compliance, the provisional approval shall continue with a further review being scheduled within the following three months. If the property is brought into substantial compliance within the additional three months, the provisional approval shall become final.

(4) In the event that the owner has not brought the property into substantial compliance or made significant progress toward substantial compliance within the six-month initial period or fails to bring the property into substantial compliance after being accorded the additional three-month extension, the owner's provisional approval shall terminate and any rent increase collected shall be immediately refunded to the tenant who paid the increase. In the event that a provisional approval is so terminated, the Board shall dismiss the hardship application. An owner whose application has been so dismissed may reapply for a hardship rental increase. Any reapplication shall be considered an original application under § 260-10.

H. The landlord shall register the rent roll with the Rent Leveling Bureau in order to qualify for any rental increase.

I. If the landlord does not inform or misinforms the tenant concerning the rent paid by the prior tenants or in any manner illegally increases the tenant's rent, the Rent Leveling Bureau shall then accept, hear and adjudicate a compliance of an illegal increase.

J. The landlord shall provide to each tenant a copy of the Truth-In-Renting Statement and subsequent amendments to said statement and be in full compliance with the landlord identity disclosure provision contained within the statement in order to qualify for any rental increase.

45

**Factual Background**

24.     Intervenors' counterclaims and crossclaims involve the Buildings and the decisions made by the Bureau and RLB relative to same. By deed dated September 20, 1988, the property on which the Buildings are located was transferred from Waterview Associates, a New Jersey general partnership, to DeMatteis/Waterview Associates, a New Jersey general partnership, for One Million Dollars ($1,000,000.00).

25.     Thereafter, on September 27, 1988, DeMatteis/Waterview Associates entered into an initial mortgage loan and mortgage note on the property with Citibank, N.A., for One Hundred Twenty Million Dollars ($120,000,000.00).

26.     The term of this Citibank mortgage was four (4) years.

27.     In 1989, the Office of the Construction Official for Jersey City ("Construction Official") issued building permit number 89-0504 to DeMatteis/Waterview Associates for the construction of Portside West.

28.     The property owner, DeMatteis/Waterview Associates, took out the loan and obtained all approvals to build condominiums for sale.

29.     On August 25, 1992, the Construction Official issued a Certificate of Occupancy for Portside West ("West C/O").

30.     Following the completion of construction and the issuance of the C/O, the property owner defaulted on its mortgage to Citibank.

31.     It was not until June of 1994, pursuant to Ordinance 94-062, two (2) years after completion of construction, that Citibank and Jersey City agreed that Portside West, constructed as a condominium project, and not as a multiple dwelling as defined in the Act, would be used for rental apartments.

46

32.     Following a foreclosure on the Property by Citibank, on November 23, 1994, the Hudson County Sheriff issued a Sheriff's Deed transferring the property to Portside Apartments Urban Renewal Partners, LP.

33.     By letter dated November 23, 1994, a full two (2) years and two (2) months after the issuance of the West C/O for 100 Warren Street, Portside Apartments Urban Renewal Partners, LP, sent a letter to the Construction Official stating that pursuant to N.J.S.A. § 2A:42-84.4, Portside Apartments Urban Renewal Partners, LP considered Portside West to be exempt from the Ordinance.

23.     On January 24, 1995, the Office of the Construction Official for Jersey City issued a Certificate of Continued Occupancy for Portside West.

34.     Upon information and belief, at some point after acquiring title to the property on November 23, 1994, but prior to 1996, Portside Apartments Urban Renewal Partners, LP, changed the ownership entity of the property to Portside Urban Renewal Company, L.L.C., without recording a deed for such change in ownership.

35.     On or about July 18, 1996, Portside Apartments Urban Renewal Company, LLC entered into a mortgage for Portside East with Fleet Bank, N.A. for Sixteen Million Five Hundred Thousand Dollars ($16,500,000.00) ("Fleet Mortgage").

36.     On the same day, July 18, 1996, Portside Apartments Urban Renewal Company, LLC, entered into a mortgage for Portside East with The Northwest Mutual Life Insurance Company for Twenty-two Million Five Hundred Thousand Dollars ($22,500,000.00) ("Northwestern Mutual Mortgage").

37.     Both the Fleet Mortgage and the Northwestern Mutual Mortgage had an amortization period ending in July of 2006.

38.      In July of 1996, Portside Apartments Urban Renewal Company, LLC began construction of Portside East, the second of the Buildings.

39.      The Certificate of Occupancy for Portside East ("East C/O") was issued on December 31, 1997.

40.      The owner at the time, Portside Apartments Urban Renewal Company, LLC, failed to send any letter to the Construction Official claiming an exemption for Portside East, as required by N.J.S.A. § 2A:42-84.4, at least 30 days prior to the issuance of the Certificate of Occupancy.

41.      On or about June 10, 1998, both the Fleet Bank Mortgage and the Northwestern Mutual Mortgage were satisfied of record and discharged.

42.      Thereafter, by deed dated June 11, 1998, Portside Apartments Urban Renewal Company, LLC transferred the Property for One Hundred Dollars ($100.00) to the current owner, Portside.

43.      On June 11, 1998, the same day that Portside assumed ownership of the property, Portside took out a new mortgage on the property for Fifty-eight Million Five Hundred Thousand Dollars ($58,500,000.00) with Northwestern Mutual Life Insurance Company (the "New Mortgage").

44.      The amortization period of the New Mortgage was until July 1, 2008.

45.      The New Mortgage was discharged on July 9, 2008.

46.      Throughout their operation and ownership of the Buildings, Portside and Equity failed to abide by the Ordinance.

47.      Throughout their operation and ownership of the Buildings, Portside and Equity failed to abide by the New Jersey statute governing an exemption from those provisions of the Ordinance which limit the periodic or regular increases in base rentals of dwelling units.

48

48.     Throughout their operation and ownership of the Buildings, Portside and Equity failed to file rent rolls with the City pursuant to the requirements of Chapter 260-3(H) and Chapter 260-9(E) of the Ordinance.

49.     Throughout their operation and ownership of the Buildings, Portside and Equity failed to provide any tenant with the landlord certificate of registration required by N.J.S.A. 46:8-28 and Chapter 260-3(J) of the Ordinance.

50.     Throughout their operation and ownership of the Buildings, Portside and Equity have failed to comply with Chapter 260-2(F)(1)(g) of the Ordinance by providing each tenant with a list of the base monthly rents of each housing space, by apartment or room number, within the dwelling…."

51.     Throughout their operation and ownership of the Buildings, Portside and Equity have failed to comply with Chapter 260-2(G) of the Ordinance by failing to post the landlord registration statement at all times in the lobby, hallway or other conspicuous place within the dwelling.

