UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY, NEWARK DIVISION

|  |  |
|---|---|
| The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Jersey City and the City of Jersey City Rent Leveling Board,<br><br>Defendants. | Case No. 2:23-cv-22291-MCA-JRA<br><br>**PLAINTIFFS' RESPONSE TO TENANTS' MOTION TO INTERVENE AND STAY** |

Plaintiffs (collectively, "Portside") respectfully submit this response to the Motion to Intervene and Stay, (Dkt. No. 30), filed by certain tenants and associations of tenants (the "Tenants").

**INTRODUCTION**

The Tenants have moved to intervene in this matter, including for the purpose of asserting their own legal challenges to the Jersey City Rent Leveling Board ("Board") decision at issue in this case. Portside does not oppose the Tenants' intervention *as plaintiffs* to assert those challenges. Permitting a single court to hear all of the parties' federal and state-law challenges to the Board's decision will serve the interests of judicial efficiency and the avoidance of potential conflicting decisions.

Portside, however, objects to two aspects of the Tenants' motion: (a) the Tenants should not be permitted to intervene as *defendants* to Portside's claims challenging the Board's order, including because the Tenants can make no showing that the Board and Jersey City will not adequately defend the order; and (b) the Court should deny the Tenants' request to stay or bifurcate

1

proceedings on Portside's federal claims and its state statutory claim, which would run contrary to the case schedule the Court already entered and the efficient adjudication of this case.

For those reasons, and as further detailed below, Portside respectfully suggests the following treatment of the Tenants' motion:

First, the Court should permit the Tenants to intervene, but only as plaintiffs, to reflect the Tenants' interests in challenging aspects of the Board's decision, as expressed in four of the five claims alleged by Tenants, which are directed against Jersey City and the Board. (*See* Dkt. No. 29-2.) The Tenants can make no showing that Jersey City and Board will not adequately defend the Board's order against Portside's claims, a requirement for Fed. R. Civ. P. 24(a).

Second, the Court should deny the Tenants' motion to stay or bifurcate Counts I through V of Portside's claims, which has no legal or practical merit.

Third, to promote the efficient adjudication of claims in this case, the Court should permit the parties to file motions seeking to resolve threshold legal issues, relatively early in the case schedule. Some of Portside's and the Tenants' respective challenges to the Board's order may be adjudicated as a matter of law. All such claims could be presented and briefed in the form of dispositive motions. This process would allow for the efficient resolution of threshold claims, possibly mooting further proceedings, with the ability to proceed with any fact-based claims later in the existing schedule, if necessary. Portside will attempt to fashion a proposed schedule for such motions together with the Tenants and Jersey City.

Each point is further detailed below.

## BACKGROUND

Portside filed this action in November 2023, challenging a decision of the Board holding that apartment buildings owned and operated by Portside ("Portside Towers") were retroactively

subject to a Jersey City rent control ordinance. (Dkt. No. 1.) As set forth in the Complaint, the Board reached that conclusion despite: (1) a prior and well-reasoned decision by the Jersey City Rent Leveling Administrator reaching the opposite conclusion; (2) a multi-decade course of conduct by Portside, Jersey City, and tenants treating Portside Towers as exempt from the Jersey City ordinance; and (3) provisions of New Jersey state law and the United States Constitution prohibiting the Board's retroactive and arbitrary decision. (*Id.*) Portside's Complaint alleged claims only against Jersey City and the Board, not the Tenants.

On December 19, 2023, the Tenants filed their own action in New Jersey state court (Hudson County) challenging the Board's decision with a complaint in lieu of prerogative writ. In general, the Tenants' complaint challenged the Board's requirement that Portside's rents be recalculated for six preceding years. In the Tenants' view, Portside's rents must be recalculated for all time, going back to initial occupancy of the buildings in the 1990s. The Tenants did not allege any claim against Portside.

