## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE TOWERS AT PORTSIDE URBAN RENEWAL COMPANY, LLC and EQUITY RESIDENTIAL MANAGEMENT, LLC<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF JERSEY CITY and THE CITY OF JERSEY CITY RENT LEVELING BOARD,<br><br>Defendants. | Civil Action No.: 2:23-cv-22291-MCA-JRA<br><br><br>**CERTIFICATION OF MOLLIE HARTMAN LUSTIG, ESQ. IN FURTHER SUPPORT OF INTERVENORS' MOTION TO INTERVENE AND STAY** |

MOLLIE HARTMAN LUSTIG, of full age, certifies as follows:

1. I am an attorney at law of the State of New Jersey and Partner with the law firm of McLaughlin Stern, LLP, with an office located at 1 Elm Street, Suite 2, Westfield, New Jersey 07090. We, alongside Eric J. Nemeth, Esq., of Eric J. Nemeth, P.C., are the attorneys for the intervenors in this matter, Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch (collectively, "Intervenors"). As such, I have personal knowledge of the facts herein.

2. This Certification is submitted in further support of Intervenors' Motion to Intervene and Stay.

3. Attached hereto as **Exhibit A** is a true and correct copy of <u>Acad. Hill, Inc. v. City of Lambertville</u>, Civil Action No. 19-426 (BRM) (ZNQ), 2020 U.S. Dist. LEXIS 118036, 2020 WL 3642694 (D.N.J. July 6, 2020).

4. Attached hereto as **Exhibit B** is a true and correct copy of <u>Bishop Prop. Mgmt. & Magnolia Mgmt. v. City of Jersey City Rent Leveling Bd.</u>, Docket No. A-5516-1873, 2020 N.J. Super. Unpub. LEXIS 2141, 2020 WL 6553789 (App. Div. Sept. 21, 2020).

5. Attached hereto as **Exhibit C** is a true and correct copy of <u>Jackson Trails, LLC v. Twp. Of Jackson</u>, Civil Action No. 20-1150 (MAS) (ZNQ), 2020 U.S. Dist. LEXIS 189562 (D.N.J. Oct. 9. 2020).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:    April 18, 2024

<u>/s/ Mollie Hartman Lustig</u>
Mollie Hartman Lustig, Esq.
McLaughlin & Stern, LLP
1 Elm Street, Suite 2
Westfield, New Jersey 07090
Tel: (212) 448–1100
mlustig@mclaughlinstern.com

*Attorneys for Portside Towers*
*East Tenant Association,*
*Portside Towers West Tenant*
*Association, Kevin Weller,*
*Jessica Brann, and Joel Rothfus*

# EXHIBIT A

 Neutral

As of: April 19, 2024 1:38 AM Z

# *Acad. Hill, Inc. v. City of Lambertville*

United States District Court for the District of New Jersey

July 6, 2020, Decided; July 6, 2020, Filed

Civil Action No. 19-426 (BRM) (ZNQ)

**Reporter**

2020 U.S. Dist. LEXIS 118036 *; 2020 WL 3642694

ACADEMY HILL, INC., MERRICK WILSON, and RIVER VALLEY HEIGHTS CORPORATION, Plaintiffs, v. CITY OF LAMBERTVILLE, DAVID DELVECCHIO, JOSEPH JINGOLI & SONS, INC., JOSEPH JINGOLI, JR., and MICHAEL JINGOLI, Defendants.

**Subsequent History:** Dismissed by, Summary judgment denied by, As moot, Motion denied by, As moot, Partial summary judgment denied by, As moot *Acad. Hill, Inc. v. City of Lambertville, 2021 U.S. Dist. LEXIS 36246, 2021 WL 754092 (D.N.J., Feb. 26, 2021)*

Related proceeding at *Acad. Hill v. City of Lambertville, 2021 N.J. Super. Unpub. LEXIS 666, 2021 WL 1541591 (App.Div., Apr. 20, 2021)*

## Core Terms

amend, parties, spot zoning, settlement, futility, entire controversy doctrine, ordinance, inverse, reopen, planning board, zoning, Consolidated, propose an amendment, new party, Residential, conspiracy, preclusive, sovereign, merits, notice, redevelopment plan, strict liability, public entity, res judicata, state court, municipality, abnormally, hazardous, immunity, courts

**Counsel:** **[\*1]** For PAUL S. WERTHER, Mediator: PAUL S. WERTHER, LEAD ATTORNEY, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, MORRISTOWN, NJ.

For ACADEMY HILL, INC., MERRICK WILSON, Plaintiffs: WILLIAM J. CALDWELL, CARTER, VAN RENSSELAER & CALDWELL, PC, CLINTON, NJ.

For CITY OF LAMBERTVILLE, Defendant: PRIMITIVO JOSEPH CRUZ, LEAD ATTORNEY, Malamut and Associates, LLC, Cherry Hill, NJ; TIMOTHY J KORZUN, LEAD ATTORNEY, SHEAK & KORZUN, PC, PENNINGTON, NJ; KELLY ANNE GRANT, Malamut and Associates, LLC, Cherry Hill, NJ.

For DAVID DELVECCHIO, Defendant: PRIMITIVO

JOSEPH CRUZ, LEAD ATTORNEY, Malamut and Associates, LLC, Cherry Hill, NJ; TIMOTHY J KORZUN, LEAD ATTORNEY, SHEAK & KORZUN, PC, LAWRENCEVILLE, NJ; KELLY ANNE GRANT, Malamut and Associates, LLC, Cherry Hill, NJ.

**Judges:** ZAHID N. QURAISHI, United States Magistrate Judge.

**Opinion by:** ZAHID N. QURAISHI

## Opinion

**MEMORANDUM OPINION**

This matter comes before the Court upon Plaintiffs Academy Hill, Inc. ("Academy Hill"), Merrick Wilson ("Wilson"), and River Valley Heights Corporation's (collectively, "Plaintiffs") Amended Motion to Amend their Complaint (the "Motion"). (Mot., ECF No. 35.) Defendants City of Lambertville, Lambertville Planning Board, and David DelVecchio ("DelVecchio") (collectively, **[\*2]** "Defendants") opposed, (Defs.' Opp'n, ECF No. 36), and Plaintiffs did not reply. The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to *Federal Rule of Civil Procedure*[1] *78* and *Local Civil Rule 78.1*. For the reasons set forth herein, Plaintiffs' Motion is granted in part and denied in part.[2]

---

[1] All references to Rules hereinafter refer to the Federal Rules of Civil Procedure, unless otherwise identified.

[2] On a motion to amend, the Court analyzes the futility of a proposed amendment in the same manner as it would a *Rule 12(b)(6)* motion to dismiss. *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)*. In ruling on a motion to dismiss, the Court accepts as true all well-pled factual allegations in the Complaint. *See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)*.

Mohamed Hegazi

## I. BACKGROUND

### A. Factual Background

Academy Hill owns a tract of real property located within the City of Lambertville, New Jersey, constituting discrete parcels of land, one of which is the largest undeveloped tract of real property remaining within the City of Lambertville's limits. (Proposed Am. Compl. ("PAC") ¶¶ 10-12, ECF No. 35-3.) Academy Hill acquired the property intending to develop it into residential housing. (*Id.* ¶ 13.) At the time of acquisition, the land was zoned as "R-3 Planned Residential Development," which permitted "usages including higher density housing." (*Id.* ¶ 114.) In 1998, Academy Hill sought approval from the City of Lambertville to develop sixty-six housing units. (*Id.* ¶ 15.) After its submission, and prior to its approval, the City of Lambertville adopted Lambertville Zoning Ordinance No. 98-18, "which eliminated the R-3 Planned Residential District, and significantly **[*3]** decreased the housing density permitted within [the property]." (*Id.* ¶ 17.)

On December 3, 1998, Academy Hill filed a Complaint in Lieu of Prerogative Writ in the Superior Court of New Jersey, Law Division, Hunterdon County, against DelVecchio, the City of Lambertville Planning Board, and the City Council of Lambertville. (*Id.* ¶ 18.) A separate suit was filed by "similarly situated and aggrieved parties" in a federal action the same year. (*Id.* ¶ 19.) During the 1998 state litigation, the Court ordered that Lambertville Zoning Ordinance No. 98-18 be struck down as void and invalid. (*Id.* ¶ 20.) In 2001, a settlement was reached between Academy Hill, the City of Lambertville Planning Board, and the City of Lambertville, which was memorialized in a Settlement Agreement. (*Id.* ¶ 21.) "The Settlement Agreement established a new zoning district, Residential Option 2 Overlay District, consisting of the Subject Tract exclusively, which included a minimum tract size of twenty (20) acres,.. . and ... allowed for forty-six housing units." (PAC ¶ 22.) "The terms . . . also provided that passage of the Ordinance establishing the Residential Option 2 Overlay District would provide [] Academy Hill with **[*4]** 'a reasonable development opportunity for [Academy Hill's] properties, so as to amicably resolve the zoning dispute between the parties[.]'" (*Id.* ¶ 24.)

Plaintiffs now state that "Academy Hill has encountered actions from the Defendants, individually and collectively, which have been undertaken in bad faith, with ulterior motives and personal animosity, and have unreasonably impaired and precluded development by Plaintiff Academy Hill, Inc. of the [property]." (*Id.* ¶ 26.) Wilson claims that DelVecchio has verbally threatened "that he would do everything he could to see that Plaintiff Academy Hill, Inc. would never develop [the property]." (*Id.* ¶ 27.) Plaintiffs made numerous efforts to obtain approval to develop the property, which were rejected. (*Id.* ¶¶ 28-32.) Academy Hill then resolved to sell the property, and entered into a contingent sales contract with a third-party developer. (*Id.* ¶¶ 32-33.) The agreement hinged upon Academy Hill obtaining subdivision approval and the construction of side improvements. (*Id.* ¶ 33.) Academy Hill submitted another subdivision application for approval, but met with further retaliation and rejection. (*Id.* ¶¶ 34-48.) Indeed, Wilson was invited to **[*5]** speak on behalf of Academy Hill's application at a special subcommittee meeting, but at the meeting Wilson was not permitted to discuss Academy Hill's application, and the meeting, instead, centered around the City potentially taking Academy's Hill's property through eminent domain. (*Id.* ¶¶ 48-52.) Plaintiffs assert that there is no tract of land within the City of Lambertville zoned in the same manner, and that "Residential Option 2 Overlay was passed solely to accommodate Plaintiff Academy Hill, Inc.'s development of [the property]." (*Id.* ¶¶ 59-60.) Plaintiffs state that this agreement expired, and Academy Hill was prevented from actualizing its sale, because of the prohibitive efforts of DelVecchio and the various arms of the City of Lambertville's municipal government. (*Id.* ¶¶ 79-82.)

In 2015, DelVecchio, through the City of Lambertville Planning Board and Council, caused Academy Hill's property to be removed from the Sewer Service Area, despite leaving all other adjoining property within the Sewer Service Area. (*Id.* ¶ 61.) Academy Hill contested the removal which caused significant delay and cost substantial resources. (*Id.* ¶ 72.) The property was ultimately returned to the Sewer **[*6]** Service Area. (*Id.* ¶ 73.) In 2017, Academy Hill acquired an additional parcel of land, and another in 2018, that subsequently have been included in Lambertville's "Redevelopment District" and are now subject to condemnation. (*Id.* ¶¶ 74-75.) Plaintiffs also claim that DelVecchio has been compensated by Joseph Jingoli & Sons, a business entity operating in the same field as Academy Hill, and that "DelVecchio has and continues to financially benefit personally and professionally from this employment." (*Id.* ¶¶ 94-95.)

