# EXHIBIT E

ATTORNEY: DEREK D. REED, ESQ
ATTORNEY ID# 038062003
EHRLICH, PETRIELLO, GUDIN, PLAZA, & REED
A Professional Corporation
60 Park Place, 19th Floor,
Newark, New Jersey 07102
(973) 643-0040 (973) 624-8850 – Fax

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| EQUITY RESIDENTIAL MANAGEMENT, L.L.C., AS AGENT FOR THE OWNER<br>    Plaintiff,<br><br>vs.<br><br>DASHAWN PEYTON<br>155 Washington Street, Unit 504<br>Jersey City, NJ  07302<br><br>    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SPECIAL CIVIL PART<br>HUDSON COUNTY<br><br>**LANDLORD/TENANT DIVISON**<br><br>Docket No. LT-<br><br>    **Certification of Lease and<br>    Registration Statement**<br><br>(N)  Commercial    (Y)  Residential |

**DEREK D. REED,** (Esq.) of full age, being duly sworn according to law, certify and say (select one option for each of the following):

1. I am: ____ the plaintiff/landlord **X** an attorney at law duly licensed to practice in the state of New Jersey in the above-captioned landlord tenant action.

2. The lease that is the subject of this action is: attached in full or in pertinent part and the full lease document is in excess of 10 pages.

3. I have attached a copy of any registration statement for the residential rental property required by the Landlord Registration Act N.J.S.A. 46:8-28.5(b).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

Date: 3/26/2024

*Derek D. Reed, ESQ.*
**DEREK D. REED, ESQ**

NOTICE: This is a public document, which means the document as submitted will be available to the public upon request. Therefore, you must redact personal identifiers on it, such as Social Security number, driver's license number, vehicle plate number, insurance policy number, active financial account number, or active credit card number.

**YOU MUST COMPLETE THIS PART: Filing Attorney Information or Landlord:**

Name  Derek D. Reed, Esq.

NJ Attorney ID Number  038062003

Address  60 Park Place, 19th Floor

Newark, NJ 07102

Telephone Number  973-643-0040

---

*Superior Court of New Jersey Law Division, Special Civil Part*

*Hudson County*

*Landlord-Tenant Division*

*Docket Number: LT* _____

Civil Action

Certification by Landlord

---

Equity Residential Management, L.L.C., as agent for the Owner

Plaintiff,

v

DaShawn Peyton

Defendant,

*The landlord should complete Part A or Part B or both (if both apply). Cross out any paragraphs in those parts that do not apply in this case. Part C applies to all cases and must be completed.*

**A.** When the Eviction is Based on Unpaid Rent

1. The tenant has failed to pay rent now due and owing in the amount of $8,387.63. That amount consists of basic rent of $5,335.00, late charges of $__, legal fees *relating to this action for eviction* of $_____, filing fees and costs of $_____, and other (specify) _____.
2. All of the items listed above are included in the lease agreement as rent.
3. All of those items are permitted by applicable federal, state and local laws (including rent control or rent leveling, if applicable) to be charged as rent for purposes of this action.

**B.** When the Eviction is Based on Other Grounds
*Eviction is sought because:*

**C.** In All Cases

1. I have attached a copy of all notices that have been served on the tenant.
2. These notices were served on the tenant (select all that apply)
   ☐ *by ordinary mail,* ☐ *by certified mail,* ☐ *personally, on* _____.
3. All of the facts stated in the notices are true.
4. If I proceeded without an attorney, I certify that I own the property in my own name or in the name of a general partnership of which I am a partner.
5. I have complied with the registration requirements of *N.J.S.A.* 46:8-27 *et seq.*
6. The tenant did not transfer ownership to me and I have not given the tenant an option to buy the property.
7. The tenant is not in the military service of the United States nor any of its allies, nor is the premises used for dwelling purposes of the spouse, a child or other dependent of a person in the military service of the United States.

*I, the landlord, certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.*

Date: 3/26/2024

*Jacqueline Newton*

Landlord Signature

Jacqueline Newton

Print Name

Promulgated by 07/30/2021 Notice to the Bar, CN 12770

8 of 9

Revised 9/1/2008, CN 10512-English (Appendix XI-T - Certification by Landlord)

**ATTORNEY: DEREK D. REED, ESQ**
**ATTORNEY ID# 038062003**
**EHRLICH, PETRIELLO, GUDIN, PLAZA, & REED**
**A Professional Corporation**
**60 Park Place, 19ᵗʰ Floor,**
**Newark, New Jersey 07102**
**(973) 643-0040 (973) 624-8850 — Fax**

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| EQUITY RESIDENTIAL MANAGEMENT, L.L.C., AS AGENT FOR THE OWNER<br>      Plaintiff,<br><br>vs.<br><br>DASHAWN PEYTON<br>155 Washington Street, Unit 504<br>Jersey City, NJ 07302<br><br>      Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SPECIAL CIVIL PART<br>HUDSON COUNTY<br><br>LANDLORD/TENANT DIVISON<br><br>CERTIFICATION BY LANDLORD'S<br>ATTORNEY<br><br>Docket No. LT- |

1.  I am the attorney for the landlord in this matter and make this certification pursuant to rule 6:6-3(b) or Rule 6:6-4.

2.  The landlord has asserted that the tenant has failed to pay rent now due and owing in this matter.

3.  I have reviewed the applicable federal, state and local law and the written lease between the parties if any, and in my opinion the charges and fees sought, other than the base rent, are permitted to be included in the rent for purposes of this action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 3/26/2024

*Derek D. Reed, ESQ*
**DEREK D. REED, ESQ**

Revised effective 7/14/2020 by 7/14/2020 Order. CN 10822 (Appendix XI-B)



# State of New Jersey
## DEPARTMENT OF COMMUNITY AFFAIRS
CERTIFICATE OF REGISTRATION



## REGISTRATION NUMBER:    0906024276

| | | | |
|---|---|---|---|
| **BUILDINGS:** | 1 TO 2 | **BUILDING USE:** | Multiple Dwelling |
| **TOTAL NUMBER OF UNITS ON PROPERTY:** | 516 | **OWNERSHIP TYPE:** | General Partnership |
| **DATE OF TRANSFER OF OWNERSHIP:** | 6/11/1998 | **CERTIFICATE PRINTED ON:** | 7/9/2018 |
| **CERTIFICATE EXPIRATION DATE:** | 7/9/2024 | **ORIGINAL CERTIFICATE ISSUED ON:** | 7/9/2018 |
| **PROPERTY MAIN ADDRESS:** | 155 WASHINGTON ST JERSEY CITY, HUDSON COUNTY | | |

| PRIMARY PROPERTY OWNER | AUTHORIZED AGENT |
|---|---|
| TWRS AT PORTSIDE URBAN RENEWALCO LLC C/O Tony Santana<br>155 WASHINGTON ST<br>Jersey City, NJ 07302 | TWRS AT PORTSIDE URBAN RENEWALCO LLC C/O Tony Santana<br>155 WASHINGTON ST<br>Jersey City, NJ 07302 |

| EMERGENCY REPAIR EXPENDITURE AUTHORIZER / AUTORIZADOR DE REPARACIONES DE EMERGENCIA | MAINTENANCE SERVICE PROVIDER |
|---|---|
| JACQUELINE ANDREWS<br>155 WASHINGTON ST<br>Jersey City, NJ 07302<br>2019380770 | Tony SANTANA<br>155 WASHINGTON ST<br>Jersey City, NJ 07302 |
| **MANAGER / GERENTE**<br>JACQUELINE ANDREWS<br>155 WASHINGTON ST<br>Jersey City, NJ 07302 | **OFFICER OR GENERAL PARTNER**<br>DAVID NEITHERCUT<br>2 N RIVERSIDE PLZ STE 400<br>CHICAGO, IL 60606 |
| **OFFICER OR GENERAL PARTNER**<br>FREDERICK TUOMI<br>2 N RIVERSIDE PLZ STE 400<br>CHICAGO, IL 60606 | **REGISTERED AGENT**<br>TWRS AT PORTSIDE URBAN RENEWALCO LLC C/O Tony Santana<br>155 WASHINGTON ST<br>Jersey City, NJ 07302 |

THE LAW REQUIRES THAT THIS CERTIFICATE OF REGISTRATION BE POSTED IN A CONSPICUOUS LOCATION AT THE REGISTERED PREMISES. THIS CERTIFICATE IS NOT TRANSFERRABLE. IN THE CASE OF ANY TRANSFER OF TITLE, IT SHALL BE THE DUTY OF THE NEW OWNER(S) TO FILE WITH THE COMMISSIONER WITHIN 20 DAYS OF SUCH TRANSFER AN APPLICATION FOR A NEW CERTIFICATE OF REGISTRATION. IN THE CASE OF ANY CHANGE IN THIS INFOMATION IT SHALL BE THE DUTY OF THE OWNER TO NOTIFY THE DEPARTMENT OF COMMUNITY AFFAIRS WITHIN 30 DAYS OF SUCH CHANGE. THE LAW ALSO REQUIRES OWNERS TO RECERTIFY THIS INFORMATION ANNUALLY BEFORE THE CERTIFICATE EXPIRATION DATE.

REGISTRATIONS AND RECERTIFICATIONS MAY BE SUBMITTED ONLINE AT THE DIVISION OF CODES AND STANDARDS WEBSITE (www.nj.gov/dca/divisions/codes/) UNDER THE DCA SERVICE PORTAL LINK.   QUESTIONS MAY BE DIRECTED TO THE BUREAU OF HOUSING INSPECTION BY PHONE TO 609-633-6216 OR BY EMAIL TO BHIREGISTRATIONS@DCA.NJ.GOV.

FAILURE TO COMPLY WITH THESE REQUIREMENTS CONSTITUTES A VIOLATION OF P.L. 1967, C. 76 OF THE LAWS OF NEW JERSEY AND SUBJECTS THE PARTY SO VIOLATING TO THE PENALTIES THEREIN.



New Jersey

For social service assistance dial 2-1-1 or visit nj211.org
Para asistencia social marcar 2-1-1 o visitor nj211.org.

Lt. Governor Sheila Y. Oliver
Commissioner, Community Affairs By:

Bureau Chief
Carmine Giangeruso
Bureau of Housing Inspection

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

# RESIDENTIAL LEASE – TERM SHEET

**≣≣ Equity Residential**

**Lessor:** Equity Residential Management, L.L.C., as agent for the Owner

**Community:** Portside Towers

**Premises:** 002-504

**Address:** 155 Washington Street

**Premises Address:** 155 Washington Street - 504
Jersey City, NJ, 07302

Jersey City, NJ, 07302
(201) 938-0770

**Residents:** DaShawn Peyton

**Guarantor:**

**Occupants:**

**LEASE TERM**
**Commencement Date:** 10/25/2022          **Expiration Date:** 10/24/2023          Renters' Liability Insurance Required: Yes

Lease Term Expiration: You must provide us with a written notice of your intent to vacate at least 60 days prior to your move-out date. If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short. The Insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date.

**Total Deposits Required:** $ 3183.00

**Total Monthly Rent** : $ 4044.00
(includes all monthly recurring charges listed below)

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| Monthly Apartment Rent | 3734.00 | | | | |
| Monthly Storage Fee | 150.00 | | | | |
| Pet - Dog | 160.00 | | | | |

**Assigned Item Description**
Storage Unit 2

Concessions: Monthly Recurring Concession: $ 0.00   /per month. Total Amount of One-Time/ Non-Recurring Concession: $ 0.00   . Total Amount of Other Recurring Concessions: $ 0.00   . The Total Monthly Rent shown above will be adjusted by these lease concession amounts. If this Lease is terminated early, you may be required to pay us a portion of your concession as set forth in the Lease Concession paragraph of the Terms and Conditions.

**Total Other Fees and Charges:**   $750.00
(includes all charges listed below)

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| Amenity Use Fee | 750.00 | | | | |

| | Type | Breed | Weight | License/Tag |
|---|---|---|---|---|
| Approved Pets | Dog | Morkie | 0 | |
| | Dog | Morkie | 0 | |

For additional information regarding our pet policy, please refer to the Resident Handbook and Community Policies.

**Resident Account Number:** 19094-002-504-9

© Equity Residential 2020. All Rights Reserved.          Page 1 of 2          National Lease Form (11/20)

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

## LESSOR PAYS UNCHECKED UTILITIES / RESIDENT PAYS CHECKED UTILITIES

☑ Electricity:             Direct billed by the provider.  You pay the provider

☐ Gas/Heating Oil:

☑ Water:                   Allocated based on square footage.  You will receive a bill from our billing vendor.

☑ Sewer:                   Allocated based on square footage.  You will receive a bill from our billing vendor.

☐ Central Boiler:

☑ Cable:                   Direct billed by the provider.  You pay the provider

☑ Garbage Removal:         Allocated equally among all occupied apartments. You will receive a bill from our billing vendor.

☑ Internet:                Direct billed by the provider.  You pay the provider

☐ Pest:

**Late Fees:** Your rent is due on the 1st of each month. If we do not receive your rent and other recurring charges, in person before the close of business, or electronically by 11:59 pm local time, on day 11 , you will be charged a late fee as follows:

$35 on the 12th

**Returned Item Fees:** If your payment fails to clear the bank for any reason, you will be charged a returned item fee of $ 35.00  per item.

| Additional Lease Addenda |
| --- |
| Residential Lease – Terms and Conditions          SmartHome Addendum |
| Utilities Addendum |
| Fire Safety Plan |
| Temporary Partition Addendum |
| Rent Control Notification |
| Construction and Rehab Addendum |
| Smoke-Free Lease Addendum |
| Parking Permit Zones Addendum |
| Truth in Renting Statement |
| Pet Animal Agreement |

By signing this Term Sheet, you acknowledge that each of the Additional Lease Addenda are attached to this term Sheet and are therefore made a part of the Lease. You further acknowledge that you have read and that you agree to all of the provisions set forth in this Term Sheet and the Additional Lease Addenda.

You also acknowledge that you have received, or will receive, (separate from this Lease) a copy of the Resident Handbook and Community Policies and a copy of the Condition of Premises Inspection Form. You acknowledge and agree that the provisions contained in these two documents are incorporated into this Lease and that you will abide by the policies and procedures set forth in these documents.

**You specifically acknowledge that this Lease contains provisions extending the Lease Term if you stay beyond the Expiration Date set forth on the first page of this Term Sheet or if you fail to provide timely written notice of your intent to vacate the Premises at least 60  days prior to the Expiration Date.**

## READ THIS TERM SHEET BEFORE SIGNING

**Residents (ALL Residents must sign and date):**

DocuSigned by:

_____  10/16/2022 Date    _____ Date    _____ Date
AAEA2D7714A8476...
DaShawn Peyton

_____ Date    _____ Date    _____ Date

_____ Date    _____ Date    _____ Date

**Lessor:**     **Equity Residential Management, L.L.C.,**
               **as agent for the Owner**

By: _____           10/13/2022
It's: Authorized Representative          Date

**Resident Account Number:** 19094-002-504-9

© Equity Residential 2020.  All Rights Reserved.         Page 2 of 2         National Lease Form (11/20)

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

## RESIDENTIAL LEASE – TERMS AND CONDITIONS
### (New Jersey)

These Terms and Conditions are attached to and incorporated by reference into the Residential Lease - Term Sheet signed by Resident ("you" or "your") and Lessor ("us" or "we") with respect to your rental of the Premises identified on the Term Sheet. The Term Sheet, these Terms and Conditions, the Resident Handbook and Community Policies, the Move-In/Move-Out Inspection Form, and all Lease addenda or other agreements that may be referenced on the Term Sheet or attached hereto, make up the Lease. The party executing this Lease as the Lessor is Equity Residential Management, L.L.C., which is acting as the managing agent for the owner of the Community. Each person living in the Premises that is 18 years of age or older must sign the Lease as a resident. All others living in the Premises must be designated as occupants. Each person signing the Lease is jointly and severally liable for all of the various resident obligations under the Lease. That means that every individual resident, including all co-residents, is responsible for the entire rental amount and other obligations, even if, as roommates, you have made arrangements among yourselves to allocate the rent or other payments among yourselves.

1.      **Lease Term/Month-to-Month Tenancy:** The term of this Lease is set forth in the Lease Term section of the Term Sheet. At the end of your Lease term, if you do not move out or, if you do not sign a renewal lease, your Lease will automatically renew on a month-to-month basis. If you stay in the Premises on a month-to-month basis following the term of the Lease, or you stay beyond your Lease end date in order to fulfill your notice requirement, you will, effective the day after your Lease term ends, pay the month-to-month rent amount included in the renewal offer we deliver to you. Once you become a month-to-month tenant, we reserve the right to increase the month-to-month rental rate upon 30 days' notice to you.

2.      **Notice to Vacate/Early Termination:**

a.      If you plan to move out of the Premises at any time during your Lease term, including the expiration date of your Lease, you must provide us with a written notice of your intent to vacate at least 60 days prior to your move-out date. Once you are in a month-to-month status, you must give 30 days' written notice prior to your move-out date. If you submit your notice to vacate and fail to move out on or before the notice date you provide to us, then, for each day you hold over, you will be charged holdover rent equal to two times your then-current per diem rental rate. If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short. The insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date. If you move out without providing any notice at all, then, for the purposes of this paragraph, your move-out date will be considered to be your notice date. You acknowledge and understand that the purpose of this notice requirement is to provide us with adequate time to re-rent the Premises without interruption.

b.      With certain exceptions that may be allowed by applicable law, you have no right to terminate your Lease prior to the end of your Lease term. If you terminate your tenancy early, you will be in default under the Lease, and you will be responsible for paying early termination rent at the per diem rental rate that is in effect on your move-out date until the earlier of (i) the end of your Lease term; or (ii) the date a new resident moves into the Premises. If your apartment is re-rented prior to the expiration of your lease term and the new resident's monthly apartment rent is less than your monthly apartment rent, then, for the remainder of your lease term, you will also be responsible for the difference between your monthly apartment rent and the new resident's monthly apartment rent.

c.      If you move out within the last 30 days of your Lease term, you will remain responsible for the balance of your rent and other charges through the expiration date of your lease.

d.      In all cases where you are charged early termination rent or insufficient notice rent, if a new resident moves into the Premises during the charge period, we will issue a credit to you for the number of days that the new resident was in possession of the Premises.

3.      **Move-Out Obligations:** When you move out, you must remove all of your personal belongings and leave the Premises in substantially the same clean, undamaged, and ready-to-rent condition as existed when you took occupancy of the Premises, less ordinary wear and tear. You will be charged for replacement of any damaged or missing items, as well as all costs to clean or repair any portion of the Premises, carpeting, flooring, wall coverings, paint, counters, trim, window treatments, doors, windows, or appliances which are damaged, dirty, or unsanitary, and the removal of all trash and personal property from the Premises. Cleaning and repair of damage due to smoking of any kind or any damages or stains caused by pets, are not considered ordinary wear and tear. In order to avoid being charged for cleaning carpets in the Premises after you move out, you must have the carpets professionally cleaned, as documented by a receipt you

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

provide to us. Having your carpets professionally cleaned, however, will not avoid liability for damage or permanent stains. You agree to return all keys, access cards and remotes to us to confirm you have vacated the Premises. If you fail to return these items, you agree that your move-out date will be the date we physically take possession of the premises.

**4.     Rent:**  You agree to pay the amount shown in the Total Monthly Charges section of the Term Sheet , in advance and without demand, on or before the first day of each calendar month. All rent and other charges are  subject to an enforcement action if not received in a timely manner. All rent must be paid in U.S. dollars and we reserve the right to require that payments be made in one lump sum, even if there are multiple residents listed on the Lease.  We strongly encourage residents to use on-line or electronic payment methods. Unless prohibited by law, we may elect to centralize the collection sites for non-electronic payments and/or require that all payments be made electronically.  If we do so, we will notify you in writing of the requirement, and, in the case of centralized collections, the address to which you should send your payments, as well as the effective date for such change.  If we designate an off-site receivables location, you agree that all rent and other payments directed to that location must be received at the designated location on or before the due date. We do not accept cash, third party personal checks, or checks without a preprinted name and address of the account holder. If you pay by personal check, you are authorizing us to scan the check and convert it into a one-time electronic debit from the bank account against which the check was written.  Unless prohibited by law, we reserve the right to refuse payments by personal check, automatic debit or other form of electronic payment and require payment by cashier's check or money order if, for example, you have submitted previous checks or other payments to us that have failed to clear the bank.  We are not required to re-deposit a dishonored check.

**5.     Late Charges and Returned Item Fees:**  You acknowledge that if we do not receive your rent and other  charges on time, we will incur costs, the exact dollar amount of which is difficult or impracticable to determine.  Such costs may include, among other things, lost use of funds, bank or other charges, costs incurred in connection with accounting for and attempting to collect late payments; collection expenses; and other administrative and accounting costs. As a result, if we do not receive your rent when it is due, we will assess late fees as described in the Late Fees section of the Term Sheet. Similarly, if any payment to us (electronic or otherwise) is returned or otherwise rejected by your financial institution for any reason, we will assess a returned item fee as described in the Returned Item Fees section of the Term Sheet, as well as all applicable late fees. The fact that a late charge is not assessed until sometime after the first day of the month does not constitute a grace period for the payment of rent. We have the right to file suit to gain possession of the Premises on the second day of the month if rent is not paid on time  The fees described in this paragraph are in addition to any other remedies we may have in the event of your default under the terms of this Lease. You agree that the late fee is a fair and reasonable estimate of actual expenses we may incur as a result of your failure to pay rent when due.

**6.     Application and Acceptance of Payments:**  Unless we are prohibited from doing so by law, we will apply the payments you make to us in the order of priority we determine, regardless of any notations that you make on checks, money orders or other forms of payment. We reserve the right to accept any amount less than the balance due at any given time and, if we do accept a lesser amount, such acceptance will not represent a waiver of any right we have to pursue you for the outstanding balance or possession of the Premises.  If you are chronically late with your payments of rent and other charges , we reserve the right to terminate this Lease.

