# EXHIBIT K

# CITY OF JERSEY CITY

**Department of Housing, Economic Development and Commerce**
Division of Housing Preservation
Office of Landlord/Tenant Relations

**Steven M. Fulop**
**Mayor**

342 MARTIN LUTHER KING DRIVE • JERSEY CITY, N.J 07305
PHONE: (201) 547-5127

March 19, 2024

Derek Reed, Esq.
Ehlrich, Petriello, Gudin, Plaza & Reed, P.C
60 Park Place, Suite 1016
Newark, NJ, 07102
Email: dreed@epgprlaw.com

**Re: Portside Towers - Tenant Inquiry**

Dear Mr. Reed,

As you know, on October 19, 2023, the Jersey City Rent Leveling Board, (the "Board"), issued a Determination in favor of the Tenants residing at 155 Washington Street and 100 Warren Street, (collectively, "Portside Towers"), which established that Portside Towers is subject to the provisions of the Jersey City Rent Control Ordinance, (the "Ordinance"), Chapter 260 of the Jersey City Municipal Code.

Following the Board's Determination, the Bureau of Rent Leveling, (the "Bureau"), requested additional proofs for submission from both parties in order to calculate the current allowable Base Rent and Actual Rent of each unit at Portside Towers. In response to this request, on March 14, 2024, the Bureau received a trove of documents and is currently reviewing them in order to perform the necessary calculations.

On or about March 7, 2024, the Bureau received an inquiry via email from a tenant residing at Portside Towers. Said tenant provided a copy of an email correspondence dated January 25, 2024, which stated, in pertinent part, that Equity Residential "will be limiting your rent increase for your upcoming renewal to the increased amount permitted under the local rent control ordinance, while the matter is pending in court."

Pursuant to the § 260-1, the base rent for a unit is:

> *The legal rent charged or actually received by the landlord for the rental of a housing space as of January 11, 1983; or if not occupied at that date the "base rent" shall be that actually charged to and received from the previous tenant, plus*

Re: Portside Towers – Tenant Inquiry
March 19, 2023
Page 2

> *any increases under § 260-3 of this chapter or the ordinance to which this is an amendment, or if insufficient evidence is available from which the Rent Leveling Administrator or Board can determine the legal rent charged or actually received as provided above, then the Rent Leveling Administrator and Board have the power to determine the legal "base rent" by considering the legal base rent of other units, subject to the provisions of this chapter, which are comparable in size, location and facilities to the subject unit.*

As referenced in the Bureaus request for proofs, whether or not a property is subject to the provisions of the Ordinance, a Property Owner is still required to register a rent roll or "a list of the base monthly rents" pursuant to § 260-2F (1) (g):

> *(1) Every owner and/or landlord shall within 90 days following the effective date of this subsection or the creation of the first tenancy in any dwelling containing five (5) or more housing spaces, whether or not subject to the restrictions of rent increases under this Chapter, file a landlord registration statement with the Bureau of Rent Leveling containing the following information:*
>
> . . .
>
> *(g) A list of the base monthly rents of each housing space, by apartment or room number, within the dwelling as of January 1, 1983.*

The Bureau has found that the Property Owner failed to comply with the requirement provided by §260-2F(1)(g) as detailed below:

**155 Washington Street -**
2018 – No Rent Roll Received
2019 – No Rent Roll Received
2020 – No Rent Roll Received
2021 – Rent Roll Received
2022 – Rent Roll Received
2023 – Rent Roll Received

**100 Warren Street –**
2018 – No Rent Roll Received
2019 – No Rent Roll Received
2020 – No Rent Roll Received
2021 – Rent Roll Received
2022 – Rent Roll Received
2023 – Rent Roll Received

In connection with the Board's Determination, the Bureau must calculate the legal base rent for the units of Portside Towers. Due to the Property Owner's failure to provide the Bureau with copies of their rent rolls, or base monthly rents, during the above-referenced registration periods, the Bureau does not recognize any increases imposed or collected from the tenants residing at the properties during those times.

Re: Portside Towers – Tenant Inquiry
March 19, 2023
Page 3

In the Bureaus request for additional proofs for submission, you were also made aware that in response to the COVID-19 Public Health Emergency, the City Council unanimously passed Rent Freeze Ordinance 20-100 which prohibited landlords from imposing or collecting rental increases from tenants in rent controlled properties from May 15, 2020 to September 15, 2021. New Jersey State law requires that landlords provide tenants with a minimum thirty (30) days' notice prior to collecting any increase. With proper notice, the soonest the Landlord could have collected an increase from the Tenant following the increase provided by the Superior Court as well as the expiry of the Rent Freeze Ordinance would have been on November 1, 2021. As the Property Owner filed their Registration Statements during the 2021 registration period, an increase can be applied to each units Base Rent; however, the Property Owner was not entitled to collect an increase from their tenants while the Rent Freeze Ordinance was in effect.

As such, since the requested proofs are currently being reviewed and the appropriate base rents have yet to be established, the rents imposed on the tenants during the 2023 (or earlier) lease term are no longer the legal base rents upon which Equity Residential is permitted to apply an increase to in accordance with the provisions of the Ordinance. Therefore, any increase in rent applied to t that of which was paid by the tenant from 2023 (or earlier) may violate Chapter 260 of the Jersey City Municipal Code.

Please be reminded that pursuant to § 260-17, a violation of any provisions of Chapter 260 is punishable by a fine of up to two thousand dollars ($2,000.00) and/or imprisonment for a period of up to ninety (90) days and/or a period of community service not exceeding ninety (90) days. A violation affecting more than one tenant shall be considered a separate violation as to each tenant.


Shyrone Richardson
Rent Leveling Administrator
Director of Division of Housing Preservation