# EXHIBIT M

➕ Positive
As of: April 18, 2024 11:06 PM Z

# *King Pharms., Inc. v. Sandoz, Inc.*

United States District Court for the District of New Jersey

May 17, 2010, Decided; May 17, 2010, Filed

Civil Action No. 08-5974 (GEB-DEA)

**Reporter**
2010 U.S. Dist. LEXIS 48385 *; 2010 WL 1957640

KING PHARMACEUTICALS, INC.; KING PHARMACEUTICALS RESEARCH AND DEVELOPMENT, INC.; and PHARMACEUTICAL IP HOLDING, INC., Plaintiffs, v. SANDOZ, INC, Defendant.

**Notice:** NOT FOR PUBLICATION

**Subsequent History:** Motion denied by *King Pharms., Inc. v. Sandoz, Inc., 2010 U.S. Dist. LEXIS 50163 (D.N.J., May 19, 2010)*

**Prior History:** *King Pharms., Inc. v. Sandoz, Inc., 2010 U.S. Dist. LEXIS 27274 (D.N.J., Mar. 22, 2010)*

# Core Terms

metaxalone, argues, patent, irreparable harm, infringement, informing, generic, inducer, invalidity, metabolism, inhibitor, substrate, label, enzymes, patient, public interest, cytochrome, preliminary injunction, market share, Pharmaceuticals, isozymes, merits, rights, drugs, substantial question, medical care, prior art, damages

**Counsel:** [*1] For **KING PHARMACEUTICALS, INC., KING PHARMACEUTICALS RESEARCH AND DEVELOPMENT, INC., PHARMACEUTICAL IP HOLDING, INC., Plaintiffs: CHARLES MICHAEL LIZZA,** *LEAD ATTORNEY,* **WILLIAM C. BATON,** SAUL EWING, LLP, NEWARK, NJ.

For **SANDOZ INC., Defendant: CHRISTINA LYNN SAVERIANO, ERIC I. ABRAHAM,** *LEAD ATTORNEYS,* HILL WALLACK, LLP, PRINCETON, NJ.

For **SANDOZ INC., Counter Claimant: ERIC I. ABRAHAM,** *LEAD ATTORNEY,* HILL WALLACK, LLP, PRINCETON, NJ.

**Judges:** GARRETT E. BROWN, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** GARRETT E. BROWN, JR.

# Opinion

## MEMORANDUM OPINION

### BROWN, Chief Judge

This matter comes before the Court on April 1, 2010 upon the application for a emergency relief pursuant to *FED. R. CIV. P. 65* and *L. CIV. R. 65.1* by Plaintiffs King Pharmaceuticals, Inc.; King Pharmaceuticals Research and Development, Inc. (collectively "King") and Pharmaceutical IP Holding, Inc. ("Pharmaceutical IP"), seeking a preliminary injunction against Defendant Sandoz, Inc. ("Sandoz"), enjoining Sandoz from engaging in the use, offer to sell, or sale within the United States of, or importing into the United States, its generic metaxalone product pending a resolution on the merits of the action.

## I. BACKGROUND

This Hatch-Waxman patent litigation [*2] began on December 5, 2008 when King filed a complaint alleging that Sandoz filed an ANDA pursuant to the Federal Food, Drug and Cosmetic Act seeking approval to engage in the commercial manufacture, use, sale, or importation of 800mg metaxalone tablets that are allegedly covered by King's patent, U.S. Patent No. 7,122,566 ("the '566 patent"). (Compl. at P 13; Doc. No. 1.) On March 30, 2010, Sandoz received FDA approval to market their generic metaxalone product and attempted an at-risk launch. The Court entered a temporary restraining order ("TRO") on April 1, 2010 to preserve the status quo until this hearing. On April 6, 2010, the TRO was modified to allow Sandoz to manufacture its generic metaxalone. The modification

Mohamed Hegazi

also contained a self-destruct clause, wherein the TRO would immediately dissolve if Corepharma, King's authorized generic manufacturer, launched a generic metaxalone into the marketplace. On April 9, 2010, this occurred and the TRO dissolved. This immediately gave Sandoz the right enter the metaxalone market. Corepharma has since been enjoined from selling their generic metaxalone, but Sandoz remains on the market.

