

*Derek Reed | Partner*
direct:  (973) 854-6710
dreed@EPGPRlaw.com

April 30, 2024

<u>**Via ECF**</u>
Honorable Madeline Cox Arleo
Honorable José R. Almonte
U.S. District Court for the District of New Jersey
Mitchell H. Cohen Building
4th & Cooper Streets, Room 2010
Camden, NJ 08101

> **Re:**    ***The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC, v. The City of Jersey City and the City of Jersey City Rent Leveling Board*, Case No: 2:23-cv-22291-MCA-JRA**

Dear Judge Arleo and Magistrate Judge Almonte:

We represent Plaintiffs (collectively, "Portside") in this matter.  Portside submits this letter to propose an orderly process for handling motions seeking preliminary injunctive relief in this case, including the recent motion filed by certain tenants and associations of tenants (the "Tenants") that have sought to intervene in this case.  (*See* Dkt. 34-1.)

The Tenants' motion is unusual in that the Court has not yet ruled on the Tenants' pending motion to intervene.  (Dkt. 30).  Portside filed a response to the Tenants' motion to intervene that did not oppose the Tenants' intervention as plaintiffs in this case (their proposed complaint contains one count alleged against Portside) but did oppose their suggestion to amend or bifurcate the case schedule the Court recently entered.  (Dkt. 32.)  Portside recognizes that those issues are presently pending before Judge Almonte.

Portside opposes the Tenants' motion for preliminary injunctive relief, but, Portside agrees that it would be appropriate for the Court to enter an order preserving the status quo pending the Court's resolution of challenges to the Jersey City rent control decision at issue in this case. Because of that decision and questions surrounding its legal basis and how it will be implemented, Portside, its residents, and Jersey City face uncertainties and needless risks, including with respect to the amount of rent that may be assessed and must be paid during the pendency of this action. Indeed, the necessity for a status quo order is heightened because Jersey City officials recently threatened to impose criminal penalties against Portside and its employees if they are found to

Please direct replies to:
60 Park Place, Suite 1016, Newark, NJ 07102
Tel: (973) 643-0040 • Fax: (973) 596-1781 • www.EPGPRlaw.com

NEWARK    •    NEW YORK    •    MORRISTOWN

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

April 30, 2024
Page 2

have charged rent higher than permitted under the city's ordinance.  The City made that threat even though the City's administrators have yet to determine the amount that the City contends is the correct level of base rent.  As Portside has already informed the City, any criminal prosecution under these circumstances would violate the Due Process Clause.  *See, e.g.*, *Johnson v. United States*, 576 U.S. 591, 602 (2015) (noting that a "law prohibiting grocers from charging an 'unjust or unreasonable rate,'" without stating what the rate ceiling was, violated Due Process Clause) (citing *United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921)).

Portside has already taken voluntary steps to preserve the status quo during the pendency of this proceeding.  In their motion, the Tenants erroneously assert that Portside, after the Rent Leveling Board's decision, raised rents for certain residents above the 4% or CPI rent control cap and may pursue evictions for residents who question or withhold their rents.  (Dkt. 34-1 at 1-3, 8-13.)  Neither assertion is true. As Portside has already communicated to the City and residents, since the Board's decision, Portside has capped rent increases consistent with the City's rent control ordinance, while preserving all the tenants' rights and claims to an even lower rent.  For the tower at 100 Warren, Portside has capped rent increases in line with the ordinance at all times since September 19, 2022.  For the tower at 155 Washington, Portside has agreed to cap the increase at 4% or CPI, whichever is lesser, as is permitted under the ordinance, and has provided a credit for any payment in excess of that amount that was made since the Board's November 3, 2023, decision.  Moreover, while this litigation is pending, Portside has elected to not pursue evictions for any tenant at Portside in relation to a dispute over the amount of rent and, as the Tenants note, has unilaterally dismissed any pending eviction for the non-payment of rent.

Consistent with those steps that Portside has already taken voluntarily, Portside submits that an appropriate framework for preserving the status quo is as follows:

a)  Portside residents should continue to pay the rents they paid in November 2023, plus the rent control increase permitted under the ordinance (4% or CPI, whichever is less).

b)  Portside will place into escrow the difference between the paid rent (with the 4% increase) and the rent that was in effect before the increase.  Those monies would be released in accordance with this Court's determination on the merits.

c)  Portside will not pursue evictions based on non-payment of rent as long as residents pay the rent identified in (1) and otherwise comply with the terms of the lease and the law.

d)  Portside will forego seeking from the residents any rent increases in excess of the 4% increase until the matter is resolved by the Court, but reserves the right to seek lost rent in excess of that amount as damages from the City.

e)  This status quo will remain in effect until this Court resolves the case on the merits and will not be modified on account of any Board or Bureau decision, except that following

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

April 30, 2024
Page 3

any Board or Bureau decision, Tenants may seek to require Portside to deposit into escrow the difference between rents collected (with the 4% increase) and any lesser rent amount that the Board or Bureau determines appropriate.

Prior to sending this letter, Portside offered the same terms to the Tenants in order to reach an agreement.  Though Portside has yet to hear a response from the Tenants, Portside remains committed to pursuing an agreement with the Tenants and the City that preserves the status quo and obviates the need for motions for preliminary injunctive relief.

If the parties are unable to negotiate an agreed order preserving the status quo, Portside would plan to present its position in a response to the Tenants' motion and in a potential accompanying cross-motion.  Portside notes that, on April 22, 2024, the Court generated an automated entry in response to the Tenants' motion for preliminary injunctive relief that set the hearing date on that motion for May 20, 2024.  Accordingly, we assume the dates for a response to that motion is May 6 and reply is May 13 pursuant to the Local Rules.

Portside will meet the above dates if necessary, but, given the threshold issue of intervention and the fact that Portside intends to file a cross-motion, Portside respectfully suggests the following briefing schedule:

| | |
|---|---|
| May 13, 2024: | Responses to Tenants' motion and Portside's cross-motion for relief; |
| May 28, 2024: | Reply in support of Tenants' motion and Tenants' response to Portside's cross-motion; and |
| June 4, 2024: | Reply in support of Portside's cross-motion. |

We appreciate the Court's assistance and stand ready should the Court require anything further.

Respectfully submitted,

Derek D. Reed, Esq.

*Attorney for Plaintiffs the Towers at*
*Portside Urban Renewal Company L.L.C.*
*and Equity Residential Management, L.L.C.*

cc: All Counsel of Record