# EXHIBIT 3



*Derek Reed | Partner*
direct: (973) 854-6710
dreed@EPGPRlaw.com

February 7, 2024

**Via Email (seang@jcnj.org)**
**City of Jersey City Municipal Council**
**City Hall**
**280 Grove Street**
**Jersey City, NJ 07305**

>        Re:    **January 23, 2024, Correspondence to the Council - Portside Towers**

Dear Councilmembers:

As you are aware, we represent Equity Residential Management and The Towers at Portside Urban Renewal Company (together, "Equity Residential"). We are in receipt of the January 23, 2024 letter submitted by Neil Marotta, Esq., and offer this correspondence to correct several incorrect statements and personal opinions in that letter, which Mr. Marotta characterized as "contrary facts." While we think the parties are best served by directing their arguments to the appropriate judicial forum, rather than the Council, we are compelled to correct several incorrect assertions. We respectfully submit that the true state of facts shows that Equity Residential is working in good faith to address the Board's decision and the Bureau's requests, while reserving its legal rights, as it is entitled to do.

As an initial matter, contrary to Mr. Marotta's representation, no increase of 40% has been issued to any resident since the Board's decision. First, it cannot be disputed that Equity Residential has agreed to operate the Tower at 100 Warren as under rent control since September 19, 2022, consistent with the initial determination of Ms. Dinah Hendon, who, after a thorough investigation determined that both Towers qualified for the 30-year exemption to rent control, but that the exemption for 100 Warren had lapsed.

Second, as we stated in our January 19, 2024 letter to the Council, to the extent Equity Residential sent a notice of a rent increase of more than 4% to any resident in the Tower located at 155 Washington since the Board's decision (and none was near 40%), Equity Residential will cap the increase at 4% and credit past payments under that post-decision lease in excess of 4% to the resident's account, with a full reservation of rights.

Similarly, Mr. Marotta's statement that Equity Residential is prohibited from agreeing to rent amounts with tenants, including any amounts with rent increases, until the Bureau has finished its calculations is also untrue and impractical. The Board determined that any rent adjustment shall be determined by the Bureau, and the Bureau has not made any determination as to the amount of any adjustment. In addition, Corporation Counsel expressly advised the Council during its January 10, 2024, meeting that four percent (4%) increases are permissible.

Please direct replies to:
60 Park Place, Suite 1016, Newark, NJ 07102
Tel: (973) 643-0040 • Fax: (973) 596-1781 • www.EPGPRlaw.com

NEWARK        •        NEW YORK        •        MORRISTOWN

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

February 7, 2024
Page 2

Mr. Marotta also asserts that Equity Residential has failed to provide the Bureau with all information necessary to perform the calculations required by the Board's decision. This is simply not true. We have provided all the information requested by the Bureau to date.  Since we provided the complete information requested by the Bureau well in advance of the deadline it set, it has not contacted us to seek additional information or input.  To the extent that Mr. Marotta or his clients have complaints about the years the Bureau requested Equity Residential to provide responsive information, it is unfair to direct those complaints against Equity Residential.  Notably, to the extent the Bureau seeks information relating to 2016, with the same reservation of rights, we are prepared to promptly provide those documents and information. We also have offered, and continue to offer, our assistance in performing calculations as directed by the Board, despite our legal challenges to the Board's decision.

Mr. Marotta's statements regarding the two-year limitations period provided for in the Jersey City Ordinance ("Ordinance") are not correct.  As an initial matter, to the extent the Towers were not exempted from the City's Ordinance as Mr. Marotta and his clients contend, under that Ordinance, there are two separate applicable limitation provisions that limit the ability of Mr. Marotta and the tenants to seek a windfall.  Section 260-7(C) provides a strict two-year limitations period and does not contain any exemption or waiver to that limitation.  No party has offered any explanation at any point as to why the Bureau must not comply with the express limitations language set forth in Section 260-7(C).  Separately, Section 260-7(D) provides that, where a tenant agrees to rent increases for two consecutive years, those increases are "deemed accepted."  Mr. Marotta argues that Equity Residential "waived" this provision by failing to comply with the requirement to provide tenants with rental statements as set forth in Section 260-1 of the Ordinance.  That is not true.  Equity Residential has served rental statements in compliance with the law, and the Board did not determine differently.

Equity Residential invested in these buildings on the express understanding that they were exempt from rent control, and every resident to move in – at least prior to late 2022 – also expressly understood and were notified that the buildings were exempt from rent control.   Moreover, the residents expressly agreed in writing to pay market rents.  Any retroactive disallowance of rent control would be fundamentally unfair and unconstitutional, and would result in a windfall.

