# EXHIBIT 6



***Derek Reed | Partner***
direct:  (973) 854-6710
dreed@EPGPRlaw.com

March 27, 2024

**Via Email (embernstein@embalaw.com)**
**Eric M. Bernstein, Esq.**
**Eric M. Bernstein & Associates, L.L.C.**
**34 Mountain Boulevard, Building A**
**Warren, NJ 07059**

     **Re:**    **Office of Landlord/Tenant Relations – March 19, 2024, Correspondence**

Dear Mr. Bernstein:

As you know we represent Equity Residential Management and The Towers at Portside Urban Renewal Company (together, "Equity Residential").  Last week, on March 19, 2024, Mr. Shyrone Richardson, in his capacity as Rent Leveling Administrator, for your clients, the City of Jersey City and the City of Jersey City Rent Leveling Board, sent correspondence directly to me.  Included herewith please find a copy of Mr. Richardson's letter.

As you will see, in that letter, Mr. Richardson takes a new position on behalf of your clients, and one that is contrary to the direction and guidance previously provided by the City Council and Corporation Counsel.  As it does not appear that you or the Corporation Counsel were copied on Mr. Richardson's correspondence, we want to be sure you are aware of the position Mr. Richardson is taking on behalf of your clients and further discuss it with you.

At the same time, we would like to make sure that Mr. Richardson is aware that Equity Residential has cooperated fully and promptly with all document requests made by the Office of Landlord/Tenant Relations (the "Bureau") since the Rent Leveling Board (the "Board") issued its November 3, 2023 decision (the "Decision"), including the production of rent rolls from 2017-2023 for both buildings on January 11, 2024 to your office, which contradicts Mr. Richardson's allegation that our clients did not produce rent rolls from 2018-2020 for either building.  Despite strong disagreement with the Decision, our client has continued to fully cooperate with the process, including we have engaged in productive conversations with your office and Equity Residential has produced thousands of documents.  It also recently has further cooperated with your office to promptly address requested redactions to those documents to protect tenant information, which are being sent

Please direct replies to:
60 Park Place, Suite 1016, Newark, NJ 07102
Tel: (973) 643-0040 • Fax: (973) 596-1781 • www.EPGPRlaw.com

NEWARK   •   NEW YORK   •   MORRISTOWN

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

March 27, 2024
Page 2

to you in the near future, and has on every occasion even offered to assist with the calculations that the Bureau will make pursuant to the Decision.

Given the tone of his letter, which does not reflect our client's cooperation and commitments, we can only assume he is not aware of the foregoing information. As you know, but apparently Mr. Richardson does not know, our clients have previously and consistently committed to always complying with the law. They continue to do so.

The legal pronouncements and directives of Mr. Richardson's letter are confusing and make compliance difficult, as they are inconsistent with the pronouncements and directives offered by City Council President Watterman and Corporation Counsel during the January 10th meeting of the Jersey City Municipal Council (the "Council"). During that meeting, Corporation Counsel confirmed for the Council that four percent (4%) rent increases are permissible, and that residents would need to bring any alleged violations occurring subsequent to the Decision as new complaints. That exchange went as follows:

**Joyce Watterman:**    Based on what you said, Brittany, they could still increase their rent by at least four percent. If it's over that, then it's more.

**Brittany Murphy:**    Correct they need to file a petition

**Joyce Watterman:**    If it's more than four percent.

**Brittany Murphy:**    Correct. If they're not following it, they need to file an illegal rent petition again.

Equity Residential thereafter directly referenced Corporation Counsel's statements in a February 7, 2024 letter to you (copying others), and has relied upon those statements in its efforts to proceed in manner consistent with that direction and guidance including with respect to the Decision, while effecting those increases that are permitted under the Jersey City Rent Leveling Ordinance (the "Ordinance") and preserving all rights and claims. At no time did the City direct Equity Residential to act differently.

We were also very troubled by the threats in Mr. Richardson's letter regarding penalties, fines, and even imprisonment. Those types of threats are counterproductive and contrary to the law. Although we strongly prefer to work through all the issues created by the Decision in a cooperative manner, we are forced to note that threatening to imprison company representatives who are only attempting to comply with the Board's and the City's inconsistent directives raises serious legal and constitutional issues. Threatening to impose significant penalties, including incarceration, without identifying the rents that, in the Bureau's view, can be charged to avoid such penalties creates an impossible situation for Equity Residential. It is wholly unfair to threaten to punish Equity employees, including

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

March 27, 2024
Page 3

New Jersey residents, under Section 260-17 for charging excessively high rent when Equity has not been informed by the City as to what base rent the City asserts that Equity should apply.  (And Equity certainly can't charge $0.)  A "penal statute" must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

We respectfully submit that Mr. Richardson's letter and this course of conduct is contrary to well-settled law and inconsistent with the cooperative approach Equity Residential has followed in dealing with your office.

