## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
Eric M. Bernstein, Esq. NJ Bar ID # 014001982
Dominic P. DiYanni, Esq. NJ Bar ID No. 041342004
34 Mountain Boulevard, Building A
P.O. Box 4922
Warren, New Jersey 07059-4922
(732) 805-3360; (732) 805-3346 (Facsimile)
Attorneys for Defendants, City of Jersey City and
the City of Jersey City Rent Leveling Board
Our File No. 3236-1001

---

| | |
|---|---|
| THE TOWERS AT PORTSIDE URBAN RENEWAL COMPANY, LLC AND EQUITY RESIDENTIAL MANAGEMENT, LLC, <br><br>     Plaintiffs, <br><br> v. <br><br><br> THE CITY OF JERSEY CITY AND THE CITY OF JERSEY CITY RENT LEVELING BOARD, <br><br>     Defendants. | Civil Action No. 2:23-cv-22291-MCA-JRA |

---

### DEFENDANTS, CITY OF JERSEY CITY AND THE CITY OF JERSEY CITY RENT LEVELING BOARD'S BRIEF IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

---

Eric M. Bernstein, Esquire
ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
34 Mountain Boulevard, Building A
P.O. Box 4922
Warren, New Jersey 07059
(732) 805-3360; (732) 805-3346 Facsimile
Attorneys for Defendants, City of Jersey City and
City of Jersey City Rent Leveling Board

## TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 1

LEGAL STANDARD ................................................................. 2

LEGAL ARGUMENT ................................................................2

    I.    PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF MUST BE DENIED AS THE PLAINTIFFS HAVE FAILED TO ESTABLISH ALL REQUIREMENTS TO OBTAIN SUCH RELIEF FROM THIS COURT...................................................................2

        a.  The Plaintiffs have failed to establish that it is likely to succeed on the merits..................................................................3

        b.  The Plaintiffs will not likely suffer irreparable harm absent the issuance of the injunction................................................10

        c.  The balance of equities and public interest favor enforcement of Defendants' ruling...............................................15

CONCLUSION ................................................................18

i

# TABLE OF AUTHORITIES

**Cases**

Bergen Com. Bank v. Sisler
    157 N.J. 188 (1999)......................................................7, 8

Bubis v. Kassin
    184 N.J. 612 (2005)...........................................................7

Burgos v. State
    222 N.J. 175 (2015)...........................................................7

Cigar Assoc. of Am. V. City of Philadelphia
    2021 WL 5505406 (3d Cir. Nov. 24, 2021)...........................11

Fres-co Sys. USA, Inc. v. Hawkins
    690 F. App'x 72, 75 (3d Cir. 2017)......................................2

Granny Goose Foods, Inc. v. Teamsters
    415 U.S. 423 (1974)..........................................................10

Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.
    582 F.3d 721, 725 (7th Cir. 2009).......................................3

In re Commitment of J.M.B.
    197 N.J. 563 (2009)...........................................................7

Kaczmarek v. N.J. Tpk. Auth.
    77 N.J. 329 (1978).............................................................8

Kimmelman v. Henkels & McCoy, Inc.
    108 N.J. 123 (1987).........................................................7, 8

Los Angeles v. Lyons
    461 U.S. 95 (1983)............................................................10

Mazurek v. Armstrong
    520 U.S. 968 (1997)..........................................................10

ii

O'Shea v. Littleton
    414 U.S. 488 (1974)………………………………………………..10

People ex rel. Dunbar v. First Nat. Bank of Colorado Springs
    356 P.2d 967 (Colo. 1960)…………………………………...…………8

Power Surv., LLC v. Premier Util. Servs., LLC
    61 F. Supp. 3d 477 (D.N.J. 2014)……………………………………15

Schaut v. Joint Sch. Dist. No. 6, Towns of Lena & Little River
    210 N.W. 270 (Wis. 1926)…………………………………...…………8

State v. Rangel
    213 N.J. 500 (2013)…………………………………………………7

State v. S.B.
    230 N.J. 62 (2017)……………..………………………………………7

State v. Twiggs
    233 N.J. 513 (2018)……………………………………………………7

Twp. of Pennsauken v. Schad
    160 N.J. 156 (1999)……………………………………………………7

Willow Ridge Apartments, LLC v. Union City Rent Stabilization Board
    2022 WL 2525243 (July 7, 2022)……………………..……4, 5, 6, 7, 9, 11, 15

