# EXHIBIT A

# CITY OF JERSEY CITY

### Department of Housing, Economic Development and Commerce
#### Division of Housing Preservation
#### Office of Landlord/Tenant Relations

**Steven M. Fulop**
**Mayor**

342 MARTIN LUTHER KING DRIVE • JERSEY CITY, N.J 07305
PHONE: (201) 547-5127

November 3, 2023

**Via Email and Regular Mail**

For the Tenants

Neil Marotta, Esq.
Marotta & Garvey Attorneys at Law
3916 Bergenline Ave., Ste. 2200
Union City, NJ 07087
Email:  mgclawyers@aol.com>

For the Property Owner

Derek Reed, Esq.
Ehrlich, Petriello, Gudin, Plaza & Reed, P.C.
60 Park Place, Suite 1016
Newark, NJ 07102
 Email:  dreed@epgprlaw.com>

Re: Rent Leveling Board Decision

Dear  Mr. Reed and Mr. Marotta,

The Rent Leveling Board conducted a meeting on October 19, 2023, in compliance with the Sunshine Law in order to hear the above-referenced matter.  Commissioners Hill, Hamilton, Isikoff, S. Johnson, and Pinchinat were present, with Chairman Cupo presiding.

### Preliminary Statement

Beginning in June 2022, the Jersey City Office of Landlord/Tenant Relations Bureau of Rent

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 2


Leveling (the "Bureau") received Illegal Rent Petitions from numerous tenants residing at 100 Warren Street and 155 Washington Street (hereinafter, "Tenants"). The many Illegal Rent Petitions were combined by the Bureau into one determination for each building. While the two cases remain separate on appeal, many of the facts surrounding the appeal are interwoven. This determination, and the general background regarding the construction and eventual rental of the buildings, as well as a discussion of the legal issues pertaining to the voluminous number of petitions, are combined herein.

In the Illegal Rent Petitions, the Tenants sought a determination from the Bureau as to whether the rent increases for their apartments complied with the Jersey City Rent Control Ordinance, Chapter 260 of the Municipal Code. In particular, the Tenants challenged whether the buildings were exempt from the Jersey City Rent Control Ordinance, as codified in Chapter 260 of the Jersey City Municipal Code. In essence, the Tenants claim that the Property Owner did not qualify for the exemption and that, even if the Property Owner did qualify for the exemption, it failed to perform the required tasks to avail itself of the exemption. In the alternative, they argue that the exemption, if it ever applied, has lapsed, or been forfeited, by subsequent actions.


Initial Determination and Appeal

In response to the Illegal Rent Petitions, the Property Owner, Portside Urban Renewal LLC, c/o Equity Residential Management, LLC, provided via counsel a letter brief and a copy of the Tenants' lease agreements and Truth in Renting Statements, along with several documents, including most notably copies of Certificates of Occupancy for the buildings and a "Letter of Exemption" dated November 23, 1994.

On September 19, 2022, the Rent Leveling Administrator issued Bureau Determinations for both 100 Warren and 155 Washington. With respect to 100 Warren, the Bureau found that rents prior to August 24, 2022 were not governed by the City's rent control regulations because the Property Owner had complied with the requirements of the State's new construction exemption to rent control. The Bureau found that the 30-year exemption expired on August 24, 2022, and that therefore 100 Warren was subject to rent control from that point forward.

With respect to 155 Washington, the Bureau found that "155 Washington has been and remains exempt from the rent control restrictions of the Ordinance from December 31, 1997 through December 30, 2027 and the Bureau has no jurisdiction to review or make any findings regarding these rents."

The Tenants were then permitted additional time to submit documents to the Bureau for

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 3

consideration of the issue of a mortgage which the Tenants argued would limit the exemption to the length of that mortgage, rather than thirty years. The Bureau reviewed the documents submitted and, in supplemental Determinations issued on December 15, 2022, found them unavailing. As such, the initial Determinations remained in place.

Following an extension of time to appeal, the Tenants appealed the Determinations (including the supplemental Determinations) to the Jersey City Rent Leveling Board on January 25, 2023. Following an agreed-upon schedule, the parties submitted their written briefs and related submissions in advance of a hearing date.

The Board heard the tenants' appeal on May 31, 2023. The tenants were represented by Neil Marrota, Esq., of Marotta & Garvey. The property owner was represented by Derek Reed, Esq., of Ehrlich, Petriello, Gudin, Plaza & Reed, PLLC. Appellant Kevin Weller testified on behalf of all Tenants.

