# EXHIBIT H

# CITY OF JERSEY CITY

### Department of Housing, Economic Development and Commerce
#### Division of Housing Preservation
#### Office of Landlord/Tenant Relations

**Steven M. Fulop**
**Mayor**

**342 MARTIN LUTHER KING DRIVE • JERSEY CITY, N.J 07305**
**PHONE: (201) 547-5127**

August 7, 2024

Tenants Legal Representative
Neil Marotta, Esq.
Marotta & Garveu Attorneys at Law
3916 Bergenline Ave., Ste. 2200
Union City, NJ, 07087
Email: mgclawyers@aol.com

Property Owners Legal Representative
Derek Reed, Esq.
Ehlrich, Petriello, Gudin, Plaza & Reed, P.C
60 Park Place, Suite 1016
Newark, NJ, 07102
Email: dreed@epgprlaw.com

RE: Portside Towers – Base Rent Calculations

Dear Mr. Reed and Mr. Marotta,

On October 19, 2023, the Jersey City Rent Leveling Board, (the "Board"), determined that properties located at 100 Warren Street and 155 Washington Street, collectively the Portside Towers, (the "Towers"), were subject rent control and to the provisions of the Rent Control Ordinance, (the "Ordinance"), Chapter 260 of the Jersey City Municipal Code. The Board's determination instructed the Bureau of Rent Leveling, (the "Bureau"), to conduct a six-year "lookback", consistent with the statute of limitations in the state of New Jersey, in order to determine the current allowable base rents of each unit at the Towers.

In response to the Board's decision, the Bureau requested that the parties submit certain documents for review which were essential to the base rent calculations included here within. The base rent calculations attached are those that have been determined for each tower. Alongside these calculations, the Bureau provides the following synopsis to address several discrepancies that were found while performing these calculations and how those shall be addressed.

RE: Portside Towers – Base Rent Calculations
Page 2

## ESTABLISHING INITIAL PERMITTED BASE RENTS

The Ordinance establishes the definition of "Base Rent" in §260-1. – Definitions as follows:

> *BASE RENT—The legal rent charged or actually received by the landlord for the rental of a housing space as of January 11, 1983; or if not occupied at that date the "base rent" shall be that actually charged to and received from the previous tenant, plus any increases under § 260-3 of this chapter or the ordinance to which this is an amendment, or if insufficient evidence is available from which the Rent Leveling Administrator or Board can determine the legal rent charged or actually received as provided above, then the Rent Leveling Administrator and Board have the power to determine the legal "base rent" by considering the legal base rent of other units, subject to the provisions of this chapter, which are comparable in size, location and facilities to the subject unit.*

The Bureau used the "Monthly Apartment Rent" noted on the lease agreements provided for the 2016 lease term, in some cases, where the 2016 was not submitted, the 2015 lease term was used to establish the initial and "Permitted Base Rent" used at the commencement of each calculation. As the Bureau is only permitted to review rents going back six years, these are the rents that were "charged or actually received by the landlord" for these units at that time. Additional fees such as a "Pet Fee", "Storage Fee", "Parking Fee", etc., are not included in the "Monthly Apartment Rent" and were clearly considered optional additions and were treated as such from the inception of each tenant's occupancy at the dwelling.

## PERFORMING CALCULATIONS

The Bureau provides the visual below to assist in explaining the method used to perform the "Permitted Base Rent" calculations.

| Date of Increase | Base Rent | CPI | Permitted Increase | Permitted Base Rent | | Rent on Lease Agreement |
|---|---|---|---|---|---|---|
| 6/25/2016 | | | | $3,700.00 | Per 2016 Lease Agreement | |
| 6/27/2017 | $3,700.00 | 0.00% | $0.00 | $3,700.00 | No Rent Roll Received | $3,750.00 |
| 6/27/2018 | $3,700.00 | 0.00% | $0.00 | $3,700.00 | No Rent Roll Received | $3,750.00 |
| 11/27/2019 | $3,700.00 | 0.00% | $0.00 | $3,700.00 | No Rent Roll Received | $3,571.00 |
| 7/23/2020 | $3,700.00 | 0.00% | $0.00 | $3,700.00 | No Rent Roll Received | $3,761.00 |
| 7/27/2021 | $3,700.00 | 3.20% | $118.40 | $3,818.40 | Rent Roll Received | $4,185.00 |
| 11/5/2021 | $3,818.40 | 0.00% | $0.00 | $3,818.40 | Rent Roll Received - Increase Collected in July 2021 (Less than 12 mths.) | $3,610.00 |
| 11/8/2022 | $3,818.40 | 3.70% | $141.28 | $3,959.68 | Rent Roll Received | $3,610.00 |
| 11/15/2023 | $3,959.68 | 4.00% | $158.39 | **$4,118.07** | Rent Roll Received - Permitted Base Rent for Prospective Tenant(s) | $3,743.57 |

