

*Derek Reed | Partner*
direct:  (973) 854-6710
dreed@EPGPRlaw.com

January 31, 2025

**Via ECF**
Magistrate Judge José R. Almonte
Chambers of José R. Almonte
Frank R. Lautenberg U.S. Post Office & Courthouse Building
2 Federal Square
Newark, NJ 07102

Re:  *The Towers at Portside Urban Renewal Company L.L.C., et al. v. The City of Jersey City, et al.*  Case No. 2:23-cv-22291-MCA-JRA

Dear Judge Arleo and Magistrate Judge Almonte:

Pursuant to this Court's Fourth Amended Scheduling Order, Plaintiffs (collectively, "Portside"), Defendants (collectively, the "City"), and Defendant-Intervenors (collectively, "Tenants") submit the following joint report on outstanding discovery disputes:

**Dispute No. 1**: Defendants have reneged on commitments made to Portside and representations made to this Court, in which Defendants committed to provide certain discovery that they now refuse to provide, resulting in prejudice to Portside. Notably, we believe all of the City and Tenant's positions in this letter are particularly prejudicial and unfair given that Portside has responded to all of the parties' discovery requests to this point, including producing tens of thousands of documents as referenced in our last letter to the Court.

**Portside's Position**: Defendants have reneged on their commitment to Portside and representations to this Court by refusing to provide any of the outstanding discovery they represented they would provide, even though that discovery is necessary for Defendants to comply with their discovery obligations. First, Defendants responded to Portside's discovery requests with a slew of objections, incomplete and non-responsive answers, and, eventually, incomplete and improper document productions. After countless letters and meet-and-confers, including some dating as far back as June and September 2024, in which Portside requested Defendants to confirm they will produce the requested discovery and supplement their insufficient interrogatory responses, Defendants committed to producing documents responsive to all of Portside's document requests and supplementing their interrogatory responses to provide appropriate answers. Thus, Portside wrote in the December 19, 2024 joint letter to this Court that, in reliance on Defendants' representations, Portside was not raising any discovery disputes with Defendants. The Court therefore converted the discovery dispute hearing scheduled for January 7, 2025 into a

Please direct replies to:
60 Park Place, 18th Floor, Newark, NJ 07102
Tel: (973) 643-0040 • Fax: (973) 596-1781 • www.EPGPRlaw.com

NEWARK    •    NEW YORK    •    MORRISTOWN

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 2

telephonic status conference. Prior to the status conference, Portside met and conferred with Defendants to confirm their stated commitments.

On January 6, 2025, Defendants provided confirmation that they would provide this discovery and requested search terms and other information to assist them in their searches. Thus, at the January 7 status conference, Portside relied on these commitments in believing that it had no active discovery dispute with Defendants, and it updated the Court accordingly. Defendants specifically told the Court that they would comply with each of Portside's requests, and requested a 60-day fact discovery extension to do so. The Court granted a 30-day extension for paper discovery and an additional month to complete depositions.

However, only a few weeks later, Defendants completely walked away from their express commitments to Portside and the Court. During a January 24, 2025 meet-and-confer, Defendants announced for the first time that they would not be producing *any* further discovery in this case, supposedly because of their own determination that Portside's case lacks merit. Defendants stated that because they had unilaterally determined Portside will lose the case, various of Portside's RFPs and interrogatories—which until that day, Defendants had agreed to supplement and respond to—were moot. Defendants further argued that discovery was limited to the factual determinations made by the Board, and stated the only request they would entertain from Portside was for any notices sent to the City during the period of Portside Towers' construction, contrary to their prior representations to Portside and the Court. Defendants otherwise refuse to engage in any further discovery or with Portside's attempts to resolve the outstanding disputes.

      **City's Position**: *See* City's General Position *infra*.

**Dispute No. 2**: Defendants refuse to confirm their methodology for searching for documents responsive to Portside's RFPs.

      **Portside's Position**: In a January 17, 2025 letter, Portside asked Defendants to confirm that their search for documents responsive to Portside's discovery requests not only includes ESI review of their custodians' documents, but also includes review of hard-copy documents, central file locations, and interviews with relevant custodians about additional locations of potentially responsive documents. Based on their unilateral determination that Portside's claims have no merit, Defendants refuse to provide an answer to whether their discovery responses are complete in any of these respects.

