


# CITY OF JERSEY CITY
## DEPARTMENT OF LAW

CITY HALL ● 280 GROVE STREET ● JERSEY CITY, NJ 07302
PHONE (201) 547-5229

**STEVEN M. FULOP**
*MAYOR OF JERSEY CITY*

**BRITTANY M. MURRAY**
*ACTING CORPORATION COUNSEL*

March 6, 2024

**Via ECF**
The Honorable Jose Almonte, U.S.M.J.
United States District Court for the District of New Jersey
U.S. Post Office & Courthouse Building
2 Federal Square
Newark, New Jersey 07102

> **Re:** **Discovery Disputes: The Towers at Portside, et al v. City of Jersey City, et al.**
> **Civil Action No. 2:23-cv-22291 (MCA)(JRA)**

Dear Judge Almonte:

This office represents the City of Jersey City and the Jersey City Rent Leveling Board (collectively the "City") in the above matter. Along with Plaintiff and Intervenors, the parties respectfully submit this joint status letter in connection with the status conference scheduled for March 13, 2025.

Following is a summary of the parties' positions as to discovery disputes that are unresolved.

**Dispute No. 1**: The City has failed to work with Portside in good faith to resolve the various disputes set forth in the parties' January 31, 2025 joint status letter.

**Portside's Position**: The City has unilaterally refused to participate in discovery and refused to honor the discovery agreements it previously made. The parties' latest February 11, 2025 meet-and-confer confirmed the City's refusal to proceed with discovery. The City's counsel stated that the City has made no efforts since the parties' January 31 joint letter to produce long-overdue documents and other information, despite repeated prior representations by counsel that the City would be producing documents to Portside. The City appears to be seeking to run out the clock and proceed to trial without affording Portside previously-agreed upon discovery or depositions, which are "vital" to a party's preparation for trial. *Worthy v. City of Newark*, 2008 WL 413309, at *3 (D.N.J. Feb. 13, 2008). And after all of this time and the Court's extensions, the City is now conceding that it is standing on a position that has already been rejected by this Court, i.e. that it believes that this case should be decided on the underlying record alone.

All of the discovery failures by the City described in the January 31 letter remain live and necessitate the Court's involvement at the upcoming March 13, 2025 hearing. Those issues are as follows:

- Despite representing to Portside and the Court on multiple occasions, including during our last conference with the Court in January 2025, that the City would produce 2,376 responsive documents reflecting internal communications upon completing a privilege review of those

1

documents—which the Court granted an extension of the discovery deadlines, in part, for the City to complete—the City refuses to produce any of those documents.

- The City refuses to produce its communications with Tenants.
- The City refuses to produce relevant historical documents to Portside related to the construction of Portside Towers and the City's rent control regime.
- The City refuses to supplement its responses to Portside's Interrogatory Nos. 1 (Identify all persons and entities with whom You have communicated regarding the Board's Decision, including any appeals therefrom), 2 (Identify and describe all resolutions adopted by the Board relating to the Exemption, Ordinance § 260-6(C), or N.J.S.A. § 2A:42-84.5) and 3(Identify and describe all determinations issued by the Office of Landlord/Tenant Relations relating to the Exemption, Ordinance § 260-6(C), or N.J.S.A. § 2A:42-84.5), and 5 (Identify the annual revenue to the City since the inception of the payment in lieu of taxes ("PILOT") program due to Portside's participation in PILOT and what they would be if Portside had not participated in PILOT).

