**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:23-cv-22291-MCA-JRA |
| v. | ) | |
| | ) | |
| The City of Jersey City, the City of Jersey City Rent Leveling Board, and the City of Jersey City Bureau of Rent Leveling | ) ) ) | |
| | ) | |
| Defendants, and | ) | |
| | ) | |
| Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch, | ) ) ) ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION**
**TO COMPEL LIMITED DEPOSITIONS AND PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT .......................................................................................................................6

I.     The City And Tenants Should Be Compelled To Produce Witnesses And Corporate Representatives For Depositions; Any Motion To Quash The Subpoena For Ms. Hendon's Deposition Should Be Denied. ............................................................6

       A.     The Depositions Are Relevant And Tailored To The Prerogative Writ Claims. .....................................................................................................7

       B.     New Jersey Courts Allow Depositions In Prerogative Writ Claims. ......................10

II.    The Court Should Compel City To Produce Documents Related To The Tidewater Plan. .................................................................................................................12

       A.     Documents Related To The Tidewater Plan Are Relevant And Tailored To The Prerogative Writ Claims. .................................................................12

       B.     The City Has Not Demonstrated That Producing Documents Related To The Tidewater Plan Would Be Unduly Burdensome. ...........................................14

CONCLUSION...................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Schultes & Sons v. Haddon Twp.*,
83 A.2d 896 (N.J. 1951)...............................................................................................11

*Abreu v. State of New Jersey*,
2015 WL 9480021 (D.N.J. Dec. 29, 2015) ...............................................................14

*Aparin v. Cnty. of Gloucester*,
783 A.2d 271 (N.J. Super. Ct. Law Div. 2000) ........................................................10

*Aruanno v. Johnson*,
2020 WL 1951605 (D.N.J. Apr. 23, 2020) ...............................................................11

*Averbach v. Rival Mfg. Co.*,
879 F.2d 1196 (3d Cir. 1989)........................................................................................7

*Barrett v. Union Twp. Comm.*,
553 A.2d 62 (N.J. Super. Ct. App. Div. 1989)..........................................................11

*Care of Tenafly, Inc. v. Tenafly Zoning Bd. of Adjustment*,
704 A.2d 1032 (N.J. Super. Ct. App. Div. 1998).....................................................10

*Corradi v. New Jersey State Parole Board*,
2019 WL 1795545 (D.N.J. Apr. 24, 2019) ...............................................................11

*Ezeani v. Anderson*,
2022 WL 18158543 (D.N.J. Dec. 8, 2022) (Almonte, J.)..........................................7

*Galik v. Clara Maass Med. Ctr.*,
771 A.2d 1141 (N. J. 2001)...........................................................................................9

*Gutierrez v. Johnson & Johnson, Inc.*,
2002 WL 34717245 (D.N.J. Aug. 13, 2002) ..............................................................7

*Haack v. Ranieri*,
200 A.2d 522 (N.J. Super. Ct. Law Div. 1964) ........................................................11

*Occidental Chem. Corp., v. 21st Century Fox Am., Inc.*,
2022 WL 3369661 (D.N.J. Aug. 16, 2022) .................................................................9

*Porreca v. City of Millville*,
16 A.3d 1057 (N.J. Super. Ct. App. Div. 2011).......................................................10

*Spectraserv, Inc. v. Kearny Mun. Utils. Auth.*,
  2008 WL 4790978 (N.J. Super. Ct. App. Div. Nov. 5, 2008) ...................................................10

*Warrenville Plaza, Inc. v. Warren Twp. Sewerage Auth.*,
  553 A.2d 874 (N.J. Super. Ct. App. Div. 1989)........................................................................10

*Worthy v. City of Newark*,
  2008 WL 413309 (D.N.J. Feb. 13, 2008) ...................................................................................7

**Statutes**

Chapter 260 of the Jersey City Municipal Code......................................................................2, 14

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...........................................................................................................8, 14

Fed. R. Civ. P. 30(a)(1)................................................................................................................6

Fed. R. Civ. P. 30(b)(6)................................................................................................................6

Fed. R. Civ. P. 37(a)(3)(B)(ii)......................................................................................................6

