# EXHIBIT F

353 N. CLARK STREET CHICAGO, IL 60654-3456                    **JENNER&BLOCK** LLP

November 23, 2024

Andrew Vail
Tel  +1 312 840 8688
AVail@jenner.com

**VIA EMAIL**
Philip S. Adelman
John McKinney
Assistant Corporation Counsel
Jersey City Law Department
280 Grove Street
Jersey City, New Jersey  07302

Re:    ***The Towers at Portside Urban Renewal Company, et al. v. The City of Jersey City, et al., Civil Action No. 2:23-cv-22291-MCA-JRA***

Dear Counsel:

We write in response to Defendants' letter dated November 14, 2024, responding to Portside's September 4 and October 31, 2024 letters.

As a preliminary matter, we do not agree with Defendants' assertion that "the City has fulfilled its discovery obligations."  Defendants have the obligation to conduct a reasonable search for information and documents responsive to Portside's discovery requests.  *See* Advisory Committee Notes to Fed. R. Civ. P. 26 ("the [lawyer's] signature [on a discovery response] certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to [the client] that are responsive to the discovery demand").  Defendants have not met this obligation, as explained in more detail below.

**Defendants Are Refusing To Respond To Relevant Discovery Requests.**

Defendants are incorrect that Portside's requests related to the PILOT agreements and past Bureau and Board decisions, as clarified in Portside's September 4, 2024 letter, are irrelevant because they supposedly do not "pertain to the prerogative writ claim or Rent Leveling Board's decision that forms the subject of the claim."

*First*, Portside's requests related to the PILOT agreements are directly relevant to Portside's claim that it substantially complied with the New Jersey Rent Control Exemption Statute's notice provisions and that the Board was wrong as a matter of law in not applying the substantial compliance doctrine in its determination.  *See Block 268, LLC v. City of Hoboken Rent Leveling & Stabilization Bd*., 401 N.J. Super. 563, 569, (App. Div. 2008) (holding for building owner in complaint in lieu of prerogative writ because "[a]ny technical non-conformity [in the notice of rent control exemption] is excusable under the equitable doctrine of substantial compliance").  One of the five factors considered in the "equitable doctrine of substantial compliance" is "the lack of prejudice to the defending party."  *Bernstein v. Bd. of Trustees of Teachers' Pension & Annuity Fund*, 151 N.J. Super. 71, 76–77 (App. Div. 1977).  The PILOT agreements show that Defendants were aware that Portside was exempt from rent control and thus were not prejudiced by any

purported failure to strictly comply with the purported notice requirement.  They further show that Defendants entered into a specific financial arrangement in connection with Portside's rent control status and obtained significant economic benefit.  These materials are plainly relevant to the Court's determination.

*Second*, far from requesting "all" Bureau and/or Board decisions, Portside's requests are tailored to a central issue in this litigation:  the Board's determination that Portside Towers was not exempt from rent control because of a purported lack of notice or certification.  Portside specifically requested (i) Bureau and/or Board decisions since 1992 "based on a purported lack of notice or certification in connection with rent control and/or determination of a look-back period upon non-exempt determination" and (ii) "[o]ther Jersey City exemption complaints since 1992 made against a building for lack of notice, and resulting actions by the Bureau and/or Board."  Portside is entitled to learn how Defendants have interpreted and acted on the ordinance in similar or relevant situations.

It appears that Defendants are refusing to comply with discovery in this case based in their view that the Court can look only at the underlying record before the Board.  We have covered this ground on multiple occasions and in each of those instances Defendants agreed not to take that position given it is incorrect as a matter of law and flatly contradicts the position taken by the Court during the August 1, 2024 chambers conference and the October 31, 2024 Agreed Third Amended Pretrial Scheduling Order.

