# EXHIBIT G

353 N. CLARK STREET CHICAGO, IL 60654-3456

**JENNER & BLOCK** LLP

December 10, 2024

Andrew Vail
Tel  +1 312 840 8688
AVail@jenner.com

**VIA EMAIL**
Philip S. Adelman
John McKinney
Assistant Corporation Counsel
Jersey City Law Department
280 Grove Street
Jersey City, New Jersey  07302

Re:    ***The Towers at Portside Urban Renewal Company, et al. v. The City of Jersey City, et al., Civil Action No. 2:23-cv-22291-MCA-JRA***

Dear Counsel:

Pursuant to the Court's November 27, 2024 text order, we write to request a meet-and-confer regarding the various discovery issues still in dispute.

We were disappointed that, despite Portside's good faith attempt to file a joint letter with Defendants and Defendant-Intervenors as the Court ordered, both Defendants and Defendant-Intervenors opted to file a separate letter.  After your phone call to Mr. Reed on November 26, 2024 in which you requested Portside send you its draft joint letter to insert Defendants' discovery issues, we were surprised that you then refused to file a joint letter in compliance with the Court's October 31, 2024 but instead file a separate letter with Defendant-Intervenors.  You then attempted to blame Portside and its counsel for your failure to know that a letter was due to the Court and to be prepared to share your portion in order to submit it jointly.

We were also surprised to see in Defendants' and Defendant-Intervenors' separate letter an assertion that the parties are unable to open Portside's production, especially given that (a) Defendants have had the first volumes of that production since January 2024 and (b) shortly after calling Mr. Reed on November 26 and stating you could not access the production, you updated him later that day that you were able to access it after updating Defendants' software.  Portside has not heard from either Defendants or Defendant-Intervenors about any other issue with accessing the production, and should any further issues arise, we ask that you contact us first instead of raising an issue with the Court when none actually exists.

As for Portside's concerns regarding Defendants' discovery responses and production, we understand we are likely at impasse given Defendants' resistance to working with Portside toward a mutual resolution and prior refusals to meet and confer when requested.  However, we hope that Defendants will meet with Portside to explore potential resolutions in good faith, as the Court requires, regarding the following issues, and to that end, we ask that you meet with this week to discuss them:

December 10, 2024
Page 2

**RFPs.** Despite Portside's repeated explanations—including in its October 31 and November 23, 2024 letters—regarding the relevance and propriety of its requests for documents relating to the PILOT program and to relevant Board decisions, Defendants remain steadfast in their refusal to produce these documents. In their letter to the Court, Defendants repeat their misguided interpretation of the scope of discovery in this case, which flatly contradicts the Court's orders. Portside intends to discuss this issue during the upcoming meet-and-confer, but it is prepared to raise this matter with the Court should Defendants maintain their position.

**Search Terms.** In its October 31 and November 23 letters, Portside explained why the search terms used by Defendants ("Portside" AND "rent control") are insufficient. In its November 14, 2024 letter to Portside, Defendants stated that they "will consider running a single e-mail search if the search is provided with specific Boolean search terms that work with Microsoft Office 365." Portside offered Defendants a series of Boolean search terms in its November 23 letter—terms which, to date, Defendants have ignored. Portside looks forward to discussing Defendants' plans to use these terms during the meet-and-confer.

**Historical Searches.** In meet-and-confers and its September 4, October 31, and November 23 letters, Portside requested confirmation that Defendants have searched for historical documents. Those types of documents are set forth in Portside's September 4 letter (now over 4 months without any adequate response from Defendants), and include (1) historical documents, including hard copy documents, from the 1990s relating to Portside Towers, the Exemption, and the Tidewater Basin Redevelopment Plan; (2) Defendants' record retention policies since 1992; and (3) Board policies governing review of applications for exemption from rent control under the Exemption Statute. Please come to the meet-and-confer prepared to explain Defendants' efforts thus far to search for and produce such documents.

**Interrogatories.** Portside has explained the deficiencies in Defendants' interrogatory responses and requested supplemental responses in its June 13, September 4, and November 23 letters. Yet Defendants have entirely ignored this request in each of its letters in response. Portside assumes the parties are at an impasse on this issue, but remains open to discussing any forthcoming supplemental responses during the meet-and-confer.

**Form of Production.** Portside has documented the ways Defendants' production does not comply with the Federal Rules in its October 31 and November 23 letters and has repeatedly requested that Defendants produce documents in accordance with their discovery obligations. These efforts have been met with unwavering resistance by Defendants, thus Portside assumes the parties are at an impasse. However, in an effort to help further illustrate why Defendants' production is not workable, we ask that Defendants consider the following additional information:

- Defendants asserted in their letter to the Court that "[a]ll of the metadata pertaining to the . . . documents was provided." That was not true. No document -specific metadata has been provided. And Rule 34 requires that parties provide metadata for the documents produced by the parties, not for the combined PDFs created by a party. *See In re Valsartan N-Nitrosodimethylamine and Irbesartan Prods. Liab. Lit.*, 2012 WL 12142010, at *3 (D.N.J. Nov. 12, 2021).

December 10, 2024
Page 3

- Portside attempted to manually separate a sample of the City's production by the individual documents contained therein. Portside was forced to spend 4 hours to separate only 200 pages in the over 57,000-page production. Thus, to separate all 57,000 pages, it will likely take Portside over 1,100 hours and, even then, Portside would be significantly prejudiced by the form of production.

- Portside has attempted to review the PDF productions to determine whether Defendants' production is complete, and even this endeavor has proven unworkably time-consuming and challenging. For example, Portside is unable to confirm whether likely relevant attachments to emails have been produced, because the emails and potential attachments are scattered across the production. However, Portside has identified several instances where an email references a likely relevant attachment, but where that attachment appears to be omitted from the production. Examples include CITY-024944-51 and CITY-056929-47. Both of these documents reference attachments, including documents seemingly pertaining to rent increases, but those documents were not located in the production. Portside is also unable to confirm whether all emails in a relevant email thread have been provided due to Defendants' production format.

We look forward to your prompt response and to scheduling a meet-and-confer tomorrow or Thursday, December 12 on these issues and any others that remain in dispute. Our clients continue to reserve all rights.

Sincerely,

*s/Andrew W. Vail*

Andrew Vail

cc: All counsel of record