# EXHIBIT I

**JENNER&BLOCK** LLP

January 17, 2025

Andrew Vail
Tel  +1 312 840 8688
AVail@jenner.com

**VIA EMAIL**
Philip S. Adelman
John McKinney
Assistant Corporation Counsel
Jersey City Law Department
280 Grove Street
Jersey City, New Jersey  07302

Re:    ***The Towers at Portside Urban Renewal Company, et al. v. The City of Jersey City, et al., Civil Action No. 2:23-cv-22291-MCA-JRA***

Dear Counsel:

Pursuant to the January 7, 2025 status conference with the Honorable Jose R. Almonte, we write to request a meet-and-confer to work through the remaining issues relating to Defendants' discovery responses and production.

To streamline the meet-and-confer, we restate and summarize our understanding of the parties' positions and outstanding issues herein.  If you disagree with anything set forth in this letter, please promptly inform us so that we may work with Defendants towards resolution or, if resolution is not feasible, timely raise the matter with the Court in line with the Fourth Amended Pretrial Scheduling Order (Dkt. 97).  Portside does not anticipate Defendants raising objections given their representation to the Court at the January 7 conference that they will not be standing on their objections and will comply with all of Portside's discovery requests in full.  We ask that to the extent Defendants are standing on any objections or refusals to produce, they do so specifically, as vague and unspecified objections leave Portside not knowing what Defendants will be providing despite their agreements to produce.  If Defendants do not raise specific disagreement with anything stated in this letter, Portside is forced to assume that it does not need to raise any of these issues with the Court by the end of this month because Defendants agree and will provide documents and information as set forth below.

## I.    Scope of Search

We would like to confirm our understanding of the process through which Defendants have or will search for and produce responsive documents, consistent with their obligations under the Federal Rules.

First, Sections II and III below discuss requests for production of documents relating to the PW and ESI search terms that we have proposed at your request to help Defendants respond to the

electronic search for documents responsive to the requests for production. You helpfully confirmed, including with the Court, that Portside has provided Defendants with search terms Defendants have agreed to run in order to facilitate their ESI review of their custodians' documents. The search terms and requests for production are not meant to be distinct requests for separate searches; instead, the search terms are meant to help cull the universe of documents that Defendants review and/or produce as part of their search for documents that are responsive to Portside's document requests. If it could be helpful to further discuss, we would be glad to during a meet-and-confer conference.

Accordingly, Defendants' search for documents responsive to Portside's requests will not be limited to only search terms applied to ESI. Given the nature of the PW and the evidence related to it, Defendants should learn from their custodians and others likely to possess responsive documents (such as record keepers) to identify additional sources (texts, voice messages), files (checking with the current construction official for relevant files and document locations), or hard-copy documents (including notes) that would be relevant to the PW.

### II.    Agreed-Upon ESI Search Terms *[Responds to Point 1 of Defendants' January 6, 2025 email]*

As set forth in Defendants' January 6, 2025 email, Defendants are utilizing the search terms identified in Portside's December 16, 2024 email to search for responsive documents in their custodian's ESI. Defendants have reported that this search has yielded approximately 2,376 emails, which Defendants will produce subject to their review for privilege. Mr. McKinney reported to Judge Almonte that he is currently undertaking that review. We appreciate the report. Please produce documents on a rolling basis to help put this case back on track for swift resolution and keep us apprised as to when we can expect the next production.

### III.    Agreed-Upon Documents to Search for and Produce *[Responds to Point 2 of Defendants' January 6, 2025 email]*

**Requests for Production.** Defendants have agreed to produce all non-privileged documents found in their possession, custody or control that are responsive to Portside's document requests set forth in its September 4, 2024 letter. While Defendants characterized some of these requests as "duplicative" in their January 6, 2025 email, Portside trusts that its above explanation in Part I of this letter resolves those concerns, and that Defendants are not withholding any documents on the basis of that characterization.

**Communications with Defendant-Intervenors.** Defendants have agreed to search for and produce their emails to, from, or cc'ing the named Defendant-Intervenors: Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch. As noted above, Portside would also like any voicemails or other communications with the named Defendant-Intervenors.

2

In their January 6, 2025 email, Defendants requested that Portside propose search terms to facilitate Defendants' search for documents responsive to this request.  If Defendants are capable of running a compound search, we think that one could suffice:

- (Portside OR "Equity Residential") AND ("Kevin Weller" OR "Michele Hirsch" OR "Joel Rothfus" OR "Jessica Brann" OR "Portside Towers East Tenant Association" OR "Portside Towers West Tenant Association")

If you again would like us to break them up for you those search terms would be:
- Portside AND "Kevin Weller"
- "Equity Residential" AND "Kevin Weller"
- Portside AND "Michele Hirsch"
- "Equity Residential" AND "Michele Hirsch"
- Portside AND "Joel Rothfus"
- "Equity Residential" AND "Joel Rothfus"
- Portside AND "Jessica Brann"
- "Equity Residential" AND "Jessica Brann"
- Portside AND "Portside Towers East Tenant Association"
- "Equity Residential" AND "Portside Towers East Tenant Association"
- Portside AND "Portside Towers West Tenant Association"
- "Equity Residential" AND "Portside Towers West Tenant Association"

In addition to the search terms, Portside asks that Defendants search for email addresses associated with each of the Defendant-Intervenors in the "to," "from," and "cc" fields of the inboxes of each of Defendants' custodians.

