# EXHIBIT R



# CITY OF JERSEY CITY

**Department of Housing, Economic Development and Commerce**
Division of Housing Preservation
Office of Landlord/Tenant Relations

**Steven M. Fulop**
**Mayor**

342 MARTIN LUTHER KING DRIVE • JERSEY CITY, N.J 07305
PHONE: (201) 547-5127

---

### Notice of Rent Leveling Bureau Determination

**Tenant Petition:** Petitions on the list attached

**Tenant:** Tenants residing at 100 Warren Street on the list attached[1]

**Landlord:** Portside Urban Renewal LLC, owner, c/o Equity Residential Management, LLC, agent, c/o Jennifer L. Alexander, Esq., Griffin Alexander, P.C., 415 Route 10, 2nd Floor Randolph, NJ 07869

**Tenant's Petition:** On various dates commencing in July 2022, the Office of Landlord/Tenant Relations Bureau of Rent Leveling (the "Bureau") received Illegal Rent Petitions signed by the Tenants residing in various apartments as listed on the attached list, (the Tenants names are not included on the list to avoid providing personal identifiers in this document), in which the Tenants ask the Bureau to determine whether the rent increases for their apartments at 100 Warren Street, Jersey City (the "Property" or "100 Warren")[2], comply with the Jersey City Rent Control Ordinance, Chapter 260 of the Municipal Code, (the "Ordinance"). The Petitions have been served on the Landlord by the Tenants and were sent via email to the Landlord by the Bureau on various dates shortly after receipt of the Petition by the Bureau.

**Landlord's Response:** The copies of the Petitions that were sent to the Landlord by the Bureau included an email which stated that a response, if any, was to be submitted to the Tenants and the Bureau. While the names of the Tenants, the tenancy commencement dates, rents, rent increases, and the apartment numbers differ, the issue in connection with all of the Petitions is essentially the same. The question raised is whether the 100 Warren is subject to the rent restrictions of the Ordinance. The Landlord's response, through its attorney, Jennifer L. Alexander, Esq. of Griffin Alexander, P.C., consisted of a letter brief and a copy of the Tenants' lease agreements and Truth in Renting Statements and a supplemental response which contained additional documentation, specifically a copy of a certificate of Occupancy for 100 Warren dated August 25, 1992,[3]

---

[1] These are tenants who have filed Illegal Rent Petitions and have been served with the Landlord's response.

[2] The Property is designated on the tax map as Block 15902 Lot 1 (formerly Block 60 Lot 34) and includes the two multiple dwellings (the "Towers"). These are referred to as Portside Towers with street addresses of 100 Warren Street and 155 Washington Street. The CO for 155 Washington dated December 31, 1997, delineated the street address as 1 Washington. The street address was subsequently changed to 155 Washington. (Appendix 4)

[3] For ease of reference, documents relied on in this Determination are annexed in the enclosed Appendix.

Notice of Decision – Illegal Rent Petitions - 100 Warren Street
September 19, 2022
Page 2

(Appendix 1), a "Letter of Exemption" dated November 23, 1994, (Appendix 2), and a Certificate of Continued Occupancy for 100 Warren dated January 24, 1995. (Appendix 3).

**Discussion**: The Ordinance provides in §260-3 that multiple dwellings with five or more residential housing spaces are subject to rent regulation.  100 Warren consists of 230 units. Due to the size of this multiple dwelling, the building is presumed to be rent controlled.  However, there are exemptions to the rent restrictions of the Ordinance.  The exemption that is relevant here is an exemption pursuant to State law which is set forth in the Ordinance at §260-6C where the Ordinance references the exemption for new construction as required by State law, N.J.S.A. 2A:42-84.1 et seq.  As regards this exemption, the Ordinance provides in §260-6C:

> In accordance with N.J.S.A. 2A:42-84.1 et seq., L. 1987, c. 153, the provisions of this chapter shall not apply to a new dwelling which is constructed between June 25, 1987, through June 25, 1992, and which is not constructed for occupation by senior citizens, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the dwelling, or for 30 years following completion of construction, whichever is less. This exemption applies only where an owner complied with all requirements contained in N.J.S.A. 2A:42-84.1 et seq., including the filing with the municipal construction official required by N.J.S.A. 2A:42-84.4 and the service of a written statement upon the tenant required by N.J.S.A. 2A:42-84.3.

N.J.S.A. 2A:42-84 is titled "State Exemption for New Construction" (the "Statute").  The limitation of the exemption from June 25, 1987 through June 25, 1992 was extended several times and the Statute currently provides in 2A:42-84.5b, "Although this legislation was initially made effective only for a temporary five-year period, it was expanded for a second five-year period by P.L.1992, c.206 until 1997, and then in that year made permanent by P.L.1997, c.56." The reason for the extension and the final change making the exemption permanent, is also set forth in the Statute which explicitly explains the legislative purpose as follows: "The Legislature deems it to be necessary for the public welfare to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey."

