# EXHIBIT S

# CITY OF JERSEY CITY

**Department of Housing, Economic Development and Commerce**
**Division of Housing Preservation**
**Office of Landlord/Tenant Relations**

**Steven M. Fulop**
**Mayor**

342 MARTIN LUTHER KING DRIVE • JERSEY CITY, N.J 07305
PHONE: (201) 547-5127

---

## Notice of Rent Leveling Bureau Determination

**Tenant Petition:** Petitions on the list attached

**Tenant:** Tenants residing at 155 Washington Street on the list attached[1]

**Landlord:** Portside Urban Renewal LLC, owner, c/o Equity Residential Management, LLC, agent, c/o Jennifer L. Alexander, Esq., Griffin Alexander, P.C., 415 Route 10, 2nd Floor Randolph, NJ 07869

**Tenant's Petition:** On various dates commencing in June 2022, the Office of Landlord/Tenant Relations Bureau of Rent Leveling (the "Bureau") received Illegal Rent Petitions signed by the Tenants residing in various apartments as listed on the attached list, (the Tenants names are not included on the list to avoid providing personal identifiers in this document), in which the Tenants ask the Bureau to determine whether the rent increases for their apartments at 155 Washington Street, Jersey City (the "Property" or "155 Washington")[2], comply with the Jersey City Rent Control Ordinance, Chapter 260 of the Municipal Code, (the "Ordinance"). The Petitions have been served on the Landlord by the Tenants and were sent via email to the Landlord by the Bureau on various dates shortly after receipt of the Petition by the Bureau.

**Landlord's Response:** The copies of the Petitions that were sent to the Landlord by the Bureau included an email which stated that a response, if any, was to be submitted to the Tenants and the Bureau. While the names of the Tenants, the tenancy commencement dates, rents, rent increases, and the apartment numbers differ, the issue in connection with all of the Petitions is essentially the same. The question raised is whether the 155 Washington is subject to the rent restrictions of the Ordinance. The Landlord's response, through its attorney, Jennifer L. Alexander, Esq. of Griffin Alexander, P.C., consisted of a letter brief and a copy of the Tenants' lease agreements and Truth in Renting Statements and a supplemental response which contained additional documentation, specifically a copy of a Certificate of Occupancy ("CO") for 100 Warren dated August 25, 1992,[3] (Appendix 1), a "Letter of Exemption" dated November 23, 1994, (Appendix

---

[1] These are tenants who have filed Illegal Rent Petitions and have been served with the Landlord's response.

[2] The Property is designated on the tax map as Block 15902 Lot 1 (formerly Block 60 Lot 34) and includes the two multiple dwellings (the "Towers"). These are referred to as Portside Towers with street addresses of 100 Warren Street ("100 Warren") and 155 Washington Street.

[3] For ease of reference, documents relied on in this Determination are annexed in the enclosed Appendix.

Notice of Decision – Illegal Rent Petitions - 155 Washington Street
September 19, 2022
Page 2

2), a Certificate of Continued Occupancy ("COO") for 100 Warren dated January 24, 1995, (Appendix 3), and a CO for 155 Washington dated December 31, 1997, delineated as 1 Washington on the CO (the street address was subsequently changed to 155 Washington). (Appendix 4).

**Discussion**: The Ordinance provides in §260-3 that multiple dwellings with five or more residential housing spaces are subject to rent regulation.  155 Washington consists of 297 units. Due to the size of this multiple dwelling, the building is presumed to be rent controlled. However, there are exemptions to the rent restrictions of the Ordinance.  The exemption that is relevant here is an exemption pursuant to State law which is set forth in the Ordinance at §260-6C where the Ordinance references the exemption for new construction as required by State law, N.J.S.A. 2A:42-84.1 et seq.  As regards this exemption, the Ordinance provides in §260-6C:

> In accordance with N.J.S.A. 2A:42-84.1 et seq., L. 1987, c. 153, the provisions of this chapter shall not apply to a new dwelling which is constructed between June 25, 1987, through June 25, 1992, and which is not constructed for occupation by senior citizens, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the dwelling, or for 30 years following completion of construction, whichever is less. This exemption applies only where an owner complied with all requirements contained in N.J.S.A. 2A:42-84.1 et seq., including the filing with the municipal construction official required by N.J.S.A. 2A:42-84.4 and the service of a written statement upon the tenant required by N.J.S.A. 2A:42-84.3.

