# MCLAUGHLIN & STERN, LLP

**FOUNDED 1898**

**MOLLIE HARTMAN LUSTIG\***
**PARTNER**
Direct Dial: 908-578-5458
mlustig@mclaughlinstern.com

\* Licensed in NJ and MA

1 ELM STREET
SUITE 2
WESTFIELD, NEW JERSEY 07090
(212) 448–1100
FAX (212) 448–0066
www.mclaughlinstern.com

NEW YORK, NEW YORK
GARDEN CITY, NEW YORK
MILLBROOK, NEW YORK
WESTPORT, CONNECTICUT
NAPLES, FLORIDA
WEST PALM BEACH, FLORIDA

April 25, 2025

**Via ECF**
Magistrate Judge José R. Almonte
Chambers of José R. Almonte
Frank R. Lautenberg U.S. Post Office & Courthouse Building
2 Federal Square
Newark, New Jersey 07102

> Re:  *The Towers at Portside Urban Renewal Company L.L.C., et al. v. The City of Jersey City, et al.*  Case No. 2:23-cv-22291-MCA-JRA

Dear Magistrate Judge Almonte:

Please accept this letter brief, in lieu of a more formal brief, on behalf of the Portside Towers East Tenant Association ("PTETA"), Portside Towers West Tenant Association ("PTWTA"), Kevin Weller ("Mr. Weller"), Michele Hirsch ("Ms. Hirsch"), Joel Rothfus ("Mr. Rothfus") and Jessica Brann ("Ms. Brann") (collectively, "Tenants" or "Defendant-Intervenors") in opposition to Plaintiffs' Motion to Compel Discovery (the "Motion").[1] *See* Dkt. No. 113.

## PRELIMINARY STATEMENT

As a result of Plaintiffs' incessant efforts to continue their discovery overreach disguised as diligence, against the Tenants and Defendants, what was designed to be an expeditious challenge to Defendants' Rent Control Board decision has instead become a slugfest, with various

---

[1] As used in this brief, the term "Plaintiffs" collectively refers to Plaintiffs The Towers at Portside Urban Renewal Company, L.L.C. ("Portside") and Equity Residential Management, LLC ("Equity").

**McLaughlin & Stern, LLP**

April 25, 2025
Page 2

discovery disputes delaying this court from deciding the significant issues at stake.[2] And unfortunately for the hundreds of tenants anxiously awaiting a decision confirming that Portside Towers are, and always have been, subject to rent control, Plaintiffs' latest efforts to compel irrelevant discovery only further hampers this action.[3]

To wit, and as a testament to their desire to keep this case moving forward, the Tenants, whose documents have little to no bearing on this decision, have already produced 82,632 pages of discovery, incurring significant expenses and burden along the way. Defendants have additionally produced 57,047 pages, leaving Plaintiffs with a grand total of 139,679 pages of documents consisting mostly of written communications by and among the various alleged key players Plaintiffs reference in their Motion. But that is not enough for Plaintiffs, who now seek to additionally compel (i) the depositions of at least seven (7) witnesses, each of which aim to explore topics that are well beyond the scope of a prerogative writ action and (ii) the production of thousands of additional pages of documents, all of which are irrelevant to whether the Portside Towers are exempt from rent control. Clearly, Plaintiffs know that they cannot support their untenable theories and, as such, now seek more discovery with the hope that they will find their nonexistent smoking gun. However, even under Rule 26's broad discovery standards, Courts will not permit open ended rummages akin to the one Plaintiffs have undertaken that are not

---

[2] As used in this brief, the term "Defendants" collectively refers to Defendants the City of Jersey City (the "City") and the City of Jersey City Rent Leveling Board (the "RLB"). Although Plaintiffs name the City of Jersey City Bureau of Rent Leveling (the "Bureau") as a defendant in their moving papers, the Bureau is not a party to this litigation. As such, to avoid misleading this Court, the term Defendants will not include the Bureau.

[3] The term "Portside Towers" refers to the two residential buildings owned and operated by Plaintiffs, which are the subject of this dispute.

MCLAUGHLIN & STERN, LLP

April 25, 2025
Page 3

proportional to the needs of the case. As such, the Tenants respectfully submit that Plaintiffs' wild

goose chase must come to an end and, therefore, the Motion should be DENIED in its entirety.

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

In response to the illegal rent petitions filed by tenants facing unlawful rent increases, on

October 19, 2023, the RLB determined that the Portside Towers are, and always have been, subject

to rent control. *See* Dkt. No. 72 at ¶ 83. Plaintiffs then commenced this Action in Lieu of

Prerogative Writ on November 10, 2023, to challenge the RLB's decision, as well as the Bureau's

August 7, 2024, rent recalculations which were issued pursuant to that decision. *See generally* Dkt.

Nos. 1; Dkt. No. 65 (Count VI).[4] Since then, Plaintiffs have treated this expedited proceeding as a

drawn-out litigation with continued insistence that the Defendants and Tenants respond to their

outrageous discovery requests.

