**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> The City of Jersey City, the City of Jersey City Rent Leveling Board, and the City of Jersey City Bureau of Rent Leveling <br><br> Defendants, and <br><br> Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch, <br><br> Defendant-Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 2:23-cv-22291-MCA-JRA |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION**
**TO COMPEL LIMITED DEPOSITIONS AND PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................................ii

INTRODUCTION.......................................................................................................................... 1

ARGUMENT.................................................................................................................................. 4

I.      Reply To City's Response (Dkt. 123)................................................................................. 4

     A.    Discovery Beyond The Purported Official Record Is Appropriate And Was Ordered In This Case........................................................................................... 4

     B.    The City Should Be Compelled To Produce Three Fact Witnesses Directly Involved In The Decision And Recalculations..................................................... 7

     C.    The City Should Be Compelled To Produce A Corporate Representative On Limited Topics..................................................................................................... 8

     D.    The City Should Be Compelled To Produce Documents Related To The Tidewater Plan................................................................................................... 10

II.     Reply to Tenants' Response (Dkt. 122.)......................................................................... 10

     A.    Discovery Beyond The Purported Official Record Is Appropriate And Was Ordered In This Case......................................................................................... 10

     B.    Tenants Should Be Compelled To Produce Named Party Intervenor Tenants And Defendant-Intervenor Tenant Associations' Corporate Representatives For Depositions................................................................................................... 12

     C.    Tenants' Musings On Requests Directed To City Are Unavailing. .................... 14

CONCLUSION............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albanian Associated Fund v. Twp. of Wayne*,
  2007 WL 4232966 (D.N.J. Nov. 29, 2007)...........................................................11

*Aruanno v. Johnson*,
  2020 WL 1951605 (D.N.J. Apr. 23, 2020).........................................................9, 12

*Bloomfield 206 Corp. v. City of Hoboken*,
  2011 WL 9820 (N.J. Super. Ct. App. Div. Aug. 24, 2010).......................................6

*Casser v. Twp. of Knowlton*,
  2018 WL 6069165 (D.N.J. Nov. 20, 2018), *aff'd*, 803 F. App'x 602 (3d Cir.
  2020).........................................................................................................................11

*Catalpa Inv. Grp., Inc. v. Franklin Twp. Zoning Bd. of Adjustment*,
  603 A.2d 178 (N.J. Super. Ct. Law. Div. 1991).......................................................8

*Corradi v. New Jersey State Parole Bd.*,
  2019 WL 1795545 (D.N.J. Apr. 24, 2019).........................................................9, 12

*D&M Asbury Realty, LLC v. City of Asbury Park*,
  2005 WL 3693210 (N.J. Super. Ct. App Div. Jan. 24, 2006)....................................6

*Dolan v. De Capua*,
  109 A.2d 615 (N.J. 1954)..........................................................................................6

*Evers v. Zoning Bd. of Hoboken*,
  2017 WL 6347569 (N.J. Super. Ct. App. Div. Dec. 13, 2017)..................................6

*Gibson v. Twp. of Monroe Planning Bd.*,
  2010 WL 1929590 (N.J. Super. Ct. App. Div. May 14, 2010)..................................8

*Gutierrez v. Johnson & Johnson, Inc.*,
  2002 WL 34717245 (D.N.J. Aug. 13, 2002)..............................................................9

*Kinderkamack, LLC v. V*,
  2018 N.J. Super. Unpub. LEXIS 6593 (N.J. Super. Ct. Law Div. May 4, 2018)....8

*Kramer v. Bd. of Adjustment*,
  212 A.2d 153 (N.J. 1965)..........................................................................................6

*Lyons v. City of Camden*,
  226 A.2d 625 (N.J. 1967)..........................................................................................6

*Mrowko v. Belleville Twp. Zoning Bd. of Adjustment*,
2024 WL 4701975 (N.J. Super. Ct. App. Div. Nov. 7, 2024).............................................. 15

*OM 309-311 6th St., LLC v. City of Union City*,
2022 WL 855769 (D.N.J. Mar. 23, 2022)........................................................................ 2, 11

*Plastipak Packaging, Inc. v. DePasquale*,
2009 WL 186139 (W.D. Penn. Jan. 27, 2009)...................................................................... 13

*In re Revocation of Access of Block No. 1901, Lot No. 1, Borough of Paramus,
Bergen Cnty. Parkway 17 Assocs.*,
735 A.2d 594 (N.J. Super. Ct. App. Div. 1999)................................................................... 15

*Roth v. Rutherford Rent Bd.*,
571 A.2d 352 (N.J. Super. Ct. Law. Div. 1989)................................................................... 11

