

*Derek Reed | Partner*
direct: (973) 854-6710
dreed@EPGPRlaw.com

May 29, 2025

**Via ECF**
Magistrate Judge José R. Almonte
Chambers of José R. Almonte
Frank R. Lautenberg U.S. Post Office & Courthouse Building
2 Federal Square
Newark, NJ 07102

Re:     *The Towers at Portside Urban Renewal Company L.L.C., et al. v. The City of Jersey City, et al.*  Case No. 2:23-cv-22291-MCA-JRA

Dear Magistrate Judge Almonte:

Pursuant to this Court's May 6, 2025 text order (Dkt. 126) and Case Management Order, Plaintiffs (collectively, "Portside"), Defendants (collectively, the "City"), and Defendant-Intervenors (collectively, "Tenants") jointly submit this letter setting forth active discovery disputes requiring the Court's intervention.  The parties reserve all rights to bring additional open disputes to the Court's attention if current efforts to reach a resolution fail.

By way of background, Paragraph 3 of the Court's March 14, 2025 Order (Dkt. 109) (the "Order") required the City to produce, by April 14, 2025, "internal communications between the relevant agency decisionmakers regarding the Board's decision on Portside's rent-control exemption" as identified in Dispute No. 3 of the January 31, 2025 joint status letter (Dkt. 101) (the "January Status Letter").  Before the hearing, the City represented—both in writing and on the record—that its agreed-upon keyword search had located 2,376 responsive e-mails (approximately 87,000 pages as stated by counsel for the City during the March 14, 2025 hearing (the "Hearing")) and that it was already conducting a privilege review. (Mar. 14, 2025 Hrg. Tr. ("Hrg. Tr.") at 23:24-24:1.)

Despite the clear requirements of the Order, the City has failed to produce any responsive emails whatsoever. Instead, on April 25 the City served a privilege log identifying a mere 17 emails, all withheld as privileged, and asserted that this log alone satisfied Paragraph 3. (Ex. A.). The Plaintiffs assertions are completely incorrect.  The City complied with the Court's March 14, 2025 Order. The Plaintiff's statements in this letter simply reflect their dissatisfaction with the City's response even though the City fully complied with the Court's Order. Moreover, the parties were directed by Judge Arleo to engage in mediation with the first session beginning on July 17. Instead of focusing on mediation, the Plaintiffs are wasting the Court's time with meritless and de minimis discovery demands that are arguably moot given the scheduled mediation.

Please direct replies to:
60 Park Place, 18th Floor, Newark, NJ 07102
Tel: (973) 643-0040 • Fax: (973) 596-1781 • www.EPGPRlaw.com

NEWARK    •    NEW YORK    •    MORRISTOWN

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

May 29, 2025
Page 2

During a May 2, 2025 meet-and-confer the City revealed that, after the Order was entered and contrary to the requirements of Paragraph 3, it ran a new email search with modified terms rather than perform a relevance and privilege review (a process which it claimed to have started as far back as December 2024) of the previously identified set of 2,376 emails.  The City further revealed that the search of decisionmakers' personal email accounts, which the City admitted would be required during the March 14 hearing, was unsupervised and self-selected by the individual decisionmakers. (Mar. 14, 2025 Hrg. Tr. at 135:2-5.)

Relatedly, Paragraph 2 of the Order required that the City "confirm the methodology implemented by the City Defendants to search for documents responsive to Portside discovery requests" as set forth in Dispute No. 2 of the January Status Letter.  On April 14, the City sent an email incorrectly purporting to satisfy that requirement. (Ex. B.)   That email describes only the two searches the City ran in 2024—the latter of which yielded the 2,376 emails now at issue.  The City did not provide the methodology for the new search done after the Order was entered which returned only 17 responsive emails, and did not reveal that a new search was done at all until the May 2 meet-and-confer.  Moreover, the City completely failed to provide the search methodology for potentially responsive communications hosted on decisionmakers' personal email accounts.

