# EXHIBIT C

```
                              SUPERIOR COURT OF NEW JERSEY
                              LAW DIVISION, CIVIL PART
                              HUDSON COUNTY, NEW JERSEY
                              DOCKET NO. HUD-L-000261-25
                              APP. DIV. NO.

LPF 1200 CLINTON EQUITY, LLC, )
                              )
        Plaintiff,            )
                              )              TRANSCRIPT
    vs.                       )                  of
                              )          ACTION IN LIEU OF
RENT LEVELING & STABILIZATION )          PREROGATIVE WRITS
BOARD OF THE CITY OF HOBOKEN, )              HEARING
and CITY OF HOBOKEN,          )
                              )
        Defendants.           )
```

                        Place: Hudson County Superior Court
                               Brennan Courthouse
                               583 Newark Avenue
                               Jersey City, N.J. 07306

                        Date:  August 15, 2025

BEFORE:

     HONORABLE JOSEPH A. TURULA, PJ.Cv.

TRANSCRIPT ORDERED BY:

     MATTHEW A. SEBERA, ESQ. (Ehrlich, Petriello,
     Gudin, Plaza & Reed, P.C.

APPEARANCES:

     RICHARD P. DeANGELIS, JR., ESQ.
     (Connell Foley LLP)
     Attorney for the Plaintiff

     KATHLEEN P. RAMALHO, ESQ.
     (Antonelli, Kantor, Rivera, P.C.)
     Attorney for the Defendant Rent Leveling &
     Stabilization Board of the City of Hoboken

                  **Transcriber Dolores S. Hastings, AD/T 417**
                  8 Victoria Drive
                  Clark, New Jersey 07066
                  (732) 680-1610
                  Dolores.Hastings@Outlook.com
                  Digitally Recorded
                  Operator, Zorymar Rodriguez

APPEARANCES (continued):

      EMILY BOODOO, ESQ. (Florio, Kenny, Raval, L.L.P.)
      Attorney for the Defendant City of Hoboken

      DAVID COHEN, ESQ. (Fishkin Lucks LLP)
      Attorney for Intervenor Defendant

3

I N D E X

|                         | Page(s) |
|-------------------------|---------|
| Colloquy                | 4       |
| Argument:               |         |
|   By Mr. DeAngelis      | 5, 31   |
|   By Ms. Ramalho        | 13, 37  |
|   By Ms. Boodoo         | 19      |
|   By Mr. Cohen          | 20, 39  |
| THE COURT:  Decision    | 40      |

Colloquy                                              **4**

(On the record at 9:02:40)

COURT CLERK:  On the record, Your Honor.

THE COURT:  Thank you.

Good morning.  This is the matter of LPF 1200 Clinton Equity LLC v. Hoboken Rent Leveling & Stabilization Board, et al., L-261-25.  Appearances of Plaintiff and then the Defendants, then the Intervenor.

MR. DeANGELIS:  Yes, Your Honor, good morning.  Richard DeAngelis with the law firm of Connell Foley for the Plaintiff LPF 1200 Clinton Equity.

MS. RAMALHO:  Kathleen Ramalho from the law firm of Antonelli, Kantor, Rivera on behalf of the Rent Leveling & Stabilization Board of the City of Hoboken.

MS. BOODOO:  Good morning, Your Honor, Emily Boodoo from the office of Florio, Kenny, Raval on behalf of the City of Hoboken.

MR. COHEN:  Good morning, David Cohen on behalf of myself.

THE COURT:  Okay.  Did you submit a brief, Florio Kenny?  Because I searched for it and I could not find it.

MS. BOODOO:  We submitted a two-page letter brief, but that was it.

THE COURT:  All right.  eCourts or in paper

---

Colloquy / Argument - Mr. DeAngelis          **5**

form?

MS. BOODOO:  I'm sorry?

THE COURT:  Paper form or in eCourts?

MS. BOODOO:  I believe in -- through eCourts.

THE COURT:  All right.  Well the -- I didn't see it because it wasn't a paper and I didn't read it, so I don't know what to tell you, but all right.  I have a feeling you joined in the others' arguments, right?  Something to that effect?  Okay.

All right.  This is your -- you're the Plaintiff, you want to make an argument, sir?  And then we'll just go this way.  All right, folks in the back, if you want to sit down you could, please.

MR. DeANGELIS:  Thank you, Your Honor.  Good morning again. And in the words of the immortal Yogi Berra, it's deja vu all over again.  It's my second time here on a matter that I know Your Honor's had a third case where the underlying material facts and legal issues are the same, and that is the question of whether an improper tenant notice under the rent control exemption statute is grounds for the Board of the City of Hoboken Rent Leveling & Stabilization Board to rescind an exemption from local rent control provided under State statute.

And -- and a related issue, as we discussed

Argument - Mr. DeAngelis                    6

in other matters, is whether the Board even has the authority to adjudicate that question.  We respectfully submit that they do not.  This Court has twice reversed the same action by this Defendant Rent Leveling Board. We joined the City because there's a provision in their ordinance that we believe is contrary to the rent control exemption statute and are asking for declaratory judgment on that question.

Really, Your Honor, and I don't want to belabor the points because I know you're very familiar with them having had it before, the only difference is in this case, I think, not that they are material but I think they're worth noting, is that all 12 of the tenants here who initiated this matter by making their requests for legal rent calculations had written notice before filing those requests for legal rent calculations, written notice of the fact that The Jordan was exempt from local or local rent control. And there were no questions then.  It was not until after of course the Board had rendered its decision in some other matters leading to a avalanche of these cases.

And while it's not a material fact, Judge, I think again it's illustrative and it's important for the Court to note that this is part of a concerted

Argument - Mr. DeAngelis                    7

effort by tenant advocates, including the vice chairperson of the Rent -- I'm just going to call it the Board, for the Rent Board and the City of Hoboken to eradicate the State's exemption statute in the City of Hoboken.

Here, also, we have a tenant actively participating I believe in the Clinton/Grand matter regarding the Bexley, which I was not involved with.  A tenant was named as a defendant.  My client decided not to name any of the tenants because quite frankly any issues with the tenants are not pertinent to an action in lieu of prerogative writs where the sole question is for the Court to review the actions of governmental entities, the Rent Board as well as the City of Hoboken.

We did not object to the tenant intervening because again, we didn't believe that there would be any issues that he would raise that would impact the case before the Court.  What the tenant is asking the Court to do is preserve his own personal rights, and this of course in a prerogative writ action is not the proper forum.  Any claim the tenant may have also is dependent upon this Court's determination in this matter.

Finally, with respect to the argument by the

Argument - Mr. DeAngelis                    8

tenant of unclean hands, in order to raise that in a prerogative writ action the party would have to show -- the Defendant would have to show that the actions alleged to implicate unclean hands resulted in the litigation, and that's not the case here.  What resulted in the litigation was the actions by the Board.  The actions complained of by the Intervenor occurred well after that while this legal challenge was pending.  And I know it's a bit -- kind of a sequacious path before we got before Your Honor, but nonetheless, what he's complaining of is what the landlord, the owner did following the Rent Board's adoption of the resolution.

