## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE TOWERS AT PORTSIDE
URBAN RENEWAL COMPANY,
LLC AND EQUITY RESIDENTIAL
MANAGEMENT, LLC,

      Plaintiffs,

    vs.

THE CITY OF JERSEY CITY, THE
CITY OF JERSEY CITY RENT
LEVELING BOARD, AND THE
CITY OF JERSEY CITY BUREAU
OF RENT LEVELING

      Defendants, and

PORTSIDE TOWERS EAST
TENANT ASSOCIATION,
PORTSIDE TOWERS WEST
TENANT ASSOCIATION, KEVIN
WELLER, JESSICA BRANN, JOEL
ROTHFUS, AND MICHELE
HIRSCH,

      Defendant-Intervenors.

Case No. 2:23-cv-22291-MCA-JRA

**DEFENDANTS, THE CITY OF JERSEY CITY, THE CITY OF JERSEY
CITY RENT LEVELING BOARD, THE CITY OF JERSEY CITY BUREAU
OF RENT LEVELING & DEFENDANT-INTERVENORS', PORTSIDE
TOWERS EAST TENANT ASSOCIATION, PORTSIDE TOWERS WEST
TENANT ASSOCIATION, KEVIN WELLER, JESSICA BRANN, JOEL
ROTHFUS, AND MICHELE HIRSCH'S,
OPPOSITION TO PLAINTIFFS' THE TOWERS AT PORTSIDE URBAN
RENEWAL COMPANY, LLC AND EQUITY RESIDENTIAL
MANAGEMENT, LLC
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## Table of Contents

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ..................................................................................3

    I.      History of the Buildings ...................................................................3

          A.      100 Warren..................................................................3

          B.      155 Washington ..........................................................4

          C.      The Board's Determination..........................................4

          D.      Plaintiffs Failed to Provide the Tenants Required Notice .........5

LEGAL STANDARD..............................................................................................6

ARGUMENT ...........................................................................................................7

    I.      THE BOARD CORRECTLY DETERMINED THAT STRICT COMPLIANCE WITH SECTION 84.4 IS A CONDITION PRECEDENT TO EXEMPTION FROM RENT CONTROL .............7

          A.      Section 84.4 Compliance Is a Condition Precedent...................8

               1.      The Text and Legislative History of the Act Confirm that Compliance with Section 84.4 is Required ......................9

               2.      The Appellate Authority Confirms the Condition-Precedent Reading ........................................................13

          B.      The Board's Decision Is Not Preempted by State Law ............15

          C.      Plaintiffs' Contrary Cases Do Not Support Their Position. .....16

    II.     THE BOARD PROPERLY FOUND THAT THE OWNERS FAILED TO COMPLY WITH SECTION 84.4 AS TO BOTH BUILDINGS .18

          A.      100 Warren: The 1994 Exemption Claim Fails Section 84.4...19

          B.      155 Washington: No Exemption Claim Was Ever Filed..........20

    III.    THE ACT DOES NOT APPLY TO 100 WARREN BECAUSE IT WAS DEVELOPED AS A CONDOMINIUM, NOT A MULTIPLE DWELLING RENTAL ........................................................................20

          A.      The Text and Structure of the Act Confirm that 100 Warren Does Not Qualify for the Exemption .......................................20

          B.      The Act's Legislative Purpose Forecloses Extension to 100 Warren.........................................................................................23

    IV.    ANY EXEMPTION FOR 100 WARREN EXPIRED .......................24

i

V.    SUBSTANTIAL COMPLIANCE DOES NOT SAVE PLAINTIFFS' CLAIMS ......................................................................................24

    A.    Substantial Compliance is Not the Controlling Standard .........24

    B.    Portside and its Predecessor Failed to Substantially Comply with the Act for 100 Warren .....................................................26

    C.    Portside and its Predecessor Failed to Substantially Comply with the Act for 155 Washington .............................................28

    D.    Plaintiffs Misconstrue the "Reasonable Notice" Factor ...........29

    E.    Plaintiffs' Noncompliance has Prejudiced the City and the Tenants ...................................................................................30

    F.    Plaintiffs' Actions are Inconsistent With the Act's Purpose ....33

VI.   EQUITABLE ESTOPPEL DOES NOT PRECLUDE THE BOARD'S DETERMINATION......................................................................35

VII.  THE BOARD PROPERLY EXERCISED ITS AUTHORITY IN DIRECTING RENT RECALCULATIONS .....................................37

    A.    The Board Acted Within its Authority in Directing a Lookback Beyond Two Years.....................................................................37

    B.    The Hosfield Report Does Not Undermine the Bureau's Methodology or Conclusions. ..................................................38

    C.    The Bureau Did Not Exceed Its Authority .............................39

CONCLUSION ....................................................................................40

ii

## Table of Authorities

Page(s)

Cases

*ARCNET Architects, Inc. v. New Jersey Prop.-Liab. Ins. Guar. Ass'n*,
   377 N.J. Super. 102 (App. Div. 2005) ................................................................. 11

*Block 268 v. City of Hoboken Rent Leveling & Stabilization Bd.*,
   401 N.J. Super. 563 (App. Div. 2008) ................................................ 16, 17, 25, 26

*Brundage v. Estate of Carambio*,
   195 N.J. 575 (2008) ............................................................................................. 17

*Burgos v. State*,
   222 N.J. 175 (2015) ............................................................................................. 11

*Chester Twp. v. Panicucci*,
   116 N.J. Super. 229 (App. Div. 1971) ................................................................. 16

*Coelho ex rel. Coelho v. Petrozzino*,
   No. A-2205-05T3, 2007 WL 148923
   (N.J. Super. Ct. App. Div. Jan. 23, 2007) ........................................................... 32

*Concrete Materials, Inc. v. Tarragon Edgewater Assocs., LLC*,
   402 N.J. Super. 583 (App. Div. 2008) ................................................................. 14

*D.D. v. Univ. of Med. & Dentistry of New Jersey*,
   213 N.J. 130 (2013) ............................................................................................. 30

*Emanuel Missionary Baptist Church v. City of Newark*,
   1 N.J. Tax 264 (1980) .......................................................................................... 18

*Est. of Yearby v. Middlesex Cnty.*,
   453 N.J. Super. 388 (App. Div. 2018) ............................................................ 27, 29

*Fay v. Medford Twp. Council*,
   423 N.J. Super. 81 (Ch. Div. 2011) ..................................................................... 28

*Foley Mach. Co. v. Amland Contractors, Inc.*,
   209 N.J. Super. 70 (App. Div. 1986) .................................................................... 36

iii

*Fong v. City of Newark*,
No. CV 22-7243 (SDW) (MAH), 2024 WL 5074763 (D.N.J. Dec. 10, 2024) ... 26

*Galik v. Clara Maass Med. Ctr.*,
167 N.J. 341 (2001) .................................................................................. 26, 28

*H.C. Equities, LP v. Cnty. of Union*,
247 N.J. 366 (2021) ......................................................................................... 33

*Hageman v. 28 Glen Park Assoc., L.L.C.*,
402 N.J. Super. 43 (Ch. Div. 2008) ............................................................ 36, 37

*Heyert v. Taddese*,
431 N.J. Super. 388 (App. Div. 2013) .............................................................. 38

*Jersey Cent. Power & Light Co. v. Melcar Util. Co.*,
212 N.J. 576 (2013) ......................................................................................... 16

*Kaczmarek v. N.J. Tpk. Auth.*,
77 N.J. 329 (1978) ........................................................................................... 14

*LPF 1200 Clinton Equity LLC v. Rent Leveling & Stabilization Bd. of City of Hoboken*,
No. 2:23-CV-23263-WJM-MAH, 2025 WL 88105 (D.N.J. Jan. 14, 2025) ........ 31

*Middletown Tp. Policemen's Benev. Ass'n Local No. 124 v. Twp. of Middletown*,
162 N.J. 361 (2000) ......................................................................................... 35

*N.J. Dep't of Envtl. Prot. v. Alloway Twp.*,
438 N.J. Super. 501 (App. Div. 2015) .............................................................. 24

*Nat'l Amusements Inc. v. Borough of Palmyra*,
716 F.3d 57 (3d Cir. 2013) ............................................................................. 6, 7

*New Jersey Dep't of Env't Prot. v. Amerada Hess Corp.*,
323 F.R.D. 213 (D.N.J. 2017) .......................................................................... 13

*Ryan v. Gina Marie, L.L.C.*,
420 N.J. Super. 215 (App. Div. 2011) .............................................................. 38

