**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| The Towers at Portside Urban Renewal Company, LLC and Equity Residential Management, LLC, | Case No. 2:23-cv-22291-MCA-JRA |
| Plaintiffs, | |
| v. | |
| The City of Jersey City, the City of Jersey City Rent Leveling Board, and the City of Jersey City Bureau of Rent Leveling | |
| Defendants, and | |
| Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch, | |
| Defendant-Intervenors. | |

**DEFENDANTS' AND DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants The City of Jersey City, the City of Jersey City Rent Leveling

Board, and the City of Jersey City Bureau of Rent Leveling, and Defendant-

Intervenors Portside Towers East Tenant Association, Portside Towers West Tenant

Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch,

pursuant to Local Rule 56.1, hereby submit this Response to Plaintiffs' Statement of Undisputed Facts in support of their Motion for Summary Judgment.

1.      Disputed. The 1987 statute referenced in Paragraph 1 only applies to "Multiple Dwellings," which the statute defines as "any building or structure and land appurtenant thereto containing four or more dwelling units, other than dwelling units constructed for occupation by senior citizens, rented or offered for rent to four or more tenants or family units." N.J.S.A. 2A:42-84.1(e). The statute does not exempt all "apartment buildings" "for a period up to 30 years."

2.      Undisputed.

3.      Undisputed in part, disputed in part. Paragraph 3 accurately quotes from N.J.S.A. §2A:42-84.5, but Plaintiffs mischaracterize the text. The purpose of the statute is to encourage the investment in and development of "newly constructed rental housing." Plaintiffs omit "rental" from their characterization of the statute.

4.      Undisputed.

5.      Undisputed.

6.      Disputed. The statute only has one section that refers to notices, and that is section 84.3. Section 84.4 addresses the requirement that the owner "claiming an exemption" from rent control "shall file with the municipal construction official . . . a written statement of the owner's claim of exemption." It does not reference a notice.

7. Undisputed.

8. Disputed. Paragraph 8 mischaracterizes the statute by selectively quoting from it. Importantly, the text makes clear that filing the claim with the municipal construction official is part of the process of obtaining the exemption. It does not discuss providing notice. The full text is provided below:

> The owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption from an ordinance under this act, including therein a statement of the date upon which the exemption period so claimed shall commence, such information as may be necessary to effectively locate and identify the multiple dwelling for which the exemption is claimed, and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed. The owner shall, at least 30 days prior to the date of the termination of the exemption period afforded pursuant to this act, file with the municipal construction official a notice of the date of termination of the exemption period for the affected multiple dwelling.

N.J.S.A. 2A:42-84.4.

9. Undisputed.

10. Undisputed.

11. Disputed. The Jersey City Ordinance (Chapter 260 of the Jersey City Municipal Code) does not include "its own requirements." Section 260-6(C) mirrors Act and incorporates it. *See id.* ("In accordance with N.J.S.A. 2A:42-84.1 et seq., L.

1987, c. 153 . . ."). The legislative history of the Exemption Statute makes clear that the Legislature intended that full compliance is required for a property to be exempt from local rent control under the Exemption Statute. *See* Ex. A, 2A:42-84.2 Legislative History Check.

12.     Undisputed.

13.     Undisputed.

14.     Undisputed.

15.     Undisputed.

16.     Undisputed.

17.     Undisputed.

18.     Undisputed.

19.     Undisputed.

20.     Undisputed.

21.     Undisputed.

22.     Undisputed in part, disputed in part. It is undisputed that the original owner completed construction of 100 Warren Street in August of 1992. Plaintiffs' characterization of the August 25, 1992 certificate of occupancy as "the initial certificate of occupancy" is disputed. There was only one certificate of occupancy issued for 100 Warren Street and that occurred on August 25, 1992. Ex. 2 to PSOF.

4

On January 24, 1995, Jersey City issued a "Certificate of Continued Occupancy" for 100 Warren Street, which is a distinct legal document. Ex. 9 to PSOF.

23.    Undisputed.

24.    Undisputed.

25.    Undisputed in part, disputed in part. It is undisputed only that Portside Apartments Urban Renewal Company purchased the property at a Sheriff's sale on November 23, 1994. The rest of the paragraph is disputed. The statement mischaracterizes the evidence. In 1992, Citibank, N.A., not "the Original Owner" foreclosed on Block 60, Lot 34. Additionally, there is nothing in the cited evidence to support the statement that the foreclosure occurred "[d]ue to unfavorable economic conditions."