52.     Throughout their operation and ownership of the Buildings, Portside and Equity have failed to file with the Bureau, between January 1 and March 3 of each calendar year, a new landlord registration statement for each dwelling owned, as required by Chapter 260-2(F)(2) of the Ordinance.

53.     Throughout their operation and ownership of the Buildings, Portside and Equity have failed to inform occupants and tenants in writing, within 30 days, if any information contained in the landlord registration statement changes, pursuant to Chapter 260-2(G) of the Ordinance.

54.    Throughout their operation and ownership of the Buildings, Portside and Equity have failed to correct the posted information on the landlord registration statement within seven days after any change, pursuant to Chapter 260-2(G) of the Ordinance.

55.    Throughout their operation and ownership of the Buildings, Portside and Equity have increased rents for the tenants of the Buildings above the lesser of four percent (4%) or the percentage difference between the consumer price index three months prior to the expiration or termination of the lease and three months prior to the commencement of the new lease term, pursuant to Chapter 260-3(A) of the Ordinance

56.    Throughout their operation and ownership of Buildings, Portside and Equity have increased rents in contravention of the provisions of Chapter 260-3(H) and (J) of the Ordinance.

57.    Throughout their operation and ownership of the Buildings, Portside and Equity have failed to supply new tenants, within the first 10 days of the new tenant's tenancy, with the name of and rent paid by all tenants who occupied the apartment rented by the new tenant during the prior 12 months, pursuant to Chapter 260-3(D) and 260-3(I) of the Ordinance.

58.    Throughout their operation and ownership of the Buildings, Defendants have charged new tenants rent in excess of that allowed by Chapter 260, without the authority to do so.

59.    In or about 2020 and 2022, various City officials responded to tenant inquiries as to the applicability of rent control by confirming rent control applied to both Portside West and Portside East. Then, in or about early 2022, the tenants from both buildings received various rent increases, when Landlord had no authority to increase rents some of which exceeded 4% (i.e., the maximum permitted by the City's rent control ordinance) and others skyrocketing as high as 90%, prompting some to submit inquiries with the City's Rent Control Office as to whether they were subject to rent control. In a response email, the Rent Leveling Administrator advised that the

Portside West was subject to rent control. In 2020, via "see-click-fix", Intervenors learned Portside East was subject to rent control as well.

60.    Accordingly, tenants from both Portside West and Portside East filed illegal rent petitions with the Bureau which, pursuant to Chapter 260-7(G) of the Ordinance, was submitted on behalf of all other tenants. Tenants of Portside East filed their petitions on or about May 31, 2022, and tenants of Portside West filed their petitions on or about June 25, 2022. Through their filings, the tenants claimed their rents were being illegally raised by their landlord. The filing was subsequently recognized by the Bureau. The property owner subsequently filed oppositions to the illegal rent petitions.

61.    Thereafter, on or around September 19, 2022, the Rent Leveling Administrator, through the Bureau, in an about face manner from her prior written statement that the Buildings were, in fact, subject to rent control, issued a determination that they were exempt from rent control, in accordance with N.J.S.A. § 2A:42-84.1 et seq. There was no mention of her prior opinion, or that she was now reversing same.

62.    Thus, pursuant to the procedures afforded under the Ordinance (which, in addition to allowing petitions challenging illegal rents to be filed with the Bureau, also allow for tenants to appeal Bureau determinations to the RLB, the tenants appealed the Rent Leveling Administrator's determination. The tenants filed their legal argument on February 7, 2023, the property owner filed its response on March 3, 2023, and the tenants filed their reply on March 24, 2023.

63.    After receiving the parties' submissions, the RLB held a hearing on May 31, 2023, where it heard arguments from the parties. Although separate appeals for the buildings were filed, the RLB consolidated both matters. After the hearing, and at the suggestion of the RLB, the parties

51

agreed to take part in mediation. The mediation, however, was unsuccessful, and the parties consequently returned to the RLB for a determination as to the illegal rent increases.

64.    The RLB convened on October 19, 2023, and determined that the original property owner of both Buildings failed to comply with the requirements of the aforesaid statute and that the properties were never exempt from rent control.

65.    As to Portside West, the RLB found that "the Statute requires that the Property Owner file for the exemption 'at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling.'" The RLB noted that the certificate of occupancy was issued on August 25, 1992 and found "that the property owner could not timely avail itself of the exemption." *See*, ECF Document No. 1-3, Page ID 60, page 8 of 11 (the "RLB Decision")

66.    As to Portside East, the RLB addressed the Bureau's reasoning concerning the lack of a letter seeking the exemption. More specifically, the Bureau stated that Portside was aware of the Statute and its requirements, in November 1994, even if the Construction Code Official at the time... was not. It is likely as not that three years later, with the issuance of the CO for 155 Washington, another request for exemption was sent. Addressing this convoluted reasoning, the RLB found that the Property Owner was clearly aware of the requirement to file the notice and failed to do so does not weigh in its favor, notwithstanding the Construction Official's admittedly confusing response to the Letter of Exemption. The Statute's notice requirement is a mandatory condition precedent to receipt of this rent control exemption requiring strict compliance with its terms. There is no dispute that as it relates to Portside East that the record is devoid of any evidence of compliance with the notice requirement. *See*, ECF Document No. 1-3, p. 1-11, Page ID 60, page 8 of 11.

67.     The RLB rejected the Bureau's argument that since the Portside Towers community is managed "as one development", as the filing of the letter, in 1994, addressed ~~both~~ [only one] Tower. The statute requires that the letter contain 'a statement of the date upon which the exemption period so claimed shall commence and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed.' The earlier letter refers "only to 100 Warren and, therefore, cannot be applied to the second building or any of its units. Id. In concluding its analysis of this issue, the RLB stated that "[W]ith only speculation and conjecture as to whether the Property Owner has ever provided the required notice, the Board finds that the Property Owner has not fulfilled its obligation to provide notice under the Statute and, therefore, the units at 155 Washington are not exempt from the City's rent control ordinance. Id. at Page ID 61, p. 9 of 11.

68.     The RLB thus concluded that "due to the failure by the Property Owner and its predecessor to comply with the notice requirement in N.J.S.A. § 2A:42-84.4, both buildings and all units therein are and have been for the duration of their occupancies subject to rent control. The RLB found "that there was no valid exemption from the beginning of the occupancy of the units." Id. at Page ID 61, page 9.

69.     Finally, in deciding that the notice provision of N.J.S.A. § 2A:41-84.4 was not met, the RLB did not address other grounds submitted by the tenants for their position that the properties were not exempt, i.e., that the original mortgage note that the tenants located (and which was provided to the RLB) would limit the term of any exemption to Portside West, if arguendo same were granted, and that the tenants were never given a pre rental notice, as required by N.J.S.A. § 2A:42-84.3.