On March 12, 2024, the Court held an initial scheduling conference in this case. (*See* Dkt. No. 24.) At that conference, Portside and Jersey City presented and agreed to a relatively expedited case schedule, which would result in the completion of fact discovery in November 2024 and the completion of expert discovery by March 2025. (*Id.*) Counsel for the Tenants appeared at the scheduling conference and did not raise any objection to the proposed schedule. (*See* Dkt. 17, 23-25). Following that conference, the Court entered a case schedule that largely tracked the parties' agreed submission. (Dkt. No. 25.) The parties have since moved forward with discovery pursuant to that case schedule, issuing written discovery, making initial disclosures, and (in the case of Portside) producing thousands of pages of documents.

On April 1, 2024, the Tenants filed their motion to intervene in this case.  (Dkt. No. 30.) The Tenants' motion does not state whether the Tenants seek to intervene as plaintiffs or defendants, but the Tenants attached to their motion a purported answer to Portside's claims against Jersey City and the Board.  (Dkt. No. 29-2.)  In addition to an answer, the Tenants' proposed pleading asserts four "crossclaims" against the City, the Board, and the Bureau of Rent Leveling (the "Bureau").  (*Id.* at 59-64 ¶¶ 82-97.)  Those claims generally allege that the City, Board, and Bureau misapplied the Jersey City rent control ordinance, with a focus on the "lookback" period for any recalculation of rents.  (*Id.* at ¶¶ 85, 87, 91, 95.)  In addition, the Tenants' proposed pleading alleges a "counterclaim" against Portside, in the form of a declaratory judgment claim that generally seeks a ruling that Portside may not charge market rents.  (*Id.* at 64-66 ¶¶ 98-103.)

Along with their request to intervene, the Tenants also asked that the Court stay or bifurcate Portside's federal law and state statutory claims.  (Dkt. No. 30 at 18-19.)  In particular, the Tenants argue that all of Portside's claims under the United States Constitution (Counts I through IV) and its claim under New Jersey statute (Count V) should be stayed or bifurcated while the Court proceeds only on Portside's and the Tenants' claims in lieu of prerogative writ and the Tenants' claims for declaratory judgments.  (*Id.* at 16, 18-19.)

## ARGUMENT

**I.      Portside Does Not Oppose The Tenants' Intervention As Plaintiffs, But The Tenants Should Not Be Permitted To Intervene As Defendants To Portside's Claims.**

Portside does not oppose the Tenants' intervention in this case.  The Tenants, however, should be permitted to intervene only as *plaintiffs*, asserting their own challenges to the Board's decision (*e.g.*, Dkt. No. 29-2 at 59-64 ¶¶ 82-97), not as defendants to Portside's claims.  Three primary reasons support that result:

4

First, there is no basis under Fed. R. Civ. P. 24 for the Tenants to intervene as defendants to Portside's claims. The Tenants argue that Rule 24(a)(2) supports their motion, but they identify no valid reason why their claimed interests in opposing Portside's claims are not "adequately represented by an existing party in the litigation," namely, Jersey City and the Board. Fed. R. Civ. P. 24(a)(2). Jersey City and the Board have appeared in this case to defend the Board's decision. In the Third Circuit, where "one party is a government entity charged by law with representing the interests of the applicant for intervention, we presume the government entity's representation to be adequate." *Pennsylvania Gen. Energy Co. v. Grant Twp.*, 658 F. App'x 37, 40 (3d Cir. 2016) (denying intervention) (internal quotations and citations omitted). A potential intervenor can overcome that presumption of adequacy only "by making a *compelling* showing to the contrary." *Id.* (emphasis added).

The Tenants make no such showing here. They argue that they do not have the same interests as Jersey City and the Board because the Board "failed to apply the correct legal interpretation of the Lookback Period," (Dkt. No. 29-2 at 13), but that is simply a restatement of the *Tenants' claim against the Board*, not an interest that is allegedly unrepresented in response to *Portside's* claims. The Tenants also speculate that Jersey City and the Board will not have the "fortitude to stand up to the mega-corporate interests" supposedly represented by Plaintiffs (Dkt. No. 30 at 13), but this is empty rhetoric, not a "compelling showing." *See, e.g., Builders Ass'n of Metro. Pittsburgh v. City of Pittsburgh,* No. 2:22-CV-706-RJC, 2023 WL 2758931, at *13 (W.D. Pa. Apr. 3, 2023) ("[t]he Intervenors' arguments that they have a stronger interest in safeguarding affordable housing than the City and that the City may decide to prioritize broader citywide interests . . . are not enough to meet this burden." In short, the Tenants have not identified any sufficient interest against Portside's claims that "that is not duplicative" of the existing parties.