Plaintiffs further assert that the City of Lambertville's

Mohamed Hegazi

passing of Resolution Number 100-2018, which designated Academy Hill's property an area in need of redevelopment with the power of condemnation, constituted a taking without just compensation. (*Id.* ¶¶ 89-90, I:2-3[3].) Plaintiffs allege that "the designation of Plaintiffs' property as in need of rehabilitation is pretextual by design and in reality is intended to prevent Plaintiffs from developing their property." (*Id.* ¶¶ 2:2-3.) Plaintiffs claim that "[t]he City of Lambertville, under the guise of achieving settlement of its Mount Laurel Housing obligation represented to the Superior Court of New Jersey that it would **[*7]** take all necessary steps to effectuate the acquisition of the Plaintiff[s'] site," and that this settlement constitutes a taking of Plaintiffs' property without just compensation. (*Id.* ¶¶ 3:2-3.) Finally, Plaintiffs state that the City of Lambertville's settlement "is pretextual by design and in reality is intended to prevent Plaintiffs from developing their property." (*Id.* ¶ 4:2.)

## B. Procedural History

Plaintiffs filed their Complaint in this Court on January 11, 2019. (Compl., ECF No. 1.) On December 20, 2019, this action was consolidated with Civil Action No. 19-16037, a pending action by Plaintiffs Wilson and Academy Hill against Defendant City of Lambertville. (Order, ECF No. 18.) At the time of consolidation, there was a pending motion to amend the complaint in Civil Action No. 19-16037, which the undersigned directed during a telephone status conference must be renewed in the consolidated action. (*See* Letter, ECF No. 21.) On February 2, 2020, Plaintiffs filed their initial Motion to Amend, (Mot. to Am., ECF No. 23), which Defendants opposed (ECF No. 29), and to which Plaintiffs replied (ECF No. 34), but the Court detected that factual allegations within the Consolidated Complaint **[*8]** were not present in the initial Motion's PAC, (*compare* Consolidated Compl. ¶¶ 5-101 *with* initial Prop. Am. Compl., ECF No. 23-3), and Plaintiffs subsequently refiled the instant Amended Motion to Amend to include the omitted factual allegations (ECF No. 35).

There is an additional wrinkle to this matter in the form of prior litigation. Defendants highlight that Plaintiffs brought a similar action in this Court in 2013, *Academy Hill v. City of Lambertville*, f. 13-5182 (D.N.J. filed Aug. 28,2013) ("Academy Hill 2013"), in which Plaintiffs

Academy Hill and Wilson brought a similar (though not identical) action against Defendants David Del Vecchio and the City of Lambertville, as well as nonparties the City Council of the City of Lambertville, the Planning Board of the City of Lambertville, and Kenneth Rogers. (*See generally* Compl., *Academy Hill*, No. 13-5182, ECF No. 1.) On November 3, 2015, the Academy Hill 2013 action was administratively terminated pending settlement discussions between the parties, with an eye toward potentially reopening the litigation in February 2016. (Order, *Academy Hid*, No. 13-5182, ECF No. 43.) In the Order, the Court stated that the parties were able to "reopen **[*9]** this case at any time if settlement discussions fail." (*Id.*) The parties never sought to reopen the case.

Additionally, there is a pending appeal before the New Jersey Superior Court, Appellate Division, in another case brought by Academy Hill, Inc., and Wilson against the City of Lambertville, the City Counsel of the City of Lambertville, the Planning Board of the City of Lambertville, and David DelVecchio. (*See* Cruz Deel. Ex. D, ECF No. 36-1.)

## C. Plaintiffs' Proposed Amendments

In its PAC, Plaintiffs seek to add four substantive claims, an additional plaintiff, and three additional defendants. (*See generally* PAC, ECF No. 35-3.) Plaintiffs seek to add River Valley Heights Corporation as a plaintiff, and Joseph Jingoli & Sons, a business entity; Joseph Jingoli, Jr.; and Michael Jingoli as defendants. (*Id.* ¶¶ 5:2-5.) Plaintiffs also seek to add the following claims: contribution for violations of the *New Jersey Spill Compensation and Control Act (the "Spill Act")*, (*id.* ¶¶ 5:8-14); common law strict liability for Lambertville's creation of abnormally dangerous conditions, (*id.* ¶¶ 6:2-4); unlawful spot zoning, (*id.* ¶¶ 7:2-5); and common law conspiracy, (*id.* ¶¶ 8:2-14).

## II. PARTIES ARGUMENTS [*10]

## A. Plaintiffs' Argument

Plaintiffs argue that they should be permitted to amend because "there is clear support for the conclusion that solid waste was deposited on Plaintiff[s'] property during its prior ownership by the City of Lambertville." (Pls.' Moving Br. 1, ECF No. 35-1.) Plaintiffs also argue that "there is no dispute that the City has adopted

---

[3] Because the PAC's individual Counts begin numbering at one, the paragraph numbers outside of the factual allegations will be distinguished by Count first.

Redevelopment Plans with vastly different criteria for adjacent, but similarly situated properties." (*Id.*)

## B. Defendants' Opposition

Defendants respond that Plaintiffs' proposed amendments "contravene[] New Jersey's entire controversy doctrine, and are also time-barred." (Defs.' Opp'n Br. 2, ECF No. 36.) Defendants state that Plaintiffs are unable to recover costs under the Spill Act because "the Spill Act does not permit imposing liability in a private contribution action against state actors for activities that occurred prior to the original effective date of the Act in 1977." (*Id.*) Defendants argue that the unlawful spot zoning claim should be denied because "challenges to local land use decisions [] are properly brought in state court as an action in lieu of prerogative writ and, further, must be commenced within 45 days of accrual of **[*11]** the right to challenge." (*Id.* at 3.) Defendants argue that Plaintiffs' conspiracy claim should not be permitted as contrary to New Jersey's entire controversy doctrine because Plaintiffs asserted this same claim in the Academy Hill 2013 action, which was later administratively terminated. (*Id.*)[4]

## III. LEGAL STANDARD

*Rule 15(a)(2)* authorizes a party to amend its pleadings "only with the opposing party's written consent or the court's leave." *Rule 15(a)(2)* further instructs that "[t]he court should freely give leave when justice so requires." Though within the discretion of the Court,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

---

[4] Defendants also contend that Counts One through Four of Plaintiffs' PAC should not proceed for various legal reasons. (Defs.' Opp'n Br. 15-19.) The Court does not reach the merit of these arguments. On December 20, 2019, this Court consolidated this action with Civil Action No. 19-16037, and ordered the Plaintiffs to file a Consolidated Complaint combining their claims in each action. (Order, ECF No. 18.) Because Counts One through Four of Plaintiffs' PAC derive from the Consolidated Complaint (ECF No. 28), which finds its basis in the original Complaint in Civil Action No. 19-16037 (*see* Compl., *Academy Hill*, No. 19-16037, ECF No. 1), these arguments are more appropriately addressed on a motion to dismiss.

virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under *Rule 12(b)(6)*." *In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434*. "[T]he futility of amendment may **[*12]** only serve as a basis for denial of leave to amend where 'the proposed amendment is frivolous or advances a claim that is legally insufficient on its face.'" *Miller v. Beneficial Mgmt. Corp., 844 F. Supp. 990, 1001 (D.N.J. 1993)* (quoting *Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990))*. "The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)*. "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Harrison Beverage Co., 133 F.R.D. at 468*.

## IV. DISCUSSION

## A. The Addition of Parties, the Entire Controversy Doctrine, and *Res Judicata*

In analyzing whether a party may amend to add new parties, the Court must ascertain whether the additions will be futile or result in prejudice to other parties. Additionally, "because Plaintiff's motion seeks to add . . . a new defendant in this matter, the motion implicates [*Rule 21*]." *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc., No. 13-5592, 2014 U.S. Dist. LEXIS 31681, 2014 WL 988829, at *1 (D.N.J. Feb. 27, 2014)* (collecting cases). *Rule 21* states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." *Fed. R. Civ. P. 21*. "In evaluating the propriety of an amended pleading pursuant to [*Rule 21*], the Court applies the same liberal standard applicable to motions arising under [*Rule 15(a)*]." *Id.* (collecting cases) (internal quotation marks omitted).

Defendants do not oppose the addition of the proposed plaintiff. Defendants oppose the addition of the proposed **[*13]** defendants, arguing that the civil conspiracy claim against them is futile because it is barred by the entire controversy doctrine. (Defs.' Opp'n

Mohamed Hegazi

Br. 10-11.) "However, current parties unaffected by the proposed amendment do not have standing to assert claims of futility on behalf of proposed defendants." *Custom Pak Brokerage, LLC, 2014 U.S. Dist. LEXIS 31681, 2014 WL 988829, at *2*; *see also Chesler v. Jersey City, No. 15-1825, 2019 U.S. Dist. LEXIS 204989, 2019 WL 6318301, at *3 (D.N.J. Nov. 26, 2019)* ("[C]urrent parties only possess standing to challenge an amended pleading directed to proposed new parties on the basis of 'undue delay and/or prejudice.'"). Defendants may not oppose the addition of the new parties on the proposed parties' behalf on the basis of futility, because Defendants lack standing to do so. Defendants, however, are able to oppose claims asserted against them. If they are able to successfully prevent Plaintiffs from amending to add the claim against them on futility grounds, Defendants may be able to effectively prevent the addition of new parties. Stated differently, if Defendants can prevent addition of the claim asserted against both Defendants and the proposed defendants, Plaintiffs will be unable to state a claim against the proposed defendants, and Plaintiffs will not be able to add them as parties.

The entire controversy doctrine, an idiosyncrasy **[*14]** of New Jersey law, "embodies the principle that the adjudication of a legal controversy should occur in one litigation and in only one court; accordingly, all parties involved in a litigation should at the very least present at that proceeding all of their claims and defenses that are related to the underlying controversy." *Cogdell by Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 560 A.2d 1169, 1172 (3d Cir. 1989)* (citation omitted). "Since its constitutional codification, the doctrine has continually evolved through the common law so that it currently encompasses a mandatory rule for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in a litigation." *Id. at 1173*.

The Third Circuit further instructs that "when the prior decision is a federal decision ... it is important to look to *Erie* principles[5] to decide which sovereign's law to apply." *Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 143 (3d Cir. 1999)*. The New Jersey Supreme Court has recognized that "federal courts are considered those of another sovereign," *Mortgageling*

*Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 662 A.2d 536, 541 (N.J. 1995)*, and considers the entire controversy doctrine as procedural, *see Oliver v. Ambrose, 152 N.J. 383, 705 A.2d 742, 746 (N.J. 1998)*; *Harley Davidson Motor Co. v. Advance Die Casting, Inc., 150 N.J. 489, 696 A.2d 666, 668 (N.J. 1997)*; *Woodward-Clyde Consultants v. Chem. & Pollution Scis., Inc., 105 N.J. 464, 523 A.2d 131, 135 (N.J. 1987)*. "Maintaining a cohesive federal system . . . does not require that the other parts of the federal system honor our entire **[*15]** controversy doctrine." *Mortgageling, 662 A.2d at 542*. In a case examining the preclusive effects of the entire controversy doctrine to two cases brought in federal court, the Third Circuit has explained:

> We conclude that respecting courts' power to determine the preclusive effects of their own rulings is a significant federal interest. In particular, the claim joinder provisions of the Federal Rules of Civil Procedure express a federal policy about what claims must be joined to avoid later preclusion. Applying New Jersey preclusion law to determine the preclusive effects of federal cases would frustrate the policy embodied in the Rules, and we decline to do so. Instead we will follow the federal rule that the law of the issuing court—here, federal law—determines the preclusive effects of a prior judgment.