**7.     Security Deposit:**  Upon signing this Lease, you have agreed to give us deposits as set forth in the Total Deposits section of the Term Sheet. These Total Deposits are not prepaid rent, but, rather are a good faith deposit for your fulfillment of your Lease obligations, as well as a contingency against damages to the Premises.  The Total Deposits are held in a separate interest-bearing account at the following bank:

> Bank of America
> 880 Bergen Ave
> Jersey City, NJ 07306
> Type of Account:  Interest Bearing
> Current Interest Rate:  0.00%

Pursuant to applicable law, this Lease constitutes a receipt for the Total Deposits you paid.  The interest rate shown above is the rate paid by the bank as of the date this Lease is being entered into.  This interest rate will change from time to time throughout the Lease term and, pursuant to New Jersey law, all accrued interest on your Total Deposits will be paid to you on an annual basis and at move-out.

You are not entitled to apply any part of your Total Deposits against rent and other charges  during the time you are occupying the Premises. Consistent with the requirements of state law, after you move out, we will inspect the condition of the Premises, and charge, against your Total Deposits, for any damages beyond ordinary wear and tear, excessive

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

cleaning or trash removal charges, as well as any outstanding balances you owe us. If any balance of the Total Deposits remains after applying all such charges, we will refund it to you. If the move-out charges and/or other unpaid amounts remaining on your resident account at the time you move out exceed the amount of the Total Deposits, you agree to pay us the difference. We reserve the right to charge pre-judgment interest on any balance owing after you move out. Such interest will begin to accrue when the balance, if any, shown on the Statement of Deposit Account we issue to you is not paid within 30 days following the date set forth on the Statement of Deposit Account. The interest charged on the outstanding balance will not exceed the rate of 18% per annum or the highest rate allowed by law, whichever is less, and will be reflected on the Statement of Deposit Account that will be issued to you after you move out. If you wish to do so, you may request us to inspect the Premises with you upon move-out. If no other arrangements are made, we will inspect the Premises within 48 hours after you move out. If there are multiple co-residents on this Lease, you agree that, at the time you provide notice to move out, you will (i) provide a forwarding address to us for receipt of the Statement of Deposit Account; and (ii) select one co-resident, who resides at the forwarding address, to receive the refund of any Total Deposits paid. You may also have the opportunity, upon providing an account number to us, to select to have your refund, if any, directly deposited into the bank account of the selected co-resident. If you fail to provide us with a forwarding address and co-resident designation, we will, within the timeframe required by state law, (i) make the refund check payable to all residents listed in the Lease, and (ii) mail the refund check to the address provided or, if no forwarding address is provided, we will mail the refund check to the Premises address for forwarding by the U.S. Postal Service.

8.   **One-time Fees:** If you have paid other fees and charges as set forth in the Total Other Fees and Charges section of the Term Sheet, you acknowledge and understand that such other fees and charges are not refundable, are not considered to be a security deposit or part of the Total Deposits, and will not be applied as a credit toward any amounts owed by you at the time you move out. The Amenity Fee set forth on the Term Sheet is a one time, non-refundable charge for use, in common with other residents, of the common areas and amenities at the Community. We will charge an additional Amenity Fee at the time you renew your lease. We have the right to increase or decrease the Amenity Fee at any time.

9.   **Lease Concessions:** If you received any Lease concession, you must fulfill all of your obligations under this Lease for the entire Lease term. If this Lease is terminated early, you must repay a prorata portion of the total Lease concessions you received based on the number of days remaining in your Lease term after you move out. Any concession that is designated on the Term Sheet as a one-time or upfront concession must be applied first toward your rent and other charges during the first full calendar month of the initial term and to consecutive months thereafter until the balance of the concession credit reaches zero. If the concession shown on the Term Sheet is designated as a recurring concession and the Lease is terminated early, the early termination rent that will be charged after you move-out will not include the deduction for the recurring concession.

10.   **Employees of Lessor:** If you are an employee of Lessor or a co-resident living with an employee of Lessor, you acknowledge and agree that the rent concession identified on the Term Sheet may or may not be provided to the employee as a condition of employment. If the requirement to live in the Premises is not a condition of employment and the value of the rent discount exceeds 20% of the monthly rent, the amount that is in excess of 20% will be included in your taxable income and you will be required to pay all applicable taxes on that amount. During any time that you are on leave of absence from your employment, if you are responsible for taxes on your rent discount, you must remit the tax amount that is generally withheld from your paycheck to the Lessor during the month in which the concession is granted. If you fail to do so, after notice to you, Lessor reserves the right to eliminate that portion of the concession in excess of 20% of the monthly rent. You also agree to pay your rent and other charges electronically each month via one of the following: (i) the one-time payment option on the resident portal; or (ii) Automatic Debit Authorization; or (iii) other electronic payment process implemented by Lessor. If you do not have a checking account, you may pay by money order or cashier's check given directly to the Community's management office. Under no circumstances are you to rent space in the Premises to occupants on a short-term basis and you are specifically prohibited from advertising and leasing the Premises through such sites as Airbnb, craigslist, Expedia, Hotels.com, or any other similar locator sites. If you breach the Lease for any reason, we may, in addition to our right to pursue remedies under the Lease for breach of Lease, terminate the employee concession and require you to pay the Monthly Apartment Rent set forth on the Term Sheet, along with other charges, without the employee concession. If the employee's employment is terminated for any reason, your tenancy will terminate on the seventh day following the last day of employment. Unless we enter into a new Lease with you or consent in writing to allow you to remain in the Premises for a specified period of time, which is in our sole discretion, you agree to vacate the Premises by this date. We have no obligation to enter into a new lease with you or to allow you to remain in the Premises beyond this timeframe. If we mutually agree to continue your residency, you must sign a new lease at a rate that is compliant with then-current pricing guidelines for non-employees and you must also make all deposits customarily collected from other residents at the Community, prior to the expiration of your tenancy (seven days). If you continue to occupy the Premises beyond the seven day period or the agreed upon vacate date, whichever is

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

applicable, without having signed a new lease and paying all deposits, you will be considered a "holdover" resident, as defined in this Lease and will be subject to the terms and conditions relating to such holding over. Unless you have signed a new lease, no holding over by you or payments of money by you to Lessor shall be construed to extend the Lease term or prevent us from recovering possession of the Premises. You understand and agree that the obligations identified in the Arbitration Policy and Agreement to submit certain types of employment-related disputes to binding arbitration, do not apply to any dispute related to your tenancy or this Lease.

**11.     Failure to Pay Deposits, Other Fees and Charges and First Month's Rent:** If you fail to pay any deposits, other fees and charges and the first month's rent (or a prorated amount if the first month is a partial month) prior to moving in, you will be in default under the Lease and we can refuse to give you possession of the Premises until you pay such amounts.

**12.     Delay in Delivery of Possession:**   You are responsible for paying rent and other charges effective with the Commencement Date shown in the Lease Term section of the Term Sheet.   If we are unable to give you possession of the Premises on the Commencement Date, we will abate the rent until we are able to do so. You agree that you will not seek reimbursement from us for any cost incurred by the delay of possession, including, but not limited to, storage or temporary lodging.   Subject to applicable law, if we fail to deliver the Premises to you within 30 days from the date promised, either you or we may terminate the Lease by providing written notice to the other.  Requirements for us to make repairs or clean the Premises that do not affect your ability to occupy them will not constitute a delay or entitle you to a rent abatement.  If we are unable to deliver the Premises but, at our discretion, offer you comparable accommodations at no additional cost, you will not be entitled to a rent abatement.

**13.     Rental Application and Resident Information Updates:**   You have provided certain information in your Application for Rental that we have relied on in connection with renting the Premises to you.  You agree to promptly notify us if any of the information you provided changes. If any of the information you provided to us on your Application or in any subsequent updates is materially false, incomplete or misleading, or if you fail to notify us of any change or if you fail to update your information, you will be in default of your obligations under this Lease.

**14.     Disclosure of Information:**  To the extent permitted by applicable law, we may provide information about you, your co-residents, or any of your occupants to third parties such as law enforcement personnel, future landlords, mortgagees, attorneys, collection agencies, and consumer reporting agencies for law-enforcement, governmental, credit, rent payment history, or other business purposes.  If we provide such information to third parties at your request, we reserve the right to charge a reasonable administrative fee for doing so.  If you and your co-residents have a guarantor, we may, without notifying you, provide information to the guarantor.

**15.     Utilities and Utility Cost Adjustments During the Lease Term:** You are responsible for paying for all of the utilities identified on the Term Sheet that are checked, and any utilities that we have not specifically agreed to pay.  In some cases, the utility service will be provided to you by the utility company and you will pay the utility company directly. In other cases, your utility bill may be calculated based on a submeter reading, an allocation method, or a flat fee (as more fully described in the Utilities Addendum attached to this Lease), in which case you will receive a bill for such utilities from our billing vendor and you will either pay us directly or send your payments to our billing vendor.  The Utilities section of the Term Sheet identifies which utility bills are to be billed by and paid directly to the utility company and which utility bills are to be billed by our billing vendor and either paid to us directly or, in some cases, sent to our billing vendor.  In all cases, your failure to pay the utilities in full when due shall be considered a default under the Lease.  You will not allow utilities that are in your name to be disconnected for non-payment or any other reason. If you do not connect the utilities as of your Lease start date or, if you disconnect the utilities early before moving out, and the utilities remain in our name during such timeframes, we will bill you for the utility charges incurred for the days you were in possession of or living in the Premises, along with an administrative fee of $50.00 for each utility bill we process on your behalf.  You acknowledge that if the utilities remain in our name, we will incur costs, the exact dollar amount of which is difficult or impracticable to determine.  Such costs may include, among other things, lost use of funds, bank or other charges, costs incurred in connection with paying, accounting for and attempting to collect utility payments; collection expenses; and other administrative and accounting costs. Because many utilities have long billing cycles, we may not have the actual utility bill in hand at the time we process your move out charges.  In that circumstance, we reserve the right to estimate the utility charges for you based on typical or average consumption.   We make no representation or warranty with respect to the amount of any estimated or actual utility costs associated with the provision of utility services to the Premises or the Community. To the extent we make a request of you in connection with any analysis of overall utility consumption at the Community, you authorize us, as your agent, to request and receive copies of your utility billing records directly from the utility provider.  You acknowledge that we cannot be held responsible for any outages, interruptions or fluctuations in utility service that are provided to the Premises, and that you have no right to claim constructive eviction or to receive any offset

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

or reduction of rent or diminished rental value of the Premises as a result of any such outages, interruptions, or fluctuations.

**16.     Right to Enter:** Subject to notice requirements imposed by applicable law, we and our employees and agents may enter the Premises during reasonable hours for any lawful purpose, including but not limited to inspections, maintenance, repairs and pest control procedures. We also reserve the right to enter the Premises at any time in the event of an emergency, to check for abandonment, or to abate a nuisance. If you submit a service request to us, such request for service will constitute your permission for us to enter the Premises to do the requested work. You authorize us, in the event of your death or incapacity, to grant access to the Premises and the contents therein to the individual named in the emergency contact section of your Application for Rental or otherwise named by you in connection with updating your resident information.  Once we grant access to such person, he/she may remove all personal property from the Premises and dispose of it in accordance with applicable law.  You hereby release and discharge us from any liability, claim or damages arising out of or in connection with our granting such access to the person you named.  Assuming you have submitted a notice to vacate to us, we may, during the last 30 days of your tenancy and without advance notice to you, show the Premises to prospective new residents during normal business hours. If it is necessary for you to temporarily move out in order for us to exterminate or for other reasons, you agree to do so upon at least seven days' notice or on shorter notice as may be reasonable under the circumstances. If you are forced to temporarily move out for more than one day because of a duty, condition or event that is our responsibility under this Lease or by law and, if we do not make substitute accommodations available to you, we will abate your rent and other charges for the period of time you are unable to occupy the Premises.

**17.     Right to Exclude:** We reserve the right to exclude from the Community you and any of your occupants or guests who violate this Lease, any of the Community's policies, or the law. We also reserve the right to exclude anyone who disturbs other residents or our employees and agents, as well as anyone we reasonably believe represents a potential threat to other residents or to our employees and agents. We may also exclude from the Community any person who refuses to show photo identification to us or to identify himself or herself as a resident, occupant or guest. We may deny you or any person access to the Premises, including by changing the locks, if any court or legal order restrains or bars you or such person from the Premises.

**18.     Liens or Sales by Lessor:** This Lease is subject and subordinate to all present or future ground or underlying leases, loans, mortgages, deeds to secure debt or deeds of trust affecting the Premises and the Community which we or any subsequent owner of the Community may enter into. You hereby appoint us as attorney-in-fact to execute and deliver any and all necessary documents to evidence such subordination of the Lease. Foreclosure of any mortgage or any sale of the Community will not constitute a constructive eviction and, in the event of any such action, you will continue to pay your rent and other charges and perform your obligations under this Lease.  Upon any foreclosure or sale, we will be released from all obligations under this Lease that accrue after the date of the foreclosure or sale and you will look solely to the then-current owner for the performance of Lessor's duties.

**19.     Criminal Activity:** You agree that neither you, nor any of your occupants or guests will (i) engage in any criminal activity of any kind, including, without limitation, drug related criminal activity, prostitution or criminal street gang activity, on or near the Community, (ii) engage in any act intended to facilitate such criminal activity, (iii) use or permit the Premises to be used for, or to facilitate, any criminal activity, or (iv) engage in any acts of violence or intimidation or any threats of violence, verbal or otherwise, including, but not limited to, the discharge or brandishing of firearms or other weapons, on or near the Community or otherwise.  For purposes of this section, "drug related criminal activity" includes, but is not limited to, the use of or the manufacture, sale, distribution, dispensation or possession with intent to manufacture, sell distribute, or dispense, marijuana or any other Controlled or Counterfeit Substance, as defined in the Controlled Substances Act (21 U.S.C. 802), as amended from time to time.  One or more violations of the provisions of this paragraph will be considered a breach of the Lease and good cause for the immediate termination of your tenancy and your eviction from the Premises.  Unless otherwise provided by law, proof of a violation of this paragraph shall not require criminal conviction, but may be based on our reasonable suspicion and a preponderance of the evidence. In addition, if you or any of your occupants have engaged in any criminal activity during the Lease term or otherwise, we may take action to terminate the Lease and pursue eviction-related remedies.

**20.     Use and Occupancy:** The Premises are to be occupied and used solely as a private residence. Therefore, conducting any kind of business in the Premises, or anywhere in the Community, is prohibited.  However, a lawful business conducted "at home" by computer, mail or telephone is permissible if customers, clients, patients or other business associates do not come to the Premises for business purposes. The number of people living in the Premises is subject to applicable local occupancy standards. Only those residents and occupants identified on the Term Sheet, and, subject to the Community's occupancy standards, children born or adopted during the Lease term, may occupy the

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

Premises without our prior written consent. If someone stays with you for more than 15 days (consecutive or otherwise) in any one month, we will consider such person to be an unauthorized occupant and, in order to allow such person to continue residing in the Premises, we must consent. If the person is age 18 or older, we may require him/her to complete an Application for Rental and pay an application fee. If we consent to such person's occupancy in the Premises, we also require that such person, unless he/she is a full-time student residing with a parent or guardian, be named on the Lease as resident. You acknowledge that we may require that any additional co-residents be screened through our credit and criminal screening process. You understand, however, that some individuals, guests, occupants, etc., who stay at the Community may not have gone through this process. All co-residents who are added as residents to the Lease are accepting the Premises in as-is condition and are agreeing to be jointly and severally liable for the condition of the Premises. You are responsible for your conduct, as well as the conduct of your occupants and guests. You, your occupants and all guests will: (i) show due consideration for neighbors and not interfere with, disturb or threaten the rights, comfort, health, safety, convenience, quiet enjoyment and use of the Community by us, other residents and occupants and any of their guests, agents or invitees; (ii) not engage in abusive, threatening or harassing conduct, including, but not limited to racist conduct, toward us, our employees, agents or representatives, or other residents, occupants or guests at the Community; (iii) you will not unreasonably interfere with our management of the Community; (iv) exercise reasonable care in the use of the Premises and maintain the Premises in a clean, safe and undamaged condition, ordinary wear and tear excepted; (v) comply with all of the policies and procedures contained in the Resident Handbook and Community Policies we delivered to you via My.EquityApartments.com or otherwise; and (vi) comply with federal, state and local laws, regulations, statutes and ordinances which are applicable to the Premises and your tenancy. We reserve the right to be the sole judge of acceptable conduct and to determine the appropriate action necessary to deal with unacceptable conduct, including, but not limited to taking action to terminate your tenancy and to pursue eviction-related remedies.

**21. Restrictions on Assignment and Subletting/Prohibition Against Short-Term Rentals:**

a. You may not assign this Lease or sublet the Premises without our prior written consent. If we do consent to any assignment or sublease, you will remain fully responsible and liable for the payment of the rent and other charges throughout the remainder of the Lease term.

b. The Premises are not to be used or occupied as a hotel or for any other transient use. Under no circumstances are you to rent space in the Premises to occupants on a short-term basis (for a period of time less than 30 days), or for any short-term occupancy that may be governed by or prohibited by state or local laws, including, but not limited to, those applicable to transient housing, code violations or hotel taxes, unless you receive consent from us. Unless you are given permission by us, you are specifically prohibited from advertising the Premises for rental on sites such as Airbnb, craigslist, Expedia, Hotels.com or any other similar locator sites, regardless of whether the purpose of such advertisement is for short term or transient occupants or for long term rental. Should we become aware of any violation of these short-term stay provisions or incur any loss as a result of your violation of this provision, including but not limited to, any fines or fees assessed against us by any federal, state or local authority, or any loss in business revenue, you will indemnify us and assume full responsibility for any and all such losses that we incur.

**22. Repair and Maintenance:** You confirm that you have inspected the Premises, found them in a clean, rentable, and undamaged condition (other than items listed in the Move-In/Move-Out Inspection Form that you completed or will complete), and that you accept the Premises in "as is" condition. You specifically acknowledge that no condition exists in the Premises that make the Premises materially dangerous or hazardous to your life, health, or safety. If any part of the Premises is in need of maintenance or repair, you agree to notify us immediately. Damages and defects not itemized will be presumed to have first occurred during your occupancy of the Premises. You understand that you are responsible for keeping the Premises in a clean, sanitary and undamaged condition, ordinary wear and tear excepted. You are responsible for properly performing routine cleaning of all interior portions of the Premises. If you fail to keep the Premises clean (including, but not limited to eliminating dirt, filth, scum, grease, oil, mud, scuffs, holes, gouges, burns, stains, tears, cuts, rips, fleas, pests, foul scents or odors (including those relating to smoking), surface mold on caulking at the sinks, tub, shower and other locations, and other conditions which could have been avoided by careful use and routine cleaning), or if you, your occupants or any animals cause damage to the Premises in excess of ordinary wear and tear, you will be responsible for the costs to clean and/or repair such damage. Furthermore, you and your occupants are responsible for maintaining the Premises in a clean and sanitary condition, free of garbage and rubbish and in a condition that does not cause or contribute to a pest or rodent infestation.

**23. Fair Housing Accommodations/Modifications:** We are firmly committed to the principles of Fair Housing. If you or any person residing in the Premises, as a result of a disability, requires accommodations to our rules, policies, practices or services, or a physical modification to the Premises and/or the common areas of the Community in order to

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

provide you or your occupants with equal opportunity to use and enjoy the Premises, you will notify us. If you require physical modifications to the Premises, we may require you to enter into a modification agreement identifying the modifications to be made and any restoration obligations you may have.

### 24.    Military Clause:

a.    If you become an active duty member of the United States Armed Forces during the Lease term, then, pursuant to the provisions of the Servicemembers Civil Relief Act ("SCRA") and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official orders; (ii) provide at least 30 days' prior written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent and other charges through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the Security Deposit paragraph above.

b.    If you are an active duty member of the United States Armed Forces at the time you are signing this Lease, you affirm that the Lease end date does not extend beyond your anticipated discharge, retirement or release from the United States Armed Forces.  Pursuant to the provisions of the SCRA and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official permanent change-of-station orders or your official orders to deploy for a period of not less than 90 days; (ii) provide at least 30 days' written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent and other charges through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the provisions of the Security Deposit paragraph above.

c.    Notwithstanding the provisions of the Lease Concessions paragraph above, if you are exercising your right to terminate the Lease pursuant to the SCRA and this Military Clause paragraph, you will not be required to repay any portion of Lease concessions set forth on the Term Sheet. If any resident satisfies the requirements of this paragraph, all residents in the Premises will be released from their obligations under the Lease if they also elect to vacate the Premises.

### 25.    Resident Insurance.

We strongly recommend that you secure a renters insurance policy covering your personal belongings, which also includes personal liability insurance covering your actions.  Unless there is a prohibition imposed by affordability covenants or other restrictions applicable to the Premises, we require all residents to maintain a policy of liability insurance issued by an authorized insurance company that provides limits of liability in an amount of at least $100,000 per occurrence.  If the Term Sheet indicates that Renter's Liability Insurance is required, you must furnish proof of insurance to us on or before the commencement date of the Lease and, assuming you enter into renewal leases with us, you must continue to provide evidence of coverage for all subsequent renewal terms. You can obtain such insurance from Assurant, through Residential Insurance Agency, LLC at www.rentersdirect.com, or through the insurance agent of your choice. If you select an insurance company other than Assurant you must name the Community as an Interested Party under your policy. Please note that Residential Insurance Agency, LLC, a licensed insurance agency, is an affiliate of Lessor. Except where prohibited by law, if you fail to obtain and maintain liability insurance as required by this paragraph, you will be in violation of your lease obligations. In such event, we will send a written notice to you demanding that you cure the violation by procuring the insurance and supplying evidence of coverage to us. If you fail to supply evidence of such insurance to us on or before the date set forth in your notice, we reserve the right to procure liability only insurance coverage on your behalf, and to charge you for the amount of the premium paid to the insurance company, not to exceed $180.00 per year, along with an administrative fee of $40.00. You agree that this administrative fee is a fair and reasonable estimate of the administrative costs we will incur as a result of procuring the liability insurance coverage for you. If you fail to pay for the liability insurance and/or you allow the expiration or cancellation of any liability insurance policy during your tenancy, without substitute insurance being put in place, this will be considered a default under the Lease.