## II. DISCUSSION

### A. Standard of Review

A preliminary injunction **[*3]** is "a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993)*. In order to obtain the extraordinary relief of a prelminary injunction, plaintiffs must establish: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *See, Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1375-76 (Fed. Cir. 2009)*.

### 1. Likelihood of Success on the Merits

"[T]he patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Id. at 1376*. To defeat plaintiffs' motion, Sandoz need not prove non-infringement or invalidity; Sandoz merely needs to "raise[] a substantial question concerning either infringement or invalidity, i.e., assert[] an infringement or invalidity defense that [Plaintiffs] cannot prove 'lacks substantial merit . . . .'" *Amazon.com, Inc. v. BarnesandNoble.com, Inc., 239 F.3d 1343, 1350-51 (Fed. Cir. 2001)*; **[*4]** *see also New England Braiding v. A.W. Chesterton Co., 970 F.2d 878, 882-83 (Fed. Cir. 1992)* ("The district court cannot be held to have erred . . . where the evidence presented in support of invalidity raises a substantial question, although the defense may not be entirely fleshed out.")

Sandoz has advanced three arguments for patent invalidity: (1) anticipation under *35 U.S.C. § 102(b)*; (2) obviousness under *35 U.S.C. § 103(a)*; (3) lack of utility under *35 U.S.C. § 101*. (Def.'s Br. in Opp. at 28, 32, 35; Doc. No. 79.) Sandoz also argues that it does not infringe the '566 patent. (*Id.* at 37.)

*a. Invalidity Arguments*

Sandoz first argues that claims 5, 7, and 15 of the '566 patent are invalid because they are anticipated under *35 U.S.C. § 102(b)* by inherency. (*Id.* at 29.) The discovery of inherent results, regardless of how useful, is not patentable. *Parker v. Flook, 437 U.S. 584, 594, 98 S. Ct. 2522, 57 L. Ed. 2d 451 (1978)* ("[T]he discovery of . . . a phenomenon [of nature] cannot support a patent unless there is some other inventive concept in its application.") Claim 5 comprises two steps, namely "providing" a patient with metaxalone and "informing the patient or a medical care worker" about how metaxalone affects a **[*5]** particular enzyme in the human body. It is undisputed that the first step, providing a patient with metaxalone, has been successfully accomplished since the FDA approved metaxalone in 1962. Sandoz argues that the second step of claim 5 is an inherent result of taking metaxalone, as the same enzymes have metabolized metaxalone since it has been existence. Defendant argues that "to the extent [metaxalone] was administered with other substances that are substrates, inhibitors or inducers of the same enzymes, the biological effect, if any, resulting from such co-administration has always occurred." (*Id.*)

King argues that Sandoz fails to identify a single prior art reference that discloses each and every element of the claimed invention. (Pls.' Reply Br. at 2; Doc. No. 98.) This is necessary for a patent to be anticipated under *102(b)*. *Linear Tech. Corp. v. Int'l Trade Comm'n, 566 F.3d 1049, 1066*. King further notes that Sandoz's anticipation defense appears to be directed towards the metabolism of Skelaxin - which is different from the claimed invention in the '566 patent. Plaintiffs argue that no "informing" step is disclosed in the prior art, and notes that the PTO granted the patent **[*6]** and explicitly acknowledged that the "informing" step rendered the claims patentable over prior uses of metaxalone.

Sandoz next argues that the '566 patent is invalid for obviousness under *35 U.S.C. § 103(a)*. It argues that claims 5, 7, and 15 are obvious from prior art that is admitted in the '566 patent or the 2003 Physician's Desk Reference, in combination with the *1999 FDA Guidance.* (Def.'s Br. in Opp. at 32; Doc. No. 79.) Sandoz argues that the *1999 FDA Guidance* recognized the desirability of testing drugs to determine if they are inhibitors, inducers and/or substrates of cytochrome p450 isozymes for the purpose of evaluating the risks of drug-drug interactions mediated by such isozymes, and moreover that the prior art taught that only a limited number of p450 isozymes were responsible for drug