It is unfair for Mr. Marotta to say that Equity Residential "is not a good landlord."  Inflammatory rhetoric – often repeated at City Council meetings – like this is not only false, but also counterproductive to the orderly resolution of the issues.  Equity Residential invested in these Towers to bring them to the residential market at a time when no one else was willing to do so.  It has further invested in them over the years, while not passing through many of the costs of increases in taxes and other costs that it would have been entitled to pass through to tenants over the past nearly 30 years.  The City directly benefitted from the taxes that Equity Residential paid under the PILOT agreement, including at a higher economic amount because the City and the tenants all understood that the Towers were not subject to rent control.  What Equity Residential now faces is, as a Portside tenant put it, "hav[ing] luxury apartments in Jersey City at rates that are half the price now", because a Board, whose Chairperson candidly stated on the record that

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

February 7, 2024
Page 3

"this [rent control dispute] is so complex this is way beyond our comprehension", abruptly, without any indication there was a careful review of the parties' submissions that were accompanied by thousands of pages of documents, overturned the well-reasoned, thorough determinations of the City's own experienced Rent Leveling Administrator and attorney, in Ms. Hendon.   Notwithstanding its disagreements and challenges to the Board's decision, Equity Residential has fully complied with all informational requests made by the Bureau and is committed to complying with the percentage increase restrictions of the Jersey City Ordinance until contrary court order, decision of the Board, or agreement among the parties.  Despite unfounded allegations to the contrary, our clients' conduct is fully consistent with the Board's decision and the legal guidance offered to the Council by the City's Corporation Counsel.

Moreover, the Board's rejection of the experienced Jersey City Office of Landlord/Tenant Relations Rent Leveling Administrator's thorough, well-reasoned rulings is wrong as a matter of state and local law.  It also violated our clients' constitutional rights under the New Jersey and US constitutions.  As an initial matter, independent of the City's Ordinance, upon which the Board relies, New Jersey state law exempts the Towers from rent control.  State law expressly provides that "[i]n any municipality that has enacted...a rent control ordinance...those provisions of the ordinance which limit...increases in base rental **shall not** apply to multiple dwellings constructed after [June 25, 1987] for a period...30 years following completion of construction...."  NJ Rev. Stat. Section 2a:42-84.2 (emphasis added).  This state law (the "Exemption Statute") further expressly provides that "[n]o municipality...or agency or instrumentality thereof, shall adopt any ordinance, resolution, or rule or regulation or take any other action to limit, diminish, alter or impair [this exemption]."  Because both Towers were constructed after June 25, 1987, they are exempt from local rent control, regardless of whether they are also exempt under the terms of the local rent control ordinance, which we believe they also are exempt from consistent with the Rent Leveling Administrator's determinations.  The Board's decision  to the contrary is precisely the type of "action to limit, diminish, alter or impair" the state Exemption Statute expressly prohibits.

The Board's rejection of the Rent Leveling Administrator's rulings that Equity Residential had complied with certain notice provisions in the City's Ordinance is not only illegal under state law, it is both irrelevant and erroneous.  First, it is irrelevant because nothing in the state Exemption Statute indicates that compliance with any state law notice provisions is a condition precedent to obtaining the state law exemption.  To the contrary, the state law exemption language is mandatory ("shall not apply") and does not even refer to the state law notice provisions.  Contrary to the City's Ordinance, the state Exemption Statute conspicuously fails to make compliance with the notice provision a condition precedent to the exemption.  Because the state exemption is not forfeited by a failure to provide notice, that exemption continues to apply and, by its terms, cannot be diminished, altered, or impaired by action of the Board.   Second, even if it were necessary to provide notice as a condition precedent to the state exemption, which it is not, the Rent Leveling Administrator correctly found that Equity Residential sufficiently complied with any notice requirements.  The Rent Leveling Administrator's reasoning and findings on this point are well-reasoned and persuasive.

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

February 7, 2024
Page 4


For all these reasons, we believe the federal court will find the Board's actions were an illegal diminution or impairment of the mandatory state law rent control exemption and, in all events, premised on an irrelevant and erroneous determination on the merits.

In closing, we continue to offer and provide responsive information to the Bureau and offer to assist in any of its forthcoming calculations, and moreover, continue to offer to work with the City's counsel to move Equity Residential's legal challenges to prompt resolution. As explained above, we believe that the federal court will find that the Board acted unfairly and unlawfully in connection with its rejection of Ms. Hendon's thorough, unbiased determinations, and in doing so, will moot the need for the Bureau's calculations. A prompt determination of whether we are correct or wrong in that assessment will bring important clarity for all, and we hope we can cooperate in seeking that prompt resolution.


Very truly yours,

Derek D. Reed, Esq.

Cc: Peter Baker, Esq. (pbaker@jcnj.org)
   Thomas Slattery, Esq.(tslattery@jcnj.org)
   Eric Bernstein, Esq. (embernstein@embalaw.com)
   Neil Marotta, Esq. (mgclawyers@aol.com)