Mr. Richardson's letter and the City's course of conduct are especially egregious because Mr. Richardson's appointed Board Hearing Officer, Ms. Hendon, determined that Portside was entitled to full exemption.  Please recall that beginning in June 2022, tenants filed petitions with the Office of Landlord/Tenant Relations Bureau of Rent Leveling ("the Bureau") contending Portside Towers is not exempt from Jersey City's rent control Ordinance.  Among other arguments, the tenants argued that Portside could not establish that its predecessor had, decades earlier, sent the notices described in the Exemption Statute.  On September 19, 2022, after receiving briefing and evidence, the Bureau found that Portside Towers properly qualified for the Exemption.  With respect to the notice to tenants described in N.J.S.A. § 2A:42-84.3, the Bureau found that it was "undisputed that the Landlord has met [that] criteria" by sending tenants a "Rent Control addendum" notifying tenants that the buildings are exempt from rent control.  Ex. A, Sept. 19, 2022 Notice of Decision re 155 Washington Street, at 3.

With respect to the notice to the "City Construction Official" described in N.J.S.A. § 2A:42-84.4, the Bureau found that Portside's predecessor had provided the notice for 100 Warren Street by sending the November 23, 1994 letter to Mr. Regan, the Jersey City Construction Code Official.  Ex. B, Sept. 19, 2022 Notice of Decision re 100 Warren Street, at 3.  The tenants argued that the November 23, 1994 letter was too late, because the Exemption Statute calls for a notice "at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling."  N.J.S.A. § 2A:42-84.4.  As noted above, the initial certificate of occupancy for Portside Towers was issued on August 26, 1992.  However, as the Bureau found, Portside Towers was not occupied at that time (it had been planned as condominiums and then fell into a foreclosure proceeding because of economic distress).  It was not until January 24, 1995, after Portside's predecessor purchased the building and adapted it to a rental property, that Portside obtained a certificate of continued occupancy for 100 Warren Street.  The tower was first occupied after that time.  The Bureau found that the November 23, 1994 notice, delivered more than 30 days before the certificate of continued occupancy, was timely.

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

March 27, 2024
Page 4

With respect to 155 Washington, the Bureau found that "no letter to the Construction Code Official . . . has been located but that does not mean that one was not sent." Ex. A at 4. Rather, given the passage of more than twenty years since the construction of the building and "in light of Mr. Regan's December 6, 1994 letter" telling Portside that he did not believe he was the proper recipient of such notices, it was at least "as likely as not" that a notice was sent but not filed. *Id.* at 4. Moreover, the Bureau found that Jersey City had known since the 1990s that Portside Towers was effectively a single development. Because Jersey City had received the 1994 letter regarding 100 Warren Street, and because Portside had made multiple filings indicating that the entire project was exempt, there was no doubt that "the City was aware of this development and the Landlord's claim of exemption." *Id.* at 5. Further, "[f]rom the start, the Tenants residing at 155 Washington have been advised that the building is not subject to rent control." *Id.* The Administrator noted the tenants' arguments that Portside had checked the wrong box regarding rent control on a few registration statements, but found that of no import in light of all of the other circumstances establishing notice to the City and tenants.

For those reasons and others, the Bureau held that both Portside Towers buildings were exempt from rent control. Regarding 155 Washington, the Bureau held that the Exemption applies from December 31, 1997 (the completion of construction) through December 30, 2027. Regarding 100 Warren Street, the Bureau held that the Exemption applies from August 24, 1992 (the completion of construction) through August 24, 2022. Ex. A at 7; Ex. B at 6.

By seeking to use the threat of criminal penalties to strong-arm and coerce a result that the Bureau itself rejected, the City is acting improperly and causing needless damage. Relatedly, we are further troubled by Mr. Richardson's letter and the City's course of conduct because the City has refused to cooperate in seeking an expeditious resolution of this dispute. Further delay – which appears to be the City's objective – will result in further violations by the City of state/local statutory law (which entitles Equity to rent increases) and of the Constitution and will result in increased damages. *See Hutton Park Gardens v. Town Council of Town of W. Orange*, 68 N.J. 543, 569 (N.J. 1975) (noting "the requirement that rent regulation must permit a just and reasonable return").

In light of the above, please advise us whether Mr. Richardson's letter was authorized and represents the position of the City, so that Equity Residential can consider whether to stay further rent increases. Please be advised that Equity Residential reserves all rights against the City of Jersey City and the City of Jersey City Rent Leveling Board with respect to damages it will incur as a result of being required to forego lawful rental increases and will seek same in the pending litigation.

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

March 27, 2024
Page 5

      We continue to hope for a prompt completion of the calculations ordered by the Board on November 3, 2023, and Equity Residential continues to offer assistance to the Bureau in its efforts to comply with the Decision.

      Please share this letter with Mr. Richardson.  Should you, including along with him, wish to discuss the contents of his letter, we would be glad to schedule time to talk. We look forward to your response by April 3, 2024 as to the City's position on Mr. Richardson's letter given the time sensitive nature of this issue

      Please also share it with the City Council.

Very truly yours,

Derek D. Reed, Esq.

Cc: Thomas Slattery, Esq.(tslattery@jcnj.org)
    Neil Marotta, Esq. (mgclawyers@aol.com)
    Brittany Murray, Esq. (bmurray@jcnj.org)