Winter v. Natural Resources Defense Council
    555 U.S. 7 (2008). ……………………………………...…………2, 10

**Statutes/Rules**

N.J.S.A. 2A:42-84.1 ……………………………………...…… 1, 3, 7, 8, 9, 17

N.J.S.A. 2A: 42-84.2…………………………………………...…… 7, 9

N.J.S.A. 2A:42-84.3……………………………………...………….. 4, 5

N.J.S.A. 2A:42-83.4…………………………………..……3, 4, 5, 6, 7, 8, 9

N.J.S.A. 2A:42-83.6……………………………………………… 1, 3, 7, 8

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this motion only, the Defendants, City of Jersey City and the City of Jersey City Rent Leveling Board, do not dispute and/or oppose the factual and procedural background provided by the moving party and hereby incorporates same by reference for the purpose of this Motion. The Defendants do not necessarily agree with the characterizations made within the factual and procedural background provided by the Plaintiffs but the Defendants do hereby adopt the general procedural background concerning the exemption statute at question, along with the applicable Jersey City ordinance(s) and the overall procedure in which the Jersey City Rent Leveling Board ultimately denied the Plaintiffs' exemption from the rent control ordinance(s) of the City of Jersey City for the Plaintiffs' failure to adhere to all of the provisions and conditions contained in N.J.S.A. 2A:42-84.1 through N.J.S.A. 2A:42-84.6.

The Plaintiffs in its moving papers argue that it is entitled to the preliminary injunction being issued as it purportedly meets all of the requirements for issuance of same. As more fully argued below, it is clear that the Plaintiffs do not meet all of the requirements for the issuance of a preliminary injunction and same must be denied, including any request to maintain a "status quo".

1

## LEGAL STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. Winter v. Natural Resources Defense Council, 555 U.S. 7, 24 (2008). A party may be granted a preliminary injunction only upon a **clear showing** that the plaintiff is entitled to such relief. Id. at 22 (emphasis added). As noted in Plaintiffs' moving papers, a preliminary injunction may issue if (1) the plaintiff shows that it is likely to succeed on the merits; (2) the plaintiff establishes that it is likely to suffer irreparable harm absent issuance of the injunction; (3) the balance of equities does not disfavor granting an injunction; and (4) public interest concerns do not outweigh the interests advanced by issuance of the injunction. Id. at 20. *see also* Fres-co Sys. USA, Inc. v. Hawkins, 690 F. App'x 72, 75 (3d Cir. 2017).

## LEGAL ARGUMENT

### POINT ONE

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF MUST BE DENIED AS THE PLAINTIFFS HAVE FAILED TO ESTABLISH ALL REQUIREMENTS TO OBTAIN SUCH RELIEF FROM THIS COURT**

As more fully set forth below, the Plaintiffs' motion for preliminary injunctive relief should be denied by the court as the Plaintiffs have failed to meet all of the four (4) necessary requirements to obtain said relief. Since the Plaintiffs cannot meet and demonstrate all four (4) of the requirements, denial of its motion at this time is the only plausible outcome.

A. **The Plaintiffs have failed to establish that it is likely to succeed on the merits.**

Before discussing the first (1ˢᵗ) prong of the analysis, it is extremely important to note in the context of this motion that a movant for preliminary equitable relief <u>must</u> meet the threshold for the first two (2) "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two (2) factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief. In assessing these factors, Judge Easterbrook's observation bears repeating: "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." <u>Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.</u>, 582 <u>F.3d</u> 721, 725 (7th Cir. 2009).

The Plaintiffs painstakingly go on at length in their moving papers reiterating the same argument that the Plaintiffs have substantially complied with the governing statute, <u>N.J.S.A.</u> 2A:42-84.1 through <u>N.J.S.A.</u> 2A:42-84.6, including section 2A:42-84.4, and that the notice requirement contained in <u>N.J.S.A.</u> 2A:42-84.4 is <u>not</u> a condition precedent to the obtaining of the exemption from rent control. Plaintiffs

3

attempt to argue and maintain the position that "[s]ection 84.4 simply requires a notice to be sent to the municipal construction official; it does not authorize the construction official (or any other municipal official) to make any determination about the notice requirement or the application of the Exemption." (See Plaintiffs' brief, page 14). Therefore, according to the Plaintiffs, since Section 84.4 is not a condition precedent to the exemption from rent control found in Section 84.2 that the Defendants cannot assert that the failure to provide said notice would cause the Plaintiffs to lose or not be afforded said exemption. This argument fails for a number of reasons.