At the conclusion of the May 31, 2023, hearing, the Board closed the public portion of the cases and voted to adjourn while reserving its determination. Shortly thereafter, the parties jointly contacted the Board via the Jersey City Law Department to request an adjournment of the cases to permit the parties to attempt to resolve the matters via mediation. The Board granted the joint adjournment request. In September 2023, the parties informed the Board that they wished to place the cases back on the Board's agenda. The cases were heard once more on October 19, 2023, at which time the Board members provided their reasoning and made a motion to find in favor of the Tenants, holding that the exemption claimed by the Property Owner was not properly filed and remanding the case to the Bureau for adjustment of the Tenants' rents. The motion was seconded and adopted unanimously.

Factual Background

100 Warren and 155 Washington are two separate multiple dwellings forming the single apartment community known as Portside Towers. Brief of Property Owner ("PO"), at 1. The original owners of the property financed the new construction with the intention of developing a condominium project. PO, at 1-2. 100 Warren was constructed first, and a Certificate of Occupancy was issued on August 25, 1992. PO, at 2. The project eventually went through foreclosure and was unoccupied between the time of the issuance of the Certificate of Occupancy and a Sheriff's Sale on November 23, 1994, at which time the current owner took possession. PO, at 2.

The same day that it acquired the property, the current Property Owner abandoned the condominium plan and resolved to convert the development to a multiple dwelling residential

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 4

apartment complex. PO, at 2. To that end, the current owner provided a letter dated November 23, 1994, and addressed to Michael J. Regan, who was then the Construction Code Official for the City of Jersey City. The letter states, in pertinent part:

> Portside Apartments Urban Renewal Partners, L.P. is the owner of 1 Washington Street (a/k/a 100 Warren Street), Jersey City, New Jersey (Lot 34, Block 60), which is a newly constructed multiple dwelling containing 229 rental dwelling units. We are hereby claiming exemption from rent controls under Article XX (Multiple Dwelling Rent Controls_ of the Jersey City Code and any form of future rent control pursuant to N.J.S.A. 2A:42-84.1 et. seq. The period for which exemption is claimed for the 229 units in this building shall commence on the anticipated date of initial occupancy, January 1, 1995.
>
> This written statement is being made pursuant to the requirements of N.J.S.A. 2A:41-84.4.

On December 6, 1994, the Jersey City Construction Official responded to the November 23, 1994 letter. The City acknowledged receipt, but also wrote

> Please be advised that the Office of Construction Official has no jurisdiction over rent controls and I would suggest that you contact the proper agency charged with that responsibility.
>
> See 100 Warren Determination, at 4.

No letter to the Construction Code Official in connection with the requested exemption from rent control for 155 Washington has been produced by the City or any party. See 155 Washington Determination, at 4.

On January 24, 1995, a Certificate of Continued Occupancy was issued for 100 Warren. PO, at 2. Construction of 155 Washington was completed on or about December 31, 1997, and a Certificate of Occupancy was issued on that date. Ibid.

100 Warren and 155 Washington operated as exempt from Jersey City's rent control regulations from the date of initial occupancy through the filing of the instant Illegal Rent Petitions. PO, at 2.

## Legal Standards

Chapter §260-3 of the Jersey City Municipal Code provides multiple dwellings as defined therein containing five or more residential housing spaces are subject to the City's rent regulations. It is

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 5

undisputed that both buildings are multiple dwellings with more than five units and are presumed to be rent controlled.

However, the City's ordinance contains several exemptions to the rent restrictions contained in Chapter 260. Pertinent to these cases is an exemption provided by New Jersey State law via N.J.S.A. 2A:42-84.1 et seq.

N.J.S.A. 2A:42-84 is titled "State Exemption for New Construction" (the "Statute"). As currently amended, the exemption provides as follows:

> a. In any municipality which has enacted or which hereafter enacts a rent control or rent leveling ordinance, other than under the authority of P.L.1966, c.168 (C.2A:42-74 et seq.), those provisions of the ordinance which limit the periodic or regular increases in base rentals of dwelling units shall not apply to multiple dwellings constructed after the effective date of this act, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less.
>
> b. In the event that there is no initial mortgage financing, the period of exemption from a rent control or rent leveling ordinance shall be 30 years from the completion of construction.

The State exemption is incorporated in §260-6C of the Municipal Code:

> In accordance with N.J.S.A. 2A:42-84.1 et seq., L. 1987, c. 153, the provisions of this chapter shall not apply to a new dwelling which is constructed between June 25, 1987, through June 25, 1992, and which is not constructed for occupation by senior citizens, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the dwelling, or for 30 years following completion of construction, whichever is less. This exemption applies only where an owner complied with all requirements contained in N.J.S.A. 2A:42-84.1 et seq., including the filing with the municipal construction official required by N.J.S.A. 2A:42-84.4 and the service of a written statement upon the tenant required by N.J.S.A. 2A:42-84.3.