The Ordinance provides is §260-3 that multiple dwellings with five (5) or more residential housing spaces are subject to rent regulation. Rent increases are permitted in dwellings subject to the Rent Control restrictions as follows:

> A. *At the expiration of a lease or at the termination of a lease of a periodic Tenant, no Landlord may request or receive a percentage increase in rent greater that 4% or the percentage difference between the consumer price index three months prior to the expiration or termination of the lease three months prior to the commencement of the lease term, whichever is less.*

RE: Portside Towers – Base Rent Calculations
Page 3

> B. *No more than one such cost-of-living rental increase in any one twelve-month period shall be permitted irrespective of the number of different tenants occupying said housing space during said 12-month period.*

In order to qualify for a rent increase, a landlord is required to register their rent roll with the Bureau. The Ordinance provides in this regard in §260-3H:

> *The landlord shall register the rent roll with the Rent Leveling Bureau in order to qualify for any rental increase.*

In accordance with §260-3H, the Landlord is required to register the rent roll every year for properties that are subject to Rent Control. As shown in the image above, the dates listed under "Date of Increase" are the commencement dates noted on the correlating lease agreements. The Landlord failed to file their Annual Landlord Registration Statements, (the "Registrations"), during the 2016, 2017, 2018, 2019, and 2020 registration periods and is therefore not entitled to any of the Consumer Price Index ("CPI") percentage increases during those years. For those years where Registrations were not filed, the Bureau indicated "No Rent Roll Received." The Landlord did file their Registrations during the 2021, 2022, 2023, and 2024 registration periods and is entitled to a CPI increase for those years. Here, the Bureau indicated "Rent Roll Received".

While conducting these calculations, there were instances where a unit had several tenant turnovers within a twelve (12) month period of time. Using the example above, there were two tenants occupying this specific unit in less than a twelve-month period of time; one tenant's lease agreement commencing on July 27, 2021, and another's beginning November 5, 2021. In such cases, the Bureau applied the CPI increase to the "Permitted Base Rent" during the first lease term during that respective registration period so long as a Registration was received (here it was applied to the tenant whose lease began on July 27, 2021.) Since a CPI increase was applied to the "Permitted Base Rent" during the 2021 registration period, the Landlord could not collect another CPI increase when the new tenant moved in on November 5, 2021, as that would be more than one increase within twelve months; thus, the "Permitted Base Rent" remained the same.

## COVID-19 INCREASES

There may be cases where the permitted "Actual Rents" may differ from the "Permitted Base Rent." As a result of the Rent Freeze Ordinance, which was unanimously passed by the City Council during the COVID-19 pandemic, landlords were prohibited from collecting or imposing increases on existing tenants from June of 2020 – September 15, 2021. With proper notice per State Law, the earliest that a rent increase could be collected was November 1, 2021. However, although Landlords were not allowed to impose a rent increase onto their tenants, they were permitted to increase the unit's base rent and were allowed to charge the increased base rent to any new incoming tenants. So although the "Permitted Base Rent" may reflect one amount, any existing tenants should not have received an increase during that time and the permitted Actual Rent for that tenant will differ should remain the same for those years.

## LEASE AGREEMENT(S) NOT PROVIDED

After further review of the documents provided, the Bureau was unable to locate several lease agreements

RE: Portside Towers – Base Rent Calculations
Page 4

and indicated "NO LEASE" for those units. In cases where the Bureau was in receipt of a 2016 lease agreement but did not have one of the subsequent lease agreements, the Bureau inputted an increase when applicable using the same month of increase as the year prior. Where 2016 lease agreements were not provided, the Bureau is unable to render an appropriate determination regarding the "Permitted Base Rent" of those units and requests that the Landlord provide those documents immediately following receipt of this notice.

CONCLUSION

The Bureau noted the monthly rents charged and collected from the tenants under "Rent on Lease Agreement." **Those rents that appear to be illegal and are greater than the calculated "Permitted Base Rent" are highlighted in red.** The Bureau provides the attached base rent calculations for both properties. Considering the size of the properties, we request that both parties review the attached calculations and confirm that all units have been accounted for. Should there be any units that are missing calculations, please respond immediately so those calculations can be provided.

Shyrone Richardson
Director