      **City's Position**: *See* City's General Position *infra*.

**Dispute No. 3**: Defendants are withholding at least 2,376 responsive documents from production.

      **Portside's Position**: In a January 6 email and during the January 7 status conference, Defendants represented that they ran an agreed-upon list of search terms across Defendants' custodial documents, yielding 2,376 emails. Portside understands that these are internal

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 3

communications about the Board's decision involving decision makers and City officials, which to date Portside has received none of. Defendants said they would produce these emails subject to a review for privilege. Counsel for the City, Mr. McKinney, represented to the Court that he had already started that review, and made representations about how much time it would take to complete it. Despite those representations, Defendants now refuse to produce any of those emails or provide any further discovery; Defendants seek to justify this about-face based on their supposed determinations that Portside's claims lack merit. Portside seeks leave to file a brief on the importance of these documents, why Defendants should be compelled to produce them, and the prejudice to Portside that will otherwise result. Alternatively, to expedite resolution of this dispute, Portside is willing to take on its own review of the documents generated by using these search terms and the terms referenced in Dispute Nos. 4 and 5 below, subject to Defendants reserving the right to claw back any and all privileged documents should any be identified.

**City's Position**: *See* City's General Position *infra*.

**Dispute No. 4**: Defendants refuse to produce their emails with Defendant-Intervenors.

**Portside's Position**: Since October 2024, Portside has requested that Defendants produce their emails to, from, or cc'ing the named Defendant-Intervenors, as well as any voicemails or other communications with them. Defendants agreed to do so and asked Portside to provide search terms to aid their search. Portside provided those terms on January 17. Defendants have again reneged on their commitments and now refuse to search for or produce these communications.

**City's Position**: *See* City's General Position *infra*.

**Dispute No. 5**: Defendants refuse to produce relevant historical documents to Portside related to the construction of Portside Towers and the City's rent control regime.

**Portside's Position**: Since September 2024, Portside has requested that Defendants search for and produce documents going back to the 1990s related to key topics such as the City's involvement in the construction of Portside Towers, the City's Tidewater Basin Redevelopment Plan, and Board policies governing review of applications for rent control exemption. All of these documents are particularly relevant to determining whether the City received and lost the relevant notice, deemed the relevant notice consequential, or had any grounds to deny the Exemption, and whether the exemption pursuant to the Tidewater Basin Redevelopment Plan applies to Portside Towers. Defendants once again agreed to produce these documents and asked Portside to provide search terms to aid their search. Portside provided those terms on January 17. However, Defendants now refuse to produce any of these documents, and again seek to justify their about-face on their assertion that Portside's claims lack merit. All of these documents are relevant to Portside's claim that the Board's decision was arbitrary and capricious. (*See, e.g.,* Dkt. 65 at Count VI (Claim in Lieu of Prerogative Writ) ¶167(i), (o)). The Tidewater Basin documents are also relevant to Portside's claim that the Board failed to account that Portside Towers' location within the Tidewater Basin Redevelopment Plan Area renders them exempt from rent control pursuant to

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 4

Ordinance §260-1. (*See* Dkt. 65 at Count VI (Claim in Lieu of Prerogative Writ) ¶167(p)). Other relevant documents dating back to the 1990s, including communications with the City construction official and other relevant personnel, will help prove that the undisputed provision of notice for one of the two towers afforded the City with all the information it sought or needed in the 1990s and that it was immaterial to the City whether it received a duplicate notice for the second tower; as a result, this discovery relates to Portside's claims that the Board was wrong as a matter of law in not applying the substantial compliance doctrine in its determination. (*See* Dkt. 65 at Count VI (Claim in Lieu of Prerogative Writ) ¶167(g)). *See Block 268, LLC v. City of Hoboken Rent Leveling & Stabilization Bd.*, 401 N.J. Super. 563, 569, (App. Div. 2008). One factor of substantial compliance is "the lack of prejudice to the defending party." *Bernstein v. Bd. of Trustees of Teachers' Pension & Annuity Fund*, 151 N.J. Super. 71, 76–77 (App. Div. 1977).

**City's Position**: *See* City's General Position *infra*.

**Dispute No. 6**: Defendants refuse to supplement their response to Portside's Interrogatory 1 (Identify all persons and entities with whom You have communicated regarding the Board's Decision, including any appeals therefrom).

**Portside's Position**: In response to this interrogatory, Defendants have stated that they have communicated with "members of the Board, City Council, Corporate Counsel, outside retained legal counsel, the Plaintiffs and its representatives and the respective tenant associations." Since June 2024, Portside has requested that Defendants supplement this response to provide the information requested by Portside in the instructions to their interrogatories, including the full names of any persons identified in response to the interrogatory. Defendants have failed to supplement this response and now refuse to do so for the same erroneous reasons described above.