The City's refusal to comply stands in contrast to Portside's timely response and production in full in relation to each of the City's discovery requests, including those which mirror the requests to which it now refuses to respond. (*See, e.g.,* RFP 5 (Any and all documents and/or tangible items containing written oral statements or communications between the Landlord and the Council, City, Board, Bureau, Tenants or City employees including, but not limited to Shyrone Richardson, Johna Noel, Dinah Hendon or Eric Bulwith relating to your prerogative writ claims and/or the Decision and/or the Recalculation), RFP 7 (Any and all documents and/or tangible items relating to any communications between and/or involving any parties relating to the Decision and/or the Recalculation and/or the facts that form the subject of and/or support your prerogative writ claims), and Interrogatory 2 (Describe with specificity all communications (written and verbal) between any of the Tenants and the Landlord relating to the Decision, the Recalculation and/or regarding the facts that support your prerogative writ claims from January 1, 2020 to the present)). It also comes months after Portside issued its narrowed discovery requests to the City in accordance with the Court's order limiting this stage of the case to the claims in lieu of prerogative writ.

Portside otherwise refers the Court to the arguments and case law presented in its December 19, 2024, December 30, 2024, and January 31, 2025 status reports.

**City's Position**: The City's position is respectfully submitted to this Court. All of Plaintiff's disputes set forth herein concern discovery demands outside the scope of the Court's Order limiting discovery to the prerogative writ claims. Moreover, the materials sought date back to 1992 and is unduly burdensome to force a public entity to review and produce thousands of pages outside the scope of the Court's discovery Order. The City initially agreed to engage in discovery because this Court limited discovery to the prerogative writ action. The City has produced over 57,000 pages of discovery.

Prerogative writs are decided on the record of the agency whose decision is being challenged in an expedited manner. Despite this Court's Order, the Plaintiff's demands and recent deposition notices exceed the scope of the prerogative writ action. Also, Plaintiff's arguments stated herein distort the City's positions. Accordingly, the City respectfully requests that the Plaintiff's discovery demands be denied and that a briefing schedule be set regarding the prerogative writ claim.

R. 4:69-4 "provides for special case management for [prerogative writs] for the purpose of expediting the final disposition." Pressler & Verniero, Current N.J. Court Rules, comment 5.1 on R.

2

4:69-4 at 1643 (2024). In prerogative writ matter decided by a local agency, "the state of the record ordinarily controls." Id., comment 5.2 on R. 4:69-4 at 1643 (2024).  Moreover, "the 450 day discovery period afforded by 4:24-1 is normally inappropriate" in prerogative writ matters. Id., comment 5.1. The scope of discovery, "if any," shall be determined by the Court. R. 4:69-4.  Moreover,

> [Prerogative writs are] a special cause of action because it is a non-jury proceeding with intensive case management, and is most often determined on the transcripts of the hearing below. N.J.R. 4:69-4. Although discovery is permitted, it is usually limited to the expert testimony. Many of these appeals are based on the administrative record made before the Agency below, and discovery is often limited to requiring production of that record. As a result, the trial may be conducted without factual witnesses. A court is obligated to review the entire record which includes the testimony of the parties [from the transcript/record below], the comments of the municipal officials and most importantly the comments of the public. (citations omitted)(emphasis added)

Albanian Associated Fund v. Twp. of Wayne, 2007 U.S. Dist. LEXIS 87666 *10 (D.N.J. November 29, 2007). If quasi-judicial action is challenged like in the instant matter, "the court's decision must be based solely on the agency record." Hirth v. City of Hoboken, 337 N.J. Super. 149, 166 (App. Div. 2001) citing Willoughby v. Planning Bd. of Tp. of Deptford, 306 N.J. Super. 266, 273-274 (App. Div. 1997)(Prerogative writ challenging planning board's decision decided by the Court solely based on the agency record).

Clearly, a Court's decision as to the prerogative claim should based on the Board's written decision and the record on which it relied make its decision.

In their Complaint, Plaintiff expressly admits, "The process for doing so is a complaint in lieu of prerogative writ. R. 4:69-6(a)." [Dkt no. 65], ¶165.  The Complaint further states, "Pursuant to a complaint in lieu of a prerogative writ, courts review the factual determinations of municipal boards for whether they were arbitrary, capricious, or unreasonable. Fallone Properties, L.L.C. v. Bethlehem Tp. Planning Bd., 369 N.J. Super. 552, 560 (Super. Ct. App. Div. 2004)." Plaintiff is aware that Courts decide prerogative writs by reviewing the Board's decision and the record on which it relied to come to its conclusions. Discovery is not normally exchanged.