Fed. R. Civ. P. 45(d)(3)(A) ..........................................................................................................7

## INTRODUCTION

This motion concerns Defendants' ("the City") and Defendant-Intervenors' ("Tenants") refusal to produce deponents and documents in response to narrow discovery requests relevant to Plaintiffs' ("Portside") and Tenants' prerogative writ claims and defenses, along with the City's contemplated motion to quash Portside's subpoena for a deposition from a relevant non-party witness. As the Court knows, Portside contends in its prerogative writ claim that the Board's 2023 decision stripping Portside Towers' rent control exemption ("Decision") and the Bureau's 2024 rent recalculations ("Recalculations") were "arbitrary, capricious, and wrong as a matter of law in multiple respects." (Dkt. 65 ¶¶164-167.) Portside's discovery requests at issue seek the following information:

**A. Depositions Of Key Participants.** Portside seeks to depose the following key participants in the facts and decision-making underlying the Board's Decision and the Bureau's Recalculations: (i) Albert Cupo, the Board chair at the time of the Decision; (ii) Shyrone Richardson, Director of the Office of Landlord/Tenant Relations, who oversaw the Bureau's Recalculations; (iii) Dinah Hendon, former Bureau's Rent Leveling Administrator, whose initial determination that Portside Towers was entitled to the rent control exemption was overturned by the Board; (iv) the four named tenants who intervened in this lawsuit as parties and who communicated information to the Bureau and the City officials for the purpose of influencing the relevant decisions and decisionmakers; and (v) Rule 30(b)(6) corporate representatives of the City and Tenants.

Moreover, the City and Tenants have made allegations, pleaded answers, and asserted defenses that Portside must be allowed to test at depositions. As explained at the March 14, 2025 hearing, Portside and the Court do not have a complete record of the information considered by the Board and Bureau in developing the Decision and Recalculations. All witnesses noticed by

Portside have knowledge regarding the information that the Board and Bureau received and considered outside of the formal administrative "record."  Understanding the information the Board and Bureau considered is the most basic step of assessing whether their decisions have an appropriate foundation or were arbitrary, capricious, or otherwise unlawful.

The City and Tenants do not dispute that the witnesses noticed by Portside have knowledge related to the Decision and the Recalculations as well as knowledge related to what non-record information was considered by the decision-makers.  Their sole basis for refusing to produce these witnesses is their blanket assertion that depositions are inappropriate in state court prerogative writ claims.  That is both wrong and ignores the Federal Rules of Civil Procedure, which govern this proceeding.  As explained below, New Jersey courts allow depositions in prerogative writ claims. Depositions are especially appropriate here given the uniqueness of this case, the amount in ultimate controversy, and, significantly, that the formal record indisputably does not capture all of the information considered by the Board and Bureau.

**B. Documents Regarding Tidewater Basin Redevelopment Plan.**  Portside also seeks documents from the City related to the Tidewater Basin Redevelopment Plan ("Tidewater Plan"). Chapter 260 of the Jersey City Municipal Code exempts from rent control "[n]ewly constructed dwellings with 25 or more dwelling units located within a redevelopment area . . . for which the City Council has approved a redevelopment plan" (the "Redevelopment Exemption").  Portside argued before the Bureau and presented in the record before the Board that it was exempt from rent control under this Redevelopment Exemption.  That argument was rejected.  Portside specifically alleges in its prerogative writ claim that Portside Towers meets the Redevelopment Exemption criteria, including because it is located within the Tidewater Plan Area and identified as part of the Tidewater Plan.  (Dkt. 65 ¶¶58, 167(p).)  Tenants and the City deny that Portside is

exempt under the Redevelopment Exemption.  (Dkts. 72 & 84 ¶¶58, 167.)  Documents related to the Tidewater Plan thus bear directly on Portside's prerogative writ claim.  Because the City created and administered the Tidewater Plan, the City has custody of documents related to the Tidewater Plan that cannot be obtained from another source.

Accordingly, and for the reasons set forth below, the Court should grant Portside's motion to compel.