Again, contrary to Defendants' assertion, actions in prerogative writ can be subject to de novo review.  *Lyons v. City of Camden*, 226 A.2d 625, 625 (N.J. 1967); *Concerned Citizens of Princeton, Inc. v. Mayor and Council of Borough of Princeton*, 851 A.2d 685, 708 (N.J. Super. Ct. App. Div. 2004).  New Jersey law is clear that the court – not the defending party – determines the scope of discovery in a prerogative writ action, N.J. Ct. R. 4:69-4, and that the court may use this discretion to order additional discovery extending beyond the administrative record.  *See, e.g*., *Shain v. Twp. of Lakewood*, No. A-0824-13T3, 2017 WL 193183, at *1 (N.J. Super. Ct. App. Div. Jan. 18, 2017); *Bloomfield 206 Corp. v. City of Hoboken*, 2011 WL 9820, at *2 (N.J. Super. Ct. App. Div., Aug. 24, 2010).

Here, consistent with those principles, the Court and the parties have contemplated and Court orders all reflect that there will be discovery on the prerogative writ claims.  If discovery was limited to the administrative record, there would be no need to set a discovery schedule or to delineate a scope of discovery.  Again, we raised this exact issue during our October 23, 2024 meet and confer, and Defendants confirmed they would not be taking the baseless position that they now assert.  Defendants cannot turn back to this as a basis to refuse to comply with their discovery obligations.

### Defendants Are Not Applying Sufficient Search Terms Over Their ESI.

As explained in my October 31, 2024 letter, Defendants' minimal search terms of "Portside" AND "rent control" are insufficient to respond to Portside's requests, as clarified in its September 4 letter ("Requests").  Defendants have the obligation to conduct a reasonable search, including constructing and applying sufficient search terms, in response to Portside's Requests.  Fed. R. Civ.

P. 26.  Although not required, Portside suggested search terms in my October 31, 2024 letter in the interest of good faith.

Prior to my October 31, 2024 letter, for *weeks*, I sought to work with Defendants in good faith on their ESI search terms.  We were initially told by Defendants that that Mr. McKinney would run some initial ESI searches and report back to discuss. Through multiple emails, Portside asked for that update and/or to meet and confer with Defendants regarding their search over ESI data.  *See, e.g.*, 9/20/24, 10/1/24, 10/5/24, 10/10/24 emails from A. Vail.  Defendants did not provide any update and refused to conference.  Accordingly, we did not learn those search terms until Defendants finally responded to my request following the October 23 meet and confer.  Portside promptly raised issues with Defendants' search terms once they provided them.

We appreciate that Defendants are willing to run some of the terms that we suggested in our October 31, 2024 letter.  However, we ask that Defendants reconsider their decision not to use all the terms and searches listed in our October 31 letter.  Contrary to Defendants' assertion otherwise, as discussed above, Portside's requested terms related to the PILOT agreements ("PILOT" or "payment in lieu of taxes") are relevant to the prerogative writ claim, including to Portside's substantial compliance.

In good faith and the spirit of cooperation, including to further simplify the requests for Defendants into two term searches (which inevitably creates more searches to run), Portside provides the following proposed Boolean search terms:

- Portside AND 2A:42-84*
- Portside AND exempt*
- Portside AND "rent board"
- Portside AND "260-3"
- Portside AND "260-6(C)"
- Portside AND PILOT*
- Portside AND "Payment in Lieu of Taxes"
- Portside AND "rent increase"
- Portside AND registration
- "Equity Residential" AND 2A:42-84*
- "Equity Residential" AND exempt*
- "Equity Residential" AND "rent board"
- "Equity Residential" AND "260-3"
- "Equity Residential" AND "260-6(C)"
- "Equity Residential" AND PILOT*
- "Equity Residential" AND "Payment in Lieu of Taxes"
- "Equity Residential" AND "rent increase"
- "Equity Residential" AND registration
- "100 Warren" AND 2A:42-84*
- "100 Warren" AND exempt*
- "100 Warren" AND "rent board"
- "100 Warren" AND "260-3"

- "100 Warren" AND "260-6(C)"
- "100 Warren" AND PILOT*
- "100 Warren" AND "Payment in Lieu of Taxes"
- "100 Warren" AND "rent increase"
- "100 Warren" AND registration
- "155 Washington" AND 2A:42-84*
- "155 Washington" AND exempt*
- "155 Washington" AND "rent board"
- "155 Washington" AND "260-3"
- "155 Washington" AND "260-6(C)"
- "155 Washington" AND PILOT*
- "155 Washington" AND "Payment in Lieu of Taxes"
- "155 Washington" AND "rent increase"
- "155 Washington" AND registration

Portside maintains the request for emails to and from any of the named Defendant-Intervenors, including the Tenant Associations.  This is not overly broad because there is a limited number of Defendant-Intervenors and any communications with named parties are likely to be relevant to the prerogative writ claim or facts underlying that claim.  They also can easily be searched for using the Defendant-Intervenors' names and/or emails addresses.