Again, as with all other productions, please produce these documents on a rolling basis and keep us apprised as to when we can expect the next production.

**Historical Documents.**  Defendants have agreed to produce the following categories of historical documents—meaning documents in Defendants' possession, custody, or control dating back to 1992:

- **The City's record retention policies:** Portside understands that Defendants have supplied the City's record retention policies in their January 6, 2025 email.  Should Defendants possess any additional record retention policies that are not included at the link provided on January 6, Portside asks that Defendants produce those.

- **Board policies governing review of applications for exemption from rent control under the Exemption statute:** Defendants stated in their January 6, 2025 email that they will consider Portside's recommended search terms to execute their search for documents responsive to this request.  Portside proposes the following terms:

    - "Board policy" and Exempt and rent
    - "Board policy" and "Exempt from rent control"
    - "Board policy" and "Exempt from rent leveling"

3

In speaking to Board members, please learn whether policies exist and where they are most likely to be located.

- **Documents relating to the Tidewater Basin Redevelopment Plan and related predecessor plans:** Defendants stated in their January 6 letter that they will consider Portside's recommended search terms to execute their search for documents responsive to this request. Portside proposes the following terms:

  - Portside AND "Tidewater Basin"
  - "Equity Residential" AND "Tidewater Basin"
  - "100 Warren" AND "Tidewater Basin"
  - "155 Washington" AND "Tidewater Basin"

### IV.    Form of Production *[Responds to Point 3 of Defendants' January 6, 2025 email]*

We appreciate and are replying upon tht Defendants have previously committed to produce all electronic documents in native form, consistent with their obligations under the Federal Rules.

### V.    Interrogatories *[Responds to Point 4 of Defendants' January 6, 2025 email]*

While, during the December 16, 2024 meet-and-confer, Defendants agreed to supplement their responses to Portside's interrogatories to address the deficiencies Portside raised in its June 13, 2024 and September 4, 2024 letters, Portside understands Defendants have retreated from this position. Specifically, in Defendants' January 6 email, Defendants relayed its belief that Interrogatory 5 is beyond the scope of the prerogative writ action. However, this Interrogatory goes directly to Portside's claim as part of its prerogative writ case that the City benefitted from treating Portside as exempt from rent control for nearly 30 years and thus should now be estopped from attempting to retroactively invalidate Portside's exempt status. Additionally, the City's benefit from the PILOT program directly relates to Portside's assertion in its prerogative writ claim that it substantially complied with the New Jersey Rent Control Exemption Statute's notice provisions, and that the Board was wrong as a matter of law in not applying the substantial compliance doctrine in its determination. *See Block 268 LLC v. City of Hoboken Rent Leveling & Stabilization Bd.*, 401 N.J. Super. 563, 569 (App. Div. 2008) (excusing "technical non-conformit[ies]" with notice provision for rent control exemption "under the equitable doctrine of substantial compliance.") One of the five factors considered in this "equitable doctrine of substantial compliance" is "the lack of prejudice to the defending party." *Bernstein v. Bd. of Trustees of Teachers' Pension & Annuity Fund*, 151 N.J. Super. 71, 76-77 (App. Div. 1977). That the City may have *benefitted* from Portside's exempt status, and thus was not prejudiced by any purported failure to strictly comply with the notice requirement, directly relates to Portside's claim of substantial compliance.

However, notwithstanding that Interrogatory 5 is indisputably relevant to the prerogative writ claims at issue in this case, and reserving all rights, Portside does not insist Defendants produce information on all PILOT payments at this stage.

4

Regarding Interrogatories 1-4, Portside understands that Defendants' agreement to produce supplemental responses still stands, though Defendants are awaiting additional information from the Board to aid their responses to Interrogatories 2 and 3. Portside looks forward to receiving these supplemental responses promptly, given that the request for such information has been pending in its original form since April 2024 and as revised since September 2024.

*       *       *

Again, please promptly inform Portside whether Defendants disagree with any of the statements set forth herein. We look forward to discussing these items in a meet-and-confer, with the hope of resolving all outstanding issues in good faith. Please let us know your availability for a meet-and-confer on Monday or Tuesday of next week. Our clients continue to reserve all rights.

Sincerely,

*s/Andrew W. Vail*

Andrew Vail

cc: All counsel of record