There are certain requirements for multiple dwellings seeking the statutory exemption and the question before the Bureau is whether the Landlord has met these requirements.  The Statute provides in 2A:42-84.3:

> The owner of any multiple dwelling exempted from a rent control or rent leveling ordinance pursuant to this act, shall, prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period. Each lease offered to a prospective tenant for any dwelling unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption.

In addition, the Statute provides in 2A:42-84.4:

Notice of Decision – Illegal Rent Petitions - 100 Warren Street
September 19, 2022
Page 3

The owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption from an ordinance under this act, including therein a statement of the date upon which the exemption period so claimed shall commence, such information as may be necessary to effectively locate and identify the multiple dwelling for which the exemption is claimed, and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed.

It is undisputed that the Landlord has met the first criteria as set forth in 2A:42-84.3. The Tenants' lease and lease renewals all contain a "RENT CONTROL ADDENDUM", (Appendix 5), the title of which is prominently written in capital letters and underlined. The Addendum states as follows:

This Rent Control addendum ("Addendum") is dated and effective as of the date on the Residential Lease – Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of (the "Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

Pursuant to N.J.S.A. 2A:42-84.3, we hereby notify you that the Premises and the Community are exempt from the provisions of any rent control ordinances instituted by Jersey City or West New York, as the case may be, and said Premises and Community will be exempt from any future rent control, rent stabilization or rent leveling ordinance instituted by these municipalities for a period of thirty years following the completion of construction at the Community.

The Rent Control Addendum provided the Tenants with the notice required by the Statute.

The question remains whether the Landlord complied with the requirements of the Statute set forth in 2A:42-84.4 which requires that a written statement of the owner's claim be sent to the municipal construction code official 30 days prior to the issuance of the CO. On November 23, 1994, Portside Apartments Urban Renewal Partners, L.P., ("Portside") sent a letter to the City Construction Code Official, Michael Regan, in which Portside claimed an exemption from rent control pursuant to N.J.S.A. 2A:42-84.1 *et. seq.*, for 229 [sic] units which "shall commence on the anticipated date of initial occupancy, January 1, 1995." (Appendix 2). The CO for 100 Warren was issued approximately two years earlier on August 25, 1992. (Appendix 1).

The Landlord explains the delay between the issuance of the CO and the initial occupancy of 100 Warren. At the time of the issuance of the CO for 100 Warren, the building was not open to residents. The development was intended as a condominium development but evidently because of economic difficulties, the Property went through foreclosure. The Landlord's statement is consistent with the recorded Sherriff's Deed dated November 23, 1994,

Notice of Decision – Illegal Rent Petitions - 100 Warren Street
September 19, 2022
Page 4

pursuant to which Portside became the new owner/developer of the Property.  (Appendix 6).  The letter sent to the Construction Code Official dated the same day, November 23, 1994, was sent more than 30 days before the initial occupancy.  This statutory requirement provides notice to the city official who is in a position to confirm that the dwelling meets the statutory definitions: that the dwelling is "constructed" (not rehabilitated), is a "multiple dwelling" (contains four or more dwelling units), and that the construction has been "completed" (that a CO has been issued).  The developer's letter identifies the Property by address and block and lot, references the statutory exemption, the number of units[4], and the commencement date of initial occupancy, January 1, 1995.  In the circumstances, I find that this letter satisfies the notification requirement of the Statute in 2A:42-84.4.[5]

The Landlord has met the requirements of the Ordinance and the Statute and therefore, 100 Warren was exempt from the rent restrictions in the Ordinance from the date of the CO, August 25, 1992 for 30 years to August 24, 2022.

With regard to the Landlord's position that the exemption runs from the date of the Certificate of Continued Occupancy (the "COO"), January 24, 1995, (Appendix 3), this is without merit.  The Statute is clear that the exemption runs "for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less."  "Completion of construction" is defined in the Statute and "means issuance of a certificate of occupancy" it does not mean occupancy.  The fact that the developer chose or was unable to commence renting the units at the time of the CO in August 1992 does not affect the commencement date of the exemption.

I note that no one has provided the initial mortgage financing.  This is not fatal to the Landlord's claim of exemption. In Block 268, LLC v. City of Hoboken Rent Leveling & Stabilization Bd., 401 N.J. Super. 563, 570 (App. Div. 2008), the court found that there was no requirement in the Statute for the owner to provide mortgage information.  The court referenced the Statute, specifically, 2A:42-84.6:

> [t]he Legislature . . . declares it to be public policy of this State that, within the limitations imposed by this act, the exemptions granted under this act shall not be limited, diminished, altered, or impaired during the period of exemption afforded.