N.J.S.A. 2A:42-84 is titled "State Exemption for New Construction" (the "Statute").  The limitation of the exemption from June 25, 1987 through June 25, 1992 was extended several times and the Statute currently provides in 2A:42-84.5b, "Although this legislation was initially made effective only for a temporary five-year period, it was expanded for a second five-year period by P.L.1992, c.206 until 1997, and then in that year made permanent by P.L.1997, c.56." The reason for the extension and the final change making the exemption permanent, is also set forth in the Statute which explicitly explains the legislative purpose as follows: "The Legislature deems it to be necessary for the public welfare to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey."

There are certain requirements for multiple dwellings seeking the statutory exemption and the question before the Bureau is whether the Landlord has met these requirements.  The Statute provides in 2A:42-84.3:

> The owner of any multiple dwelling exempted from a rent control or rent leveling ordinance pursuant to this act, shall, prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period. Each lease offered to a prospective tenant for any dwelling unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption.

Notice of Decision – Illegal Rent Petitions - 155 Washington Street
September 19, 2022
Page 3

In addition, the Statute provides in 2A:42-84.4:

> The owner of any multiple dwelling claiming an exemption from a rent control
> or rent leveling ordinance pursuant to this act shall file with the municipal
> construction official, at least 30 days prior to the issuance of a certificate of
> occupancy for the newly constructed multiple dwelling, a written statement of
> the owner's claim of exemption from an ordinance under this act, including
> therein a statement of the date upon which the exemption period so claimed
> shall commence, such information as may be necessary to effectively locate
> and identify the multiple dwelling for which the exemption is claimed, and a
> statement of the number of rental dwelling units in the multiple dwelling for
> which the exemption is claimed.

It is undisputed that the Landlord has met the first criteria as set forth in 2A:42-84.3.  The Tenants' lease and lease renewals all contain a "<u>RENT CONTROL ADDENDUM</u>", (Appendix 5), the title of which is prominently written in capital letters and underlined.  The Addendum states as follows:

> This Rent Control addendum ("Addendum") is dated and effective as of
> the date on the Residential Lease – Term Sheet (the "Term Sheet") to which
> this Addendum is attached and made a part of (the "Lease") and is made by
> and between Lessor and Resident for the Premises at the Community identified
> in the Lease.
>
> Pursuant to N.J.S.A. 2A:42-84.3, we hereby notify you that the Premises
> and the Community are exempt from the provisions of any rent control
> ordinances instituted by Jersey City or West New York, as the case may be,
> and said Premises and Community will be exempt from any future rent control,
> rent stabilization or rent leveling ordinance instituted by these municipalities
> for a period of thirty years following the completion of construction at the
> Community.

The Rent Control Addendum provided the Tenants with the notice required by the Statute.

The question remains whether the Landlord complied with the requirements of the Statute set forth in 2A:42-84.4 which requires that a written statement of the owner's claim be sent to the municipal construction code official 30 days prior to the issuance of the CO.  It is readily apparent that the relevant records are 30 +/- years old.  Both parties have made diligent efforts to obtain these records as have several city departments.  It seems that several significant documents, were not located and produced in response to the OPRA requests filed by the parties but were found sometime later in response to continued searches by the Division of the Construction Code Official. And, one document, the COO for 100 Warren dated January 24, 1995, (Appendix 3), was located by the Landlord and not the City.  In short, we cannot be certain that all of the records have been found.  It is therefore critical that I consider all of the circumstances in addition to those documents that have been located in rendering a decision.

As acknowledged by the parties, 155 Washington is one of two multiple dwellings (the

Notice of Decision – Illegal Rent Petitions - 155 Washington Street
September 19, 2022
Page 4

"Towers") that make up Portside Towers.  The CO was issued on December 31, 1997, (Appendix 4), five years after the CO for the other Tower, 100 Warren (Appendix 1) and was occupied approximately two years after the Tower at 100 Warren was first occupied.  (Appendix 2).   While no letter to the Construction Code Official in connection with 155 Washington has been located, there is correspondence from the developer at the time to the Construction Code Official in connection with 100 Warren.  On November 23, 1994, Portside Apartments Urban Renewal Partners, L.P., ("Portside") sent a letter to the City Construction Code Official, Michael Regan, in which Portside claimed an exemption from rent control pursuant to N.J.S.A. 2A:42-84.1 *et. seq.*, for 229 [sic] units which "shall commence on the anticipated date of initial occupancy, January 1, 1995." (Appendix 2).  The CO for 100 Warren was issued approximately two years earlier on August 25, 1992. (Appendix 1). In a decision entered contemporaneously with this Determination, I found that the November 23, 1994 letter satisfied the statutory requirement of notice to the construction code official despite the delay in requesting the exemption.[4]