More specifically, throughout this litigation Plaintiffs have consistently sought irrelevant

discovery that far exceeds what is permitted in prerogative writ actions, including (i) WhatsApp

group chat messages among the Tenants; (ii) information regarding revenue that the City allegedly

generated through Plaintiffs' participation in the City's PILOT program; and (iii) information

regarding City resolutions and decisions that concern unrelated properties and third parties. *See*

*e.g.* Dkt. No. 101 (Dispute Nos. 7–8; 10). Notwithstanding our repeated objections and the well-

settled principles that discovery in prerogative writ actions is limited to the record below, Plaintiff

has refused to withdraw their unreasonable requests.[5] As such, the Court was required to intervene

---

[4] The Tenants also challenge the Bureau's August 7, 2024, rent recalculations. *See* Dkt. No 72 (Crossclaim – Count Two).

[5] Plaintiffs have also repeatedly ignored the Court's directive that discovery be "limited to issues relating to the prerogative writ claims." *See* Dkt. Nos. 57 at ¶ 4; 64 at ¶ 4; 88 at ¶ 4.

3

McLaughlin & Stern, LLP

April 25, 2025
Page 4

and, on March 14, it imposed various limits on Plaintiffs' fishing expedition. *See* Dkt. No. 109.

Ultimately, however, the Court has been delayed in deciding the Prerogative Writ action before it, with Plaintiffs' latest Motion creating yet another roadblock to that goal. It is noteworthy that Plaintiffs are using these untenable discovery demands and subsequent motions to their advantage, using the extensive delays to continually apply illegal rental rates to the Tenants, and then seeking evictions of those who won't or cannot pay. *See* Dkt.102 and Dkt.104.

Specifically, despite having received over 139,000 pages (and counting) of documents, which largely consist of communications among the individuals that Plaintiffs deem to be "key participants" in this dispute (even though they are not), Plaintiffs now seek to conduct at least seven (7) depositions, each of which aim to explore topics that are impermissible in prerogative writ actions and four of which involve Tenants who did not participate in the RLB's decision-making process. *See* Pls' Br. at 1 – 2; 6–11. Plaintiffs also seek documents related to the City's Tidewater Basin Redevelopment Plan, which is a statutory scheme lacking any bearing on whether Portside Towers are subject to rent control. *See id.* at 12–15.[6] The voluminous productions that Plaintiffs received cannot support their untenable theories and now, Plaintiffs seek to continue their fishing expedition. Plaintiffs have even gone so far as to misrepresent that a passing comment made during an August 1 informal conference somehow constitutes a ruling that *de novo* review applies, thereby warranting their discovery requests. In any event, the Tenants respectfully submit

---

[6] Per this Court's March 14, 2025, Order, Plaintiffs were permitted to submit briefing concerning Dispute No. 9 as set forth in the parties' joint letter dated January 31, 2025 (which concerned Plaintiffs' request for "All Documents reflecting knowledge or information known by Portside Towers tenants that Portside Towers was covered by the Exemption, including before the tenant agreed to enter their original lease at Portside." – *see* Dkt. No. 101). *See* Dkt. No. 109 at ¶ 9. Plaintiffs' Motion, however, does not address this request. Tenants understand this omission as reflecting Plaintiffs' intent to **waive** this request and, as such, this brief will not address the request.

4

**MCLAUGHLIN & STERN, LLP**

April 25, 2025
Page 5

that Plaintiffs' abuse of the discovery process must come to its end. Therefore, the Tenants respectfully request that Plaintiffs' Motion be DENIED in its entirety so that this Court can proceed with deciding the issues in this litigation that will impact the lives of Portside Towers' residents.

### STANDARDS OF REVIEW

### I.    The Federal Rules Prohibit Fishing Expeditions

Under the Federal Rules of Civil Procedure (the "F.R.C.P."), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" F.R.C.P. 26(b)(1). Parties seeking discovery "bear[] the initial burden of establishing the relevance of the information [sought]." *United States ex rel. Simpson v. Bayer Corp.*, Civil Action No. 05-3895 (JLL)(JAD), 2019 U.S. Dist. LEXIS 35126 at *3 (D.N.J. Mar. 5, 2019).  However, as several courts have recognized, the scope of discovery "is not limitless." *Doe v. Princeton Univ.*, Civil Action No. 20-4352 (MAS) (RLS), 2025 U.S. Dist. LEXIS 19969 at *3 (D.N.J. Feb. 4, 2025). *See also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d. Cir. 1999) (commenting that discovery under Rule 26 "is not unlimited."); *Cordero v. Emrich*, Civil Action No. 20-05654 (RK) (JTQ), 2024 U.S. Dist. LEXIS 191552 at *8 (D.N.J. Oct. 22, 2024) (opining that "the scope of discovery is not limitless" and affirming Magistrate Judge's decision to grant the defendant's motion to quash a subpoena).