*SJ 660 LLC v. Borough of Edgewater*,
2024 WL 3770384 (N.J. Super. Ct. App. Div. Aug. 13, 2024), *cert. denied*,
326 A.3d 789 (2024)............................................................................................................ 15

## Other Authorities

Rule 26 ..................................................................................................................... 2, 4, 10

Rule 30(b)(6)............................................................................................................. 2, 3, 9, 12

**INTRODUCTION**

At the Court's direction, Portside[1] filed its motion to compel on the limited issues of (1) the City's[2] and Tenants' refusal to produce *any* witnesses noticed by Portside for deposition and (2) the City's failure to search for and produce documents related to Portside Towers' inclusion in the Tidewater Plan.[3] Portside established in its opening brief (Dkt. 113) that the City and Tenants are refusing to comply with their discovery obligations under the Federal Rules of Civil Procedure without any valid basis. Instead of abiding by the Court's March 14 order and engaging with the arguments in Portside's brief, both the City and Tenants devote the bulk of their responses to contending again that *any* discovery beyond the purported official record in front of the Board is *categorically not allowed*—an argument that the Court rejected at the March 14, 2025 hearing.

The City and Tenants have participated in countless meet-and-confers with Portside and hearings in front of Judge Almonte and Judge Cox-Arleo and have agreed to nine scheduling orders contemplating fact and deposition discovery over the course of months (a year in the case of the City), all the while staying silent as to any objection to depositions in the case. It was not until March 2025—after receiving Portside's fulsome discovery responses—that either party first indicated that they refused to produce any witnesses for depositions. If the City or Tenants had raised this objection earlier, instead of allowing months to go by as the close of fact discovery

---

[1] The defined terms in Portside's opening brief have the same meaning in its reply.

[2] Tenants' contention that the Bureau is "not a party to this litigation" (Dkt. 122 at 2 n.2) is incorrect, including because Portside named the Bureau as a party (Dkt. 65) and Tenants specifically brought their prerogative writ cross claims "against the Board, *Bureau*, and City." (Dkt. 72 at 70-74 (emphasis added); *see also, e.g.*, *id*. at ¶108.)

[3] While reserving all rights should the case move beyond the prerogative writ claims, Portside elected to drop Dispute No. 9 (Dkt. 101 at 5; Dkt. 109 ¶¶9, 16) to further streamline the case and focus on the most important and relevant discovery issues.

approached, Portside would have brought this issue to the Court earlier and this case would be well on its way to resolution.

Along with repeating their rejected assertion that discovery must be limited to the purported record in front of the Board, the City's and Tenants' other arguments fall short of offering anything new for this Court to consider, nor do they justify their failure to comply with the Federal Rules.

***Depositions of <u>City</u> Fact Witnesses.***  It is undisputed that the *three* City fact witnesses that Portside seeks to depose—Board chair Albert Cupo, Director of the Office of Landlord/Tenant Relations Shyrone Richardson, and former Rent Leveling Administrator Dinah Hendon—have knowledge relevant to the facts underlying the prerogative writ claims.  In its response, the City identifies *no* burden to producing these fact witnesses for depositions.  The City contends that Portside seeks to impermissibly probe into the thought processes of the decisionmakers, but that is not correct.  Portside seeks the facts and information put before the decisionmakers in connection with the Decision and Recalculations—which Judge Almonte has already found are relevant to the prerogative writ claims.  (Mar. 14, 2025 Hrg. Tr. at 28:1-4, 30:19-21.)

***Rule 30(b)(6) <u>City</u> Corporate Representative.***  The City identifies no burden imposed by producing a Rule 30(b)(6) representative.  While the City contends that the list of the six noticed 30(b)(6) topics is "long" and "general," that is not a valid basis for refusing to produce a corporate representative altogether or rejecting Portside's multiple offers to meet and confer regarding narrowing the Rule 30(b)(6) topics.

***Request to <u>City</u> for Documents Related to the Tidewater Plan.***  The City does not dispute that the requested documents are relevant to Portside's allegations regarding its rent control exemption based on its inclusion in the Tidewater Plan.  The City argues against the merits of those allegations, but that is not a basis under Rule 26 to withhold documents.  The City also does

not identify a burden related to searching for and producing these documents. Indeed, in the amount of time and ink the City has spent arguing about the Tidewater Plan, it could have searched its files and run the ESI terms suggested by Portside months ago.