On May 5, Portside identified in writing, among others, the foregoing deficiencies in a draft joint status letter circulated among the parties.  By email dated May 7, more than three weeks after the April 14 deadline, the City provided what it represented to be the methodology for the search it had actually conducted following the Order, which yielded the 17 emails withheld as privileged identified in the City's April 25 privilege log. (Ex. C.)

The May 7 email still failed to provide the search methodology for relevant communications hosted in decisionmakers' personal email accounts.  Moreover, the May 7 email revealed, again for the first time, that the City had removed all non-Board members from the search in direct violation of the Court's statements during the March 14, 2025 hearing.

Portside and the City have met and conferred via videoconference to discuss these matters, and for the reasons set forth below remain at impasse.

**Dispute No. 1**: The City has failed to comply with Paragraph 3 of the Order.

**Portside's Position:** The City claims that production of the April 25 privilege log alone satisfies its obligations pursuant to Paragraph 3 of the Order.  That position is untenable for three reasons:

First, the City improperly conducted a new more limited search rather than review and produce all non-privileged communications from among the previously identified set of 2,373 emails.  During the Hearing the Court specifically directed the City to review the 2,376 emails.

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

May 29, 2025
Page 3

(See Hrg. Tr. at 28:5-9 (stating, "[s]o, Mr. Adelman and Mr. McKinney, review these documents as soon as possible. It sounds to me that there's some internal communications.  To the extent that some of the information is privileged, then you need to produce a privilege log."); 28:14-16 (stating, "[s]o the questions that I have now is how much time do you need to review the 2,376 emails and either produce or  assert a privilege?")  By conducting an entirely new search, with different criteria, the City has directly violated Paragraph 3 of the Order.

Second, City now reads Paragraph 3's sentence excluding "communications with, among, or between non-decision makers" as authority to discard every hit that includes even a single non-decision-maker on the chain. Nothing in the Order or the Court's hearing colloquy authorizes such surgical deletions; the Court was clear that internal deliberations **"show[ing] the thought process of the decision-makers"** are discoverable even if outside parties are copied. (Hrg. Tr. at 31:13-14.)

Third, the City improperly removed decisionmakers relative to the Bureau's calculations from the search terms.  Although the City's first methodology provided on April 14 claimed that the 17 privileged emails were identified via a search that included Bureau Director Richardson who oversaw the calculations, the methodology provided on May 7 showed that this was not correct and the 23 email addresses it originally represented had been in the search was actually only 10.  In the City's own words, "we removed every participant/name except for members of the Rent Control Board."  This is completely contrary to the Court's statements during the Hearing, including in the following exchange:

Mr. McKinney:  So this would be Director Richardson and anyone he tasked with doing the calculations?

The Court:  Yes.

**City's Position**:

The City complied with paragraph 3 of the Court's Order.  By email dated April 25, 2025, the City provided a privilege log identifying all of the communications with the Rent Board decisionmakers.  Counsel for the City were party to the aforementioned communications thereby resulting in the privilege log. By email dated May 7, 2025, the City advised Plaintiffs that the City searched every email account using search terms provided by the Plaintiffs and located the correspondence in the privilege log. The City adjusted the search in order to obtain the communications involving the decisionmakers as directed by the Court.

**Dispute No. 2**: The City has still not produced its search methodology for the internal communications amount decisionmakers.

**Portside's Position**: Paragraph 2 of the Order required that the City "confirm the methodology implemented by the City Defendants to search for documents responsive to Portside

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

May 29, 2025
Page 4

discovery requests" as set forth in Dispute No. 2 of the January 31, 2025 joint status letter. On April 14, the City sent an email purporting to satisfy that requirement. However, the City still has not provided the search methodology for potentially responsive communications hosted on decisionmakers' personal email accounts, which the City admitted would be required during the March 14 hearing. (Mar. 14, 2025 Hrg. Tr. at 135:2-5.)