And when you look at the claim itself of unclean hands it's meritless because all our client did was seek to preserve its rights as we set forth in our reply briefs.  And it was fair and forthright with its -- with its tenants, letting them know what they were doing, and most importantly, took no adverse action against any tenant, no reporting to credit agencies, no moving to evict anybody, it was simply preserving its rights.  People wanted to pay their legal rent calculations, they were doing so, and the owner simply said we're preserving our rights to come after you for the legal rent or the contract rent at the conclusion

Argument - Mr. DeAngelis                    9

of the proceeding if we are successful.  So I think that argument must fail.

So with that, Judge, unless Your Honor has any questions I would, you know, just ask to reserve a couple of minutes to respond to anything that might be said by the Defendant or Intervenor.

THE COURT:  If the Board doesn't have the authority to review these matters then what is the recourse for someone who thinks that they should have some relief from -- from a building that they believe is not exempt from rent control?

MR. DeANGELIS:  Well, that --

THE COURT:  So where is their -- what was their recourse then?

MR. DeANGELIS:  Their recourse would be to go to the rent regulation officer and say is this building exempt, and that's what happened here, and the rent regulation officer for the City of Hoboken said the building is exempt.  Now, if that tenant disagreed could they go to the Board?  Certainly.  The issue here is the Board doesn't have the authority to adjudicate because what that does, it -- it shifts the rules as Your Honor well knows, because --

THE COURT:  So that's what happened here.  But so if the rent officer says it's exempt from rent

Argument - Mr. DeAngelis                  10

control, the tenants said I disagree, they go to the Board, the Board says I'm sorry, this is not something we could handle, what does the tenant do then?

MR. DeANGELIS:  Well, if the Rent Board believes, as in this case it clearly did, that the building should not be exempt, the Rent Board should direct its counsel to come to this Court to ask for a declaratory judgment on the issue.  We've said this before - the City of Hoboken could have done this two years ago when all of this started and resolved it once and fall all, number one, as to the question of the Board's authority.  But the City, and I think the Appellate Division spoke to this, the Defendants say oh no, no, DeAngelis doesn't know what he's talking about because the Caldwell case dealt with imposition of penalties.  But what the Appellate Division said is where there's a belief that there's a violation, even of a local ordinance, the Rent Board has no authority to hand out penalties; refer it to the municipal prosecutor, refer it to the municipal attorney to take appropriate action.

Now if the City attorneys chose not to because their belief was oh no, the building is exempt, well then certainly there's nothing stopping the tenant from coming to this Court to say -- to try to prove

Argument - Mr. DeAngelis                  11

otherwise.  There is recourse for the tenants.  What the Board did is they step in here, they adopt this resolution, they knock all the landlords back on their heels and say okay, this is what we're doing, because what -- you know, they're upset about high rents.  And I look at some of these rents, Your Honor, and I -- I kind of scratch my head, but look, these are private market decisions.  Every one of these tenants voluntarily signed leases to pay rent with exempt -- notice of the exemption, every one of them in this case, the 12 that filed, every single one of them.  It wasn't an issue until the advocates got involved.  And there's nothing wrong with tenant advocacy, but the point is when the Board adopts this resolution now, as they argue, oh, we have a presumption of validity, a presumption of correctness, it raises the bar for the property owner.  No.  There is no presumption because that Board doesn't have any authority whatsoever to adjudicate a legal question under State statute, only this Court does.

THE COURT:  So in -- in the Block case from many years ago, it was -- some of the issues are not -- they're different.

MR. DeANGELIS:  Correct, Your Honor.

THE COURT:  Block 268, the Appellate

Argument - Mr. DeAngelis                    12

Division, and even Judge Curran who used to sit here, never said you know, the Board didn't have the authority.  And then on that unreported case that everyone seems to want to cite to in Union City, the Appellate Division, although it was unreported, did not say they didn't have the authority.  And in prior decisions that I have made I have not said that.  So does that give us pause?

MR. DeANGELIS:  Not at all, Your Honor.  Respectfully, I don't know if that question was specifically raised in the Block 268 case.  And respectfully, I have raised it before Your Honor in the TDC/USRA Level 25 Jefferson matter, or we have it raised in the other pending matter, and I'm asking this Court for a determination on that.  It was not, as far as I can tell, raised in the Appellate Division decision, and this happens all the time, right?  An action is filed, there's a challenge, and maybe you know, counsel is not seeing the forest for the trees and says wait, there's this other issue here.  So I'm putting it squarely before the Court because I do think this it's important, only to the extent of this issue of the presumption, because we're here and Your Honor's going to make a decision as to the legal question.  And this is where that decision should be made.

Argument - Ms. Ramalho                    13

THE COURT:  Thank you.

Counsel?

MS. RAMALHO:  Good morning, Your Honor.

I just -- I want to address a few things that my adversary said right from the outset.  Number one, he referenced that this is his second time here and that the underlying facts are the same.  The Board would strenuously disagree with that representation.  In this case it was not in any way disputed that this landlord failed to give the tenant notice from the time it purchased the building in July of 2018 until at the earliest October of 2021.  And per his own briefing, some of the tenants that filed didn't even get notice until 2022.  So this is not a situation where we have a inadvertent mistake, a copying error, an administrative lapse.  This was a three to four year block of time where they failed to give notice across the board, entered into I'm sure on many, many leases, many initial leases, and many renewal leases failed to give the notice.

The next question I want to address is this concept of us -- of the Board rescinding the exemption.  The Board is not rescinding the exemption.  The statute provides an opportunity for a landlord to avail themselves of an exemption, but it provides two

Argument - Ms. Ramalho                        14

specific criteria that they have to abide by.  If the -
- if the landlord cannot come forward and show that
they complied then they're just not entitled to the
exemption.  It's not a matter of being rescinded.  The
statute was carefully crafted.  And I know Your Honor
is not bound by the Willow Grove [sic] decision, but a
lot of the elements in that decision are highly
instructive in terms of statutory construction and --
            THE COURT:  What case is that?  I didn't hear
you.
            MS. RAMALHO:  Willow -- Willow Ridge, I'm
sorry, I always call it Willow Grove, Willow Ridge.
The first, of course, is that the Legislature doesn't
include things in a statute that are meant to be
rendered meaningless surplusage.  The interpretation
that has been urged by Plaintiff here will render the
tenant notice provision meaningless surplusage.
            The other element of the Willow Ridge case
that's -- that's very worth noting is its commentary
about affording a new right to the Plaintiff.  I just
want to make the Court understand that in affording
that new right to the -- to the landlords, which of
course the Legislature was entitled to do, it did also
take away a right from -- from tenants and
municipalities, the right of a tenant to rely upon the

Argument - Ms. Ramalho                        15

rent control ordinance enacted by their local
municipality in connection with their police power.  So
in recognition of that the Legislature made a very
clear plan, very transparent and actually very easy to
follow.  This Plaintiff chose to disregard it.
            Now another thing that's worth noting is that
the tenant notice provision of the statute uses the
word "shall" on two separate -- at least two separate
occasions and makes it abundantly clear that the notice
is supposed to be provided to the prospective tenant at
the outcome of the relationship between the tenant and
landlord.  This is not a when we get around to it, move
in and eventually we'll let you know the reality of the
situation.  By the time these tenants were there they
were already invested in both the building, the
community, they had set up their -- their homes there.
To then spring on them an amendment, they were put in a
lose/lose position.  So the idea that oh, by the time
they got around to filing the rent regulation, the rent
-- legal rent request they had already signed leases.
Well the fact of the matter is that that was -- it was
too late, it was too late.  It should have been done
from the outset.  The Legislature anticipates that
people will follow the law.  They didn't follow the
law.  They came before the Board and were unable to

Argument - Ms. Ramalho                     16

present evidence that they followed the law.  The Board merely applied the plain language of the statute which says "shall" against the undisputed facts.