*Scardigli v. Borough of Haddonfield Zoning Bd. of Adjustment*,
300 N.J. Super. 314 (App. Div. 1997) .............................................................. 35

*Self v. Bd. of Rev.*,
  91 N.J. 453 (N.J. 1982) .................................................................................. 18

*TAC Assocs. v. New Jersey Dep't of Env't Prot.*,
  202 N.J. 533 (2010).......................................................................................... 11

*Willoughby v. Planning Bd. of Twp. of Deptford*,
  306 N.J. Super. 266 (App. Div. 1997) ................................................................ 6

*Willow Ridge Apartments, LLC v. Union City Rent Stabilization Bd.*
  No. A-3578-202022, WL 2525243 (N.J. Super. Ct. App. Div. July 7, 2022)
  ....................................................................................................................... *passim*

*Wozniak v. Pennella*,
  373 N.J. Super. 445 (App. Div. 2004) .............................................................. 38

*Wyzykowski v. Rizas*,
  254 N.J. Super. 28 (App. Div. 1992) .................................................................. 7

Statutes

N.J.S.A. § 2A:42-84.1.......................................................................................... 1
N.J.S.A. § 2A:42-84.1(b) ............................................................................... 22, 23
N.J.S.A. § 2A:42-84.1(e) .................................................................................... 21
N.J.S.A. § 2A:42-84.2(a) ............................................................................... 21, 22
N.J.S.A. § 2A:42-84.3...................................................................................... 9, 31
N.J.S.A. § 2A:42-84.4...................................................................................Passim
N.J.S.A. § 2A:42-84.5(a) .................................................................................... 15
N.J.S.A. § 2A:42-84.5(b) ......................................................................... 10, 23, 24
N.J.S.A. § 46:8B-12 ............................................................................................. 4
N.J.S.A. § 56:8-1................................................................................................ 38

Regulations

N.J.A.C. § 5:23-2.23(e).............................................................................. 4, 19, 22
N.J.A.C. § 5:23-2.6(a)........................................................................................ 23
N.J.A.C. § 5:23-6.31 .......................................................................................... 23

**INTRODUCTION**

In 2023, the Jersey City Rent Leveling Board (the "Board") found that neither 100 Warren Street ("100 Warren") nor 155 Washington Street ("155 Washington" and collectively the "Buildings") had ever qualified for the rent-control exemption afforded by the New Jersey Newly Constructed Multiple Dwellings Act, N.J.S.A. § 2A:42-84.1 *et seq.* (the "Act"). Thus, both Buildings were subject to the Jersey City Rent Control Ordinance, Jersey City, N.J., Code of Ordinances ch. 260 (2024) (the "Ordinance"). Plaintiffs ask this Court to overturn that determination, which was consistent with the Act's plain text, its legislative purpose, and was well supported by the substantial evidence before the Board.

Municipal actions are presumed to be valid and supported by facts in the record. The Board's reasoning was straightforward and supported by credible evidence. There is nothing arbitrary or capricious about the decision. Section 84.4 of the Act requires the owner of a newly constructed Multiple Dwelling to file a written claim of exemption with the municipal construction official "at least 30 days prior to the issuance of a certificate of occupancy." N.J.S.A. § 2A:42-84.4. The Board correctly held that compliance with Section 84.4 is a condition precedent to a rent control exemption — a holding supported by the Act's plain language, its legislative history, and the only New Jersey appellate decision to directly address the question.

1

For 155 Washington, no written claim of exemption was ever filed; thus, the Board correctly found no exemption applied. For 100 Warren, the only writing Plaintiffs identified was sent on November 23, 1994 — more than two years after the deadline had run, and only after the original developer had defaulted, the property had passed through a sheriff's sale, and a successor owner had elected to rent the condominiums. That fact pattern also does not comport with Section 84.4's requirements and, therefore, the Board correctly concluded no exemption applied.

Plaintiffs' contrary theories fail individually and together. They argue that Section 84.4 is "mandatory" but carries no consequence for noncompliance; that the Act preempts the Board from determining whether the statutory predicates for exemption have been met at all; that decades-old certificates and tax-abatement filings constituted "substantial compliance" with a statute that contained a condition precedent Plaintiffs' predecessors never satisfied; and that an offhand 1994 statement by a construction official disclaiming "jurisdiction over rent controls" estops the City from enforcing the Act today.

Each theory asks the Court to disregard the Act's text, the Legislature's own confirmation that compliance is required, the only appellate decision on point, and the basic principle that the Act is a time-limited development incentive — not a perpetual dispensation an owner may invoke decades after construction whenever convenient. The Court should affirm the Board and deny Plaintiffs' motion.

2

## FACTUAL BACKGROUND

**I.      History of the Buildings**

    **A.      100 Warren**

DeMatteis/Waterview Associates originally planned to construct two towers containing 525 condominium units. Plaintiffs' Statement of Facts ("PSOF") ¶ 33. On August 25, 1992, the Construction Official issued a Certificate of Occupancy for 100 Warren (the "West CO" or "CO" when used generally). PSOF ¶ 16. The West CO was for a condominium project, not a rental multiple dwelling. *Id.* ¶ 17. Following the issuance of the West CO, the original developer defaulted on its mortgage with Citibank, and Citibank foreclosed. *Id.* ¶ 25. The original owner never filed a claim for the Act's exemption. *Id.* ¶¶ 17, 19.

On November 23, 1994—more than two years after the West CO issued—the Hudson County Sheriff transferred the property to Portside Apartments Urban Renewal Partners, L.P. through a sheriff's sale. *Id.* ¶ 25. That same day, the new owner sent a letter to the Construction Official purporting to claim Section 84.4's rent control exemption. *Id.* ¶ 27. On December 6, 1994, the Construction Official responded that his office had "no jurisdiction over rent controls" and suggested the owner contact a different agency. *Id.* ¶ 29.

On January 24, 1995, the Construction Official issued a certificate of continued occupancy for 100 Warren—a document issued for an existing building, not new construction. Defendant-Intervenors' Statement of Facts ("DISOF") ¶ 1; *see*

3

N.J.A.C. § 5:23-2.23(e) ("certificate of continued occupancy" issued for "existing building or structure"). While Plaintiffs contend that Portside's predecessor "convert[ed]" 100 Warren "to a multiple dwelling residential apartment complex," (PSOF ¶ 26), in reality, no "conversion" occurred. Response to Plaintiffs' Statement of Facts ("RPSOF") ¶ 26; DISOF ¶¶ 2-4, 6-8. 100 Warren legally remained identified as condominiums until February 2005 when New Jersey revoked the "Portside Condominium Owners' Association, Inc." non-profit status for failing to file an annual report for two consecutive years. *Id.*; N.J.S.A. § 46:8B-12 (defining condominium association). RPSOF ¶ 26.

### B.    155 Washington

Construction of 155 Washington completed in the second half of 1997, and the Construction Official issued a CO on December 31, 1997. PSOF ¶ 36. At no time did any owner of 155 Washington claim the Act's exemption. In 1998, the then-owner transferred the property to the current owner, Portside, for $100.00. PSOF ¶ 38.

### C.    The Board's Determination

In 2022, the Buildings' tenants submitted Illegal Rent Petitions to the Jersey City Bureau of Rent Leveling (the "Bureau"), challenging inordinate rent increases. PSOF ¶ 47. On September 19, 2022, the Rent Leveling Administrator ("RLA") issued a determination that: (i) 100 Warren was not subject to the Ordinance until August 24, 2022, and is subject to the Ordinance going forward, and (ii) 155

4

Washington "has been and remains exempt" through December 30, 2027. PSOF ¶¶ 61, 62; Ex. 13 to PSOF, at 7. The tenants appealed. PSOF ¶ 63. The Board consolidated the matters, held hearings on May 31, 2023, and October 19, 2023, and, ultimately, issued its written decision on November 3, 2023. PSOF ¶¶ 65, 72.

The Board determined, based on the substantial evidence, that the Buildings are "two separate multiple dwellings" and that neither was ever exempt from the Ordinance.[1] Ex. 1 to PSOF. The Board determined that compliance with Section 84.4 of the Act "is a mandatory condition precedent to receipt of this rent control exemption requiring strict compliance with its terms." *Id.* 8. For 100 Warren, the Board found the November 1994 letter did not satisfy Section 84.4 because it was filed years after the West CO issued. *Id.* at 7. For 155 Washington, there was no evidence that an exemption claim was filed. *Id.* at 8.