26.    Disputed. As of 1998, the Buildings were condominiums. Ex. B, June 12, 1998 Deed between Portside Apartments Urban Renewal Company, L.L.C., and The Towers at Portside Urban Renewal Company, L.L.C., at 1, 6 (referring to Portside "as Residential Unit Tower 1 and Residential Unit Tower 2 and Retail Unit A situate in 'Portside, a Condominium,' established in accordance with N.J.S.A. 46:8B-1 *et seq.*"). There was no conversion. The July 19, 1996 deed for the Buildings, "Master Deed of Portside, A Condominium," describes the Portside Condominium Owners' Association, Inc. (the "Condo Association"), which will "have the responsibility for the administration, operation and management of the

Condominium, and the improvements intended for the common use and enjoyment of the residents of the Condominium." Ex. C at 4. The Condo Association continued to exist until it was revoked in February 2005 for failure to file annual reports for two consecutive years. Ex. D, Status Report for Portside Condominium Owners' Association, Inc. A copy of the July 12, 1996 Condominium Association's Certificate of Incorporation is attached hereto as Ex. E. While the successor elected to lease the units as apartments rather than sell them, the units remained structured as condominiums under the recorded Master Deed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Disputed. On January 24, 1995, the Jersey City Department of Housing & Economic Development issued a Certificate of Continued Occupancy for "Block 60, Lot 34," not "another certificate of occupancy." The two documents are legally distinct.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Undisputed in part, disputed in part. Defendant Intervenors only dispute Plaintiff's suggestion that their predecessors never filed a master deed for the

6

Buildings as condominiums. The July 19, 1996 deed for the Buildings, "Master Deed of Portside, A Condominium," clearly describes the property as condominiums. Ex. C at p.4 ("WHEREAS, this Master Deed is intended to establish the condominium form of ownership for the Property described in Schedule A aforesaid, as show in on Schedules B, C and D, to be known as Portside, A Condominium."). The Master Deed similarly describes that a condominium association will have "the responsibility for the administration, operation and management of the Condominium, and the improvements intended for the common use and enjoyment of the residents of the Condominium." *Id.*; *see also* p.5 ("Article I. Submission of Lands to the Condominium Act.").

35.    Undisputed.

36.    Undisputed.

37.    Undisputed.

38.    Undisputed.

39.    Undisputed in part, disputed in part. It is undisputed only that in recent years Portside Towers has operated as though it was exempt from Jersey City's Rent Control Ordinance. Any suggestion that Portside Towers operated as a rent-control exempt multiple dwelling in the late 1990s is denied. At that time, Portside Towers was a condominium. By way of further response, *see* Paragraph 26.

40.     Undisputed in part, disputed in part. It is undisputed that Portside has provided notice to tenants, claiming that both towers were exempt from Jersey City's rent control ordinance. Any suggestion that the notice Portside provided complied with the Exemption Statute is disputed. The Rent Control Addenda attached to tenants' leases did not comply with the Exemption Act because they failed to actually state when the relevant exemption expired and Portside continued to provide tenants with Rent Control Addenda purporting to claim exemption during a period when Portside now admits it is not exempt. *See* Ex. F, Oct. 2022 Lease at 25; Ex. G, Sept. 2022 email chain, at 6.

41.     Undisputed.

42.     Undisputed in part, disputed in part. It is undisputed that Portside Towers contains amenities such as a fitness center and tennis courts. Defendant-Intervenors dispute that these amenities were "only possible" because the property was exempt from rent control. Plaintiffs cite no competent evidence in the record supporting this causal claim.

43.     Undisputed.

44.     Undisputed.

45.     Undisputed.

46.     Undisputed.

47.     Undisputed.

48.  Undisputed.

49.  Undisputed.

50.  Disputed. The illegal rent petitions claimed the buildings were not exempt under the Act because they failed to comply with the requirement that the buildings' owner file a claim with the municipal construction official as required by Section 84.4.

51.  Disputed. The Bureau did not determine that both buildings qualified for rent control under the Exemption Statute. The Bureau concluded that 100 Warren was exempt from the Ordinance only until August 24, 2022. The Bureau concluded that 155 Washington "has been and remains exempt from rent control restrictions of the Ordinance from December 31, 1997 through December 30, 2027." Ex. 13 to PSOF.

52.  Undisputed in part, disputed in part. It is undisputed that the Bureau found the Rent Control Addenda sufficient. It is disputed that the Rent Control Addenda are legally sufficient. By way of further response, *see* paragraph 40, *supra*.

53.  Undisputed.

54.  Disputed. The paragraph misstates the Bureau's reasoning. The Bureau concluded that the owner of 100 Warren satisfied Section 84.4, because it sent the letter to the construction official "more than 30 days before initial occupancy." Ex. 12 to PSOF at 4.

55.    Undisputed.

56.    Undisputed.

57.    Undisputed.

58.    Undisputed.

59.    Undisputed.

60.    Disputed. The Bureau did not determine that both buildings qualified for rent control under the Exemption Statute. The Bureau concluded that 100 Warren was exempt from the Ordinance only until August 24, 2022. The Bureau concluded that 155 Washington "has been and remains exempt from rent control restrictions of the Ordinance from December 31, 1997 through December 30, 2027." Ex. 13 to PSOF.