70.     While the RLB's Decision, in finding that the Buildings are subject to rent control, was reasonable and based on sound, credible evidence, the enforcement provisions of the RLB's decision were not.

71.     In enforcing its decision, the RLB relied upon a Bureau policy which provides "a 'look back window' of six years for illegal rent petitions, coinciding with the statute of limitations for a cause of action for breach of contract." The RLB stated that the policy was "both policy and practicality," relying on "limitations relating to record keeping and equitable considerations which militate toward finding a reasonable window of time for which adjustments to rent should be made following a successful illegal rent petition. Id. at Page ID page 10 of 11.

72.     The RLB adopted the policy of the Bureau and instructed the Bureau to recalculate rents for all units in each building to comply with the City's rent control regulations going back six years from the date of the first petition for each building (the "Lookback Period"). For Portside West, the rents were to be recalculated from June 25, 2022. For Portside East, the Lookback Period begins on May 31, 2022, the date of the first Portside East petition. The RLB Decision incorrectly states that the first Portside East petition was filed on July 27, 2022.

73.     The Bureau has implemented an enforcement scheme which is in direct violation of the Board's decision and the ordinance.

74.     Notwithstanding the RLB's direction to the Bureau to implement the RLB's decision, the Bureau has deviated from the RLB's direction.

75.     More specifically, in implementing the RLB's decision, the Bureau should have directed the property owner to provide its leases from May 2016, which would have provided the base rent. Instead, the Bureau issued a letter to both attorneys dated November 27, 2023 in which

54

it is solely requesting rental information back to 2018, instead of 2016, as directed by the RLB. Only recently did the Bureau request leases from 2016.

76.     The Bureau further permitted rent increases to Portside for the years 2021, 2022, and 2023 on the sole basis that Portside submitted rent rolls for those years. The Bureau ignored the ordinance provisions which require a property owner to take certain steps without which a rent increase is not permitted. Indeed, at all times, including since Portside purchased the property on June 11, 1998, Portside and Equity have increased rents for tenants at the Buildings in violation of the Ordinance. Portside and Equity never complied with the Ordinance.

77.     For example, in order to implement a legal rent increase, Chapter 260-3(H) of the Ordinance requires that a landlord file a rent roll for each building, in accordance with Chapter 260-9(E). Portside and Equity have consistently failed to file rent rolls for each building, in accordance with Chapter 260-9(E). Yet, despite having failed to comply with the requirements of Chapter 260-3(H) and Chapter 260-9(E), Portside and Equity have increased rents for tenants living in the Buildings.

78.     Even worse, subsequent to the RLB's oral decision on October 19, 2023, Portside and Equity continued to increase rents in contravention of the Ordinance and the RLB Decision, at times in excess of 50%. The tenants directly addressed and advised the City and the RLB of this improper conduct in increasing rents. Yet the conduct continued, as after the RLB's written decision, dated November 3, 2023, Portside and Equity continued to increase tenants' rents in both Buildings. Portside and Equity, in writing, advised the RLB, under a reservation of rights, that they were complying with the Ordinance and were only increasing rents by a maximum of 4%.

79.     The Bureau began its recalculation efforts by requesting that the tenants provide rent receipts to support a determination of the rents from 2018. Establishing a date of 2018 violates

55

the RLB's direction. Additionally, the Bureau's requirement that the tenants provide rent receipts is insufficient to establish a base rent. The landlord's leases are the best indication of the rents from May 2016. The Bureau states that if it does not receive responses, it will average the rents for which it receives responses. The Bureau has since requested leases from the landlord, dating back to May 2016.

80.     The Bureau is derelict in its duties by not following the ordinance.

81.     The RLB's reliance on the Bureau's purported six-year look back policy is arbitrary, capricious and unreasonable and contrary to the provisions of the City's Ordinance. Nowhere in the City's Ordinance is there a limitation to a look back of six years. The case law is clear that the courts require that the RLB correctly enforce the Ordinance. The base rents must be established in light of the Ordinance, which does not permit an increase in rent by the property owner.

## **CROSSCLAIMS**

### **COUNT ONE**
**(Against the RLB, Bureau and City only)**

82.     Intervenors repeat and re-allege each of the foregoing allegations as though set forth herein verbatim.

83.     While the Intervenors agree with the RLB Decision indicating that the landlord is not exempt from rent control, the RLB's determination to rollback rents to what they were 6 years prior to the filing of the first petition is arbitrary, capricious and unreasonable and contrary to law. Requiring that the Bureau only recalculate rents to what they were six years ago is in violation of the Ordinance as follows:

> **§ 260-2(B)** states: "... Any rental increase in excess of that authorized by the provisions of this chapter shall be void."

56

**§ 260-3(H)** states "The landlord shall register the rent roll with the Rent Leveling Bureau in order to qualify for any rental increase. [Emphasis added.]

[add 260-3D]
**§ 260-3(I)** states, "If the landlord does not inform or misinforms the tenant concerning the rent paid by the prior tenants or in any manner illegally increases the tenant's rent, the Rent Leveling Bureau shall then accept, hear and adjudicate a compliance of an illegal increase." The property owner has never properly informed tenants of prior tenant rents.

**§ 260-3(J)** states, "the landlord shall provide to each tenant a copy of the Truth-In-Renting Statement and subsequent amendments to said statement and be in full compliance with the landlord identity disclosure provision contained within the statement in order to qualify for any rental increase." Emphasis added.

**§ 260-2(F)(2)** states "[b]etween January 1 and March 3 of each calendar year, all owners and/or landlords of dwellings shall file with the Bureau of Rent Leveling a new landlord registration statement for each dwelling owned. " Landlords are therefore required to file an updated registration statement each year.

**§ 260-15. Provisions retroactive,** states, "[n]o landlord shall after the effective date of this chapter charge any rents in excess of what he or she was receiving from the effective date of this chapter except for increases as authorized by this chapter; nor shall such landlord charge any rents in excess of what he or she was receiving on January 11, 1973, if such excess is in excess of the rental which is authorized by this chapter.

84.    The property owner has failed to comply with any of the foregoing requirements and instead proceeded to engage in a prolonged and systematic neglect of statutory transparency requirements by failing to furnish satisfactory annual rental registration documentation to the Bureau for 25 years – in direct contravention of explicit ordinance requirements. These requirements were mandatory, irrespective of whether the exemption was valid.

85.    Since the property owner failed to follow rent control requirements after purchasing the Buildings in accordance with 260-2(B), every increase since 1998 must be void. Therefore, in

57

accordance with § 260-2(D), the legal rents in effect are those that existed when the property owner took ownership of the buildings in 1998. In applying a six-year Lookback Period, the RLB is acting in contravention of the ordinance by permitting the property owner to realize rent increases it was not permitted to receive at the expense of the tenants.