*Sullivan v. DB Invs., Inc.,* No. CIV.A. 04-2819, 2006 WL 892707, at *4 (D.N.J. Apr. 6, 2006) (denying intervention).

Second, even under the standards of permissive intervention pursuant to Rule 24(b), the Tenants should be permitted to intervene only as plaintiffs, not defendants to Portside's claims. *Mendham Methodist Church v. Morris Cnty.*, No. 23CV2347 (EP) (JSA), 2024 WL 471580, at *6 (D.N.J. Feb. 5, 2024) ("Though denial of intervention as of right does not automatically mandate a denial of permissive intervention, the reasons for the denial can inform a court's decision on permissive intervention."). As discussed, the Tenants' interests are more than adequately protected by Jersey City's and the Board's defense of Portside's claims. Moreover, permitting the Tenants to intervene as defendants to Portside's claims would create unnecessary complications for the efficient adjudication of the case. For example, the Tenants have asserted twenty-two alleged "affirmative defenses" to Portside's claims against Jersey City and the Board, spanning from "estoppel" to "voluntary waiver" to "barred by documentary evidence." (Dkt. No. 29-2 at 34-36.) These types of "defenses" have nothing to do with the validity of the Board's order, which is the crux of Portside's claims, yet the Tenants apparently seek to inject a multitude of side issues and non-sequiturs into that inquiry. Similarly, introducing another "defendant" to Portside's claims would likely create complications for efficient discovery and briefing procedures, particularly where the Tenants have already indicated that they seek to slow the progress of Portside's claims. (*E.g.*, Dkt. No. 30 at 19-20.) Treating each of Portside and the Tenants as plaintiffs, with Jersey City and the Board as defendants, will allow for clear party lines and the orderly progress of all claims.

Third, as a practical matter, the Tenants and Portside will each have an ample opportunity to represent their own interests in this litigation as plaintiffs prosecuting their own respective

6

claims. The Tenants have alleged four claims attacking aspects of the Board's decision while Portside has alleged seven; (Dkt. No. 1; Dkt. No. 29-2 at 59-64 ¶¶ 82-97); each party is most naturally aligned as a plaintiff against the defendant Board and other Jersey City entities. District courts are permitted to impose "appropriate conditions or restrictions [on intervention to ensure the] efficient conduct of the proceedings." Fed. R. Civ. P. 24(a) (advisory committee's note to 1966 amendment). Here, the Tenants' intervention as plaintiffs, not defendants, is an appropriate condition.

## II.     The Court Should Deny The Tenants' Motion To Stay Or Bifurcate.

The Tenants also argue that the Court should stay or bifurcate Portside's Counts I-V, purportedly in the interest of "saving judicial resources." (Dkt. No. 29-1 at 19.) The Court should deny that request. The Tenants' proposed stay is disfavored and inconsistent with the schedule the Court already set at the March 12th conference. *See Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010) (citing *Landis v. N. Am. Co.*, 229 U.S. 248, 254 (1936) ("A stay of a civil proceeding is an extraordinary remedy and is not favored.")). The Tenants elected to seek to intervene in this case only after a case schedule had been set and did not object at the March 12th conference to the parties' originally submitted plan. (*See* Dkt. 17, 23-25.) Discovery has since gone forward pursuant to that schedule. The Tenants have no basis upon which to join a case initiated by another party, with full knowledge of the preexisting case schedule, and then seek to upend that schedule with a stay or bifurcation.