*Paramount Aviation Corp., 178 F.3d at 145*; *see also In re Kaplan, 143 F.3d 807, 814-15 (3d Cir. 1998)* ("[F]ederal courts will apply their own rule of res judicata.").

Even if the Court were to apply New Jersey's entire controversy doctrine, "[a] dismissal without prejudice is not an adjudication on the merits and does not bar reinstitution of the same claim in a later action." *Woodward-Clyde Consultants, 523 A.2d at 135* (citing *Malhame v. Borough of Demarest, 174 N.J. Super. 28, 415 A.2d 358, (N.J. Super. Ct. App. Div. 1980)* (further quotations and citations omitted) (holding that the institution of the same subsequent action to a **[*16]** counterclaim dismissed without prejudice did not violate the entire controversy doctrine). Because the current action was initiated in federal district court, rather than New Jersey state court, the traditional principles of *res judicata* apply.

"A party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Att'y Gen. of U.S., 621 F.3d 340,*

---

[5] Though the Court's jurisdiction arises from federal questions, the Court's exercise of supplemental jurisdiction over Plaintiffs' state claims requires an *Erie* analysis. *See Chin v. Chrysler, LLC, 538 F.3d 272, 278 (3d Cir. 2008)*.

Mohamed Hegazi

*347 (3d Cir. 2010)*. *Rule 41* provides that certain voluntary dismissals, and dismissals without prejudice, as was entered in the Academy Hill 2013 action, are not considered final determinations on the merits. *Fed. R. Civ. P. 41(a)(1)(A)(ii)*, *(a)(1)(B)*, *(b)*. The Court's Order in the Academy Hill 2013 action explicitly stated that the matter was administratively terminated without prejudice. (Order, *Academy Hill*, No. 13-5182.)

Defendants argument that that *Local Civil Rule 41.1(b)* renders the Academy Hill 2013 action a final determination on the merits is unpersuasive. (Defs.' Moving Br. 10-11.) The text of *Rule 41(b)* itself contemplates actual settlement between the parties, and requires a formal stipulation of dismissal, and the entry of a sixty (60) day order, none of which occurred in Academy Hill 2013. Here, the **[\*17]** case was administratively terminated "pending the parties' settlement discussions," with explicit permission that the "parties may request to reopen the case at any time if settlement discussions fail." (Order, *Academy Hill*, No. 13-5182, ECF No. 43.)

*K.S. v. Hackensack Board of Education*, cited by Defendants, is distinguishable because the Court "dismissed the earlier case without prejudice to the right of either party to reopen the action within sixty (60) days upon a showing of good cause," and the plaintiff did not seek to reopen her case within the sixty days in compliance with the Court's Order. *No. 16-2155, 2017 U.S. Dist. LEXIS 28702, 2017 WL 788207, at \*7 (D.N.J. Mar. 1, 2017)* (citation omitted). Defendants' other authority, *Bernard Haldane Association, Inc. v. Harvard Professional Group*, is similarly distinguishable in that "[t]he Order provided the action was 'dismissed without costs and without prejudice to the right, upon good cause shown within 60 days, to reopen the action if the settlement is not consummated,'" which was not pursued by the plaintiff. *185 F.R.D. 180, 181 (D.N.J. 1999)*. Here, unlike in the cases cited by Defendants, the Court's Order in the prior action did not inform Plaintiffs that they were confined by a sixty-day window, but instead permitted them to reopen the case at any time if **[\*18]** the parties were unable to reach a settlement. While it is unlikely this Court intended to permit the parties the ability to reopen the case in perpetuity, the Court declines to interpret past the written text of the Order to determine its limitations.

In sum, the Court will not apply the entire controversy doctrine to bar Plaintiffs' claims, but will instead apply federal principles of *res judicata*. The Court's Order in the Academy Hill 2013 action does not constitute a final judgment on the merits sufficient to preclude Plaintiffs' claims. Because Defendants' separate challenge to Plaintiffs claim, asserting its own interest, fails, Defendants are unable to challenge the addition of the proposed new parties on their behalf. Plaintiffs will be permitted to add the proposed new parties and to include their claim of civil conspiracy.

**B. NJ Spill Act & Abnormally Hazardous Activity Claim**

Next, Plaintiffs seek to add a claim against the City of Lambertville for violations of the Spill Act, *N.J. Stat. Ann. § 58:10-23.11, et seq.* (PAC ¶¶ 5:7-14.) Defendants counter that "[t]he New Jersey Supreme Court has held that there is no legislatively created liability for Spill Act claims against state entities for alleged contribution **[\*19]** causes of action occurring prior to 1977." (Defs.' Opp'n Br. 7.) The Court agrees with Defendants that Plaintiffs' proposed claim under the Spill Act is futile.

The New Jersey Supreme Court has held that "the Spill Act contains no clear expression of a legislative intent to waive the State's sovereign immunity retroactively to cover periods of State activity prior to the Spill Act's enactment." *NL Indus., Inc. v. New Jersey, 228 N.J. 280, 156 A.3d 1043, 1045 (N.J. 2017)*. While the Court contemplates that the State is culpable for its contamination of land with hazardous waste since the enactment of the Spill Act, "[a]bsent a clear and specific indication that the Legislature intended to impose a retroactive liability . . ., retroactive waiver of the State's sovereign immunity for Spill Act contribution claims concerning pre-Act activities will not be inferred." *Id.* The New Jersey Supreme Court's clear direction that the State has not waived sovereign immunity for actions that occurred prior to 1977, and Plaintiffs' affirmation that the City of Lambertville sold the land to Academy Hill's predecessor-in-interest[6] in 1967 (PAC ¶ 47),

---

[6] The Court notes that the City of Lambertville, as a municipality, is not a sovereign entitled to sovereign immunity, as was the case in *NL Industries, Inc., 156 A.3d at 1043*. The New Jersey legislature, however, enacted the New Jersey Tort Claims Act "to establish immunity for government action as the rule and liability as the exception." *Lee v. Brown, 232 N.J. 114, 178 A.3d 701, 709 (N.J. 2018)* (citing *N.J. Stat. Ann. § 59:1-2*). It is unlikely that the New Jersey Supreme Court intended to shield the State of New Jersey from retroactive liability based on unclear legislative intent, but not New Jersey's local governments.

demonstrates that Plaintiffs' claim fails as a matter of law.

Plaintiffs also seek to add a common law tort claim against the City **[\*20]** of Lambertville for its engagement in abnormally hazardous activities through its contamination and pollution of Academy Hill's property (PAC ¶¶ 6:1-4). Because the City of Lambertville is a municipality, it is not entitled to sovereign immunity; instead, a New Jersey municipality's governmental immunity derives from the *New Jersey Tort Claims Act ("NJTCA")*, which states: "Except as otherwise provided in this act, a public entity[7] is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." *N.J. Stat. Ann. § 59:2-1(a)*. Under the NJTCA, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." *Id. § 59:2-2*.

A plaintiff may not pursue a tort in strict liability against New Jersey state actors under the NJTCA. *Id. § 59:9-2(b)* ("No judgment shall be granted against a public entity or public employee on the basis of strict liability . . . ."); *see Ayers v. Jackson Twp., 106 N.J. 557, 525 A.2d 287, 296 (N.J. 1987)* (the NJTCA "precludes recovery against governmental entities for . . . strict liability claims"); *see also Dalehite V. United States, 346 U.S. 15, 44-45, 73 S. Ct. 956, 97 L. Ed. 1427 (1953)* (holding that the government **[\*21]** cannot be held strictly liable in tort under the federal *Tort Claims Act*). The NJTCA is clear that Plaintiffs are prohibited from pursuing a claim against the City of Lambertville, a public entity, under a theory of strict liability. For these reasons, Plaintiffs may not amend the Consolidated Complaint to include either the claim under the Spill Act or the common law claim for abnormally hazardous conduct against the City of Lambertville.

### C. Inverse Spot-Zoning Claim

Finally, Plaintiffs seek to add a claim that the City of Lambertville, in adopting the 2018 redevelopment plan "that provides for a substantially lesser density per acre

[] arbitrarily, capriciously and unreasonably creat[ed] a distinction whereby Plaintiffs' property would receive less favorable treatment [than other similarly situated property]." (PAC IN 7:2-5.) Plaintiffs seek the "[r]evision of the terms and conditions of the 2018 plan to match those of [the] 2001 redevelopment plan," as they allege that the 2018 redevelopment plan is an "arbitrary, capricious, and unreasonable action by Lambertville [which] constitutes unlawful spot zoning." (*Id.* ¶ 5.) Defendants respond that "Plaintiffs proposed amendment challenging **[\*22]** the City's adoption of the redevelopment plan as unlawful spot zoning should be denied as futile because it plainly constitutes a challenge to a local land use decision, which New Jersey Court Rules make clear must be brought in state court." (Defs.' Opp 'n Br. 14.) Alternatively, Defendants argue that even if Plaintiffs could amend to add this claim, that Plaintiffs Motion to Amend falls outside of the forty-five (45) day window set out by the New Jersey Court Rules. (*Id.* (citing *N.J. Ct. R. 4:69-6*).)

Strictly speaking, Plaintiffs seek to assert a claim of inverse spot zoning, which differs from spot zoning in an important respect. "Spot zoning is an epithet used by the Courts to describe a zoning ordinance that is adopted to favor a property owner and in contravention of the 'comprehensive plan.'" 36 David J. Frizell & Ronald D. Cucchiaro, N.J. Prac., Land Use Law § 3.11.1 (3d ed., Oct. 2019 Update). Inverse spot zoning "refers to a zoning ordinance directed to disfavor a particular owner or developer, in a discriminatory way." *Id.* Here, Plaintiffs claim that the City of Lambertville passed an ordinance causing Academy Hill's property to be treated differently to the detriment of Academy Hill would constitute **[\*23]** inverse spot zoning.

Defendants' argument that Plaintiffs are required to assert this claim in state court is unavailing. This Court has previously exerted supplemental jurisdiction over state claims alleging that an ordinance is arbitrary, capricious, and unreasonable under the Municipal Land Use Law, *N.J. Stat. Ann. § 40:55D-62(a)*. *See Al Falah Cur. v. Twp. of Bridgewater, No. 11-2397, 2013 U.S. Dist. LEXIS 190076, 2013 WL 12322637, at \*16-17 (D.N.J. Sept. 30, 2013)* (denying summary judgment to the defendant on inverse spot-zoning claims). *28 U.S.C. section 1367* instructs, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." That Plaintiffs would have regularly brought this claim in state court does not render this

---

[7] "'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." *N.J. Stat. Ann. § 59:1-3*.

federal forum inappropriate.