### 26.    Corporate Units:

If the name in the Resident section of the Term Sheet is a company or business (and not an individual person), then the company assumes all responsibility for damage to the Premises and any loss incurred by us or any third party that is caused by any person living in the Premises.  The company also agrees to indemnify us for all claims, damages, losses and expenses related in any way to the occupancy of the Premises.  The company agrees to identify all persons living in the Premises and to provide written authorization to us to release keys, key cards, and/or access cards to such occupants.  The company agrees to maintain, at its sole cost and expense, throughout the term of the Lease and any subsequent renewal terms, the following insurance: Commercial General Liability insurance on a form at least as broad as Insurance Services Office ("ISO") Commercial General Liability Coverage "occurrence" form CG 00 01 0196 or another ISO Commercial General Liability "occurrence" form providing equivalent coverage, providing broad form comprehensive general liability coverage, blanket contractual liability coverage, coverage for bodily injury (including death), property damage (including loss of use thereof), products and completed operations with an authorized insurance

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

## PARKING PERMIT ZONES ADDENDUM

This Parking Permit Zones Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

Generally, as a matter of law, the City will not issue an on-street residential parking permit to a resident of this building because the building was required to provide off-street parking for its residents when it was constructed. The City requires that a landlord or seller make you aware of this fact before you agree to rent or buy a residence in the building. There are limited exceptions to the prohibition on the issuance of on-street permits. To determine whether or not you qualify for one of the exceptions, you need to read Section 332-58 of the Jersey City Municipal Code, which is available at https://www.municode.com/library/nj/jersey_city/codes/code_of_ordinances or contact the Division of Parking Enforcement at 201-653-6969.

Because an on-street residential parking permit is not available to residents of this building, I understand that if I rent or purchase a residence here, I will be required to pay for parking and I will NOT be eligible for an on-street residential parking permit unless I qualify for one of the exceptions.

_____/_____/_____/_____/_____/_____/_____/_____

The landlord or seller informed me that off-street parking for a resident of this building is available at the rate of $ 0.00   per month.

_____/_____/_____/_____/_____/_____/_____/_____

I was shown this form and read it, prior to signing my lease or contract to purchase.

_____/_____/_____/_____/_____/_____/_____/_____

I understand that if I am eligible for an exception, I am limited to one residential permit per unit. I am ineligible for any other residential permits.

_____/_____/_____/_____/_____/_____/_____/_____

DocuSigned by:

_____ 10/16/2022 Date _____ Date _____ Date
DaShawn Peyton

_____ Date _____ Date _____ Date

_____ Date _____ Date _____ Date

Lessor:   Equity Residential Management, L.L.C.,
          as agent for the Owner

By: _____        10/13/2022
It's: Authorized Representative:           Date

Legal Form – Parking Permit Zones Addendum v1
(New Jersey Only)
Revised 08/20                                   ©Equity Residential 2020. All Rights Reserved

## Side 1

**New Jersey Judiciary**
**Civil Practice Division**

# Landlord Case Information Statement (LCIS)

| Caption | County of Venue | Docket Number |
|---|---|---|
| Equity Residential Management, L.L.C., as agent for the Owner vs. DaShawn Peyton | **HUDSON** | |

**Name of Plaintiff/Landlord**
**Equity Residential Management, L.L.C., as agent for the Owner**

| Email Address | Home/Office Phone | Cell Phone |
|---|---|---|
| | | |

| Attorney Name (if applicable) | Firm Name (if applicable) |
|---|---|
| Derek D Reed, Esq. | Ehrlich, Petriello, Gudin, Plaza & Reed P.C. |

| Email Address | Office Phone | Cell Phone |
|---|---|---|
| courtnotice@epgprlaw.com | 973-643-0040 | |

**Attorney/Plaintiff Mailing Address**

**60 Park Place, 19th Floor, Newark, New Jersey   07102**

**Name of Defendant(s)/Tenant(s)**
**DaShawn Peyton**

| Email Address (if known) | Daytime Phone | Cell Phone |
|---|---|---|
| dashawn.peyton@gmail.com | (202) 520-3426 | |

| Rental Property Address | Municipal Code (*) | Rental Property Is Owner Occupied |
|---|---|---|
| 155 Washington Street, Unit 504, Jersey City, NJ  07302 | 0906 | No |

**The information provided on this form cannot be introduced into evidence**

| Type of Tenancy (select only one) | Cause of Action (select all that apply) | Holdover Cause of Action (select from list on side 2) |
|---|---|---|
| N  Commercial<br>Y  Residential | Y Non-Payment<br>N Other (Holdover/For Cause) | |

Select all that apply to the rental property:

N Subsidized Housing.

Type:   N Public Housing   N Section 8 Voucher   NSection 8 HAP Contract   N Other Subsidy Program

**N**   Notice(s) that are required for Holdover, Public Housing and/or Subsidized Housing are attached to the complaint.

**Y**   Rental property is not a covered property under the Federal CARES Act, 15 U.S.C. § 9057(f) or 9058(a).

**N**   The tenancy is subject to a municipal rent control ordinance.

| | |
|---|---|
| The total number of months of unpaid rent is: | **5 Months** |
| The first month of unpaid rent was (please provide month and year): | **11/2023** |
| The amount due and owing by the tenant in this case is: | **8,387.63** |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

I certify that the foregoing statements made by me are true to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

| Attorney/Plaintiff Signature | Print Attorney/Plaintiff Name | Date |
|---|---|---|
| s/ Derek D. Reed, Esq. | **Derek D Reed, Esq.** | **3/26/2024** |

| Side 2 |
|---|



# Landlord Case Information Statement (LCIS)

## Holdover Causes of Action (Enter number(s) in appropriate space on side 1.)

### Residential Tenancy

| | |
|---|---|
| 1 Disorderly Tenant | N.J.S.A. 2A:18-61.1(b) |
| 2 Willful or Gross Negligent Damage to Premises | N.J.S.A. 2A:18-61.1(c) |
| 3 Violation of Rules and Regulations | N.J.S.A. 2A:18-61.1(d) |
| 4 Violation of the Lease Covenants | N.J.S.A. 2A:18-61.1(e) |
| 5 Violation of the Lease Covenants Under the Control of a Public Housing Authority or Redevelopment Agency | N.J.S.A. 2A:18-61.1(e) |
| 6 Failure to Pay Rent After Increase | N.J.S.A. 2A:18-61.1(f) |
| 7 Demolish/Board Up Premises | N.J.S.A. 2A:18-61.1(g) |
| 8 Permanently Retiring Residential Building/Mobile Home Park from Residential Use | N.J.S.A. 2A:18-61.1(h) |
| 9 Reasonable Changes to Lease at End of Lease Term that Tenant Refuses to Accept | N.J.S.A. 2A:18-61.1(i) |
| 10 Habitual Late Payment of Rent | N.J.S.A. 2A:18-61.1(j) |
| 11 Converting Property to Condominium or Cooperative Ownership | N.J.S.A. 2A:18-61.1(k) |
| 12 Personal Occupancy by Owner or Purchaser of Unit (property converted to condo/cooperative or fee simple ownership) | N.J.S.A. 2A:18-61.1(l)(1) |
| 13 Personal Occupancy by Owner or Purchaser of Unit (owner of a building with 3 or fewer condo/cooperative units. | N.J.S.A. 2A:18-61.1(l)(2) |
| 14 Personal Occupancy by Owner or Purchaser of Unit (building with 3 or fewer residential units) | N.J.S.A. 2A:18-61.1(l)(3) |
| 15 Rental is Conditioned on Tenant's Employment by Landlord | N.J.S.A. 2A:18-61.1(m) |
| 16 Convicted or Pleaded Guilty to Offenses under the 1987 Comprehensive Drug Reform Act, or Harbors such Person | N.J.S.A. 2A:18-61.1(n) |
| 17 Convicted or Pleaded Guilty to Assault/Threats against Landlord, Landlord's Family or Employee, or Harbors such Person | N.J.S.A. 2A:18-61.1(o) |
| 18 Tenant or Tenant Harbors such Person previously found Liable in a Civil Action for Certain Criminal Acts on the Rental Premises | N.J.S.A. 2A:18-61.1(p) |
| 19 Tenant or Tenant Harbors Such Person who pleaded or was convicted of theft of property from the Landlord, the Rental Premises, or Other Tenants | N.J.S.A. 2A:18-61.1(q) |
| 20 Tenant or Tenant Harbors such Person previously found Liable in a Civil Action for Human Trafficking on the Rental Premises | N.J.S.A. 2A:18-61.1(r) |
| 21 Residents at Residential Health Care Facilities (non-payment or holdover) | N.J.S.A. 30:11A-1 et. seq. |

### Commercial Tenancy; Owner-Occupied Premises with Two or Less Residential Units; Rental Unit Held in Trust on behalf of Immediate Family Member Who Permanently Occupies the Unit not Developmentally Disabled

| | |
|---|---|
| 22 Tenant Stays after Expiration of Lease Term | N.J.S.A. 2A:18-53 |
| 23 Tenant Disorderly as to Destroy Peace and Quiet | N.J.S.A. 2A:18-53 |
| 24 Tenant Willfully Destroys, Damages or Injures the Premises | N.J.S.A. 2A:18-53 |
| 25 Tenant Constantly Violates Landlord's Written Rules and Regulations | N.J.S.A. 2A:18-53 |
| 26 Tenant Breaches/Violates any Agreement in Lease that Provides for Right of Reentry | N.J.S.A. 2A:18-53 |
| 27 Violation of Alcoholic Beverages Laws by Commercial Tenant | N.J.S.A. 33:1-54 |

# ACCOUNT # 140514
### Ref No. 903200300

**ATTORNEY: DEREK D. REED, ESQ.**
**ATTORNEY ID# 038062003**
**EHRLICH, PETRIELLO, GUDIN, PLAZA, & REED**
A Professional Corporation
60 Park Place, 19th Floor
Newark, New Jersey   07102

(973) 643-0040 (973) 624-8850-Fax

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION – HUDSON COUNTY**
**SPECIAL CIVIL PART/TENANCY DEPT.**
595 Newark Avenue
Jersey City, NJ  07306
(201) 795-6680

**EQUITY RESIDENTIAL MANAGEMENT, L.L.C., AS**
**AGENT FOR THE OWNER**
                              Plaintiff(s)

vs.

**DASHAWN PEYTON**

                              Defendant(s)

Docket No. LT -

**CIVIL ACTION**
**SUMMONS**
**LANDLORD/TENANT**
(Y)        Non-Payment of Rent

(N)        Other - (Required Notices Attached)
(N)        Commercial    (Y)              Residential

**Address of Rental Premises:**
155 Washington Street, Unit 504
Jersey City, NJ  07302
dashawn.peyton@gmail.com, (202) 520-3426

**NOTICE TO TENANT:** The purpose of the attached complaint is to permanently remove you and your belongings from the premises.  You will be notified when a court proceeding is scheduled. Please contact the Office of the Special Civil Part regarding your case. Please go to njcourts.gov for general information on landlord/tenant actions.

If you cannot afford to pay for a lawyer, free legal advice may be available by contacting Legal Services at (201) 487-2166.  If you can afford to pay a lawyer but do not know one, you may call the Lawyer Referral Services of your local county Bar Association at (201) 488-0044.

You may be eligible for housing assistance.  To determine your eligibility, you must immediately contact the welfare agency in your county at **257 Cornelison Avenue ,Jersey City, NJ  07302,** telephone number **(201) 420-3000**.

If you need an interpreter or an accommodation for a disability, you must notify the court immediately.

Si Ud. no tiene dinero para pagar a un abogado, es possible que pueda recibir consejos legales gratuitos si se comunica con Servicios Legales (Legal Services) al *(201) 487-2166.*  Si tiene dinero para pagar a un abogado pero no conoce ninguno puede llamar a Servicios de Recomendacion de Abogados del Colegio de Abogados de su condado local al *(201) 488-0044.*

Es possible que pueda recibir asistencia con la vivienda si se comunica con la agencia de asistencia publica de su condado al **257 Cornelison Avenue ,Jersey City, NJ  07302,** telephone number **(201) 420-3000.**

Si necesita a un interprete o alguna acomodacion para un impedimento fisico, tiene que notificarselo inmediatamente al tribunal.

Date: _____                                    _____
                                                                                              **Clerk of the Special Civil Part**

---

**(COURT OFFICER'S RETURN OF SERVICE (FOR COURT USE ONLY)**
DOCKET NO._____        DATE: _____        TIME : _____
WM _____ WF _____ BM _____ OTHER _____WT_AGE ____ MUSTACHE _____ BEARD _____ GLASSES _____
NAME_____ RELATIONSHIP_____
EFFORTS MADE TO PERSONALLY SERVICE _____
DESCRIPTION OF PREMISES IF POSTED _____
I hereby certify the above to be true and accurate: _____
                                                                              Special Civil Part Officer

9032-003

Appendix XI-X Verified Complaint

NOTICE: This is a public document, which means the document as submitted will be available to the public upon request. Therefore, do not enter personal identifiers on it, which are your Social Security number, driver's license number, vehicle plate number, insurance policy number, active financial account number, or active credit card number.

**ATTORNEY: DEREK D. REED, ESQ.**
**ATTORNEY ID# 038062003**
**EHRLICH, PETRIELLO, GUDIN, PLAZA, & REED**
A Professional Corporation
60 Park Place, 19th Floor
Newark, New Jersey   07102

(973) 643-0040 EXT  (973) 624-8850-Fax

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION – HUDSON COUNTY**
**SPECIAL CIVIL PART/TENANCY DEPT.**
595 Newark Avenue
Jersey City, NJ  07306(201) 795-6680

**EQUITY RESIDENTIAL MANAGEMENT, L.L.C., AS AGENT FOR THE OWNER**

Plaintiff(s)

vs.

**DASHAWN PEYTON**

Defendant(s)

Docket No. LT -

**CIVIL ACTION**
**VERIFIED COMPLAINT**
**LANDLORD/TENANT**
(Y)        Non-Payment of Rent

Other - (Required Notices Attached)
(N)
(N)        Commercial     (Y)               Residential

**Address of Rental Premises:**
155 Washington Street, Unit 504
Jersey City, NJ  07302
dashawn.peyton@gmail.com, (202) 520-3426

1.   The owner of record is **Plaintiff**.
2.   Plaintiff is the owner or managing agent of the Rental Premises.
3.   The landlord did acquire ownership of the property from the tenant(s).  Yes or No **(No)**
4.   The landlord has given the tenant(s) an option to purchase the property. Yes or No **(No)**
5.   The tenant(s) now reside(s) in and has (have) been in possession of these premises under a written or oral agreement.
6.   The tenancy is subsidized pursuant to either a federal or state program or the rental unit is public housing. Yes or No **(N)**
7.   The landlord has registered the leasehold and notified tenant as required by N.J.S.A. 46:8-27.
8.   The amount that must be paid by the tenant(s) for these premises is **5,335.00**, payable on **the 1st day of each month**.
9A. There is due, unpaid and owing from tenant(s) to plaintiff/landlord rent of **8,387.63** as PER THE ATTACHED SCHEDULE.

The late charges, attorney fees and other charges are permitted to be charged as rent for purposes of this action by federal, state and local law (including rent control and rent leveling) and by the lease.

9B. The date that the next rent is due is **4/1/2024**. If this case is scheduled for trial before that date, the total amount you must pay to have this complaint dismissed is **8,387.63**. (Total from line 9A)

If this case is scheduled for trial on or after that date, the total amount you must pay to have this complaint dismissed is **13,722.63**. Plaintiff reserves the right to amend this complaint on the court date for all additional rent due.

These amounts do not include late fees or attorney fees for Section 8 and public housing tenants. Payment may be made to the landlord or the clerk of the court at any time before the trial date, but on the trial date payment must be made by 4:30 p.m. to get the case dismissed.

**CHECK PARAGRAPHS 10 AND 11 IF THE COMPLAINT IS FOR OTHER THAN OR IN ADDITION TO NON-PAYMENT.**

10.   Landlord seeks a judgment for possession for the additional or alternative reason(s) stated in the notices attached to this complaint. STATE REASONS:

11.   **N** The tenant(s) has (have) not surrendered possession of the premises and tenant(s) hold(s) over without consent of landlord.

**WHEREFORE,** plaintiff/landlord demands judgment for possession against the tenant(s) listed above, together with costs.

All personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b). NOTICE TO TENANT(S): THIS COMPLAINT ASKS THE COURT FOR YOUR EVICTION. WHATEVER THE DECISION IS, THE LANDLORD HAS THE ADDITIONAL RIGHT TO SUE YOU FOR ANY MONEY THAT YOU OWE.


DATED:  March 26, 2024                                    _Derek D. Reed, ESQ_
                                                          DEREK D REED, ESQ.

## Portside Towers
## Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 1/1/2020 | Balance | Balance Forward | | | 0.00 |
| 9/16/2020 | Credit Card Payment | Credit Card | | 650.00 | -650.00 |
| 9/16/2020 | Credit Card Payment | Credit Card | | 100.00 | -750.00 |
| 9/16/2020 | Non-Refundable App Fee | Application Fee | 100.00 | | -650.00 |
| 9/21/2020 | Amenity Use Fee | Amenity Use Fee | 650.00 | | 0.00 |
| 9/21/2020 | Non-refundable Pet Fee | Non-refundable Pet Fee | 450.00 | | 450.00 |
| 10/2/2020 | Credit Card Payment | Credit Card | | 5,767.74 | -5,317.74 |
| 10/2/2020 | Check | #RCC3 | | 2,584.74 | -7,902.48 |
| 10/2/2020 | Payment Reversal | #CC3 | 5,767.74 | | -2,134.74 |
| 10/13/2020 | Monthly Apartment Rent | Scheduler Move In | 1,889.58 | | -245.16 |
| 10/13/2020 | Monthly Reserved Parking | Scheduler Move In | 147.10 | | -98.06 |
| 10/13/2020 | Pet - Dog | Scheduler Move In | 98.06 | | 0.00 |
| 10/15/2020 | Amenity Use Fee | COVID | | 33.20 | -33.20 |
| 10/15/2020 | Monthly Storage | Prorated Rentable Item Charge | 82.26 | | 49.06 |
| 10/19/2020 | Monthly Reserved Parking | Overcharged | | 100.65 | -51.59 |
| 10/19/2020 | Monthly Reserved Parking | Prorated Rentable Item Charge | 100.65 | | 49.06 |
| 10/30/2020 | Check | #13155866947 | | 3,682.06 | -3,633.00 |
| 11/1/2020 | Monthly Apartment Rent | November Charge | 3,083.00 | | -550.00 |
| 11/1/2020 | Monthly Reserved Parking | November Charge | 240.00 | | -310.00 |
| 11/1/2020 | Monthly Storage | November Charge | 150.00 | | -160.00 |
| 11/1/2020 | Pet - Dog | November Charge | 160.00 | | 0.00 |
| 11/2/2020 | Guest Parking | Guest Parking | 15.00 | | 15.00 |
| 11/16/2020 | Amenity Use Fee | COVID | | 54.17 | -39.17 |

3/20/2024    4:13 PM

Page   1

## Portside Towers
## Resident Statement

| | | | | | | |
|---|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 11/25/2020 | RUBS Billing Fee | ADMIN FEE 10/13/20-10/31/20 | 3.97 | | -35.20 |
| 11/25/2020 | RUBS Billing Fee | SETUP FEE 10/13/20-10/31/20 | 10.00 | | -25.20 |
| 11/25/2020 | RUBS Sewer | SEWER 10/13/20-10/31/20 | 21.91 | | -3.29 |
| 11/25/2020 | RUBS Trash | TRASH 10/13/20-10/31/20 | 2.33 | | -0.96 |
| 11/25/2020 | RUBS Water | WATER 10/13/20-10/31/20 | 17.30 | | 16.34 |
| 11/30/2020 | Check | #13234040447 | | 3,649.34 | -3,633.00 |
| 12/1/2020 | Monthly Apartment Rent | December Charge | 3,083.00 | | -550.00 |
| 12/1/2020 | Monthly Reserved Parking | December Charge | 240.00 | | -310.00 |
| 12/1/2020 | Monthly Storage | December Charge | 150.00 | | -160.00 |
| 12/1/2020 | Pet - Dog | December Charge | 160.00 | | 0.00 |
| 12/29/2020 | RUBS Billing Fee | ADMIN FEE 11/01/20-11/30/20 | 3.97 | | 3.97 |
| 12/29/2020 | RUBS Sewer | SEWER 11/01/20-11/30/20 | 36.43 | | 40.40 |
| 12/29/2020 | RUBS Trash | TRASH 11/01/20-11/30/20 | 3.80 | | 44.20 |
| 12/29/2020 | RUBS Water | WATER 11/01/20-11/30/20 | 28.75 | | 72.95 |
| 12/30/2020 | Check | #13304374447 | | 3,705.95 | -3,633.00 |
| 1/1/2021 | Monthly Apartment Rent | January Charge | 3,083.00 | | -550.00 |
| 1/1/2021 | Monthly Reserved Parking | January Charge | 240.00 | | -310.00 |
| 1/1/2021 | Monthly Storage | January Charge | 150.00 | | -160.00 |
| 1/1/2021 | Pet - Dog | January Charge | 160.00 | | 0.00 |
| 1/28/2021 | RUBS Billing Fee | ADMIN FEE 12/01/20-12/31/20 | 3.97 | | 3.97 |
| 1/28/2021 | RUBS Sewer | SEWER 12/01/20-12/31/20 | 37.19 | | 41.16 |
| 1/28/2021 | RUBS Trash | TRASH 12/01/20-12/31/20 | 3.80 | | 44.96 |

3/20/2024      4:13 PM

# Portside Towers
# Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 1/28/2021 | RUBS Water | WATER 12/01/20-12/31/20 | 29.49 | | 74.45 |
| 2/1/2021 | Check | #13407085947 | | 3,707.45 | -3,633.00 |
| 2/1/2021 | Monthly Apartment Rent | February Charge | 3,083.00 | | -550.00 |
| 2/1/2021 | Monthly Reserved Parking | February Charge | 240.00 | | -310.00 |
| 2/1/2021 | Monthly Storage | February Charge | 150.00 | | -160.00 |
| 2/1/2021 | Pet - Dog | February Charge | 160.00 | | 0.00 |
| 2/26/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | 3.97 |
| 2/26/2021 | RUBS Sewer | SEWER | 35.32 | | 39.29 |
| 2/26/2021 | RUBS Trash | TRASH | 4.37 | | 43.66 |
| 2/26/2021 | RUBS Water | WATER | 28.03 | | 71.69 |
| 3/1/2021 | Check | #13479247047 | | 3,704.69 | -3,633.00 |
| 3/1/2021 | Monthly Apartment Rent | March Charge | 3,083.00 | | -550.00 |
| 3/1/2021 | Monthly Reserved Parking | March Charge | 240.00 | | -310.00 |
| 3/1/2021 | Monthly Storage | March Charge | 150.00 | | -160.00 |
| 3/1/2021 | Pet - Dog | March Charge | 160.00 | | 0.00 |
| 3/27/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | 3.97 |
| 3/27/2021 | RUBS Sewer | SEWER | 39.41 | | 43.38 |
| 3/27/2021 | RUBS Trash | TRASH | 4.37 | | 47.75 |
| 3/27/2021 | RUBS Water | WATER | 31.20 | | 78.95 |
| 4/1/2021 | Check | #13556661847 | | 3,471.95 | -3,393.00 |
| 4/1/2021 | Monthly Apartment Rent | April Charge | 3,083.00 | | -310.00 |
| 4/1/2021 | Monthly Storage | April Charge | 150.00 | | -160.00 |
| 4/1/2021 | Pet - Dog | April Charge | 160.00 | | 0.00 |