Mohamed Hegazi

metabolism. (*Id.* at 33.) Sandoz reaches the conclusion that it would have been obvious for a person of ordinary skill to use the known techniques to test metaxalone to determine which of the limited number of p450 enzymes involved in drug metabolism were responsible for metabolizing metaxalone and which p450 enzymes are induced and inhibited by metaxalone. Further, Sandoz argues that it **[*7]** would have been equally obvious to inform patients and/or medical care workers of such results. (*Id.*)

King argues that the 1999 FDA Guidance does not render the '566 patent obvious, because a suggestion to do a study does not render the results of that study nor the use of those study results obvious. (Pls.' Br. at 7; Doc. No. 98.) King notes that the Federal Circuit has rejected obviousness arguments in a similar case, *Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1343 (Fed. Cir. 2008)*, in which the court noted that "knowledge of the goal does not render its achievement obvious." *Id. at 1352*. King also argues that Sandoz never shows that each element of each of the asserted claims is disclosed in some combination of the prior art, as is customary when arguing obviousness. (Pls.' Br. at 9-10; Doc. No. 98.)

Sandoz next argues that the '566 patent is invalid under *35 U.S.C. § 101* because the method that it claims is not "useful." It argues that "the '566 patent simply claims the results of *in vitro* tests carried out by plaintiff Pharma IP's affiliate, Mutual Pharmaceuticals, in response to the FDA's general call to the industry to conduct *in vitro* testing of drugs to verify whether or not **[*8]** they are substrates, inducers, or inhibitors of the p450 isozymes known to be involved in drug metablolism." (Def.'s Br. in Opp. at 36; Doc. No. 79.)

King argues that this is an improper conflation of *§ 101* and *§ 102* by applying the utility standards to individual elements of the asserted claims. (Pls.' Br. at 5; Doc. No. 98.) King notes that the Federal Circuit, in *Bilski,* [1] noted that:

> [T]he [Supreme] Court has made clear that it is inappropriate to determine the patent-eligibility of a claim as a whole based on whether selected limitations constitute patent-eligible subject matter. .

---

[1] The Court is aware that *Bilski* was argued before the Supreme Court, and a written opinion will be issued at some point in the future. However, the Court will continue to apply the current law of patent-eligible subject matter until that opinion is filed.

. . [I]t is irrelevant that any individual step or limitation . . . by itself would be unpatentable under *§ 101*.

*In re Bilski, 545 F.3d 943, 958 (Fed. Cir. 2008)* (*en banc*). King also responds to Sandoz's argument that claim 5 of the '566 patent is not transformative by noting that "[C]laims to methods of treatment . . . are always transformative when a defined group of drugs is administered to the body to ameliorate the effects of an undesired condition." *Prometheus Labs., Inc. v. Mayo Collaborative Servs., 581 F.3d 1336, 1346 (Fed. Cir. 2009)*. King also argues that "the information provided by the informing **[*9]** step therefore changes the course of treatment, and is transformative for this additional reason." (Pls.' Br. at 6; Doc. No. 98.)

The Court concludes that Sandoz's invalidity arguments raise a substantial question regarding the validity of the '566 patent.

*b. Noninfringement Argument*

Sandoz next argues that it does not infringe the '566 patent, or more specifically that King has failed to show that the the '566 patent is infringed. (Def.'s Br. in Opp. at 37; Doc. No. 79.) King's infringement allegations are based on information found on Sandoz's label for its generic metaxalone product. Sandoz argues that this label does not infringe the '566 patent because there is not any information on it with regard to the p450 activity of any substance other than metaxalone, and that there is also no information on it with information about possible p450-mediated interactions between metaxalone and another substance, and such information is required **[*10]** by each of claims 5, 7, and 15. The only information on Sandoz's label concerning cytochrome p450 isozymes reads as follows:

> **Distribution, Metabolism, and Excretion**
> ….
> Hepatic Cytochrome P450 enzymes play a role in the metabolism of metaxalone. Specifically, CYP1A2, CYP2D6, CYP2E1, and CYP3A4 and, to a lesser extent, CYP2C8, CYP2C9, and CYP2C19 appear to metabolize metaxalone.
>
> Metaxalone does not significantly inhibit major CYP enzymes such as CYP1A2, CYP2A6, CYP2B6, CYP2C8, CYP2C9, CYP2C19, CYP2D6, CYP2E1, and CYP3A4. Metaxalone does not significantly induce major CYP enzymes such as CYP1A2, CYP2B6, and CYP3A4 *in vitro.*

Sandoz states that this label nowhere identifies any

substance, other than metaxalone, as a substrate, inhibitor or inducer of CYP1A2 or CYP2C19 as allegedly required by claim 5, and therefore also does not inform that any such substance can affect plasma concentration, safety, efficacy or any combination thereof of metaxalone, the substance, or both, as a consequence of p450-mediated activity.