To begin, the Plaintiffs fail to consider that both N.J.S.A. 2A:42-84.3 and N.J.S.A. 2A:42-84.4 were specifically sections written into this legislation as express conditions that **require** owners who seek such a rent control exemption to provide notice to both the municipality and prospective tenants at the subject location. In fact, the Plaintiffs in its moving papers does not deny and goes on to demonstrate that it in fact provided the requisite notice to the tenants as required by N.J.S.A. 2A:42-84.3. However, the Plaintiffs have failed to provide the proper notice to the municipality as required by N.J.S.A. 2A:42-84.4. These notices are critical and are a condition precedent to the providing of the applicable exemption. In fact, the Appellate Division just recently in a 2022 decision, Willow Ridge Apartments, LLC v. Union City Rent Stabilization Board, 2022 WL 2525243 (July 7, 2022),

4

discussed this very issue. In <u>Willow Ridge</u>, supra, the Union City Rent Stabilization Board ("Board") notified the property owner in 2019, seventeen (17) years since the property began operating as exempt from local rent control ordinances, that it was <u>not</u> exempt from rent control because no evidence had existed that a claim of exemption had been filed prior to Union City's issuance of a certificate of occupancy required by <u>N.J.S.A.</u> 2A:42-84.4. Plaintiff, similar to the Plaintiffs in this matter, contested the Board's determination. The trial court found in favor of the Board's decision that the property failed to qualify for the exemption based upon the failure to provide the notices required pursuant to <u>N.J.S.A.</u> 2A:42-84.3 and 84.4. The matter was then appealed to the Appellate Division. Although conveniently left out of the Plaintiffs' moving papers, this unpublished decision provides the Court with the most insight as to how the applicable sections of the subject statute are to be read together and how they should be interpreted regarding the issued of conditions precedent to the applicable exemption. The Appellate Division specifically noted in its decision:

> The statute also includes two express conditions that require owners who seek an exemption to provide notice to the municipality and prospective tenants. Specifically, <u>N.J.S.A.</u> 2A:42-84.3 provides:

> The owner of any multiple dwelling exempted from a rent control or rent leveling ordinance pursuant to this act, shall, prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period. Each lease offered to a prospective tenant for any dwelling

5

unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption.

N.J.S.A. 2A:42-84.4 also obligates owners of any newly constructed buildings to file a notice claiming the exemption prior to a municipality issuing a certificate of occupancy for any applicable building:

The owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption from an ordinance under this act, including therein a statement of the date upon which the exemption period so claimed shall commence, such information as may be necessary to effectively locate and identify the multiple dwelling for which the exemption is claimed, and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed ....Willow Ridge Apartments, LLC v. Union City Rent Stabilization Bd., No. A-3578-20, 2022 WL 2525243, at *2 (N.J. Super. Ct. App. Div. July 7, 2022), cert. denied, 253 N.J. 385 (2023).

It is also important to note that the Plaintiffs in Willow Ridge supra, made the very same arguments that the Plaintiffs in this matter are making in that the statute does not expressly provide that compliance with the notice requirements is a prerequisite to obtaining an exemption or that exemption status is lost if the written notices required in the statute are not provided. Essentially, like the Plaintiffs in Willow Ridge supra, the Plaintiffs here are arguing that had the legislature intended for any penalty to be imposed in the event of non-compliance with the notice provisions, it would have said so and set forth that penalty in the statute. Further, it claims that the "permanent loss of rent control exemption" would be an "incredibly drastic and punitive penalty.

6

However, those arguments were ultimately not successful either at the trial court level or the Appellate Division level. Notwithstanding same, the Appellate Division in <u>Willow Ridge</u> supra, reasoned and ruled as follows:

> We are not persuaded by these arguments and agree with Judge D'Elia **that established principles of statutory interpretation dictate that N.J.S.A. 2A:42-84.4's notice requirement is a mandatory condition precedent to receipt of a rent control exemption under N.J.S.A. 2A:42-84.2.** First, because <u>N.J.S.A.</u> 2A:42-84.1 to -84.6 created a new right to a rent control exemption, strict compliance with its terms is required to qualify for the exemption. **Second, if compliance with N.J.S.A. 2A:42-84.4 were not required, it would constitute meaningless surplusage**.
>
> ***
>
> When interpreting a statute, the first step is to look to the plain meaning of the language. <u>Bergen Com. Bank v. Sisler</u>, 157 <u>N.J.</u> 188, 202 (1999). "A statute's meaning is not self-evident, however, where varying interpretations of the statute are plausible." Ibid.; see also <u>Bubis v. Kassin</u>, 184 <u>N.J.</u> 612, 626 (2005). In those situations, the court should look to "judicial interpretation, rules of construction, or extrinsic matters." <u>Bergen Com. Bank</u>, 157 <u>N.J.</u> at 202. The purpose of such interpretation is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." <u>Twp. of Pennsauken v. Schad</u>, 160 <u>N.J.</u> 156, 170 (1999).
>
> "We do not view [statutory] words and phrases in isolation but rather in their proper context and in relationship to other parts of [the] statute, so that meaning can be given to the whole of [the] enactment." <u>State v. Twiggs</u>, 233 <u>N.J.</u> 513, 533 (2018) (alterations in original) (quoting <u>State v. Rangel</u>, 213 <u>N.J.</u> 500, 509 (2013)). Indeed, we "can ... draw inferences based on the statute's overall structure and composition," <u>State v. S.B.</u>, 230 <u>N.J.</u> 62, 68 (2017), and consider "the entire legislative scheme of which [a statute] is a part," <u>Kimmelman v. Henkels & McCoy, Inc.</u>, 108 <u>N.J.</u> 123, 129 (1987). "We do not support interpretations that render statutory language as surplusage or meaningless." <u>Burgos v. State</u>, 222 <u>N.J.</u> 175, 203 (2015); *see also* <u>In re Commitment of J.M.B.</u>, 197 <u>N.J.</u> 563, 573 (2009) ("Interpretations that render the Legislature's words mere surplusage are disfavored. Rather, ... our task requires that every effort be made to find vitality in the chosen language." (internal citation omitted)).
>
> "A limitation contained in a statute creating a new right [is] generally considered a condition precedent to the existence of the right itself ...." <u>Kaczmarek v. N.J. Tpk.</u>

7

Auth., 77 N.J. 329, 339 (1978). "[A] statute granting a new right usually is mandatory, and the viability of such a right is contingent upon strict compliance with the law and all its conditions." Shambie Singer, 3 Sutherland Statutory Construction § 57:16 (8th ed. 2020); see also People ex rel. Dunbar v. First Nat. Bank of Colorado Springs, 356 P.2d 967, 970 (Colo. 1960) ("It is a fundamental rule that, where statutes confer a new right ... and prescribe a mode for the acquisition, preservation, enforcement, or enjoyment, such are mandatory, and must be strictly complied with, and ... if not complied with, no right exists." (quoting Schaut v. Joint Sch. Dist. No. 6, Towns of Lena & Little River, 210 N.W. 270, 272 (Wis. 1926))).

We first note, again, that a fair reading of the Board's decision evidences that the Board did not premise its decision on the language of any particular ordinance, but rather its interpretation of N.J.S.A. 2A:42-84.1 to -84.6. We agree with plaintiff, however, that N.J.S.A. 2A:42-84.4 does not expressly state the consequence of a property owner's failure to file a claim of exemption prior to the issuance of a certificate of occupancy and, as a result, we apply the aforementioned principles of statutory interpretation to resolve the issue. Bergen Com. Bank, 157 N.J. at 202. **In doing so, we conclude the Board correctly determined that compliance with N.J.S.A. 2A:42-84.4's notice requirement operates as a prerequisite to obtaining an exemption from rent control pursuant to N.J.S.A. 2A:42-84.2.**

First, N.J.S.A. 2A:42-84.1 to -84.6 created a new right to rent control exemptions. As such, we presume that the Legislature intended **strict compliance** with N.J.S.A. 2A:42-84.4 to be required for property owners to qualify for a rent control exemption. See Kaczmarek, 77 N.J. at 339; Dunbar, 356 P.2d at 970.