As noted in the Bureau's determinations, the exemption was initially limited in time, but has since been extended indefinitely. See N.J.S.A. 2A:42-84.5b ("Although this legislation was initially made effective only for a temporary five-year period, it was expanded for a second five-year period by P.L.1992, c.206 until 1997, and then in that year made permanent by P.L.1997, c.56.") The stated reason for the permanence of the exemption is that "[t]he Legislature deems it to be

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 6


necessary for the public welfare to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey." Ibid.

As referenced in the Municipal Code, the Statute contains both a notice requirement to tenants, contained in N.J.S.A. 2A:42-84.3, and a notice requirement to the municipality via its construction official, codified in N.J.S.A. 2A:42-84.4. Those requirements read as follows:

> The owner of any multiple dwelling exempted from a rent control or rent leveling ordinance pursuant to this act, shall, prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period. Each lease offered to a prospective tenant for any dwelling unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption.
>
> . . .
>
> The owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption from an ordinance under this act, including therein a statement of the date upon which the exemption period so claimed shall commence, such information as may be necessary to effectively locate and identify the multiple dwelling for which the exemption is claimed, and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed.


<u>Rent Leveling Board's Analysis</u>

As an initial matter, the Board must consider whether the Property Owner satisfied the two notice requirements to avail itself of the "new construction" exemption contemplated by N.J.S.A. 2A:42-84.4. The earlier notice requirement must be presented to the municipality's Construction Official. The Property Owner "shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption." N.J.S.A. 2A:42-84.4.

The second notice requirement states that the Property Owner "shall, prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 7

prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period." N.J.S.A. 2A:42-84.3. Each lease and lease renewal must contain this notice. Ibid.

As it relates to notice to the construction official, the Bureau found that the Property Owner sent the aforementioned letter on November 23, 1994, to the Jersey City Construction Code Official, in which the Property Owner claimed the exemption for 100 Warren only. The Letter of Exemption stated that the exemption "shall commence on the anticipated date of initial occupancy, January 1, 1995." See 155 Washington Determination, at 4. The initial certificate of occupancy for the building was issued on August 25, 1992, but due to the failure of the condominium development plan, there had been no initial occupancy between that time and the foreclosure and subsequent Sheriff's sale. See 100 Warren Determination, at 3; PO, at 2.

However, the Statute requires that the Property Owner file for the exemption "at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling." Here, the certificate of occupancy was issued in August 1992, though the new construction contemplated the sale of condominium units, not apartment rentals. The Bureau found that the Letter of Exemption was sufficient because it meets the purposes of the notice to the Construction Official; namely, that the building has been constructed completely and is a multiple dwelling. However, because the letter claiming the exemption was not filed before the certificate of occupancy for the "new construction" at 100 Warren in 1992, the Rent Leveling Board finds that the Property Owner could not timely avail itself of the exemption. See Jersey City Rent Leveling Board October 19, 2023 Hearing Transcript ("October 19 Hearing"), at 19. The Property Owner argues that the Bureau's determination was sound because the Letter of Exemption for 100 Warren was filed "more than thirty (30) days before the initial occupancy." PO, at 4. The Statute does require notice to the tenants to be provided prior to occupancy and contained in each lease, but it requires notice to the Construction Official to be provided before the issuance of a certificate of occupancy. That did not happen here. As such, the Board rules in favor of the Tenants on this issue, finding that the building at 100 Warren had not availed itself of the thirty-year statutory exemption for new construction. See October 19 Hearing, at 24.

With regard to the lack of a letter seeking the exemption for 155 Washington, the Bureau concluded that

> Portside was aware of the Statute and its requirements in November 1994 even if the Construction Code Official at the time, Michael Regan, was not. It is as likely as not that three years later, with the issuance of the CO for 155 Washington, another request for exemption was sent. Perhaps, in light of Mr. Regan's December 6, 1994 letter, it was sent to some other City agency. What is clear, as set forth in

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 8

detail below, is that 155 Washington was owned by the same owner as 100 Warren and these Towers were managed as one development.

That the Property Owner was clearly aware of the requirement to file the notice and failed to do so does not weigh in its favor, notwithstanding the Construction Official's admittedly confusing response to the Letter of Exemption. The Statute's notice requirement is a mandatory condition precedent to receipt of this rent control exemption requiring strict compliance with its terms. There is no dispute that as it relates to 155 Washington that the record is devoid of any evidence of compliance with the notice requirement. While the Portside Towers community is managed "as one development," the Statute also requires that the letter contain "a statement of the date upon which the exemption period so claimed shall commence and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed." The address and units referenced in the earlier Letter of Exemption refer only to 100 Warren and, therefore, cannot be applied to the second building or any of its units.