**City's Position**: *See* City's General Position *infra*.

**Dispute No. 7**: Defendants refuse to supplement their responses to Portside's Interrogatories 2 (Identify and describe all resolutions adopted by the Board relating to the Exemption, Ordinance § 260-6(C), or N.J.S.A. § 2A:42-84.5) and 3(Identify and describe all determinations issued by the Office of Landlord/Tenant Relations relating to the Exemption, Ordinance § 260-6(C), or N.J.S.A. § 2A:42-84.5).

**Portside's Position**: Defendants characterized these interrogatories as "seeking a production of documents," claimed they are "not truly . . . interrogator[ies]," and agreed only to produce "copies of any and all responsive resolutions" and determinations as part of their document production. Portside initially explained that these interrogatories do not seek documents, but instead seek narrative responses identifying and describing relevant resolutions and determinations to support Portside's claims that the Board's decision was arbitrary and capricious. (*See, e.g.,* Dkt. 65 at Count VI (Claim in Lieu of Prerogative Writ) ¶167(i), (o)). However, in the spirit of compromise, Portside stated it would be satisfied with supplemental responses that identified the Bates numbers of any responsive resolutions and determinations. Defendants have

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 5

refused to supplement these responses, providing neither appropriate narrative responses nor Bates numbers so Portside can identify any relevant documents.

**City's Position**: *See* City's General Position *infra*.

**Dispute No. 8**: Defendants refuse to respond to Portside's Interrogatory 5 (Identify the annual revenue to the City since the inception of the payment in lieu of taxes ("PILOT") program due to Portside's participation in PILOT and what they would be if Portside had not participated in PILOT).

**Portside's Position**: Defendants have refused to respond to this interrogatory, arguing it is not relevant to the PW claims. In fact, this request relates to Portside's claim that it substantially complied with the state Exemption Statute's notice provisions and that the Board was wrong as a matter of law in not applying the substantial compliance doctrine in its determination. (*See* Dkt. 65 at Count VI (Claim in Lieu of Prerogative Writ) ¶167(e), (g), (m)). The PILOT agreements show that Defendants were aware of and benefited from Portside's exemption status, and thus were not prejudiced by any purported failure to strictly comply with the notice provision. The funds the City enjoyed as a result of Portside's participation in the PILOT program are important evidence regarding the lack of any prejudice. However, Defendants again maintain their refusal based on their determination that Portside's claims are meritless.

**City's Position**: *See* City's General Position *infra*.

**Dispute No. 9**: Tenants are not searching for documents responsive to Portside's RFP 6 (All Documents reflecting knowledge or information known by Portside Towers tenants that Portside Towers was covered by the Exemption, including before the tenant agreed to enter their original lease at Portside).

**Portside's Position**: RFP 6 is directly relevant to Portside's claims that the Board failed to consider that Portside tenants knew the property was exempt and voluntarily agreed to pay market rents for nearly 30 years before seeking a windfall through a retroactive denial of the Exemption; RFP 6 is also relevant to showing that by providing notice to the tenants over 30 years, Portside substantially complied with the notice provisions. (*See,* Dkt. 65 at Count VI (Claim in Lieu of Prerogative Writ) ¶167(g), (n)). While Tenants state they are not withholding documents based on their objections to RFP 6, they are not willing to specifically search for responsive documents. Tenants stated that if Portside proposed search terms for Tenants to run across their documents, Tenants would be willing to consider those terms. Portside has provided search terms yet has not received confirmation that Tenants will run those terms or a modified version thereof.

**Tenants' Position**: *See* Tenants' General Position *infra*.

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 6

**Dispute No. 10**: Tenants refuse to produce documents responsive to Portside's RFP 11 (All Defendant-Intervenors' WhatsApp group chat messages related to the Dispute or in which Portside Towers tenants communicate about this Dispute).