The attached deposition notice (Exhibit A) includes an extensive list of issues well beyond the Court's order such as, "defendants' understanding/knowledge of Jersey City's Rent Control Ordinance," "rent control enforcement/treatment in Jersey City, including how many properties are subject to the Ordinance," and how Plaintiff's property taxes have been calculated. Plaintiffs also seek PILOT (payment in lieu of taxes) agreements for other properties, tax abatements, documents relating to the Tidewater Redevelopment Plan, decisions made by the Rent Board regarding the exemption issue as to other buildings dating back to 1992, all resolutions adopted by the Rent Board relating to exemptions and enforcement actions against other buildings, unrelated metadata, record retention policies and Rent Board policies as to the review of applications for exemptions. Plaintiff demands multiple documents and communications involving the Tidewater Redevelopment Plan. Please also see Court Document no. 101 at p. 7-8 incorporated herein.

None of these issues relate to the prerogative writ claims that seek to vacate the Rent Board's November 3, 2023 decision, which is based upon the hearings conducted by the Rent Board and documents it reviewed and considered to render its decision. The discovery sought by Plaintiffs is beyond the record in this case.  At this juncture, the City will not produce any further discovery for

3

the reasons stated above and objects to the depositions Plaintiffs seek to conduct. The City respectfully requests a briefing schedule and permission to file a motion to quash the subpoena of Dinah Hendon and the deposition notices of other City employees.

**Dispute No. 2**: The City refuses to participate in any additional discovery in this case, including depositions.

**Portside's Position**: The City is refusing to engage in depositions and seeks to force Portside to proceed to trial without the benefit of necessary deposition discovery—a result that will make any trial inefficient and unfair. In compliance with the Fourth Amended Scheduling Order of this Court, on February 24, 25, and 26, 2025, Portside sent the City several deposition notices and one testimony subpoena to current and former Jersey City employees, noticed for dates between March 10, 2025 and the scheduled end of deposition discovery. The City responded on March 4, 2025 that it objects to the deposition notices and subpoenas and plans to request permission to quash them. The City further stated that it would be producing no witnesses for deposition prior to the upcoming March 13, 2025 discovery conference.

Portside requests that the Court compel the City to produce all non-privileged documents that are responsive to Portside's discovery requests by April 4, 2025. If the City maintains that they are unwilling or unable to review their responsive documents for privilege, Portside requests that the Court order the City to turn over all responsive documents for Portside's review by March 14, with the City reserving all rights to claw back all privileged documents. Portside further proposes that all depositions be completed by April 30, 2025, with no extension to expert discovery, and seeks an order requiring the witnesses Portside has noticed for deposition to sit for depositions prior to that deadline.

**City's Position**: See above

**Dispute No. 3**: Tenants have failed to work with Portside in good faith to resolve the various disputes set forth in the parties' January 31, 2025 joint status letter.

**Portside's Position**: Like the City, the Tenants have flatly refused to produce responsive information or otherwise work to reach an agreeable resolution with Portside regarding outstanding discovery disputes. For example, while Portside provided search terms to Tenants to aid resolution of the parties' dispute surrounding RFP 6, Tenants never provided a hit count, alternative search terms, or any other response.

Accordingly, all of the issues described in the parties' January 31 letter remain live and necessitate the Court's involvement at the upcoming March 13, 2025 hearing. However, in an effort to narrow the issues and move forward, Portside will seek resolution on the following disputes:

- Tenants refuse to search for documents responsive to Portside's RFP 6 (All Documents reflecting knowledge or information known by Portside Towers tenants that Portside Towers was covered by the Exemption, including before the tenant agreed to enter their original lease at Portside).
- Tenants refuse to search for or produce documents responsive to Portside's RFP 11 (All Tenants' WhatsApp group chat messages related to the Dispute or in which Portside Towers tenants communicate about this Dispute).