## BACKGROUND

At the August 1, 2024 hearing with Portside, the City, and Tenants, Judge Cox Arleo noted she would be reviewing this matter *de novo* and discussed a discovery process leading to summary judgment and/or trial.  (*See* Dkt. 54.)  On August 8, 2024, the parties appeared before Judge Almonte to discuss that discovery process. (*See* Dkt. 57 at 1.)  The next day, Judge Almonte issued an Amended Pretrial Scheduling Order that contemplated documentary and deposition discovery,[1] while also confirming the parties' agreement that "[d]iscovery is to be limited to issues relating to the prerogative writ claims before this Court." (*Id.* at 1-2.)  The scheduling order established initial deadlines for both fact and deposition discovery.  (*Id.* at 2.)  In every iteration since August 2024, the scheduling order has always contemplated document and deposition discovery, re-setting deadlines to accommodate the City's and Tenants' requests for more time.  And at every instance, those schedules were agreed to by the parties before they were submitted to the Court.

Specifically, the Second Amended Pretrial Scheduling Order was amended on October 1, 2024 (Dkt. 76), October 7, 2024 (Dkt. 78), October 15, 2024 (Dkt. 80), and October 23, 2024 (Dkt. 82) to provide Tenants with additional time to answer Portside's complaint.  Each of the four times

---

[1] The prior schedule agreed to by the parties also contemplated fact discovery, including depositions.  (*See* Dkt. 25 at 1-2.)

it was amended, the Second Scheduling Order stated: "All other dates set forth in the Second Amended Pretrial Scheduling Order . . . shall remain unchanged at this time." The Third Amended Pretrial Scheduling Order (Oct. 31, 2024, Dkt. 88) extended fact discovery and specifically deposition discovery by two months. The Fourth Amended Pretrial Scheduling Order (Jan. 7, 2025, Dkt. 97) set and extended an individual deadline for paper discovery and also extended deposition discovery another two months.

The City and Tenants availed themselves of the opportunity for discovery under those orders and issued sweeping written discovery to Portside. (*See* Exs. A-D.) Portside fully complied. Then, after receiving Portside's discovery responses, the City and Tenants began to resist all discovery from Portside—unleveling the playing field. As relevant to this motion, Portside served requests for production on the City on September 4, 2024, seeking (among other items) "[d]ocuments related to the Tidewater [] Plan and related predecessor plans." After receiving no written response to this request, Portside sought confirmation from the City that it would search for documents relating to the Tidewater Plan. (Exs. E-G.) The City so agreed during a December 16, 2024 meet-and-confer. On January 6, 2025, the City requested that Portside provide terms to aid its search. (Ex. H.) Portside did so on January 17, 2025. (Ex. I.) The City never objected to the search terms or provided a hit report. Instead, during a January 31, 2025 meet-and-confer, the City stated that it would not produce any further discovery in this case. The City took the position that discovery related to the Tidewater Plan was inappropriate given the City's unilateral determination that Portside's claims concerning the plan (and all of its other claims) lacked merit.

In late February 2025, in line with the then-governing Fourth Amended Pretrial Scheduling Order and the absence of any objection to depositions from the City or Tenants—including in

4

meet-and-confers, status conferences, and letters to the parties and the Court—Portside served the City and Tenants with deposition notices for: (i) Mr. Cupo (chair of Board at the time of the Decision); (ii) Mr. Richardson (overseer of the Bureau's Recalculations); (iii) named Defendant-Intervenors Kevin Weller, Michele Hirsch, Joel Rothfus, and Jessica Brann, and (iv) Rule 30(b)(6) corporate representatives for the City and the Defendant-Intervenor Tenant Associations. Portside also issued a subpoena to depose Ms. Hendon, the Bureau's former Rent Leveling Administrator, who determined that Portside Towers was entitled to the rent control exemption, and who is no longer employed with the City. In March 3 and March 4, 2025 communications, the City and Tenants told Portside they would not present *any* witnesses for deposition in this case. (*E.g.*, Ex. J.) Also on March 4, the City stated that it would seek leave to move to quash the subpoena to depose Ms. Hendon. (*Id.*)