Please also clarify what Defendants mean in stating, "In light of your objections and 3 new search queries, the City will no longer work on the original request."

**<u>Defendants Are Not Producing ESI In A Form That Complies With Rule 34.</u>**

Defendants incorrectly assert that their method of producing ESI in compiled PDFs is sufficient because we can run text searches and can see certain information on the face of the email, such as sender and recipient.  This position violates Federal Rule 34(b)(2)(E)(ii)'s requirement that parties produce ESI "in a form or forms in which it is ordinarily maintained or in a reasonably usable form."  A compiled PDF is not the form in which the ESI is ordinarily maintained.  As I explained in my October 31, 2024 letter, under Rule 34, a responding party cannot produce ESI in "a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation."  Advisory Committee Notes to Fed. R. Civ. P. 34.  We provided Defendants with a number of cases that reflect the consistent view that Defendants' production is not workable or acceptable under the Federal Rules.  The Defendant-Intervenors have since agreed to produce their ESI in an electronic manner and dropped the position that it is acceptable to produce these different emails, attachments and other documents as single compiled PDFs.  Despite being text searchable, a compiled PDF is not reasonably usable and makes it more difficult to efficiently review and use the ESI, including because the family relationships between parent emails and attachments are not intact, and individual emails need to be manually extracted from the longer PDF and cannot easily be grouped together by topic or witness.  It will make it difficult to nearly impossible for the Court and the parties to have these compiled PDFs as exhibits for depositions, briefing, and/or trial. We attempted to separate and organize a hundred or so pages and it required days of multiple staff members undertaking the work.

I ask again that Defendants comply with their obligations under the Federal Rules and produce documents consistent with Rule 34, including so that custodians and family relationships are clearly identified, and the relevant metadata is provided.

Defendants also ignored my request in my October 31, 2024 letter to explain how sources of documents were identified and collected and whether any of the individuals in Defendants' October 24, 2024 list communicated about the Portside rent dispute in ways other than those listed email addresses.  Please respond to my request.

**Defendants Have Not Confirmed That They Have Searched For Historical Documents Outside Of Limited Email Searches.**

During our past meet and confers, Defendants previously committed to searching for historical and policy related documents, including to take the position that they would not resist producing anything that was relevant.  We have not received any.  Defendants ignored the request in my October 31, 2024 letter regarding the status of their search for historical and other documents responsive to Portside's requests.  We repeat our request for answers to the following:

1. Did Defendants search for historical documents, including hard copy documents, from the 1990s relating to Portside Towers, the exemption, and the Tidewater Basin Redevelopment Plan, along with the other categories set forth in our September 4 letter?

2. Did Defendants search for the City's record retention policies since 1992?

3. Did Defendants search for the Board policies governing review of applications for exemption from rent control under the Exemption Statute?

**Interrogatories**

Finally, Defendants failed to supplement their interrogatory responses to address the deficiencies raised in Portside's June 13, 2024 letter, which were then streamlined in Portside's September 4, 2024 letter.  Defendants' letter does not address those.  We again ask that Defendants promptly provide supplemental responses correcting the deficiencies laid out therein.

This letter may not be exhaustive as to all the concerns we have with the Defendants' production of documents, including because it is incomplete in many ways, and discovery issues and we reserve all rights in that regard.

We agree that if the Defendants are not willing to address the above items or if further conferencing will not change the Defendants' position on any of them, that Portside and Defendants should submit these issues to Judge Almonte in the letter due on November 26, 2024.

Sincerely,
*Andrew W. Vail*

cc: Counsel of Record

6