Id. at 571.  The court noted that the record did not "reveal the terms of the mortgage, if any" and that in the event it is established that the amortization of the initial mortgage was less than 30

---

[4] The developer's letter incorrectly states the number of units as 229.  The CO states 204 apartments and 26 townhouses. There is also a Developer's Agreement between the City and the initial developer dated July 23, 1992, which references testimony confirming that 230 units had been completed as of the date of the agreement.  (Appendix 7). The error in the number of units as stated in the letter is inconsequential inasmuch as the City was aware that the number of units was 230, not 229.

[5] It seems that the Construction Code Official at the time of Portside's letter, Michael Regan, was unaware of the requirements of the Statute.  On December 6, 1994, he responded to Portside acknowledging receipt of its November 23, 1994 letter.  He wrote, "Please be advised that the Office of Construction Official has no jurisdiction over rent controls and I would suggest that you contact the proper agency charged with that responsibility." (Appendix 8).

Notice of Decision – Illegal Rent Petitions - 100 Warren Street
September 19, 2022
Page 5

years, the "order may be amended accordingly." Id. at 572-573. Similarly, here the exemption is 30 years from the date of the CO unless a mortgage note is submitted proving that the amortization of the initial financing was less than 30 years.

The Landlord has also argued that the Property is exempt because it is located in a redevelopment area, specifically the Tidewater Basin Redevelopment area. The Ordinance does provide a rent control exemption for new construction in a redevelopment area. This exemption is found as an exemption from the definition of dwelling in §260-1 as follows:

> Newly constructed dwellings with 25 or more dwelling units located within a redevelopment area as defined in Section 5 of the Redevelopment Agencies Law, N.J.S.A. 40:55C-5(o), for which the City Council has approved a redevelopment plan, in accordance with Section 17 of the Redevelopment Agencies Law, N.J.S.A. 40:55C-17.

While the Landlord is correct that the Property is within the Tidewater Basin Redevelopment Area, the Tidewater Basin Redevelopment Plan is dated November 10, 1999, several years after the Property was constructed and occupied. (Appendix 9). Portside Towers is a "district" described in the Plan as containing 527 units (the total number of units in both Towers). The Property was already constructed and occupied at the time of the Plan and therefore was not "new construction" as contemplated by this exemption in the Ordinance. In fact, the Landlord recognized that the basis for the exemption was the Statute and not the exception for new construction in redevelopment areas as evidenced by the language of the Rent Control Addendum which alerts the Tenants to the exemption "[p]ursuant to N.J.S.A. 2A:42-84.3 … for a period of thirty years following the completion of construction at the Community." (Appendix 5).

The Tenants have raised several issues. First, the Tenants point out that on some of the annual Landlord Registration Statements, the Landlord has indicated that the Property is not exempt from rent control. The Landlord Registration Statement (the "Registration") is a registration that the Landlord is required to file with the Bureau annually. In connection with 100 Warren, the Bureau has two Registrations, one filed in 2021 and one filed in 2022. There are earlier registrations filed under the 155 Washington address, the other Tower at Portside Towers. It is clear that those Registrations were meant to apply to both Towers inasmuch as they are on the same block and lot and the Registrations state the number of units as "527", the total number of units in both Towers. It seems that in the past, the Bureau did not always reach out to and obtain Registrations for those multiple dwellings that were exempt from rent control and, because the rents were not regulated, did not follow-up and obtain rent rolls for these properties despite the requirements of the Ordinance. 2017 is the earliest Registration in the Bureau files for the Property. In 2021, the first year that a rent roll was supplied, the Registration for 155 Washington included a rent roll that included both Towers.

In the Registration, Landlords are asked to state whether the property is subject to rent control. The format of the 2017 – 2019 Registrations asked the question of exemption in this way:

Notice of Decision – Illegal Rent Petitions - 100 Warren Street
September 19, 2022
Page 6

THIS PROPERTY IS <u>IS</u> ☐    <u>IS NOT</u> ☐ PRESENTLY UNDER RENT CONTROL

The Registrations for those years contain a check in the box next to "IS NOT" indicating that the Property, according to the Landlord, was not governed by rent control. (Appendix 10). The form was revised in 2020 and the current Registration asks the question, "Is the property you are registering currently under rent control?"  The 100 Warren 2021 Registration an answered "no" and the 2022 Registration answered "yes". (Appendix 11).  Perhaps it was a misreading of the form associated with the change in format that resulted in these answers but whatever the reason, the Landlord's response in the Registration is not dispositive of whether the Property is exempt from rent control.  What is relevant is whether the Property meets the criteria and the requirements of the Ordinance and the Statute.  As set forth in detail above, 100 Warren did qualify and has been exempt from rent control for 30 years, through August 24, 2022.