It is clear from this letter that Portside, the owner/developer, was aware of the statutory requirement that the Construction Code Official be notified of the claimed exemption.  Portside was not the owner at the time the CO for 100 Warren was issued in August 1992 and, evidently the owner at that time did not apply for the exemption because the intention was to have condominiums, not rentals, in the building.  When that did not happen and the Property came out of foreclosure with a new owner/developer, the letter was sent asserting the exemption. This is noteworthy because, in December 1997 when the CO for 155 Washington was issued, Portside was still the owner/developer.  What is also noteworthy is the fact that the Construction Code Official at the time of Portside's letter, Michael Regan, was unaware of the requirements of the Statute.  On December 6, 1994, he responded to Portside acknowledging receipt of its November 23, 1994 letter.  He wrote, "Please be advised that the Office of Construction Official has no jurisdiction over rent controls and I would suggest that you contact the proper agency charged with that responsibility." (Appendix 8).  Michael Regan was the Construction Code Official in December 1997; he signed the CO for 155 Washington on December 31, 1997.

To date, no letter to the Construction Code Official in connection with the requested exemption from rent control for 155 Washington has been located but that does not mean that one was not sent.  Portside was aware of the Statute and its requirements in November 1994 even if the Construction Code Official at the time, Michael Regan, was not.  It is as likely as not that three years later, with the issuance of the CO for 155 Washington, another request for exemption was sent.  Perhaps, in light of Mr. Regan's December 6, 1994 letter, it was sent to some other City agency.   What is clear, as set forth in detail below, is that 155 Washington was owned by the same owner as 100 Warren and these Towers were managed as one development.  The

---

[4] The Landlord explained the delay between the issuance of the CO and the initial occupancy of 100 Warren.  At the time of the issuance of the CO for 100 Warren, the building was not open to residents. The development was intended as a condominium development but evidently because of economic difficulties, the Property went through foreclosure.  The Landlord's statement is consistent with the recorded Sherriff's Deed dated November 23, 1994, pursuant to which Portside became the new owner/developer of the Property.  (Appendix 6). The letter sent to the Construction Code Official dated the same day, November 23, 1994, was sent more than 30 days before the initial occupancy.

Notice of Decision – Illegal Rent Petitions - 155 Washington Street
September 19, 2022
Page 5

Tenants were aware that this was one development.  Equally important, the City was aware that this was one development comprised of two newly constructed multiple dwellings.  The statutory requirement of notice to the "construction code official" is meant to provide notice to the city official who is in a position to confirm that the dwelling meets the statutory definitions: that the dwelling is "constructed" (not rehabilitated), is a "multiple dwelling" (contains four or more dwelling units), and that the construction has been "completed" (a CO has been issued).  That 155 Washington meets these criteria is undisputed.

 The City was aware of the construction of the two Towers of Portside Towers, 100 Warren and 155 Washington, which are on the same tax block and lot and are part of the same development plan, owned and managed by the same owner.  This is confirmed in several documents.  As early as July 1992, the City was a party to a Developer's Agreement (the "Agreement") dated July 23, 1992.  The Agreement describes the development of the property "known as Block 60 Lot 34" and the progress of construction as of that date.  The site was to include "a mixed residential complex including 525 residential units in two highrise [sic] buildings" and references testimony confirming that 230 units had been completed as of the date of the Agreement.  (Appendix 7).  One month later, on August 25, 1994, the CO for 100 Warren was issued for 230 units, (Appendix 1), and on December 31, 1997 the CO for 155 Washington was issued confirming the "construction of 25 story building as per approved plans."  (Appendix 4).

 Thereafter, in November 1999, the Tidewater Basin Redevelopment Plan (the "Plan") was adopted.  (Appendix 9).  The Plan contains the "Portside District" described as, "partially developed as *Portside*, a mixed-use development consisting of a maximum of 527 dwelling units…"  In addition, the Landlord Registration Statements[5] (the "Registrations") filed with the Bureau from 2017 – 2021 include 527 as the unit count indicating that these Registrations were meant to cover both Towers, 155 Washington and 100 Warren.  From 2017 – 2019, until the format of the form was changed (as explained in detail below), the Registrations stated that the Property (consisting of 527 units) is exempt from rent control.  It is clear that Portside Towers, owned by the same entity, is treated and managed as one property.  From the start, the Tenants residing at 155 Washington have been advised that the building is not subject to rent control.