As recognized by the Hon. José R. Almonte, U.S.M.J., during the March 14, 2025, discovery-dispute hearing, when deciding discovery disputes courts must consider, in addition to relevance, whether the discovery is "proportional to the needs of the case[,]" as well as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving

**MCLAUGHLIN & STERN, LLP**

April 25, 2025
Page 6

the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." F.R.C.P. 26(b)(1); *see also* (March 14, 2025 Hearing Tr. 11:13-18 ("in addition to relevance, Rule 26 requires the Court to consider the requested discovery's proportionality, which expressly includes, among other things, 'the importance of the discovery in resolving the issues,' and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Where discovery exceeds these bounds, Rule 26(b)(2)(C) requires Court intervention. *See* F.R.C.P. 26(b)(2)(C) (stating that the "court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

Applying these principles, courts have routinely prohibited litigants who, like Plaintiffs, were attempting to engage in "fishing expeditions." For example, in *Plastipak Packaging, Inc. v. DePasquale*, the Third Circuit affirmed the District Court's refusal to permit depositions, holding that plaintiff's "proposal to depose the [defendants] in hopes that it will find a legal theory [supporting its claims] . . . bears all the hallmarks of a fishing expedition, particularly given that there is no evidence [that the defendants intended to commit the acts plaintiff accuses them of.]" 363 Fed. Appx. 188, 191–92 (3d Cir. 2010) (further commenting that "we discourage 'fishing expeditions.'"). Relatedly, the plaintiff in *Robinson v. Horizon Blue Cross-Blue Shield* who received voluminous discovery (to wit, over 56,000 pages of documents), couldn't find support for his theories and sought further discovery. 2:12-CV-02981-ES-JAD, 2013 U.S. Dist. LEXIS 180325 at *15-*18 (D.N.J. Dec. 23, 2013). The Court admonished the plaintiff, commenting that "[a]pparently, the voluminous discovery that plaintiff has already received does not contain facts or information that can reasonably support [his] theories; and now plaintiff urges this Court to compel further discovery in hopes that something will be found to support his presently

6

**McLaughlin & Stern, LLP**

April 25, 2025
Page 7

unsupported theories. . . This is the type of 'fishing expedition' that courts typically view as an abuse of the liberal Rule 26 relevancy standard." *Id.* at *19-*23. As such, aside from a few limited requests that were deemed relevant, the Court prohibited further discovery. *Id.* at *23-*24. Similarly, in *Claude P. Bamberger Int'l v. Rohm & Haas Co.*, the plaintiff filed suit based on a speculative theory (i.e., that because defendant stopped selling it products, something was afoot) and subsequently sought discovery to support that theory. Civ. No. 96-1041 (WGB), 1998 U.S. Dist. LEXIS 11141 at *2-*3 (D.N.J. Mar. 31, 1998). The Court denied the plaintiff's motion to compel seeking information that would support these speculative theories, commenting that "[d]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Id.* at *4-*8. As such, courts (including this Court) have made it clear that excessive and disproportionate discovery demands similar to those at issue here are not permitted.

## II.    Discovery in Prerogative Writ Actions is Limited

In addition to the limitations described above, parties are further restricted in conducting discovery where prerogative writ claims are involved.

"An action in lieu of prerogative writ . . . creates a mechanism to challenge municipal decisions through a fast track procedure." *Casser v. Twp. of Knowlton*, Civil Action No. 3:17-cv-01174, 2018 U.S. Dist. LEXIS 197960 at *8 (D.N.J. Nov. 20, 2018); *see also* Pressler & Verniero, *Current N.J. Court Rules*, comment 5.1 on *R.* 4:69-4 at 1643 (2024) (stating that New Jersey Court Rule 4:69 [i.e., the rule governing prerogative writ actions] "provides for special case management for . . . the purpose of expediting the final disposition."). To that end, discovery in prerogative writ actions is limited, with cases often being "based solely on the record [below]." *Casser*, 2018 U.S.

7

**McLaughlin & Stern, LLP**

April 25, 2025
Page 8

Dist. LEXIS 197960 at *9; *Albanian Associated Fund v. Twp. of Wayne*, Civil Action No. 06-cv-3217 (PGS), 2007 U.S. Dist. LEXIS 87666 at *10 (D.N.J. Nov. 29, 2007) (commenting that, in prerogative writ actions, (i) cases are "most often determined on the transcripts of the hearing below", (ii) discovery is usually limited to expert testimony and (iii) many cases "are based on the administrative record made before the [a]gency below, and discovery is often limited to requiring production of that record."); Pressler & Verniero, *Current N.J. Court Rules*, comment 5.2 on *R.* 4:69-4 at 1643 (2024) ("the state of the record ordinarily controls."). This is especially true where, like here, the municipal action being challenged is quasi-judicial in nature. *See Willoughby v. Planning Bd. of Tp. of Deptford*, 306 N.J. Super. 266, 273 (App. Div. 1997) (explaining that a court's review of a municipal administrative agency's "quasi-judicial decision [by way of] . . . an action in lieu of prerogative writs . . . **must be based solely on the agency record**.") (emphasis added); *Hirth v. City of Hoboken*, 337 N.J. Super. 149, 166 (App. Div. 2001) (explaining that if "quasi-judicial action is challenged, the court's decision **must be based solely on the agency record**, which the court reviews to determine whether the agency's factual findings are based on substantial evidence and whether its discretionary decisions are arbitrary, capricious and unreasonable.") (emphasis added) (internal quotations omitted). *See also Roth v. Rutherford Rent Bd.*, 239 N.J. Super. 378, 392-93 (Law Div. 1989) and *OM 309-311 6th Street, LLC v. City of Union City*, Civil Action No. 21-12051 (KM) (JRA), 2022 WL 855769 at *6 (D.N.J. March 23, 2022) (recognizing that rent control boards may act as a neutral judicial observer and trier of fact, and exercise quasi-judicial power). Indeed, Courts have routinely applied these principles and prohibited other litigants who, like Plaintiffs, sought discovery that went beyond the record below.