***Depositions of <u>Tenant</u> Witnesses.*** For purposes of this motion, Portside's only outstanding discovery requests to Tenants are the deposition notices for the named party intervenor tenants and Rule 30(b)(6) representatives. At the March 14 hearing, Judge Almonte sought from Tenants their "legal basis to objecting to the depositions." (Mar. 14, 2025 Hrg. Tr. 122:21-123:15.) Tenants did not provide a valid basis at the hearing. Instead of doing so in their response, they rely again on their failed argument that no discovery can occur beyond the official record. Tenants also characterize the depositions as "harassing and unduly burdensome"—all the while identifying no specific burden—and as part of a "fishing expedition" delaying the case. (*E.g.*, Dkt. 122 at 4, 14, 16, 20.) But it is Tenants' and the City's continuous false promises and back-tracking that have delayed this case—not Portside's efforts to obtain limited, relevant discovery.

The City's and Tenants' response briefs are yet additional examples of delay, wasting both Portside's and the Court's time by parroting a rejected argument and offering no new useful information to aid the Court in its determination of the relevance and burden of the discovery requests they so steadfastly refuse. As a result, they have provided the Court no basis to deny Portside's motion to compel.

**ARGUMENT**

**I.    Reply To City's Response (Dkt. 123)**

**A.    Discovery Beyond The Purported Official Record Is Appropriate And Was Ordered In This Case.**

The City spends the majority of its response relitigating its contention that *any* discovery outside of the purported "record" presented to the Board "cannot be considered to decide a prerogative writ." (Dkt. 123 at 1-6.)  This argument fails for at least four reasons.

*First*, the City's position contradicts the nine scheduling orders issued by Judge Almonte, to which the City agreed.  As detailed in Portside's opening brief (Dkt. 113 at 3-4), from the very beginning, the scheduling order contemplated document and deposition discovery, and each of the amended scheduling orders set, maintained, or re-set deadlines for fact and deposition discovery on issues relating to the prerogative writ claims.  For a year (*see* Dkt. 17, Joint Discovery Plan dated March 4, 2024), the City met and conferred with Portside and participated in Court hearings regarding these scheduling orders but *never* raised that it planned to refuse to produce any witnesses for depositions.  Additionally, for weeks, the City agreed to produce documents in response to Portside's document requests, including the request for documents related to the Tidewater Plan (*see, e.g.*, Dkt. 94 at 2), but in January 2025 it switched to its current position that it would produce no more documents in this case whatsoever (*see* Dkt. 101 at 2)—only after Portside responded in full to all of the City's discovery requests.

*Second*, the City ignores that the Federal Rules govern this litigation.  As Judge Almonte explained during the March 14, 2025 hearing:

> Rule 26 provides that, in federal civil litigation, discovery may be obtained regarding any, quote, nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . It is axiomatic that, under the rule, all relevant material is discoverable unless an applicable evidentiary privilege

is asserted. . . . [R]elevant discovery will be related to Portside's prerogative writ claims and the Tenants' prerogative writ claims against the City defendant.

(Mar. 14, 2025 Hrg. Tr. 11:4-11, 12:2-4.)

*Third*, the City's position ignores that the Court has already determined that additional discovery beyond the record before the Board below is allowed. At the August 1, 2024 hearing, Judge Cox-Arleo noted that she would be reviewing this matter *de novo*. At the March 14, 2025 hearing, Judge Almonte rejected the City's argument that discovery be limited to the "official record." There, when arguing against Portside's request for communications between the relevant decisionmakers regarding the Decision, the City's counsel asserted that "what the Court is supposed to consider" is the purported "record" in front of the Board that "has been exchanged." (Mar. 14, 2025 Hrg. Tr. 22:4-23:6.) Judge Almonte disagreed, ruling that documents showing "what decisionmakers considered before making the decision" are relevant and discoverable for the prerogative writ claims, and ordering the City to "review these documents as soon as possible" and produce them to Portside by April 14. (*Id.* at 28:1-6, 30:19-21; Dkt. 109 ¶3.) Yet, despite this clear order and after claiming that the volume of documents to review was so large that it would consume much time and resources (Mar. 14, 2025 Hrg. Tr. 28:17-23; Dkt. 94 at 4; Dkt. 96 at 3), the City produced no responsive internal communications to Portside and instead, on May 1, 2025, asserted that all such communications were privileged—while producing a privilege log comprising of only fourteen documents.