The May 2, 2025 meet-and-confer revealed that purported "methodology" is deficient in at least two critical respects:

First, the City relied upon impermissible self-collection by Board members. The City represented to Portside during the May 2 meet-and-confer that each decisionmaker using a personal rather than City provided email account was simply asked to "run a search" using unspecified terms and to report whether any hits were "relevant." If the member responded "no," no further steps were taken and no attorney reviewed the personal email accounts of the Board members. The terms and date ranges allegedly used by the individual decisionmakers are not in the methodology email. Moreover, Rule 26(g) and prevailing ESI protocols forbid such unverified self-collection.

Second, as set forth in Dispute No. 1, the City ignored the Court's clear instructions and declined to search for communications among relevant decisionmakers, including Director Richardson and those he tasked with performing the calculations. Although the City has failed to disclose the search methodology for communications hosted on private accounts, there is every reason to believe that the City similarly limited this search.

Finally, Portside respectfully notes that the pending Motion to Compel Discovery referenced by Tenants and City below is irrelevant to Dispute No. 2. Portside's request to compel the City to reveal its search methodology was granted by the March 14 Order, and the question of whether discovery is appropriate in a prerogative writ action is long since resolved. Portside seeks only enforcement of an obligation the Court has already imposed, nothing else.

**City's Position**: **The City respectfully joins in with and agrees with the Tenants' below position.** Moreover, the City has complied with the March 14 Order. The City provided a description of the method used to search for documents by email to the Plaintiffs dated April 14. The City also provided 3 certifications confirming the City does not possess documents as directed in paragraph 5 of the March 14 Order.

**Tenants' Position**: As argued by the Tenants and City in their oppositions to Portside's Motion to Compel Discovery (Dkt. No. 113) (the "Motion"), discovery in prerogative writ actions must be limited to the record that was before the agency that issued the decision being challenged. *See e.g.* Dkt. No. 122 at 7–10; 123 at 2–4. As such, should the Court agree with the Tenants and City and deny Portside's Motion on this basis, it would be counterintuitive to permit the above-referenced discovery which, like Portside's various other requests, go beyond the record below.

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

May 29, 2025
Page 5

For these reasons, the Tenants respectfully submit that the Court should abstain from deciding the discovery disputes asserted by Portside until it decides the pending Motion.

Dated:  May 29, 2025                                    Respectfully submitted,

| | |
|---|---|
| By: */s/ Derek D. Reed* | By: */s/ Philip Samuel Adelman* |
| Derek D. Reed, Esq.<br>Ehrlich, Petriello, Gudin<br>Plaza & Reed<br>A Professional Corporation<br>60 Park Place, 18th Floor<br>Newark, New Jersey 07102<br>(973) 643-0040 | Philip Samuel Adelman, Esquire<br>Assistant Corporation Counsel<br>Jersey City Law Department<br>City Hall – 280 Grove Street<br>Jersey City, New Jersey 07302<br>(201) 547-4810 |
| Terri L. Mascherin<br>Andrew W. Vail<br>Daniel J. Weiss<br>Jenner & Block LLC<br>353 Norh Clark Street<br>354 Chicago, Illinois 60654<br>Phone: (312) 222-9350<br>Facsimile: (312) 840-7375 | *Attorney for Defendants, City of Jersey City and City of Jersey City Rent Leveling Board* |
| *Attorneys for Plaintiffs the Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC* | |
| By: */s/ Mollie Hartman Lustig* | |
| Mollie Hartman Lustig, Esq.<br>McLaughlin & Stern, LLP<br>1 Elm Street, Suite 2<br>Westfield, New Jersey 07090<br>(212) 448-1100 | |
| *Attorney for Interveners Portside Towers* | |

EHRLICH, PETRIELLO, GUDIN,
PLAZA & REED, P.C.

May 29, 2025
Page 6

| *East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch* | |
| --- | --- |
| cc: All counsel (via ECF) | |