As to the lack of authority, again, the Board has the authority because the exemption just didn't apply.  The exemption just didn't apply here because they were unable to demonstrate their entitlement to it.  And had they come forward and been able to show oh yes, we sent notice to all the tenants from the inception, we wouldn't be standing here.  The reason we're standing here is because they failed to protect the asset that they bought by complying with the law.  That is the only reason we're here.  He could talk about tenant advocacy and whatever he wants to say, but the fact of the matter is it's not up to the Board and it's not up to the tenants to figure out what the status is.  It's up to the Plaintiff to abide by the law in order to get the protection of this very generous exemption that the legislator -- Legislature saw fit to provide.

And I think that the Block 268 case underscores that in the sense that they, number one, make mention of the fact that there was compliance with the tenant notice provision in the facts.  And even though it was not an issue that had been raised before

Argument - Ms. Ramalho                     17

the trial court they spent a -- quite a lot of time addressing the substantial compliance issue on the municipal notice.  So those two boxes were checked before they ever got to the preemption argument.  Under those facts that landlord was entitled to the exemption.  They had satisfied the two requirements, so therefore the exemption over -- how shall I say it?  The Exemption Act took precedence over the local rent ordinance.  In this case, since they are not able to show that they checked off those boxes, that they complied, it just doesn't apply.

Let me see here.  I mean again, I believe that the Intervenor will address his aspect of the unclean hands argument, but I just do want to say what we see here is a pattern of a landlord that has just disregarded the law.  They disregarded the law before the Board issued it's resolution and then they disregarded the resolution after the fact.  So we just have a landlord that just thinks that they can do what they want to do regardless of what any legislative body says they need to do or any administrative board says they need to do.

THE COURT:  What was the disregarding of the Board's action after the fact?  What was that action?

MS. RAMALHO:  Well, I believe the Intervenor

Argument - Ms. Ramalho                    18

will get more into the details of that, it's in his papers, but it has to do with the fact that they never sought a stay of the resolution and continued to enter into leases not at the legal rent calculation but at market rate.

THE COURT:  Wasn't there a -- was there not an order to show cause or a request for an injunction here in this court?

MS. RAMALHO:  No, in this case there was not. They had not made the decision to go to federal court and did not seek preliminary relief.  So -- and again, the procedure -- I mean a tenant, they will -- they have a right to go to the rent regulation officer.  The Board has a right to hear the appeal.  And in an essence I mean what he's saying, oh, the Board should do this, the Board should do that, it's -- it's almost a matter of semantics.  He seems to be complaining that we didn't cross -- file a cross-claim.  I mean I guess we could have done that, but you know, hindsight is 20/20 on that issue.  But the -- the real nuts and bolts of the issue before Your Honor is did they or did they not comply with the Exemption Act in order to avail itself of its benefits.  And here it's undisputed, they did not.

So I mean unless Your Honor -- I know Your

Argument - Ms. Boodoo                    19

Honor has heard from us several times before.  If you have any other questions --

THE COURT:  Every case is a new case, so --

MS. RAMALHO:  Yeah.

THE COURT:   -- so I have to re-read everything.  Thank you.

Counselor, what would you like to tell me please?

MS. BOODOO:  Yes, Your Honor.  The City relies upon and incorporates all the arguments that were set forth by Co-Defendant Rent Board of Hoboken.

The only thing I'll add, Your Honor, is that the Rent Board is a separate entity from the City and the Plaintiff cannot demonstrate that there was any action by the City that had any bearing on the decisions by the Rent Board.

And as it relates to the rent control ordinance, the ordinance is not ultra vires and the Plaintiff cannot demonstrate that it was entitled to the benefits of the Exemption Act.  In fact, this Court does not even need to decide whether the language of the ordinance conflicts with that statute because those facts are not before this Court.

So with that, Your Honor, the City of Hoboken respectfully requests that this Court enter judgment

Argument - Mr. Cohen                    20

dismissing Plaintiff's Complaint In Lieu of Prerogative Writs with prejudice.  Thank you.
        THE COURT:  Thank you, ma'am.
        Counselor?
        MR. COHEN:  Thank you, Your Honor.  Good morning, Judge.
        THE COURT:  Good morning, sir.
        MR. COHEN:  Your Honor, I'm not going to use much of my time to discuss the Exemption Act, particularly when the City and the Board's counsel are knowledgeable and experienced on the topic.
        The only thing I'll add is that the entire Act is only six sections, two of which are devoted to notice requirements that building owners "shall" comply with.  It seems unlikely that the Legislature would devote two of the six sections to mandatory notice provisions if they're not requirements for obtaining or keeping the exemption.  Our jurisprudence teaches us the statutory construction abhors meaningless surplusage -- surplusage.  But that's what the Court would be saying Section 84.3 is if it rules that tenant notice is not a condition for maintaining a rent control exemption.  If it's not a condition what's it doing in the statute?
        I would argue that the appropriate reading of

Argument - Mr. Cohen                    21

this statute is that Section 84.3 notice is in fact a condition of obtaining and keeping the exemption, but compliance with that section should be judged using the common sense standard of whether the building owner substantially complied.  If a building owner provided the notice to 495 out of 500 tenants of a building but accidentally failed, for whatever reason, to provide the notice to five of those tenants any fair analysis would have to conclude that the owner substantially complied with the Act.  But those are not the facts here.
        This Plaintiff acquired The Jordan in July 2018 and failed to provide the notice to any tenant, any prospective tenant, any other tenant until October 2021.  I've been a tenant at The Jordan since 2019 and my first three leases didn't contain the notice.  So assuming the Court finds that tenant notice is a condition precedent for maintaining the exemption, and I understand, I -- you know, I've got a -- I've got a uphill battle in convincing Your Honor, but if Your Honor were to agree to that, Plaintiff's failure to provide the notice for over three years after it acquired the building was clearly not substantial compliance.
        The last thing I'll say on this issue is that

Argument - Mr. Cohen                    22

rent control is such a fundamental tenet that there should be drastic consequences for a building owner's failure to comply with the statute exempting its building from rent control.  And what a small price to pay for owners to obtain and maintain the exemption; simply advise the tenants in writing prior to entering leases and in the leases themselves that the building is exempt from rent control.  This isn't a big ask.  Plaintiff's leases are 70 plus pages of -- containing all sorts of terms and conditions relating to such things as lead paint, bed bugs, garbage disposal, window guards, and the list goes on.  Is it really that hard to add a one-page document saying that the building is exempt from rent control?

What I'd like to focus on today however, Your Honor, is Plaintiff's improper conduct following entry of the resolution.  Even if the Court finds that the resolution should be vacated, Plaintiff did not have the right to openly defy it while its prerogative writ action proceeded, yet that is what this Plaintiff did and the Plaintiff doesn't dispute it.  First and foremost the resolution was never stayed.  This is the same plaintiff that was before you in the 1125 Jefferson case which also related to the Plaintiff's failure to provide tenant notice to certain tenants.