### D.    Plaintiffs Failed to Provide the Tenants Required Notice

Apart from the Board's determination, Section 84.3 of the Act also requires landlords provide notice to tenants of a building's rent control exemption by identifying the building's remaining exemption period. Plaintiffs' rent control addenda failed to disclose the remaining exemption period. DISOF ¶¶ 10-14; *see also* ECF No. 171-27 (example of Rent Control Addendum that disclosed building as exempt from rent control "for a period of thirty years following the completion of

---

[1] 100 Warren and 155 Washington were ultimately constructed by different owners. DISOF at ¶ 5.

construction" without disclosing that date). Although Plaintiffs now concede that to the extent 100 Warren ever had an exemption (it did not), it expired in August 2022, ECF No. 171-32, ¶14, as of September 1, 2022, Plaintiffs maintained that "100 Warren is, indeed, exempt from Jersey City rent control." DISOF ¶ 13; *see also* Ex. H to DISOF at 25 (October 2022 Rent Control Addendum for 100 Warren stating the building is exempt).

Plaintiffs also never provided tenants the notice required by Section 260-1 of the Ordinance, which among other things, requires disclosure of "the rent of the prior tenant." *Id.* ¶ 14.

## LEGAL STANDARD

Plaintiffs challenge the Board's decision through an action in lieu of prerogative writ, and the Court's task is to evaluate that decision based on the administrative record that was before the Board — not to resolve disputed facts in the first instance.

Three distinct standards govern the review. First, the Board's *factual findings* are upheld where supported by substantial evidence and may be set aside only as "arbitrary, capricious, and unreasonable." *Willoughby v. Planning Bd. of Twp. of Deptford*, 306 N.J. Super. 266, 273-74 (App. Div. 1997). "Arbitrary and capricious action . . . means willful and unreasoning action, without consideration and in disregard of circumstances." *Nat'l Amusements Inc. v. Borough of Palmyra*, 716

6

F.3d 57, 63 (3d Cir. 2013) (internal citations omitted). Under that deferential standard, the Board's findings stand "[w]here there is room for two opinions" and where the Board has acted "honestly and upon due consideration." *Id.* Second, the Board's *interpretations of its own Ordinance* are entitled to substantial deference where, as here, those interpretations are "informed by knowledge of local circumstances and . . . combined with enforcement responsibility." *Wyzykowski v. Rizas*, 254 N.J. Super. 28, 38 (App. Div. 1992). Third, only *pure questions of state-law statutory interpretation* are reviewed de novo — and even there, as detailed below, the only New Jersey appellate decision squarely on point compels the Board's reading. *See DePetro v. Twp. of Wayne Planning Bd.*, 367 N.J. Super. 161, 174 (App. Div. 2004).

## ARGUMENT

I.  **THE BOARD CORRECTLY DETERMINED THAT STRICT COMPLIANCE WITH SECTION 84.4 IS A CONDITION PRECEDENT TO EXEMPTION FROM RENT CONTROL**

The Board's determination that compliance with Section 84.4 is required is consistent with the plain text, structure, and intended purpose of the Act, which establishes a scheme for exempting newly constructed multiple dwellings from local rent control. Section 84.2 affords new buildings a maximum thirty-year exemption. Section 84.4 specifies the mechanism by which an owner claims that exemption — a written filing with the municipal construction official "at least 30 days prior to the issuance of a [CO]." N.J.S.A. § 2A:42-84.4. Section 84.3 governs the separate

7

notices an owner must give its tenants once the exemption has been obtained. And Sections 84.5 and 84.6 set out the Act's legislative purpose and protect a properly perfected exemption from inconsistent municipal action.

These provisions operate sequentially. The Section 84.2 exemption does not arise by operation of law; it is claimed through Section 84.4, administered through Section 84.3, and shielded from local interference under Sections 84.5 and 84.6 only after it has actually attached. Plaintiffs' theory that Section 84.2 is self-executing is contrary to the Legislature's carefully crafted structure and renders Section 84.4 as surplusage, carrying no consequence for noncompliance.

## A.    Section 84.4 Compliance Is a Condition Precedent

Two independent lines of authority support the Board's determination that compliance with Section 84.4 is a condition precedent to Section 84.2's rent-control exemption. The text of the Act and its legislative history make the condition-precedent reading the only sensible one. And the only New Jersey appellate decision to directly address the question — *Willow Ridge Apartments, LLC v. Union City Rent Stabilization Bd.*— held precisely that. No. A-3578-20, 2022 WL 2525243, at *7 (N.J. Super. Ct. App. Div. July 7, 2022), *petition for certification denied*, 253 N.J. 385.

8

### 1.      The Text and Legislative History of the Act Confirm that Compliance with Section 84.4 is Required

The Act's text makes clear that compliance with Section 84.4 is required for the Section 84.2 exemption to apply, and the Legislature's own treatment of Section 84.4 in subsequent amendments to the Act confirms that reading.

Section 84.4 applies to "the owner of any multiple dwelling *claiming* an exemption." N.J.S.A. § 2A:42-84.4 (emphasis added). That language makes plain that "claiming an exemption" by filing a written statement with the municipal construction official is part of the process by which an owner *obtains* exempt status in the first instance. An owner cannot simply declare itself exempt; it must affirmatively claim the exemption in the manner prescribed by the statute.[2]

The Legislature's word choice in Section 84.3 underscores this point. Unlike Section 84.4, which governs how an owner *claims* an exemption, Section 84.3 governs the notice an owner must provide tenants once an exemption has already been *obtained*. By its terms, Section 84.3 applies only to "the owner of any multiple dwelling *exempted* from a rent control." N.J.S.A. § 2A:42-84.3 (emphasis added). The contrast is deliberate: Section 84.4 is a precondition to achieving exempt status, and Section 84.3 governs conduct that follows only after exempt status has been secured. Read together, the two provisions establish a sequential framework: an

---

[2] Plaintiffs' counsel acknowledged this requirement in letters to the Jersey City Rent Leveling Administrator. RSOF ¶ 74; Exs. H-I to RSOF.

owner must first satisfy Section 84.4's filing requirement and then it must comply with Section 84.3's tenant-notice regime.

The Legislature's intent that compliance with Section 84.4 is mandatory is confirmed by its 1999 amendments to the Act, which clarified that the Act applied to new buildings without initial mortgage financing — principally, new buildings constructed by Real Estate Investment Trusts and similar entities that finance construction without project-based mortgages. *See* N.J.S.A. § 2A:42-84.5(b) (recounting the purpose of the 1999 amendment). Two features of this legislative history confirm the condition-precedent reading of Section 84.4.

First, the Legislature clarified that the amendment would apply to multiple dwellings already constructed before its effective date, "provided that the owner of the multiple dwellings ***has fully complied with the requirements*** of [Section 84.4]." Ex. A to RSOF at 4. The Legislature directly tied eligibility from the amended statute to a single criterion: full compliance with Section 84.4. The choice of "fully complied" permits no equivocation: if Section 84.4 were merely a directory requirement collateral to the exemption itself, the Legislature would have had no reason to demand full compliance with it. Section 84.4 compliance is the gateway to the exemption, not an ancillary administrative requirement enforceable through some lesser remedy.

10

Second, a December 17, 1998 statement from the Senate Community and Urban Affairs Committee similarly explained:

> because this bill seeks to clarify a provision of current law[,] it would take effect immediately and be applicable to multiple dwelling units constructed prior to the effective date *so long as the owner of the multiple dwelling filed a claim for exemption from the provisions of a rent control or rent leveling ordinance pursuant to the provisions of [Section 84.4].*

*Id.* at p. 9 (emphasis added). The Committee's characterization of the 1999 amendment as a "clarif[ication]" of "current law" confirms that compliance with Section 84.4 was a condition precedent in the original 1987 Act. A clarification, by definition, does not change the underlying rule; it makes that rule explicit. By describing its work as a clarification, the Committee confirmed that, in its view, the 1987 Act had always required compliance with Section 84.4 for the exemption to apply. That understanding is entitled to great weight in construing the Act. *See TAC Assocs. v. New Jersey Dep't of Env't Prot.*, 202 N.J. 533, 542 (2010) ("amendments carry 'great weight' in determining the intention of the original statute"); *ARCNET Architects, Inc. v. New Jersey Prop.-Liab. Ins. Guar. Ass'n*, 377 N.J. Super. 102, 110 (App. Div. 2005) (holding that statutory amendment, which clarified a definition confirmed the Legislature's meaning of that definition prior to the amendment).