61.    Undisputed.

62.    Undisputed.

63.    Undisputed.

64.    Undisputed.

65.    Undisputed.

66.    Undisputed.

67.    Undisputed in part, disputed in part. The paragraph misspells Commissioner Anthony Romano's name.

68.    Undisputed.

69.    Undisputed.

70.    Undisputed.

71.    Undisputed.

72.    Undisputed.

73.    Disputed. The Board ruled that Portside failed to comply with the requirements under N.J.S.A. 2A:42-84.4 and therefore declined to rule "on the sufficiency of the notices to tenants and allegedly misfiled or inaccurate rent registration statements filed with the Bureau." Ex. 1 at 9. The Board also determined that it "need not opine on the limitations of the mortgage documents which Tenants allege would limit the length of the exemption should it apply to either building." *Id.*

74.    Undisputed. By way of further response, Plaintiffs have similarly taken the position before the Jersey City Rent Leveling Administrator that filing the exemption claim with the municipal construction official is a condition precedent of exemption from rent control: "N.J.S.A. §2A:42-84.4 requires that, in order to become exempt from a local rent control ordinance, a multiple dwelling must issue a letter claiming said exception at least thirty (30) days prior to the issuance of the building's certificate of occupancy." Ex. H, Aug. 3, 2022, Ltr. from Jennifer L. Alexander on behalf of Portside Urban Renewal LLC c/o Equity Residential Management, LLC, at 2. Plaintiffs confirmed this position in a September 12, 2022 letter:

> Under statute, in order to maintain its exemption, the owner of a multiple dwelling must provide sufficient notice to the tenant of the building's exemption: "prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control [N.J.S.A. § 2A:42-84.3.]
>
> Additionally, "at least 30 days prior to the issuance of a certificate of occupancy," the owner must file "a written statement of [its] claim of exemption," with the municipality's construction official. N.J.S.A. § 2A:42-84.4. Providing a multiple dwelling notifies the municipality and the tenant of its exemption within the requisite time frames, then it is exempt from rent control ordinances for thirty (30) years.

Ex. I, Sept. 12, 2022, Ltr. from Jennifer L. Alexander on behalf of Portside Urban Renewal LLC c/o Equity Residential Management, LLC, at 2 (exhibits to letter omitted).

75.    Undisputed.

76.    Undisputed.

77.    Undisputed in part, disputed in part. It is undisputed that the paragraph accurately quotes from the Board's decision. Defendant-Intervenors dispute the characterization of the Board's decision as retroactively stripping Portside Towers of the exemption. The decision did not strip Portside Towers of anything; it merely found that the Buildings were not exempt under the Act because they failed to comply with its requirements.

78.     Undisputed.

79.     Undisputed.

80.     Undisputed.

81.     Undisputed.

82.     Undisputed.

83.     Undisputed.

84.     Undisputed.

Respectfully submitted,

By: */s/ Patrick Howard*
    Simon Bahne Paris (NJ ID #04982-1996)
    Patrick Howard (NJ ID #02280-2001)
    Joshua D. Snyder (NJ ID #02390-2001)
    Benjamin J. Eichel (NJ ID #31779-2019)
    **SALTZ, MONGELUZZI,**
    **& BENDESKY, P.C.**
    8000 Sagemore Drive, Suite 8303
    Marlton, NJ 08053

    1650 Market Street, 52nd Floor
    Philadelphia, PA 19103
    Telephone: (215) 575-3985
    Facsimile: (215) 496-0999
    Email: sparis@smbb.com
    phoward@smbb.com
    jsnyder@smbb.com
    beichel@smbb.com

    Eric J. Nemeth, Esq.
    **ERIC J. NEMETH, P.C.**
    NJ Attorney ID No. 00743-1990
    55 Madison Avenue, Suite 400
    Morristown, NJ 07960

enemeth@ejcounsel.com

Neil D. Marotta, Esq.
**MAROTTA & GARVEY**
NJ Attorney ID No. 02478-1992
3916 Bergenline Avenue,
Suite 2200
Union City, NJ 07087
mglawyers@aol.com

*Counsel for Defendant-Intervenors*

**SARAH M. LEVINE
CORPORATION COUNSEL**

*By: /s/ Philip S. Adelman*
     Philip S. Adelman
     NJ ID 015132003
**Jersey City Law Department**
280 Grove Street
Jersey City, NJ 07302
Counsel for Defendants the City of Jersey
City, the Jersey City Rent Leveling Board,
and the Jersey City Bureau of Rent Leveling
*Counsel for Defendants*

14