## COUNT TWO
### (Against the RLB, Bureau and City only)

86.     Intervenors repeat and re-allege each of the foregoing allegations, as though set forth herein verbatim.

87.     By stating that it is relying on a policy for reasons of practicality due to limitations relating to record keeping and equitable considerations which militate toward finding a reasonable window of time for which adjustments to rent should be made following a successful illegal rent petition, the RLB is acting in an arbitrary and capricious manner. First, there is no support for this position in the ordinance. Second, the record contains clear evidence, as presented by the tenants, as to what the rent was in 1998. It is not necessary for the Bureau to guess at the rent. The property owner, in filing its 1999, Securities Exchange Commission 10K, provides an average rent of $1.73 a square foot. Should the Court uphold the six-year Lookback Period, the rent must be based on $1.73 a square foot, in compliance with the ordinance as the property owner was not entitled to any rent increases.

58

## COUNT THREE
### (Against the RLB and the City only)

88.    Intervenors repeats and re-alleges each of the foregoing allegations, as though set forth herein verbatim.

89.    The proofs provided to the RLB establish that over many years, the property owner falsely advised tenants that the properties were wholly exempt from rent control requirements. This intentional misrepresentation constitutes a wrongful act.

90.    The doctrine of equitable estoppel dictates that a party may not take a litigation position contradictory to its prior actions if this would injure another party who reasonably relied upon such conduct. Here, tenants detrimentally relied for years on the property owner's assurances of exemption status.

91.    Thus, the property owner is equitably estopped from arguing against rent rebates tracing back to June 1998 when initial occupancy commenced under their ownership. By instead limiting refunds to just 6 years, the Board enables the property owner to obtain windfall profits by exploiting years of false claims tenants relied upon in good faith. This arbitrary constraint constitutes reversible error.

## COUNT FOUR
### (Against City, Bureau and RLB)

92.    Intervenors repeat and re-allege each of the foregoing allegations, as though set forth herein verbatim.

93.    The RLB issued a determination finding that the Buildings were not exempt from the Ordinance.

94.     Portside and Equity have failed to follow the requirements of the Ordinance since the inception of their ownership in 1998 and continue to fail to follow the requirements of the Ordinance, which would enable them to realize a legal increase in rent.

95.     The Bureau has failed to recalculate the rents pursuant to the RLB Decision.

96.     Thus, for the reasons set forth above, there exists an actual controversy between the Intervenors, City, Bureau, RLB and Portside/Equity regarding Portside's and Equity's ongoing violation of the Ordinance and City defendants countenance of same.

97.     Thus, pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, 28 U.S.C § 2201 et seq., and the New Jersey Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq., the Court should adjudicate the rights of Intervenors and declare the following:

a.      Portside and Equity are not entitled to set market rents pursuant to the alleged exemption.

b.      Portside and Equity are restrained from acting in accordance with the alleged exemption.

c.      The RLB and the Bureau must enforce the Ordinance's rent control provisions against Portside and Equity.

d.      The RLB shall direct the Bureau to recalculate the rents at the Buildings based on the RLB's Decision.

e.      Additionally, the Board shall direct the Bureau to collect copies of lease agreements for the units at the properties (100 Warren Street and 155 Washington Street) dating to the inception of tenancy at each Tower, and the Bureau shall thereafter recalculate the allowable base rents, based on a look back period commencing as of the first occupancy at the Buildings.

60

**WHEREFORE,** Intervenors demand judgment against The Board and the City, as follows:

1. Finding that the Board acted in an arbitrary and capricious manner, and reversing the Board's decision to recalculate the rent from six years from the filing of the illegal rent petitions, and requiring that rents be recalculated to the base rates as provided by the o\Ordinance;

2. Finding that the Board acted arbitrary and capriciously in limiting the refund of rents to a time six years from the filing of plaintiffs illegal rent petition and requiring that rents be refunded to all tenants in accordance with the recalculation as expressly required under the Ordinance;

3. A judgment dismissing Portside and Equity's Complaint in its entirety and with prejudice;

4. Entering judgment be entered in favor of Intervenors and against Portside and Equity on each of Intervenors' counterclaims.

5. Awarding Intervenors their costs, including reasonable attorneys' fees; and

6. Awarding Intervenors such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

### COUNT ONE
**(Against Portside and Equity)**

98. Intervenors repeat and re-allege each of the foregoing allegations, as though set forth herein verbatim.

99. The RLB issued a determination finding that the Buildings were not exempt from the Ordinance.

61

100.    Portside and Equity have failed to follow the requirements of the Ordinance since the inception of their ownership in 1998 and continue to fail to follow the requirements of the Ordinance, which would enable them to realize a legal increase in rent.

101.    The Bureau has failed to recalculate the rents pursuant to the RLB Decision.

102.    Thus, for the reasons set forth above, there exists an actual controversy between the Intervenors, City, Bureau, RLB and Portside/Equity regarding Portside's and Equity's ongoing violation of the Ordinance and City defendants countenance of same.

103.    Thus, pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, 28 U.S.C § 2201 et seq., and the New Jersey Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq., the Court should adjudicate the rights of Intervenors and declare the following:

a.    Portside and Equity are not entitled to set market rents pursuant to the alleged exemption.

b.    Portside and Equity are restrained from acting in accordance with the alleged exemption.

c.    The RLB and the Bureau must enforce the Ordinance's rent control provisions against Portside and Equity.

d.    The RLB shall direct the Bureau to recalculate the rents at the Buildings based on the RLB's Decision.

e.    Additionally, the Board shall direct the Bureau to collect copies of lease agreements for the units at the properties (100 Warren Street and 155 Washington Street) dating to the inception of tenancy at each Tower, and the Bureau shall thereafter recalculate the allowable base rents, based on a look back period commencing as of the first occupancy at the Buildings.

62

**WHEREFORE,** Intervenors demand judgment against Portside and Equity, as follows:

1.  A judgment dismissing Portside and Equity's Complaint in its entirety and with prejudice;

2.  Entering judgment be entered in favor of Intervenors and against Portside and Equity on each of Intervenors' counterclaims.

3.  Awarding Intervenors their costs, including reasonable attorneys' fees; and

4.  Awarding Intervenors such other and further relief as the Court deems just and proper.

## **RESERVATION OF RIGHTS**

Intervenor-Defendants reserve the right to amend their Answer and crossclaim and/or further plead any other defenses applicable to any and all counts and/or pursue any available counterclaims against Plaintiffs after a reasonable opportunity for discovery. Further, nothing stated in any of the Intervenor Defendants' affirmative defenses constitutes a concession that Intervenor Defendants bear any burden of proof on any issue in which they would not otherwise bear such burden.