Further, the Tenants offer no legitimate reason to sideline Portside's Counts I-V. The Tenants argue that their own claims represent "threshold" issues, but, in reality, several of Portside's claims could resolve the entire dispute, potentially avoiding the need to adjudicate other claims. Portside's Count V, alleging that the Jersey City Board's decision violates a New Jersey

state law exemption from rent control (N.J.S.A. § 2A:42-84.2), is one such claim; if the Court enters judgment for Portside on that claim, all other claims of Portside and the Tenants would be moot.  Similarly, Portside's Counts I through IV, alleging that the Jersey City Board's decision violates the United States Constitution and New Jersey law, if correct, would invalidate the decision and moot all other claims.  Though the Tenants suggest that their own claims may moot Portside's claims, they fail to explain why that would be so, and, in any event, the Tenants' position does not convert their claims into "threshold" matters any more than Portside's claims.

### III.     The Court Should Permit The Parties To File Motions Raising Threshold Legal Issues.

Rather than staying or bifurcating claims, Portside suggests that the Court allow the parties to file motions in the relative near term setting out any claims that may be adjudicated as a matter of law and/or on undisputed facts  Allowing the parties to present legal claims through motions filed in the near term would advance the case efficiently and permit the resolution of threshold issues that may moot further proceedings.  *E.g.*, Fed. R. Civ. P. 16(c)(2)(A) (permitting the court to adopt procedures for "formulating and simplifying the issues").  If those motions do not resolve the case, the parties can present all remaining claims consistent with the existing case schedule.  Portside will work with the Tenants and the City to develop an agreed schedule and sequencing for such motions.

### IV.     Portside Has Followed The Law, Contrary To The Tenants' Accusations.

Finally, the Tenants' moving papers contain multiple unfounded accusations against Portside that have no bearing on the Tenants' intervention or their other requested relief.  Portside is compelled to respond briefly.  *First*, Portside has not "drastically increas[ed] rents" rents at Portside Towers since it filed its complaint in November 2023.  (Dkt. 30 at 2, 11-12.)  However, Portside tenants have wrongfully withheld rent, paid only partial rent, or claimed refunds of rents

paid years prior since this litigation has been ongoing.  (*See* Dkt. 19 at 2-3.)  *Second*, the Portside Towers are not "indisputably subject" to Jersey City's Rent Control Ordinance.  (Dkt. 30 at 2.)  As outlined in Counts I through V of Portside's complaint, by retroactively stripping Portside of the state-granted rent control exemption, the Board's decision violated the United States Constitution, New Jersey law, and the New Jersey Exemption Statute § 2A:42-84.2 *et seq*.  (Dkt. 1 at 16-28.)  *Third*, Portside has not "conceal[ed] the rent control status of the building for over two decades." (Dkt. 30 at 2.)  As alleged in Count VI of the complaint, the Board's decision was arbitrary, capricious, and counter to law because it, among other errors, failed to consider that the City and the Board treated Portside Towers as exempted from rent control for decades.  (Dkt. 1. at 28-31.)

## CONCLUSION

For each reason, Portside respectfully submits: (1) it does not object to the Tenants' requested intervention as plaintiffs in this matter, but the Tenants should not be permitted to intervene as defendants to Portside's claims; (2) the Court should deny the Tenants' motion to stay or bifurcate any of Portside's claims; and (3) the parties should work to present the Court with a proposed plan for the filing of motions in the relative near term in order to present legal issues in an efficient manner.

Respectfully submitted,

The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC

By: /s/ Derek D. Reed

*Attorney for Plaintiffs the Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC*

Derek D. Reed, Esq. (Attorney ID # 038062003)

9

Jeffrey Plaza, Esq.
Ehrlich, Petriello, Gudin
Plaza & Reed
A Professional Corporation
60 Park Place, Suite 1016
Newark, New Jersey 07102
(973) 643-0040

Terri L. Mascherin
Andrew W. Vail
Daniel J. Weiss
Jenner & Block LLC
353 Norh Clark Street
354 Chicago, Illinois 60654
Phone: (312) 222-9350
Facsimile: (312) 840-7375

*Attorneys for Plaintiffs*

10