Defendants' contention that Plaintiffs claim is time-barred is, on its face, more meritorious. The New Jersey Court Rules provide that:

> No action in lieu of prerogative writs shall be commenced to review a determination of a planning board or board of adjustment . . . after 45 days from the publication of a notice once in the initial newspaper of the municipality or a newspaper of general **[\*24]** circulation in the municipality, provided, that if the determination or resolution results in a denial or modification of an application, after 45 days from the publication of the notice or the mailing of the notice to the applicant, whichever is later.

*N.J. Ct. R. 4:69-6(b)(3)*. Though the City of Lambertville adopted a revised plan on November 26, 2018, it appears that the trigger for the accrual of Plaintiffs' claim is the date of publication or mailing of the notice, not the date of adoption. *Id.* Assuming *arguendo*, however, that this date and an additional forty-five days passed within the thirteen months between the adoption of the resolution and the filing of Plaintiffs' Motion, Plaintiffs are still able to amend to add this claim under the Federal Rules of Civil Procedure.

*Rule 15* states "An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Fed. R. Civ. P. 15(c)(1)(B)*. The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure **[\*25]** in general, and *Rule 15* in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010)* (citations omitted). "In essence, application of *Rule 15(c)* involves a search for a common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)*. "Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because *Rule 15(c)* is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Glover v. F.D.I.C., 698 F.3d 139, 145-46 (3d Cir. 2012)* (quoting *Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984))*.

Here, Plaintiffs claim for inverse spot zoning arises out of the same core of operative facts as Plaintiffs' original claims, which were filed sixteen (16) days after the City of Lambertville passed the ordinance, well-within the forty-five (45) day limitation within *New Jersey Court Rule 4:69-6(b)(3)*. Indeed, in Plaintiffs' initial Complaint, filed on January 11, 2019, Plaintiffs explicitly noted the City of Lambertville's 2018 ordinance adopted on November [29], 2018, (Compl. ¶ 94, ECF No. 1), and further stated that "[i]n accordance with R.49-1 et seq. of the New Jersey Rules of Court this action is brought within forty-five (45) days of November [29], 2018," ( **[\*26]** *id.* ¶ 95). The Court finds that this sufficiently notified Defendants, and that this claim arises out of the same conduct, transaction, or occurrence as Plaintiffs' original claims. Plaintiffs will be permitted to amend the Consolidated Complaint to add the claim of inverse spot zoning.

## V. **CONCLUSION**

For the reasons set forth above, and other good cause shown, Plaintiffs' Motion is granted in part and denied in part. Plaintiffs Motion is granted in that they will be permitted to amend to add a new plaintiff, three new defendants, and their proposed claims of inverse spot zoning and civil conspiracy. Plaintiffs' Motion is denied in that they will not be permitted to add their claims under the Spill Act and in common law tort to recover for the City of Lambertville's alleged discharge of hazardous waste on Academy Hill's property. An Order consistent with this Memorandum Opinion will be entered.

**Dated**: July 6, 2020

/s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**

**United States District Judge**

## ORDER

This matter comes before the Court upon Plaintiffs Academy Hill, Inc., Merrick Wilson, and River Valley Heights Corporation's (collectively, "Plaintiffs") Amended Motion to Amend their Complaint (the "Motion"). **[\*27]** (Mot., ECF No. 35.) Defendants City of Lambertville, Lambertville Planning Board, and David DelVecchio

opposed, (Defs.' Opp'n, ECF No. 36), and Plaintiffs did not reply. For the reasons set forth in the accompanying Memorandum Opinion, and for other good cause shown, Plaintiffs' Motion is granted in part and denied in part.

**IT IS** on this 6th day of July, 2020

**ORDERED** that Plaintiffs' Amended Motion to Amend their Complaint (ECF No. 35) to add River Valley Heights as a plaintiff is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Amended Motion to Amend their Complaint (ECF No. 35) to add Joseph Jingoli & Sons, Inc., Joseph Jingoli, Jr., and Michael Jingoli as defendants is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Amended Motion to Amend their Complaint (ECF No. 35) to add claims of civil conspiracy and unlawful inverse spot zoning is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Amended Motion to Amend their Complaint (ECF No. 35) to add claims of contribution for violations of the New Jersey Spill Compensation and Control Act and common law strict liability for the City of Lambertville's creation of abnormally dangerous conditions is hereby **DENIED**; and it is further **[*28]**

**ORDERED** that Plaintiffs must file their Amended Complaint within ten (10) days from the entry of this Order.

**Dated**: July 6, 2020

/s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**

**United States Magistrate Judge**

---

**End of Document**

# EXHIBIT B

Ⓐ Neutral
As of: April 19, 2024 1:40 AM Z

## *Bishop Prop. Mgmt. & Magnolia Mgmt. v. City of Jersey City Rent Leveling Bd.*

Superior Court of New Jersey, Appellate Division

September 21, 2020, Submitted; November 9, 2020, Decided

DOCKET NO. A-5516-18T3

**Reporter**
2020 N.J. Super. Unpub. LEXIS 2141 *; 2020 WL 6553789

BISHOP PROPERTY MANAGEMENT and MAGNOLIA MANAGEMENT, Plaintiffs-Appellants, v. THE CITY OF JERSEY CITY RENT LEVELING BOARD, Defendant-Respondent, and MARIE CALLE, DANUTA DMOCHOWSKI, GREGORY HODGKINSON, NANCY HOLGUIN, ANDREA JEREZ, HEMAL PATEL, JOSE PINERO, JOSEFINA RESTITUYO, and VITO SERRIPIERRO, Defendants/Intervenors-Respondents.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY *RULE 1:36-3* FOR CITATION OF UNPUBLISHED OPINIONS.

**Subsequent History:** Certification denied by *Bishop Prop. Mgmt. v. City of Jersey City Rent Leveling Bd., 247 N.J. 224, 253 A.3d 1164, 2021 N.J. LEXIS 655, 2021 WL 2925854 (June 29, 2021)*

**Prior History:** **[\*1]** On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0602-19.

*Bishop Prop. Mgmt. & Magnolia Mgmt. v. City of Jersey City Rent Leveling Bd., 2019 N.J. Super. Unpub. LEXIS 7088 (Law Div., Mar. 26, 2019)*

## Core Terms

hardship, plaintiffs', fair return, appraised value, rent increase, calculate, landlord, rent, ordinance, tenants, hearing officer, mortgage, application form, recommendations, municipal, percent, notice, plain language, trial judge, properties, rental

**Counsel:** Miller, Meyerson & Corbo, attorneys for appellants (Gerald D. Miller, on the briefs).

Peter J. Baker, Corporation Counsel, attorney for respondent (Cheneise V. Wright, Assistant Corporation Counsel, on the brief).

Gibbons PC, attorneys for intervenors-respondents Danuta Dmochowski, Gregory Hodgkinson, Andrea Jerez, and Vito Serripierro (Lawrence S. Lustberg and Michael R. Noveck, on the joint brief).

Marotta & Garvey, attorneys for intervenors-respondents Marie Calle, Nancy Holguin, Hemal Patel, Jose Pinero, and Josefina Restituyo (Neil D. Marotta, on the joint brief).

**Judges:** Before Judges Hoffman, Suter and Smith.

## Opinion

PER CURIAM

Plaintiffs Bishop Property Management (Bishop) and Magnolia Management (Magnolia) appeal from an August 12, 2019 Law Division order dismissing their complaint in lieu of prerogative writs, which challenged the decision of the City of Jersey City Rent Leveling Board (the Board) denying plaintiffs' applications for hardship rental increases. We affirm.

Bishop owns the property at 234 Beacon Avenue, and Magnolia owns the properties at 27 Concord Street and 3473-3475 Kennedy Boulevard **[\*2]** (3475 JFK Blvd), all in Jersey City. Plaintiffs, in order to "maintain [their rental properties] and make them at least Class B or A rental spaces," between 2017 and 2019, invested $426,839 in maintenance and repairs for the three rental properties. Meanwhile, between 2017 and 2018, the city increased the property taxes on plaintiffs' properties. As a result, the taxes on 234 Beacon Avenue increased approximately 110 percent, from $17,160 to $36,000; the taxes on 27 Concord Street increased approximately

Case 2:23-cv-22291-MCA-JRA    Document 33-1    Filed 04/18/24    Page 15 of 27 PageID: 353

Page 2 of 5

2020 N.J. Super. Unpub. LEXIS 2141, *2

seventy percent, from $8,190 to $13,912; and the taxes on 3475 JFK Blvd increased approximately twenty-seven percent, from $18,041 to $22,700.

Due to the increased tax burden, and the amounts spent on repairs and maintenance, plaintiffs filed hardship rental increase applications (hardship applications) with the Board. Bishop filed its hardship application for 234 Beacon Avenue on June 20, 2018, and Magnolia filed its hardship applications for 27 Concord Street and 3475 JFK Blvd on August 17, 2018 and September 12, 2018, respectively. Plaintiffs' applications sought to increase the maximum chargeable rent for the properties' units, claiming the latest tax assessment severely reduced **[*3]** the properties' profitability.

The controlling ordinance for hardship rental increases and plaintiffs' applications, Jersey City Municipal Code (the Code) §260-10, provides:

> In the event that a landlord cannot meet his or her mortgage payments or operating expenses *or does not make a fair return on his or her investment*, he or she may apply to [the Board] for increased rentals, provided that he or she has owned the building for at least nine months prior to the time he or she applies for an increase.
> [Emphasis added.]

The Code defines "fair return" as:

> The percentage of return on equity of real property investment. The amount of return shall be measured by the net income before depreciation. A "fair return" on the equity investment in real property shall be considered to be 6 [percent] above the maximum passbook demand deposit savings account interest rate available in the municipality.

Further, the Code defines "equity in real property investment" as "[t]he actual cash contribution of the purchaser at the time of closing of title and any principal payments to outstanding mortgages subsequent to acquisition of title by the purchaser." In short, the Code provides that a landlord may apply for a **[*4]** hardship rental increase when the landlord is not earning a fair return on the equity of his property investment. Equity of a property investment is measured by the amount the landlord paid when purchasing the property plus any subsequent mortgage payments made by the landlord.

Despite the Code's language, the hardship application forms provided by Jersey City's Division of Tenant Landlord Relations indicated landlords could calculate the equity of their property investment using the purchase price approach described in the Code *or* using the property's appraised value. The application defined equity: "Equity in real property is the owner's down payment plus payment on the principal. Where the property has been owned for over 10 years the appraised value less outstanding loans may be used to calculate equity." According to plaintiffs, Jersey City's hardship application forms included these terms since 1990, and the Board granted applications using the appraised value approach for nearly thirty years.