3/20/2024      4:13 PM

## Portside Towers
## Resident Statement

| | | |
|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | |
| Resident Id: | 19094-002-504-9 | |
| From: | 01/2020 | |
| Through: | 03/2024 | |

| | |
|---|---|
| Move In Date: | 10/13/2020 |
| Current Lease: | 10/25/2023 |
| Notice To Vacate: | |
| Vacate Date: | |

| | |
|---|---|
| Deposits Required: | 3,183.00 |
| Deposits Received: | 3,183.00 |
| Current Balance: | 8,387.63 |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 4/29/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | 3.97 |
| 4/29/2021 | RUBS Sewer | SEWER | 43.85 | | 47.82 |
| 4/29/2021 | RUBS Trash | TRASH | 4.37 | | 52.19 |
| 4/29/2021 | RUBS Water | WATER | 33.93 | | 86.12 |
| 5/1/2021 | Check | #13625232847 | | 3,479.12 | -3,393.00 |
| 5/1/2021 | Monthly Apartment Rent | May Charge | 3,083.00 | | -310.00 |
| 5/1/2021 | Monthly Storage | May Charge | 150.00 | | -160.00 |
| 5/1/2021 | Pet - Dog | May Charge | 160.00 | | 0.00 |
| 5/28/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | 3.97 |
| 5/28/2021 | RUBS Sewer | SEWER | 37.46 | | 41.43 |
| 5/28/2021 | RUBS Trash | TRASH | 4.37 | | 45.80 |
| 5/28/2021 | RUBS Water | WATER | 29.60 | | 75.40 |
| 5/31/2021 | Check | #13684416347 | | 3,468.40 | -3,393.00 |
| 6/1/2021 | Monthly Apartment Rent | June Charge | 3,083.00 | | -310.00 |
| 6/1/2021 | Monthly Storage | June Charge | 150.00 | | -160.00 |
| 6/1/2021 | Pet - Dog | June Charge | 160.00 | | 0.00 |
| 6/26/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | 3.97 |
| 6/26/2021 | RUBS Sewer | SEWER | 34.00 | | 37.97 |
| 6/26/2021 | RUBS Trash | TRASH | 4.37 | | 42.34 |
| 6/26/2021 | RUBS Water | WATER | 26.89 | | 69.23 |
| 7/1/2021 | Check | #13783369147 | | 3,462.23 | -3,393.00 |
| 7/1/2021 | Monthly Apartment Rent | July Charge | 3,083.00 | | -310.00 |
| 7/1/2021 | Monthly Storage | July Charge | 150.00 | | -160.00 |

3/20/2024    4:13 PM

## Portside Towers
## Resident Statement

| | | | | |
|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 7/1/2021 | Pet - Dog | July Charge | 160.00 | | 0.00 |
| 7/31/2021 | Check | #13840861947 | | 3,473.59 | -3,473.59 |
| 8/1/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,469.62 |
| 8/1/2021 | Monthly Apartment Rent | August Charge | 3,083.00 | | -386.62 |
| 8/1/2021 | Monthly Storage | August Charge | 150.00 | | -236.62 |
| 8/1/2021 | Pet - Dog | August Charge | 160.00 | | -76.62 |
| 8/1/2021 | RUBS Sewer | SEWER | 40.41 | | -36.21 |
| 8/1/2021 | RUBS Trash | TRASH | 4.37 | | -31.84 |
| 8/1/2021 | RUBS Water | WATER | 31.84 | | 0.00 |
| 9/1/2021 | Check | #13935856547 | | 3,445.18 | -3,445.18 |
| 9/1/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,441.21 |
| 9/1/2021 | Monthly Apartment Rent | September Charge | 3,083.00 | | -358.21 |
| 9/1/2021 | Monthly Storage | September Charge | 150.00 | | -208.21 |
| 9/1/2021 | Pet - Dog | September Charge | 160.00 | | -48.21 |
| 9/1/2021 | RUBS Sewer | SEWER | 24.21 | | -24.00 |
| 9/1/2021 | RUBS Trash | TRASH | 4.37 | | -19.63 |
| 9/1/2021 | RUBS Water | WATER | 19.63 | | 0.00 |
| 10/1/2021 | Check | #14006638747 | | 4,237.74 | -4,237.74 |
| 10/1/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,233.77 |
| 10/1/2021 | Amenity Use Fee | Amenity Use Fee | 650.00 | | -3,583.77 |
| 10/1/2021 | Monthly Apartment Rent | October Charge | 1,889.58 | | -1,694.19 |
| 10/1/2021 | Monthly Storage | October Charge | 91.94 | | -1,602.25 |
| 10/1/2021 | Pet - Dog | October Charge | 98.06 | | -1,504.19 |

Page   5

3/20/2024      4:13 PM

## Portside Towers
## Resident Statement

| | | | | | | |
|---|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 10/1/2021 | Monthly Apartment Rent | October Charge | 1,309.55 | | -194.64 |
| 10/1/2021 | Monthly Storage | October Charge | 58.06 | | -136.58 |
| 10/1/2021 | Pet - Dog | October Charge | 61.94 | | -74.64 |
| 10/1/2021 | RUBS Sewer | SEWER | 39.26 | | -35.38 |
| 10/1/2021 | RUBS Trash | TRASH | 4.37 | | -31.01 |
| 10/1/2021 | RUBS Water | WATER | 31.01 | | 0.00 |
| | | | | | |
| 11/1/2021 | Check | #14077775147 | | 3,777.36 | -3,777.36 |
| 11/1/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,773.39 |
| 11/1/2021 | Monthly Apartment Rent | November Charge | 3,383.00 | | -390.39 |
| 11/1/2021 | Monthly Storage | November Charge | 150.00 | | -240.39 |
| 11/1/2021 | Pet - Dog | November Charge | 160.00 | | -80.39 |
| 11/1/2021 | RUBS Sewer | SEWER | 42.56 | | -37.83 |
| 11/1/2021 | RUBS Trash | TRASH | 4.37 | | -33.46 |
| 11/1/2021 | RUBS Water | WATER | 33.46 | | 0.00 |
| | | | | | |
| 12/1/2021 | Check | #14142524647 | | 3,789.76 | -3,789.76 |
| 12/1/2021 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,785.79 |
| 12/1/2021 | Monthly Apartment Rent | December Charge | 3,383.00 | | -402.79 |
| 12/1/2021 | Monthly Storage | December Charge | 150.00 | | -252.79 |
| 12/1/2021 | Pet - Dog | December Charge | 160.00 | | -92.79 |
| 12/1/2021 | RUBS Sewer | SEWER | 49.95 | | -42.84 |
| 12/1/2021 | RUBS Trash | TRASH | 4.37 | | -38.47 |
| 12/1/2021 | RUBS Water | WATER | 38.47 | | 0.00 |

3/20/2024   4:13 PM

## Portside Towers
## Resident Statement

| | | | | |
|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | |

* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 1/1/2022 | Check | #14201368647 | | 3,811.06 | -3,811.06 |
| 1/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,807.09 |
| 1/1/2022 | Monthly Apartment Rent | January Charge | 3,383.00 | | -424.09 |
| 1/1/2022 | Monthly Storage | January Charge | 150.00 | | -274.09 |
| 1/1/2022 | Pet - Dog | January Charge | 160.00 | | -114.09 |
| 1/1/2022 | RUBS Sewer | SEWER | 62.38 | | -51.71 |
| 1/1/2022 | RUBS Trash | TRASH | 4.37 | | -47.34 |
| 1/1/2022 | RUBS Water | WATER | 47.34 | | 0.00 |
| | | | | | |
| 2/1/2022 | Check | #14265665947 | | 3,764.49 | -3,764.49 |
| 2/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,760.52 |
| 2/1/2022 | Monthly Apartment Rent | February Charge | 3,383.00 | | -377.52 |
| 2/1/2022 | Monthly Storage | February Charge | 150.00 | | -227.52 |
| 2/1/2022 | Pet - Dog | February Charge | 160.00 | | -67.52 |
| 2/1/2022 | RUBS Sewer | SEWER | 35.22 | | -32.30 |
| 2/1/2022 | RUBS Trash | TRASH | 4.37 | | -27.93 |
| 2/1/2022 | RUBS Water | WATER | 27.93 | | 0.00 |
| | | | | | |
| 3/1/2022 | Check | #14329004647 | | 3,767.01 | -3,767.01 |
| 3/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,763.04 |
| 3/1/2022 | Monthly Apartment Rent | March Charge | 3,383.00 | | -380.04 |
| 3/1/2022 | Monthly Storage | March Charge | 150.00 | | -230.04 |
| 3/1/2022 | Pet - Dog | March Charge | 160.00 | | -70.04 |
| 3/1/2022 | RUBS Sewer | SEWER | 36.63 | | -33.41 |
| 3/1/2022 | RUBS Trash | TRASH | 4.37 | | -29.04 |
| 3/1/2022 | RUBS Water | WATER | 29.04 | | 0.00 |

3/20/2024    4:13 PM

Page   7

# Portside Towers
## Resident Statement

| | |
|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) |
| Resident Id: | 19094-002-504-9 |
| From: | 01/2020 |
| Through: | 03/2024 |

| | |
|---|---|
| Move In Date: | 10/13/2020 |
| Current Lease: | 10/25/2023 |
| Notice To Vacate: | |
| Vacate Date: | |

| | |
|---|---|
| Deposits Required: | 3,183.00 |
| Deposits Received: | 3,183.00 |
| Current Balance: | 8,387.63 |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 4/1/2022 | Check | #14398685547 | | 3,766.49 | -3,766.49 |
| 4/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,762.52 |
| 4/1/2022 | Monthly Apartment Rent | April Charge | 3,383.00 | | -379.52 |
| 4/1/2022 | Monthly Storage | April Charge | 150.00 | | -229.52 |
| 4/1/2022 | Pet - Dog | April Charge | 160.00 | | -69.52 |
| 4/1/2022 | RUBS Sewer | SEWER | 36.30 | | -33.22 |
| 4/1/2022 | RUBS Trash | TRASH | 4.37 | | -28.85 |
| 4/1/2022 | RUBS Water | WATER | 28.85 | | 0.00 |
| 5/1/2022 | Check | #14460711947 | | 3,755.92 | -3,755.92 |
| 5/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,751.95 |
| 5/1/2022 | Monthly Apartment Rent | May Charge | 3,383.00 | | -368.95 |
| 5/1/2022 | Monthly Storage | May Charge | 150.00 | | -218.95 |
| 5/1/2022 | Pet - Dog | May Charge | 160.00 | | -58.95 |
| 5/1/2022 | RUBS Sewer | SEWER | 30.65 | | -28.30 |
| 5/1/2022 | RUBS Trash | TRASH | 4.37 | | -23.93 |
| 5/1/2022 | RUBS Water | WATER | 23.93 | | 0.00 |
| 6/1/2022 | Check | #14530930747 | | 3,772.36 | -3,772.36 |
| 6/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,768.39 |
| 6/1/2022 | Monthly Apartment Rent | June Charge | 3,383.00 | | -385.39 |
| 6/1/2022 | Monthly Storage | June Charge | 150.00 | | -235.39 |
| 6/1/2022 | Pet - Dog | June Charge | 160.00 | | -75.39 |
| 6/1/2022 | RUBS Sewer | SEWER | 39.79 | | -35.60 |

3/20/2024      4:13 PM

## Portside Towers
## Resident Statement

| | | |
|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | |
| Resident Id: | 19094-002-504-9 | |
| From: | 01/2020 | |
| Through: | 03/2024 | |

| | | |
|---|---|---|
| Move In Date: | 10/13/2020 | |
| Current Lease: | 10/25/2023 | |
| Notice To Vacate: | | |
| Vacate Date: | | |

| | |
|---|---|
| Deposits Required: | 3,183.00 |
| Deposits Received: | 3,183.00 |
| Current Balance: | 8,387.63 |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 6/1/2022 | RUBS Trash | TRASH | 4.37 | | -31.23 |
| 6/1/2022 | RUBS Water | WATER | 31.23 | | 0.00 |
| | | | | | |
| 7/1/2022 | Check | #14595362047 | | 3,762.65 | -3,762.65 |
| 7/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,758.68 |
| 7/1/2022 | Monthly Apartment Rent | July Charge | 3,383.00 | | -375.68 |
| 7/1/2022 | Monthly Storage | July Charge | 150.00 | | -225.68 |
| 7/1/2022 | Pet - Dog | July Charge | 160.00 | | -65.68 |
| 7/1/2022 | RUBS Sewer | SEWER | 25.72 | | -39.96 |
| 7/1/2022 | RUBS Trash | TRASH | 19.37 | | -20.59 |
| 7/1/2022 | RUBS Water | WATER | 20.59 | | 0.00 |
| | | | | | |
| 8/1/2022 | Check | #14658949847 | | 3,762.21 | -3,762.21 |
| 8/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,758.24 |
| 8/1/2022 | Monthly Apartment Rent | August Charge | 3,383.00 | | -375.24 |
| 8/1/2022 | Monthly Storage | August Charge | 150.00 | | -225.24 |
| 8/1/2022 | Pet - Dog | August Charge | 160.00 | | -65.24 |
| 8/1/2022 | RUBS Sewer | SEWER | 25.35 | | -39.89 |
| 8/1/2022 | RUBS Trash | TRASH | 19.37 | | -20.52 |
| 8/1/2022 | RUBS Water | WATER | 20.52 | | 0.00 |
| | | | | | |
| 9/1/2022 | Check | #14717379547 | | 3,771.70 | -3,771.70 |
| 9/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -3,767.73 |
| 9/1/2022 | Monthly Apartment Rent | September Charge | 3,383.00 | | -384.73 |
| 9/1/2022 | Monthly Storage | September Charge | 150.00 | | -234.73 |
| 9/1/2022 | Pet - Dog | September Charge | 160.00 | | -74.73 |

3/20/2024    4:13 PM

# Portside Towers
## Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 9/1/2022 | RUBS Sewer | SEWER | 30.63 | | -44.10 |
| 9/1/2022 | RUBS Trash | TRASH | 19.37 | | -24.73 |
| 9/1/2022 | RUBS Water | WATER | 24.73 | | 0.00 |
| 10/1/2022 | Check | #14782134747 | | 4,238.13 | -4,238.13 |
| 10/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,234.16 |
| 10/1/2022 | Monthly Apartment Rent | October Charge | 2,619.10 | | -1,615.06 |
| 10/1/2022 | Monthly Storage | October Charge | 116.13 | | -1,498.93 |
| 10/1/2022 | Pet - Dog | October Charge | 123.87 | | -1,375.06 |
| 10/1/2022 | Monthly Apartment Rent | October Charge | 1,206.94 | | -168.12 |
| 10/1/2022 | Monthly Storage | October Charge | 33.87 | | -134.25 |
| 10/1/2022 | Pet - Dog | October Charge | 36.13 | | -98.12 |
| 10/1/2022 | RUBS Sewer | SEWER | 49.28 | | -48.84 |
| 10/1/2022 | RUBS Trash | TRASH | 19.37 | | -29.47 |
| 10/1/2022 | RUBS Water | WATER | 29.47 | | 0.00 |
| 10/15/2022 | Monthly Apartment Rent | Monthly Apartment Rent | | 363.78 | -363.78 |
| 11/1/2022 | Check | #14844573147 | | 3,757.67 | -4,121.45 |
| 11/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,117.48 |
| 11/1/2022 | Monthly Apartment Rent | November Charge | 3,734.00 | | -383.48 |
| 11/1/2022 | Monthly Storage | November Charge | 150.00 | | -233.48 |
| 11/1/2022 | Pet - Dog | November Charge | 160.00 | | -73.48 |
| 11/1/2022 | RUBS Sewer | SEWER | 30.83 | | -42.65 |
| 11/1/2022 | RUBS Trash | TRASH | 19.37 | | -23.28 |
| 11/1/2022 | RUBS Water | WATER | 23.28 | | 0.00 |

3/20/2024      4:13 PM

# Portside Towers
## Resident Statement

| | |
|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) |
| Resident Id: | 19094-002-504-9 |
| From: | 01/2020 |
| Through: | 03/2024 |

| | |
|---|---|
| Move In Date: | 10/13/2020 |
| Current Lease: | 10/25/2023 |
| Notice To Vacate: | |
| Vacate Date: | |

| | |
|---|---|
| Deposits Required: | 3,183.00 |
| Deposits Received: | 3,183.00 |
| Current Balance: | 8,387.63 |

*  The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 12/1/2022 | Check | #14904109647 | | 4,107.18 | -4,107.18 |
| 12/1/2022 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,103.21 |
| 12/1/2022 | Monthly Apartment Rent | December Charge | 3,734.00 | | -369.21 |
| 12/1/2022 | Monthly Storage | December Charge | 150.00 | | -219.21 |
| 12/1/2022 | Pet - Dog | December Charge | 160.00 | | -59.21 |
| 12/1/2022 | RUBS Sewer | SEWER | 16.13 | | -43.08 |
| 12/1/2022 | RUBS Trash | TRASH | 19.37 | | -23.71 |
| 12/1/2022 | RUBS Water | WATER | 23.71 | | 0.00 |
| 1/1/2023 | Check | #14960924047 | | 4,115.53 | -4,115.53 |
| 1/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,111.56 |
| 1/1/2023 | Monthly Apartment Rent | January Charge | 3,734.00 | | -377.56 |
| 1/1/2023 | Monthly Storage | January Charge | 150.00 | | -227.56 |
| 1/1/2023 | Pet - Dog | January Charge | 160.00 | | -67.56 |
| 1/1/2023 | RUBS Sewer | SEWER | 26.60 | | -40.96 |
| 1/1/2023 | RUBS Trash | TRASH | 19.37 | | -21.59 |
| 1/1/2023 | RUBS Water | WATER | 21.59 | | 0.00 |
| 2/1/2023 | Check | #15024846447 | | 4,105.21 | -4,105.21 |
| 2/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,101.24 |
| 2/1/2023 | Monthly Apartment Rent | February Charge | 3,734.00 | | -367.24 |
| 2/1/2023 | Monthly Storage | February Charge | 150.00 | | -217.24 |
| 2/1/2023 | Pet - Dog | February Charge | 160.00 | | -57.24 |
| 2/1/2023 | RUBS Sewer | SEWER | 20.76 | | -36.48 |
| 2/1/2023 | RUBS Trash | TRASH | 19.37 | | -17.11 |

3/20/2024     4:13 PM

Page   11

# Portside Towers
## Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 2/1/2023 | RUBS Water | WATER | 17.11 | | 0.00 |
| 3/1/2023 | Check | #15083710447 | | 4,123.43 | -4,123.43 |
| 3/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,119.46 |
| 3/1/2023 | Monthly Apartment Rent | March Charge | 3,734.00 | | -385.46 |
| 3/1/2023 | Monthly Storage | March Charge | 150.00 | | -235.46 |
| 3/1/2023 | Pet - Dog | March Charge | 160.00 | | -75.46 |
| 3/1/2023 | RUBS Sewer | SEWER | 31.37 | | -44.09 |
| 3/1/2023 | RUBS Trash | TRASH | 19.37 | | -24.72 |
| 3/1/2023 | RUBS Water | WATER | 24.72 | | 0.00 |
| 4/1/2023 | Check | #15144943847 | | 4,150.63 | -4,150.63 |
| 4/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,146.66 |
| 4/1/2023 | Monthly Apartment Rent | April Charge | 3,734.00 | | -412.66 |
| 4/1/2023 | Monthly Storage | April Charge | 150.00 | | -262.66 |
| 4/1/2023 | Pet - Dog | April Charge | 160.00 | | -102.66 |
| 4/1/2023 | RUBS Sewer | SEWER | 46.92 | | -55.74 |
| 4/1/2023 | RUBS Trash | TRASH | 19.37 | | -36.37 |
| 4/1/2023 | RUBS Water | WATER | 36.37 | | 0.00 |
| 5/1/2023 | Check | #15201319047 | | 4,132.85 | -4,132.85 |
| 5/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,128.88 |
| 5/1/2023 | Monthly Apartment Rent | May Charge | 3,734.00 | | -394.88 |
| 5/1/2023 | Monthly Storage | May Charge | 150.00 | | -244.88 |
| 5/1/2023 | Pet - Dog | May Charge | 160.00 | | -84.88 |

3/20/2024      4:13 PM

## Portside Towers
## Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 5/1/2023 | RUBS Sewer | SEWER | 36.76 | | -48.12 |
| 5/1/2023 | RUBS Trash | TRASH | 19.37 | | -28.75 |
| 5/1/2023 | RUBS Water | WATER | 28.75 | | 0.00 |
| | | | | | |
| 6/1/2023 | Check | #15269793147 | | 4,143.44 | -4,143.44 |
| 6/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,139.47 |
| 6/1/2023 | Monthly Apartment Rent | June Charge | 3,734.00 | | -405.47 |
| 6/1/2023 | Monthly Storage | June Charge | 150.00 | | -255.47 |
| 6/1/2023 | Pet - Dog | June Charge | 160.00 | | -95.47 |
| 6/1/2023 | RUBS Sewer | SEWER | 42.69 | | -52.78 |
| 6/1/2023 | RUBS Trash | TRASH | 19.37 | | -33.41 |
| 6/1/2023 | RUBS Water | WATER | 33.41 | | 0.00 |
| | | | | | |
| 7/1/2023 | Check | #15326570147 | | 4,140.24 | -4,140.24 |
| 7/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,136.27 |
| 7/1/2023 | Monthly Apartment Rent | July Charge | 3,734.00 | | -402.27 |
| 7/1/2023 | Monthly Storage | July Charge | 150.00 | | -252.27 |
| 7/1/2023 | Pet - Dog | July Charge | 160.00 | | -92.27 |
| 7/1/2023 | RUBS Sewer | SEWER | 40.93 | | -51.34 |
| 7/1/2023 | RUBS Trash | TRASH | 19.37 | | -31.97 |
| 7/1/2023 | RUBS Water | WATER | 31.97 | | 0.00 |
| | | | | | |
| 8/1/2023 | Check | #15395479147 | | 4,146.96 | -4,146.96 |
| 8/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,142.99 |
| 8/1/2023 | Monthly Apartment Rent | August Charge | 3,734.00 | | -408.99 |
| 8/1/2023 | Monthly Storage | August Charge | 150.00 | | -258.99 |