In its opening brief, King made its infringement allegations based on "Sandoz's ANDA Products," but did not make any infringement arguments based on Sandoz's label. (King's Br. at **[\*11]** 10; Doc. No. 73.) King's reply brief goes into further detail, noting that Sandoz's reading of the claims require the "informing" step to be comprised of four distinct pieces of information:

(1) that metaxalone is metabolized by cytochrome p450;
(2) that a substance other than metaxalone is a substrate, inhibitor, or inducer of CYP1A2 or CYP2C19;
(3) that metaxalone's effect on the "substance" is a consequence of cytochrome "p450-mediated" activity; and
(4) that a substance that is a substrate, inhibitor, or inducer of cytochrome p450 can affect plasma concentration, safety, efficacy, or any combination thereof of metaxalone, the substance, or both as a consequence of p450 mediated activity.

The language of Claim 5, combined with this Court's prior *Markman* ruling, requires informing a patient or medical care worker that a cytochrome p450 isozyme metabolizing metaxalone is CYP1A2 or CYP2C19. King argues that the language of claim 5 also requires informing the patient or medical care worker that a substance having certain characteristics (*i.e.,* that it is a substrate, inhibitor, or inducer of CYP1A2 or CYP2C19) can affect plasma concentration, safety, or efficacy of metaxalone and/or the **[\*12]** substance. King argues that Claim 5 does not require informing patients or medical care workers that a substance other than metaxalone is a substrate, inhibitor or inducer of CYP1A2 or CYP2C19. (Pls.' Br. at 16-17; Doc. No. 98.)

The Court concludes that Sandoz's noninfringement argument raises a substantial question as to whether their metaxalone label contains all of the features of claim 5 of the '566 patent. Sandoz's label does not identify any other substance other than metaxalone, which appears to be required by claim 5. The relevant portion of claim 5 reads: "informing the patient . . . that administration of metaxalone and a substance that is a

substrate, inhibitor, or inducer of CYP1A2 or CYP2C19 can affect plasma concentration, safety, efficacy or any combination thereof of metaxalone, the substance, or both." '566 Patent, 65:1-9. To infringe this claim, Sandoz's label would have to inform someone about administration of metaxalone <u>and a substance.</u> Sandoz's label does not speak to other substances besides metaxalone, or their relative interactions. Therefore, the Court concludes that Sandoz has raised a "substantial question" regarding patent validity and infringement to defeat **[\*13]** a preliminary injunction.

*2. Irreparable Harm*

Plaintiffs must provide a "clear showing" that it will suffer irreparable harm in the absence of injunctive relief. *Nutrition 21 v. United States, 930 F.2d 867, 870-71 (Fed. Cir. 1991)*. Irreparable harm must be established as a separate element, independent of any showing of likelihood of success; irreparable harm can no longer be presumed. *Winter v. Natural Resources Defense Counsel, Inc., 129 S. Ct. 365, 375-76, 172 L. Ed. 2d 249 (2008)*; *eBay Inc. v. MercExchange L.L.C., 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)*. King originally argued that money damages would not make it whole because a launch of a generic metaxalone product would bring a sharp downward pressure on the price of the drug and cause King to lose market share. (Pl.'s Br. at 18; Doc. No. 73.)

Sandoz argues that there is no irreparable harm because money damages would fully compensate plaintiffs. (Def.'s Br. at 44; Doc. No. 79.) Although King's expert asserted that King's damages would be "extremely difficult to estimate" (Hausman Dec. P 21), he gives no reason why these damages are more difficult to estimate or calculate than in any other patent case. Sandoz surmises that lost profits are routinely teased out of past **[\*14]** and contemporaneous price, quantity, market share and cost data using techniques that are adopted by almost all industry participants. "[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial." *Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed. Cir. 1991)*.