**Second, reading N.J.S.A. 2A:42:84.4 in context of "the entire legislative scheme of which it is a part," Kimmelman, 108 N.J. at 129, avoiding "[i]nterpretations that render the Legislature's words mere surplusage," and making "every effort ... to find vitality in the chosen language," In re J.M.B., 197 N.J. at 573, further supports the interpretation that providing the requisite notice operates as a condition precedent to receipt of a rent control exemption. To hold otherwise would render N.J.S.A. 2A:42-84.4 meaningless surplusage, as there would be no consequence for a property owner's failure to provide the requisite notice. See Burgos, 222 N.J. at 203; In re J.M.B., 197 N.J. at 573.**

Such an interpretation also appears to effectuate the legislative intent because it advances the pragmatic goal of N.J.S.A. 2A:42-84.4. Providing the notice required by N.J.S.A. 2A:42-84.4 thirty days prior to the issuance of a certificate of occupancy serves a clear purpose — to allow a municipality to inspect the subject property in a timely fashion and ensure that it qualifies for the exemption. Accepting defendant's interpretation of the statute would allow property owners to circumvent that necessary safeguard, a result the Legislature clearly did not intend. We also note that

8

timely notice allows municipalities to memorialize and track which properties are subject to, and exempt from, rent control. Willow Ridge Apartments, LLC v. Union City Rent Stabilization Bd., No. A-3578-20, 2022 WL 2525243, at *7–8 (N.J. Super. Ct. App. Div. July 7, 2022), cert. denied, 253 N.J. 385 (2023). (emphasis added)

This holding of our Appellate Division clearly provides that the Defendant, Jersey City Rent Leveling Board, like the Board in Willow Ridge, appropriately determined that the Plaintiffs were not afforded the exemption from the City's rent control ordinances based upon its failure to provide the proper notices set forth under N.J.S.A. 2A:42-84.3 and/or N.J.S.A. 2A:42-84.4. The arguments provided by the Plaintiffs in its moving papers to establish that it meets the first (1st) prong of the four (4) prong required test for the issuance of a preliminary injunction are the same arguments that the Plaintiffs provided the court in the Willow Ridge, supra, which arguments were not successful. Based upon the clear holding made by the Appellate Division in Willow Ridge, the Plaintiffs cannot now try to persuade this Court on similar factual grounds that it would most likely prevail on such a claim. The notice requirements contained in both N.J.S.A. 2A:42-84.3 and N.J.S.A. 2A:42-84.4 are clearly conditions precedent to receipt of the rent control exemption contemplated for in N.J.S.A. 2A:42-84.2. As both the lower court judge and the Appellate Division noted, a finding that the above referenced sections of the statute are not conditions precedent would render those sections meaningless surplusage.

Therefore, based upon this Appellate Division decision right on point on a substantially similar set of facts and arguments presented can only find that the

9

Plaintiffs would have a very difficult time in arguing that it would have a likelihood of success on the merits. Rather, given the Appellate Division's holding in <u>Willow Ridge</u> it is quite the contrary in that it appears the Plaintiffs simply cannot show at this juncture a likelihood of success on the merits. Therefore, given the fact that the Plaintiffs cannot satisfy the very first (1st) and important prong of the analysis, the Court should immediately deny its motion for preliminary injunctive relief.

**B. <u>The Plaintiffs will not likely suffer irreparable harm absent the issuance of the injunction.</u>**

The next prong of the preliminary injunction standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction. <u>Los Angeles v. Lyons</u>, 461 <u>U.S.</u> 95, 103 (1983); <u>Granny Goose Foods, Inc. v. Teamsters</u>, 415 <u>U.S.</u> 423, 441 (1974); <u>O'Shea v. Littleton</u>, 414 <u>U.S.</u> 488, 502 (1974). Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. <u>Mazurek v. Armstrong</u>, 520 <u>U.S.</u> 968, 972 (1997) *see also* <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 <u>U.S.</u> 7, 22 (2008).

Here, the Plaintiffs maintain that there are a few reasons why it would suffer irreparable harm if there was enforcement of the Jersey City Rent Leveling Board's decision. First, the Plaintiffs argue that it would be nearly impossible for it to recover lost rent from the City Defendants if it were to succeed on its claims in this litigation