With only speculation and conjecture as to whether the Property Owner has ever provided the required notice, the Board finds that the Property Owner has not fulfilled its obligation to provide notice under the Statute and, therefore, the units at 155 Washington are not exempt from the City's rent control ordinance. See October 19 Hearing, at 19, 24.

Because the Board finds that the Property Owner has not satisfied the requirements of N.J.S.A. 2A:42-84.4, which must be satisfied before the notice to tenants is relevant, the Board declines to rule on the sufficiency of the notices to tenants and allegedly misfiled or inaccurate rent registration statements filed with the Bureau. Moreover, the Board need not opine on the limitations of the mortgage documents which Tenants allege would limit the length of the exemption should it apply to either building.

The Bureau's determination set forth the legislative purpose of the exemption, which is "to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey." See 100 Warren Determination, at 2. The Property Owner concurred in its briefs and at the Board hearing that the Bureau's decision gave effect to the purpose of the Statute. PO, at 11. Notwithstanding the stated goals of the Statute, the notice requirements also have purpose; namely, to allow the municipality's construction official to inspect the subject property and to evaluate whether it qualifies for the exemption. The Bureau's determination would allow a property owner to skirt that obligation and proceed as it if were a voluntary step in the process. Furthermore, the requirements for timely notice both to the municipality and the tenant allows the parties affected by the exemption to have notice regarding the status of the properties and track which properties are subject to, and exempt from, rent control. In this case, because the City and Tenants did not have a record of the exemption or its potential expiration, there was no record of when the

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 9

exemption would expire. That lack of knowledge required a determination for the first time by the Bureau that the exemption for 100 Warren had expired on August 24, 2022. See 100 Warren Determination, at 6.

Finally, the Bureau of Rent Leveling is empowered to "remedy violations of [Chapter 260] by adjusting rentals, ordering rebates and bringing appropriate legal charges." §260-9(A)(1). Here, the Board's decision is that there was no valid exemption for the duration of the tenancies of both buildings. See October 19 Hearing, at 24. The Board's decision affects all tenants in all units of the two buildings, and the Bureau is empowered to apply this decision to all units in both buildings from the date of the first illegal rent petition at issue here in each building. Id., at 23-24.

## Rent Leveling Board Decision

The Board unanimously concludes that due to the failure by the Property Owner and its predecessor to comply with the notice requirement in N.J.S.A. 2A:42-84.4, both buildings and all units therein are and have been for the duration of their occupancies subject to rent control.

To summarize, because the Letter of Exemption to the Construction Official in November 1994 was provided to the City after the issuance of the certificate of occupancy for that building, it was not filed timely under the Statute. Further, because it is undisputed that no evidence of a filing for 155 Washington has been produced, the Board finds that 155 Washington is also subject to rent control.

The Statute does not expressly provide for a remedy where an exemption is inaccurately assumed by the municipality and/or property owner; however, the Board finds that there was no valid exemption from the beginning of the occupancy of the units. Any interpretation to the contrary would render the notice provisions voluntary or mere surplusage, whereas the Statute provides that the property owner "shall" provide the required notice in order to obtain the exemption.

The Bureau's policy is to provide a "lookback window" of six years for illegal rent petitions, coinciding with the statute of limitations for a cause of action for breach of contract. The Board understands this is a matter of both policy and practicality for the Bureau, which has limitations relating to recordkeeping and equitable considerations which militate toward finding a reasonable window of time for which adjustments to rent should be made following a successful illegal rent petition. As such, the Board adopts the Bureau's lookback policy and instructs the Bureau to adjust the rents for all units in each building to comply with the City's rent control regulations going back six years from the date of the first petition for each building; namely, June 25, 2022, for 100 Warren, and July 27, 2022, for 155 Washington.

Portside Towers
100 Warren Street and 155 Washington Street
Portside Urban Renewal c/o Equity Residential Management, LLC
Jersey City Rent Leveling Board Determination

November 3, 2023
Page 10

## Conclusion

The Property Owner did not fulfill its obligations to obtain an exemption from Chapter 260 of the City's Code, and, for the reasons set forth on the record and in this determination, both 100 Warren and 155 Washington are subject to Jersey City rent control regulations. The Bureau is instructed to obtain the records necessary to review and adjust the rent on all units within the buildings dating back six years from the filing of the first Illegal Rent Petition at issue in the instant matters for each building.

The Landlord or the Tenant may appeal the findings of any decision of the Rent Leveling Board by "action in lieu of prerogative writ" to a court of competent jurisdiction filed within 45 days of the Board's decision, as provided by New Jersey Rule of Court 4:69.

This is to certify that this constitutes the decision of the Jersey City Rent Leveling Board in connection with this matter.

Very truly yours,

Al Cupo
Chair, Jersey City Rent Leveling Board

CC: Tenants