      **Portside's Position**: Since September 2024, Portside has sought messages from a WhatsApp group chat used by Portside Towers tenants to communicate about the ongoing rent control dispute. Tenants have repeatedly changed their position on whether they will comply with this request. They initially refused to produce any communications in the WhatsApp chat based on myriad objections, including relevance. But in November 8, 2024 and December 13, 2024 letters to Portside, Tenants agreed to produce non-privileged messages from the chat related to the dispute. However, in a January 15, 2025 email, Tenants withdrew from that position and refused to produce any messages from the chat. During a January 24, 2025 meet-and-confer, Tenants asserted that this refusal was based on attorney-client privilege grounds. They claimed that, far from being irrelevant, the WhatsApp chat is used by tenants to collaborate on this case, utilizing legal information provided by Tenants' attorneys. They thus claimed that legal and privilege issues are "intertwined" with each and every message in the chat. However, Tenants have not even represented to Portside that all of the hundreds of members of the chat are their clients or whether any non-clients have been members of the chat at any point in the past.

      **Tenants' Position**: *See* Tenants' General Position *infra*.

**Dispute No. 11**: Tenants refuse to produce video recordings responsive to Portside's RFP 10 (All video or audio recordings related to the Dispute in the Portside common areas, of Portside employees, of City employees, or of other Portside Towers tenants).

      **Portside's Position**: While Tenants have agreed to produce all relevant video and audio recordings in response to RFP 10, Tenants have not agreed to produce video recordings made pursuant to a purported "documentary" about Portside Towers that Portside understands has at least partially been filmed on Portside Towers grounds.

      **Tenants' Position**: *See* Tenants' General Position *infra*.

**City's General Position**

      A review of Plaintiff's section of this letter reconfirms the Plaintiff's discovery demands are well beyond the scope of discovery limited by this Court to the prerogative writ claims. Plaintiff has repeatedly mischaracterized the City's position to justify their overly broad discovery demands that do not pertain to the prerogative writ claims. In light of the Plaintiff's focus on improper discovery demands rather than briefing the relevant issues, this matter will not move towards a resolution. While we recognize that this matter is not in the briefing stage, it is necessary to address some of the substantive issues to emphasize and confirm that the Plaintiff's discovery demands exceed the scope of this Court's Order.

6

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 7

The purpose of prerogative writs is to expedite a final disposition. R. 4:69-4.  Discovery, if any, is extremely limited. Moreover, a prerogative writ "is in no sense a probe comparable to a grand jury inquiry … or an investigation into the conduct of municipal affairs." Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J. Super. 522, 555 (App. Div. 1960).  Discovery must be limited to the facts and law relied upon by the municipality to reach its decision.  In this instance, the Rent Board based its conclusions, in part, on the fact that statutorily required letter requesting exemptions for 100 Warren and 155 Washington Streets were not timely filed by the Plaintiff with the City. Therefore, the Plaintiff's discovery request need not be more than communications to the City requesting an exemption from rent control at least 30 days' prior to the issuance of the Certificates of Occupancy for the properties. The City is willing to conduct a search for such items.

The City responded to Plaintiff's discovery demands. The City produced over 57,000 responsive pages with metadata in both PDF and PST format.  After repeated requests and efforts by the City to limit the discovery request to the Rent Board's November 3, 2023 decision, Plaintiff failed to limit their discovery demands to this issue as confirmed herein.

Here, Plaintiff seeks to override the Court's limited scope of discovery beyond the prerogative writ claims. As stated in prior joint letters, Plaintiff's discovery demands are overly broad, unduly burdensome and exceed the scope of the prerogative writ claims. Some of Plaintiffs' improper discovery demands include PILOT (payment in lieu of taxes) agreements for other properties, tax abatements, documents relating to the Tidewater Redevelopment Plan, decisions made by the Rent Board regarding the exemption issue as to other buildings dating back to 1992, all resolutions adopted by the Rent Board relating to exemptions and enforcement actions against other buildings, unrelated metadata, record retention policies and Rent Board policies as to the review of applications for exemptions. None of these issues relate to the prerogative writ claims, that seek to vacate the Rent Board's November 3, 2023 decision, which is based upon the hearings conducted by the Rent Board and documents it reviewed and considered to render its decision.

The discovery requests made by the Plaintiff have no legal foundation to ultimately challenge the decision of the Rent Board.  For example, during our most recent meeting with Your Honor, Plaintiff incorrectly claimed they need multiple documents and communications involving the Tidewater Redevelopment Plan.  Plaintiff erroneously believes this redevelopment plan entitles their client to an exemption from rent control in perpetuity because the Plaintiff's properties are in the same area as the properties that are subject to the Tidewater Plan.