**Tenants' Position**: Defendant-Intervenors join in and adopt the City's position set forth above, including but not limited to our response to Portside's deposition notices. In addition, the Tenants find Portside's characterization of Tenants' discovery efforts as lacking "good faith", as misleading and disingenuous. Portside is fully aware that the Tenants have produced approximately 78,000 pages of documents to this point in discovery. They also fail to disclose to the Court that the Tenants, notwithstanding limitations in resources, in good faith, retained the services of an outside ediscovery contractor to assist in document production. Those efforts included development of 426 search terms used to comb through thousands of email messages and related documents. Notably, Portside was presented with that list and never objected to same. The expense to the tenants in this endeavor has been great.

With regard to Portside's RFP 6, Portside is seeking documents that might suggest that individual tenants were aware that Portside was claiming a rent control exemption. The Tenants contend that such information has no bearing on whether or not the separate towers were, in fact, subject to rent control, and plays no part in a prerogative writ analysis. The demand is also unreasonable since Portside has all of the subject leases in its possession. In short, Tenants will not agree to pursue this unproductive path of discovery.

With regard to Portside's RFP 11, the Tenants' WhatsApp chat group was created to gather information relating to the litigation and for disaffected tenants to voice their concerns and issues. Again, this information plays no part in a prerogative writ analysis and in any event contains attorney-client privileged communications. Tenants will not agree to pursue this unproductive path of discovery as well.

Finally, the Kevin Weller documents requested by Portside have now been produced, bringing the Intervenors' production to over 78,000 pages.

**Dispute No. 4**: Tenants refuse to produce any additional discovery in this case.

**Portside's Position**: In a March 3, 2025 meet-and-confer, Tenants informed Portside that they would be "taking a page out of the City's book" and would no longer be engaging in any further discovery in this case, despite having fought to be named parties in this matter and agreeing to each case schedule set in this case, which were adjusted to accommodate them. According to Tenants, this refusal would include both the outstanding requests for written discovery referenced in the January 31, 2025 joint status letter and above as well as any and all depositions of Tenants, including those who have filed claims as named Defendant-Intervenors in this case.

Portside requests that the Court compel Tenants to produce all outstanding non-privileged documents that are responsive to Portside's discovery requests, as well as a privilege log, by March 21, 2025. Portside attempted to reach an agreed-upon exchange date with Tenants for a privilege log—as Portside will be providing its privilege log tomorrow—and Tenants informed Portside they would need at least three weeks. Portside further proposes that all depositions be completed by April 30, 2025, with no extension to expert discovery, and seeks an order requiring the witnesses Portside has noticed for deposition to sit for depositions prior to that deadline.

**Tenants' Position**: Tenants were joined in his action as Defendant Intervenors for the purpose of supporting the City's efforts to properly enforce their rent control ordinance against a rent control scofflaw. What the tenants knew or said has no bearing on the determination as to whether the City's rent control determination was appropriate. Accordingly, after production of tens of thousands of pages of discovery and incurring substantial vendor expense, the Tenants are joining in the City's

position that discovery should be deemed concluded.  It should be noted that Portside has yet to produce its privilege log, We have advised Portside that the Tenants should be in a position to produce its log within the next 30 days.

**Additional Issues**

**Defendant Intervenors**: The Tenants wish to bring to the Court's attention that in addition to the extraordinary and unreasonable discovery being pursued by Portside, they have now served a subpoena on "Meta Platforms, Inc.". The subpoena is being used as a work-around to  obtain access to the WhatsApp chat organized by the representatives of the Tenant Associations which heretofore the Tenants have refused to produce. Portside is clearly taking this step to circumvent what they cannot and should not  be provided in discovery. Defendant Intervenors will be seeking leave to file a motion to quash that subpoena.