At a March 14, 2025 hearing, among other things, Judge Almonte ordered the City to produce internal communications between the relevant agency-decisionmakers regarding the Board's Decision. (Dkt. 109 ¶¶3, 14, 16.) Judge Almonte stated: "Rule 26 provides that, in federal civil litigation, discovery may be obtained regarding any, quote, nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . . It is axiomatic that, under the rule, all relevant material is discoverable unless an applicable evidentiary privilege is asserted." (Mar. 15, 2025 Hrg. Tr. 11:4-11.) Judge Almonte further noted that "relevant discovery will be related to Portside's prerogative writ claims and the Tenants' prerogative writ claims against the City defendant." (*Id*. at 12:2-4.) Judge Almonte explained that "how the decision was made is going to be important to determine whether or not plaintiff will be able to ultimately satisfy the burden of showing that the decision was arbitrary and capricious or unreasonable" and that "documents showing how decision-makers or what decision-makers

5

considered before making the decision is relevant." (*Id.* at 28:1-4, 30:19-21; *see also id.* at 63:12-15 ("to the extent that there are email communications that show the thought process of how the Bureau came to a decision, that certainly is something that he [(counsel for Portside)] would be entitled to"). Judge Almonte also addressed the City's and Tenants' resistance to depositions, explaining: "Since you[ are] challenging that the decision is arbitrary and capricious, it[ is] only fair to understand what the thought process was." (*Id.* at 65:10-14.)

**ARGUMENT**

**I.     The City And Tenants Should Be Compelled To Produce Witnesses And Corporate Representatives For Depositions; Any Motion To Quash The Subpoena For Ms. Hendon's Deposition Should Be Denied.**

The rules are simple. "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2) [which is not applicable here]." Fed. R. Civ. P. 30(a)(1). Under Rule 30(b)(6), when a party names a corporation in its deposition notice, "[t]he named organization *must* designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6) (emphasis added). The designated corporate representative "must testify about information known or reasonably available to the organization." *Id.*

Under Federal Rule 37, a party may move to compel discovery, including when a corporation "fails to make a designation under Rule 30(b)(6)." Fed. R. Civ. P. 37(a)(3)(B)(ii). Under Rule 45, to quash a subpoena, a party must show the subpoena "(i) fails to allow a reasonable time to comply; (ii) requires [compliance] beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Those rules provide for depositions because depositions play a "vital role" in the preparation of any case for final disposition. *Worthy v. City of Newark*, 2008 WL 413309, at *3 (D.N.J. Feb. 13, 2008). Without them, a party "cannot evaluate the strengths and weaknesses of their case," *Ezeani v. Anderson*, 2022 WL 18158543, at *6 (D.N.J. Dec. 8, 2022) (Almonte, J.), and a trial becomes "a game of blindman's buff." *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1201 (3d Cir. 1989). For those reasons, "absent extraordinary circumstances, it is an error for a court to prevent the taking of a deposition." *Gutierrez v. Johnson & Johnson, Inc.*, 2002 WL 34717245, at *3 (D.N.J. Aug. 13, 2002) (denying protective order sought to prevent depositions of party representatives).

### A.    The Depositions Are Relevant And Tailored To The Prerogative Writ Claims.

Portside seeks to depose (a) parties and three fact witnesses directly involved in the Decision, Recalculations, and related dispute and (b) corporate representatives for the named parties on topics tailored to the prerogative writ claims. The City and Tenants do not dispute that these witnesses have knowledge relevant to the facts underlying the prerogative writ claims. In particular, Portside seeks three categories of deponents:

*First*, Portside seeks to depose three decisionmakers: (1) Mr. Cupo, chairman of the Board that issued the Decision; (2) Mr. Richardson, overseer of the disputed Recalculations; and (3) Ms. Hendon, the Bureau's former Rent Leveling Administrator, who determined that Portside was entitled to the rent control exemption. As explained at the March 14 hearing, Portside has seen evidence that Defendant-Intervenors were emailing and engaging in external discussion with the decisionmakers, including providing them with alleged facts and arguments that are not reflected

in the purported administrative "record" in front of the Board and Bureau.  (*See, e.g.,* INTERVENORS058490 (Ex. K); INTERVENORS072787 (Ex. L); INTERVENORS026583 (Ex. M).)  Even Tenants' attorney was engaging in such off-the-record advocacy.  (*See* Mar. 15, 2025 Hrg. Tr. 65:22-66-4 ("The Bureau communications from myself to Mr. Richardson saying, 'Mr. Richardson, you're doing it wrong.'").)  As Judge Almonte indicated in the March 14, 2025 hearing, information about "what decision-makers considered before making the decision is relevant."  (Mar. 15, 2025 Hrg. Tr. 30:19-21.)  Portside and the Court are entitled to get to the bottom of what the Board and the Bureau saw and considered, including what the tenants were telling them to consider.