The Tenants have also relied on a recent unpublished opinion of the New Jersey Appellate Division, <u>Willow Ridge Apts. v. Union City Rent Stabilization Bd.</u>, 2022 N.J. Super. Unpub. LEXIS 1232 *; 2022 WL 2525243.  The first page of the decision states prominently, "PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS."  (Appendix 12).  Rule 1:36-3 provides, "No unpublished opinion shall constitute precedent or be binding upon any court."  So, while this decision might be informative, it is not binding on a court and not binding on the Bureau.  In any event, while <u>Willow Ridge</u> also involved the statutory exemption from rent control pursuant to <u>N.J.S.A.</u> 2A:42-84, the facts of this unpublished case are totally distinguishable from the facts here.  In <u>Willow Ridge</u>, there was no evidence that the owner ever applied for the statutory rent control exemption nor was there ever any notice to the tenants of the owner's claim that the building was exempt.  The CO for the multiple dwelling in <u>Willow Ridge</u> was issued in 2002 and no request for exemption was made until 2019 when the new owner argued that the building should be exempt.  Moreover, no tenants were ever notified of this claimed exemption during those 17 years.  The circumstances are very different here where the owner of the Property notified the Construction Code Official of its claimed exemption over 30 days prior to the initial occupancy of 100 Warren and, more importantly, has notified the Tenants in every lease and lease renewal of the claimed exemption.

To summarize, the rents prior to August 24, 2022 were not governed by the Ordinance and the Bureau has no jurisdiction to review or make any findings regarding these rents.  Going forward, the rents charged are restricted by the Ordinance and may not be greater than the allowable CPI for the month.  The CPI for September 2022 is 6.7% and pursuant to the Ordinance, the maximum increase is the CPI or 4% whichever is less.  Therefore, to the extent increases in excess of 4% have been sent to the Tenants, these are allowed up to 4% and the lease renewals must be adjusted accordingly.  Late fees and similar charges must also comply with the Ordinance (§260-1) and may not be in excess of $35.00.  Going forward, lease renewals should not contain the Landlord's "Rent Control Addendum" and the Registrations should indicate that the 100 Warren is currently under rent control.

**Final Determination –** 100 Warren was not subject to the Ordinance therefore the Bureau has no jurisdiction to review or make any findings regarding the rent charged through August 24, 2022.  Going forward, 100 Warren is subject to the rent restrictions of the Ordinance.  To the

Case 2:23-cv-22291-MCA-JRA    Document 113-19    Filed 04/04/25    Page 8 of 9 PageID: 2741

Notice of Decision – Illegal Rent Petitions - 100 Warren Street
September 19, 2022
Page 7

extent the Tenants have been sent notices of rent increases and/or lease renewals, these must comply with the rent restrictions of the Ordinance.  Further, to the extent rent increases for the month of September 2022 were charged and paid, the tenant must receive a rent credit or refund for amounts in excess of the allowed 4% rent increase.

**Signature:** _____

      Dinah Hendon, Rent Leveling Administrator

**Dated:** September 19, 2022

## Notice to Parties

**This Bureau Determination may be appealed to the Rent Leveling Board by filing a Notice of Appeal with the Bureau within 15 days of receipt of this Determination, no later than October 7, 2022.**

A party appealing this Determination must include in the written notice of appeal:

a) The decision (or part thereof) from which review is sought;

b) The factual and legal basis for the appeal with citations to the record (ie - registration statements) considered by the Bureau in its determination.

c) The notice of appeal must be served upon the other party.

d) Except for good cause shown, no appeal shall rely upon any issue of fact or law or upon any documentary evidence not presented to the Bureau.

## 100 Warren Street Petitions

(these Petititons have been responded to by the landlord on or before 9/19/22)

| File No. | | Unit # |
|----------|----------------|--------|
| R22-034 | 100 Warren Street | 1807 |
| R22-035 | 100 Warren Street | 1205 |
| R22-065 | 100 Warren Street | 1401 |
| R22-074 | 100 Warren Street | 208 |
| R22-083 | 100 Warren Street | 1705 |
| R22-092 | 100 Warren Street | 1606 |
| R22-101 | 100 Warren Street | 1515 |
| R22-107 | 100 Warren Street | 502 |
| R22-110 | 100 Warren Street | 1003 |
| R22-111 | 100 Warren Street | 1004 |
| R22-125 | 100 Warren Street | 422 |
| R22-126 | 100 Warren Street | 510 |
| R22-127 | 100 Warren Street | 704 |
| R22-128 | 100 Warren Street | 804 |
| R22-129 | 100 Warren Street | 915 |
| R22-130 | 100 Warren Street | 1709 |

The names of tenants have not been included to avoid providing
personal identifiers.