 Given all of these circumstances, the fact that 155 Washington meets the statutory criteria of a newly constructed multiple dwelling, that the City was aware of this development and the Landlord's claim of exemption, and that the Tenants have been properly notified of the exemption in their lease and lease renewals, I must conclude that 155 Washington is exempt from the rent restrictions of the Ordinance for 30 years from the issuance of the CO, December 31, 1997, through December 30, 2027.  I note that no one has provided the initial mortgage financing.  This is not fatal to the Landlord's claim of exemption. In Block 268, LLC v. City of Hoboken Rent Leveling & Stabilization Bd., 401 N.J. Super. 563, 570 (App. Div. 2008), the court found that there was no requirement in the Statute for the owner to provide mortgage

---

[5] It seems that in the past, the Bureau did not always reach out to and obtain Registrations for those multiple dwellings that were exempt from rent control and, because the rents were not regulated, did not follow-up and obtain rent rolls for these properties despite the requirements of the Ordinance.  2017 is the earliest Registration in the Bureau files for the Property.

Notice of Decision – Illegal Rent Petitions - 155 Washington Street
September 19, 2022
Page 6

information.  The court referenced the Statute, specifically, 2A:42-84.6:

> [t]he Legislature . . . declares it to be public policy of this State that, within the limitations imposed by this act, the exemptions granted under this act shall not be limited, diminished, altered, or impaired during the period of exemption afforded.

Id. at 571.  The court noted that the record did not "reveal the terms of the mortgage, if any" and that in the event it is established that the amortization of the initial mortgage was less than 30 years, the "order may be amended accordingly."  Id. at 572-573.  Similarly, here the exemption is 30 years from the date of the CO unless a mortgage note is submitted proving that the amortization of the initial financing was less than 30 years.

The Landlord has argued that the Property is exempt because it is located in a redevelopment area, specifically the Tidewater Basin Redevelopment area.  The Ordinance does provide a rent control exemption for new construction in a redevelopment area.  This exemption is found as an exemption to the definition of dwelling in §260-1 as follows:

> Newly constructed dwellings with 25 or more dwelling units located within a redevelopment area as defined in Section 5 of the Redevelopment Agencies Law, N.J.S.A. 40:55C-5(o), for which the City Council has approved a redevelopment plan, in accordance with Section 17 of the Redevelopment Agencies Law, N.J.S.A. 40:55C-17.

While the Landlord is correct that the Property is within the Tidewater Basin Redevelopment Area, the Tidewater Basin Redevelopment Plan is dated November 10, 1999, several years after the Property was constructed and occupied. (Appendix 9).  Portside Towers is a "district" described in the Plan as containing 527 units (the total number of units in both Towers).  The Property was already constructed and occupied at the time of the Plan and therefore was not "new construction" as contemplated by this exemption in the Ordinance.  In fact, the Landlord recognized that the basis for the exemption was the Statute and not the exception for new construction in redevelopment areas as evidenced by the language of the Rent Control Addendum which alerts the Tenants to the exemption "[p]ursuant to N.J.S.A. 2A:42-84.3 … for a period of thirty years following the completion of construction at the Community."

The Tenants have raised several issues.  First, the Tenants point out that on some of the annual Registrations, the Landlord has indicated that the Property is not exempt from rent control. The Registration is a registration that the Landlord is required to file with the Bureau annually.  Landlords are asked to state whether the property is subject to rent control.  The format of the 2017 – 2019 Registrations asked the question of exemption in this way:

THIS PROPERTY IS ☐      IS NOT ☐ PRESENTLY UNDER RENT CONTROL

The Registrations for those years contain a check in the box next to "IS NOT" indicating that the Property, according to the Landlord, was not governed by rent control. (Appendix 10). The form was revised in 2020 and the current Registration asks the question, "Is the property you are registering currently under rent control?"  The 2020 – 2022 Registrations answer "yes".

Notice of Decision – Illegal Rent Petitions - 155 Washington Street
September 19, 2022
Page 7

(Appendix 10). Perhaps it was a misreading of the form associated with the change in format that resulted in these answers but whatever the reason, the Landlord's response in the Registration is not dispositive of whether the Property is exempt from rent control. What is relevant is whether the Property meets the criteria and the requirements of the Ordinance and the Statute. As set forth in detail above, I find that 155 Washington did qualify and is exempt from rent control for 30 years, through December 30, 2027.