8

**MCLAUGHLIN & STERN, LLP**

April 25, 2025
Page 9

For example, in *214 Kinderkamack, LLC v. V.*, the plaintiff filed a prerogative writ action seeking to challenge a Borough's designation of a redevelopment area. Docket No.: BER-L-1160-17, Docket No.: BER-L-1855-17, 2018 N.J. Super. Unpub. LEXIS 6593 at *12-*14 (Law Div. May 4, 2018). In pursing its claims the plaintiffs, like Plaintiffs here, served "vast discovery [demands]. . . [that fell] well beyond the bounds of the record below", including subpoenas/notices to depose various Borough officials. *Id.* at *1-*12, *31. The goal of the discovery, as plaintiffs put it, was to support their claims of a conspiracy between the Borough and a private developer. *Id.* at *17. The Court, however, precluded plaintiff's "fishing expedition" and in doing so, specifically noted that the focus of the depositions would impermissibly "go directly and solely to the deliberative processes of the Mayor and other Borough officials." *Id.* at *26-*28. As such, the Court granted the Borough officials' motions to quash. *Id.* 32. *See also In re Revocation of Access of Block 1901, Lot No.1, Borough of Paramus, Bergen Cty. Parkway 17 Assocs.*, 324 N.J. Super. 322, 341–42 (App. Div. 1999) (commenting, in an action challenging a decision of the Department of Transportation, that "[d]iscovery does not normally include the right to explore the mental processes of government officials respecting why they did or did not take a particular course of action or adopt a particular proposal. Generally, the action or the proposal must be judged on its own merits and its validity determined by the plan or the action itself, regardless of what may have been in the mind of one or more officials who played some role in its adoption.")

Similarly, New Jersey's Appellate Division recently prohibited discovery requests like those present here. More specifically, in *SJ 660 LLC v. Borough of Edgewater*, the plaintiffs served discovery seeking "information concerning the interests of Council members" and whether those interests created conflicts of interest. Docket NO. A-0788-22, 2024 N.J. Super. Unpub. LEXIS

9

MCLAUGHLIN & STERN, LLP

April 25, 2025
Page 10

1927 at \*16, \*41-\*42 (App. Div. Aug. 13, 2024) (per curiam). The trial court denied the discovery

requests because they "sought to delve into the mental processes of Borough officials." *Id.* at \*16.

The Appellate Division affirmed, specifically noting that "complaints in lieu of prerogative writs

. . . are generally limited to the record [below]" and, like here, permitting the irrelevant discovery

would "simply le[a]d to further delays." *Id.* at \*41–42. *See also Mrowko v. Belleville Twp. Zoning*

*Bd. of Adjustment*, Docket No. A-0473-23, 2024 N.J. Super. Unpub. LEXIS 2782 at \*11-\*12 (App.

Div. Nov. 7, 2024) (rejecting appellant's argument that the trial court erred in not allowing "broad

discovery" because review in appellant's prerogative writ action "is limited to whether there was

substantial evidence **in the record**" justifying the municipal action) (per curiam) (emphasis

added).

## ARGUMENT

Given these principles, Plaintiffs' efforts to turn this "fast track procedure" into an endless

litigation via irrelevant, unnecessary, and burdensome discovery requests must be stopped. From

seeking to continue their fishing expedition, to attempting to compel discovery that is

impermissible in prerogative writ actions and entirely irrelevant (or as is the case with most of

Plaintiffs' requests, a combination of all three), each of Plaintiffs' discovery requests are

prohibited. As such, the Tenants respectfully submit that Plaintiffs' motion should be DENIED in

its entirety.

## I.    Plaintiffs' Requests to Depose Various City Officials and Tenants Must be Denied

As Plaintiffs acknowledge throughout their brief, this is a "prerogative writ" action

challenging the RLB's October 19, 2023, decision that Portside Towers are, and always have been,

subject to rent control, as well as the Bureau's related rent recalculations. *See e.g.* Pls' Br. at 1, 7;