*Fourth*, the City is wrong that discovery is always limited to the purported "official" record under New Jersey law. Per New Jersey Court Rule 4:69-4, judges have the discretion to determine the scope of and time to complete discovery in prerogative writ claims. *See also* Pressler & Verniero, Comment 5.1 to R. 4:69-4 ("[T]he rule leaves the issue to the court for determination on a case-by-case basis.") While judges often limit the scope of discovery to the record in front of

5

the agency, judges also may determine that additional discovery is appropriate—as Judge Almonte has already done in this litigation.  (*E.g.*, Dkt. 25 at 1-2; Dkt. 57 at 2; Dkt. 62 at 2; Dkt. 88 at 2-3; Dkt. 97 at 1-2; Dkt. 109 ¶3; Dkt. 116 at 1-2.)  For example, in a case that the City itself cites—*Kempner v. Edison*—the plaintiff filed his complaint in lieu of prerogative writs and "thereafter proceeded, both *by way of pretrial depositions* and *testimony in open court*, to adduce proof in substantiation of the allegations of his complaint and of a case for a use variance."  149 A.2d 251, 254 (N.J. Super. Ct. App. Div. 1959) (emphasis added) (cited at Dkt. 123 at 2);[4] *see also e.g.*, *Lyons v. City of Camden*, 226 A.2d 625, 631 (N.J. 1967) ("[P]laintiffs are entitled to produce proof in documentary form or by calling witnesses for the purpose of demonstrating that the board acted arbitrarily[.]"); *Dolan v. De Capua*, 109 A.2d 615, 622 (N.J. 1954) (lower court did not err "in permitting the introduction of evidence in the civil action [in lieu of prerogative writ] which [was] not introduced before the board" in "quasi-judicial" hearing); *Bloomfield 206 Corp. v. City of Hoboken*, 2011 WL 9820, at *2 (N.J. Super. Ct. App. Div. Aug. 24, 2010) ("[Plaintiff] was permitted to conduct discovery of [city's] property files to attempt to establish its claim[.]").

The Court's exercise of discretion in permitting discovery is particularly appropriate in this case for multiple reasons, including because application of the "substantial compliance" doctrine

---

[4] Other cases cited by the City similarly confirm that courts have discretion to allow discovery in prerogative writ actions under New Jersey law.  (*See, e.g.*, Dkt. 123 at 3-4 (citing *D&M Asbury Realty, LLC v. City of Asbury Park*, 2005 WL 3693210, at *18 (N.J. Super. Ct. App Div. Jan. 24, 2006) (noting that "trial court has broad discretion to determine discovery" but affirming denial of additional discovery because plaintiffs had not demonstrated why that discovery was relevant); *Evers v. Zoning Bd. of Hoboken*, 2017 WL 6347569, at *3-4 (N.J. Super. Ct. App. Div. Dec. 13, 2017) (holding that the judge "should have granted plaintiff's motion" to "supplement the record with evidence" of "informal correspondence to municipal officials" but error was harmless because it would not change that prerogative writ claims were time barred); *Kramer v. Bd. of Adjustment*, 212 A.2d 153, 159-60, 164 (N.J. 1965) (noting that court consulted "exhibits and information adduced on pretrial discovery," "evidence produced at trial," and new testimony after trial "presented in the form of an affidavit")).)

may be informed by facts that go beyond the purported administrative record, and there is evidence that decisionmakers received information and/or communications not contained in that record.

> **B.    The City Should Be Compelled To Produce Three Fact Witnesses Directly Involved In The Decision And Recalculations.**

Portside established in its opening brief (Dkt. 113 at 6-10)—and the City does *not dispute in its response*—that (1) the three City fact witnesses that Portside seeks to depose (Mr. Cupo, Mr. Richardson, and Ms. Hendon) have knowledge relevant to the facts underlying the prerogative writ claims; and (2) the City has not and cannot demonstrate *any* burden, much less a specific undue burden, to producing these three fact witnesses for depositions.[5]  The Federal Rules thus require that the City produce these witnesses for depositions.  (*See* Mar. 15, 2025 Hrg. Tr. 11:4-11.)

In its response, the City never mentions the Federal Rules or addresses the federal case law cited by Portside for the proposition that depositions play a "vital role" in the preparation of any case for final disposition.  (*See* Dkt. 113 at 7.)  Instead, in addition to its failed argument that any depositions are prohibited because they go beyond the official record, the City contends that Portside seeks to impermissibly probe into the thought processes of decisionmakers.  (Dkt. 123 at 4-6.)  The City is incorrect.  Portside seeks the facts and information put before the decisionmakers in connection with their Decision and Recalculations—which Judge Almonte has already found

_____

[5] At the March 14, 2025 hearing, the City floated for the first time two arguments specific to Ms. Hendon's deposition but does not raise either in its response.  In any case, both arguments fail. *First*, the City contended that, because Ms. Hendon is a lawyer, "many of her conversations would be considered privileged in her role with the Board[.]"  (Mar. 14, 2025 Hrg. Tr. 123:25-124:2.)  However, when employed by the City, Ms. Hendon was the Bureau's Rent Leveling Board Administrator, not legal counsel, and the City has provided no evidence that any of her responsibilities included providing legal advice to the Board.  *Second*, the City noted that Ms. Hendon's "decision was overturned" (*id*. at 124:3-5) but does not dispute that her considerations and determinations—both factual and legal—underlying her decision are relevant to the merits of Portside's prerogative writ claim and will provide evidence supporting Portside's argument that the Board's decision was arbitrary and capricious.