Argument - Mr. Cohen                    23

But in that case Plaintiff sought and obtained from Your Honor a T.R.O. enjoining enforcement of the resolution and enjoining the City's issuance of legal rent calculations.  I don't know why the Plaintiff never sought a T.R.O. from Your Honor in this case, they certainly knew how to do it.  But it doesn't matter.  That was -- that was a decision the Plaintiff made and having made that decision however, with no stay of enforcement in place, the Plaintiff was required to comply with the resolution during the pendency of it's prerogative writ action.  I can't pick and choose which laws to comply with, Your Honor can't, but that's what the Plaintiff did here.

Plaintiff flat out refused to comply with the resolution.  It decided it was going to ignore the resolution, engage in self-help and continued it's leasing practices as if the resolution never happened, and by doing so it placed the Jordan tenants in untenable positions.  Following the resolution, which was November of 2023, and continuing to this day, Plaintiff has maintained the unlawful position that The Jordan is exempt from rent control.  And based on that premise and without any judicial determination that the resolution was invalid the Plaintiff has wrongfully 1) continued seeking from tenants the illegal market rents

Argument - Mr. Cohen                    24

contained in tenant leases, 2) never offered tenants an alternative rent control lease amount, and 3) at renewal only offered illegal market rental rates which forced those renewing tenants, including me in 2024, to make the impossible choice between either signing an illegal market rent renewal or refusal of the illegal market rent renewal and becoming a month-to-month tenant at a much higher lease rate.  None of these facts are disputed by Plaintiff.

And to make matters worse, Plaintiff's renewal leases failed to advise those, the renewing tenants, of the resolution holding The Jordan subject to rent control.  Yet the renewal leases falsely stated the opposite, that The Jordan is exempt from rent control.  So stated another way, Plaintiff intentionally lied to tenants by stating in renewal leases that The Jordan was exempt from rent control, never advising them of the resolution.

Now Plaintiff's conduct in ignoring the resolution, maintaining this false position that The Jordan remained exempt from rent control left tenants bewildered and unsure how to react.  We had a landlord openly defying a binding resolution without any stay in place, and tenants didn't know what to do.  There was no script for this.  Some tenants simply continued to

Argument - Mr. Cohen                    25

pay their illegal market lease rates.  Some sought and obtained legal rent calculations.  Some of them who got legal rent calculations nevertheless continued to pay their illegal market lease rate.  And then a smaller subset who obtained the legal rent calculations then started paying that legal rent amount.

For those tenants paying the legal rent amounts that had an existing lease the Plaintiff charged and continues to charge those tenants' respective accounts for the difference between the lease amount and the legal rent calculation amount paid each month.  For those tenants paying their legal rent calculations who refused to sign an illegal market rate renewal lease but remained as occupants, Plaintiff charged and continues to charge those tenants' respective accounts for the difference between a substantially higher month-to-month rate and the legal rent that is paid each month.

Plaintiff stands here and wants a medal, you know, for accepting legal rent amounts under protest and for not reporting tenants to credit agencies or evicting them.  Well first of all, it was Plaintiff's failure to comply with the resolution in the first place that caused the tenants to be scrambling to have to obtain legal rent calculations, so accepting them

Argument - Mr. Cohen                    26

under protest is hardly praiseworthy.  Second, for those tenants paying their legal rent calculations, they are paying what the City has determined to be their legal rent.  So there's no basis to report or evict them, those are just false gestures.

Your Honor, it is well settled Supreme Court caselaw that a plaintiff's unclean hands is a defense to and should be considered in its prerogative writ action, and we cite two Supreme Court cases directly on point.  Unclean hands "gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit."  Here Plaintiff admittedly is a wrongdoer with respect to the subject matter in suit. It comes to court seeking relief from the very resolution it has flouted since the day it was entered.

As discussed, since entry of the resolution Plaintiff has continued seeking illegal market rents contained in tenant leases, never offered alternative rent controlled leases, and at renewal only offered illegal market -- illegal market rate rental leases containing false statements that The Jordan was exempt from rent control which forced those tenants to make the Hobson's choice that I discussed earlier.  A more egregious engagement in self-help is hard to image.

Argument - Mr. Cohen                    27

Frankly, there's nothing Your Honor could award the Plaintiff in this case that it hasn't already taken for itself.  And Plaintiff's unclean hands should have consequences, which are well within this Court's discretion.  If the Court doesn't believe dismissal of this action is an appropriate remedy, which I would argue would be an appropriate result here, then the Court should at least place Plaintiff and Jordan tenants in the position that they would have been in had Plaintiff complied with the resolution.  And this means the Plaintiff should be required to forego the balances it has been maintaining in tenant accounts for those tenants paying their legal rent calculations. And for those tenants who continue to pay their market lease rates for all or any period following the resolution, refund the difference to those tenants for the amount between the -- the difference between the lease rates and the legal rent amount.

Your Honor, I -- Plaintiff's counsel in his argument raised a couple points which I'll just very briefly address.

Mr. DeAngelis noted that the 12 tenants who originally kind of got this ball rolling in the spring of '23 seeking legal rent calculations, he stated that they had notice in their leases when they -- of the --

Argument - Mr. Cohen                    28

of the exemption when they requested those legal rent calculations.  But they didn't have notice in their original leases.  All of them had prior leases and none of them contained the exemption, the rent control exemption, because Plaintiff, again, for the first three and a half years it owned this building, never provided that -- that notice in violation of the Act.

Counsel also argued that I was here somehow trying to preserve my own rights.  I -- I'm not.  I'm here because I -- you know, there's only a few lawyers at The Jordan, two of which -- there's three, two of which are not litigators.  I was the only litigator, I -- I -- I -- I was bewildered with this landlord flouting and openly defying this resolution and that's the reason why I've intervened in this case, because the City frankly wasn't -- wasn't -- wasn't really responding or helping the tenants with this very unusual situation at The Jordan.  So I -- you know, I'm not here for my own interests.  I'm here to provide Your Honor with the facts for Your Honor to -- to consider whether this Plaintiff comes to court with unclean hands.  And -- and if so, and I believe frankly there's no other conclusion here, then I believe that those unclean hands should have consequences.  And one consequence very well would be appropriate, to just


Argument - Mr. Cohen                    29

outright dismiss this case.  But another, if Your Honor doesn't want to -- doesn't want to go down the dismissal road is to -- to place the parties where they should have been had Plaintiff actually complied with the resolution.  That is, had Plaintiff following the resolution offered rent controlled lease rates in compliance with that resolution then there would be no tenant balances, Plaintiff -- tenants would be paying their legal rent calculations.  And -- and so if Your Honor doesn't want to dismiss the case based on Plaintiff's unclean hands at least place the parties in the position they would have been in had Plaintiff complied with the resolution.

THE COURT:  So if the Court deems that the arguments of Hoboken and the other entities here are correct, the difference between the rent exemption and the rent control numbers, it would have to be disgorged, wouldn't it?

MR. COHEN:  If Your Honor finds that the resolution should be upheld then -- then yes, the --

THE COURT:  Either a disgorgement or a credit?