Basic canons of statutory construction also confirm that Section 84.4 requires that owners take the affirmative step of claiming the exemption as a condition

11

precedent for the exemption. Courts must not interpret statutes that renders "statutory language as surplusage or meaningless." *Burgos v. State*, 222 N.J. 175, 203 (2015). Plaintiffs' position that Section 84.4 is "mandatory" but carries no consequence for noncompliance (Pls.' Br. at 15-17) runs headlong into this rule. On Plaintiffs' theory, every multiple-dwelling owner in New Jersey would automatically enjoy a 30-year rent-control exemption from the moment construction is completed, with no mechanism to verify eligibility, and no consequence whatsoever for an owner who simply never filed the required written statement of exemption. The 30-day pre-CO deadline would mean nothing, because filing 30 years late — or never — would carry no penalty. And Section 84.3's tenant-protection regime would collapse: how could a tenant know whether a building was exempt if the owner had no obligation to claim, in any verifiable way, that it was?

The Act's enforcement architecture rests entirely on landlord self-reporting. No provision of the Act tasks a municipal official with affirmatively investigating which buildings qualify for exemption, with maintaining a registry of exempt properties, or with policing the expiration of the exemption window. The Act instead places each of those obligations on the owner: the owner files a written statement of the claim of exemption with the construction official, *see* N.J.S.A. § 2A:42-84.4; the owner notifies its tenants of the exemption and of the period that remains, *see id.* § 84.3; and the owner files a termination notice with the construction official at least

12

thirty days before the exemption period ends, *see id.* § 84.4. Section 84.4 is therefore not a peripheral administrative requirement — it is the linchpin of a self-enforcement regime the Legislature deliberately designed and for which it provided no alternative. Reading Section 84.4 as anything less than a condition precedent would untether the entire scheme from the only mechanism the Legislature gave it.

The Legislature did not write a 30-year exemption that exists in a vacuum, untethered to verifiable compliance with the conditions the Legislature itself imposed. The condition-precedent reading is the only one that gives effect to every provision of the Act and that avoids the absurdity Plaintiffs' reading produces.

This conclusion accords with the Act's overall structure. Section 84.2 grants the exemption; Section 84.4 sets out the steps the owner must take to claim it; and Section 84.5(b) describes the legislative purpose of encouraging new rental construction by ensuring that municipal rent control will not deter it. The 1999 amendment and its accompanying Committee Statement tie these threads together by making explicit what the original Act made clear: compliance with Section 84.4 is the price of the Section 84.2 exemption.

### 2. The Appellate Authority Confirms the Condition-Precedent Reading

*Willow Ridge Apartments,* 2022 WL 2525243, at *7 is the only New Jersey appellate decision to squarely address the consequences of an owner's failure to

13

comply with Section 84.4.[3] There, the Appellate Division affirmed a local board's determination that a post-1987 building was not exempt from rent control because the owner had never filed a claim of exemption under Section 84.4. The court's reasoning rested on three independent pillars, each independently dispositive.

*First*, because the Act created a "new right" to exemption from otherwise-applicable rent control, any limitation the Legislature imposed on that right is "generally considered a condition precedent to the existence of the right itself." *Id.* at \*7–8 (quoting *Kaczmarek v. N.J. Tpk. Auth.*, 77 N.J. 329, 339 (1978)). *Second*, treating the filing of a written statement claiming the exemption as a mere suggestion would render Section 84.4 as "meaningless surplusage," contrary to the canon that "[c]ourts are obliged to interpret a statute in a way that gives full meaning to all of its terms." 2022 WL 2525243, at \*8 (quoting *Concrete Materials, Inc. v. Tarragon Edgewater Assocs., LLC*, 402 N.J. Super. 583, 586 (App. Div. 2008)). *Third*, the timely-filing requirement serves a "clear purpose": it allows the municipality to inspect the subject property, memorialize and track which properties are subject to, and exempt from, rent control," and avoid "retroactive analyses of construction projects . . . decades after construction." *Id.*

---

[3] "While unpublished opinions are not binding on New Jersey courts, the federal courts may refer to them when predicting state law." *New Jersey Dep't of Env't Prot. v. Amerada Hess Corp.*, 323 F.R.D. 213, 226 (D.N.J. 2017) (cleaned up).

14

The Board therefore had full authority to determine, in the first instance, whether the statutory conditions for exemption were satisfied. Adjudicating the applicability of the rent control ordinance to a particular dwelling is the Board's core function, and the burden is on the property owner to prove compliance. *Id.* at *5. Plaintiffs did not satisfy that burden.

### B.    The Board's Decision Is Not Preempted by State Law

Seeking to overcome the plain language of the Act, Plaintiffs argue that the Board is preempted from taking any action to enforce the Act. Pls.' Br. at 10-14. This argument fails at its threshold. Plaintiffs read Sections 84.5(a) and 84.6 as barring municipal action that "limit[s], diminish[es], alter[s] or impair[s] any *exemption afforded* pursuant to this act," N.J.S.A. § 2A:42-84.5(a) (emphasis added), and then say the Board "limited" or "altered" their exemption. Pls.' Br. at 11. But the operative words are "exemption afforded." The Act only preempts municipal action that interferes with an exemption the Act afforded under its own terms, "within the limitations imposed by this Act," N.J.S.A. § 2A:42-84.6; it does not preempt municipal action that determines, as a threshold matter, whether the statutory predicates for exemption have been met. The Board did not strip Plaintiffs of an attached exemption — it determined that no exemption ever existed because Plaintiffs' predecessors did not satisfy Section 84.4. *Willow Ridge* held precisely that. 2022 WL 2525243, at *7–8. Plaintiffs' contrary position assumes the very

15

conclusion they ask the Court to reach — that they are exempt — and uses that assumption to insulate them from the inquiry that would test whether the assumption is right. The circularity alone is reason to reject it.

Plaintiffs' related attack on § 260-6(c) of the Ordinance — the local provision codifying Section 84.4's filing requirement — adds nothing. *See* Pls.' Br. at 17. Section 260-6(c) merely implements the condition the Legislature itself imposed in Section 84.4, as confirmed by the 1999 amendment and *Willow Ridge*. A municipal ordinance that mirrors and enforces a state statutory requirement is not preempted — it is the local enforcement the Act contemplates. *See Chester Twp. v. Panicucci*, 116 N.J. Super. 229, 236 (App. Div. 1971), *aff'd*, 62 N.J. 94 (1973). Were Plaintiffs' theory correct, no municipal rent-leveling board could ever determine in the first instance whether a particular building qualifies for exemption — leaving Sections 84.3 and 84.4 unenforceable and rendering them surplusage. *See Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 587 (2013).

The Board's decision is thus the opposite of preempted action: it implements the statutory scheme the Legislature designed. When the Board confirms that an owner never satisfied the conditions the Legislature prescribed, it enforces — rather than displaces — the Legislature's carefully calibrated bargain. *Willow Ridge*, 2022 WL 2525243, at *6–9 (rejecting preemption challenge on identical reasoning).

## C.    Plaintiffs' Contrary Cases Do Not Support Their Position.

16

*Block 268 v. City of Hoboken Rent Leveling & Stabilization Bd.*, 401 N.J. Super. 563 (App. Div. 2008), Pls.' Br. at 13, is inapposite. There, the owner filed a Section 84.4 claim, and the only issue was whether "a hypertechnical omission" – signing in an individual rather than entity capacity – defeated the exemption. *Id.* at 565-66, 568-70. The preemption discussion likewise concerned whether an already-vested exemption could be divested by a later title transfer or condominium conversion, not whether one ever vested. *Id.* at 570-72. Neither issue is relevant here.

*Avalon Hoboken, LLC v. City of Hoboken*, No. HUD-L-348-24 (N.J. Super. Ct. Aug. 7, 2025) and *LPF 1200 Clinton Equity LLC v. Rent Leveling & Stabilization Bd.*, No. HUD-L-261-25 (N.J. Super. Ct. Sept. 11, 2025) are unpublished, single-judge trial court decisions both on appeal and neither is precedential nor persuasive. *See Brundage v. Estate of Carambio*, 195 N.J. 575, 593–94 (2008). *Avalon* expressly omits the parties' arguments and never engages with *Willow Ridge* or the no-surplusage canon; a court that disclaims considering the relevant arguments cannot be cited as having resolved them.