**WHEREFORE**, Intervenor Defendants deny that Plaintiffs are entitled to judgment or other relief of any kind and pray for judgment as follows:

1.  That the Court enter a judgment dismissing Plaintiffs' Complaint in its entirety and with prejudice;

2.  That judgment be entered in favor of Intervenor Defendants and against the Board on each of Intervenor Defendants' counterclaims, awarding Intervenor Defendants

their costs, disbursements, and reasonable attorneys' fees and expenses incurred in

connection with this action; and

3.    That Intervenor Defendants be awarded such other and further relief as the Court

may deem proper.

Dated:  Westfield, New Jersey
April 1, 2024

/s/ *Mollie Hartman Lustig*
Mollie Hartman Lustig, Esq.
McLaughlin & Stern, LLP
1 Elm Street, Suite 2
Westfield, New Jersey 07090
Tel: (212) 448–1100
mlustig@mclaughlinstern.com

/s/ *Eric J. Nemeth, Esq.*
Eric J. Nemeth, P.C.
55 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel: (973) 539–2122
enemeth@ejcounsel.com

*Attorneys for Portside Towers East
Tenant Association, Portside Towers
West Tenant Association, Kevin
Weller, Jessica Brann, Joel
Rothfus and Michele Hirsch*

# EXHIBIT B

🅐 Neutral
As of: April 1, 2024 8:48 PM Z

## *ADP, Inc. v. Wise Payments Ltd.*

United States District Court for the District of New Jersey

July 19, 2022, Decided; July 19, 2022, Filed

Civil Action No. 21-12457 (JXN) (JSA)

**Reporter**
2022 U.S. Dist. LEXIS 128596 *; 2022 WL 2833819

ADP, INC., Plaintiff, v. WISE PAYMENTS LIMITED; and WISE US INC., Defendants.

**Notice:** NOT FOR PUBLICATION

**Subsequent History:** Appeal denied by, Motion denied by *ADP, Inc. v. Wise Payments Ltd., 2023 U.S. Dist. LEXIS 96190, 2023 WL 3775319 (D.N.J., June 1, 2023)*

Motion granted by, Findings of fact/conclusions of law at *ADP, Inc. v. Wise Payments Ltd., 2023 U.S. Dist. LEXIS 182644 (D.N.J., Oct. 11, 2023)*

## Core Terms

proceedings, cancellation, Marks, discovery, suspend, suspension, civil action, parties, trademark, hardship, weigh, resources, inequity, unfair, early stage, infringement, defending

**Counsel:** **[*1]** For ADP, INC., a Delaware corporation, Plaintiff: CHRISTINE INTROMASSO GANNON, LIZA M. WALSH, WALSH PIZZI O'REILLY FALANGA LLP, THREE GATEWAY CENTER, NEWARK, NJ; JESSICA K. FORMICHELLA, WALSH PIZZI O'REILLY FALANGA LLP, NJ, NEWARK, NJ.

For WISE PAYMENTS LIMITED, WISE US INC., Defendants: BENJAMIN NATTER, LEAD ATTORNEY, HAUG PARTNERS, LLP, NEW YORK, NY; CAMILLE YVETTE TURNER, LEAD ATTORNEY, HAUG PARTNERS LLP, NY, NEW YORK, NY; PATRICK ANTHONY FLORENTINO, LEAD ATTORNEY, COUGHLIN MIDLIDGE & GARLAND LLP, MORRISTOWN, NJ.

**Judges:** HON. JESSICA S. ALLEN, United States Magistrate Judge.

**Opinion by:** JESSICA S. ALLEN

## Opinion

### ALLEN, U.S.M.J.

This matter comes before the Court by way of Defendants Wise Payments Limited and Wise US Inc.'s (collectively, "Wise")[1] Motion to Stay this action pending the outcome of suspended proceedings before the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB"). (ECF No. 44). Plaintiff ADP, Inc. ("ADP") opposes the motion. No oral argument was heard. *Fed. R. Civ. P. 78(b)*. Having carefully considered the parties' respective submissions, for good cause shown, and for the reasons set forth herein, Wise's Motion to Stay is **DENIED**.

### I. RELEVANT BACKGROUND

### A. Instant Civil Action

On June 11, **[*2]** 2021, Plaintiff filed this trademark infringement and unfair competition action, asserting violations of *sections 32* and *43(a)* of the *Lanham Act (15 U.S.C. §§ 1114, 1125(a))*, the *New Jersey Unfair Competition Act (N.J. Stat. Ann. §§ 56:4-1 et seq.)*, and New Jersey unfair competition common law. (*See* Compl. & Am. Compl., ECF Nos. 1 & 11 at ¶ 10). ADP claims to have rights in what it describes as the well-

---

[1] After commencing this lawsuit, ADP discovered that Defendants changed their corporate names from "Transferwise Ltd." to "Wise Payments Limited" and "Transferwise Inc." to "Wise US Inc." (ECF No. 10). To reflect Defendants' proper corporate names, ADP filed an Amended Complaint. (*See* ECF Nos. 10-11). For ease of reference, throughout this Opinion, the Court will collectively refer to Defendants as Wise.

Mohamed Hegazi

2022 U.S. Dist. LEXIS 128596, *2

known WISELY and WISELY-based trademarks and service marks (collectively, "WISELY Marks"), which it uses "in connection with alternative banking solutions that enable employers to directly deposit payroll, and workers to access their pay from multiple sources using general purpose reloadable debit cards [] and a mobile application." *Id.* ¶¶ 1-3. ADP continues that—with actual knowledge of ADP's trademark rights—Wise: (i) rebranded from TRANSFERWISE to WISE; (ii) expanded their featured goods and services under the new WISE brand; and (iii) began using "confusingly similar" WISE and WISE-based trademarks and service marks (collectively, "WISE Marks") "to designate a broad range of banking and financial services that directly overlap with ADP's services." *Id.* ¶¶ 1-2, 8. ADP further submits that Wise improperly intended to unfairly compete with ADP's WISELY products and services, confuse and deceive consumers, **[*3]** and interfere with the WISELY Marks' goodwill. *Id.* ¶¶ 1-2. ADP, as a result, seeks damages and injunctive relief, including the cancellation of WISE Marks. *Id.* ¶ 10.

On September 24, 2021, Wise moved to dismiss the Amended Complaint pursuant to *Fed. R. Civ. P. 12(b)(6)*. (ECF No. 33). That motion is currently pending. The Court has not yet entered an initial scheduling order, and thus, discovery has not begun.