In their hardship applications, plaintiffs used the appraised value approach, rather than the purchase price approach, to calculate the equity of their properties and to determine the fair **[*5]** return amount they claimed they were entitled to receive. Plaintiffs calculated the fair return rate at 6.05 percent of the properties' "net equity," which represented Jersey City's .05 percent passbook demand deposit interest rate at the time, plus six percent. Plaintiffs listed their then-existing profits for the three rental properties: 234 Beacon Avenue showed a $18,072.00 profit; 27 Concord Street showed a $15,355.00 profit; and 3475 JFK Blvd showed a $11,224.00 profit. For 234 Beacon Avenue, based on an appraisal of $2,450,000, Bishop listed a net equity of $2,003,609, which yielded fair return amount of $121,218. Bishop purchased 234 Beacon Avenue in 1995 for $369,000 with a $500,000 mortgage, of which $446,391 of principal remained owing. Magnolia listed a net equity of $885,000 based on an appraisal of that same amount, resulting in a fair return figure of $53,542.50. Magnolia purchased 27 Concord Street in 1985 for $140,000 without a mortgage. For 3475 JFK Blvd, based on an appraisal of $2,200,000, Magnolia listed a net equity of $2,050,000, which yielded a fair return amount of $124,025. Magnolia purchased 3475 JFK Blvd in 1983 for $350,000 taking out a mortgage of $250,000, **[*6]** of which there remained a balance of $100,000 when the hardship application was filed.

In accordance with these calculations, plaintiffs requested rent increases that amounted to an approximate doubling of their tenants' current rent. For example, the rent of one tenant at 234 Beacon Avenue would have increased from $800 a month to $1,620 a month. Specifically, for 234 Beacon Avenue, Bishop requested an average rent increase of $820; for Concord Avenue, Magnolia requested average rent increases of $665; and for JFK Blvd, an average rent increase of $940 for 3475. The requested rent increases would substantially increase the profitability of each rental property.

Mohamed Hegazi

2020 N.J. Super. Unpub. LEXIS 2141, *6

Jersey City's Division of Tenant Landlord Relations scheduled a review of plaintiffs' hardship applications before a hearing officer. In advance of the hearing officer's review, counsel for intervenor tenants submitted written objections to plaintiffs' requested rent increases, challenging plaintiffs' use of appraised value to calculate their properties' equity and fair return amount as inconsistent with the Code.

The hearings were held on various dates throughout the fall of 2018, culminating in the hearing officer recommending **[\*7]** the approval of the three hardship applications. The hearing officer added the following comment to one of the applications:

> Landlord has filed Application using Appraisal Method and the Attorney for the tenants has objected stating that the Ordinance is correct and the Application is not? [B]ut those are what I depend on to make a Recommendation and he has also submitted a document of objection (a copy is included), if the board request a change to the process then I must receive notification & instruction of such changes in order to comply.

The Board subsequently scheduled a hearing on plaintiffs' hardship applications, and counsel for plaintiffs and counsel for the intervenor tenants provided written arguments on the appraised value issue. At the hearing, held on December 27, 2018, the acting chairman for the Board noted that, in the Code, "'Equity' is defined as an owner's 'cash contribution' plus 'principal payment' to any mortgage on the property[,]" and that, for the purposes of calculating a fair return, "[a]ppraised value is not 'equity' . . . ." The chairman cast plaintiffs basing their net equity calculation on appraised value as "conceptually unsound in a rent control context," **[\*8]** and "counter to the purpose of rent control: Protecting tenants from arbitrarily large rental increases while assuring the preservation of an efficient owner's net operating income."

Because their applications used an inappropriate basis for calculating their equity, the chairman recommended offering plaintiffs two options, which the Board previously offered another landlord in a recent ruling, to enable them to move forward with their hardship applications. First, the chairman stated that if plaintiffs wanted to proceed using equity to calculate a fair return, they could use "present equity as the basis for a fair return by a suitable index for inflation since the date of purchase." Their other option was to base their hardship applications on alternate language in the Code, which "authorizes the Board to adjust rents if a landlord cannot

meet his operating expenses."

Just as the Board moved to vote on its decision, plaintiffs' counsel interjected, questioning the Board's authority to adopt new policy and procedure governing hardship rental increases without the approval of city council or enactment through the legislative process. Counsel for the Board responded by clarifying that **[\*9]** it was not creating new law, but rather its decision "represent[ed] a fair interpretation of the existing rent leveling ordinance." Counsel for tenants at 3475 JFK Blvd and 234 Beacon Avenue also briefly spoke on the record to express their support for the Board's recommendations and interpretation of the Code.

At the conclusion of the hearing, the Board unanimously passed a motion accepting the Board chairman's recommendations. Resolutions dated January 10 and 14, 2019, memorialized the Board's decision and were mailed to the interested parties in February 2019. Additionally, the Division of Tenant Landlord Relations provided an accompanying letter with guidance to plaintiffs on how to resubmit their hardship applications in light of the Board's decision.

On February 8, 2019, plaintiffs filed a complaint in lieu of prerogative writs in the Law Division challenging the Board's rejection of their use of appraised value as the basis for the hardship applications. The trial judge granted, with the consent of plaintiffs and the Board, motions to intervene filed by the tenants. The trial judge required the parties to submit briefs on the threshold question of "whether [the Board] may legally **[\*10]** reject [p]laintiffs' rent increase applications by refusing to consider market or appraised value of the property." On July 19, 2019, the judge heard oral argument on this issue.

On August 12, 2019, the trial judge entered the order under review, dismissing plaintiffs' complaint with prejudice. In his accompanying written opinion, the judge stated that for the purpose of his decision, he assumed, "that the [B]oard had, for a number of years prior to [plaintiffs'] application, evaluated hardship rent increase applications not in accordance with the literal language of [the Code], and instead considered the market or appraised value of the property."

Addressing plaintiffs' arguments, the trial judge first determined that the Board did not act arbitrarily and capriciously in abiding by the express language of the Code. To the contrary, the judge found that the Board accepting plaintiffs' definition of equity would have been an arbitrary deviation from the Code's express

Mohamed Hegazi

language. Next, the judge rejected plaintiffs' argument that basing their equity on appraised value was appropriate because the hardship application form explicitly allowed it as an option. The judge acknowledged the application **[\*11]** form did contain this option, but found plaintiffs had

> not shown that [they] somehow relied upon the language of the application form to their detriment in this case. They have owned the property for a good number of years . . . . The Ordinance, which does not reference appraised value, has been in effect since 1983 and therefore provides some type of constructive notice to applicants as to the standard which [the Board] may utilize in connection with these applications. Moreover, short of establishing a confiscatory taking, [plaintiffs have] not shown that [they] suffered a significant economic hardship by submitting an application on a form which stated that appraised value may be used in connection with these applications.

The judge further determined that the Board permissibly deviated from the hearing officer's recommendations, as the Code allows the Board to '"accept, reject, or modify' a recommendation of a Hearing Officer[,]" and caselaw also makes clear the Board may reach a different conclusion from a hearing officer when there is substantial evidence supporting the Board's ultimate conclusion. Though the judge dismissed the complaint with prejudice, he explicitly afforded **[\*12]** plaintiff's the opportunity to file a separate complaint, raising an inverse condemnation claim:

> The [c]ourt repeats in this [o]pinion what was stated on the record: [p]laintiff may file a separate complaint, naming the City of Jersey City as a [d]efendant if [p]laintiff claims inverse condemnation as a result of a literal reading of [the Code]. The necessary [d]efendant for such a claim is the City, not [the Board], and there will be a need to create a full record, with discovery afforded to all parties to address [p]laintiff's claims.

This appeal followed.

Plaintiffs here argue the Board acted arbitrarily and capriciously by retroactively applying a new standard and policy for hardship applications after plaintiffs submitted their applications. Plaintiffs further argue the Board denied them due process by failing to announce or provide notice of its policy change, failing to provide adequate reasoning for the departure from past policy and practice, failing to articulate specific findings of fact which supported its decision as required by the Code, and denying plaintiffs a fair opportunity to be heard.

Plaintiffs also contend that the Board's shift to solely calculating equity according **[\*13]** to the Code's plain language was impermissibly confiscatory, and that its directive that inflation may be considered in calculating equity was arbitrary and wanting of a definitive standard.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." *Fallone Properties, L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)*. Generally, courts afford the decisions of municipal boards substantial deference, only "set[ting] aside a municipal board decision if it is shown to be arbitrary, capricious, or unreasonable, not supported in the evidence, or otherwise contrary to law." *Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 378, 671 A.2d 567 (1996)*. However, like the trial court, we owe no deference to a municipal board's legal interpretations, including its construction of municipal ordinances. *See Schulmann Realty Group v. Hazlet Twp. Rent Control Bd., 290 N.J. Super. 176, 184, 675 A.2d 645 (App. Div. 1996)*. We construe an ordinance using the same rules of construction applied in interpreting a statute, applying its plain meaning if the terms are unambiguous. *Mays v. Jackson Twp. Rent Leveling Bd., 103 N.J. 362, 376, 511 A.2d 589 (1986)*; *Nuckel v. Borough of Little Ferry Plan. Bd., 208 N.J. 95, 26 A.3d 418 (2011)*.

It is well understood that a rent control board is bound to strictly follow the rent control ordinance. *Schulmann Realty Group, 290 N.J. Super. at 183*. Since the Board's powers derive from the ordinance, its actions are invalid when they exceed the scope and literal language of the ordinance. *Knight v. City of Hoboken Rent Leveling & Stabilization Bd., 332 N.J. Super. 547, 551, 554, 753 A.2d 1231 (App. Div. 2000)*. Therefore, "[a] reviewing court may reject an **[\*14]** interpretation of an ordinance by the governing body or rent control board which conflicts with the plain language, particularly if the meaning of the ordinance is clear on its face." *Schulmann Realty Group, 290 N.J. Super. at 184*.

Here, the plain language of the Code is unambiguous, providing that when a landlord seeks a hardship rental increase for not receiving a fair return on the equity of a property, equity, and thus the fair return amount, is based on the price paid by the landlord at purchase and any subsequent payments on the mortgage principal, if one is attached to the property. No provision of the Code states that the fair return amount may be based on the appraised value of the property. In rejecting plaintiffs' attempt to calculate their fair return based on

Mohamed Hegazi

Case 2:23-cv-22291-MCA-JRA    Document 33-1    Filed 04/18/24    Page 18 of 27 PageID: 356

Page 5 of 5

2020 N.J. Super. Unpub. LEXIS 2141, *14

the appraised value of their property, the judge correctly concluded that the Board adhered to the Code as written. In fact, as the judge properly noted, if the Board accepted plaintiffs' method of calculating equity, it would have impermissibly and arbitrarily exceeded the scope of its authority. The judge correctly concluded that the Board's strict adherence to the Code in this matter cannot be considered arbitrary or capricious.

The relevant provision of the **[*15]** Code was adopted in 1983 and has remained unchanged since then. Plaintiffs submitted their hardship applications in the summer of 2018. Plaintiffs therefore cannot argue that the Board's application of the Code's plain language constituted a retroactive application of a new standard adopted after plaintiffs' hardship applications were submitted, nor can plaintiffs convincingly argue they lacked notice of the Code's requirements.

Moreover, even if plaintiffs did reasonably believe, based on the language of the hardship application form, that the Code allowed a hardship applicant to calculate equity using appraised value, the Board provided plaintiffs with proper notice of the Code's actual requirements during plaintiffs' hearing before the Board. During the hearing and in the written communications that followed, the Board informed plaintiffs of its intention to strictly follow the Code's plain language in considering hardship applications. After providing plaintiffs with notice of the requirements an applicant must meet to receive a hardship rental increase, the Board offered plaintiffs the opportunity to amend and resubmit their hardship applications. The Board therefore gave plaintiffs **[*16]** notice of the relevant policy and thereafter provided plaintiffs with the opportunity to submit their hardship applications in conformance with the policy.