Page   13

3/20/2024    4:13 PM

## Portside Towers
## Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 8/1/2023 | Pet - Dog | August Charge | 160.00 | | -98.99 |
| 8/1/2023 | RUBS Sewer | SEWER | 44.75 | | -54.24 |
| 8/1/2023 | RUBS Trash | TRASH | 19.37 | | -34.87 |
| 8/1/2023 | RUBS Water | WATER | 34.87 | | 0.00 |
| | | | | | |
| 9/1/2023 | Check | #15459943847 | | 4,145.82 | -4,145.82 |
| 9/1/2023 | RUBS Billing Fee | ADMIN FEE | 3.97 | | -4,141.85 |
| 9/1/2023 | Monthly Apartment Rent | September Charge | 3,734.00 | | -407.85 |
| 9/1/2023 | Monthly Storage | September Charge | 150.00 | | -257.85 |
| 9/1/2023 | Pet - Dog | September Charge | 160.00 | | -97.85 |
| 9/1/2023 | RUBS Sewer | SEWER | 44.17 | | -53.68 |
| 9/1/2023 | RUBS Trash | TRASH | 19.37 | | -34.31 |
| 9/1/2023 | RUBS Water | WATER | 34.31 | | 0.00 |
| | | | | | |
| 10/1/2023 | RUBS Billing Fee | ADMIN FEE | 4.33 | | 4.33 |
| 10/1/2023 | Monthly Apartment Rent | October Charge | 2,890.84 | | 2,895.17 |
| 10/1/2023 | Monthly Storage | October Charge | 116.13 | | 3,011.30 |
| 10/1/2023 | Pet - Dog | October Charge | 123.87 | | 3,135.17 |
| 10/1/2023 | Monthly Apartment Rent | October Charge | 1,204.68 | | 4,339.85 |
| 10/1/2023 | Monthly Storage | October Charge | 33.87 | | 4,373.72 |
| 10/1/2023 | Pet - Dog | October Charge | 36.13 | | 4,409.85 |
| 10/1/2023 | RUBS Sewer | SEWER | 41.16 | | 4,451.01 |
| 10/1/2023 | RUBS Trash | TRASH | 19.37 | | 4,470.38 |
| 10/1/2023 | RUBS Water | WATER | 32.13 | | 4,502.51 |
| 10/5/2023 | Check | #15543160247 | | 4,502.51 | 0.00 |

Page   14

3/20/2024      4:13 PM

# Portside Towers
## Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 10/30/2023 | Monthly Apartment Rent | SECURITY APPLIED | | 10.37 | -10.37 |
| 11/1/2023 | RUBS Billing Fee | ADMIN FEE | 4.33 | | -6.04 |
| 11/1/2023 | Monthly Apartment Rent | November Charge | 5,335.00 | | 5,328.96 |
| 11/1/2023 | Monthly Storage | November Charge | 150.00 | | 5,478.96 |
| 11/1/2023 | Pet - Dog | November Charge | 160.00 | | 5,638.96 |
| 11/1/2023 | RUBS Sewer | SEWER | 48.49 | | 5,687.45 |
| 11/1/2023 | RUBS Trash | TRASH | 19.37 | | 5,706.82 |
| 11/1/2023 | RUBS Water | WATER | 37.87 | | 5,744.69 |
| 11/2/2023 | Check | #15595749347 | | 4,502.51 | 1,242.18 |
| 11/12/2023 | Late Fee | Auto Late Fee | 113.21 | | 1,355.39 |
| 12/1/2023 | RUBS Billing Fee | ADMIN FEE | 4.33 | | 1,359.72 |
| 12/1/2023 | Monthly Apartment Rent | December Charge | 5,335.00 | | 6,694.72 |
| 12/1/2023 | Monthly Storage | December Charge | 150.00 | | 6,844.72 |
| 12/1/2023 | Pet - Dog | December Charge | 160.00 | | 7,004.72 |
| 12/1/2023 | RUBS Sewer | SEWER | 29.12 | | 7,033.84 |
| 12/1/2023 | RUBS Trash | TRASH | 19.37 | | 7,053.21 |
| 12/1/2023 | RUBS Water | WATER | 23.06 | | 7,076.27 |
| 12/8/2023 | Check | #995108 | | 4,502.51 | 2,573.76 |
| 12/12/2023 | Late Fee | Auto Late Fee | 227.46 | | 2,801.22 |
| 1/1/2024 | RUBS Billing Fee | ADMIN FEE | 4.33 | | 2,805.55 |
| 1/1/2024 | Monthly Apartment Rent | January Charge | 5,335.00 | | 8,140.55 |
| 1/1/2024 | Monthly Storage | January Charge | 150.00 | | 8,290.55 |
| 1/1/2024 | Pet - Dog | January Charge | 160.00 | | 8,450.55 |

3/20/2024    4:13 PM

# Portside Towers
# Resident Statement

| | | | | |
|---|---|---|---|---|
| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: 3,183.00 |
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 1/1/2024 | RUBS Sewer | SEWER | 56.99 | | 8,507.54 |
| 1/1/2024 | RUBS Trash | TRASH | 19.37 | | 8,526.91 |
| 1/1/2024 | RUBS Water | WATER | 44.00 | | 8,570.91 |
| 1/12/2024 | Late Fee | Auto Late Fee | 791.96 | | 9,362.87 |
| 1/30/2024 | Check | #0005006996 | | 4,502.51 | 4,860.36 |
| 2/1/2024 | RUBS Billing Fee | ADMIN FEE | 4.33 | | 4,864.69 |
| 2/1/2024 | Monthly Apartment Rent | February Charge | 5,335.00 | | 10,199.69 |
| 2/1/2024 | Monthly Storage | February Charge | 150.00 | | 10,349.69 |
| 2/1/2024 | Pet - Dog | February Charge | 160.00 | | 10,509.69 |
| 2/1/2024 | RUBS Sewer | SEWER | 56.85 | | 10,566.54 |
| 2/1/2024 | RUBS Trash | TRASH | 19.37 | | 10,585.91 |
| 2/1/2024 | RUBS Water | WATER | 43.88 | | 10,629.79 |
| 2/7/2024 | Check | #29173946567 | | 1,000.00 | 9,629.79 |
| 2/7/2024 | Check | #29173946578 | | 1,000.00 | 8,629.79 |
| 2/7/2024 | Check | #29173946580 | | 1,000.00 | 7,629.79 |
| 2/7/2024 | Check | #29173946591 | | 1,000.00 | 6,629.79 |
| 2/7/2024 | Check | #29173946602 | | 502.51 | 6,127.28 |
| 2/12/2024 | Late Fee | Auto Late Fee | 455.96 | | 6,583.24 |
| 3/1/2024 | RUBS Billing Fee | ADMIN FEE | 4.33 | | 6,587.57 |
| 3/1/2024 | Monthly Apartment Rent | March Charge | 5,335.00 | | 11,922.57 |
| 3/1/2024 | Monthly Storage | March Charge | 150.00 | | 12,072.57 |
| 3/1/2024 | Pet - Dog | March Charge | 160.00 | | 12,232.57 |
| 3/1/2024 | RUBS Sewer | SEWER | 38.09 | | 12,270.66 |

3/20/2024      4:13 PM

# Portside Towers
# Resident Statement

| Resident: | Peyton, DaShawn  (R HO13177750) | Move In Date: | 10/13/2020 | Deposits Required: | 3,183.00 |
|---|---|---|---|---|---|
| Resident Id: | 19094-002-504-9 | Current Lease: | 10/25/2023 | Deposits Received: | 3,183.00 |
| From: | 01/2020 | Notice To Vacate: | | Current Balance: | 8,387.63 |
| Through: | 03/2024 | Vacate Date: | | | |

\* The Balance shown may include next month's rent.  If you moved out prior to your lease end date, the rent for the remainder of your lease term may also be reflected in the amount shown. In the case of such early termination rent, each monthly portion of the rent amount shown will be due on the first day of each month until a new resident moves into your apartment.

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 3/1/2024 | RUBS Trash | TRASH | 19.37 | | 12,290.03 |
| 3/1/2024 | RUBS Water | WATER | 29.90 | | 12,319.93 |
| 3/2/2024 | Check | #0000995110 | | 4,502.51 | 7,817.42 |
| 3/12/2024 | Late Fee | Auto Late Fee | 570.21 | | 8,387.63 |

## Recurring Charges

| Effective Dates | Description | Amount | Current? |
|---|---|---|---|
| 10/13/2020 - 10/19/2021 | Pet - Dog | $160.00 | N |
| 10/13/2020 - 10/19/2021 | Monthly Apartment Rent | $3,083.00 | N |
| 10/15/2020 - 10/19/2021 | Monthly Storage | $150.00 | N |
| 10/19/2020 - 3/31/2021 | Monthly Reserved Parking | $240.00 | N |
| 10/20/2021 - 10/24/2022 | Monthly Storage | $150.00 | N |
| 10/20/2021 - 10/24/2022 | Monthly Apartment Rent | $3,383.00 | N |
| 10/20/2021 - 10/24/2022 | Pet - Dog | $160.00 | N |
| 10/25/2022 - 10/24/2023 | Pet - Dog | $160.00 | N |
| 10/25/2022 - 10/24/2023 | Monthly Apartment Rent | $3,734.00 | N |
| 10/25/2022 - 10/24/2023 | Monthly Storage | $150.00 | N |
| 10/25/2023 - 10/24/2023 | Monthly Storage | $150.00 | Y |
| 10/25/2023 - 10/24/2023 | Monthly Apartment Rent | $5,335.00 | Y |
| 10/25/2023 - 10/24/2023 | Pet - Dog | $160.00 | Y |

3/20/2024      4:13 PM

# EQUITY RESIDENTIAL MANAGEMENT, L.L.C., AS AGENT FOR

# THE OWNER VS. DASHAWN PEYTON

## LANDLORD VERIFICATION

1. I certify that I am the _____ landlord, _X_ landlord's agent, ___ general partner of the partnership, or ___ authorized officer of a corporation or limited liability company that owns the premises in which tenant(s) reside(s).

2. I have reviewed the amounts claimed due in the verified complaint and the information contained in it is true and based on my personal knowledge. The amount of rent owed for purposes of the dispossess action includes only the amount that the tenant(s) is/are required to pay by federal, state, or local law and the lease executed by the parties.

3. The matter in controversy is not the subject of any other court action or arbitration proceeding now pending or contemplated and no other parties should be joined in this action except (list exceptions or indicate none): none.

4. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

5. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

At the trial plaintiff will require:

An interpreter          No          Indicate language _____

An accommodation for a disability    No    Required accommodation _____

Date: _3/26/2024_

(Signature of Landlord, Partner or Officer)

Sophia Sugarman, Community Manager
(Printed Name of Landlord, Partner or Officer)

Note: Adopted as Appendix XI-X July 9, 2008 to be effective September 1, 2008. Revised effective September 1, 2009; amended August 1, 2016, to be effective September 1, 2016; amended July 14, 2020 to be effective immediately.

ATTORNEY ID# 038062003
EHRLICH, PETRIELLO, GUDIN, PLAZA, & REED
A Professional Corporation
60 Park Place, 19th Floor,
Newark, New Jersey 07102
(973) 643-0040 (973) 624-8850 – Fax

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| EQUITY RESIDENTIAL MANAGEMENT, L.L.C., AS AGENT FOR THE OWNER<br>     Plaintiff,<br><br>vs.<br><br>DASHAWN PEYTON<br>155 Washington Street, Unit 504<br>Jersey City, NJ  07302<br><br>     Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SPECIAL CIVIL PART<br>HUDSON COUNTY<br><br>LANDLORD/TENANT DIVISON<br><br>Docket No. LT-<br><br>**Certification of Lease and Registration Statement**<br><br>(N)  Commercial      (Y)  Residential |

**DEREK D. REED,** (Esq.) of full age, being duly sworn according to law, certify and say (select one option for each of the following):

1.  I am: ____ the plaintiff/landlord **X** an attorney at law duly licensed to practice in the state of New Jersey in the above-captioned landlord tenant action.

2.  The lease that is the subject of this action is: attached in full or in pertinent part and the full lease document is in excess of 10 pages.

3.  I have attached a copy of any registration statement for the residential rental property required by the Landlord Registration Act N.J.S.A. 46:8-28.5(b).

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

Date: 3/26/2024

*Derek D. Reed, ESQ.*
**DEREK D. REED, ESQ**

Case 2:23-cv-22291-MCA-JRA   Document 34-7   Filed 04/19/24   Page 40 of 67 PageID: 466

NOTICE: This is a public document which will be available to the public upon request. Do not enter personal identifiers on it, such as Social Security number, driver's license number, vehicle plate number, insurance policy number, active financial account number, or active credit card number.

**YOU MUST COMPLETE THIS PART: Filing Attorney Information or Landlord:**

Name  Derek D. Reed, Esq.

NJ Attorney ID Number  038062003

Address  60 Park Place, 19th Floor
Newark, NJ 07102

Telephone Number 973-643-0040

|  |
|---|
| *Superior Court of New Jersey Law Division, Special Civil Part* |
| _Hudson_ County |
| *Landlord-Tenant Division* |
| *Docket Number: LT* _____ |

*Equity Residential Management, L.L.C., as agent for the Owner*
Plaintiff,

v

*DaShawn Peyton*
Defendant,

Civil Action

Certification by Landlord

*The landlord should complete Part A or Part B or both (if both apply). Cross out any paragraphs in those parts that do not apply in this case. Part C applies to all cases and must be completed.*

**A.** When the Eviction is Based on Unpaid Rent

1.  The tenant has failed to pay rent now due and owing in the amount of $8,387.63. That amount consists of basic rent of $5,335.00, late charges of $__, legal fees *relating to this action for eviction* of $_____, filing fees and costs of $_____, and other (specify) _____.
2.  All of the items listed above are included in the lease agreement as rent.
3.  All of those items are permitted by applicable federal, state and local laws (including rent control or rent leveling, if applicable) to be charged as rent for purposes of this action.

**B.** When the Eviction is Based on Other Grounds
*Eviction is sought because:*

**C.** In All Cases

1.  I have attached a copy of all notices that have been served on the tenant.
2.  These notices were served on the tenant (select all that apply)
    ☐ *by ordinary mail,*        ☐ *by certified mail,*        ☐ *personally, on* _____.
3.  All of the facts stated in the notices are true.
4.  If I proceeded without an attorney, I certify that I own the property in my own name or in the name of a general partnership of which I am a partner.
5.  I have complied with the registration requirements of *N.J.S.A.* 46:8-27 *et seq.*
6.  The tenant did not transfer ownership to me and I have not given the tenant an option to buy the property.
7.  The tenant is not in the military service of the United States nor any of its allies, nor is the premises used for dwelling purposes of the spouse, a child or other dependent of a person in the military service of the United States.

*I, the landlord, certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.*

Date:3/26/2024

*Jacqueline Newton*
Landlord Signature
*Jacqueline Newton*
Print Name

Promulgated by 07/30/2021 Notice to the Bar, CN 12770

8 of 9

Revised 9/1/2008, CN 10512-English (Appendix XI-T - Certification by Landlord)

**ATTORNEY: DEREK D. REED, ESQ**
**ATTORNEY ID# 038062003**
**EHRLICH, PETRIELLO, GUDIN, PLAZA, & REED**
**A Professional Corporation**
60 Park Place, 19th Floor,
Newark, New Jersey 07102
(973) 643-0040 (973) 624-8850 – Fax

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| EQUITY RESIDENTIAL MANAGEMENT, L.L.C., AS AGENT FOR THE OWNER<br>    Plaintiff,<br><br>vs.<br><br>DASHAWN PEYTON<br>155 Washington Street, Unit 504<br>Jersey City, NJ 07302<br><br>    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SPECIAL CIVIL PART<br>HUDSON COUNTY<br><br>LANDLORD/TENANT DIVISON<br><br>CERTIFICATION BY LANDLORD'S ATTORNEY<br><br>Docket No. LT- |

1. I am the attorney for the landlord in this matter and make this certification pursuant to rule 6:6-3(b) or Rule *6:6-4*.

2. The landlord has asserted that the tenant has failed to pay rent now due and owing in this matter.

3. I have reviewed the applicable federal, state and local law and the written lease between the parties if any, and in my opinion the charges and fees sought, other than the base rent, are permitted to be included in the rent for purposes of this action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 3/26/2024

*Derek D. Reed, ESQ*
**DEREK D. REED, ESQ**

Revised effective 7/14/2020 by 7/14/2020 Order. CN 10822 (Appendix XI-B)



# State of New Jersey
## DEPARTMENT OF COMMUNITY AFFAIRS
### CERTIFICATE OF REGISTRATION



## REGISTRATION NUMBER:   0906024276

| | | | |
|---|---|---|---|
| **BUILDINGS:** | 1 TO 2 | **BUILDING USE:** | Multiple Dwelling |
| **TOTAL NUMBER OF UNITS ON PROPERTY:** | 516 | **OWNERSHIP TYPE:** | General Partnership |
| **DATE OF TRANSFER OF OWNERSHIP:** | 6/11/1998 | **CERTIFICATE PRINTED ON:** | 7/9/2018 |
| **CERTIFICATE EXPIRATION DATE:** | 7/9/2024 | **ORIGINAL CERTIFICATE ISSUED ON:** | 7/9/2018 |
| **PROPERTY MAIN ADDRESS:** | 155 WASHINGTON ST JERSEY CITY, HUDSON COUNTY | | |

| PRIMARY PROPERTY OWNER | AUTHORIZED AGENT |
|---|---|
| TWRS AT PORTSIDE URBAN RENEWALCO LLC C/O Tony Santana 155 WASHINGTON ST Jersey City, NJ 07302 | TWRS AT PORTSIDE URBAN RENEWALCO LLC C/O Tony Santana 155 WASHINGTON ST Jersey City, NJ 07302 |

| EMERGENCY REPAIR EXPENDITURE AUTHORIZER / AUTORIZADOR DE REPARACIONES DE EMERGENCIA | MAINTENANCE SERVICE PROVIDER |
|---|---|
| JACQUELINE ANDREWS 155 WASHINGTON ST Jersey City, NJ 07302 2019380770 | Tony SANTANA 155 WASHINGTON ST Jersey City, NJ 07302 |

| MANAGER / GERENTE | OFFICER OR GENERAL PARTNER |
|---|---|
| JACQUELINE ANDREWS 155 WASHINGTON ST Jersey City, NJ 07302 | DAVID NEITHERCUT 2 N RIVERSIDE PLZ STE 400 CHICAGO, IL 60606 |

| OFFICER OR GENERAL PARTNER | REGISTERED AGENT |
|---|---|
| FREDERICK TUOMI 2 N RIVERSIDE PLZ STE 400 CHICAGO, IL 60606 | TWRS AT PORTSIDE URBAN RENEWALCO LLC C/O Tony Santana 155 WASHINGTON ST Jersey City, NJ 07302 |

THE LAW REQUIRES THAT THIS CERTIFICATE OF REGISTRATION BE POSTED IN A CONSPICUOUS LOCATION AT THE REGISTERED PREMISES. THIS CERTIFICATE IS NOT TRANSFERRABLE. IN THE CASE OF ANY TRANSFER OF TITLE, IT SHALL BE THE DUTY OF THE NEW OWNER(S) TO FILE WITH THE COMMISSIONER WITHIN 20 DAYS OF SUCH TRANSFER AN APPLICATION FOR A NEW CERTIFICATE OF REGISTRATION. IN THE CASE OF ANY CHANGE IN THIS INFOMATION IT SHALL BE THE DUTY OF THE OWNER TO NOTIFY THE DEPARTMENT OF COMMUNITY AFFAIRS WITHIN 30 DAYS OF SUCH CHANGE. THE LAW ALSO REQUIRES OWNERS TO RECERTIFY THIS INFORMATION ANNUALLY BEFORE THE CERTIFICATE EXPIRATION DATE.

REGISTRATIONS AND RECERTIFICATIONS MAY BE SUBMITTED ONLINE AT THE DIVISION OF CODES AND STANDARDS WEBSITE (www.nj.gov/dca/divisions/codes/) UNDER THE DCA SERVICE PORTAL LINK.   QUESTIONS MAY BE DIRECTED TO THE BUREAU OF HOUSING INSPECTION BY PHONE TO 609-633-6216 OR BY EMAIL TO BHIREGISTRATIONS@DCA.NJ.GOV.

FAILURE TO COMPLY WITH THESE REQUIREMENTS CONSTITUTES A VIOLATION OF P.L. 1967, C. 76 OF THE LAWS OF NEW JERSEY AND SUBJECTS THE PARTY SO VIOLATING TO THE PENALTIES THEREIN.



**New Jersey**

For social service assistance dial 2-1-1 or visit nj211.org
Para asistencia social marcar 2-1-1 o visitor nj211.org.