In cases where the presumption if irreparable harm is not available (either because there was no strong showing of likelihood on the merits or the case was decided *post-Winter*), courts have routinely decided that market share and price erosion do not amount to

Mohamed Hegazi

irreparable harm. *Nutrition 21, 930 F.2d at 871 (Fed. Cir. 1991)*; *Eli Lilly v. American Cyanamid Co., 82 F.3d 1568, 1578 (Fed. Cir. 1996)* ("Such a rule would convert the 'extraordinary' relief of a preliminary injunction into a standard remedy available whenever the plaintiff has shown a likelihood of success on the merits."); *See also Altana Pharma AG v. Teva Pharmaceuticals USA, Inc., 532 F. Supp. 2d 666, 682 (D.N.J. 2007)* (finding plaintiffs have not established irreparable harm despite contending "loss of revenue, **[*15]** price erosion, decrease in market share, loss of research opportunities, [and] reduction in workforce"), *aff'd 566 F.3d 999 (Fed. Cir. 2009)*; *Novartis v. Teva, 2007 U.S. Dist. LEXIS 42163, 2007 WL 1695689, at *26-28 (D.N.J. June 11, 2007)* (finding that plaintiff failed to establish irreparable harm because damages were calculable, Teva had the ability to pay any damages award, and the possibility of loss of market share, price erosion and lost research opportunities do not constitute irreparable harm); *In re Gabapentin Patent Litigation,* Nos. 00-2931, 01-1537 (D.N.J. Aug. 20, 2004 (JCL)), Transcript at pp. 12-14 ("Loss of market share, or price erosion, lost sales, and even lost market opportunities in my view can be reduced to dollars, not easily but feasibly." (quoted in *Altana, 532 F. Supp. 2d at 683-84*.)

Further, the Court is skeptical of King's irreparable harm argument because of the expedited trial schedule in this case. A trial on the merits is currently scheduled to begin on July 6, 2010, less than two months from the entry of this memorandum opinion. Any changes in the market caused over this short period of time should be even easier to estimate and calculate, if necessary, after a full trial on liability. **[*16]** For these reasons, the Court concludes that King has not made the requisite showing of irreparable harm.

*3. Balancing the Equities*

King argues that the Sandoz will suffer minimal loss if their generic sales are enjoined, because if Sandoz will later prevail at trial then it will be able to "shift" the sales that would be made right now until after trial. (Pl.'s Br. at 21.) However, King fails to mention the 180-day exclusivity period that Sandoz currently enjoys under the provisions of the Hatch-Waxman Act. Sandoz's exclusivity began to run on March 31, 2010, and will continue to run even if Sandoz is enjoined. Thus, since both parties would be deprived of lawful monopolies - King of their patent rights and Sandoz of their 180-day exclusivity, the Court concludes that this factor favors neither party.

*4. The Public Interest*

The two competing public interests here are the public interest in patent rights (argued by King) and the public interest in low priced generic drugs (argued by Sandoz). "The public has an interest in upholding and preserving patent rights." *Solarex Corp. v. Advanced Photovoltaic Sys., Inc.,* 34 U.S.P.Q.2d 1234, 1241 (D. Del. 1995). Although the public has an interest **[*17]** in lower prices, that interest is "strongly outweighed by the public policy of enforcing new patent rights and encouraging inventors to develop new products." *A.K. Stamping Co. v. Instrument Specialties Co.,* 106 F. Supp. 2d 627, 656 (D.N.J. 2000). "[W]hile the statutory framework under which [Defendant] filed its ANDA does seek to make low cost generic drugs available to the public, it does not do so by entirely eliminating the exclusionary rights conveyed by pharmaceutical patents." *Pfizer, Inc. v. Teva Pharms. USA, Inc., 429 F.3d 1364, 1382 (Fed. Cir. 2005)*. The Court concludes that the public interest in protecting patent rights outweighs the public interest in low cost generic drugs, and thus this factor favors King.

## III. CONCLUSION

For the reasons stated herein, the Court will deny King's motion for preliminary injunction. An appropriate form of order is filed herewith.

Dated: May 17, 2010

/s/ Garrett E. Brown, Jr.

GARRETT E. BROWN, JR., U.S.D.J.

---

**End of Document**

Mohamed Hegazi