10

and almost as impossible from collecting said rents from the tenants retroactively. However, this is <u>not</u> true. This purported "harm" in having to collect the additional rent monies in the unlikely event that the Plaintiffs prevail on its claims concerning its entitlement to the exemption, is surely not "irreparable". The Plaintiffs are fully aware and capable of collecting those rents though enforcement actions, which it would have the legal right to initiate against those deficient tenants under those circumstances, making this monetary harm not irreparable under any circumstances. The tenants themselves would be liable for the difference in the rent, not the City Defendants, so Plaintiffs' reliance on <u>Cigar Assoc. of Am. V. City of Philadelphia</u>, 2021 WL 5505406 (3d Cir. Nov. 24, 2021) is misplaced in that there is still a legal and permissible way for the Plaintiffs to recover those purported potential monetary damages and specific identified individuals in which to recover said monetary damages. The order from the City of Jersey City Rent Leveling Board that the Plaintiffs are not exempt from rent control is currently in place and the Plaintiffs must abide by it. Just because the Plaintiffs are being inconvenienced at this juncture does not create "irreparable harm" which satisfies this very important prong of the four (4) prong analysis to obtain the requested preliminary injunctive relief. In fact, should the Defendants' determination that the Plaintiffs are not exempt from rent control be upheld by this court, similar to the holding in <u>Willow Ridge</u>, supra, the Plaintiffs have essentially received the improper benefit of being treated as exempt

11

and obtaining such windfall from same for decades while the Defendants are only seeking a lookback of six (6) years. This substantial financial windfall was not discussed by the Plaintiffs in its moving papers as same surely does not constitute irreparable harm to the Plaintiffs but actually quite the opposite.

The Plaintiffs also argue that the current enforcement of the purported illegal rent control regime, even temporarily, would "seriously harm Portside's relationship with its tenants, resulting in irreparable harm." (See Plaintiffs' brief, page 29). Plaintiffs argue that such harm is analogous to prior cases dealing with interference with customer relationships. However, what the Plaintiffs are failing to recognize in making this argument is that the tenants are well aware of the City of Jersey City's Rent Leveling Board's determination and that litigation has commenced concerning same. This is no mystery to the tenants of either of the buildings. In fact, as the Court is probably well aware, the tenants and the respective tenant association(s) have sought to intervene in this matter and have also initiated litigation at the state court level under docket HUD-L-004447-23. Therefore, the tenants are fully aware of the circumstances regarding the exemption, the loss of the exemption and the litigation. The tenants are also aware that if the Plaintiffs are successful in this litigation in getting the City's Rent Leveling Board's determination overturned, that the tenants would be back to paying the rents they were paying prior to said decision, including all legal and applicable adjustments to same. Again, this is no mystery so the tenants'

12

relationship with the landlord is no different at this juncture then if the preliminary injunction were to be granted by the court. The fact of the matter is that the landlord/tenant relationship is already strained, but it is safe to say that all the parties understand the potential consequences of the outcome of the litigation. Therefore, again, no "irreparable" harm is being suffered by the Plaintiffs concerning the litigation continuing without any type of preliminary injunction being granted by this Court.

Finally, the Plaintiffs argue that the City's threat of retroactive criminal prosecution gives rise to reputational harm and imposed untenable risks of a loss of liberty and financial distress through staggering fines, as a condition of operating a lawful business. These types of reputational and economic harms of defending against a criminal prosecution under an unconstitutional order cannot be redressed by monetary damages according to the arguments set forth by the Plaintiffs. The Defendants maintain that the "threat" noted by the Plaintiffs and further identified in Exhibit D-4 of Plaintiffs' submission only speaks to a violation of Section 260 of the City of Jersey City ordinance. The violation of Section 260 of the City of Jersey City ordinance is <u>not</u> a criminal offense. Nowhere does it say such a thing and the Defendants are not sure why the Plaintiffs are attempting to argue that they are being criminally prosecuted. In addition, the City only reminded the Plaintiffs in its March 19, 2023 correspondence (Exhibit D-4) of the potential penalties for violation of the

13

subject ordinance, which is the general penalty section for the entire City Code for the City of Jersey City. The Plaintiffs by its own actions and/or inactions would be violating Section 260 of the City Code and same could be avoided if the Plaintiffs abide by the current ruling and with Section 260 of the City of Jersey City Code, as further set forth in the march 19, 2023 correspondence.  Therefore, any alleged "harm" suffered by the Plaintiffs is again reparable and completely avoidable if the Plaintiffs simply abide by Section 260 of the City of Jersey City Code.

As such, none of the reasons set forth and argued by the Plaintiffs in its moving papers demonstrates that the Plaintiffs would actual suffer "irreparable harm" if the requested preliminary injunctive relief is denied by the Court.

Once again, the Plaintiffs have failed to establish a necessary and important prong of the required four (4) prong analysis to obtain the preliminary injunctive relief they are requesting. With that, the Plaintiffs have now failed to establish the first two most important (2) prongs of the four (4) prong analysis, which is completely fatal to its request for preliminary injunctive relief.  As noted above, these first two (2) "gateway factors" have clearly not been met so the Court should not even consider the remaining factors. However, for purposes of this opposition brief, the Defendants argue that the Plaintiffs still do not meet the remaining requirements of the analysis concerning the balance of equities and public interest.