In the definition of "dwelling" in Section 260-1 of the Jersey City Municipal Code, various dwellings are defined and identified as properties that are exempt from rent control, which includes the following:

> **"Newly constructed dwellings"** with 25 or more dwelling units located within a redevelopment area as defined in [N.J.S.A. 40A:12-1, et seq.], **for which the City Council has approved a redevelopment plan**, in accordance with [N.J.S.A. 40A:12-1, et seq.].

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 8

The Certificates of Occupancy for Plaintiff's property located at 100 Warren was issued on August 25, 1992 and 155 Washington Street was issued on December 31, 1997. No redevelopment Plan was approved by City Council with regard to Plaintiff's properties. Rather, the Tidewater Redevelopment Plan was adopted on November 10, 1999 under Municipal Ordinance 99-167, which is approximately 2 years after all construction was completed at Plaintiff's properties.

Clearly, the Plaintiff's properties were not "newly constructed dwellings" when the City adopted the Tidewater Redevelopment Plan. Therefore, they are not subject to an exemption from rent control. Consequently, there is no basis to seek discovery pertaining to the Tidewater Redevelopment Plan.

Plaintiff's demands for all communications between numerous city officials, specific tenants and tenant organizations also have no bearing on whether or not the Rent Board's ruling was in error. The Rent Board's determination was based on the fact that the Plaintiff failed to comply with N.J.S.A. 24:42-84.4 and City Ordinance 260-6C for failure to file a letter seeking an exemption from rent control at least 30 days before the issuance of the Certificates of Occupancy.

The City was optimistic that, with more time, the parties would ultimately reach an amicable resolution regarding discovery. However, this optimism has unfortunately dissipated given Plaintiff's demands for items beyond the scope of the Court's discovery Order. We also note that the materials produced by Plaintiff in discovery have been difficult to access and require software not possessed by the City to open.

Moreover, the Plaintiff continues to defy the lawful decision of the Board by impermissibly raising rents at Portside Towers – the City seeks leave of this Court (to the extent necessary) to move to enforce the Board's decision.

**Portside's Position**: The Court's Fourth Amended Scheduling Order directed the parties to raise any remaining *discovery* disputes in this joint status letter. It is Portside's position that raising non-discovery disputes, such as the rent dispute, in this letter is inappropriate. Notwithstanding, Portside reserves all rights regarding this issue and intends to present to the Court in a manner consistent with prior directive.

**Tenants' General Position**

As has been recognized by New Jersey's Appellate Division, discovery in prerogative writ actions is limited to the administrative record below. *Willoughby v. Planning Bd. of. Tp. of Deptford*, 306 N.J. Super. 266, 273 (App. Div. 1997) (explaining that a court's review of a municipal administrative agency's "quasi-judicial decision [by way of] . . . an action in lieu of prerogative writs . . . must be based solely on the agency record."). Indeed, in recognition of this

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 9

principle, this Court has ordered that discovery "be limited to issues relating to the prerogative writ claims." *See* Doc. No. 88 at ¶ 4. However, despite the foregoing and the Tenants' and City's objections, Portside has repeatedly insisted upon receiving discovery that far exceeds what is permitted in a prerogative writ action. For these reasons, the Tenants join the City in its argument that Portside's discovery requests are overly broad, unduly burdensome, and exceed the scope of the prerogative writ claims.

The discovery Portside seeks – including, without limitation, documents and information (i) concerning the knowledge that thousands of tenants allegedly held with respect to the exemption's claimed applicability; (ii) the tenants' confidential WhatsApp messages; and (iii) video and audio recordings of Portside employees, City employees, and tenants in Portside's common areas – are **<u>entirely irrelevant</u>** to the justiciable issue in this case, i.e., whether the record below supports the City's decision that the towers have not been and are not exempt from rent control. No matter the lengths Portside goes through to attempt to justify these overreaching requests, the fact remains that the information Portside seeks bears no relevance to whether the City made the correct decision. Simply put, Portside's discovery requests have served no purpose other than to needlessly delay what, as the City correctly states, should have been an expedited proceeding.