Finally, in the January 31, 2025 joint status letter, Defendant Intervenors advised that it would be seeking leave of this Court to file an order show cause seeking a stay of and fixing a number for Portside's rental rates during the pendency of this litigation. In response, on February 4, 2025, counsel for Portside sent a letter to Judge Arleo seeking leave to file an eviction action against six tenants.  To the extent Your Honor will consider addressing this matter, we will be prepared to discuss same at our conference.

**Portside's Response**: First, pursuant to Rule 45, Portside served a subpoena on Meta for a single WhatsApp chat after providing notice to all parties. At no time prior to this letter, including during a meet-and-confer this week, did Tenants raise objection to the subpoena. Moreover, Portside has always intended to sequester the materials until Your Honor has the opportunity to resolve Tenants' assertion of privilege over that entire WhatsApp chat.

Second, after advising Tenants on January 23, 2025 that there are six units with tenants who are not paying rent and have debts in excess of $31,000 and that Portside would be seeking relief from the Court to address those nonpaying tenants, Portside sought leave from Judge Arleo to file a motion for necessary relief, seeking an order that would confirm that the pendency of this matter would not bar Portside from instituting eviction proceedings against the delinquent tenants.

Portside is also prepared to discuss these matters.  The parties appreciate the Court's time and attention to this matter.

<div style="margin-left: 50%;">

Respectfully submitted,
BRITTANY M. MURRAY
ACTING CORPORATION COUNSEL
*/s/ Philip S. Adelman*
Philip S. Adelman, Esq.
Assistant Corporation Counsel

</div>

cc:  Derek Reed, Esq. (via ECF)
    Mollie Lustig, Esq. (via ECF)
    Eric Nemeth, Esq. (via ECF)
    Neil Marotta, Esq. (via ECF)

6

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE TOWERS AT PORTSIDE URBAN RENEWAL COMPANY, LLC and EQUITY RESIDENTIAL MANAGEMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF JERSEY and THE CITY OF JERSEY CITY RENT LEVELING BOARD,<br><br>Defendants,<br><br>v.<br><br>PORTSIDE TOWERS WEST TENANT ASSOCIATION, PORTSIDE TOWERS EAST TENANT ASSOCIATION, KEVIN WELLER, JESSICA BRANN, MICHELE HIRSCH, and JOEL ROTHFUS<br><br>Defendants-Intervenors. | CIVIL ACTION NO. 2:23-cv-22291 (MCA) (JRA) |

## PLAINTIFFS' NOTICE OF DEPOSITION OF
## DEFENDANTS PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC (collectively, "Portside"), by and through their undersigned counsel, will take the deposition upon oral examination of the City of Jersey City and the City of Jersey City Rent Leveling Board (collectively, "Defendants") under oath for purposes of discovery and use at trial. Defendants are directed to designate a person to testify to information known or which can reasonably be known related to the topics set forth in Schedule A. The deposition shall commence at 9:00 a.m. on March 21, 2025 at the offices of Ehrlich, Petriello, Gudin, Plaza &

Reed, 60 Park Place, 18th Floor, Newark, New Jersey 07102 or another mutually convenient time and place, if so agreed upon in advance of the set date.

The deposition will be taken before a court reporter or other officer authorized to administer oaths and will be conducted in accordance with the Superior Court Rules. The deposition will be recorded stenographically and by audiovisual means. All counsel of record are invited to attend and participate.

Portside requests that at least seven (7) business days in advance of the deposition, the representative witness produce all documents and information in his/her/their possession, custody, and/or control that is responsive to Portside's PW document requests to Defendants and expressly reserves the right to reexamine him/her/them if documents and other information responsive to Portside's discovery requests have not been provided by him/her/them or Defendants with adequate advance timing to be reviewed and considered in connection with the deposition.