*Second*, Portside seeks to depose the named Defendant-Intervenors.  These individuals fought to intervene as *parties* to this case (*see* Dkt. 29), opted to be named as representatives of the Tenant Associations, and assert myriad claims and defenses relating to the prerogative writ claims, including their own prerogative writ claim asserting that the Decision and Recalculations were arbitrary and capricious (*see* Dkt. 72).  Portside should be allowed to test the Defendant-Intervenors' allegations, answers, and affirmative defenses.  Fed. R. Civ. P. 26(b)(1).  As explained above, the documents produced by Tenants thus far show that the named Defendant-Intervenors communicated with the decisionmakers regularly, including in meetings and phone calls.  Tenants' counsel affirmed such communications at the March 14 hearing.  (*See* Mar. 15, 2025 Hrg. Tr. 65:22-66-4.)  Any information communicated to the Board and Bureau outside of the official administrative "record" is necessary for the Court, as the fact finder, to understand what the Board and Bureau considered and how that information supports or undermines the decisions at issue.

*Third*, Portside seeks to depose corporate representatives from Defendants and Defendant-Intervenor Associations on Rule 30(b)(6) topics directly bearing on key issues in the prerogative

8

writ claims. *See Occidental Chem. Corp., v. 21st Century Fox Am., Inc.*, 2022 WL 3369661, at *5, *8 (D.N.J. Aug. 16, 2022) (A party "cannot seek to preclude a [Rule 30(b)(6)] deposition simply based on its subjective belief that another method of discovery can be used, especially since the propounding party is the one that may choose the means of discovery."). In the interest of good faith, Portside is willing to cull its original Rule 30(b)(6) topics in recognition of the Court's March 14 order to be consistent with the Court's rulings and guidance. (*See* Exs. N-P, Proposed Revised Rule 30(b)(6) Notices.) The Rule 30(b)(6) topics relate directly to the City's and Tenants' knowledge of the facts and law underlying the Decision and Recalculations, and what information the decisionmakers received, including from Tenants, when making those determinations.

The deponents noticed by Portside also have knowledge of the facts underlying Portside's contention that the Board failed to apply the doctrine of substantial compliance in connection with the state exemption statute. (Dkt. 65 ¶¶167(e), (g).) The substantial compliance doctrine's "purpose is to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." *Galik v. Clara Maass Med. Ctr.*, 771 A.2d 1141, 1148 (N.J. 2001). "It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims." *Id.* The factors for substantial compliance are: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute." *Id.* at 1149. In their answers, the City and Tenants have denied Portside's allegations related to these factors, including that the tenants and the City received reasonable notice for nearly 30 years that Portside was operating as exempt from rent control and thus were not prejudiced by any purported failure to strictly comply with the notice provisions of the state exemption statute. (Dkt.

72 ¶¶40, 63; Dkt. 84 ¶¶11, 12.)  Portside is entitled to the City and Tenants' bases for these answers and any information supporting its claim regarding substantial compliance.  Depositions of the fact witnesses described above and Defendants' and Defendants-Intervenors' corporate representatives are an efficient way to cover this information and the other areas of fact discovery needed for the prerogative writ claims.

### B.     New Jersey Courts Allow Depositions In Prerogative Writ Claims.

The City's and Tenants' stated reason for refusing to produce witnesses and corporate representatives and the City's explanation for moving to quash the subpoena for Ms. Hendon's deposition are that depositions are supposedly categorically inappropriate for prerogative writ claims because they go beyond the purported administrative "record."  (*See* Mar. 15, 2025 Hrg. Tr. 121:18-24, 125:5-9.)  They are wrong.