The Tenants have also relied on a recent unpublished opinion of the New Jersey Appellate Division, Willow Ridge Apts. v. Union City Rent Stabilization Bd., 2022 N.J. Super. Unpub. LEXIS 1232 *; 2022 WL 2525243. The first page of the decision states prominently, "PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS." (Appendix 12). Rule 1:36-3 provides, "No unpublished opinion shall constitute precedent or be binding upon any court." So, while this decision might be informative, it is not binding on a court and not binding on the Bureau. In any event, while Willow Ridge also involved the statutory exemption from rent control pursuant to N.J.S.A. 2A:42-84, the facts of this unpublished case are totally distinguishable from the facts here. In Willow Ridge, there was no evidence that the owner ever applied for the statutory rent control exemption nor was there ever any notice to the tenants of the owner's claim that the building was exempt. The CO for the multiple dwelling in Willow Ridge was issued in 2002 and no request for exemption was made until 2019 when the new owner argued that the building should be exempt. Moreover, no tenants were ever notified of this claimed exemption during those 17 years. The circumstances are very different here. The CO for 155 Washington confirms that it met the statutory criteria of a newly constructed multiple dwelling. The City was aware of the Portside Towers development (the City was a party to a Developer's Agreement (Appendix 7) and the 527 units of Portside Towers are specifically described in the Tidewater Basin Redevelopment Plan (Appendix 9)), and was aware of the Landlord's claim of exemption by virtue of Portside's (the owner/developer of Portside Towers at the time) letter to the Construction Code Official of its claimed exemption over 30 days prior to the initial occupancy of 100 Warren, the first Tower to be constructed, and also by virtue of the Landlord's annual Registrations which were filed in connection with both Towers, all 527 units, and which stated that the Property was exempt from rent control. And, perhaps the most important distinction is that the Tenants here, unlike those in Willow Ridge, have been properly notified of the exemption in every lease and lease renewal.

To summarize, 155 Washington has been and remains exempt from the rent control restrictions of the Ordinance from December 31, 1997 through December 30, 2027 and the Bureau has no jurisdiction to review or make any findings regarding these rents.

**Final Determination –** 155 Washington is not subject to the Ordinance therefore the Bureau has no jurisdiction to review or make any findings regarding the rent or rent increases charged.

**Signature:** _____
          Dinah Hendon, Rent Leveling Administrator

**Dated:** September 19, 2022

Notice of Decision – Illegal Rent Petitions - 155 Washington Street
September 19, 2022
Page 8

**Notice to Parties**

**This Bureau Determination may be appealed to the Rent Leveling Board by filing a Notice of Appeal with the Bureau within 15 days of receipt of this Determination, no later than October 7, 2022.**

A party appealing this Determination must include in the written notice of appeal:

a) The decision (or part thereof) from which review is sought;

b) The factual and legal basis for the appeal with citations to the record (ie - registration statements) considered by the Bureau in its determination.

c) The notice of appeal must be served upon the other party.

d) Except for good cause shown, no appeal shall rely upon any issue of fact or law or upon any documentary evidence not presented to the Bureau.

## 155 Washingington Street Petitions

(these Petititons have been responded to by the landlord on or before 9/19/22)

| File No. | | Unit # |
|---|---|---|
| R22-026 | 155 Washington Street | 2 |
| R22-029 | 155 Washington Street | 306 |
| R22-044 | 155 Washington Street | 2102 |
| R22-045 | 155 Washington Street | 1409 |
| R22-047 | 155 Washington Street | 1910 |
| R22-051 | 155 Washington Street | 2612 |
| R22-052 | 155 Washington Street | 2405 |
| R22-055 | 155 Washington Street | 1913 |
| R22-058 | 155 Washington Street | 1504 |
| R22-060 | 155 Washington Street | 1502 |
| R22-061 | 155 Washington Street | 1604 |
| R22-063 | 155 Washington Street | 1503 |
| R22-075 | 155 Washington Street | 1506 |
| R22-076 | 155 Washington Street | 1002 |
| R22-084 | 155 Washington Street | 1713 |
| R22-102 | 155 Washington Street | 903 |
| R22-121 | 155 Washington Street | 2101 |

The names of tenants have not been included to avoid providing
personal identifiers.