10

**McLaughlin & Stern, LLP**

April 25, 2025
Page 11

*see also* Dkt. No. 72 at ¶ 83, Dkt. No. 1; Dkt. No. 65 (Count VI). To adhere to Rule 4:69's objective of promptly resolving challenges to municipal actions [*see Casser*, 2018 U.S. Dist. LEXIS 197960 at *8 ("prerogative writ [actions] . . . create[] a mechanism to challenge municipal decisions through a **fast track procedure**.") (emphasis added)], courts have repeatedly limited discovery in prerogative writ cases like this, often reviewing only the record below. *See Id.* at *9 (acknowledging that prerogative writ actions are often "based solely on the record below"); *Albanian Associated Fund*, 2007 U.S. Dist. LEXIS 87666 at *10 (acknowledging that many prerogative writ cases "are based on the administrative record . . . below, and [that] discovery is often limited to requiring production of that record."). This is especially true where, like here, the municipal action being challenged is quasi-judicial in nature. *See Willoughby* 306 N.J. Super. at 273 (explaining that a court's review of a municipal administrative agency's "quasi-judicial decision [by way of] . . . an action in lieu of prerogative writs . . . **must be based solely on the agency record**.") (emphasis added); *Hirth*, 337 N.J. Super. at 166 (explaining that if "quasi-judicial action is challenged, the court's decision **must be based solely on the agency record**, which the court reviews to determine whether the agency's factual findings are based on substantial evidence and whether its discretionary decisions are arbitrary, capricious and unreasonable.") (emphasis added). As such, under these clear rules, discovery must be limited to the record that was before the RLB when it rendered its decision, thereby warranting denial of Plaintiffs' Motion. *See Casser* 2018 U.S. Dist. LEXIS 197960 at *9; *Albanian Associated Fund*, 2007 U.S. Dist. LEXIS 87666 at *10; *Willoughby* 306 N.J. Super. at 273; *Hirth*, 337 N.J. Super. at 166. Plaintiffs, however, ignore these principles and seek to expand discovery into the proverbial "forbidden territories" of prerogative writ actions.

11

McLaughlin & Stern, LLP

April 25, 2025
Page 12

More specifically, Plaintiffs seek to depose Defendant-Intervenor Tenant Association representatives and three City "decisionmakers," i.e., Albert Cupo, Shyrone Richardson, and Dinah Hendon. *See* Pls' Br. at 7–8. No matter how much Plaintiffs attempt to justify these requests, their own pleadings make their intent behind noticing these depositions clear – to explore the mental processes of these decisionmakers with the hope that they can find support for their speculative theory that the RLB's decision was politically motivated. *See* Dkt. No. 65 at ¶¶ 6 (alleging that "**The politically appointed Board announced that decision to cheers** in a 'standing room only' public meeting (as described by the Board chairman), in which one Board commissioner rallied against landlords who do not 'allow the tenant to get their due,' a phenomenon that he said 'is happening all over the country.'"); 13 (alleging that "Jersey City's decision to overrule the determinations by the Bureau that the buildings are exempt from rent control was a pretext for depriving Portside of its contractual and property rights for the **benefit of a local political constituency**."). Courts, however, have repeatedly held that litigants like Plaintiffs **cannot** explore the mental process of city officials. *See In re Revocation of Access of Block 1901*, 324 N.J. Super. at 341–42 ("Discovery does not normally include the right to explore the mental processes of government officials respecting why they did or did not take a particular course of action or adopt a particular proposal.").

Indeed, courts have repeatedly prohibited prerogative writ litigants from seeking discovery similar to what Plaintiffs seek here. For example, the plaintiff in *214 Kinderkamack, LLC* filed a prerogative writ action seeking to challenge the designation of a redevelopment area. 2018 N.J. Super. Unpub. LEXIS 6593 at \*12-\*14. Like Plaintiffs here, the plaintiff demanded extensive discovery falling "well beyond the bounds of the record below", including subpoenas/notices to

12

McLAUGHLIN & STERN, LLP

April 25, 2025
Page 13

depose various Borough officials, with hopes of finding support for their claims of a conspiracy between the Borough and a private developer. *Id.* at *1-*12, *17, *31. The Court, however, precluded plaintiff's "fishing expedition" by granting the Borough's motion to quash, holding that the focus of the depositions would impermissibly "go directly and solely to the deliberative processes of the Mayor and other Borough officials." *Id.* at *26-*28. Additionally, in *SJ 660 LLC*, the plaintiffs served discovery seeking "information concerning the interests of Council members" to determine whether those interests created conflicts. 2024 N.J. Super. Unpub. LEXIS 1927 at *16, *41-*42. The trial court denied the discovery requests because they "sought to delve into the mental processes of Borough officials." *Id.* at *16. The Appellate Division affirmed, specifically noting that "complaints in lieu of prerogative writs . . . are generally limited to the record [below]" and, like here, permitting the irrelevant discovery would "simply le[a]d to further delays." *Id.* at *41–42. The Plaintiffs here are seeking to engage in the exact type of discovery that *214 Kinderkamack* and *SJ 660 LLC* prohibits – i.e., discovery exploring officials' mental processes with the hopes of confirming their speculative theories. Thus, for this additional reason, Plaintiffs' Motion for leave to depose Mr. Cupo, Mr. Richardson, and Ms. Hendon, along with any other City official, should be denied.