7

are relevant to the prerogative writ claims.  (Mar. 15, 2025 Hrg. Tr. 30:19-21 ("what decision-makers considered before making the decision is relevant").)  Through its review of discovery produced thus far in the case, Portside has seen evidence that tenants were providing the decisionmakers with alleged facts and arguments that are not reflected in the purported administrative "record" in front of the Board and Bureau.  (Dkt. 113 at 7-8.)  Despite the City's assertion otherwise (*e.g.*, Dkt. 123 at 6), such correspondence demonstrates that the purported "record" in this case is not, in fact, "complete."  The cases cited by the City are inapposite because, unlike Portside, the parties sought to depose decisionmakers about their mental processes and/or the official record contained all facts and information presented to the deciding agency.[6]

### C.    The City Should Be Compelled To Produce A Corporate Representative On Limited Topics.

As demonstrated in Portside's opening brief, the Federal Rules require that the City designate a corporate representative to testify to information known to the City.  (Dkt. 113 at 6 ("when a party names a corporation in its deposition notice, '[t]he named organization *must* designate'" a person to testify on its behalf and that representative "'must testify about information

---

[6] (*See* Dkt. 123 at 2-6 (citing *New Jersey Turnpike Auth. v. Sisselman*, 255 A.2d 810, 814-15 (N.J. Super. Ct. App. Div. 1969) (agreeing with denial of depositions because party sought to inquire into commissioners' "mental processes," and "[a]ll the [f]acts material to the determination of legality or arbitrariness of the actions of the [agency] have been spread upon this lengthy record"); *Gibson v. Twp. of Monroe Planning Bd.*, 2010 WL 1929590, at *6-7 (N.J. Super. Ct. App. Div. May 14, 2010) (affirming denial of deposition of mayor regarding his "bias" against plaintiff's counsel because it delved into mental processes, and regarding one off-the-record conversation with individual because that individual had stipulated to substance of the conversation); *214 Kinderkamack, LLC v. V*, 2018 N.J. Super. Unpub. LEXIS 6593, at *27-28 (N.J. Super. Ct. Law Div. May 4, 2018) (denying depositions where "the focus of any deposition would go directly and solely to the deliberative process of the [m]ayor and other [b]orough officials" and "the discovery sought . . . in no way impact[ed] the [p]laintiffs['] ability to prosecute the complaints"); *Catalpa Inv. Grp., Inc. v. Franklin Twp. Zoning Bd. of Adjustment*, 603 A.2d 178, 179-180 (N.J. Super. Ct. Law. Div. 1991) (granting protective order in part because depositions inquired into decisionmakers' mental processes and defendant had demonstrated that burden was "great")).)

known or reasonably available to the organization'"), 8-11.) Nowhere in its response does the City provide federal case law justifying its refusal to comply with this requirement. The City comments that it considers the list of six Rule 30(b)(6) topics to be "long" and "general" (Dkt. 123 at 5-6), but that is neither true nor a valid basis to refuse to produce a corporate representative.

Each of the six Rule 30(b)(6) topics is tailored to the prerogative writ claims. (Dkt. 113 at 7-8.) Portside specifically culled these topics to seek only the information most relevant to the prerogative writ claims in response to Judge Almonte's March 14 order. (*See* Dkt. 113-15.) For instance, Portside seeks to depose the City on the Decision and the facts referenced therein; the relevant laws the Board interpreted when retroactively stripping Portside of its exempt status (which the City denies was unlawful (*e.g.*, Dkt. 84 ¶20)); and communications between decisionmakers and tenants to determine all the facts and information presented to the decisionmakers before they reached their decision.

The City has not demonstrated that these topics are not relevant to the prerogative writ and has identified no specific burden sufficient to refuse production of a corporate representative. *See Aruanno v. Johnson*, 2020 WL 1951605, at *2 (D.N.J. Apr. 23, 2020) ("The [party] resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient."); *Corradi v. New Jersey State Parole Bd.*, 2019 WL 1795545, at *1-2 (D.N.J. Apr. 24, 2019) ("[M]ere[ly] stat[ing] a discovery request is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."); *see also Gutierrez v. Johnson & Johnson, Inc.*, 2002 WL 34717245, at *3 (D.N.J. Aug. 13, 2002) ("[A]bsent extraordinary circumstances, it is an error for a court to prevent the taking of a deposition.").