MR. COHEN:  Yes.  Yes, Judge.

THE COURT:  And then going forward?

MR. COHEN:  Yes.

Argument - Mr. Cohen                           30

THE COURT:  If, on the other hand, the Court finds that the Plaintiff is correct, are you saying that there should be some type of sanction, that the time from the resolution till my decision there should be some disgorgement or credits because there was non-compliance with the Board's actions?

MR. COHEN:  That's exactly what I'm saying.

THE COURT:  Even if the Board was arbitrary and capricious, so almost like a fine for them not -- they essentially could be fined.  I don't use that term, but for that period of time from the Board's decision to my decision if I -- if they prevail for those 12 Plaintiffs or 12 tenants?

MR. COHEN:  No.  What I'm arguing, Your Honor, is that from the period of the resolution until Your Honor's ruling, that is the period that this Plaintiff violated the resolution, failed to comply with it, that for -- for that period of their improper behavior Your Honor should -- for their -- because of their unclean hands Your Honor should place the parties as if they had -- as if the Plaintiff had complied with the resolution, i.e. yes, a credit and/or disgorgement of the amounts that the tenants paid over their legal rent amount.

THE COURT:  So would that include just the 12

Argument - Mr. Cohen / Mr. DeAngelis         31

tenants or the entire building?

MR. COHEN:  It would include any tenant -- any tenant who this -- who -- who paid more than their -- what their legal rent should have been during this period of time that the Plaintiff violated the resolution.  That would place the parties in -- in the position they would have been in had Plaintiff did what they were supposed to do and comply with the resolution.

THE COURT:  Understood.  All right, thank you.

MR. COHEN:  Thank you, Judge.  And thank you for allowing me to participate.

THE COURT:  Thank you.
Mr. DeAngelis, any response to these comments --

MR. DeANGELIS:  Yes, Your Honor.

THE COURT:  -- as way of rebuttal?

MR. DeANGELIS:  What the Intervenor is asking the Court to do essentially is let's ignore the underlying action here that's the subject of this challenge, let's ignore the Board's resolution and let's just pretend that it was legal, even if it's not. And this kind of goes to the question even if it is illegal, which this Court has held twice before in the

Argument - Mr. DeAngelis                    32

-- this is the transcript from 1125:
        "The Court finds the decision by the Hoboken Defendants in this matter was arbitrary, capricious and unreasonable on the basis that the statute simply does not provide for this decision."
        And respectfully, with -- in response to the comments by the Board's counsel, the underlying material facts are identical.  1) This is not --
        THE COURT:  This is what's on my mind.  I know you want to, but why if the Board, and I understand this was the one that went to federal court in this case, but the Board's decision stood -- still stood, it stood there.  Now it's been quite some time.  Don't you think there should have been some other action there as in the other case?
        MR. DeANGELIS:  So again, Your Honor, we talked about this in this matter previously.  The decision was made to go to federal court.  We had discussed with the Court -- we were going to file for summary judgment, this was purely a legal question, my client wanted to be in federal court.  It's been a while since you've been in private practice, Judge, but sometimes we -- we do things that are requested and that's where we went.  And we had a motion to dismiss, a second motion to dismiss, and unfortunately it took I

Argument - Mr. DeAngelis                    33

think from last briefing, which had been delayed due to an illness of one of the Board's attorneys, I think that decision took eight months to issue.  We got here, what did they do?  Another motion to dismiss.  So a lot of the delay has been based on the City's -- the Board's actions to try not to get to the merits of the case, the legal question here.  So in hindsight?  Sure.
        And by the way, it's not the same plaintiff.  It's the same counsel.  Right?  And this is my -- this is my third go-around here.  So let's not lose sight of the question of whether the Board's action was legal.  And this goes to the heart of what I was talking about before, Your Honor - does the Board even have the authority to do this?  Because if it doesn't there could be no sanction against my client.  What the Board should have done, and we have been saying this from the outset, is come to this Court and say is this a condition of exemption.
        THE COURT:  You know, I understand that, but -- so this is not a case where people went and bought a GE washing machine that didn't work and they could take it up.  Here's people who are -- tenants are different than someone who buys a washing machine.  Right?  They -- they're a consumer, yes, they have rights, statutory, the Anti-Eviction Act and all the caselaw.

Argument - Mr. DeAngelis                    34

I would expect that counsel here and his colleagues were a little confused; we are exempt from rent control, we're not exempt from rent control, the City is silent, the landlord is saying pay.  What do we do here?  There -- and although that may be -- I think you'll probably argue it's not really a legal question but a customer relationship question, but you know, Clinton probably didn't handle this right in a sense of not addressing the confusion of their tenants who you do have responsibilities to whether it's -- and all of those things, right?

          MR. DeANGELIS:  Judge, but that's not the legal question before the Court.  If the underlying resolution was illegal it doesn't matter.  Now, was it poor communication or -- or not good business practice?  That's not a question before this Court.  And most importantly, Mr. Cohen kind of glossed over it but there again, if a tenant paid the legal rent calculation it was accepted.  Yes, the client, my client was preserving their rights, because as Your Honor well knows, and this was in our reply brief, if they don't do it, and this Court has recognized the problem for the landlord in going -- in issuing the stays, in going back they'll never get the money, there's no mechanism.  And in fact under the Anti-

Argument - Mr. DeAngelis                    35

Eviction Act it's perceived to be waived.  So they were simply preserving and have been preserving their rights to go back and get those monies if it is in fact shown that the Board's action was illegal, which this Court has held the under -- the substantive question, yes.

          The procedural question of authority of the Board hasn't directly been addressed by this Court and, respectfully, it hasn't been addressed directly by the Appellate Division in the Block 268 case as you pointed out, or even the unreported Willow Ridge case, because I don't believe it was squarely before the Court.  I'm placing it squarely before this Court.  A local body has no authority.  The only rent control statute in the State of New Jersey is the Rent Control Exemption Law.  And Your Honor has said, "The statute does not provide and is silent for the failure to comply with this section."  So what does that mean?  If there is a question about the legality of action under the -- under the -- my redevelopment practice is kicking in -- the Rent Control Exemption Law, you have to come to this Court for that answer.

          So the Board's resolution was entirely ultra vires, has no force and effect, and should be reversed.  And there should be no adverse consequences to my client for the actions its taken thereafter.  And none

Argument – Mr. DeAngelis                    36

of that, respectfully, has any bearing on the legal question before this Court as to the legality of the Board's resolution.

I would also just like to point out, because it frustrates me when misrepresentations are made, and I don't know if it was intentional, but again, yes, we -- we keep saying there was no notice.  There were disclosures in every one of these leases, every lease.  And those disclosures included the Rent Control Exemption Law, new buildings are exempt.  Did it say specifically that this building is not exempt?  No.

Mr. Cohen, an attorney, a very skillful attorney, nice job by the way, never raised a question for all those prior leases.  And some of the original 12, as is shown in the appendix, on page 1 of the lease for -- I think this is Unit 210 - "Notice to tenant: exemption from rent control."  There were 2 of the 12 who had it initially.  These were the initial leases from the prior owner.  And nobody raised the question.  Okay?  Because it wasn't important to them.  Now, does that mean my client doesn't have to abide by the law?  Of course not.  It's a right of the tenant to pursue if the tenant believes it's been harmed by the lack of notice, that's what the provision is for.  It's not a condition of exemption, Your Honor.  Thank you.