*LPF* is distinguishable on its face: that property owner timely complied with Section 84.4, and the court itself acknowledged that "the main issue in *Willow Ridge* was the building was never registered with the building official," which is "not an issue" in *LPF*, and expressly confirmed *Willow Ridge* applies where Section 84.4 compliance is lacking. Ex C to Reed Decl., Aug. 15, 2025 Hearing at 45:23–46:3.

17

*Borough of Fairview v. Fairview Associates*—an unpublished *per curiam* decision from 2002 (not 2022, as Plaintiffs miscite at page 18)—addresses rent control in only two sentences and rests entirely on a tax-exemption case, *Emanuel Missionary Baptist Church v. City of Newark*, 1 N.J. Tax 264 (1980), that construed an entirely different statutory regime. *See* Ex. E to Reed Decl. The notice provision in *Emanuel Missionary* places the filing obligation on the *municipal tax assessor*, who must collect statements from landowners "showing the right to the exemption claimed." Section 84.4, by contrast, places the obligation on the owner, ties it to a specific filing thirty days before the CO, and is accompanied by a statutory note demanding "full[]" compliance. *See* Section I.A.1., *supra*. The other tax cases Plaintiffs cite at page 16 of their brief share *Emanuel Missionary's* defect. Additionally, none of Plaintiffs' cited authorities address the Act's legislative history confirming that Section 84.4 operates as a condition precedent.

## II.     THE BOARD PROPERLY FOUND THAT THE OWNERS FAILED TO COMPLY WITH SECTION 84.4 AS TO BOTH BUILDINGS

The Board concluded based on record evidence that Portside's predecessors never filed the written claim required by Section 84.4 for either tower. These are factual determinations well-supported by the record and are therefore entitled to the Court's deference. *See Self v. Bd. of Rev.*, 91 N.J. 453, 459 (N.J. 1982) ("If the factual findings of an administrative agency are supported by sufficient credible evidence, courts are obliged to accept them."); *Willow Ridge*, 2022 WL 2525243, at *9.

### A.   100 Warren: The 1994 Exemption Claim Fails Section 84.4

Even if 100 Warren could theoretically qualify for an exemption—which it cannot[4]—the owner independently failed to satisfy Section 84.4's timing requirement, which mandates that a written claim be filed "at least 30 days prior to the issuance of a [CO]." N.J.S.A. § 2A:42-84.4. The CO for the newly constructed building at 100 Warren issued on August 25, 1992, meaning the filing of the written statement claiming the exemption was due by July 26, 1992, at the latest. No written statement was filed before that date. The letter eventually sent on November 23, 1994, came more than two years after the West CO—well after the building had completed construction, the original owner had defaulted, and title had transferred through a sheriff's sale to a subsequent owner who did not newly construct anything.

Seeking to save their untimely claim of exemption, Plaintiffs repeatedly mischaracterize the certificate of continued occupancy issued on January 24, 1995, as the "first [CO] for 100 Warren to operate as a multiple dwelling" (Pl. Br. at 20, 24, 26; PSOF at ¶ 30), but that document cannot reset the clock. Under New Jersey law, a certificate of continued occupancy is issued for existing buildings, not for new construction. N.J.A.C. § 5:23-2.23(e); Ex. 9 to PSOF. The Act requires the owner to file a "written statement" "prior to the issuance of a [CO] for the newly constructed multiple dwelling." N.J.S.A. 2A:42-84.4. Under the Act's plain language that can

---

[4] *See* Section III, *infra.*

19

only be the 1992 CO for the newly constructed building, not a later certificate of continued occupancy for the already-completed structure. *See id*. The 1994 claim of exemption was therefore untimely, and Plaintiffs' attempt to substitute the January 1995 document as the operative trigger fails as a matter of law.

### B.    155 Washington: No Exemption Claim Was Ever Filed

155 Washington is straightforward: no owner ever filed a claim with the municipal construction official. Plaintiffs' suggestion that the November 1994 letter for 100 Warren somehow constituted constructive notice for 155 Washington does not survive scrutiny. The Legislature did not authorize general notices that attach prospectively to buildings not yet constructed.[5] The statutory scheme is building and CO-specific. A general letter for one building cannot serve as the required written claim of exemption for a different building constructed years later.

## III.    THE ACT DOES NOT APPLY TO 100 WARREN BECAUSE IT WAS DEVELOPED AS A CONDOMINIUM, NOT A MULTIPLE DWELLING RENTAL

### A.    The Text and Structure of the Act Confirm that 100 Warren Does Not Qualify for the Exemption

Plaintiffs attempt to justify their failure to file a timely written claim under Section 84.4 by arguing that "the original owner had no reason to submit rent control paperwork" because the "original plan was for the towers to contain a condominium

---

[5] Indeed, such general notice would not serve the purpose of the notice requirement. *See Willow Ridge*, 2022 WL 2525243, at *8 ("Providing the notice required by N.J.S.A. 2A:42-84.4 thirty days prior to the issuance of a [CO] serves a clear purpose — to allow a municipality to inspect the subject property in a timely fashion and ensure that it qualifies for the exemption.").

project, not a multi-dwelling rental project." Pls.' Br. at 1, *see also id.* at 5, 19-20, 24. But rather than supporting their arguments, this is a damning admission that establishes that 100 Warren never qualified for an exemption at all.

Section 84.2(a)'s exemption only applies to "multiple dwellings constructed" after June 25, 1987. N.J.S.A. § 2A:42-84.2(a). The Act defines "multiple dwelling" as any building whose units are "rented or offered for rent to four or more tenants or family units." N.J.S.A. § 2A:42-84.1(e). And the triggering moment for the exemption—the window within which the written claim must be filed—is keyed to "the issuance of a [CO] for the *newly constructed* multiple dwelling." N.J.S.A. § 2A:42-84.4 (emphasis added). Plaintiffs expressly acknowledge that 100 Warren, as it existed as a condominium project, with units for sale when it was constructed, does not meet the definition of a "multiple dwelling" for which the Section 84.2(a) exemption applies. *See* Pls.' Br. at 1, 5, 19-20, 24.

The decision years later to rent the units rather than sell them does not change this fact. The Act defines "Constructed" as "constructed, erected or converted," and it expressly "excludes rehabilitation of premises rented previously for residential purposes without an intervening use for other purposes for a period of at least two years prior to conversion," with "[m]ere vacancy" not qualifying as an intervening use. N.J.S.A. 2A:42-84.1(b). The use of the term "converted" in that definition does not save Plaintiffs either because it must be read in reference to the use of the term

21

"constructed" throughout the Act. For example, the exemption period does not begin to run until "completion of construction," *id.* § 2A:42-84.2, which the Legislature defined as the "issuance of a [CO] under section 15 of the 'State Uniform Construction Code Act,'" *id.* § 84.1(a) (citing C. 52:27D-133). Thus, the term "constructed," and all its subsidiary terms, including "converted," must be read in reference to something eligible for a CO under the Uniform Construction Code.

The eventual change of 100 Warren from condominium to rental does not qualify as a conversion within this framework. The Uniform Construction Code provides that a CO is issued only for new construction or a genuine change of use; renovation or alteration of a building remaining in its existing use yields a Certificate of Approval, not a CO. *See* N.J.A.C. 5:23-2.23(a)–(b); *see also id.* § 2.23(f) ("It shall be unlawful to change the use of any structure, or portion thereof, without the prior application for, and issuance of, a [CO]."). The regulations regarding a change of use draw the line explicitly: "[t]he legal use of any structure existing on the effective date of the regulations may be continued without change," N.J.A.C. 5:23-2.6(a), while "[i]t shall be unlawful to change the use of any structure or portion thereof without the prior application for and issuance of a [CO]," *id.* § 2.6(b); *see also* N.J.A.C. 5:23-6.31 (governing change-of-use compliance). Here, the "use" was residential before and remained residential after. No new CO issued in 1995, and therefore, the Act's threshold trigger was never satisfied.

Plaintiffs' contrary reading would also drain the rehabilitation exclusion of any meaning (*see* N.J.S.A. 2A:42-84.1(b)), since any landlord could relabel a renovation as a "conversion" of ownership form and evade the carve-out the Legislature deliberately enacted. That result is irreconcilable with the Legislature's stated purpose, codified at N.J.S.A. 2A:42-84.5(b), of "increas[ing] the supply of newly constructed rental housing." The "converted" category was meant to reach genuine conversions of buildings from non-residential use to residential use, not paper transactions that leave the building, the use group, and the unit count unchanged.

Finally, there was no legal "conversion" that could open a new window for an owner of 100 Warren to claim exemption. 100 Warren remained cloaked as a condominium until as late as February 2005, when New Jersey revoked its non-profit status. RPSOF at 26.