## B. Subject TTAB Proceedings

Before the instant lawsuit commenced, the parties were engaged in proceedings before the TTAB regarding several of Wise's trademark applications and registrations. (*See generally* ECF Nos. 44-2 & 45). Beginning on June 1, 2020, ADP filed petitions for cancellation of two of Wise's registrations (Nos. 3,202,887 and 3,202,888) on the basis that the WISE Marks had been abandoned and maintained through fraud. (*See* Florentino Decl.,[2] ECF No. 44-3, Exhs. 1-2 (ECF No. 44-4 to 44-5); Finkelstein Decl.,[3] ECF No. 45-1, ¶ 6).[4]

---

[2] The "Florentino Decl." refers to the "Declaration of Patrick A. Florentino in Support of Defendants' Motion to Stay" dated January 14, 2022. (*See* ECF No. 44-3).

[3] The "Finkelstein Decl." refers to the "Declaration of Sharoni S. Finkelstein in Support of Plaintiff's Opposition Defendants' Motion to Stay" dated January 28, 2022. (*See* ECF No. 45-1).

[4] Ultimately, the TTAB dismissed the fraud claim with prejudice on March 22, 2021, and ADP withdrew the proceedings

Thereafter, ADP continued to initiate proceedings to either cancel other registered WISE Marks or to oppose Wise's applications to register WISE Marks (collectively, "Subject TTAB Proceedings"). (*See* Finkelstein Decl., ¶¶ 13-14 & 16-18).[5] In those proceedings, **[*4]** among other things, ADP has argued that the WISE Marks should be cancelled, or not registered, by the TTAB because: (i) ADP's rights are senior to those of Wise; and (ii) the WISE Marks, when applied to the goods or services listed in the registrations or applications, are likely to cause confusion with respect to the WISELY Marks. (*See* Florentino Decl., Exhs. 3-7 (ECF No. 44-6 to 44-10); *see also* ECF No. 44-2 at 5-8).

ADP filed Opposition No. 1 on April 14, 2021 and Opposition No. 2 on May 19, 2021. (Finkelstein Decl. ¶¶ 13-14). On June 11, 2021, the date on which ADP initiated this lawsuit, ADP also filed Cancellation No. 1. (*Id.* ¶ 16). Four days later, on June 15, 2021, ADP moved to suspend Cancellation No. 1 and Opposition Nos. 1 and 2 pending the resolution of this action, arguing that the claims in the Subject TTAB Proceedings and this action overlap, the suspension would not harm Wise, and the suspension would avoid duplicative litigation. (*See id.* ¶ 20 & Exhs. F1, F2 & F4).[6] Wise opposed ADP's motions to suspend those proceedings **[*5]** on June 28, 2021, arguing that ADP's suspension applications lacked good cause and that suspension would prejudice Wise by forcing it to incur unnecessary fees and costs. (*Id.* ¶ 21 & Exhs. G1-G3).

On September 2, 2021, ADP filed Cancellation No. 2 and Opposition No. 3.[7] (*Id.* ¶¶ 17-18). On September

---

without prejudice on April 11, 2021. (*See* Finkelstein Decl., Exhs. D-E).

[5] The Subject TTAB Proceedings consist of the following proceedings: (i) *ADP, Inc. v. Wise Payments Ltd.*, Opposition No. 91268730 (TTAB Apr. 14, 2021) ("Opposition No. 1"); (ii) *ADP, Inc. v. Wise Payments Ltd.*, Opposition No. 91269418 (TTAB May 19, 2021) ("Opposition No. 2"); (iii) *ADP, Inc. v. Wise Payments Ltd.*, Cancellation No. 92077350 (TTAB June 11, 2021) ("Cancellation No. 1"); (iv) *ADP, Inc. v. Wise Payments Ltd.*, Opposition No. 91271453 (TTAB Sept. 2, 2021) ("Opposition No. 3"); and (v) *ADP, Inc. v. Wise Payments Ltd.*, Cancellation No. 92077983 (TTAB Sept. 2, 2021) ("Cancellation No. 2"). (*See* Finkelstein Decl. ¶¶ 13-14 & 16-18).

[6] The exhibits to the Finkelstein Decl. are found in Docket Entry No. 45-2.

[7] Cancellation No. 2 sought the cancellation of a WISE Mark that was registered on August 17, 2021, based on Wise's

2022 U.S. Dist. LEXIS 128596, *5

14, 2021, ADP also moved to suspend these additional TTAB proceedings pending resolution of this action. (*Id.* ¶¶ 23 & Exhs. F3 & F5). ADP relied on the same arguments as those advanced in support of its motions to suspend the earlier proceedings and noted that the TTAB had already suspended those earlier proceedings. (*See id.*, Exhs. F3 & F5).

Indeed, the TTAB suspended the Subject TTAB Proceedings pending final determination[8] of this civil action as follows: (i) Opposition No. 2 on September 2, 2021; (ii) Cancellation No. 1 on September 3, 2021; (iii) Opposition No. 3 on September 14, 2021; (iii) Cancellation No. 2 on October 18, 2021; and (iv) Opposition No. 1 on December 29, 2021 (collectively, "Suspension Orders"). (*See id.*, Exh. H). In reaching its suspension decision, the TTAB highlighted its policy "to suspend proceedings when the parties are involved in a civil action, which **[*6]** may be dispositive of or have a bearing on the Board case." (*See, e.g., id.*, Exh. H1 at 2 (citing *Trademark Rule 2.117(a)*; *New Orleans La. Saints LLC v. Who Dat? Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011))). The TTAB concluded that "[a] decision by the District Court on the infringement claim will not only have a bearing on [ADP's] likelihood of confusion claim, but may also be dispositive of the [] proceeding[s]." (*2011 TTAB LEXIS 208, \*6*). The TTAB noted that the proceedings "ha[d] not been ongoing for a significant period of time and ha[ve] not even reached the discovery stage." *Id.* at 3. Finally, the TTAB found that continuing the proceedings and issuing decisions on ADP's cancellation and opposition petitions—which may be reviewed *de novo* by way of a second federal action wherein the parties could "submit new evidence and [] raise additional claims"—"would be a waste of the Board's and District Court's time and judicial resources." *Id.* at 3-4 (citing *Trademark Act § 21(b)*; *Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 109 USPQ2d 1291, 1295 (4th Cir. 2014)*; *CAE Inc. v. Clean Air Eng. Inc., 267 F.3d 660, 60 USPQ2d 1449, 1458 (7th Cir. 2001)*).

---

application published on November 10, 2020. (*See* Finkelstein Decl., Exh. B4). Opposition No. 3 relates to three applications published on August 31, 2021 for the registration of WISE Marks. (*See id.*, Exh. B5-B6).