Furthermore, the statements of the Board during the December 27, 2018 hearing, as well as the written statements in the letters mailed to plaintiffs in February 2019, provided sufficient explanation and factual basis for the Board's decision. In its communications, the Board made clear that plaintiffs' method of calculating their fair return was contrary to the plain language of the statute and therefore improper.

We agree with the trial judge that the Board did not deny plaintiffs a fair opportunity to be heard. Plaintiffs appeared before a hearing officer on multiple dates resulting in the hearing officer accepting plaintiffs' applications. The Board then held a subsequent hearing concerning the applications and noted that before doing

so, "the Board has reviewed of the materials, all of the submissions by the attorneys, including the legal briefs and the reports of the Hearing Officer . . . ." During the hearing, counsel for plaintiffs contested the Board's interpretation of the Code; argued that an objection made by an opposing **[*17]** attorney was untimely; and questioned whether the interpretation would apply retroactively to previous hardship applicants, whether the application form would be amended, and whether a hearing was held to determine the policy's economic impact on long-term property owners.

Because, "[a]t its core, due process requires adequate notice and an opportunity to be heard[,]" *Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, 942 A.2d 59, (App. Div. 2008)*, the procedure undertaken by the Board in handling plaintiffs' hardship applications conformed with the requirements of due process. Furthermore, beyond mentioning the costs incurred in preparing their original applications, plaintiffs have not shown that the Board's actions deprived them of any interest or caused them any hardship. There is no indication that plaintiffs were unable to amend their applications and successfully secure a hardship rental increase using either of the two options offered by the Board.

We decline to address plaintiffs' argument that the Board's actions were impermissibly confiscatory. The trial judge dismissed plaintiffs' complaint after hearing arguments solely on the threshold question of "whether [the Board] may legally reject [p]laintiffs' rent increase applications by refusing to consider **[*18]** market or appraised value of the property." In dismissing their complaint, the judge informed plaintiffs that they could pursue an inverse condemnation claim by filing a new complaint against the City of Jersey City, rather than the Board. Indeed, because the Board merely followed its legislative mandate and applied the Code as written, the proper line of attack for a confiscatory taking claim would be against the Code itself. The trial judge's dismissal of plaintiffs' complaint against the Board was therefore appropriate.

Affirmed.

---

**End of Document**

# EXHIBIT C

No *Shepard's* Signal™
As of: April 19, 2024 1:42 AM Z

## *Jackson Trails, LLC v. Twp. of Jackson*

United States District Court for the District of New Jersey

October 9, 2020, Decided; October 9, 2020, Filed

Civil Action No. 20-1150 (MAS) (ZNQ)

**Reporter**
2020 U.S. Dist. LEXIS 189562 *

JACKSON TRAILS, LLC, Plaintiff, v. TOWNSHIP OF JACKSON and PLANNING BOARD OF THE TOWNSHIP OF JACKSON, Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

Township, planning board, supplemental jurisdiction, settlement agreement, Planning, district court, alleges, state court, residents, prerogative writ, exhausted, motion to dismiss, federal court, capricious, subject matter jurisdiction, obligations, violations, administrative remedy, affordable housing, plaintiff's claim, anti-Semitic, declining, worship, region

**Counsel: [*1]** For JACKSON TRAILS, LLC, a New Jersey limited liability corporation, Plaintiff: THOMAS F. CARROLL, LEAD ATTORNEY, HILL WALLACK, PRINCETON, NJ; DONNA MARIE JENNINGS, WILENTZ, GOLDMAN & SPITZER, PC, WOODBRIDGE, NJ; SIEGLINDE K. RATH, STORZER & ASSOCIATES PC, WASHINGTON, DC.

For TOWNSHIP OF JACKSON, a New Jersey municipal corporation and body politic, PLANNING BOARD OF THE TOWNSHIP OF JACKSON, a municipal agency, Defendants: BRENT ROBERT POHLMAN, LEAD ATTORNEY, METHFESSEL & WERBEL, EDISON, NJ.

**Judges:** MICHAEL A. SHIPP, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MICHAEL A. SHIPP

## Opinion

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Township of Jackson (the "Township") and Jackson Planning Board's (the "Planning Board") (collectively, "Defendants") Motion to Partially Dismiss Plaintiff Jackson Trails, LLC's ("Plaintiff') Complaint. (ECF No. 11.) Plaintiff opposed (ECF No. 17) and Defendants replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to *Local Civil Rule 78.1*. For the reasons set forth herein, Defendants' Motion is granted in part and denied in part.

## I. BACKGROUND[1]

This case arises from the alleged religious **[*2]** and racial discrimination by Defendants against Plaintiff in connection with the denial of a conditional use, subdivision, and site plan application (the "Application") for a residential housing development (the "Development") that would include 367 single-family homes, 92 multi-family affordable housing units, and a place of worship. (See Compl. ¶¶ 1-5,25, ECF No. 1.) Plaintiff is a developer that owns land designated as Block 23001, Lots 22-29 (the "Property"), in the Township's RG-3 Regional Growth Zone ("RG-3"). (*Id.* ¶¶ 25-26.) Plaintiff's "principal is an Orthodox Jew." (*Id.* ¶ 2.) Plaintiff alleges the Planning Board improperly denied its Application, "bowing to severe anti-Semitic pressure from local residents and fears that Orthodox Jews may purchase homes and reside in the Development, and due to the inclusion in the Development of a house of worship that may be used as a synagogue." (*Id.* ¶ 3.) In response, Plaintiff filed the instant action alleging, among other things, that the Planning Board: (1) acted in an arbitrary, capricious,

---

[1] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Complaint. *See Phillips v. Oily. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)*.

Mohamed Hegazi

2020 U.S. Dist. LEXIS 189562, *2

and unreasonable manner when it denied the Application; and (2) violated a settlement agreement and fair share plan. (*Id.* ¶¶ 501-46.)

### A. Defendants' [*3] Settlement Agreement and HEFSP[2]

On July 7, 2015, the Township filed a declaratory judgment action in the New Jersey Superior Court, Ocean County, Law Division,[3] seeking a declaration of its compliance with the Mount Laurel doctrine,[4] i.e., "the Township's obligation to provide for its fair share of the regional need for low and moderate income housing." (Compl. ¶ 416.) That action was resolved by a settlement agreement (the "Settlement Agreement") entered into between the Township, the Fair Share Housing Center, and an intervening developer. (Compl. ¶ 418; *see also* Settlement Agreement Doc. ("SA"), Ex. B to Compl., ECF No. 1-3.)

The Settlement Agreement provides, in relevant part, that the Township has a "Third Round prospective need" obligation of 1250 affordable housing units. (Compl. ¶ 419; SA 3.) To meet that obligation, the Settlement Agreement proposes new construction within the Township along with the requirement that 20% of any construction occurring in certain sites within RG-2 and RG-3, where the Property is situated, be set aside for affordable housing; a total of 281 units. (*See* Compl. **[*4]** ¶ 421; SA 3.) The Complaint appears to allege the Township identified the Property in the Settlement Agreement, for purposes of its Third Round prospective need obligation, and proposed that the Property "include development of 367 units, 92 units of

which would be set-aside" for affordable housing.[5] (*See* Compl. ¶¶ 421-23.)

On December 31, 2016, the Superior Court approved the Settlement Agreement, finding that it "fair[ly] and adequately protects the interests of low and moderate-income persons within Jackson's housing region." (Compl. ¶ 424; *see also* Superior Ct. Order 2, Ex. D to Compl., ECF No. 1-5.) The Superior Court then directed the Township to submit a finalized HEFSP addressing its *Mount Laurel* obligations for court approval. (Compl. ¶ 425; Superior Ct. Order 2.) The Township's HEFSP contains a compliance plan that, like the Settlement Agreement, provides that the Township has a Third Round obligation of 1,250 units with 20% set-aside requirement for developments constructed in certain sites within RG-2 and RG-3; the total amount of units rose to 290.[6] (Compl. ¶¶ 427-28; HEFSP 11, 27.) On August 16, 2017, the Superior Court entered a judgment of compliance and repose **[*5]** ("JCR") finding that the Township's HEFSP "adequately meets," and "constitutes an appropriate means to fully satisfy," the Township's *Mount Laurel* obligations. (Compl. ¶ 430; see Superior Ct. JCR 6, Ex. C to Compl., ECF No. 1-4.).

### B. The Planning Board Denies Plaintiff's Application

On August 10, 2018, Plaintiff submitted the Application to the Planning Board seeking conditional use, subdivision, and site plan approval for the Development. (Compl. ¶¶ 77, 223.) Plaintiff alleges that "[i]n making its determination, the [Planning] Board relied in great part on the testimony of objecting Township residents and the comments and questions of [Planning] Board members" that arose at the two hearings held on the Application. (*Id.* ¶ 243.)

During the first hearing, held on August 19, 2019, Planning Board officials inquired about the intended use

---

[2] Housing Element and Fair Share Plan. (See HEFSP, Ex. A to Compl., ECF No. 1-1.) A fair share plan is "an assemblage of maps and documents which set forth the manner in which the town will satisfy its fair share housing obligation." David J. Frizell & Ronald D. Cucchiaro, 36 N.J. Prac., Land Use Law § 21.11 (3d ed., Oct. 2019 Update).

[3] *See In re the Application of the Twp. of Jackson*, Docket No. OCN-L-1879-15.

[4] The *Mount Laurel* series of cases recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low-and moderate-income families." *In re Adoption of N.J.A.C. 5:96 and 5:97, 110 A.3d 31, 33, 221 N.J. 1 (N.J. 2015) ("Mount Laurel IV")*.

[5] While referring to the Settlement Agreement, the Complaint provides a table entitled "Regional Growth Zone Potential Development Summary" in which the Property is identified for a proposed development including 367 single-family homes and 92 affordable housing units. (Compl. ¶ 421.) That table does not appear in the Settlement Agreement. (*See generally* SA.) Moreover, no such identification or proposal is apparent on the face of the Settlement Agreement.

[6] Also like the Settlement Agreement, the HEFSP does not appear to identify the Property (*see generally* HEFSP); the Complaint does not allege otherwise (*see* Compl. ¶¶ 426-28).

Mohamed Hegazi

of basements in single-family homes, which Plaintiff claims is due to a "concern[] that members of the Orthodox Jewish community would illegally use their basements as rentals for other Orthodox Jews." (*Id.* ¶¶ 111-22.) An inquiry also arose as to whether rental units would be used as dormitories, which the Township banned in an alleged effort **[*6]** to "prevent[] boarding schools, or yeshivas, for the Orthodox Jewish community in the Township." (*Id.* ¶¶ 121-23.) Township residents raised similar questions, and further inquired into issues concerning the house of worship, private schooling, and bussing. (*Id.* ¶¶ 127-33.)