Lt. Governor Sheila Y. Oliver
Commissioner, Community Affairs By:

Bureau Chief
Carmine Giangeruso
Bureau of Housing Inspection

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

# RESIDENTIAL LEASE – TERM SHEET

**▓▓ Equity Residential**

**Lessor:** Equity Residential Management, L.L.C.,
as agent for the Owner

**Community:** Portside Towers

**Premises:** 002-504

**Address:** 155 Washington Street

**Premises Address:** 155 Washington Street - 504
Jersey City, NJ, 07302

Jersey City, NJ, 07302
(201) 938-0770

**Residents:** DaShawn Peyton

**Guarantor:**

**Occupants:**

**LEASE TERM**
Commencement Date: 10/25/2022          Expiration Date: 10/24/2023          Renters' Liability Insurance Required: Yes

**Lease Term Expiration: You must provide us with a written notice of your intent to vacate at least 60 days prior to your move-out date. If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short. The insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date.**

**Total Deposits Required:  $ 3183.00**

**Total Monthly Rent        : $ 4044.00**
(includes all monthly recurring charges listed below)

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| Monthly Apartment Rent | 3734.00 | | | | |
| Monthly Storage Fee | 150.00 | | | | |
| Pet - Dog | 160.00 | | | | |

**Assigned Item Description**
Storage Unit 2

**Concessions:** Monthly Recurring Concession: $ 0.00    /per month. Total Amount of One-Time/ Non-Recurring Concession: $ 0.00    . Total Amount of Other Recurring Concessions:  $ 0.00    . The Total Monthly Rent shown above will be adjusted by these lease concession amounts. If this Lease is terminated early, you may be required to pay us a portion of your concession as set forth in the Lease Concession paragraph of the Terms and Conditions.

**Total Other Fees and Charges:    $ 750.00**
(includes all charges listed below)

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| Amenity Use Fee | 750.00 | | | | |

| | Type | Breed | Weight | License/Tag |
|---|---|---|---|---|
| Approved Pets | Dog | Morkie | 0 | |
| | Dog | Morkie | 0 | |

For additional information regarding our pet policy, please refer to the Resident Handbook and Community Policies.

Resident Account Number: 19094-002-504-9

© Equity Residential 2020. All Rights Reserved.                     Page 1 of 2                     National Lease Form (11/20)

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

**LESSOR PAYS UNCHECKED UTILITIES / RESIDENT PAYS CHECKED UTILITIES**

☑ Electricity:        Direct billed by the provider.  You pay the provider

☐ Gas/Heating Oil:

☑ Water:             Allocated based on square footage.  You will receive a bill from our billing vendor.

☑ Sewer:             Allocated based on square footage.  You will receive a bill from our billing vendor.

☐ Central Boiler:

☑ Cable:             Direct billed by the provider.  You pay the provider

☑ Garbage Removal:   Allocated equally among all occupied apartments. You will receive a bill from our billing vendor.

☑ Internet:          Direct billed by the provider.  You pay the provider

☐ Pest:

**Late Fees:** Your rent is due on the 1st of each month. If we do not receive your rent and other recurring charges, in person before the close of business, or electronically by 11:59 pm local time, on day 11 , you will be charged a late fee as follows:

$35 on the 12th

**Returned Item Fees:** If your payment fails to clear the bank for any reason, you will be charged a returned item fee of $ 35.00  per item.

| Additional Lease Addenda |  |
|---|---|
| Residential Lease - Terms and Conditions | SmartHome Addendum |
| Utilities Addendum | |
| Fire Safety Plan | |
| Temporary Partition Addendum | |
| Rent Control Notification | |
| Construction and Rehab Addendum | |
| Smoke-Free Lease Addendum | |
| Parking Permit Zones Addendum | |
| Truth in Renting Statement | |
| Pet Animal Agreement | |

By signing this Term Sheet, you acknowledge that each of the Additional Lease Addenda are attached to this term Sheet and are therefore made a part of the Lease. You further acknowledge that you have read and that you agree to all of the provisions set forth in this Term Sheet and the Additional Lease Addenda.

You also acknowledge that you have received, or will receive, (separate from this Lease) a copy of the Resident Handbook and Community Policies and a copy of the Condition of Premises Inspection Form. You acknowledge and agree that the provisions contained in these two documents are incorporated into this Lease and that you will abide by the policies and procedures set forth in these documents.

**You specifically acknowledge that this Lease contains provisions extending the Lease Term if you stay beyond the Expiration Date set forth on the first page of this Term Sheet or if you fail to provide timely written notice of your intent to vacate the Premises at least 60 days prior to the Expiration Date.**

## READ THIS TERM SHEET BEFORE SIGNING

**Residents (ALL Residents must sign and date):**

DocuSigned by:

_DaShawn Peyton_        10/16/2022 Date        _____ Date        _____ Date

_____ Date        _____ Date        _____ Date

_____ Date        _____ Date        _____ Date

**Lessor:**    **Equity Residential Management, L.L.C.,**
          **as agent for the Owner**

By: _____        10/13/2022
It's: Authorized Representative        Date

**Resident Account Number:** 19094-002-504-9

© Equity Residential 2020. All Rights Reserved.        Page 2 of 2        National Lease Form (11/20)

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

## RESIDENTIAL LEASE – TERMS AND CONDITIONS
### (New Jersey)

These Terms and Conditions are attached to and incorporated by reference into the Residential Lease - Term Sheet signed by Resident ("you" or "your") and Lessor ("us" or "we") with respect to your rental of the Premises identified on the Term Sheet. The Term Sheet, these Terms and Conditions, the Resident Handbook and Community Policies, the Move-In/Move-Out Inspection Form, and all Lease addenda or other agreements that may be referenced on the Term Sheet or attached hereto, make up the Lease. The party executing this Lease as the Lessor is Equity Residential Management, L.L.C., which is acting as the managing agent for the owner of the Community. Each person living in the Premises that is 18 years of age or older must sign the Lease as a resident. All others living in the Premises must be designated as occupants. Each person signing the Lease is jointly and severally liable for all of the various resident obligations under the Lease. That means that every individual resident, including all co-residents, is responsible for the entire rental amount and other obligations, even if, as roommates, you have made arrangements among yourselves to allocate the rent or other payments among yourselves.

**1.      Lease Term/Month-to-Month Tenancy:** The term of this Lease is set forth in the Lease Term section of the Term Sheet. At the end of your Lease term, if you do not move out or, if you do not sign a renewal lease, your Lease will automatically renew on a month-to-month basis. If you stay in the Premises on a month-to-month basis following the term of the Lease, or you stay beyond your Lease end date in order to fulfill your notice requirement, you will, effective the day after your Lease term ends, pay the month-to-month rent amount included in the renewal offer we deliver to you. Once you become a month-to-month tenant, we reserve the right to increase the month-to-month rental rate upon 30 days' notice to you.

**2.      Notice to Vacate/Early Termination:**

a.      If you plan to move out of the Premises at any time during your Lease term, including the expiration date of your Lease, you must provide us with a written notice of your intent to vacate at least 60 days prior to your move-out date. Once you are in a month-to-month status, you must give 30 days' written notice prior to your move-out date. If you submit your notice to vacate and fail to move out on or before the notice date you provide to us, then, for each day you hold over, you will be charged holdover rent equal to two times your then-current per diem rental rate. If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short. The insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date. If you move out without providing any notice at all, then, for the purposes of this paragraph, your move-out date will be considered to be your notice date. You acknowledge and understand that the purpose of this notice requirement is to provide us with adequate time to re-rent the Premises without interruption.

b.      With certain exceptions that may be allowed by applicable law, you have no right to terminate your Lease prior to the end of your Lease term. If you terminate your tenancy early, you will be in default under the Lease, and you will be responsible for paying early termination rent at the per diem rental rate that is in effect on your move-out date until the earlier of (i) the end of your Lease term; or (ii) the date a new resident moves into the Premises. If your apartment is re-rented prior to the expiration of your lease term and the new resident's monthly apartment rent is less than your monthly apartment rent, then, for the remainder of your lease term, you will also be responsible for the difference between your monthly apartment rent and the new resident's monthly apartment rent.

c.      If you move out within the last 30 days of your Lease term, you will remain responsible for the balance of your rent and other charges through the expiration date of your lease.

d.      In all cases where you are charged early termination rent or insufficient notice rent, if a new resident moves into the Premises during the charge period, we will issue a credit to you for the number of days that the new resident was in possession of the Premises.

**3.      Move-Out Obligations:** When you move out, you must remove all of your personal belongings and leave the Premises in substantially the same clean, undamaged, and ready-to-rent condition as existed when you took occupancy of the Premises, less ordinary wear and tear. You will be charged for replacement of any damaged or missing items, as well as all costs to clean or repair any portion of the Premises, carpeting, flooring, wall coverings, paint, counters, trim, window treatments, doors, windows, or appliances which are damaged, dirty, or unsanitary, and the removal of all trash and personal property from the Premises. Cleaning and repair of damage due to smoking of any kind or any damages or stains caused by pets, are not considered ordinary wear and tear. In order to avoid being charged for cleaning carpets in the Premises after you move out, you must have the carpets professionally cleaned, as documented by a receipt you

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

provide to us. Having your carpets professionally cleaned, however, will not avoid liability for damage or permanent stains. You agree to return all keys, access cards and remotes to us to confirm you have vacated the Premises. If you fail to return these items, you agree that your move-out date will be the date we physically take possession of the premises.

4.      **Rent:** You agree to pay the amount shown in the Total Monthly Charges section of the Term Sheet , in advance and without demand, on or before the first day of each calendar month. All rent and other charges are subject to an enforcement action if not received in a timely manner. All rent must be paid in U.S. dollars and we reserve the right to require that payments be made in one lump sum, even if there are multiple residents listed on the Lease. We strongly encourage residents to use on-line or electronic payment methods. Unless prohibited by law, we may elect to centralize the collection sites for non-electronic payments and/or require that all payments be made electronically. If we do so, we will notify you in writing of the requirement, and, in the case of centralized collections, the address to which you should send your payments, as well as the effective date for such change. If we designate an off-site receivables location, you agree that all rent and other payments directed to that location must be received at the designated location on or before the due date. We do not accept cash, third party personal checks, or checks without a preprinted name and address of the account holder. If you pay by personal check, you are authorizing us to scan the check and convert it into a one-time electronic debit from the bank account against which the check was written. Unless prohibited by law, we reserve the right to refuse payments by personal check, automatic debit or other form of electronic payment and require payment by cashier's check or money order if, for example, you have submitted previous checks or other payments to us that have failed to clear the bank. We are not required to re-deposit a dishonored check.

5.      **Late Charges and Returned Item Fees:** You acknowledge that if we do not receive your rent and other charges on time, we will incur costs, the exact dollar amount of which is difficult or impracticable to determine. Such costs may include, among other things, lost use of funds, bank or other charges, costs incurred in connection with accounting for and attempting to collect late payments; collection expenses; and other administrative and accounting costs. As a result, if we do not receive your rent when it is due, we will assess late fees as described in the Late Fees section of the Term Sheet. Similarly, if any payment to us (electronic or otherwise) is returned or otherwise rejected by your financial institution for any reason, we will assess a returned item fee as described in the Returned Item Fees section of the Term Sheet, as well as all applicable late fees. The fact that a late charge is not assessed until sometime after the first day of the month does not constitute a grace period for the payment of rent. We have the right to file suit to gain possession of the Premises on the second day of the month if rent is not paid on time  The fees described in this paragraph are in addition to any other remedies we may have in the event of your default under the terms of this Lease. You agree that the late fee is a fair and reasonable estimate of actual expenses we may incur as a result of your failure to pay rent when due.

6.      **Application and Acceptance of Payments:** Unless we are prohibited from doing so by law, we will apply the payments you make to us in the order of priority we determine, regardless of any notations that you make on checks, money orders or other forms of payment. We reserve the right to accept any amount less than the balance due at any given time and, if we do accept a lesser amount, such acceptance will not represent a waiver of any right we have to pursue you for the outstanding balance or possession of the Premises. If you are chronically late with your payments of rent and other charges , we reserve the right to terminate this Lease.

7.      **Security Deposit:** Upon signing this Lease, you have agreed to give us deposits as set forth in the Total Deposits section of the Term Sheet. These Total Deposits are not prepaid rent, but, rather are a good faith deposit for your fulfillment of your Lease obligations, as well as a contingency against damages to the Premises. The Total Deposits are held in a separate interest-bearing account at the following bank:

> Bank of America
> 880 Bergen Ave
> Jersey City, NJ 07306
> Type of Account:  Interest Bearing
> Current Interest Rate:  0.00%

Pursuant to applicable law, this Lease constitutes a receipt for the Total Deposits you paid. The interest rate shown above is the rate paid by the bank as of the date this Lease is being entered into. This interest rate will change from time to time throughout the Lease term and, pursuant to New Jersey law, all accrued interest on your Total Deposits will be paid to you on an annual basis and at move-out.

You are not entitled to apply any part of your Total Deposits against rent and other charges  during the time you are occupying the Premises. Consistent with the requirements of state law, after you move out, we will inspect the condition of the Premises, and charge, against your Total Deposits, for any damages beyond ordinary wear and tear, excessive

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

cleaning or trash removal charges, as well as any outstanding balances you owe us. If any balance of the Total Deposits remains after applying all such charges, we will refund it to you. If the move-out charges and/or other unpaid amounts remaining on your resident account at the time you move out exceed the amount of the Total Deposits, you agree to pay us the difference. We reserve the right to charge pre-judgment interest on any balance owing after you move out. Such interest will begin to accrue when the balance, if any, shown on the Statement of Deposit Account we issue to you is not paid within 30 days following the date set forth on the Statement of Deposit Account. The interest charged on the outstanding balance will not exceed the rate of 18% per annum or the highest rate allowed by law, whichever is less, and will be reflected on the Statement of Deposit Account that will be issued to you after you move out. If you wish to do so, you may request us to inspect the Premises with you upon move-out. If no other arrangements are made, we will inspect the Premises within 48 hours after you move out. If there are multiple co-residents on this Lease, you agree that, at the time you provide notice to move out, you will (i) provide a forwarding address to us for receipt of the Statement of Deposit Account; and (ii) select one co-resident, who resides at the forwarding address, to receive the refund of any Total Deposits paid. You may also have the opportunity, upon providing an account number to us, to select to have your refund, if any, directly deposited into the bank account of the selected co-resident. If you fail to provide us with a forwarding address and co-resident designation, we will, within the timeframe required by state law, (i) make the refund check payable to all residents listed in the Lease, and (ii) mail the refund check to the address provided or, if no forwarding address is provided, we will mail the refund check to the Premises address for forwarding by the U.S. Postal Service.

**8.     One-time Fees:** If you have paid other fees and charges as set forth in the Total Other Fees and Charges section of the Term Sheet, you acknowledge and understand that such other fees and charges are not refundable, are not considered to be a security deposit or part of the Total Deposits, and will not be applied as a credit toward any amounts owed by you at the time you move out. The Amenity Fee set forth on the Term Sheet is a one time, non-refundable charge for use, in common with other residents, of the common areas and amenities at the Community. We will charge an additional Amenity Fee at the time you renew your lease. We have the right to increase or decrease the Amenity Fee at any time.

**9.     Lease Concessions:** If you received any Lease concession, you must fulfill all of your obligations under this Lease for the entire Lease term. If this Lease is terminated early, you must repay a prorata portion of the total Lease concessions you received based on the number of days remaining in your Lease term after you move out. Any concession that is designated on the Term Sheet as a one-time or upfront concession must be applied first toward your rent and other charges during the first full calendar month of the initial term and to consecutive months thereafter until the balance of the concession credit reaches zero. If the concession shown on the Term Sheet is designated as a recurring concession and the Lease is terminated early, the early termination rent that will be charged after you move-out will not include the deduction for the recurring concession.

**10.     Employees of Lessor:** If you are an employee of Lessor or a co-resident living with an employee of Lessor, you acknowledge and agree that the rent concession identified on the Term Sheet may or may not be provided to the employee as a condition of employment. If the requirement to live in the Premises is not a condition of employment and the value of the rent discount exceeds 20% of the monthly rent, the amount that is in excess of 20% will be included in your taxable income and you will be required to pay all applicable taxes on that amount. During any time that you are on leave of absence from your employment, if you are responsible for taxes on your rent discount, you must remit the tax amount that is generally withheld from your paycheck to the Lessor during the month in which the concession is granted. If you fail to do so, after notice to you, Lessor reserves the right to eliminate that portion of the concession in excess of 20% of the monthly rent. You also agree to pay your rent and other charges electronically each month via one of the following: (i) the one-time payment option on the resident portal; or (ii) Automatic Debit Authorization; or (iii) other electronic payment process implemented by Lessor. If you do not have a checking account, you may pay by money order or cashier's check given directly to the Community's management office. Under no circumstances are you to rent space in the Premises to occupants on a short-term basis and you are specifically prohibited from advertising and leasing the Premises through such sites as Airbnb, craigslist, Expedia, Hotels.com, or any other similar locator sites. If you breach the Lease for any reason, we may, in addition to our right to pursue remedies under the Lease for breach of Lease, terminate the employee concession and require you to pay the Monthly Apartment Rent set forth on the Term Sheet, along with other charges, without the employee concession. If the employee's employment is terminated for any reason, your tenancy will terminate on the seventh day following the last day of employment. Unless we enter into a new Lease with you or consent in writing to allow you to remain in the Premises for a specified period of time, which is in our sole discretion, you agree to vacate the Premises by this date. We have no obligation to enter into a new lease with you or to allow you to remain in the Premises beyond this timeframe. If we mutually agree to continue your residency, you must sign a new lease at a rate that is compliant with then-current pricing guidelines for non-employees and you must also make all deposits customarily collected from other residents at the Community, prior to the expiration of your tenancy (seven days). If you continue to occupy the Premises beyond the seven day period or the agreed upon vacate date, whichever is

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

applicable, without having signed a new lease and paying all deposits, you will be considered a "holdover" resident, as defined in this Lease and will be subject to the terms and conditions relating to such holding over. Unless you have signed a new lease, no holding over by you or payments of money by you to Lessor shall be construed to extend the Lease term or prevent us from recovering possession of the Premises. You understand and agree that the obligations identified in the Arbitration Policy and Agreement to submit certain types of employment-related disputes to binding arbitration, do not apply to any dispute related to your tenancy or this Lease.

**11.     Failure to Pay Deposits, Other Fees and Charges and First Month's Rent:** If you fail to pay any deposits, other fees and charges and the first month's rent (or a prorated amount if the first month is a partial month) prior to moving in, you will be in default under the Lease and we can refuse to give you possession of the Premises until you pay such amounts.

**12.     Delay in Delivery of Possession:**   You are responsible for paying rent and other charges effective with the Commencement Date shown in the Lease Term section of the Term Sheet.   If we are unable to give you possession of the Premises on the Commencement Date, we will abate the rent until we are able to do so. You agree that you will not seek reimbursement from us for any cost incurred by the delay of possession, including, but not limited to, storage or temporary lodging.   Subject to applicable law, if we fail to deliver the Premises to you within 30 days from the date promised, either you or we may terminate the Lease by providing written notice to the other.   Requirements for us to make repairs or clean the Premises that do not affect your ability to occupy them will not constitute a delay or entitle you to a rent abatement.  If we are unable to deliver the Premises but, at our discretion, offer you comparable accommodations at no additional cost, you will not be entitled to a rent abatement.

**13.     Rental Application and Resident Information Updates:**   You have provided certain information in your Application for Rental that we have relied on in connection with renting the Premises to you.   You agree to promptly notify us if any of the information you provided changes. If any of the information you provided to us on your Application or in any subsequent updates is materially false, incomplete or misleading, or if you fail to notify us of any change or if you fail to update your information, you will be in default of your obligations under this Lease.

**14.     Disclosure of Information:** To the extent permitted by applicable law, we may provide information about you, your co-residents, or any of your occupants to third parties such as law enforcement personnel, future landlords, mortgagees, attorneys, collection agencies, and consumer reporting agencies for law-enforcement, governmental, credit, rent payment history, or other business purposes.  If we provide such information to third parties at your request, we reserve the right to charge a reasonable administrative fee for doing so.  If you and your co-residents have a guarantor, we may, without notifying you, provide information to the guarantor.

**15.     Utilities and Utility Cost Adjustments During the Lease Term:** You are responsible for paying for all of the utilities identified on the Term Sheet that are checked, and any utilities that we have not specifically agreed to pay.  In some cases, the utility service will be provided to you by the utility company and you will pay the utility company directly. In other cases, your utility bill may be calculated based on a submeter reading, an allocation method, or a flat fee (as more fully described in the Utilities Addendum attached to this Lease), in which case you will receive a bill for such utilities from our billing vendor and you will either pay us directly or send your payments to our billing vendor.  The Utilities section of the Term Sheet identifies which utility bills are to be billed by and paid directly to the utility company and which utility bills are to be billed by our billing vendor and either paid to us directly or, in some cases, sent to our billing vendor.  In all cases, your failure to pay the utilities in full when due shall be considered a default under the Lease.  You will not allow utilities that are in your name to be disconnected for non-payment or any other reason. If you do not connect the utilities as of your Lease start date or, if you disconnect the utilities early before moving out, and the utilities remain in our name during such timeframes, we will bill you for the utility charges incurred for the days you were in possession of or living in the Premises, along with an administrative fee of $50.00 for each utility bill we process on your behalf. You acknowledge that if the utilities remain in our name, we will incur costs, the exact dollar amount of which is difficult or impracticable to determine.  Such costs may include, among other things, lost use of funds, bank or other charges, costs incurred in connection with paying, accounting for and attempting to collect utility payments; collection expenses; and other administrative and accounting costs. Because many utilities have long billing cycles, we may not have the actual utility bill in hand at the time we process your move out charges.  In that circumstance, we reserve the right to estimate the utility charges for you based on typical or average consumption.   We make no representation or warranty with respect to the amount of any estimated or actual utility costs associated with the provision of utility services to the Premises or the Community. To the extent we make a request of you in connection with any analysis of overall utility consumption at the Community, you authorize us, as your agent, to request and receive copies of your utility billing records directly from the utility provider.  You acknowledge that we cannot be held responsible for any outages, interruptions or fluctuations in utility service that are provided to the Premises, and that you have no right to claim constructive eviction or to receive any offset

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

or reduction of rent or diminished rental value of the Premises as a result of any such outages, interruptions, or fluctuations.

**16.     Right to Enter:** Subject to notice requirements imposed by applicable law, we and our employees and agents may enter the Premises during reasonable hours for any lawful purpose, including but not limited to inspections, maintenance, repairs and pest control procedures. We also reserve the right to enter the Premises at any time in the event of an emergency, to check for abandonment, or to abate a nuisance. If you submit a service request to us, such request for service will constitute your permission for us to enter the Premises to do the requested work. You authorize us, in the event of your death or incapacity, to grant access to the Premises and the contents therein to the individual named in the emergency contact section of your Application for Rental or otherwise named by you in connection with updating your resident information. Once we grant access to such person, he/she may remove all personal property from the Premises and dispose of it in accordance with applicable law. You hereby release and discharge us from any liability, claim or damages arising out of or in connection with our granting such access to the person you named. Assuming you have submitted a notice to vacate to us, we may, during the last 30 days of your tenancy and without advance notice to you, show the Premises to prospective new residents during normal business hours. If it is necessary for you to temporarily move out in order for us to exterminate or for other reasons, you agree to do so upon at least seven days' notice or on shorter notice as may be reasonable under the circumstances. If you are forced to temporarily move out for more than one day because of a duty, condition or event that is our responsibility under this Lease or by law and, if we do not make substitute accommodations available to you, we will abate your rent and other charges for the period of time you are unable to occupy the Premises.