14

## C. **The balance of equities and public interest favor enforcement of Defendants' ruling**

The third (3rd) factor in the preliminary injunction analysis requires the district court to "balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted. Power Surv., LLC v. Premier Util. Servs., LLC, 61 F. Supp. 3d 477, 487 (D.N.J. 2014). Here, although the court ultimately need not go into this portion of the four (4) part analysis as the Plaintiffs have already failed to establish the first two (2) prongs, the Plaintiffs still argue that a balance of equities and public interest favor the Plaintiffs. In terms of balancing the equities, it appears that the tenants would suffer greater harm in being charged continued increased rent from building found to be not exempt from rent control then the Plaintiffs from having to adhere to the provisions of the Jersey City rent control ordinance, at least during the pendency of this litigation. The Plaintiffs argue that the City and the tenants are receiving a massive windfall regarding retroactive and prospective rent reductions even though this was based upon a ruling of the City's Rent Leveling Board based upon a reading of the applicable statute(s) consistent with the Appellate Division's interpretation of same in the Willow Ridge case. The actual windfall is what the Plaintiffs have received in charging increased rents over the past two (2) decades when the Plaintiffs were actually not exempt from rent control. Again, this windfall is not discussed by the Plaintiffs but must be considered in the balancing of equities

15

as part of the third (3rd) prong analysis. Here a balancing of equities demonstrates that the tenants most importantly should receive the required relief since Plaintiffs' properties are not exempt from rent control and, as such, the tenants should appropriately benefit from such relief, instead of continuing to pay higher rents for additional months/years while the pending litigation continues. This is not what rent control is meant to accomplish and a balance of the equities, especially taking into consideration the Plaintiffs' twenty (20) plus year windfall, clears favors a denial of the requested preliminary injunctive relief.

Finally, the public interest also favors the Defendants and tenants for the Defendants implementing said decision to find Plaintiffs' properties not exempt from rent control. The Plaintiffs attempt to argue that the public interest lies with the Plaintiffs because the public interest always favors protecting constitutional rights and avoiding due process violations. However, the Plaintiffs are once again ignoring the tenants who have been paying extraordinarily high rents for many years when the subject properties should have been subject to rent control. Therefore, the public interest should most definitely favor protecting those tenants and their interests moving forward now that the determination as to the exemption has been made by the City's Rent Leveling Board. Should that decision be ultimately overturned by the Court, the tenants would then and only then be required to go back to paying the exorbitant rents it had been previously paying. However, to require the tenants to

16

ignore the City's Rent Leveling Board's determination and ignore the public policy and interest behind rent control would undermine the purpose and goals of rent control in the first place. Public interest would most certainly favor the tenants based upon the history and the facts and circumstances presented in this matter.

For all of the reasons set forth above, it is absolutely clear that the Plaintiffs have failed to establish, at a minimum, the first two (2) gateway prongs of the required four (4) prong analysis for the issuance of the requested preliminary injunctive relief. The Willow Ridge case is very instructive in how to interpret the exemption statute at issue (N.J.S.A. 2A:42-84.1 et seq.) and is clear that the Plaintiff would not likely be successful on the merits given the similar set of facts for both cases. Furthermore, the Plaintiffs have failed to establish that they would suffer irreparable harm should the Court deny their request for preliminary injunctive relief. Finally, the balance of equities and public interest clearly weigh in the favor of the Defendants and the tenants in this matter. Therefore, the Court must deny the Plaintiffs' motion for preliminary injunctive relief and any request for maintain any type of status quo due to its failure to meet the necessary requirements.

17

## CONCLUSION

For all of the reasons set forth within this brief, the Defendants, City of Jersey City and the City of Jersey City Rent Leveling Board, respectfully request that the Plaintiffs' motion for preliminary injunctive relief or alternative status quo relief be denied in its entirety with prejudice.

/s/ Eric M. Bernstein
Eric M. Bernstein, Esquire
ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
34 Mountain Boulevard, Building A
P.O. Box 4922
Warren, New Jersey 07059
(732) 805-3360; (732) 805-3346 Facsimile
Attorneys for Defendants, City of Jersey City and
City of Jersey City Rent Leveling Board

18