Importantly, despite their objections, the Tenants have already expended significant efforts (and costs) to comply with Portside's **<u>extensive</u>** requests as quickly as possible. Specifically, notwithstanding that the Tenants were prohibited from joining this case until July 31, 2024 (and were therefore deprived of the eight-month head start Portside and Defendants had to conduct discovery), to date the Tenants have produced tens of thousands of pages of documents. As part of these efforts, and to alleviate Portside's concerns with their initial production, the Tenants engaged an e-discovery vendor to complete an extensive search of five (5) email custodians (i.e., the named tenants and tenant associations), resulting in the production of thousands of pages of additional documents (including responsive metadata). Notably, these efforts were carried out while the Tenants were working tirelessly to review the tens of thousands of pages of documents that Portside and the City have produced. Indeed, given the sheer volume of documents already involved, the Tenants respectfully submit that additional time is required for the Tenants to complete their review of Portside's and the City's document production.[1]

In light of the foregoing, the Tenants respectfully request that the Court set forth a schedule for the parties to brief the issue of what the Court's record will consist of in order to decide the prerogative writ claim. The Tenants respectfully submit that these submissions will inform the Court of what materials are reasonably pertinent to the prerogative writ analysis and whether any additional discovery is warranted at this juncture of the litigation. Defendant-Intervenors respectfully suggest that this approach will streamline this suit and conserve judicial resources, as

---

[1] To this end, we note that upon completing our initial review of Portside's document production, we advised Portside that a significant portion of their production (i.e., over one-hundred fifty thousand (150,000) pages) appeared to have been missing. On January 28, 2025, Portside resent that purportedly contains their entire production as of that date. We are in the process of reviewing same.

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 10

it would resolve all discovery disputes and allow this matter to proceed to the next stage of litigation. To that end, we respectfully repeat that, to the extent the Court were to entertain this request, the record before it must be solely limited to the record that was before the City in rendering its decision that the towers have not been and are not exempt from rent control.

**Dispute No. 12**: In addition to the foregoing discovery disputes, a long-simmering issue is coming to a head regarding improper rental rates being applied to the Portside tenants as a whole, and the fact that six tenants, according to Portside/Equity, are now materially behind in rent payments owed.

**Tenants' Position**: Since the date of the City Rent Control Board's October 19, 2023 decision ("DOD"), which decision has never been stayed, Portside/Equity has increased tenant rents by regularly applying increases to rental rates that, by virtue of the RLB's decision, are illegal. Also, although the City issued an initial legal rent recalculation following the DOD, it is the Tenant's position that due to Plaintiffs' non-compliance with rent control requirements, even those calculations are in error. Consequently, and in order to establish a consistent, fair and objective approach to rental rates for each unit in the 500 plus residential unit complex during the pendency of the litigation, Tenants have requested that Plaintiffs negotiate a "stand-still" or "status quo" agreement. That agreement, we contend, would apply to all represented tenants, not just the six residents for which Plaintiffs seek relief. Unfortunately, following a meet and confer today, Potrside/Equity have declined our invitation to negotiate an interim rental rate agreement. The Tenant will ask the Court to authorize us to file an Order to Show Cause on an expedited basis to obtain relief through a judicial order.

**Portside's Position**: The Court's Fourth Amended Scheduling Order directed the parties to raise any remaining *discovery* disputes in this joint status letter. It is Portside's position that raising non-discovery disputes, such as the rental dispute, in this letter is inappropriate. Notwithstanding, Portside reserves all rights regarding this issue and intends to present to the Court in a manner consistent with prior directive.

Dated:  January 31, 2025                    Respectfully submitted,


By: */s/ Derek D. Reed*                      By: */s/ Philip Samuel Adelman*

Derek D. Reed, Esq.                          Philip Samuel Adelman, Esquire
Ehrlich, Petriello, Gudin                    Assistant Corporation Counsel
Plaza & Reed                                 Jersey City Law Department
A Professional Corporation                   City Hall – 280 Grove Street
60 Park Place, Suite 1016                    Jersey City, New Jersey 07302
Newark, New Jersey 07102                     (201) 547-4810
(973) 643-0040

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

January 31, 2025
Page 11

| | *Attorney for Defendants, City of Jersey City and City of Jersey City Rent Leveling Board* |
|---|---|
| Terri L. Mascherin<br>Andrew W. Vail<br>Daniel J. Weiss<br>Jenner & Block LLC<br>353 Norh Clark Street<br>354 Chicago, Illinois 60654<br>Phone: (312) 222-9350<br>Facsimile: (312) 840-7375<br><br>*Attorneys for Plaintiffs the Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC*<br><br>By: */s/ Mollie Hartman Lustig*<br><br>Mollie Hartman Lustig, Esq.<br>McLaughlin & Stern, LLP<br>1 Elm Street, Suite 2<br>Westfield, New Jersey 07090<br>(212) 448-1100<br><br>*Attorney for Interveners Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch*<br><br><br>cc: All counsel (via ECF) | |