2

Dated: February 25, 2025

The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC

By: */s/ Andrew W. Vail*

Derek D. Reed, Esq. (Attorney ID # 038062003)
Jeffrey Plaza, Esq.
EHRLICH, PETRIELLO, GUDIN, PLAZA & REED
A Professional Corporation
60 Park Place, 18th Floor
Newark, New Jersey 07102
(973) 643-0040

Terri L. Mascherin (pro hac vice)
Andrew W. Vail (pro hac vice)
Daniel J. Weiss (pro hac vice)
JENNER & BLOCK LLC
353 North Clark Street
Chicago, Illinois 60654
Phone: (312) 222-9350
Facsimile: (312) 840-7375

*Attorneys for Plaintiffs*

3

## SCHEDULE A

## TOPICS

1.  Defendants' understanding/knowledge of Jersey City's Rent Control Ordinance located at Chapter 260 of the Jersey City Municipal Code (the "Ordinance") and the exemption from rent control set forth therein at § 260-6 (the "Local Exemption") including the purpose of the Local Exemption and Ordinance; whether Portside Towers was ever treated as exempt under the Ordinance and, if so, why; what properties are subject to the Ordinance's rent control provisions or Local Exemption; and any communications regarding the same.

2.  Defendants' understanding/knowledge of the state of New Jersey's law exempting certain properties from rent control, located at N.J.S.A § 2A:42-84.1 *et seq.* (the "State Exemption") including any facts supporting the contention that this exemption does not apply independently of the local rent control Ordinance and any communications regarding the same.

3.  Defendants' interpretation of the provision in N.J.S.A § 2A:42-84.2 providing that the State Exemption may not be limited, diminished, altered, or impaired by any municipal enactment, including any facts or circumstances that inform that interpretation.

4.  Rent control enforcement/treatment in Jersey City, including how many properties are subject to the Ordinance, Local Exemption, or State Exemption; whether notices were received prior to construction of all such properties; whether any such notices exist; what actions Defendants took with respect to each such notice; what factors or circumstances Defendants have considered with respect to each such notice; whether Defendants have ever refused to apply the State or Local Exemptions to any property; when Defendants first determined that they would not apply the State or Local Exemptions to Portside Towers; why Defendants made that decision; and who in Defendants made that decision.

5.  The Board's November 3, 2023 decision, including all facts, circumstances, and matters referenced in that decision, and any communications regarding the same.

6.  The Bureau's 2024 recalculation, including the assumptions and data underlying those recalculations, and any communications regarding the recalculation.

7.  The Bureau's communications about Portside Towers and its exemption from rent control, including any communications with Portside Towers tenants, Jersey City officials, or other persons.

8.  Any communications amongst and between Jersey City officials, members of the Board or Bureau, and any residents of Portside Towers.

9.  How property taxes for Portside Towers have been calculated, including Portside's participation in the PILOT program, payments to Jersey City from that participation, the impact of Portside's exemption status on Jersey City's ability to retain those funds, and

whether the rents received while Portside Towers was treated as exempt from rent control were considering in valuing Portside Towers for tax purposes.

10. The Tidewater Basin Redevelopment Plan, including how it has been administered, whether it is applicable to Portside Towers, why it is or is not applicable to Portside Towers, and the consequences of its application to Portside Towers should it be deemed applicable.

11. Defendants' record retention policy and the retention of records relevant to this case, including the retention of notices and other documents related to the construction of Portside Towers.

12. The retention of records of any other property that would be subject to rent control but-for the Local or State Exemptions.

13. Defendants' response to Portside's discovery requests in this matter, including their efforts to search for responsive documents and their decision not to respond to various of Portside's document requests and not to supplement its responses to Portside's interrogatories, and to withhold responsive emails from production.

## <u>CERTIFICATE OF SERVICE</u>

I, Derek Reed, hereby certify that on the 25th day of February, 2025, I caused a true and correct copy of the foregoing Notice of Deposition to be served electronically by emailing it to Defendants' and Defendants-Intervenors' counsel.

Dated: February 25, 2025                    */s/ Derek D. Reed*
                                             Derek D. Reed