New Jersey courts allow depositions on relevant issues in prerogative writ actions, including depositions of leaders of municipal bodies, representatives of third parties, and other fact witnesses.  *See, e.g., Porreca v. City of Millville*, 16 A.3d 1057, 1061-62 (N.J. Super. Ct. App. Div. 2011) (discovery included depositions of municipality's assessor and planning director); *Aparin v. Cnty. of Gloucester*, 783 A.2d 271, 273-74, 281 (N.J. Super. Ct. Law Div. 2000) (pursuant to discovery order issued by court, parties took depositions of "representatives" of municipal commission and third-party defendant New Jersey department of personnel); *Spectraserv, Inc. v. Kearny Mun. Utils. Auth.*, 2008 WL 4790978, at *2 (N.J. Super. Ct. App. Div. Nov. 5, 2008) (prior to trial, defendant municipality body took videotaped deposition of its own expert engineer); *Care of Tenafly, Inc. v. Tenafly Zoning Bd. of Adjustment*, 704 A.2d 1032, 1035 (N.J. Super. Ct. App. Div. 1998) ("[j]udge . . . ordered that [member of defendant board] submit to a deposition"); *Warrenville Plaza, Inc. v. Warren Twp. Sewerage Auth.*, 553 A.2d 874, 875 (N.J.

Super. Ct. App. Div. 1989) (parties "relied" on depositions, including of the defendant municipality agency's chairman, at oral argument on the summary judgment motions); *Barrett v. Union Twp. Comm.*, 553 A.2d 62, 65, 67 (N.J. Super. Ct. App. Div. 1989) (discovery included multiple depositions); *Haack v. Ranieri*, 200 A.2d 522, 523 (N.J. Super. Ct. Law Div. 1964) (parties stipulated that "depositions . . . be considered in lieu of other testimony"); *A.C. Schultes & Sons v. Haddon Twp.*, 83 A.2d 896, 897 (N.J. 1951) (discovery included depositions).

Aside from asserting (wrongly) that depositions are beyond the scope of the prerogative writ claims, the City and Tenants have identified no burden—much less an undue burden—to producing fact witnesses and corporate representatives for depositions. *See Aruanno v. Johnson*, 2020 WL 1951605, at *2 (D.N.J. Apr. 23, 2020) ("The [party] resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient."); *Corradi v. New Jersey State Parole Board*, 2019 WL 1795545, at *1-2 (D.N.J. Apr. 24, 2019) ("[M]ere[ly] stat[ing] a discovery request is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."). Nor can they—these depositions are limited in number and scope and, considering the magnitude of the threatened long-term penalties Portside faces should the Decision stand, are proportionate to the needs of this case. Further, Portside expects that the Tenant Association designees will be named Tenants, reducing the number of depositions and any alleged burden on Tenants' counsel.

11

II.     **The Court Should Compel City To Produce Documents Related To The Tidewater Plan.**

        A.      **Documents Related To The Tidewater Plan Are Relevant And Tailored To The Prerogative Writ Claims.**

Discovery—including historical documents—relating to the Tidewater Plan ties directly to Portside's prerogative writ claim that the Board was arbitrary, capricious, and wrong as a matter of law for "fail[ing] to account for the fact that Portside Towers is located within the Tidewater [] Plan Area and identified as part of the Tidewater [] Plan and is [therefore] exempt from rent control pursuant to the Redevelopment Exemption." (Dkt. 65 ¶167(p).)

As mentioned above, the City's rent control ordinance contains a rent control exemption for "[n]ewly constructed dwellings with 25 or more dwelling units located within a redevelopment area . . . for which the City Council has approved a redevelopment plan. . . ." *Id*. ¶44. The statute does not define "[n]ewly constructed dwellings." In 1999, the City adopted the Tidewater Plan, which is a redevelopment plan. (*See* Ex. Q, Tidewater Basin Redevelopment Plan.) The Tidewater Plan designates "Portside District" as a redevelopment plan area and states that the district "has been approved of and is partially developed as *Portside*, a mixed-use development consisting of a maximum of 527 dwelling units, a maximum of 753 parking spaces, and approximately 62,000 square feet of commercial space." (*Id.* at 7 (emphasis added).) Portside Towers are the only structures that can be built in the Portside District. (*Id*.)