Plaintiffs' attempts to impermissibly seek discovery beyond the record below do not end with their pursuit of the City representatives, as they also seek to depose the named tenants and representatives of the tenant associations. Putting aside that the information sought from the tenants' deposition testimony is irrelevant[7], and that the Tenants have done nothing more than

---

[7] As New Jersey's Appellate Division has explained, if "quasi-judicial action is[,] [as is the case here, is being] challenged, [then] the court's decision **must be based solely on the agency record**, which the court reviews to determine whether the agency's **factual findings are based on**

13

**McLaughlin & Stern, LLP**

April 25, 2025
Page 14

exercise their constitutional rights to request that their government officials perform their duties[8], Plaintiffs' efforts to depose tenants are harassing and unduly burdensome. Specifically, as part of their efforts to keep this case moving forward, the Tenants have repeatedly bent over backwards to accommodate Plaintiffs' discovery requests, including by producing over 82,000 pages of tenant email communications, a majority of which were with City officials. In doing so, the tenants have incurred significant expenses, including those associated with retaining a third-party eDiscovery vendor to accommodate Plaintiffs' request. *See e.g.* Dkt. No. 92 at 2–3. To now subject the Tenants to depositions – particularly where the sought-after testimony is irrelevant (*see Hirth*, 337 N.J. Super. at 166) – would constitute harassment and be unduly burdensome. *See* F.R.C.P. 26(b)(1) (requiring courts to consider, in determining whether discovery should be produced, whether the discovery is "proportional to the needs of the case", "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit"). Thus, Plaintiffs' Motion to compel the depositions of the named tenants and tenant associations should be denied.

None of the cases Plaintiffs cite warrant the depositions they seek to conduct. For example, several cases involve actions of an entirely different nature than what is present here – specifically, the cases **did not** involve challenges to an **agency's quasi-judicial decision where an**

---

**substantial evidence and whether its discretionary decisions are arbitrary, capricious and unreasonable**." *Hirth*, 337 N.J. Super. at 166 (emphasis added).

[8] *See Mills v. Alabama*, 384 U.S. 214, 218–19 (1966) ("there is practically universal agreement that a major purpose of th[e] [First] Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes.").

**MᴄLᴀᴜɢʜʟɪɴ & Sᴛᴇʀɴ, LLP**

April 25, 2025
Page 15

**administrative record was developed before it**, but rather involved challenges to general

municipal actions where no "record below" was developed. *See Porreca v. City of Millville*, 419

N.J. Super. 212 (App. Div. 2011) (writ of mandamus action arguing that the city wasn't performing

its statutorily required duties by mismanaging its tax abatement program, failing to collect escrow

and permitting fees, and incorrectly entering a contract); *Spectraserv, Inc. v. Kearny Mun. Utilities*

*Auth.*, Docket No. A-1006-07T3, 2008 WL 479078 (App. Div. Nov. 5, 2008) (action challenging

a municipality's sewerage use rate); *Warrenville Plaza, Inc. v. The Warren Twp. Sewerage Auth.*,

230 N.J. Super. 461 (App. Div. 1989) (action challenging a municipality's sewerage use rate); *A.C.*

*Shultes & Sons v. Haddon Tp. et al.*, 8 N.J. 103 (1951) (challenge to bid contest)[9]; *Barrett v. Union*

*Tp. Committee*, 230 N.J. Super. 195 (App. Div. 1989) (involving an ordinance amendment); *Haack*

*v. Ranieri*, 83 N.J. Super. 526 (N.J. Super. Ct., Law. Div. 1964) (proceeding seeking to oust a city

councilman); *Aparin v. Cty. Gloucester*, 345 N.J. Super. 41 (N.J. Super. Ct., Law Div. 2000) (writ

of mandamus seeking to compel Gloucester County to provide police training to County Park

Rangers)[10]. *Care of Tenafly v. Tenafly Zoning Board of Adjustment* is similarly unavailing, as this

case only mentions in dicta that a deposition was conducted and nowhere in the decision does the

court comment, let alone hold, that depositions are appropriate in prerogative writ actions

---

[9] Notably, this 74-year-old case does not even discuss why depositions were conducted.

[10] This matter, to the contrary, involves a challenge to the RLB's **quasi-judicial** determination that Portside Towers are, and always have been, subject to rent control. *See supra.* at 2; 9–10. As such, the Court's review "must be based solely on the agency record", which in this matter consists of testimony and voluminous briefing and exhibits submitted by the parties', including Plaintiffs', counsel to the agency below. *Willoughby*, 306 N.J. Super. at 273; *see also Hirth*, 337 N.J. Super. at 166 (explaining that if "quasi-judicial action is challenged, the court's decision **must be based solely on the agency record** . . .").