9

Additionally, the City has rebuffed Portside's offers to meet and confer on the 30(b)(6) topics, which would have provided the City the opportunity to raise any specific concerns with the proposed topics or to suggest ways to narrow them.  (*See* Ex. A, Apr. 17, 2025 Emails (City responds to Portside's meet-and-confer offer that its position on the depositions had "not changed").)  The City instead opted to raise its complaints for the first time in its response brief. (Dkt. 123 at 5-6.)

> **D.      The City Should Be Compelled To Produce Documents Related To The Tidewater Plan.**

The City's response disputes neither that documents related to the Tidewater Plan are relevant and tailored to the prerogative writ claims in this action nor that the City would not be unduly burdened by searching for and producing those documents, as established in Portside's opening brief.  (*See* Dkt. 113 at 12-15.)

In addition to the fruitless argument that documents related to the Tidewater Plan would exceed the purported "official" record, the City argues that Portside's document request "is not proportional to the needs of the case."  (Dkt. 123 at 6.)  Yet all the City offers in support of this contention is its disagreement with the merits of the allegation that Portside seeks this discovery to support—namely, that Portside Towers is exempt from rent control under the Tidewater Plan. (*Id.* at 6-7.)  A disagreement with the substance of an allegation is not a basis for withholding discovery under Rule 26.

> **II.    Reply to Tenants' Response (Dkt. 122.)**

> **A.      Discovery Beyond The Purported Official Record Is Appropriate And Was Ordered In This Case.**

After submitting their own claim in lieu of prerogative writ—in which they challenged the Board's six-year lookback and the Bureau's Recalculations (*see* Dkt. 72 ¶¶129-134)—and

enjoying fulsome discovery on those claims, Tenants now seek to prevent Portside from obtaining necessary information to test both Tenants' and Portside's prerogative writ claims. To attempt to support that effort, Tenants devote the vast majority of their brief to arguing that *all* "discovery must be limited to the record." (Dkt. 122 at 3, 7-16, 18-20). As explained above, that is not true under the New Jersey rules, the federal rules, or the Court's orders in this case.[7] Just like the City, since fighting to join this federal litigation as Defendant-Intervenors,[8] Tenants (i) agreed to all scheduling orders entered by Judge Almonte establishing document and deposition discovery deadlines related to the prerogative writ claims; (ii) met and conferred with Portside and participated in Court hearings for months but never raised that it planned to refuse to produce any witnesses for depositions; and (iii) agreed to respond to many of Portside's document requests but switched to its current position after Portside completely responded to all of the Tenants' discovery requests.

---

[7] Cases cited in Tenants' own brief support that discovery outside of the record in front of the Board is allowed under New Jersey law. (*See, e.g.*, Dkt. 122 at 8 (citing *Roth v. Rutherford Rent Bd.*, 571 A.2d 352, 353, 354 n.3 (N.J. Super. Ct. Law. Div. 1989) (noting that at trial in action in lieu of prerogative writs "both parties were given the opportunity to produce witnesses")).)

Tenants cite to dicta in three federal cases, but in all three, the courts ruled on motions to dismiss— not questions of the scope of discovery. (*See* Dkt. 122 at 7, 8, 11 (citing *OM 309-311 6th St., LLC v. City of Union City*, 2022 WL 855769, at *16 (D.N.J. Mar. 23, 2022) (noting prerogative writ claims against board "lie at the heart of what this case is truly about, and *may be prioritized for purposes of discovery* and trial, if appropriate" (emphasis added)); *Albanian Associated Fund v. Twp. of Wayne*, 2007 WL 4232966, at *4 (D.N.J. Nov. 29, 2007) (denying motion to supplement complaint with prerogative writ claim); *Casser v. Twp. of Knowlton*, 2018 WL 6069165, at *5 (D.N.J. Nov. 20, 2018), *aff'd*, 803 F. App'x 602 (3d Cir. 2020) (dismissing time-barred prerogative writ claim)).)

[8] As part of their intervention motion—where Tenants specifically consented to federal jurisdiction (Dkt. 30 at 5)—Tenants assured the Court that their presence as defendants in the case would "not cause undue delay" and would instead "promote efficiency" (*id.* at 3, 5, 11).

11

**B.      Tenants Should Be Compelled To Produce Named Party Intervenor Tenants And Defendant-Intervenor Tenant Associations' Corporate Representatives For Depositions.**

In its opening brief (Dkt. 113 at 8-10), Portside established that the depositions of four named party intervenor tenants—Kevin Weller, Michele Hirsch, Joel Rothfus, and Jessica Brann—and Rule 30(b)(6) corporate representatives of the Tenant Associations are relevant and tailored to the prerogative writ claims. Tenants' arguments in response are unavailing.