Argument – Ms. Ramalho                      37

THE COURT:  I should give the -- anyone else, if you want to respond, if you haven't said anything already.  The redundancy I've heard, I listened to you the first time.  So if you have anything to add that you haven't said before, ma'am?

MS. RAMALHO:  I -- just with respect to the disclosures that he's referencing, I mean those disclosures are inadequate, and it was addressed by the Board.  The law requires not only to just give notice but also to give the length of time of the exemption.  And it's cited in our papers, but essentially what their attorney was arguing before the Board was that the tenants are basically on their own to piece together all of the -- all of the elements, to figure it out by themselves.  That's not what the law says.  It's very clear that the notice is supposed to be provided from the get-go and in each lease and what the notice is supposed to say, that wasn't done.

Also, this idea that just because you decide that something's ultra vires you can ignore it?  I just -- evidently there ought not be a procedure for a preliminary injunction or temporary relief, everyone can just do whatever they want to do and then let the chips fall where they may when it eventually goes before the Court for a final disposition.  I mean

Argument - Ms. Ramalho                    38

that's just simply not the law.  So I was a little taken aback by that argument.

And again, he acknowledges that there's never been a decision that the Board lacks the authority. And in fact we're here now.  It -- this isn't an issue of whether (indiscernible) this side of the room or that side of the room.  The issue before the Court is whether or not the notice to the tenant is a mandatory requirement to avail yourself of the Act, and our position is absolutely it is.  There's only, as my -- the Intervenor counsel said, this is a six section statute.  Every statute -- every provision is very clearly thought out and it's a balancing.  A right was given, a right was taken away.  When you do that you have to be fair to all parties and if you fail to comply then you fail to get the benefit, and it's as simple as that.

THE COURT:  City of Hoboken, anything?

MS. BOODOO:  Not from the City, Your Honor, thank you.

THE COURT:  Thank you.

Sir, anything that you haven't said already?

MR. COHEN:  I'm sorry?

THE COURT:  Anything that you want to say that you haven't said already?

Argument - Mr. Cohen                    39

MR. COHEN:  Yes, just very, very briefly, Your Honor.

On the issue of whether the Board has the authority, I would just point out, Your Honor, that in the last section of the statute 84.6 it -- there's a -- a statement that says the Legislature --

"The Legislature therefore declares it to be public policy of this State that within the limitations imposed by this Act the exemptions granted shall not be limited, diminished, altered or impaired."

The statute itself states that -- that yes, the exemption shouldn't be limited, altered or impaired, but only "within the limitations imposed by this Act." And I would -- I would proffer to Your Honor that one of the limitations imposed in this Act -- imposed in this Act is the 84.3 notice to tenants.

Two - Plaintiff's counsel, in trying to excuse its -- its client's failure to seek a T.R.O., seek a stay and advise the Court that the client wanted to go the federal court, well the -- the Plaintiff could have sought a T.R.O. in federal court.  Judge Martini is -- would have been well capable of considering a stay of the resolution, a stay of the City issuing legal rent calculations.  But again, the Plaintiff never sought a stay in federal court, they

Argument - Mr. Cohen / Decision                    40

never sought a stay before Your Honor.

Now my able Co-Defendant's counsel correctly points this out - Plaintiff's counsel says well, the resolution was ultra vires, it's illegal, as if they could just ignore it, go about their business, continue charging market rents.  Well, they can't.  You know, the -- this Court hasn't yet ruled that it's illegal.  And so we've got a time period here where they just -- the Plaintiff just flat out ignored this resolution without any determination that it was illegal.  It is -- was binding on them until the Court says otherwise.

And then lastly, Plaintiff's counsel states that well, you know, if -- if any of the tenants didn't get -- didn't get notice then -- then, you know, they can individually raise it, sue the landlord or do something else.  Well, you know, there's no private right of action in the Exemption Act.  Tenants don't have a private cause of action to -- to sue a landlord for -- for failing to provide the 84.3 notice.  So with that said, Your Honor, I thank you.

THE COURT:  All right, thank you.  I'm prepared to make my decision now.

So this is a Action In Lieu of Prerogative Writs which the Plaintiff seeks to invalidate the decision made by the Rent Leveling & Stabilization

Decision                                          41

Board of the City of Hoboken, hereinafter the Board, and the City of Hoboken, the City of Hoboken where Defendants allegedly stripped Plaintiff of a statutory right, that's the Plaintiff's brief.  They challenged the Board's determination that the Plaintiff's apartment building is not exempt from the City's rent control ordinance under the New Jersey Rent Control Exemption Law, N.J.S.A. 2A:42-84.1 et seq.  They seek final judgment instructing that the Board's actions were illegal, null and void and without force in law.  They are the owners of 1200 Clinton Avenue in Hoboken, New Jersey, or it's located on 1200 Clinton Street in Hoboken, and it's referred to as The Jordan, that's the name of the building.

In August of 2016 the original owner and developer of The Jordan filed a claim of exemption under the aforementioned law.  Then these Plaintiffs purchased the property in 2018, in July 2018, with the belief that The Jordan was exempt from rent control as it operated under the law since 2016.

On September 13, 2023, after requests for legal rent calculations filed by tenants of The Jordan, the Hoboken Rent Leveling & Stabilization Board, the Board, found the Plaintiff failed to strictly comply with the statute, the Rent Control Exemption Law,

Decision                                                      **42**

because Plaintiff did not provide prospective tenants sufficient notice of Plaintiff's exemption from the City of Hoboken Municipal Rent Control Ordinance, Chapter 155 et seq.  The Board therefore determined that the Plaintiff is subject to the rent control.  The rulings of the Board were memorialized and a resolution adopted November 8, 2023.

It should be noted that the tenants who have sought the application before the Rent Leveling Board, at the time their current leases did have the exemption language but prior leases did not.

So now the Plaintiffs petition the Court to reverse the Board's determination.  The arguments are that The Jordan is exempt from the local rent control ordinance because of the New Jersey Rent Control Exemption Law, the Board has no authority over the exemption granted by the State statute, and 3) the Defendants may not impose any conditions to maintain a properly claimed exemption under that law.

They first argue that The Jordan is exempt from the local rent law because the exemption law prohibits a municipality from taking any action to limit, diminish, alter or impair an exemption afforded thereunder.  They argue that the statutory exemption is self-executing upon the filing of an owner of a claim

Decision                                                      **43**

for exemption under the statute at 84.4 as evidenced by the plain language of the statute and its purpose to incentivise the development of multiple dwelling rental units throughout the State.

Plaintiff then argues that the tenant notice requirement under the statute at 84.3 is not a condition precedent to obtain or maintain the exemption because the requirement to provide notice to tenants is a condition imposed after the exemption has been claimed.

They also argue that the Board has no authority over the exemption granted by the State statute as in multiple cases in New Jersey have ruled that the Board's actions is expressly preempted.  See Knight v. Hoboken Rent Leveling Board, 332 N.J. Super. 547, 552 (Appellate Division 2000), Caldwell Terrace Apartments v. Borough of Caldwell, 224 N.J. Super. 588, 594 (Appellate Division 1988), Block 268 v. The City of Hoboken Rent Leveling & Stabilization Board, 401 N.J. Super. 563, 566 (Appellate Division 2008).