### B. The Act's Legislative Purpose Forecloses Extension to 100 Warren

The Act is, by its own terms, a development incentive designed to influence upstream decisions about whether to build new rental housing. N.J.S.A. 2A:42-84.5(b). Extending the exemption to 100 Warren would invert that purpose. The original developer needed no rent-control exemption: it was building condominiums for sale, a model to which rent control is irrelevant. No development decision was influenced by the prospect of a rent-control exemption. Granting the exemption to a

23

purchaser at a sheriff's sale who rented unsold condominiums two years after construction was complete—would confer a windfall entirely untethered from any decision the Act sought to incentivize.

## IV.     ANY EXEMPTION FOR 100 WARREN EXPIRED

Even if 100 Warren had qualified for the exemption and its prior owners had properly claimed it, that exemption expired no later than August 2022 — thirty years after the West CO issued. Plaintiffs' own expert says so, acknowledging that "the 30-year exemption period would begin as of the [CO] of each building," and that "upon expiration of the 30-year exemption period (2022), the Jersey City rent control ordinance . . . would apply." ECF No. 171-32 ¶ 14. Additionally, Plaintiffs have waived any argument that 100 Warren is exempt from the Ordinance indefinitely by failing to develop those arguments here. *See* Pls.' Br. at 9, n.2; *N.J. Dep't of Envtl. Prot. v. Alloway Twp.*, 438 N.J. Super. 501, 506 n.2 (App. Div. 2015) (finding an issue waived where it was raised in "a single sentence in [defendant's] brief" and with no supporting legal argument).

## V.      SUBSTANTIAL COMPLIANCE DOES NOT SAVE PLAINTIFFS' CLAIMS

### A.     Substantial Compliance is Not the Controlling Standard

As the legislative history confirms and as the court explained in *Willow Ridge*, the failure to claim the exemption forecloses its availability: the Legislature mandated "strict compliance with [the Act's] terms is required to qualify for the

24

exemption." 2022 WL 2525243, at *7. In any event, Plaintiffs cannot show substantial compliance either.

Plaintiffs' reliance on *Block 268* is misplaced for two independent reasons. First, *Block 268* addressed a narrow situation: a timely Section 84.4 filing with a "hypertechnical" defect — a signature by an individual rather than the entity that owned the building. 401 N.J. Super. at 565–66, 568–70. The Appellate Division invoked substantial compliance to excuse that technical imperfection in a filing the owner had actually made. *Id.* at 569–70. Plaintiffs ask the Court to use *Block 268* not to excuse a technical defect in a timely filing, but the absence of any timely filing at all. Nothing in *Block 268* supports that extension. Second, the *Block 268* discussion of substantial compliance is dicta - the court expressly declined to reach the merits of the argument, holding it waived. *Id.* at 569. And even within that dicta, the court neither addressed nor applied the five-factor substantial compliance test that Plaintiffs advocate. *Id.* At most, *Block 268* stands for the narrow proposition that a hypertechnical defect in a timely Section 84.4 filing may be excused. It does not excuse wholesale noncompliance with Section 84.4.

Even if a substantial-compliance standard applied — it does not — Plaintiffs' claim would still fail. Substantial compliance is not a low bar, and Plaintiffs bear the burden of establishing it. *See Fong v. City of Newark*, No. CV 22-7243 (SDW) (MAH), 2024 WL 5074763, at *5 (D.N.J. Dec. 10, 2024) ("Plaintiff has not met the

25

'heavy burden' of showing all the elements of the doctrine of substantial compliance.") (quoting *Galik v. Clara Maass Med. Ctr.*, 167 N.J. 341, 357 (2001)). To demonstrate substantial compliance, Plaintiffs must establish:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a reasonable explanation why there was not a strict compliance with the statute.

*Id.* at 353. As shown below, Plaintiffs cannot satisfy these factors.

### B.    Portside and its Predecessor Failed to Substantially Comply with the Act for 100 Warren

Each *Galik* factor cuts decisively against Plaintiffs for 100 Warren, and their contrary showing rests on a strained reading of the statute and an unsupported, *post hoc* account of the prior owner's subjective intentions.

As set forth in Section II.A above, the [CO] for 100 Warren issued to developers DeMatteis/Waterview Associates on August 25, 1992; the Section 84.4 deadline expired thirty days earlier, on July 26, 1992; and the only Section 84.4 exemption claim was filed more than two years later, by a different owner, Portside Apartments Urban Renewal Partners, L.P., on November 23, 1994. PSOF ¶¶ 16, 27. Those facts dispose of two *Galik* factors at once.

A letter sent by someone other than the original owner two years out of time is not a "series of steps taken to comply" with the statute; it is a series of steps taken

26

long after the time for compliance had passed. And Plaintiffs' "reasonable explanation" for the gap — that the original developer "intended" to operate 100 Warren as a condominium, and so the August 1992 CO was somehow *not* a Section 84.4 trigger (Pls.' Br. at 24) — is not an explanation for noncompliance; it is a description of the circumstances in which noncompliance occurred. Nothing in the record suggests that the original developer made any conscious decision in 1992 to forgo Section 84.4 in reliance on a future possibility of a change to rentals. *See Est. of Yearby v. Middlesex Cnty.*, 453 N.J. Super. 388, 404 (App. Div. 2018) (rejecting substantial-compliance theory premised on an after-the-fact account where the record contained no evidence supporting it).

Plaintiffs' fallback — that the deadline should be measured against the January 1995 "certificate of continued occupancy" rather than the August 1992 CO — fails because a "certificate of continued occupancy" is not relevant for purposes of the Act. *See* Section II.A., *supra*. The substantial-compliance doctrine is meant to forgive technical missteps in pursuit of compliance, *Galik*, 167 N.J. at 352, not to shift a statutory deadline to a different document that fits Plaintiffs' theory. Where, as here, the original owner took no steps to claim the exemption, the substantial compliance doctrine has no place.

27

### C.    Portside and its Predecessor Failed to Substantially Comply with the Act for 155 Washington

Plaintiffs' substantial-compliance theory is at its weakest with respect to 155 Washington. None of the *Galik* factors are satisfied, and the Board's finding that no Section 84.4 claim was ever filed for the building is entitled to deference.

The record contains no Section 84.4 filing for 155 Washington. The Board's finding to that effect is entitled to deference. *See Fay v. Medford Twp. Council*, 423 N.J. Super. 81, 88 (Ch. Div. 2011). The 1994 letter for 100 Warren on which Plaintiffs rely does not satisfy Section 84.4's requirements (*see* Section II.B): it was submitted for a different building, built by a different owner, at a different address, predates construction of 155 Washington by three years, and was not in response to a forthcoming CO. The substantial-compliance doctrine forgives technical lapses in honest efforts to satisfy a statutory requirement; it has no role where, as here, the owner took no steps at all.

Plaintiffs' two "reasonable explanations" for that complete absence of compliance (Pls.' Br. at 26–27) do not change the result. *First*, Plaintiffs contend that Construction Official Regan's December 6, 1994, response to the 100 Warren written statement— stating that he had "no jurisdiction over rent controls" — relieved Portside's predecessor of the obligation to file a claim of exemption three years later for a different, newly constructed building. Mr. Regan's letter responded to a specific letter for a specific building; it cannot be retrofitted into a blanket waiver

28

of Section 84.4. Plaintiffs identify no contemporaneous evidence that Portside's predecessor consciously elected not to file a 1997 claim in reliance on Mr. Regan's 1994 statement; that explanation is constructed, decades later, from inference alone. *See Est. of Yearby*, 453 N.J. Super. at 404. *Second*, Portside argues that no separate claim was needed because the City "knew" 155 Washington was part of the same complex. Pls.' Br. at 27. That is not an explanation for noncompliance; it is an argument that compliance was unnecessary — and Section 84.4 forecloses it on its face, requiring building- and CO-specific claims for each multiple dwelling claiming an exemption.