[8] According to the TTAB, "[a] proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired." (Finkelstein Decl., Exh. H1 at 4 n.4 (citing TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 510.02(b))).

Thereafter, the instant motion to stay ensued.[9]

## II. MOTION TO STAY

In support of its request for a stay, Wise argues that a balancing of interests weighs in favor of a stay. (ECF No. 44-2 at 10). First, a stay would promote judicial economy because this case is at an early stage and the TTAB could potentially resolve substantially, if not **[*7]** all of, the issues before this Court." (*Id.*). Second, a stay would not prejudice ADP because ADP initially chose to litigate the claims asserted in this action before the TTAB. (*Id.*). And third, without a stay, Wise would suffer hardship and inequity because it has already expended significant resources defending the TTAB proceedings and now would be compelled to expend additional resources defending this civil action. (*Id.* at 10-11). ADP opposes on the basis that the imposition of a stay would be the antithesis of judicial economy. (*See* ECF No. 45 at 8-9). ADP continues that a stay will result in unfair prejudice for ADP since, unlike the TTAB, this Court has the authority to resolve all contested issues as well as accord full relief, including damages and injunctive relief. (*See id.*).

## III. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)*. It "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id. at 254-55*. The requesting party bears the heavy burden of "mak[ing] **[*8]** out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id. at 255*.

Accordingly, in assessing whether a stay of proceedings is warranted, courts weigh a number of factors, including: "(1) judicial efficiency as measured by the stage of the civil litigation and the stay's potential to

---

[9] Wise filed a letter on November 18, 2022, requesting leave to file a motion to stay the action pending resolution of the Subject TTAB Proceedings. (*See* ECF No. 39). ADP opposed the request. (*See* ECF No. 41). The Court granted Wise leave on December 22, 2021. (ECF No. 43).

simplify the issues; (2) harm or unfair prejudice to the non-moving party that will result from the grant of a stay; and (3) the hardship and inequity to the moving party if the stay is denied." *Shaf Int'l, Inc. v. Ultimate Leather Apparel, Inc., Civ. No. 20-2569, 2021 U.S. Dist. LEXIS 22139, at *5 (D.N.J. Feb. 4, 2021)* (quoting *Tigercat Int'l v. Caterpillar Inc., Civ. No. 16-1047, 2018 U.S. Dist. LEXIS 74191, at *6 (D. Del. May 2, 2018)*). "Additional considerations also 'arise depending upon the circumstances . . . .'" *Iowa Network Servs. v. AT&T Corp., Civ. No. 14-3439, 2019 U.S. Dist. LEXIS 170792, at *20 (D.N.J. Oct. 1, 2019)* (quoting *Akishev v. Kapustin, 23 F. Supp. 3d 440, 446 (D.N.J. 2014)*). The Court finds that, on balance, the relevant factors and competing interests weigh against issuing a stay of this lawsuit.

## IV. <u>DISCUSSION</u>

### A. Promoting Judicial Efficiency And Simplifying Issues

As to the first factor, Wise has failed to meet its burden of showing that the stay will promote judicial economy. *Landis, 299 U.S. at 255*; *Shaf Int'l, Inc., 2021 U.S. Dist. LEXIS 22139, at *5*. While this civil action is in its early stages, Wise has not produced any specific proof that the now suspended Subject TTAB Proceedings will necessarily advance more expeditiously than proceedings **[*9]** before this Court. *See PBTM LLC v. Football Nw., LLC, Civ. No. 19-2081, 2022 U.S. Dist. LEXIS 109544, at *7 (W.D. Wash. June 21, 2022)* (considering lack of evidence submitted by the moving party as to the pace of TTAB proceedings); *CFA Inst. v. Am. Soc'y of Pension Prof'ls & Actuaries, Civ. No. 19-00012, 2019 U.S. Dist. LEXIS 75122, at *8 (W.D. Va. May 3, 2019)* (same); *see also Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 864 (9th Cir. 1979)* ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

While some of the Subject TTAB Proceedings have been pending longer than the instant civil action, they have not advanced procedurally. There is no dispute that, prior to the TTAB's Suspension Orders, "the parties ha[d] not conducted discovery conferences, exchanged initial disclosures, or served any discovery requests." (Finkelstein Decl. ¶ 34). There also is no indication that a trial date had been set in the TTAB Proceedings.

Surprisingly, Wise takes the position that "the stage of the TTAB proceedings is irrelevant." (ECF No. 46 at 2). In support of its position, Wise relies on several cases where courts within this Circuit granted motions to stay the civil action pending the outcome of the TTAB proceedings. However, this Court's review of these cases confirms that the advanced stage of discovery and readiness for dispositive motion practice in those TTAB proceedings **[*10]** played a critical role in the courts' respective decisions to grant the motions for a stay. *See Aero AG Holdings, LLC v. Summit Footwear Co., Civ. No. 20-16655, 2021 U.S. Dist. LEXIS 173131, at *2-4 (D.N.J. Sep. 13, 2021)* (TTAB proceeding was pending for over six years prior to commencement of the action, during which time discovery proceeded at length); *Shaf Int'l, Inc. v. Ultimate Leather Apparel, Inc., Civ. No. 20-2569, 2020 U.S. Dist. LEXIS 228972, at *2-5 (D.N.J. Dec. 7, 2020)* (TTAB proceeding was pending for nearly a year before the filing of the action, during which time discovery was completed and the case was "ripe for dispositive motion practice" before the TTAB); *Tigercat Int'l, 2018 U.S. Dist. LEXIS 74191, at *3* ("extensive" and "long-lasting" TTAB proceeding, where for "[o]ver the course of three years the parties [] engaged in discovery proceedings [and disputes]" (citation and quotation marks omitted)).

In short, this Court finds that the stage of the TTAB proceedings is a relevant consideration when deciding whether to grant a motion to stay. *See CFA Inst., 2019 U.S. Dist. LEXIS 75122, at *9* (denying motion to stay in favor of a TTAB proceeding that "ha[d] been pending for over one year and the parties have not exchanged any discovery, nor set a date for trial"); *SafeRack, LLC v. Bullard Co., Civ. No. 17-1613, 2018 U.S. Dist. LEXIS 131077, at *2-3 (D.S.C. Aug. 3, 2018)* (denying motion to stay in favor of a TTAB proceeding where discovery had just commenced). Given the early stage of the Subject TTAB Proceedings, and the absence of proof that they will advance more quickly than this civil action, the Court finds that **[*11]** Wise has not demonstrated that a stay will promote judicial efficiency.