The Planning Board held the second hearing on October 7, 2019. (*Id.* ¶¶ 134.) At its commencement, the Planning Board was advised by its attorney not to consider a Planning Board member's e-mail correspondence in which he opposed Plaintiff's Application. (*Id.* ¶ 135-39.) That same Planning Board member, who is also a member of the Township's Environmental Commission,[7] allegedly posted a purportedly anti-Semitic comment online. (*Id.* ¶ 140.) At Plaintiff's request, the Planning Board member recused himself and the hearing proceeded without him. (*Id.*1143.) During the public comment period, the Planning Board's attorney admonished a Township resident who inquired about the nature of the house of worship, stating that the issue had no bearing on Plaintiff's Application. (*Id.* ¶¶ 177-79.) That same resident allegedly made anti-Semitic comments on Facebook, in e-mail correspondence to Township officials, and during other Township meetings. **[*7]** (*Id.* ¶¶ 180-84.) The Planning Board attorney similarly admonished other Township residents who commented on bussing of the children to schools. (*Id.* ¶¶ 186-191.) The Planning Board sought to adjourn the matter, which Plaintiff opposed. (*Id.* ¶¶ 201-03.) By a 4-4 vote, the Planning Board denied Plaintiff's Application.[8] (*Id.* ¶¶ 205-06.) Plaintiff moved for reconsideration. (*Id.* ¶ 211.)

On December 2,2019, the Planning Board adopted Resolution 2019-31 (the "Resolution") denying Plaintiff's Application. (*Id.* ¶ 214; *see generally* Resolution Doc., Ex. E to Compl., ECF No. 1-6.) Plaintiff alleges the Resolution provides pretextual justifications for denying its Application. First, the Resolution states that there are

unresolved questions concerning the Application's impact on the Joint Military Base of McGuire-Dix-Lakehurst, which Plaintiff claims is pretextual because the military base is an off-site condition that is not within the Planning Board's jurisdiction. (Compl. ¶¶ 217-18.) The Resolution also states that the Planning Board expressed concerns over Plaintiff's Environmental Study and Traffic Study, which Plaintiff claims is pretextual because it submitted appropriate documents and **[*8]** because the issues raised are also not within the Planning Board's jurisdiction. (*Id.* ¶¶ 229-38.) The Resolution further states that Plaintiff would not consent to the Planning Board's request for additional time to review the evidence and "would not consent to any further adjournments, did not want to present or permit any additional testimony or allow any additional public comment." (*Id.* ¶ 220.) Plaintiff avers it was "not obligated to consent" and was entitled to a Board vote and approval on its Application pursuant to the *New Jersey Municipal Land Use Law ("MLUL"), N.J. Stat. Ann. §§ 40:55D-1, et seq.* (*Id.*)

The Resolution also addressed Plaintiff's motion for reconsideration, stating the "motion reargued, essentially, questions of law, and again, [Plaintiff] did not agree therein to permit any additional information to be provided to the Board." (Resolution Doc. 8.) The Board published notice of its decision in a local newspaper on December 21, 2019. (Compl. ¶ 242.)

On February 3, 2020, Plaintiff filed the instant fourteen-count Complaint alleging: Counts One through Four for violations of the *Fairing Housing Act ("FHA"), 42 U.S.C. §§ 3604, 3617* (Compl. III 461-80); Count Five for violations of the *Religious Land Use and Institutionalized Persons Act ("RLLTIPA"), 42 U.S.C. §§ 2000cc, et seq.* **[*9]** (*id.* ¶¶ 481-82); Counts Six through Ten for violations of the *First* and *Fourteenth Amendments of the United States Constitution* (id. ¶¶ 483-94); Count Eleven for violations of *42 U.S.C. § 1982* (*id.* ¶¶ 495-97); Count Twelve for violation of the *New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, et seq.* (*id.* ¶¶ 498-500); Count Thirteen for arbitrary and capricious denial of the Application contrary to the MLUL (*id.* ¶¶ 501-29); and Count Fourteen, which is characterized as violation of the HEFSP and the Settlement Agreement (*id.* ¶¶ 530-546).

On March 13, 2020, Defendants filed the present Motion, seeking dismissal of Counts Thirteen and Fourteen for lack of subject matter jurisdiction and failure to state a claim. (Defs.' Moving Br. 13, ECF No. 11-3.) That same day, Defendants answered the other

---

[7] The Environmental Commission reviews and provides recommendations on "any application for development in the Township." (Compl. ¶ 251.)

[8] A tie vote results in the denial of an application under the Planning Board's rules. (Compl. ¶ 206; Pl.'s Opp'n Br. 8.)

counts of the Complaint. (ECF No. 12.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)[9]

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)*. "A *Rule 12(b)(1)* motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)*. On a facial attack, the Court considers only the allegations of the complaint and documents **[*10]** referenced therein, construing them in the light most favorable to the plaintiff. *Id.* On a factual attack, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)*.

### B. Rule 12(b)(6)

*Rule 8(a)(2)* "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)*.

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to *Rule 12(b)(6)*. *See Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011)*. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*). Second, the court

must "[review] the complaint to strike conclusory allegations." *Id.* The court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)* (citation omitted). In doing so, however, the court is free **[*11]** to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal, 556 U.S. at 678* (citing *Twombly, 550 U.S. at 555*). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief' *Fowler, 578 F.3d at 211* (quoting *Iqbal, 556 U.S. at 679*). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. at 210* (quoting *Iqbal, 556 U.S. at 678*).

## III. DISCUSSION

### A. Count Thirteen

Defendants argue this Court lacks subject matter jurisdiction over Count Thirteen because Plaintiff "failed to exhaust judicial remedies" by not appealing the Planning Board's decision to the state court via an action in lieu of prerogative writs. (Defs.' Moving Br. 10,16-25.) Defendants seem to also argue that, for the same reason, Count Thirteen is not ripe for federal court review. (*See* Defs.' Moving Br. 20-21 (In addressing ripeness, Defendants posit that "the decision of the planning board is appealable to the Superior Court and thus is not final."). Defendants alternatively argue Count Thirteen fails to state a plausible claim for relief due to Plaintiff's "conclusory allegations that their [A]pplication **[*12]** was denied based on a perceived undercurrent of alleged anti-Semitism." (*Id.* at 13.) In opposition, Plaintiff argues it exhausted the required administrative remedies and the Court has supplemental jurisdiction over Count Thirteen, which is sufficiently pled. (Pl.'s Opp'n Br. 18-19, ECF No. 17.)

### 1. The Court Has Supplemental Jurisdiction Over Count Thirteen[10]

---

[9] All references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

[10] While the Complaint refers to Count Thirteen as "Arbitrary and Capricious Denial of Land Use Application," it is effectively a state law claim for an action in lieu of prerogative writ. The parties do not appear to argue otherwise. (See Defs.' Moving

The applicable exhaustion requirement is found in *New Jersey Court Rule 4:69-5*, which provides that "except where it is manifest that the interest of justice requires otherwise," actions in lieu of prerogative writs "shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted." *N.J. Ct. R. 4:69-5*; *See Congregation Kollel, Inc. v. Twp. of Howell, No. 16-2457, 2017 U.S. Dist. LEXIS 21974, 2017 WL 637689, *3, 12 (D.N.J. Feb. 16, 2017)* (applying *New Jersey Court Rule 4:69-5*'s exhaustion of administrative remedies requirement where the plaintiffs challenged the validity of an ordinance following the denial of their land use application); *see also Mendez v. Port Auth. of N.Y. & N.J., No. 14-7543, 2017 U.S. Dist. LEXIS 48920, 2017 WL 1197784, at *10 (D.N.J. Mar. 31, 3017)* ("[A] plaintiff must exhaust administrative remedies before bringing an action in lieu of prerogative writ."). An action in lieu of a prerogative writ "permits a 'court [to] set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law.'" **[*13]** *Nat'l Amusements Inc. v. Borough of Palmyra, 716 F.3d 57, 63 (3d Cir. 2013)* (quoting *Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 671 A.2d 567, 581 (N.J. 1996)*).

Here, Plaintiff exhausted administrative remedies by obtaining the Board's final decision, which the Board then adopted in the Resolution and published notice thereof.[11] *Edison Bd. of Educ. v. Zoning Bd. of Adjustments of Edison Twp., 464 N.J. Super. 298, 235 A.3d 249, 2020 WL 4196496 (N.J. Super. Ct. App. Div. 2020)* ("[A] party seeking the court's review of a 'determination of a planning board. . . must commence [an] action in lieu of prerogative writs."); *see also N.J. Ct. R. 4:69-6* (an action in lieu of prerogative writs to review a planning board's decision must be commenced within forty-five days of the decision's publication). And, contrary to Defendants' suggestion, actions in lieu of prerogative writs can be brought in federal court. *See Acad. Hill, Inc. v. City of Lambertville, No. 19-426, 2020 U.S. Dist. LEXIS 118036, 2020 WL 3642694, *8 (D.N.J.*

*July 6, 2020)* ("Defendants' argument that Plaintiffs are required to assert this [inverse-spot zoning] claim in state court is unavailing. This Court has previously exerted supplemental jurisdiction over state claims alleging an ordinance is arbitrary, capricious, and unreasonable under the [MLUL]."). The Court, accordingly, finds Plaintiff exhausted administrative remedies and may file an action in lieu of prerogative writs in federal court.[12]

Any challenge to the Court's jurisdiction, therefore, should have been premised on supplemental jurisdiction. Although Defendants do not challenge the Court's supplemental **[*14]** jurisdiction over Count Thirteen, the Court must still consider whether it has jurisdiction over such claim. *See Bracken v. Matgouranis, 296 F.3d 160, 162 (3d Cir. 2002)*.

"[I]n any civil action of which the district courts have original jurisdiction, the district courtri shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *28 U.S.C. § 1367(a)*. There are three requirements for supplemental jurisdiction: (1) the "federal claim must have substance sufficient to confer subject matter jurisdiction on the court"; (2) "the state and federal claims must derive from a common nucleus of operative facts"; and (3) the claims must be such that they "would ordinarily be expected" to be tried in one judicial proceeding. *Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995)* (quoting *United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)*). The party seeking to invoke the Court's jurisdiction bears the burden of establishing the existence of supplemental jurisdiction. *Korrow v. Aaron 's Inc., No. 10-6317, 2015 U.S. Dist. LEXIS 160032, 2015 WL 7720491, at *5 (D.N.J. Nov. 30, 2015)*.

Here, Count Thirteen satisfies the three requirements outlined in *Lyon*. That is, Plaintiff's federal claims have substance sufficient to confer subject matter jurisdiction

---

Br. 24-27; *see* Pl.'s Opp'n Br. 18.)

[11] Defendants provide no applicable legal authority to support the proposition that a party must exhaust "judicial remedies" prior to filing an action in lieu of prerogative writs in federal court. Instead, Defendants primarily cite cases addressing the legal standard—not exhaustion requirement—for due process claims. Defendants have not, however, moved to dismiss Plaintiff's due process claims in the instant motion. (See Defs.' Moving Br. 16-23.)

[12] To the extent Defendants argue Count Thirteen is not ripe for judicial review, such argument fails in part because Plaintiff obtained a final decision from the Plaintiff Board. *See Felmeister v. Off. of Attorney Ethics, 856 F.2d 529, 535 (3d Cir. 1988)* ("With regard to administrative agency actions, considerations of ripeness reflect the need to protect those agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (internal quotations and citation omitted)).

on the court. (Compl. ¶¶ 461-97.) Plaintiff's federal claims and Count Thirteen derive from the same nucleus **[\*15]** of operative facts: the Planning Board's denial of Plaintiffs Application. For the same reason, those claims would ordinarily be expected to be tried in one judicial proceeding. *See MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1102 (3d Cir. 1995)* ("logic and prudent use of judicial resources dictate that these claims[, which arise from the same fraudulent activity,] be tried in one judicial proceeding"). The Court, therefore, has supplemental jurisdiction over Count Thirteen.