**17.     Right to Exclude:** We reserve the right to exclude from the Community you and any of your occupants or guests who violate this Lease, any of the Community's policies, or the law. We also reserve the right to exclude anyone who disturbs other residents or our employees and agents, as well as anyone we reasonably believe represents a potential threat to other residents or to our employees and agents. We may also exclude from the Community any person who refuses to show photo identification to us or to identify himself or herself as a resident, occupant or guest. We may deny you or any person access to the Premises, including by changing the locks, if any court or legal order restrains or bars you or such person from the Premises.

**18.     Liens or Sales by Lessor:** This Lease is subject and subordinate to all present or future ground or underlying leases, loans, mortgages, deeds to secure debt or deeds of trust affecting the Premises and the Community which we or any subsequent owner of the Community may enter into. You hereby appoint us as attorney-in-fact to execute and deliver any and all necessary documents to evidence such subordination of the Lease. Foreclosure of any mortgage or any sale of the Community will not constitute a constructive eviction and, in the event of any such action, you will continue to pay your rent and other charges and perform your obligations under this Lease. Upon any foreclosure or sale, we will be released from all obligations under this Lease that accrue after the date of the foreclosure or sale and you will look solely to the then-current owner for the performance of Lessor's duties.

**19.     Criminal Activity:** You agree that neither you, nor any of your occupants or guests will (i) engage in any criminal activity of any kind, including, without limitation, drug related criminal activity, prostitution or criminal street gang activity, on or near the Community, (ii) engage in any act intended to facilitate such criminal activity, (iii) use or permit the Premises to be used for, or to facilitate, any criminal activity, or (iv) engage in any acts of violence or intimidation or any threats of violence, verbal or otherwise, including, but not limited to, the discharge or brandishing of firearms or other weapons, on or near the Community or otherwise. For purposes of this section, "drug related criminal activity" includes, but is not limited to, the use of or the manufacture, sale, distribution, dispensation or possession with intent to manufacture, sell distribute, or dispense, marijuana or any other Controlled or Counterfeit Substance, as defined in the Controlled Substances Act (21 U.S.C. 802), as amended from time to time. One or more violations of the provisions of this paragraph will be considered a breach of the Lease and good cause for the immediate termination of your tenancy and your eviction from the Premises. Unless otherwise provided by law, proof of a violation of this paragraph shall not require criminal conviction, but may be based on our reasonable suspicion and a preponderance of the evidence. In addition, if you or any of your occupants have engaged in any criminal activity during the Lease term or otherwise, we may take action to terminate the Lease and pursue eviction-related remedies.

**20.     Use and Occupancy:** The Premises are to be occupied and used solely as a private residence. Therefore, conducting any kind of business in the Premises, or anywhere in the Community, is prohibited. However, a lawful business conducted "at home" by computer, mail or telephone is permissible if customers, clients, patients or other business associates do not come to the Premises for business purposes. The number of people living in the Premises is subject to applicable local occupancy standards. Only those residents and occupants identified on the Term Sheet, and, subject to the Community's occupancy standards, children born or adopted during the Lease term, may occupy the

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

Premises without our prior written consent. If someone stays with you for more than 15 days (consecutive or otherwise) in any one month, we will consider such person to be an unauthorized occupant and, in order to allow such person to continue residing in the Premises, we must consent. If the person is age 18 or older, we may require him/her to complete an Application for Rental and pay an application fee. If we consent to such person's occupancy in the Premises, we also require that such person, unless he/she is a full-time student residing with a parent or guardian, be named on the Lease as resident. You acknowledge that we may require that any additional co-residents be screened through our credit and criminal screening process. You understand, however, that some individuals, guests, occupants, etc., who stay at the Community may not have gone through this process. All co-residents who are added as residents to the Lease are accepting the Premises in as-is condition and are agreeing to be jointly and severally liable for the condition of the Premises. You are responsible for your conduct, as well as the conduct of your occupants and guests. You, your occupants and all guests will: (i) show due consideration for neighbors and not interfere with, disturb or threaten the rights, comfort, health, safety, convenience, quiet enjoyment and use of the Community by us, other residents and occupants and any of their guests, agents or invitees; (ii) not engage in abusive, threatening or harassing conduct, including, but not limited to racist conduct, toward us, our employees, agents or representatives, or other residents, occupants or guests at the Community; (iii) you will not unreasonably interfere with our management of the Community; (iv) exercise reasonable care in the use of the Premises and maintain the Premises in a clean, safe and undamaged condition, ordinary wear and tear excepted; (v) comply with all of the policies and procedures contained in the Resident Handbook and Community Policies we delivered to you via My.EquityApartments.com or otherwise; and (vi) comply with federal, state and local laws, regulations, statutes and ordinances which are applicable to the Premises and your tenancy. We reserve the right to be the sole judge of acceptable conduct and to determine the appropriate action necessary to deal with unacceptable conduct, including, but not limited to taking action to terminate your tenancy and to pursue eviction-related remedies.

**21.     Restrictions on Assignment and Subletting/Prohibition Against Short-Term Rentals:**

a.      You may not assign this Lease or sublet the Premises without our prior written consent. If we do consent to any assignment or sublease, you will remain fully responsible and liable for the payment of the rent and other charges throughout the remainder of the Lease term.

b.      The Premises are not to be used or occupied as a hotel or for any other transient use. Under no circumstances are you to rent space in the Premises to occupants on a short-term basis (for a period of time less than 30 days), or for any short-term occupancy that may be governed by or prohibited by state or local laws, including, but not limited to, those applicable to transient housing, code violations or hotel taxes, unless you receive consent from us. Unless you are given permission by us, you are specifically prohibited from advertising the Premises for rental on sites such as Airbnb, craigslist, Expedia, Hotels.com or any other similar locator sites, regardless of whether the purpose of such advertisement is for short term or transient occupants or for long term rental. Should we become aware of any violation of these short-term stay provisions or incur any loss as a result of your violation of this provision, including but not limited to, any fines or fees assessed against us by any federal, state or local authority, or any loss in business revenue, you will indemnify us and assume full responsibility for any and all such losses that we incur.

**22.     Repair and Maintenance:** You confirm that you have inspected the Premises, found them in a clean, rentable, and undamaged condition (other than items listed in the Move-In/Move-Out Inspection Form that you completed or will complete), and that you accept the Premises in "as is" condition. You specifically acknowledge that no condition exists in the Premises that make the Premises materially dangerous or hazardous to your life, health, or safety. If any part of the Premises is in need of maintenance or repair, you agree to notify us immediately. Damages and defects not itemized will be presumed to have first occurred during your occupancy of the Premises. You understand that you are responsible for keeping the Premises in a clean, sanitary and undamaged condition, ordinary wear and tear excepted. You are responsible for properly performing routine cleaning of all interior portions of the Premises. If you fail to keep the Premises clean (including, but not limited to eliminating dirt, filth, scum, grease, oil, mud, scuffs, holes, gouges, burns, stains, tears, cuts, rips, fleas, pests, foul scents or odors (including those relating to smoking), surface mold on caulking at the sinks, tub, shower and other locations, and other conditions which could have been avoided by careful use and routine cleaning), or if you, your occupants or any animals cause damage to the Premises in excess of ordinary wear and tear, you will be responsible for the costs to clean and/or repair such damage. Furthermore, you and your occupants are responsible for maintaining the Premises in a clean and sanitary condition, free of garbage and rubbish and in a condition that does not cause or contribute to a pest or rodent infestation.

**23.     Fair Housing Accommodations/Modifications:** We are firmly committed to the principles of Fair Housing. If you or any person residing in the Premises, as a result of a disability, requires accommodations to our rules, policies, practices or services, or a physical modification to the Premises and/or the common areas of the Community in order to

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

provide you or your occupants with equal opportunity to use and enjoy the Premises, you will notify us. If you require physical modifications to the Premises, we may require you to enter into a modification agreement identifying the modifications to be made and any restoration obligations you may have.

**24.    Military Clause:**

a.      If you become an active duty member of the United States Armed Forces during the Lease term, then, pursuant to the provisions of the Servicemembers Civil Relief Act ("SCRA") and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official orders; (ii) provide at least 30 days' prior written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent and other charges through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the Security Deposit paragraph above.

b.      If you are an active duty member of the United States Armed Forces at the time you are signing this Lease, you affirm that the Lease end date does not extend beyond your anticipated discharge, retirement or release from the United States Armed Forces.   Pursuant to the provisions of the SCRA and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official permanent change-of-station orders or your official orders to deploy for a period of not less than 90 days; (ii) provide at least 30 days' written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent and other charges through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the provisions of the Security Deposit paragraph above.

c.      Notwithstanding the provisions of the Lease Concessions paragraph above, if you are exercising your right to terminate the Lease pursuant to the SCRA and this Military Clause paragraph, you will not be required to repay any portion of Lease concessions set forth on the Term Sheet. If any resident satisfies the requirements of this paragraph, all residents in the Premises will be released from their obligations under the Lease if they also elect to vacate the Premises.

**25.    Resident Insurance.** We strongly recommend that you secure a renters insurance policy covering your personal belongings, which also includes personal liability insurance covering your actions. Unless there is a prohibition imposed by affordability covenants or other restrictions applicable to the Premises, we require all residents to maintain a policy of liability insurance issued by an authorized insurance company that provides limits of liability in an amount of at least $100,000 per occurrence. If the Term Sheet indicates that Renter's Liability Insurance is required, you must furnish proof of insurance to us on or before the commencement date of the Lease and, assuming you enter into renewal leases with us, you must continue to provide evidence of coverage for all subsequent renewal terms. You can obtain such insurance from Assurant, through Residential Insurance Agency, LLC at www.rentersdirect.com, or through the insurance agent of your choice. If you select an insurance company other than Assurant you must name the Community as an Interested Party under your policy. Please note that Residential Insurance Agency, LLC, a licensed insurance agency, is an affiliate of Lessor. Except where prohibited by law, if you fail to obtain and maintain liability insurance as required by this paragraph, you will be in violation of your lease obligations. In such event, we will send a written notice to you demanding that you cure the violation by procuring the insurance and supplying evidence of coverage to us. If you fail to supply evidence of such insurance to us on or before the date set forth in your notice, we reserve the right to procure liability only insurance coverage on your behalf, and to charge you for the amount of the premium paid to the insurance company, not to exceed $180.00 per year, along with an administrative fee of $40.00. You agree that this administrative fee is a fair and reasonable estimate of the administrative costs we will incur as a result of procuring the liability insurance coverage for you. If you fail to pay for the liability insurance and/or you allow the expiration or cancellation of any liability insurance policy during your tenancy, without substitute insurance being put in place, this will be considered a default under the Lease.

**26.    Corporate Units:** If the name in the Resident section of the Term Sheet is a company or business (and not an individual person), then the company assumes all responsibility for damage to the Premises and any loss incurred by us or any third party that is caused by any person living in the Premises. The company also agrees to indemnify us for all claims, damages, losses and expenses related in any way to the occupancy of the Premises. The company agrees to identify all persons living in the Premises and to provide written authorization to us to release keys, key cards, and/or access cards to such occupants. The company agrees to maintain, at its sole cost and expense, throughout the term of the Lease and any subsequent renewal terms, the following insurance: Commercial General Liability insurance on a form at least as broad as Insurance Services Office ("ISO") Commercial General Liability Coverage "occurrence" form CG 00 01 0196 or another ISO Commercial General Liability "occurrence" form providing equivalent coverage, providing broad form comprehensive general liability coverage, blanket contractual liability coverage, coverage for bodily injury (including death), property damage (including loss of use thereof), products and completed operations with an authorized insurance

DocuSign Envelope ID: 4352BA36-47AB-4E33-A80A-BC86E178AC0B

## PARKING PERMIT ZONES ADDENDUM

This Parking Permit Zones Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

Generally, as a matter of law, the City will not issue an on-street residential parking permit to a resident of this building because the building was required to provide off-street parking for its residents when it was constructed. The City requires that a landlord or seller make you aware of this fact before you agree to rent or buy a residence in the building. There are limited exceptions to the prohibition on the issuance of on-street permits. To determine whether or not you qualify for one of the exceptions, you need to read Section 332-58 of the Jersey City Municipal Code, which is available at https://www.municode.com/library/nj/jersey_city/codes/code_of_ordinances or contact the Division of Parking Enforcement at 201-653-6969.

Because an on-street residential parking permit is not available to residents of this building, I understand that if I rent or purchase a residence here, I will be required to pay for parking and I will NOT be eligible for an on-street residential parking permit unless I qualify for one of the exceptions.

____/____/____/____/____/____/____/____

The landlord or seller informed me that off-street parking for a resident of this building is available at the rate of $ 0.00 per month.

____/____/____/____/____/____/____/____

I was shown this form and read it, prior to signing my lease or contract to purchase.

____/____/____/____/____/____/____/____

I understand that if I am eligible for an exception, I am limited to one residential permit per unit. I am ineligible for any other residential permits.

____/____/____/____/____/____/____/____

DocuSigned by:

DaShawn Peyton          10/16/2022 Date _____ Date _____ Date

_____ Date _____ Date _____ Date

_____ Date _____ Date _____ Date

Lessor:     Equity Residential Management, L.L.C.,
            as agent for the Owner

By: _____          10/13/2022
It's: Authorized Representative:     Date

*Legal Form – Parking Permit Zones Addendum v1*
*(New Jersey Only)*
*Revised 08/20*

©Equity Residential 2020. All Rights Reserved

## Tenancy Summons and Return of Service (R. 6:2-1)



**NOTICE:** This is a public document, which means the document as submitted will be available to the public upon request. Therefore, do not enter personal identifiers on it, such as Social Security number, driver's license number, vehicle plate number, insurance policy number, active financial account number, active credit card number or military status.

**Plaintiff or Filing Attorney Information:**

Name: DEREK D REED

NJ Attorney ID Number: 038062003

Address: 60 PARK PL

      STE 1016

      NEWARK, NJ 07102-0000

Telephone: 973-643-0040

**Superior Court of New Jersey**

**Law Division, Special Civil Part**

**HUDSON County**

**HUDSON County Courthouse**

**595 NEWARK AVENUE, ROOM 104**

**JERSEY CITY, NJ 07306-0000**

Equity Residential Management

                      Plaintiff(s)

**versus**

DaShawn Peyton

           Defendant (s)

**Docket Number: HUD-LT-002968-24**

(to be provided by the court)

**Civil Action**

**SUMMONS**

**LANDLORD/TENANT**

**Defendant Information:**

Name: DaShawn Peyton

Address: 155 Washington Street

      Unit 504

      Jersey City, NJ 07302-0000

Phone: 2025203426

**NOTICE TO TENANT: The purpose of the attached complaint is to permanently remove you and your belongings from the premises. You will be notified when a court proceeding is scheduled. Please contact the Office of the Special Civil Part at 201-748-4400 ext.60028 regarding your case. Please go to njcourts.gov for general information on landlord/tenant actions.**

If you cannot afford to pay for a lawyer, contact Legal Services at 201-792-6363 to see if you qualify for free legal advice. If you can afford to pay a lawyer but do not know one, you may call the Lawyer Referral Services of your local county Bar Association at 201-798-2727

You might be eligible for housing assistance. To determine your eligibility, you must immediately contact the welfare agency in your county at 257 CORNELISON AVENUE, JERSEY CITY, NJ, 07302-0000, telephone number 201-420-3000. If you need an interpreter or an accommodation for a disability, you must notify the court immediately.

**NOTIFICACIÓN AL (A LA) INQUILINO(A) El objetivo de la denuncia adjunta es desalojarle a usted y sacar sus pertenencias permanentemente del sitio alquilado. Se le notificará la fecha cuando se haya programado el procedimiento judicial. Sírvase comunicarse sobre su caso con la Oficina de la Parte Civil Especial llamando al 201-748-4400 ext.60028. Para obtener información general sobre las acciones de propietarios/inquilinos, vaya a njcourts.gov.**

Si no puede pagar los servicios de un abogado, póngase en contacto con la oficina de Servicios Legales llamando al 201-792-6363 para averiguar si reúne las condiciones para recibir asesoramiento legal gratis. Si puede pagarle a un abogado, pero no conoce a ninguno, llame al Servicio de Referencia de Abogados del Colegio de Abogados local de su condado llamando al 201-798-2727.

Es posible que reúna los requisitos para recibir ayuda con la vivienda. Para que se haga esa determinación, tiene que ponerse en contacto inmediatamente con la agencia de bienestar social de su condado en 257 CORNELISON AVENUE, JERSEY CITY, NJ, 07302-0000, número de teléfono 201-420-3000. Si necesita un intérprete o un arreglo especial por una discapacidad, tiene que notificárselo al tribunal de inmediato. acomodación para un impedimento físico, tiene que notificárselo inmediatamente al tribunal.

**Date: 04/04/2024**

/s/ Michelle M. Smith

CLERK OF THE SUPERIOR COURT

## Court Officer's Return of Service (For Court Use Only)

Docket Number: _____ Date _____ Time _____

WM _____  WF _____  BM _____  Other _____  Ht _____  Wt _____  Age _____  Mustache _____  Beard _____  Glasses _____

Name: _____ Relationship _____

Efforts Made to Personally Serve _____

_____

Description of Premises if Posted _____

_____

I hereby certify the above to be true and accurate: _____

Special Civil Part Officer

Docket Number: LT- _____

# Landlord Case Information Statement

**Case Details: HUDSON - Special Civil Part Docket# HUD-LT-002968-24**
**Caption:** Equity Residential Management VS Peyton DaShawn

## Plaintiff/Landlord

**Name of Plaintiff/Landlord:** Equity Residential Management
**Email Address:** courtnotice@epgprlaw.com
**Home/Office Phone:**
**Cell Phone:**

**Attorney Name and Firm:** DEREK D REED , EHRLICH PETRIELLO GUDIN PLAZA & REED, P.C.
**Email Address:** DREED@EPGPRLAW.COM
**Office Phone:** 973-643-0040
**Cell Phone:**
**Attorney/Plaintiff Mailing Address:** 60 PARK PL STE 1016 NEWARK NJ 07102

## Defendant/Tenant

**Name of Defendant/Tenant(s):** DaShawn Peyton
**Rental Property Address:** 155 Washington Street Unit 504 Jersey City NJ 07302
**Municipal Code:** 0906

**Email Address:** dashawn.peyton@gmail.com
**Home/Office Phone:** 2025203426

**Cell Phone:**

**Type of Tenancy:** [ X ] Residential    [ ] Commercial

**Cause of Action:** [ X ] Non-Payment
[ ] Other (Holdover for Cause)

**Holdover Cause of Action:**

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

[ ] Subsidized Housing

Type: [ ] Public Housing  [ ] Section 8 Voucher  [ ] Section 8 HAP Contract  [ ] Other Subsidy Program

[ ] Notice(s) that are required for Holdover, Public Housing and/or Subsidized Housing are attached to the complaint.
[ X ] Rental property is not a covered property under the Federal CARES Act, 15 U.S.C. § 9057(f) or 9058(a).
[ ] The tenancy is subject to a municipal rent control ordinance.

The total number of months of unpaid rent is: 5
The first month of unpaid rent was: November 2023
The amount due and owing by the tenant in this case is: $ 8387.63

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

I certify that the foregoing statements made by me are true to the best of my knowledge.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 04/04/2024          Attorney/Plaintiff Signature: /S/ DEREK D REED



# Landlord
# Civil Case Information Statement
## (LCIS)

### Holdover Causes of Action

**Residential Tenancy**

| | | |
|---|---|---|
| 1 | Disorderly Tenant | N.J.S.A. 2A:18-61.1(b) |
| 2 | Willful or Gross Negligent Damage to Premises | N.J.S.A. 2A:18-61.1(c) |
| 3 | Violation of Rules and Regulations | N.J.S.A. 2A:18-61.1(d) |
| 4 | Violation of the Lease Covenants | N.J.S.A. 2A:18-61.1(e) |
| 5 | Violation of the Lease Covenants Under the Control of a Public Housing Authority or Redevelopment Agency | N.J.S.A. 2A:18-61.1(e) |
| 6 | Failure to Pay Rent After Increase | N.J.S.A. 2A:18-61.1(f) |
| 7 | Demolish/Board Up Premises | N.J.S.A. 2A:18-61.1(g) |
| 8 | Permanently Retiring Residential Building/Mobile Home Park from Residential Use | N.J.S.A. 2A:18-61.1(h) |
| 9 | Reasonable Changes to Lease at End of Lease Term that Tenant Refuses to Accept | N.J.S.A. 2A:18-61.1(i) |
| 10 | Habitual Late Payment of Rent | N.J.S.A. 2A:18-61.1(j) |
| 11 | Converting Property to Condominium or Cooperative Ownership | N.J.S.A. 2A:18-61.1(k) |
| 12 | Personal Occupancy by Owner or Purchaser of Unit (property converted to condo/cooperative or fee simple ownership) | N.J.S.A. 2A:18-61.1(l)(1) |
| 13 | Personal Occupancy by Owner or Purchaser of Unit (owner of a building with 3 or fewer condo/cooperative units. | N.J.S.A. 2A:18-61.1(l)(2) |
| 14 | Personal Occupancy by Owner or Purchaser of Unit (building with 3 or fewer residential units) | N.J.S.A. 2A:18-61.1(l)(3) |
| 15 | Rental is Conditioned on Tenant's Employment by Landlord | N.J.S.A. 2A:18-61.1(m) |
| 16 | Convicted or Pleaded Guilty to Offenses under the 1987 Comprehensive Drug Reform Act, or Harbors such Person | N.J.S.A. 2A:18-61.1(n) |
| 17 | Convicted or Pleaded Guilty to Assault/Threats against Landlord, Landlord's Family or Employee, or Harbors such Person | N.J.S.A. 2A:18-61.1(o) |
| 18 | Tenant or Tenant Harbors such Person previously found Liable in a Civil Action for Certain Criminal Acts on the Rental Premises | N.J.S.A. 2A:18-61.1(p) |
| 19 | Tenant or Tenant Harbors Such Person who pleaded or was convicted of theft of property from the Landlord, the Rental Premises, or Other Tenants | N.J.S.A. 2A:18-61.1(q) |
| 20 | Tenant or Tenant Harbors such Person previously found Liable in a Civil Action for Human Trafficking on the Rental Premises | N.J.S.A. 2A:18-61.1(r) |
| 21 | Residents at Residential Health Care Facilities (non-payment or holdover) | N.J.S.A. 30:11A-1 *et. seq.* |

**Commercial Tenancy; Owner-Occupied Premises with Two or Less Residential Units; Rental Unit Held in Trust on behalf of Immediate Family Member Who Permanently Occupies the Unit not Developmentally Disabled**

| | | |
|---|---|---|
| 22 | Tenant Stays after Expiration of Lease Term | N.J.S.A. 2A:18-53 |
| 23 | Tenant Disorderly as to Destroy Peace and Quiet | N.J.S.A. 2A:18-53 |
| 24 | Tenant Willfully Destroys, Damages or Injures the Premises | N.J.S.A. 2A:18-53 |
| 25 | Tenant Constantly Violates Landlord's Written Rules and Regulations | N.J.S.A. 2A:18-53 |
| 26 | Tenant Breaches/Violates any Agreement in Lease that Provides for Right of Reentry | N.J.S.A. 2A:18-53 |
| 27 | Violation of Alcoholic Beverages Laws by Commercial Tenant | N.J.S.A. 33:1-54 |



**New Jersey Judiciary**
**Superior Court of New Jersey**
**Law Division, Special Civil Part**

# Landlord Tenant Procedures

The following procedures apply in cases where a landlord is trying to evict (also known as "lockout") a tenant. Please take the time to read this information and visit the Judiciary website at njcourts.gov for more information about landlord tenant rules and procedures. Both landlords and tenants can ask questions of court staff at any point during the process, but court staff *cannot* provide legal advice.