12

**C. Portside District**

1. This district contains Lot 1 of Block 15902, an area of 5.35 Acres as per the City's Tax Assessor's maps. It has been approved and is partially developed as *Portside*, a mixed-use development consisting of a maximum of 527 dwelling units, a maximum of 753 parking spaces, and approximately 62,000 square feet of commercial space. Phases one and two of this three phase project have been completed. This Redevelopment Plan establishes the current zoning approval, as first approved by the Zoning Board of Adjustment in their resolution of March 3, 1986, which approvals were amended several times, as the land use regulations and standards for this district. Nothing contained herein is intended to negate, modify nor amend that approval. However, the referenced approval shall be the maximum development allowed within this district.

2. Minor alterations in site plan and façade characteristics may be permitted by the Planning Board provided such alterations are consistent with the redevelopment regulations and parking standards of this Plan. Any changes not consistent with this Plan are cognizable under a deviation application, and will be judged on their merits.

The plan also includes a map depicting the Portside District within the Tidewater Plan Area. (*Id.* at 17.)



13

Portside Towers meets every requirement for the Redevelopment Exemption: it was newly constructed at the time (built in 1992 (100 Warren) and 1997 (155 Washington)); has over 25 dwelling units (527 between the two buildings); and—as recognized by the Bureau in its September 2022 determination—is located within a redevelopment area ("Portside District"). (*See* Ordinance §260-1; Ex. Q at 7, 17; Ex. R at 5; Ex. S at 6.)  While the Board declined to deem Portside a "newly constructed dwelling" within the meaning of the Redevelopment Exemption, the Board failed to explain (a) how the City understood and applied that undefined phrase as used in the exemption or (b) why the City would draft the Tidewater Plan to specifically reference Portside Towers, including through naming a redevelopment area "Portside District"—wherein Portside Towers sits—if it did not mean to include Portside Towers within the exemption.  (*See* Ex. Q at 7, 17).  Portside is entitled to discovery thereto.  Fed. R. Civ. P. 26(b)(1); *Abreu v. State of New Jersey*, 2015 WL 9480021, at *5 (D.N.J. Dec. 29, 2015) (Parties must produce "nonprivileged information that is relevant to [a] plaintiff's claim or claims.").

**B.    The City Has Not Demonstrated That Producing Documents Related To The Tidewater Plan Would Be Unduly Burdensome.**

The City has not and cannot demonstrate that searching for and producing documents related to the Tidewater Plan would be unduly burdensome.  Portside has already suggested search terms to the City for its ESI review of documents related to the plan.  (*See* Ex. I.)  Should the City provide a hit count that shows those terms are too broad, Portside is willing to revise them.  Additionally, the scope of historical documents to review is inherently limited by the City's retention of historical documents related to Portside.  Once the City completes its search for those archives (Dkt. 109 ¶5), Portside is willing to confer with the City about a reasonable method to search for historical documents related to the Tidewater Plan located therein.  The City, which

14

created and administered the Tidewater Plan, is the most likely custodian of relevant information on this topic.

**CONCLUSION**

For each of the foregoing reasons, Portside respectfully requests that the Court grant this Motion and enter an Order compelling the City to provide documents related to the Tidewater Plan and the City and Tenants to produce the witnesses previously noticed for deposition.  If the City moves to quash the subpoena to Ms. Hendon, Portside respectfully requests that the Court deny that motion.

Dated:    April 4, 2025

Respectfully submitted,

The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC

By:    */s/ Derek D. Reed*

*Attorney for Plaintiffs The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC*

Derek D. Reed, Esq. (Attorney ID # 038062003)
Jeffrey Plaza, Esq.
EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED
A Professional Corporation
60 Park Place, 18th Floor
Newark, New Jersey 07102
(973) 643-0040

Terri L. Mascherin
Andrew W. Vail
Daniel J. Weiss
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois  60654
Phone:  (312) 222-9350
Facsimile:  (312) 840-7375

*Attorneys for Plaintiffs*

15

16