15

MCLAUGHLIN & STERN, LLP

April 25, 2025
Page 16

challenging quasi-judicial actions. 307 N.J. Super. 362 (App. Div. 1997).[11] Thus, Plaintiffs'

attempts to justify their outrageous requests through reliance on inapplicable caselaw must be

rejected.[12]

In summary, Plaintiffs' attempts to depose the Tenants and City officials fall well beyond

the scope of discovery that is permitted in prerogative writ actions. And that is not all, as Plaintiffs'

requests clearly reflect their intent to abuse the discovery rules by engaging in an unlawful "fishing

expedition." Indeed, this Court has repeatedly prohibited litigants from engaging in "fishing

expeditions" akin to the ones Plaintiffs are undertaking here. For example, like the Plaintiffs here,

the plaintiff in *Robinson* received voluminous discovery (i.e., over 56,000 pages of documents),

couldn't find support for his theories and, as such, sought further discovery. 2013 U.S. Dist. LEXIS

180325 at *15-*18. This Court admonished the plaintiff, commenting that "[a]pparently, the

voluminous discovery that plaintiff has already received does not contain facts or information that

can reasonably support [his] theories; and now plaintiff urges this Court to compel

further discovery in hopes that something will be found to support his presently unsupported

---

[11] Intervenors, to the contrary, have cited extensive caselaw throughout this opposition expressly holding that depositions are not permitted in prerogative writ actions challenging quasi-judicial decisions.

[12] Plaintiffs' argument that the information sought is relevant to their "substantial compliance" claims is also unavailing. *Pls' Br.* at 9–10. Putting aside that Plaintiffs' substantial compliance arguments are unclear and confusing, and that the argument as a whole is irrelevant to whether the RLB made the correct decision, Plaintiffs acknowledge that they seek to introduce into evidence alleged facts beyond the record. However, as stated throughout this opposition, seeking facts beyond the record is prohibited in a prerogative writ action challenging an agency's quasi-judicial decision. *Willoughby*, 306 N.J. Super. at 273 (explaining that a court's review of a municipal administrative agency's "quasi-judicial decision [by way of] . . . an action in lieu of prerogative writs . . . **must be based solely on the agency record**."); *see also Hirth*, 337 N.J. Super. at 166 (explaining that if "quasi-judicial action is challenged, the court's decision **must be based solely on the agency record** . . ."). Thus, for this additional reason, Plaintiffs' Motion must be denied.

16

**MCLAUGHLIN & STERN, LLP**

April 25, 2025
Page 17

theories. . . This is the type of 'fishing expedition' that courts typically view as an abuse of the liberal Rule 26 relevancy standard." *Id.* at \*19-\*23. Similarly, like the Plaintiffs here, the plaintiff in *Claude P. Bamberger* filed suit based on a speculative theory and subsequently sought discovery to support that theory. 1998 U.S. Dist. LEXIS 11141 at \*2-\*3. This Court denied the plaintiff's requests for discovery that would support this theory, commenting that "[d]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Id.* at \*4-\*8. As such, this Court has repeatedly held that Plaintiffs' conduct – i.e., pleading a speculative theory, receiving tens of thousands of pages of documents, finding nothing, and then coming to the Court asking for more with the hope of finding something to hang their hats on – is prohibited and, for this additional reason, the Motion should be DENIED. *See also Plastipak Packaging*, 363 Fed. Appx. at 191–92 (affirming the District Court's refusal to permit depositions while holding that plaintiff's "proposal to depose the [defendants] in hopes that it will find a legal theory [supporting its claims] . . . bears all the hallmarks of a fishing expedition, particularly given that there is no evidence [that the defendants intended to commit the acts plaintiff accuses them of.]").

As a final note, we would be remiss not to mention that, in reviewing Plaintiffs' document production, we discovered several communications suggesting that Plaintiffs' representatives, including Equity's Executive Vice President (Barry Altshuler) and Senior Vice President – Legal Services (Matt Koritz), engaged in the exact conduct that Plaintiffs falsely accuse the Tenants of – i.e., interfering/attempting to interfere with the RLB's decision. *See* Certification of Mollie Hartman Lustig, dated April 25, 2025 (the "Lustig Certification"), Exhibits A (email dated June 6, 2023 [i.e., 4 months before the RLB issued its decision] from Mr. Koritz to Peter Baker, who was

MᴄLᴀᴜɢʜʟɪɴ & Sᴛᴇʀɴ, LLP

April 25, 2025
Page 18

a former City attorney, asking to schedule a phone conversation); Ex. B. (emails between Mr. Altshuler and Mr. Baker, from August and September 2023 [i.e., 1.5 months before the RLB issued its decision] concerning Mr. Altshuler's request for a meeting). However, given the well-settled principles that depositions are not permitted in prerogative writ actions, the Tenants have elected **not** to depose Mr. Altshuler, Mr. Koritz or Mr. Baker. In any event, while the Tenants' position remains that depositions are not appropriate and that this Court's review should be limited to the record below, should the Court be inclined to permit depositions of the Tenants or City officials, then the Tenants respectfully submit that they too should be permitted to depose Mr. Altshuler, Mr. Koritz and Mr. Baker to explore what was discussed between the City and Plaintiffs, which would be relevant to, *inter alia*, a defense of unclean hands.