Tenants argue that the depositions of named party intervenor tenants and Rule 30(b)(6) corporate representatives of Tenant Associations are "irrelevant," but their sole basis for this contention is that those depositions constitute discovery beyond the record in front of the Board. (Dkt. 122 at 13-14, 13 n.7.) As explained *supra* at Argument §I.A, this argument is wrong as a matter of law and contradicts the Court's orders in this case.

Tenants also contend that the depositions are "harassing and unduly burdensome" but give no valid basis for this argument. (*Id.* at 14.) Tenants identify no burden specifically associated with producing the named party intervenor tenants and Rule 30(b)(6) corporate representatives for depositions. *See Johnson*, 2020 WL 1951605, at *2; *Corradi*, 2019 WL 1795545, at *1-2; Mar. 14, 2025 Hrg Tr. at 122:21-123:15 (Court seeking from Tenants the "legal objection" to depositions, including whether Tenants are "objecting to the topics" or to the depositions).[9] The only burden referenced by Tenants is that they incurred expenses associated with producing documents in response to Portside's discovery requests (Dkt. 122 at 2, 14),[10] but complying with

---

[9] Tenants seem to suggest that because the tenants' communications with City officials were an "exercise [of] their constitutional rights" (Dkt. 123 13-14, n.8), information related to such communications is not discoverable in this case. Yet this is not a basis under the Federal Rules to deny a deposition, and Tenants cite no cases to support that it is.

[10] Tenants' page count for their production in this case is misleading. Nearly 18,000 of the pages Tenants count towards their production total are from amalgamated PDFs produced in improper format, which Tenants then reproduced. And many of Tenants' documents are simply repeat

12

a party's obligations under the Federal Rules to produce relevant documents is not an undue burden or a basis to withhold witnesses from deposition. For its part, Portside has produced over 360,000 pages of documents to its own significant expense and repeatedly offered to meet and confer with Tenants to mitigate any burden as much as feasible, including providing search terms to aid the parties' ESI review.

Instead of providing any detail on the supposed burden imposed by the depositions, Tenants falsely contend that Portside's efforts to obtain limited, relevant discovery related to the prerogative writ claims were part of a "fishing expedition" and "delayed" the litigation. (Dkt. 122 at 1-2, 4-7, 10, 16-17, 20-21.) None of the federal cases cited by Tenants hold that deposing parties is a "fishing expedition."[11] Portside has complied with the Court's scheduling orders at every turn, producing hundreds of thousands of pages of documents and responding to the City's and Tenants' very broad document requests and interrogatories (*see* Dkts. 113-4, 113-5)[12] well before

---

productions (including as recently as April 9, 2025) of the "record" below in this case, which each party already has. The remaining documents—which, as Tenants admit, are largely "tenant email communications, a majority of which were with City officials" (Dkt. 122 at 14)—only further demonstrate that Tenants presented information to the Board outside of the official record.

[11] *Pastipak Packaging, Inc. v. DePasquale*—the only case involving depositions cited by Tenants (Dkt. 122 at 6, 17, 20) for their fishing expedition argument—is inapposite. In *Pastipak*, the Third Circuit affirmed the lower court's decision to deny the untimely request to depose a party and his non-party wife because doing so would require the court reopen discovery to pursue a legal theory that the Third Circuit found "inexplicabl[e]" based on the stipulated facts. 363 Fed. App'x. 188, 189 (3d Cir. 2010); *see also Plastipak Packaging, Inc. v. DePasquale*, 2009 WL 186139, at *4 (W.D. Penn. Jan. 27, 2009). Here, Portside's deposition notices were timely served within the discovery period and are to parties who chose to intervene in this action and bring prerogative writ claims.

[12] *See, e.g.*, Tenants' RFP 4 to Portside ("*All documents* and/or tangible items containing written or oral statements, admissions, communications, or declarations *from any person or entity relating to the facts that form the subject of and/or support* your prerogative writ claims"); Tenants' Interrogatory 5 to Portside ("Describe with specificity *all* communications, written or verbal, (a) *between and among all* Plaintiffs, their predecessors, consultants, and others, who participated in the decision-making process regarding (i) *the renewals and terms of leases for each tenant* at the Portside Towers Buildings from *January 2020* forward. . . .") (emphasis added).

13

the then-governing fact discovery deadline. (*See* Dkt. 64 at 2, Dkt. 91 at 1.) The sole cause of delay is that Tenants and the City both promised that they would produce discovery and then backtracked after Portside completely responded to both parties' discovery requests, including delaying any objection to depositions until March 2025 (*see, e.g.*, Dkt. 101 at 6, Dkt. 106 at 5), preventing Portside from pursuing a motion to compel this discovery and resolving these disputes far earlier.[13]

In a departure from their position that *no* depositions are necessary in this case, Tenants also argue that they "should be permitted to depose" various Portside personnel should depositions proceed. (Dkt. 122 at 17-18.) Portside respectfully notes that, prior to their April 25, 2025 filing, Tenants neither notified Portside of these desired depositions nor provided appropriate deposition notices, as Portside timely provided for the depositions it seeks from Tenants. Regardless, Portside agrees that parties are entitled to depositions in a federal case.