Lastly, Plaintiff argued that Defendants may not impose any conditions to maintain a property claimed exempt under the Rent Control Exemption Law is made clear in Block 268 at 571 and Overlook Terrace Management Corp. v. Rent Control Board of West New

Decision                                      **44**

York, 71 N.J. 451, 461 (1976).

There's opposition filed by the Defendants. The Board's decision is presumptively valid and was not arbitrary, capricious and unreasonable -- unreasonable, 2) the Legislature's use of the word "shall" supports the Board's conclusion that compliance with 84.3 of the Exemption Act is mandatory to secure and maintain an exemption from rent control, 3) the Board maintains the authority to determine The Jordan is subject to the rent control, and 4) the Board's act is not preempted by the exemption law.

Defendants first argue -- and I'll say this collectively because it's the Rent Leveling Board and the City adopts that and the Intervenor adopts some of this as well -- Defendants first argue the Board's decision that the building was not exempt from rent control rents comports with the laws of this State because the State statute, similarly to the Hoboken statute, mandates the members of a property exempted from rent control is provided to prospective tenants prior to the entering of a lease agreement in its actual tenants' lease agreements.

Defendants continue by asserting the Legislature's specific use of the word "shall" supports the Board's conclusions that compliance with 84.3 is

Decision                                      **45**

mandatory to secure and maintain the exemption from rent control -- control.  According to Defendant, the Board's determination was based upon the clear and unambiguous language of the State statute in undisputed record evidence.

They next argue that the compliance with the notice to tenants requirements set forth in 84.3 is a mandatory condition to perfecting and maintaining the exemption.  They cite to the unpublished decision of Willow Ridge to argue the situation was here similar to the Board's determination that giving notice to the exemption is a specific element of the statute is entirely consistent with the legislative intent of the ordinance.

Defendant then refutes Plaintiff's argument and argues that the satisfaction of the municipal notice requirement is just one of two mandatory requirements to secure and maintain an exemption under the rent control ordinance.  Defendant poses that both the municipal notice requirement and the tenant notice requirement are mandatory conditions that must be satisfied to both secure and maintain the exemption.

Just going back on Willow Ridge, it's unreported, the Court is not bound by it, and the main issue in Willow Ridge was the building was never

Decision                                          46

registered with the building official.  So I don't know if that even applies to this case because that's not an issue here.

Defendants also shift to a new argument in that they -- the Board maintains the authority to determine if The Jordan is subject to rent control on the basis that in providing for notice to all interested parties the Legislature clearly envisioned that local rent control boards would apply and enforce a municipality's rent control ordinance when those mandatory conditions were not met.

Finally, the Defendant argues that the Board's actions is not preempted by the exemption law as the Exemption Act and Hoboken's rent control ordinance are not in conflict.

I just may have to pause to let someone know that I -- that we have a virtual conference.  Is there any way we can word to them that we're running late?

(PAUSE)

The Intervenor's argument argues that the Plaintiff either lost or never obtained the rent control exemption based on the failure to provide to notice to the tenants from July 2018 to October 2021.  They argue that the legislative intent of 84.3 is to advise tenants before they consider moving into a

Decision                                          47

building that a building is exempt from rent control.  They further argue that it's such a fundamental tenet that there ought to be drastic consequences for the building owner's failure to comply.

They also argue that unclean hands in this matter should have consequences.  They argue that Plaintiff's unclean hands is a defense to and ought to be considered in prerogative writ actions.  They cite to American Dream at Marlboro, 209 N.J. 161, 170 (2012), Borough of Princeton v. Board of Chosen Freeholders of Mercer County, 169 N.J. 135, 158 (2001).

In their reply Plaintiff argues that, under the same arguments that were made originally, that the decision of the Board was ultra vires and impermissible, that the Board is not charged with enforcing the Rent Control Exemption Law and thus has no power to strip existing exemptions.

They argue that the Intervenor misstates the reach of the unclean hands argument in prerogative writ actions because prerogative writ actions are limited to specific government actions and authority, therefore the matter is limited to the issue of validity of the resolution finding that Jordan is subject to rent control.

As to the Intervenor argues related to

Decision                                        **48**

Plaintiff's disregard for the Board's decision, Plaintiff argues that Intervenor claims lack foundation as there's been no adverse action taken by the Plaintiffs against the Intervenor or any other tenant at The Jordan.  The Plaintiff is not requiring tenants to pay market rate rent during the pendency of this suit, they argue they are merely preserving their rights and are not taking adverse actions against the tenants while its case is pending.

And finally, the reply refutes the claim by the Intervenor that notice was not provided from July 2018 to October 2021 with specific citations to the record and certifications asserting that notice was provided in the initial leases.

The issue presented is whether the Plaintiff's failure to provide tenants notice of the building's exemption from rent control under 84.1 is a cause for the removal of the building's exemption from rent control as prescribed by the statute.  The relevant portion of the statute at issue states, and this is 84.3 of N.J.S.A. 2A:42-84.3:

"The owner of any multiple dwelling exempt from rent control or rent leveling ordinance pursuant to this Act shall prior to the entering into any lease with a person for tenancy of any premises located in a

---

Decision                                        **49**

multiple dwelling furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period. Each lease offered to a prospective tenant for any dwelling unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption."

The statute does not provide a remedy for failure to comply with this section.  The Court is guided by language of the statute and the legislative intent provided by 2A:42-84.6.  The legislative intent behind the rent control ordinance sought to encourage to the greatest extent economically possible through the exemption of law of multiple construction -- of newly constructed multiple dwellings from rent control, rent leveling and rent stabilization ordinances.

The Court understands the economic purpose behind the Act and balances the rights of tenants in its analysis.  The Court finds that the decision of the Hoboken Defendants in this matter was arbitrary, capricious and unreasonable on the basis that the statute simply does not provide for the decision that was made by the Board.  Hoboken seeks to avoid the -- and undermine the State rent control exemption

Decision                                              **50**

ordinance by allowing one error or misstep or more than one over a theory of exemption to strip the entire building of rent control.  And why I cite to the one misstep because here there was years of leases not being -- having the notice.  But the argument is the same as if one tenant wasn't given the exemption for one or two years in a building that -- I'm not sure how many units are in this building, but that would lose the exemption.  So non-compliance - the argument is that non-compliance with the notice, you lose the exemption.  And the Court finds that that would be against the legislative intent.  And I cite to if there's one lease in a building of 159 units over an 8 year period there's a potential of 1,272 leases.  A few or one, you may make the argument its de minimis, but if there's numerous ones than the lease -- the exemption is lost.  So that number balloons to about 4,700 when considering one year leases in a 159 unit building over a 30 year period.  And that's just by way of example.  So then it would become a minefield to not lose the exemption.  Of course it would be rather not hard for a building to lose its exemption because of these issues and this would create a lasting economic effect in contradiction with the intent of the statute as these buildings are often bought, sold and

Decision                                              **51**

refinanced with the understandings that they are exempt from rent control and those financial decisions.  To allow a retroactive analysis of leases that are no longer in effect would make the purchasing of these buildings incredibly unpredictable which may in a sense defeat the statute, to bring economic development.