### D.    Plaintiffs Misconstrue the "Reasonable Notice" Factor

The bulk of Plaintiffs' substantial compliance argument for 155 Washington (Pls. Br. at 27-30), that the City had "reasonable notice" of the building's exempt status — rests on a fundamental misreading of the substantial compliance doctrine. Substantial compliance most often arises where a litigant has missed a procedural deadline and asks the Court to excuse the lapse. The five-factor *Galik* test is calibrated to that purpose. The fourth factor — the only one to which Plaintiffs' "City awareness" arguments could conceivably speak — protects opposing parties from being blindsided by a late or technically deficient claim. *See D.D. v. Univ. of Med. & Dentistry of New Jersey*, 213 N.J. 130, 159 (2013) (explaining limited application of substantial compliance doctrine to instances where the notice

29

"although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute."). It asks whether the opposing party had reasonable notice *of the claim*. It assumes that a claim has been or will be asserted, just out of time. It does not ask, and it is not satisfied by, generalized awareness of facts that a party is claiming a statutory exemption. Plaintiffs' catalog of City awareness is irrelevant for the reason the doctrine exists — to forgive technical defects in timely-filed claims, not to substitute generalized inference for any claim at all.

### E.    Plaintiffs' Noncompliance has Prejudiced the City and the Tenants

For years, the Buildings' tenants have paid market rents predicated on Plaintiffs' misrepresentation that they were rent control exempt. If, as the Board correctly determined, no proper exemption ever attached, those tenants have paid rents in excess of what the Ordinance permitted for years. That is the paradigm of prejudice. Plaintiffs' invocation of lease addendums in which tenants acknowledged the claimed exemption does not extinguish that prejudice — it reinforces it, because the addendums themselves were predicated on a misrepresentation.

Separate from Section 84.4, Section 84.3 of the Act imposes an independent obligation on the owner to provide notice to tenants — including notice of the period of time during which the exemption will be in effect. N.J.S.A. § 2A:42-84.3; *see also LPF 1200 Clinton Equity LLC v. Rent Leveling & Stabilization Bd. of City of*

30

*Hoboken*, No. 2:23-CV-23263-WJM-MAH, 2025 WL 88105, at *5 (D.N.J. Jan. 14, 2025) ("Notably, *Block 268* did not address noncompliance with the arguably more important tenant-notice requirement under Section 84.3.").[6]

The Rent Control Addenda on which Plaintiffs rely (PSOF ¶ 40) did not disclose to tenants how much of the exemption period remained when they signed their leases — information the Legislature deemed material to the tenant's bargain. *Compare* N.J.S.A. § 2A:42-84.3 with Sugarman Dec. Ex. A (stating that building exempt "for a period of thirty years following the completion of construction"). On September 1, 2022 — after the latest possible expiration date on Plaintiff's own expert's timeline – Plaintiffs were still telling tenants in writing that "100 Warren is, indeed, exempt from Jersey City rent control." DISOF ¶ 13. And in this very action, Plaintiffs pleaded that the exemption is "perpetual." Amended Compl., ECF No. 65, ¶ 45.

The duration Plaintiffs disclosed to tenants therefore shifted from a vague thirty-year recital that omitted both endpoints, to a continued assertion of exemption past the statutory end date, to a perpetual right asserted in federal court — three positions, none of which satisfies Section 84.3's duration-disclosure requirement, and at least one of which Plaintiffs now concede was wrong. The defect is not a

---

[6] In a September 12, 2022 letter, Plaintiffs' counsel confirmed that "in order to maintain its exemption," the owner must comply with Section 84.3 of the Act. RSOF ¶ 74, Ex I at 2.

31

hypertechnical omission. It is affirmative misinformation directed at the constituency the Legislature singled out for protection.

A property owner who has not satisfied the statute's tenant-facing notice obligations cannot credibly contend that the substantial compliance doctrine should excuse its failure to satisfy the statute's municipality-facing obligations. Both deficiencies prejudice the very people the statute was designed to inform. The substantial-compliance doctrine is calibrated to forgive technical missteps; it does not exist to forgive owners who flouted multiple notice obligations and then ask the Court to pretend the statute had only one. *See Coelho ex rel. Coelho v. Petrozzino*, No. A-2205-05T3, 2007 WL 148923, at *3 (N.J. Super. Ct. App. Div. Jan. 23, 2007) ("Substantial compliance applies where equity requires it.").

Plaintiffs' fallback — that the City was not prejudiced because it received higher PILOT payments based on market rents (Pls.' Br. at 30–31) — mis-frames the prejudice inquiry. The relevant question is not whether the municipality received an incidental revenue benefit from the landlord's noncompliance; it is whether the constituencies the statute was designed to inform were deprived of information the statute deems material. They were.

Plaintiffs' final no-prejudice argument – that the Board's decision will "chill investment" and reduce affordable housing, tax revenues, and jobs in Jersey City — misses the point. Pls.' Br. at 31. Under the substantial-compliance doctrine, the

32

prejudice inquiry asks whether the opposing party was harmed by the non-complying party's failure to satisfy the statute. *See H.C. Equities, LP v. Cnty. of Union*, 247 N.J. 366, 388 (2021) (holding that "the record [did] not demonstrate a lack of prejudice to the defending party," because the relevant notice did not give the defendant party notice of the claims to be asserted). The question, therefore, is whether the City and tenants were prejudiced by Plaintiffs' failure to file a claim under Section 84.4 — not whether Plaintiffs or others may dislike the economic consequences of enforcing the statute.

### F.    Plaintiffs' Actions are Inconsistent With the Act's Purpose

Plaintiffs' final argument — that providing rental housing satisfies "the general purpose of the Act" (Pls.' Br. at 25, 31–32) — fails for both Buildings, and fails in a particularly stark way for 100 Warren.

The point is not that Plaintiffs own rental housing; that fact is undisputed. The point is that the Act provides a self-enforcement regime that conditions the rent control exemption on the developer's compliance with the statute's terms, including its filing and notice provisions, precisely because the Legislature deemed it necessary to make the exemption administrable and to give the City and tenants the information the statute deems material. N.J.S.A. 2A:42-84.4; *Willow Ridge*, 2022 WL 2525243, at *8. There was no timely Section 84.4 claim of exemption for 100

33

Warren; no claim *at all* for 155 Washington, and the duration disclosure for the tenants required by Section 84.3 was never provided. DISOF ¶¶ 8-12.

For 100 Warren, the failure runs deeper. The Act is not an open-ended license to operate outside the Ordinance; it is a maximum 30-year window bounded by limits the Legislature itself imposed. Under any reading of the record (and putting aside the failure to properly claim the exemption in the first instance), any exemption window closed for 100 Warren, a point Plaintiffs' expert readily concedes. *See* ECF No. 171-32 at ¶ 14. Section 84.4 required Plaintiffs to file a termination notice "at least 30 days prior to the date of the termination of the exemption period," N.J.S.A. § 2A:42-84.4 – i.e., no later than July 2022. Plaintiffs never did. And in this very brief, filed on April 24, 2026 — nearly four years after the latest possible expiration date — Plaintiffs still characterize the present moment as "the eve of the exemption's natural expiration." Pls.' Br. at 1. The eve has long since passed.

Taken together, this is not the conduct of a party that has complied with the Act's "general purpose;" it is the conduct of a party that treats the statute as a shield to be raised when convenient and lowered when inconvenient. Substantial compliance is an equitable doctrine, and equitable relief is unavailable to a party whose ongoing conduct flouts the very statute it asks the Court to construe in its favor.

34

## VI.    EQUITABLE ESTOPPEL DOES NOT PRECLUDE THE BOARD'S DETERMINATION

Plaintiffs' argument that the Board should have applied the doctrine of equitable estoppel (Pls.' Br. at 32-33) is similarly misguided. Equitable estoppel may be invoked against a municipality only "where interests of justice, morality and common fairness clearly dictate that course." *Middletown Tp. Policemen's Benev. Ass'n Local No. 124 v. Twp. of Middletown*, 162 N.J. 361, 367 (2000); *see also id.* ("Equitable estoppel is rarely invoked against a government entity") (cleaned up). The doctrine requires "reliance on a good faith act of an administrative official, within the ambit of that official duty." *Scardigli v. Borough of Haddonfield Zoning Bd. of Adjustment*, 300 N.J. Super. 314, 319 (App. Div. 1997). Plaintiffs' estoppel arguments fail for three independent reasons.

*First*, the Construction Official's December 1994 letter—disclaiming "jurisdiction over rent controls"—was not a representation that the Buildings were rent control exempt. It was a statement that his office did not have jurisdiction over rent controls and suggesting that Plaintiffs' predecessor contact another agency. It should have prompted the then-owner to take further action on the issue, not to abandon its Section 84.4 obligations entirely. Reliance on a disclaimer of jurisdiction as authorization not to comply with a mandatory statutory requirement is not good-faith reliance on an official act.