The Court further finds that staying the action would not clearly simplify or resolve the issues relevant to ADP's federal and state trademark infringement, false designation of origin, and unfair competition claims. Even if this Court were to stay the action, and the TTAB were to reconsider its Suspension Orders and issue decisions on ADP's cancellation and opposition petitions, those decisions are subject to potential further review before the United States Court of Appeals for the Federal Circuit or a second federal district court. *See*

2022 U.S. Dist. LEXIS 128596, *11

*B&B Hardware, Inc. v. Hargis Indus., 575 U.S. 138, 144, 135 S. Ct. 1293, 191 L. Ed. 2d 222 (2015)* (quoting *15 U.S.C. § 1071*). There could potentially be a second district court action wherein "the parties can conduct additional discovery and the judge resolves registration *de novo.*" *Id.* (citations omitted). Indeed, the TTAB issued its Suspension Orders, in part, for this very same reason, stating that continuing the proceedings "would be a waste of the Board's and District Court's time and judicial resources." (*See* Finkelstein Decl., Exh. H1 at 3-4). *See also PBTM LLC, 2022 U.S. Dist. LEXIS 109544, at *9* ("Thus, a stay in favor of the TTAB proceeding is unlikely to simplify the issues that will eventually be before the Court in any **[*12]** case."). The Court agrees.

As any decision by the TTAB on ADP's cancellation and opposition petitions is subject to challenge in another federal action pursuant to *15 U.S.C. § 1071*, the Court finds that the first factor weighs against issuing a stay. Moving forward with scheduling an Initial Scheduling Conference, pursuant to *Federal Rule of Civil Procedure 16* and *Local Civil Rule 16.1*, while Wise's motion to dismiss is pending, will promote judicial efficiency in these circumstances.

## B. Harm or Unfair Prejudice to ADP

Wise also has failed to show that the requested stay will not harm or unfairly prejudice ADP. *Landis, 299 U.S. at 255*; *Shaf Int'l, Inc., 2021 U.S. Dist. LEXIS 22139, at *5*. Given the suspension of the Subject TTAB Proceedings in their early stage, the Court finds that ADP will be unfairly prejudiced if it is forced to wait for those proceedings to resume and fully decided on the merits before ADP may litigate their infringement and related claims before this Court. *See SafeRack, LLC, 2018 U.S. Dist. LEXIS 131077, at *6* ("SafeRack would therefore suffer significant prejudice if they are forced to wait at least 18 months, if not longer, to proceed with their claims before this Court."). "Infringement claims involve some urgency, as [o]ngoing business conduct is likely to be involved and harm, possibly irreparable, may be accruing.'" *Shire City Herbals, Inc. v. Blue, Civ. No. 15-30069, 2015 U.S. Dist. LEXIS 122678, at *10 (D. Mass. Sep. 15, 2015)* (citations and quotation marks **[*13]** omitted). Accordingly, the Court finds that the second factor weighs against the imposition of a stay.

## C. Hardship or Inequity to Wise

Since the Court has found that ADP will be prejudiced if

a stay is issued, Wise must "make out a clear case of hardship or inequity." *Landis, 299 U.S. at 255*. The Court finds that Wise has not satisfied its burden.

Wise primarily contends—without submitting evidence—that it "has already spent considerable sums defending" several proceedings before the Board, and that it "should not be forced to expend additional sums defending district-court proceedings that are even costlier." (ECF No. 44-2 [citing *Onyx Enters. Int'l Corp. v. Volkswagen Grp. of Am., Inc., Civ. No. 20-cv-09976, 2021 U.S. Dist. LEXIS 69727, at *11 (D.N.J. Apr. 9, 2021)*]).[10] Even without the submission of evidence, the Court finds that this factor alone does not warrant issuing the stay, especially given that "the parties spent virtually no time before the TTAB and this Court [undisputedly] has jurisdiction over all aspects of [ADP's] . . . claims." *See PBTM LLC, 2022 U.S. Dist. LEXIS 109544, at *8* ("Nor do they explain how they will be adversely impacted by having to litigate in this Court rather than before the TTAB."); *CFA Inst., 2019 U.S. Dist. LEXIS 75122, at *12* ("[B]ecause the TTAB proceeding is still in a very early stage, [movant] has not yet had to invest significant time and resources in its defense of [the] Notice of Opposition."). **[*14]** In any event, since the Subject TTAB Proceedings have now been suspended, Wise need not expend additional resources, defending itself in that proceeding, at this time.

Finally, the Court finds equally unconvincing Wise's contention that it will suffer hardship if forced to defend this litigation because ADP chose to initiate opposition proceedings before commencing the action and then continued to file them along with cancellation proceedings. (ECF No. 44-2 at 17-18). It is not uncommon for parties to do so, as "a petition to the [TTAB] is the primary means of securing a cancellation." *Beasley v. Howard, 14 F.4th 226, 235 (3d Cir. 2021)*. Equally important, the first of the Subject TTAB Proceedings was commenced only a few months before the start of this litigation, and, subsequently, ADP promptly moved to suspend them before discovery commenced.[11] Accordingly, the Court finds that

---

[10] Notwithstanding Wise's contentions, *Onyx Enters. Int'l Corp.* is inapposite. That case involved a motion to stay litigation before this Court in favor of another, more advanced civil action that was pending in another district court, not before the TTAB.

[11] Wise further argues that it will be prejudiced because ADP's claims are meritless. (ECF No. 44-2 at 18). The Court finds

Mohamed Hegazi

hardship to Wise, if any, will be negligible, and thus a stay is not warranted based on this final factor.

On balance, in weighing the applicable factors, the Court finds that Wise has not met its heavy burden of demonstrating a clear case of hardship or inequity if it is required to go forward with the instant suit at this time. Accordingly, the Court finds **[*15]** that a stay of this civil action is not warranted.

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, and for good cause shown, Wise's Motion to Stay, (ECF No. 44), is **DENIED**. An appropriate form of order will be entered.

*/s/ Jessica S. Allen*

**HON. JESSICA S. ALLEN**

**United States Magistrate Judge**

Dated: July 19, 2022

## ORDER

**THIS MATTER** having come before the Court by way of Defendants Wise Payments Limited and Wise US Inc.'s Motion to Stay (ECF No. 44); and the Court having carefully considered the parties' respective submissions in support of and in opposition thereto; and for the reasons set for in the accompanying Opinion issued on this date; and for good cause shown,

**IT IS** on this 19th day of July, 2022,

**ORDERED** that the Motion to Stay, (ECF No. 44), is **DENIED**; and it is further

**ORDERED** that the Clerk of Court shall terminate the Motion to Stay (ECF No. 44).

*/s/ Jessica S. Allen*

**HON. JESSICA S. ALLEN**

**United States Magistrate Judge**

---

**End of Document**

---

that the merits of a claim is not an appropriate consideration on a motion for a stay, and thus declines to address this contention.

Mohamed Hegazi