### 2. Count Thirteen Raises a Plausible Claim for Relief

Defendants argue, in a cursory manner, that Count Thirteen fails to state a cause of action. (Defs.' Moving Br. 12-14,19.) Defendants further contend that the Planning Board's decision was not arbitrary, capricious, or unreasonable. (*Id.* at 26-27.)

"The MLUL is a carefully constructed and comprehensive framework governing the powers of municipalities relating to land use and development." *N.J. Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 449, 972 A.2d 1151,1153 (N.J. 2009)*. The MLUL "grant[s] power to local planning boards to review and approve" land use applications "and require[s] ordinances that contain provisions for an application process for development." *See Lakeview Mem'l Park Ass'n v. Burlington Cnty. Constr. Bd. of Appeals, 463 N.J. Super. 459, 232 A.3d 529, 537 (N.J. Super. Ct. Law Div. 2019)*; see *N.J. Stat. Ann. § 40:55D-38*. The challenging party bears the burden of demonstrating the planning board's decision was arbitrary, capricious, or unreasonable. *Rivkin, 671 A.2d at 581*. While courts "will **[\*16]** give substantial deference to findings of fact, it is essential that the board's actions be grounded in evidence on the record." *Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 849 A.2d 1117 (N.J. Super. Ct. App. Div. 2004)*.

Here, Plaintiff alleges it submitted a "fully conforming Application" to the Planning Board that should have been approved. (*See* Compl. ¶¶ 505-09,527-28.) Plaintiff asserts it submitted a substantial number of supporting documents and presented the testimony of various expert witnesses. (*Id.* ¶¶ 512-13.) According to Plaintiff, the Planning Board nevertheless denied its Applications without "any lawful justification." (*Id.* ¶ 528.) Plaintiff claims the Planning Board denied its Application based on the "severe anti-Semitic pressure from local

residents" to do so. (*Id.* ¶ 3.) Planning Board allegedly relied in part "on the testimony of objecting Township residents and the comments and questions of Board members," including issues concerning the house of worship, intended use of basements, private schooling, and bussing. (*Id.* ¶¶ 111-90, 243.) Plaintiff posits the Planning Board provided pretextual justifications for denying the Application because the purported concerns raised by the Planning Board were matters outside of its jurisdiction. (*Id.* ¶¶ 217-38.) Defendants, **[\*17]** notably, do not dispute Plaintiff's contention that those matters were outside of its jurisdiction but rather, in justifying denial of the Application, seem to rely on a purportedly outdated environmental study provided by Plaintiff and Plaintiffs refusal to allow the Planning Board more time to review the evidence. (*See* Defs.' Moving Br. 1-2, 26-27.)

Drawing all reasonable inferences in Plaintiff's favor, the Court finds Count Thirteen sufficiently alleges Planning Board acted in an arbitrary, capricious, or unreasonable manner when it denied Plaintiff's Application. The Court, at this juncture, will not address the merits of the underlying claim. *See In re Ins. Brokerage Antitrust Litig., No. 1663, 2007 U.S. Dist. LEXIS 25632, 2007 WL 1062980, at \*3 (D.N.J. Apr. 5, 2007)* ("[T]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."). Because Count Thirteen is sufficiently pled, the Court will exercise supplemental jurisdiction over that claim. Defendants' Partial Motion to Dismiss, to the extent it seeks dismissal of Count Thirteen, is therefore denied.

### B. The Court Declines to Exercise Supplemental Jurisdiction Over Count Fourteen

Relying on *Ohad Associates. v. Township of Marlboro, No. 10-2183, 2010 U.S. Dist. LEXIS 86571, 2010 WL 3326674 (D.N.J. Aug. 23, 2010)*, Defendants argue this Court lacks supplemental jurisdiction over Count Fourteen **[\*18]** because Plaintiffs claim—an alleged violation of the Mount Laurel doctrine—raises "a complex issue of state law" that should be resolved in state court. (Defs.' Moving Br. 28-31.)

In opposition, Plaintiff characterizes Count Fourteen as a breach of contract claim, asserting that "any 'novel or complex issues' have already been addressed by the state courts." (Pl.'s Opp'n Br. 21 ("the only issue here is whether Defendants breached their Settlement Agreement and their HEFSP").) Moreover, Plaintiff

contends *Ohad* is "easily distinguish[able] because in that case the district court declined to exercise supplemental jurisdiction due to the "ongoing involvement of [Council on Affordable Housing ("COAH")]."[13] (*Id.* at 26-27.)

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)*. The district court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, **[*19]** there are other compelling reasons for declining jurisdiction.

*28 U.S.C. § 1367(c)*. In determining whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997)* (quoting *Carnegie-Mellon Univ., 484 U.S. at 350*).

Before reviewing the *Ohad* decision, the Court notes Count Fourteen does not set forth a simple breach of contract claim because the alleged violations of the Settlement Agreement and HEFSP necessarily implicate the *Mount Laurel* doctrine. Plaintiff alleges, for example, that the Planning Board's denial of its Application "violate[s] the Township's Mount Laurel obligations pursuant to the Settlement Agreement and the JCR," "which required implementation of the HEFSP." (Compl. ¶¶ 538, 546.) Indeed, Plaintiff asserts it "has standing to enforce [the Settlement] [A]greement and HEFSP" pursuant to a state court case that held "any individual demonstrating an interest in, or any organization that has the objective of, securing lower housing opportunities in a municipality *will have*

standing to sue such municipality on Mount Laurel grounds*." (Pl.'s Opp'n Br. 11. (emphasis added) (citing *S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp., 92 N.J. 158, 456 A.2d 390, 483 (N.J. 1983)*.) The **[*20]** Court, therefore, finds Count Fourteen involves an alleged violation of the *Mount Laurel* doctrine.

In *Ohad*, the plaintiff applied to the planning board for approval to construct a development. *2010 U.S. Dist. LEXIS 86571, 2010 WL 3326674, at *1*. After the board denied the application, the plaintiff filed a lawsuit in state court, alleging the board's decision violated a consent judgment previously entered against the township. According to the plaintiff, that judgment had identified plaintiff's property, among others, for development to meet the township's *Mount Laurel* obligations. *2010 U.S. Dist. LEXIS 86571, [WL] at *1-2*. The township, meanwhile, sought COAH's approval for a proposed compliance plan. *2010 U.S. Dist. LEXIS 86571, [WL] at *2*. The plaintiff objected to that proposal. *Id.* The parties engaged in mediation that ultimately resulted in an unconsummated settlement agreement. *2010 U.S. Dist. LEXIS 86571, [WL] at *2*. The plaintiff then filed the underlying *Ohad* action against the township and the board (among others) in state court, in part alleging violations of the consent order and settlement agreement. The defendants removed the matter to federal court and the plaintiff moved to remand. *2010 U.S. Dist. LEXIS 86571, [WL] at *2*.

In declining to exercise supplemental jurisdiction, the district court did not base its decision on the ongoing involvement of COAH despite Plaintiff's **[*21]** assertion to the contrary. Rather, the district court rejected the plaintiffs argument that the court should abstain because there "were ongoing proceedings before COAH involving the [d]efendants' *Mount Laurel* obligations and that [the] [p]laintiff [was] participating in those proceedings." *2010 U.S. Dist. LEXIS 86571, [WL] at *4*. Instead, the district court declined jurisdiction because it concluded that the plaintiff's claims "raise[d] a complex issue of state law that ought to be remanded to the New Jersey state courts for resolution." *2010 U.S. Dist. LEXIS 86571, [WL] at *6*. The district court explained that "the designation of a specialist judge in each region who handles all of that region's *Mt. Laurel* claims speaks to th[e doctrine's] complexity, as does the intricacy of the housing-plan approval process." *2010 U.S. Dist. LEXIS 86571, [WL] at *6*. Consequently, the court cautioned that "[a] federal court that opts to decide a *Mt. Laurel* claim not only risks making a substantive legal error, but also intrudes upon" a "process that has been entrusted to state court judges[.]" *2010 U.S. Dist. LEXIS*

---

[13] The COAH "was designed to [p]rovide an optional administrative alternative to litigating constitutional compliance through civil exclusionary actions." *Mount Laurel IV, 110 A.3d at 33*. Finding the COAH moribund, the New Jersey Supreme Court ordered that "the courts may resume their role as the forum of first resort for evaluating municipal compliance with *Mount Laurel* obligations." *Id. at 35*.

Mohamed Hegazi

*86571, [WL] at *6*.

Plaintiff contends that even though Count Fourteen presents a complex issue of state law, the Court should nevertheless retain jurisdiction because otherwise there will be "two parallel lawsuits involving the same nucleus **[*22]** of facts in two separate courts." (Pl.'s Moving Br. 29-30.) The Court recognizes that considerations of convenience and judicial economy weigh in favor of retaining jurisdiction. Principles of comity, however, outweigh these concerns. "The New Jersey courts are critical actors in the *Mt. Laurel* system" that "have developed and implemented a complex, fact-intensive process for carrying out the New Jersey Supreme Court's mandate, and they continue to develop and implement that process today." *2010 U.S. Dist. LEXIS 86571, 2010 WL 3326674, at *6*.

The district court's reasoning in *Ohad* for declining jurisdiction applies with equal force here. The Court finds that Count Fourteen is not a simple breach of contract claim and necessarily implicates the *Mount Laurel* doctrine. Moreover, the principles of comity outweigh Plaintiff's concerns of pursuing parallel suits. The Court also notes that, unlike in the parties in *Ohad,* Plaintiff was not a party to the Settlement Agreement. Nor does the Settlement Agreement or HEFSP appear to identify Plaintiff's Property, much less address a proposal for development.[14] The Court, accordingly, declines to exercise supplemental jurisdiction over Count Fourteen.[15] Defendants' Partial Motion to Dismiss, to the extent **[*23]** it seeks dismissal of Count Fourteen, is therefore granted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

---

[14] While identifying other developers for the Township's Third Round prospective need obligations, the Settlement Agreement and HEFSP appear to only refer to Plaintiff and/or the Property to the extent the documents identify RG-3, where Plaintiff's Property is situated. (*See* HEFSP 27; *see* SA 3.)

[15] Because the Court declines to exercise supplemental jurisdiction over Count Fourteen, the Court does not reach the merits of the parties' remaining arguments.

**MICHAEL A. SHIPP**

**UNITED STATES DISTRICT JUDGE**

## ORDER

This matter comes before the Court upon Defendants Township of Jackson ("Township") and Jackson Planning Board's ("Planning Board") (collectively, "Defendants") Motion to Partially Dismiss Plaintiff Jackson Trails, LLC's ("Plaintiff') Complaint. (ECF No. 11.) Plaintiff opposed (ECF No. 17) and Defendants replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to *Local Civil Rule 78.1*. For the reasons set forth in the accompanying Memorandum Opinion, and for good cause shown,

**IT IS** on this 9th day of October 2020, **ORDERED** that:

   1. Defendant's Partial Motion to Dismiss (ECF No. 11) is **GRANTED** in part and **DENIED** in part.

   2. Count Fourteen of Plaintiff's Complaint (ECF No. 1) is **DISMISSED** without prejudice.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**