1. **Complaint filed and served**
   The landlord must file a complaint, summons, Landlord Case Information Statement (LCIS), copy of the lease (or, if the lease exceeds 10 pages, the relevant portions of the lease), registration statement, if applicable, and Certification of Lease and Registration Statement. Those documents will explain why the landlord is seeking to evict the tenant(s) and will be served on the tenant(s).

   Tenants must complete a Tenant Case Information Statement (TCIS). The TCIS will explain the tenant's position. The tenant should file this with the court electronically (or by mail as soon as possible after receipt of the complaint, otherwise it will be required at the trial.

   Court forms for both landlords and tenants are available at njcourts.gov under "Forms Catalog".

2. **Settlement Conference**
   Prior to being sent for trial, the landlord and tenant will be asked to talk to each other to try to settle their case. Trained neutral court staff will help both sides try to settle their case. If the case does not settle prior to trial, the case will proceed to trial before a judge. *Neither the landlord nor the tenant is required to settle their case and both have the right to a trial*.

   **Settlement Agreements**

   If both landlord and tenant agree to settle their case, the court or court staff will review the terms of the settlement agreement. Some agreements will require the judge to review and approve the agreement and some will also require the landlord and tenant to testify about the terms of the agreement on the record in open court. All settlement agreements will be written (or placed on the record), with a copy provided to the parties, and added to the court's electronic file.

   If you settle your case, please note:

   - You should settle only if you agree with the terms. Both landlord and tenant must agree to the terms for a settlement.

- Court staff can provide an agreement form which can be completed virtually (by video) or in person. If completed in person, the signed agreement should be provided to the court.

- Court staff can also provide forms for any certification from the landlord and/or the landlord's attorney.

- The wording of the settlement form can be changed depending on the terms you have agreed upon.

- Make sure that you understand the words in the settlement because if you are a tenant and agree to entry of a judgment for possession and do not comply with the terms of the settlement, you can be evicted.

- Any agreement that says a judgment for possession will or can be entered must be approved by a judge if a residential tenant does not have an attorney.

3. **Trial**

If you are a tenant and you disagree with what your landlord claims, such as the amount of the rent that is owed, you have the right to explain your position at trial. Most trials will be conducted in person. In some cases, trial may be conducted virtually, by video, if prior approval is obtained from the court. If the tenant does not appear, the case can be marked "DEFAULT." This means the landlord can apply for a judgment against the tenant and the tenant can be evicted if the judgement is granted. If the landlord does not appear, the case can be "DISMISSED." This means the case will not proceed.

4. **Entry of Judgment for Possession**

At the conclusion of a trial or where a tenant does not appear at trial and the landlord proves their case, the court will enter a judgment for possession. A judgment for possession is a written document that contains the result of the case and explains the basis for the court's decision. The judgment for possession also explains the next steps in the process.

When the court enters a judgment for possession, the court is granting the landlord the legal right to possession of the rental property. This can happen if the landlord can prove their case on the day of trial, if the tenant fails to appear and the case is marked as "DEFAULT," or if the landlord and tenant agree to the entry of a judgment for possession.

5. **Application for and Issuance of a Warrant of Removal**

After the judgment for possession is entered, the landlord can ask the court to issue a warrant of removal to a Special Civil Part Officer. The warrant of removal allows the Special Civil Part Officer to proceed with the process of evicting a tenant from the property. The warrant of removal cannot be issued less than three (3) business days after the judgment for possession is entered. A Special Civil Part Officer is the person who serves (delivers) the warrant of removal on the tenant.

6. **Service of the Warrant of Removal**

Landlord/Tenant Procedures

The warrant of removal must be served by the Special Civil Part Officer on the tenant by delivering or posting the warrant of removal on the door of the rental property.

7. **Execution of the Warrant of Removal/Eviction**

Three (3) business days after the warrant of removal is served, a landlord can request that the Special Civil Part Officer return to the residential rental property a second time to *execute the warrant of removal* by requiring the tenant to vacate the premises and permitting the landlord to change the locks.  This is when the eviction (lockout) is completed.

**NOTE**: **Landlords cannot evict tenants by themselves.  Special Civil Part Officers are the *only* individuals authorized to evict tenants.  Tenants cannot be evicted on a weekend or holiday**.

# Illegal Evictions

A landlord cannot evict tenants from a rental property; only a Special Civil Part Officer can perform an eviction.  In order to have a Special Civil Part Officer evict a tenant, a landlord must first get a judgment for possession and then a warrant of removal from the court.  ***It is illegal for the landlord to force a tenant out by changing the locks, padlocking the doors, by shutting off gas, water or electricity***.  Landlords can only remove a tenant's belongings after an eviction as permitted by the Abandoned Tenant Property Act N.J.S.A. 2A:18-72 (unless otherwise provided for in a non-residential lease).

Tenants who have been locked out of their homes illegally should call the police.  The New Jersey Office of the Attorney General has released guidance on illegal lockouts and the role of law enforcement agencies in preventing them.  More information is available at the following link: https://nj.gov/oag/dcj/agguide/directives/ag-Directive-2021-2_Illegal_Evictions.pdf.

Tenants who have been locked out of their rental property illegally can also file a civil complaint at the county courthouse.  For more information on illegal evictions (lockouts) go to njcourts.gov.

# Other Options After a Judgment for Possession is Entered

1. **Agreement**.  After a judgment for possession has been entered, a landlord and tenant can still try to make an agreement to stop an eviction.  If the landlord and the tenant agree, the agreement should be in writing and a copy of the agreement can be filed with the court.

2. **Paying all Rent Due and Owing**.  By law, a residential tenant can pay all rent due and owing plus proper costs up to three (3) business days after the eviction.  The landlord must accept this payment and/or cooperate with a rental assistance program or bona fide charitable organization that has committed to pay the rent.

3. **Asking the Court for Relief**.  A tenant can apply for relief to the court.  To do so, a tenant must file:

Landlord/Tenant Procedures

a. An application for orderly removal requesting up to seven (7) more calendar days to move out if there is a good reason;

b. A motion requesting dismissal with prejudice of the nonpayment of rent action because the residential tenant paid all rent due and owing plus proper costs, or because the landlord refused to accept the residential tenant's payment, within three (3) business days following the eviction; or an order to show cause because the landlord refused to cooperate with a rental assistance program or bona fide charitable organization that has committed to pay the rent; and/or

c. An application for a hardship stay, which delays the eviction based on the unavailability of other housing accommodations.  That delay cannot be for more than six (6) months from entry of the judgment for possession, and the tenant will have to pay all rent and proper costs.

A tenant can also file a motion under Rule 4:50-1 requesting that the judgment for possession be vacated (reversed) and the complaint dismissed, if the tenant can show good reason such as mistake or excusable neglect, fraud, misrepresentation or other misconduct by an adverse party, newly discovered evidence or any other reason justifying relief from the judgment for possession.  For more information visit the landlord tenant page at njcourts.gov.

Contact the Office of the Special Civil Part Office as soon as possible to apply for any of the above.  Go to njcourts.gov and search for "Directory of Superior Court Special Civil Part Offices".

## Available Resources

Housing, Legal and Utilities Assistance.  Court staff can give the parties a list of agencies that might be able to assist with rent, temporary shelter, or legal services.

The Department of Community Affairs (DCA) has information regarding legal, rental and other assistance programs available online at https://www.nj.gov/dca/divisions/dhcr/.

Information about legal resources also is available online at njcourts.gov.  You can also contact the Legal Services of New Jersey hotline at 1-888-576-5529.  LSNJ's Tenants' Rights Manual is available at https://proxy.lsnj.org/rcenter/GetPublicDocument/Sites/LAW/Documents/Publications/Manuals/TenantsRights.pdf

The Ombudsman in your county might be able to provide information regarding organizations and resources that may be available to you.  For a list of ombudsmen, go to njcourts.gov and search for "Ombudsman Directory".

If you have additional questions or issues regarding the information above, please send an email to Hudscplt.mbx@njcourts.gov or call the Special Civil Part Office at 201-748-4400 ext.60028. Please note that Judiciary staff cannot provide legal advice.



**Poder Judicial de Nueva Jersey**
**Tribunal Superior de Nueva Jersey**
**División de Derecho, Parte Civil Especial**
**Procedimientos para Propietarios Inquilinos**
Landlord Tenant Procedures

Los siguientes procedimientos corresponden en los casos en que un propietario está tratando de desalojar a un inquilino (también conocido como "lockout" o cierre). Dedíquele tiempo a leer esta información y visite la página web del Poder Judicial en njcourts.gov para obtener más información sobre las reglas y procedimientos para propietarios e inquilinos. Tanto los propietarios como los inquilinos pueden hacer preguntas al personal judicial en cualquier momento durante el proceso, pero el personal judicial *no puede* proporcionar consejos legales.

1. **Denuncia presentada y entregada**
   El propietario tiene que presentar una denuncia, una citación, una declaración informativa del propietario, llamada en inglés Landlord Case Information Statement (LCIS), copia del contrato de arrendamiento (o, si el contrato de arrendamiento tiene más de 10 páginas, las partes pertinentes del contrato), la declaración de registro, si corresponde, y la Certificación del contrato de arrendamiento y de la declaración de registro. Esos documentos explicarán por qué el propietario trata de desalojar al inquilino (a los inquilinos) y se le entregarán al inquilino (a los inquilinos).

   Los inquilinos tienen que llenar una declaración informativa sobre el caso, llamada en inglés Tenant Case Information Statement (TCIS). La TCIS explicará la posición del inquilino. El inquilino debe presentarla al tribunal por vía electrónica (o por correo) lo antes posible después de recibida la demanda, de lo contrario será requerida en el juicio.

   Los formularios judiciales, tanto para los propietarios como para los inquilinos, están disponibles en njcourts.gov bajo el título "Forms Catalogue" (Catálogo de Formularios).

2. **Conferencia de conciliación**
   Antes de ser enviados al juicio, se le pedirá al propietario y al inquilino que hablen entre sí para tratar de conciliar su causa. Un personal judicial neutral y capacitado ayudará a ambas partes a intentar resolver su caso. Si el caso no se resuelve antes del juicio, el caso se llevará a juicio ante un juez. *Ni el propietario ni el inquilino tiene la obligación de llegar a un acuerdo en su causa y ambos tienen derecho a un juicio.*

3. **Acuerdos de conciliación**
   Si tanto el propietario como el inquilino llegan a un acuerdo en su causa, el juez o el personal judicial repasará las condiciones del acuerdo de conciliación. Algunos acuerdos requerirán que el juez los repase y apruebe y algunos también requerirán que el propietario y el inquilino testifiquen sobre las condiciones del acuerdo para que consten en las actas de una audiencia pública. Todos los acuerdos de conciliación se escribirán (o constarán en las actas), con copia para proporcionárselas a las partes, y para añadirlas al archivo electrónico del tribunal.

Si usted llega a un acuerdo en su causa, tenga en cuenta que:

- Debe llegar a un acuerdo solamente si le resultan aceptables las condiciones. Ambos, el propietario y el inquilino, tienen que aceptar las condiciones para que haya una conciliación.

- El personal judicial puede proporcionar un formulario de acuerdo que se puede llenar virtualmente (por video) o en persona. Si se completa en persona, el acuerdo firmado se le debe entregar al tribunal.

- El personal judicial también puede proporcionar formularios para cualquier certificación del propietario o del abogado del propietario o de ambos.

- La redacción del formulario de acuerdo se puede cambiar según las condiciones que se hayan acordado.

- Asegúrese que usted comprende las palabras del acuerdo porque si usted es un inquilino y acepta que se asiente un fallo de posesión y no cumple con las condiciones del acuerdo de conciliación, puede ser desalojado/a.

- Cualquier acuerdo que diga que se asentará o que es posible que se asiente un fallo de posesión tiene que ser aprobado por un juez si el inquilino que reside en la vivienda no tiene abogado.

## 4. Juicio

Si usted es un inquilino y no está de acuerdo con lo que afirma el propietario, tal como la cantidad de alquiler que se debe, usted tiene derecho a explicar su posición en el juicio. La mayoría de los juicios se celebrarán en persona. En algunos casos, el juicio podrá celebrarse virtualmente, por vídeo, si se obtiene la aprobación previa del tribunal. Si el inquilino no comparece, el caso se puede marcar "DEFAULT" [*en rebeldía*]. Eso significa que el propietario puede solicitar un fallo en contra del inquilino y el inquilino puede ser desalojado si se otorga el fallo. Si el propietario no comparece, el caso puede ser "DISMISSED" [*desestimado*]. Eso significa que el caso no continuará.

## 5. Asiento de un Fallo de Posesión

Al terminar el juicio, o cuando el inquilino no comparece para el juicio y el propietario prueba su causa, el juez asentará un fallo de posesión. Un fallo de posesión es un documento por escrito que contiene el resultado de la causa y explica el fundamento para la decisión del juez. El fallo de posesión también explica los próximos pasos en el proceso.

Cuando el juez asienta un fallo de posesión, el juez le está otorgando al propietario el derecho legal a la posesión de la propiedad alquilada. Esto puede ocurrir si el propietario puede probar su caso el día del juicio, si el inquilino no comparece y el caso se marca "DEFAULT" [*en rebeldía*] o si el propietario y el inquilino aceptan que se asiente un fallo de posesión.

Procedimientos para Propietarios/Inquilinos

6. **Solicitud y emisión de una orden de desalojo**

Después que se haya anotado un fallo de posesión, el propietario puede pedirle al juez que emita una orden de desalojo a un Oficial de la Parte Civil Especial.  La orden de desalojo permite que el Oficial de la Parte Civil Especial proceda con el proceso de desalojar al inquilino de la propiedad alquilada. La orden de desalojo no se puede emitir antes de tres (3) días laborales de la anotación del fallo de desalojo.  Un Oficial de la Parte Civil Especial es la persona que notifica (entrega) la orden de desalojo al inquilino.

7. **Notificación de la orden de desalojo**

La orden de desalojo la tiene que notificar el Oficial de la Parte Civil Especial entregándosela al inquilino en persona o poniéndola en la puerta de la propiedad alquilada.

8. **Ejecución de la orden de desalojo/Desahucio**

Tres (3) días laborales después de notificada la orden de desalojo, un propietario puede pedir que un Oficial de la Parte Civil Especial regrese por segunda vez a la propiedad residencial alquilada para ***que se ejecute la orden de desalojo*** exigiendo que el inquilino desocupe el sitio y permita que el propietario cambie las cerraduras.  En ese momento se completa el desalojo (lockout/cierre).

**NOTA**: **Los propietarios no pueden desalojar a los inquilinos ellos mismos.  Los Oficiales de la Parte Civil Especial son los *únicos* autorizados para desalojar a los inquilinos.  No se puede desalojar a los inquilinos los fines de semana ni los días feriados.**

# Desalojos ilegales

Un propietario no puede desalojar a los inquilinos de una propiedad alquilada, solo un Oficial de la Parte Civil Especial puede llevar a cabo un desalojo.  Para que un Oficial de la Parte Civil Especial pueda desalojar a un inquilino, el propietario tiene que obtener del juez primero un fallo de posesión y después una orden de desalojo.  ***Es ilegal que el propietario obligue a salir a un inquilino porque ha cambiado las cerraduras, puesto candados en las puertas, o desconectado el gas, el agua o la electricidad.***  Los propietarios solo pueden sacar las pertenencias de un inquilino después de un desalojo según lo permita la ley sobre la propiedad abandonada de un inquilino *Abandoned Tenant Property Act* N.J.S.A  2A:18-72 (a menos que el contrato de arrendamiento no residencial lo disponga de otro modo).

Los inquilinos a los que se les ha cerrado ilegalmente el acceso a su vivienda deben llamar a la policía.  La Oficina del Procurador General de Nueva Jersey ha comunicado orientación sobre los cierres ilegales y el papel de las agencias del orden público para prevenirlos.  Hay más información a su disposición en el siguiente enlace: https://nj.gov/oag/dcj/agguide/directives/ag-Directive-2021-2_Illegal_Evictions.pdf

Los inquilinos a los que se les haya cerrado ilegalmente el acceso a la propiedad alquilada también pueden presentar una demanda civil en el tribunal del condado.  Para obtener más información sobre los desalojos ilegales (lockouts), visite njcourts.gov.

Procedimientos para Propietarios/Inquilinos

# Otras opciones después de anotado un fallo de posesión

1. **Un acuerdo.** Después de anotado un fallo de posesión, el inquilino y el propietario todavía pueden tratar de llegar a un acuerdo para detener el desalojo. Si llegan a un acuerdo, el propietario y el inquilino deben poner el acuerdo por escrito y se puede presentar una copia del acuerdo al tribunal.

2. **El pago de todo el alquiler vencido y adeudado.** Según la ley, el inquilino de una residencia puede pagar todo el alquiler vencido y adeudado más los costos apropiados hasta tres (3) días laborales después del desalojo. El dueño tiene que aceptar ese pago y/o cooperar con un programa de ayuda con el alquiler o con una organización benéfica confiable que se haya comprometido a pagar el alquiler.

3. **Solicitud de amparo al juez.** Un inquilino puede solicitar una protección judicial al tribunal. Para hacerlo, el inquilino tiene que presentar:

    a. Una solicitud para un traslado ordenado en la que pida hasta siete (7) días calendario más para mudarse, si existe un buen motivo;

    b. Un pedimento en el que solicite que se desestime con prejuicio la acción por falta de pago del alquiler debido a que el inquilino de la residencia pagó todo el alquiler vencido y adeudado más los costos apropiados, o porque el propietario rehusó aceptar el pago del inquilino de la residencia dentro de los tres (3) días laborales siguientes al desalojo; o una orden para que se presente fundamentación jurídica debido a que el propietario rehusó colaborar con un plan de ayuda con el alquiler o con una organización benéfica confiable que se ha comprometido a pagar el alquiler; y/o

    c. Una solicitud de estancia por dificultades (*stay*), la cual retrasará el desalojo sobre la base de una falta de otros alojamientos. Este retraso no puede ser más de seis (6) meses a partir del asentamiento del fallo de posesión y el inquilino tendrá que pagar todo el alquiler y los costos apropiados.

Un inquilino también puede presentar un pedimento según la Regla 4:50-1 pidiendo que el fallo de posesión se rescinda (se revoque) y se desestime la demanda, si el inquilino puede mostrar un motivo justificado, tal como un error o negligencia excusable, fraude, representación falsa u otra conducta indebida por una parte contraria, una prueba recién descubierta o cualquier otra razón que justifique una protección contra el fallo de posesión. Para obtener más información visite la página de propietarios e inquilinos en njcourts.gov.

Póngase en contacto con la Oficina de la Parte Civil Especial lo antes posible para solicitar cualquiera de lo anterior. Visite njcourts.gov y busque el "Directory of Superior Court Special Civil Part Offices".

Procedimientos para Propietarios/Inquilinos

# Recursos disponibles

Ayuda para Vivienda, Servicios legales y Servicios públicos.  El personal del tribunal puede darles a las partes una lista de agencias que es posible que puedan ayudar con el alquiler, un albergue temporal, o servicios legales.

El Departamento de Asuntos Comunitarios (DCA) dispone de información sobre programas de ayuda legal, de alquiler y otro tipo de programas de asistencia disponibles en línea en https://www.nj.gov/dca/divisions/dhcr/.

También hay información sobre recursos legales disponible en njcourts.gov.  También puede ponerse en contacto con los servicios legales de Nueva Jersey (*Legal Services of New Jersey*) llamando a la línea directa: 1-888-576-5529.  ay un Manual de los Servicios Legales de Nueva Jersey sobre los derechos de los inquilinos (*LSNJ Tenant´s Rights Manual*) disponible en: https://proxy.lsnj.org/rcenter/GetPublicDocument/Sites/LAW/Documents/Publications/Manuals/TenantsRights.pdf

Es posible que el Defensor del Pueblo de su condado pueda proporcionarle información sobre las organizaciones y los recursos que pueden estar disponibles en su condado. Visite njcourts.gov busque el "Ombudsman Directory" .

Si tiene preguntas o asuntos adicionales relacionados con la información anterior, sírvase enviar un correo electrónico a Hudscplt.mbx@njcourts.gov o llame a la Oficina de la Parte Civil Especial al 201-748-4400 ext.60028.Tenga en cuenta que el personal del Poder Judicial no puede dar consejos legales.