## II. Plaintiffs' Motion to Compel Production of Tidewater Basin Documents Should be Denied

Realizing that the 139,000 pages (and counting) of documents clearly demonstrate that their speculative claims have no merit, Plaintiffs are now requesting documents related to the City's Tidewater Basin Redevelopment Plan (the "Tidewater Plan"). *See* Pls' Br. at 12–15. Plaintiffs' request should be denied, as it constitutes yet another example of discovery that exceeds the scope of what is permitted in a prerogative writ action. And, as explained below, documents related to the Tidewater Plan have no bearing whatsoever on the ultimate issue before this court – whether the RLB correctly decided that Plaintiffs are not exempt from rent control under Jersey City's Rent Control Ordinance.

By way of background, "newly constructed dwellings . . . located within a redevelopment area" are exempt from Jersey City's rent control laws. *See* General Ordinances of Jersey City, New Jersey, Chapter 260, § 260-1(A)(3). Plaintiffs mistakenly assert that Portside Towers must

18

**McLaughlin & Stern, LLP**

April 25, 2025
Page 19

therefore be exempt because they are within the City's Tidewater redevelopment area. However, in making this argument, Plaintiffs completely ignore that Portside Towers were constructed and fully occupied with tenants **before** the Tidewater Plan went into effect (Certificates of Occupancy issued 25 Aug 1992 for 100 Warren and 31 Dec 1997 for 155 Washington, whereas the Plan was not adopted until 13 Dec 1999) and, therefore, are not "newly constructed" under §260-1(A)(3)1. When interpreting an ordinance, the ordinary meaning of its plain language controls. *Talley v. Wetzel*, 15 F.4th 275, 280 (3d Cir. 2021). **The Plan itself underscores the point, describing Portside Phases One and Two as "completed" at adoption, leaving nothing for Plaintiffs to compel.** Here, the exemption applies only to "newly constructed" buildings within a redevelopment area. It defies logic and the plain meaning of "newly constructed" to hold that both Portside Towers, which Plaintiffs concede were built well **before** when the Tidewater Plan went into effect within 1999, are "newly constructed." As such, Plaintiffs' Motion seeking to compel documents related to this argument fails.

Finally, for the reasons set forth *supra.* at 9–16, Plaintiffs' requests for documents related to the Tidewater Plan must be denied. As noted throughout this opposition, this prerogative writ action challenges the RLB's quasi-judicial determination that Portside Towers are, and always have been, subject to rent control. *See e.g.* Pls' Br. at 1, 7; *see also* Dkt. No. 72 at ¶ 83, Dkt. No. 1; Dkt. No. 65 (Count VI). Therefore, this Court's review is limited to the record below. *Willoughby*, 306 N.J. Super. at 273 (explaining that a court's review of a municipal administrative agency's "quasi-judicial decision [by way of] . . . an action in lieu of prerogative writs . . . **must be based solely on the agency record**.") (emphasis added); *Hirth*, 337 N.J. Super. at 166 (explaining that if "quasi-judicial action is challenged, the court's decision **must be based solely**

19

**MᴄLᴀᴜɢʜʟɪɴ & Sᴛᴇʀɴ, LLP**

April 25, 2025
Page 20

**on the agency record**, which the court reviews to determine whether the agency's factual findings are based on substantial evidence and whether its discretionary decisions are arbitrary, capricious and unreasonable."). Documents regarding the Tidewater Plan go far beyond the record below and, therefore, Plaintiffs' request must be denied. But that is not all, as the Plaintiffs' request constitutes yet another example of their fishing expedition seeking documents with the hope that they can support for their meritless claims. As this Court and the Third Circuit has repeatedly held, these unbounded probes are not permitted. *Plastipak Packaging*, 363 Fed. Appx. at 191–92; ("we discourage 'fishing expeditions.'"). *Robinson* 2013 U.S. Dist. LEXIS 180325 at \*15-\*24; *Claude P. Bamberger* 1998 U.S. Dist. LEXIS 11141 at \*2-\*8 (D.N.J. Mar. 31, 1998). Therefore, Plaintiffs' Motion should be denied for this reason too.

**McLAUGHLIN & STERN, LLP**

April 25, 2025
Page 21

## CONCLUSION

This matter implicates an issue that concerns tens of thousands of families in this state and beyond – the ever-increasing costs of living due to powerhouse landlords like Plaintiffs continuously disregarding the law. As such, Plaintiffs' continued efforts to delay this "fast track procedure" into a lengthy and drawn-out litigation not only violates well-settled principles governing prerogative writ actions but also (and more importantly) delays an important decision that impacts the lives of Plaintiffs' hundreds of tenants. For these reasons, the Tenants respectfully submit that Plaintiffs' litigation scavenger hunt must come to an end and that this Court should DENY Plaintiffs' Motion in its entirety.

Respectfully,

MCLAUGHLIN & STERN, LLP
By:    /s/ *Mollie Hartman Lustig*
Mollie Hartman Lustig, Esq.

ERIC J. NEMETH, P.C.
By:    /s/ *Eric Nemeth*
Eric J. Nemeth, Esq.

MAROTTA & GARVEY
By:    /s/ *Neil Marotta*
Neil D. Marotta, Esq.

Copy to:    All counsel (via ECF)
Clients (via email)
File

21