### C.     Tenants' Musings On Requests Directed To City Are Unavailing.

Tenants devote pages of their response to arguing against Portside's requests to the City, even though those requests in no way involve Tenants or impose any burden on them. Tenants' arguments suggest that they are concerned about what the Court might learn from Portside's

---

[13] The discovery requests that Tenants identify as the would-be culprits of Portside's delaying this matter include the request for a WhatsApp group chat (Dkt. 122 at 3) used by Portside tenants to communicate about the ongoing rent control dispute. Tenants agreed to produce this chat in November and December 2024 letters before withdrawing from that position in January 2025. (*See* Dkt. 101 at 6.) Similarly, Tenants also list Portside's request to the City for historical resolutions/decisions related to the Exemption (Dkt. 122 at 3), which the City agreed to produce before back-stepping in January 2025. (*See* Dkt. 94 at 2; Dkt. 101 at 3-4.) These examples only highlight the confusion and delay caused by Tenants' and the City's continuous misrepresentations and reneging of commitments on which Portside relied and which prevented Portside from raising these disputes with the Court far earlier.

depositions of City witnesses and documents related to the Tidewater Plan. Regardless, Tenants' arguments regarding requests directed to the City fail.

Tenants argue that Portside's requests to depose Mr. Cupo, Mr. Richardson, and Ms. Hendon impermissibly "explore the mental processes of these decisionmakers." (Dkt. 122 at 12-13.) As explained above, Portside seeks the facts and arguments put forth to the Board—which the Court has already determined are relevant and discoverable for the prerogative writ claims (*e.g.*, Mar. 14, 2025 Hrg. Tr. 28:1-4, 30:19-21)—not the decisionmakers' mental processes.[14]

Tenants are right that, as they acknowledged to Judge Almonte, "the Tidewater Basin issue is not our issue to argue[;] [i]t's the issue of the City" (*id.* at 40:1-2). Despite this, Tenants spend pages repeating the City's arguments on the Tidewater Plan (Dkt. 122 at 18-20), which, as explained above, all fail.

### CONCLUSION

For each of the foregoing reasons and the reasons set forth in its opening brief (Dkt. 113), Portside respectfully requests that the Court enter an Order compelling the City to produce documents related to the Tidewater Plan and the City and Tenants to promptly present the witnesses previously noticed for deposition.

---

[14] Beyond cases referenced by the City (*see* footnote 6), Tenants cite three additional cases for this argument, all of which are inapposite. (Dkt. 122 at 9-10, 12-13 (citing *In re Revocation of Access of Block No. 1901, Lot No. 1, Borough of Paramus, Bergen Cnty. Parkway 17 Assocs.*, 735 A.2d 594, 597, 605 (N.J. Super. Ct. App. Div. 1999) (affirming denial of depositions of decisionmakers regarding "mental processes" in negotiating an agreement); *SJ 660 LLC v. Borough of Edgewater*, 2024 WL 3770384, at *14 (N.J. Super. Ct. App. Div. Aug. 13, 2024), *cert. denied*, 326 A.3d 789 (2024) (affirming denial of "discovery to seek information concerning the [personal] interests of various [c]ouncil members" where plaintiff had not "demonstrate[d] that the discovery it was seeking was relevant"); *Mrowko v. Belleville Twp. Zoning Bd. of Adjustment*, 2024 WL 4701975, at *4 (N.J. Super. Ct. App. Div. Nov. 7, 2024) (affirming lower court's refusal to allow plaintiff "full" and "broad" discovery before denying motion to dismiss prerogative writ claim for failure to state a claim at pleading stage based on the "uncontested facts of th[e] case")).)

15

Dated:    May 2, 2025                    Respectfully submitted,

The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC

By:    */s/ Derek D. Reed*

*Attorney for Plaintiffs The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC*

Derek D. Reed, Esq. (Attorney ID # 038062003)
Jeffrey Plaza, Esq.
EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED
A Professional Corporation
60 Park Place, 18th Floor
Newark, New Jersey 07102
(973) 643-0040

Terri L. Mascherin
Andrew W. Vail
Daniel J. Weiss
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois  60654
Phone:  (312) 222-9350
Facsimile:  (312) 840-7375

*Attorneys for Plaintiffs*