There's no dispute here that the Plaintiffs have complied with the portions with regards to registering the building with the local building official, so that isn't an issue here.

Allowing Hoboken to retroactively strip an exemption from a building that the developers, tenants, and the City of Hoboken all interacted with under the assumption that it is exempt from rent control on the basis that the leases did not contain the notification is arbitrary, capricious and unreasonable.  And notably, the leases were no longer in effect at the time that this application was made to the Board.

Notwithstanding these improprietness (phonetic) -- the improprietness of the decision itself, the Rent Leveling & Stabilization Board may not usurp the power of the Legislature and unilaterally remove buildings' exemptions on the basis -- on the above basis or any basis.  The New Jersey rent control ordinance -- the New Jersey rent control ordinance --

Decision                                                              **52**

statute I should say, not ordinance, is clearly that no municipality, county or other political subdivision of the State or agency or instrumentality thereof shall adopt an ordinance, resolution or other rule or regulation or take any action to limit, diminish, alter or impair the exemption afforded under 84.5(a).  The law does not bestow authority upon the municipalities to regulate and enforce the provisions of the actions that are expressly preempted.  See Knight v. Hoboken Rent Leveling Board. The Court in Knight found that the Board as an administrative body lacked the power to make a legislative decision to impose a time limitation from which a claim for refunds could be brought.  See page 21, 5 -- no, that's not a right cite.  It's from Knight, I'm not sure of the pinpoint cite, I'm sorry.

Similarly, the Board here was clearly acting without any statutory authority when the resolution was adopted declaring The Jordan subject to rent control. In addition, the Board's lack of authority to make that determination, the Board is equally without authority to enforce any penalty for supposed violation to the law.  See Caldwell Terrace Apartments, 224 N.J. Super. 588, 594 (Appellate Division 1988).  The enforcement power belongs to the courts which are responsible for imposing such penalties.

Decision                                                              **53**

In Block 268 v. City of Hoboken Rent Leveling & Stabilization Board the Board heard arguments as to whether Plaintiff Perez's individual units were subject to rent control, 401 N.J. Super. 563, 566 (Appellate Division 2008).  Relevantly, the trial court in Block 268 held that the Legislature had preempted the Board from taking any action that would impair the exemption, 567.  As detailed in Block 268, N.J.S.A. 2A:42-84.6 provides that the Legislature declares to be the policy of the State that with limitations imposed by the Act, the exemptions granted under the Act shall not be limited, diminished, altered, or impaired during the period of exemption afforded under 571.  See N.J.S.A. 2A:42-84.6.

The statute continues and provides the purpose behind the limitation is promoting a predictable environment which their -- the finance and construction and marketing of new dwellings can occur and to permit the Legislature to evaluate the results of the experimental program at a specific time in the future. The purpose of consistently behind the law is expressly undermined by the actions of the Board here to strip the building that had operated under a rent control exemption for almost a decade.  Once State law preempts a field, the City and the Board cannot

Decision                                                    54

exercise power that contradicts the policy established in the Legislature.  Block 268 at 571, State v. Crawley, 90 N.J. 241, 248 (1982).

Hoboken's actions have clearly diminished and impaired the exemption afforded by the statute here are arbitrary and capricious and unreasonable.  Currently, Hoboken, a city in Hudson County, and I'll come back to that in a minute, clearly the statute should have been written better, that it is required that notice be given.  It doesn't say what the sanctions are other than that those lie with the State.  It would have been clearer for all of us to avoid all of these cases if there was a formula that would say what would happen.  But from my reading of what the statute has in it at this point shows that it is not an exemption -- I mean it doesn't remove the exemption from rent control.

With regards to the Intervenor and unclean hands, the Court finds that whether there is unclean hands or not is not a -- is not persuasive that that would cause the removal of the exemption, notwithstanding the fact that the Board was arbitrary, capricious and unreasonable.

There is the question of the period of time between the Board's decision of November 18, 2023 and to August 15, 2024 which is when the Board made the

Decision                                                    55

decision that the building was exempt, that we now know was arbitrary, capricious and unreasonable.  But from that time until today's date the Board, without my (indiscernible) but to that point had the authority to make that decision.  They made a decision and The Jordan went about as if the decision hadn't been made, no criticism of the attorney.  So the issue of should there be a disgorgement or credits or something to that to the tenants is something I'm going to reserve on for probably about two to four weeks.  Perhaps during that time the parties, meaning the tenants and The Jordan, might want to chat and then if there's some resolution then there might not be any need for me to make a decision, whatever that is, and I don't know what it will be.  But I think there is an issue there.  And again, I'm not faulting Plaintiff's attorney in any fact, but that Board's decision stood till five minutes ago and there is confusion.  I reserve on that question.  It could be two weeks or four weeks.

I would say if you could send -- if Plaintiff's counsel could send me a letter with, of course, letting Mr. Cohen know what the status is of any of that.  If there's -- I'm not telling you to settle, I'm not telling you to do anything.  Sometimes lawyers are problem solvers and maybe that problem

Decision                                                    **56**

could be solved.

So in conclusion and in light of the foreground, Plaintiff's request -- requested relief is granted. The Board and the City are hereby enjoined from enforcing the resolution adopted on September 13, 2023 by Defendant Rent Leveling & Stabilization Board of the City of Hoboken determining that the property at 1200 Clinton Street, Hoboken, New Jersey, known as The Jordan, is not exempt from the Hoboken rent control ordinance, 2) enforcing any provision of the ordinance against Plaintiff with respect to the property, 3) providing legal rent calculations requested by tenants at the property until the conclusion of the property's statutory exemption period pursuant to the statute 81 et seq., and 4) informing tenants or prospective tenants that the property is subject to the ordinance and/or instructing tenants at the property not to pay the amount of rent stated in the leases.

I may have said this before - if there's a disagreement on the State statute, Hoboken as we know now is part of the State of New Jersey and the United States, I suppose it could ignore the State statute if it secedes from the United States or the State of New Jersey, probably a better route would be to ask their representatives in the Legislature to go back and

Decision                                                    **57**

change the statute so it is more favorable to the people in Hoboken who believe that this statute is inappropriate. And who suffers when these decisions are made? It's the taxpayers of the City of Hoboken who have to pay for legal fees and the tenants, because this creates confusion among people. So the Rent Leveling Control Board should be guided accordingly in their actions because actions have consequences.

That's my decision. Prepare an Order under the Five Day Rule, show it to all people involved, and then report back to me in two weeks if there's been any resolution with the tenants on that gap period, I'll call it a gap period. I don't want to say anything more back I am already late 15 minutes for the next matter and they're in limbo in their Zoom meeting.

Well argued, sir, counselors from Hoboken and also from Connell Foley. Thank you. Off the record.

(END OF PROCEEDINGS)

58

CERTIFICATION

    I, DOLORES S. HASTINGS, the assigned transcriber, do hereby certify the foregoing transcript of proceedings of August 15, 2025, digitally recorded, index numbers from 9:02:40 to 10:14:52, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate compressed transcript of the proceedings as recorded.


*Dolores S. Hastings*
Dolores S. Hastings AD/T 417          November 11, 2025
Clark, New Jersey