35

*Second*, Plaintiffs have come forward with no evidence whatsoever that the prior owner actually relied on the 1994 letter in deciding not to file the statutorily required claim with regard to 155 Washington. Reliance is not an element that can be presumed or inferred from mere proximity in time—it must be established in the record. Here, there is nothing connecting the 1994 letter to the prior owner's failure to file three years later. Plaintiffs ask this Court to simply assume that one event caused the other. That is speculation, not evidence, and speculation is insufficient. *See Foley Mach. Co. v. Amland Contractors, Inc.*, 209 N.J. Super. 70, 76 (App. Div. 1986) ("The burden of proof is on the party asserting the estoppel").

*Third*, even if the December 1994 letter could support reliance, equitable estoppel is unavailable because Plaintiffs' own conduct forecloses equitable relief. Plaintiffs have systematically refused to participate in the Act's self-enforcement architecture, *see* Section V.F, *supra*, and a party that has abandoned the statute's terms cannot invoke equity to be excused from them. Estoppel requires that the party invoking it come to the court with conduct consistent with the equities it seeks to enforce. *Hageman v. 28 Glen Park Assoc., L.L.C.*, 402 N.J. Super. 43, 48 (Ch. Div. 2008) ("The clean hands doctrine is an equitable principle which requires a denial of relief to a party who is himself guilty of inequitable conduct in reference to the matter in controversy.") (cleaned up). Plaintiffs do not. Plaintiffs' own expert concedes the 100 Warren exemption expired by August 2022. ECF No. 171-32 ¶ 14.

36

They never filed the termination notice Section 84.4 requires at the close of the exemption period, *see* N.J.S.A. § 2A:42-84.4. In this very brief, they characterize the present moment as "the eve of the exemption's natural expiration," Pls.' Br. at 1, and Plaintiffs have hid the Buildings' rent control status from tenants for years, *see* DISOF ¶¶ 9-12.

A party that flouts the Act and the Ordinance every day in 2026 cannot invoke equitable estoppel to excuse its predecessors' failures in 1992 and 1997. Estoppel is reserved for parties who approach the court with clean hands and equitable conduct, *see Hageman*, 402 N.J. Super. at 48, and Plaintiffs have neither.

## VII.  THE BOARD PROPERLY EXERCISED ITS AUTHORITY IN DIRECTING RENT RECALCULATIONS

Plaintiffs' final challenge — to the Bureau's rent recalculations — reduces to three claims: that the Bureau exceeded its authority under § 260-12(D), that its work was arbitrary and capricious under the Hosfield Report, and that the six-year lookback violates § 260-7(C). Pls.' Br. at 34-36. Each of those claims fails.

### A.  The Board Acted Within its Authority in Directing a Lookback Beyond Two Years

Plaintiffs contend that § 260-7(C) caps the Bureau's recalculation at two years and renders the Bureau's six-year lookback unlawful. Pls.' Br. at 35-36. While § 260-7(C) establishes a two-year window for filing complaints of illegal rent increases, that same subsection expressly provides that, where the Board determines

a landlord "has not served upon the tenant the rental statement set forth in § 260-1, the Board shall waive the two-year limitations period." The waiver is mandatory.

That predicate is met here. Portside did not serve tenants with the § 260-1 rental statement disclosing the legal rent and the prior tenant's rent. DISOF ¶ 14. That failure triggered § 260-7(C)'s mandatory waiver of the two-year limitations period and authorized the Bureau to recalculate lawful base rents over the six-year period Plaintiffs challenge. The Board's direction was not an excess of authority but a direct application of the Ordinance's text entitled to deference. *See Wyzykowski*, 254 N.J. Super. at 38.

Even if the two-year lookback period applies, such a determination has no bearing on Defendant Intervenors' right to seek damages over a longer period under separate causes of action — including, without limitation, claims under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*, where the limitations period is governed by independent statutory authority and is unaffected by the Ordinance's two-year filing window for administrative complaints.[7]

### B. The Hosfield Report Does Not Undermine the Bureau's Methodology or Conclusions.

---

[7] New Jersey Courts have consistently held that when a landlord collects or raises rents on tenants in violation of a local rent control ordinance, the landlord is liable for violating the NJ CFA. *See, e.g.*, *Heyert v. Taddese*, 431 N.J. Super. 388, 413 (App. Div. 2013); *Ryan v. Gina Marie, L.L.C.*, 420 N.J. Super. 215 (App. Div. 2011); *Wozniak v. Pennella*, 373 N.J. Super. 445 (App. Div. 2004).

Plaintiffs' attack on the Bureau's recalculation as "arbitrary, capricious, and unreasonable" rests entirely on the Hosfield Report, which identifies a handful of clerical issues at the margins of a recalculation spanning hundreds of units and leases. Mr. Hosfield offers no alternative recalculation, no competing methodology, and no opinion that the Bureau's approach was substantively wrong. His conclusion, that the analysis is "unreliable" (Hosfield Decl. Ex. B at 8), is a label, not a critique.

The examples he offers illustrate how minor these issues are: (1) a lease start date that was 10 days off (*id.* at 6); (2) a rent figure for one unit differing from the resident statement by roughly four percent (*id.*); (3) a duplicate entry for one unit with two competing lease start dates, readily resolved by the underlying lease (*id.*); (4) a lessee-naming error for one apartment in one period (*id.* at 7); and (5) a handful of "NO LEASE" notations for units whose lease information was not located (*id.*). These are precisely the inadvertent recordkeeping issues that arise in any large-scale data review that are easily correctable. They do not render the Bureau's methodology arbitrary, capricious, or unreasonable, and they certainly do not justify the wholesale invalidation Plaintiffs seek.

## C.    The Bureau Did Not Exceed Its Authority

Plaintiffs argue that the Bureau "exceeded its authority" under § 260-12(D) by determining that Portside was not entitled to annual CPI increases in the years for

39

which it failed to file landlord registration statements. Pls.' Br. at 34. The argument misreads both the Board's Decision and the Ordinance.

*First,* the Board did not "decline to rule" on whether unregistered years are eligible for CPI increases. It declined only to resolve disputed factual issues concerning "allegedly misfiled or inaccurate rent registration statements filed with the Bureau." Pls.' Br. at 34 (quoting Board Decision). That narrow abstention says nothing about the legal consequence of failing to file at all. Once the Board directed the Bureau to recalculate permitted base rents, the Bureau was necessarily required to apply the Ordinance year by year to determine which increases were lawfully available. That is the Bureau's core function under the Ordinance; it is not an act of supersession. *Second*, on the merits, the Ordinance imposes two distinct preconditions to any rent increase. Section 260-3(H) requires the landlord to register the rent roll with the Bureau. Section 260-3(J) requires the landlord to provide each tenant the Truth-In-Renting Statement and to be in full compliance with its landlord identity disclosure provision. The Bureau's determination that Portside is therefore not entitled to CPI increases in years it failed to satisfy either requirement is a straightforward application of the Ordinance, not an unauthorized adjudication.

## CONCLUSION

For the foregoing reasons, Defendants and Defendant-Intervenors respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment.

40

Respectfully submitted,

By: */s/ Patrick Howard*
Simon Bahne Paris (NJ ID #04982-1996)
Patrick Howard (NJ ID #02280-2001)
Joshua D. Snyder (NJ ID #02390-2001)
Benjamin J. Eichel (NJ ID #31779-2019)
**SALTZ, MONGELUZZI,**
**& BENDESKY, P.C.**
8000 Sagemore Drive, Suite 8303
Marlton, NJ 08053

1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3985
Facsimile: (215) 496-0999
Email: sparis@smbb.com
phoward@smbb.com
jsnyder@smbb.com
beichel@smbb.com

Eric J. Nemeth, Esq.
**ERIC J. NEMETH, P.C.**
NJ Attorney ID No. 00743-1990
55 Madison Avenue,
Suite 400
Morristown, NJ 07960
enemeth@ejcounsel.com

Neil D. Marotta, Esq.
**MAROTTA & GARVEY**
NJ Attorney ID No. 02478-1992
3916 Bergenline Avenue,
Suite 2200
Union City, NJ 07087
mglawyers@aol.com

*Counsel for Defendant-Intervenors*

41

**SARAH M. LEVINE**
**CORPORATION COUNSEL**

By: */s/ Philip S. Adelman*
     Philip S. Adelman
     NJ ID 015132003
**Jersey City Law Department**
280 Grove Street
Jersey City, NJ 07302
Counsel for Defendants the City of Jersey
City, the Jersey City Rent Leveling Board
and the Jersey City Bureau of Rent

*Counsel for Defendants*

42