# EXHIBIT A

# 2A:42-84.2

**LEGISLATIVE HISTORY CHECK**
Compiled by the NJ State Law Library

**LAWS OF**:    **1999**        **CHAPTER:**  291

**NJSA:**        2A::42--84.2          ( Rent control exemptions)

**BILL NO**:    S1235        (Substituted for A2236)

**SPONSOR(S):**  Cardinale & Connors

**DATE INTRODUCED**:    June 25, 1998

**COMMITTEE:**        **ASSEMBLY:**    ---

                **SENATE:**    **Community and Urban Affairs**

**AMENDED DURING PASSAGE:**

**DATE OF PASSAGE:**        **ASSEMBLY:**    **November 15, 1999**

                **SENATE:**    May 10, 1999

**DATE OF APPROVAL:**        December 23, 1999

**FOLLOWING ARE ATTACHED IF AVAILABLE:**

**FINAL TEXT OF BILL:**
(Amendments during passage denoted by superscript numbers)

## S1235

| | | |
|---|---|---|
| **SPONSORS STATEMENT**: (Begins on page 3 of original bill) | | Yes |
| **COMMITTEE STATEMENT:** | **ASSEMBLY**: | No |
| | **SENATE:** | Yes |
| **FLOOR AMENDMENT STATEMENTS:** | | No |
| **LEGISLATIVE FISCAL ESTIMATE:** | | No |

## A2236

| | | |
|---|---|---|
| **SPONSORS STATEMENT**: (Begins on page 3 of original bill) | | Yes |
| | | Bill and Sponsors statement identical to S1235 |
| **COMMITTEE STATEMENT:** | **ASSEMBLY:** | Yes |
| | **SENATE:** | No |
| **FLOOR AMENDMENT STATEMENTS:** | | No |
| **LEGISLATIVE FISCAL ESTIMATE:** | | No |

(continued)

**VETO MESSAGE:**                                              No

**GOVERNOR'S PRESS RELEASE ON SIGNING:**                       Yes

**FOLLOWING WERE PRINTED:**
To check for circulating copies, contact New Jersey State Government
Publications at the State Library (609) 633-2111 or blupp@njstatelib.org

**REPORTS:**                                                   No

**HEARINGS:**                                                  No

**NEWSPAPER ARTICLES:**                                        No

§3 - Note

P.L. 1999, CHAPTER 291, *approved December 23, 1999*
Senate, No. 1235

**AN ACT** concerning certain exemptions from municipal rent control and rent leveling ordinances and amending P.L.1987, c.153.

**BE IT ENACTED** *by the Senate and General Assembly of the State of New Jersey:*

1. Section 2 of P.L.1987, c.153 (C.2A:42-84.2) is amended to read as follows:

2. a. In any municipality which has enacted or which hereafter enacts a rent control or rent leveling ordinance, other than under the authority of P.L.1966, c.168 (C.2A:42-74 et seq.), those provisions of the ordinance which limit the periodic or regular increases in base rentals of dwelling units shall not apply to multiple dwellings constructed after the effective date of this act, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less.
b.  In the event that there is no initial mortgage financing, the period of exemption from a rent control or rent leveling ordinance shall be 30 years from the completion of construction.
(cf:  P.L.1987, c.153, s.2)

2. Section 5 of P.L.1987, c.153 (C.2A:42-84.5) is amended to read as follows:

5. a. It is the intent of [this act] P.L.1987, c.153 (C.2A:42-84.1 et seq.), that the exemption from rent control or rent leveling ordinances afforded under [this act] P.L.1987, c.153 (C.2A:42-84.1 et seq.) shall apply to any form of rent control, rent leveling or rent stabilization, whether adopted now or in the future, and by whatever name or title adopted, which would limit in any manner the periodic or regular increases in base rentals of dwelling units of multiple dwellings constructed after the effective date of [this act] P.L.1987, c.153 (C.2A:42-84.1 et seq.).  No municipality, county or other political subdivision of the State, or agency or instrumentality thereof, shall adopt any ordinance, resolution, or rule or regulation, or take any other action, to limit, diminish, alter or impair any exemption afforded pursuant to [this act] P.L.1987, c.153 (C.2A:42-84.1 et seq.).
b.  The Legislature deems it to be necessary for the public welfare to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey.  In an effort to promote this new construction, the Legislature enacted P.L.1987, c.153 (C.2A:42-84.1

**EXPLANATION - Matter enclosed in bold-faced brackets [thus] in the above bill is not enacted and is intended to be omitted in the law.**

**Matter underlined thus is new matter.**

S1235

2

et seq.), the purpose of which was to exempt new construction of rental multiple dwelling units from municipal rent control so that the municipal rent control or rent leveling ordinances would not deter the new construction. Although this legislation was initially made effective only for a temporary five-year period, it was expanded for a second five-year period by P.L.1992, c.206 until 1997, and then in that year made permanent by P.L.1997, c.56. At the time P.L.1987, c.153 (C.2A:42-84.1 et seq.) was introduced, the uniform method of financing construction of new apartments was through project-based mortgage loans. There was little, if any, new construction financed in any other way. Recently, however, there has been increased utilization of Real Estate Investment Trusts (REITs) and other public companies which could potentially be an important new source of construction of rental housing in New Jersey. These entities generally do not utilize project-based mortgages but instead obtain comprehensive financing not secured by individual mortgages as a more efficient and lower cost means of financing new construction. There has been confusion as to whether new construction undertaken by REITs and other such entities would be exempted from municipal rent control under the terms of section 2 of P.L.1987, c.153 (C.2A:42-84.2) when there is no initial mortgage financing. To eliminate any confusion and to facilitate the construction of new rental units for which there is no initial mortgage financing, section 1 of P.L.    , c.    (now pending before the Legislature as this bill) amends section 2 of P.L.1987, c.153 (C.2A:42-84.2) to add a subsection b. to that section in order to clarify the Legislature's intent of providing an exemption from municipal rent control ordinances, except those adopted under the authority of P.L.1966, c.168 (C.2A:42-74 et seq.), by specifying that the period of time for exemption from rent control in such instances shall be 30 years following completion of construction.

(cf: P.L.1987, c.153, s.5)

3. This act shall take effect immediately and shall be applicable to all multiple dwellings or portions of multiple dwellings for which construction was completed prior to the effective date of this act, provided that the owner of the multiple dwellings has fully complied with the requirements of section 4 of P.L.1987, c.153 (C.2A:42-84.4).

STATEMENT

This bill is intended to clarify the original intent of the Legislature to provide an exemption from non-senior citizen municipal rent control ordinances for all new rental multiple dwelling unit construction, regardless of whether or not there was an initial mortgage loan to finance the construction. Under current law, the term of the

S1235
3

exemption is the period of amortization of the initial mortgage loan. Real Estate Investment Trusts (REITs) and other public companies are now being used to construct new rental multiple dwelling units without initial mortgage financing. Since there is no amortization period to delineate the term of the municipal rent control exemption there has been confusion as to whether these entities were intended to be eligible for the exemption. This bill makes clear that the period of exemption from municipal rent control ordinances shall be 30 years from the completion of construction when there is no initial mortgage loan.

_____

Clarifies 30-year rent control exemption for certain rental multiple dwelling units constructed without initial mortgage financing.

S1235 CARDINALE, CONNORS

3

municipal rent control or rent leveling ordinances would not deter the new construction. Although this legislation was initially made effective only for a temporary five-year period, it was expanded for a second five-year period by P.L.1992, c.206 until 1997, and then in that year made permanent by P.L.1997, c.56. At the time P.L.1987, c.153 (C.2A:42-84.1 et seq.) was introduced, the uniform method of financing construction of new apartments was through project-based mortgage loans. There was little, if any, new construction financed in any other way. Recently, however, there has been increased utilization of Real Estate Investment Trusts (REITs) and other public companies which could potentially be an important new source of construction of rental housing in New Jersey. These entities generally do not utilize project-based mortgages but instead obtain comprehensive financing not secured by individual mortgages as a more efficient and lower cost means of financing new construction. There has been confusion as to whether new construction undertaken by REITs and other such entities would be exempted from municipal rent control under the terms of section 2 of P.L.1987, c.153 (C.2A:42-84.2) when there is no initial mortgage financing. To eliminate any confusion and to facilitate the construction of new rental units for which there is no initial mortgage financing, section 1 of P.L.    , c.    (now pending before the Legislature as this bill) amends section 2 of P.L.1987, c.153 (C.2A:42-84.2) to add a subsection b. to that section in order to clarify the Legislature's intent of providing an exemption from municipal rent control ordinances, except those adopted under the authority of P.L.1966, c.168 (C.2A:42-74 et seq.), by specifying that the period of time for exemption from rent control in such instances shall be 30 years following completion of construction.

(cf:  P.L.1987, c.153, s.5)

3. This act shall take effect immediately and shall be applicable to all multiple dwellings or portions of multiple dwellings for which construction was completed prior to the effective date of this act, provided that the owner of the multiple dwellings has fully complied with the requirements of section 4 of P.L.1987, c.153 (C.2A:42-84.4).

STATEMENT

This bill is intended to clarify the original intent of the Legislature to provide an exemption from non-senior citizen municipal rent control ordinances for all new rental multiple dwelling unit construction, regardless of whether or not there was an initial mortgage loan to finance the construction. Under current law, the term of the exemption is the period of amortization of the initial mortgage loan. Real Estate Investment Trusts (REITs) and other public companies are

**S1235** CARDINALE, CONNORS

4

now being used to construct new rental multiple dwelling units without initial mortgage financing. Since there is no amortization period to delineate the term of the municipal rent control exemption there has been confusion as to whether these entities were intended to be eligible for the exemption. This bill makes clear that the period of exemption from municipal rent control ordinances shall be 30 years from the completion of construction when there is no initial mortgage loan.

Case 2:23-cv-22291-MCA-JRA    Document 173-2    Filed 05/22/26    Page 9 of 13 PageID: 3761

# ASSEMBLY LOCAL GOVERNMENT AND HOUSING COMMITTEE

## STATEMENT TO

## ASSEMBLY, No. 2236

# STATE OF NEW JERSEY

## DATED: DECEMBER 3, 1998

**The Assembly Local Government and Housing Committee reports favorably Assembly Bill No. 2236.**

**This bill is intended to clarify the original intent of the Legislature to provide an exemption from non-senior citizen municipal rent control ordinances for all new rental multiple dwelling unit construction, regardless of whether or not there was an initial mortgage loan to finance the construction. Under current law, the term of the exemption is the period of amortization of the initial mortgage loan. Real Estate Investment Trusts (REITs) and other public companies are now being used to construct new rental multiple dwelling units without initial mortgage financing. Since there is no amortization period to delineate the term of the municipal rent control exemption there has been confusion as to whether these entities were intended to be eligible for the exemption. This bill makes clear that the period of exemption from municipal rent control ordinances shall be 30 years from the completion of construction when there is no initial mortgage loan.**

SENATE COMMUNITY AND URBAN AFFAIRS COMMITTEE

## STATEMENT TO

## SENATE, No. 1235

# STATE OF NEW JERSEY

### DATED: DECEMBER 17, 1998

The Senate Community and Urban Affairs Committee reports favorably Senate Bill No. 1235.

This bill would exempt new rental multiple dwelling units, which are not initially constructed subject to mortgage financing, from rent control and rent leveling ordinances for 30 years from the completion of construction. The bill would not be applicable to multiple dwelling units constructed for occupation by senior citizens and to ordinances adopted pursuant to P.L.1966, c.168 (C.2A:42-74 et seq.) concerning substandard multiple dwellings.

Under current law, the term of the exemption from rent control and rent leveling for newly constructed multiple dwellings is the lesser of the period of amortization of the initial mortgage loan or for 30 years following completion of construction. Real Estate Investment Trusts (REITs) and other public companies are now being used to construct new rental multiple dwelling units without initial mortgage financing. Since there is no amortization period to delineate the term of the municipal rent control exemption there has been confusion as to whether these entities are intended to be eligible for the exemption. This bill would clarify that the period of exemption from municipal rent control and rent leveling ordinances is 30 years from the completion of construction when there is no initial mortgage loan.

Because this bill seeks to clarify a provision of current law it would take effect immediately and be applicable to multiple dwelling units constructed prior to the effective date so long as the owner of the multiple dwelling filed a claim for exemption from the provisions of a rent control or rent leveling ordinance pursuant to the provisions of section 4 of P.L.1987, c.153 (C.2A:42-84).

This bill is identical to Assembly Bill No. 2236 which is currently pending before the General Assembly.

Case 2:23-cv-22291-MCA-JRA    Document 173-2    Filed 05/22/26    Page 11 of 13
PageID: 3763

# Office of the Governor

## NEWS RELEASE

PO BOX 004
TRENTON, NJ 08625

CONTACT: Jayne O'Connor
Laura Otterbourg
609-777-2600

RELEASE: December 23, 1999

### Governor Signs Bill to Protect Homeowners, Bill Connected to Death Penalty, among other Legislation

Governor Christie Whitman today signed legislation prohibiting the cancellation and non-renewal of homeowners' insurance because of claims or losses resulting from weather- related damage or a third party criminal act. The Governor also signed legislation allowing family members of the murder victim to attend the condemned person's execution.

Protection for Homeowners
"This piece of legislation is important in that it protects homeowners from factors that are outside of their control and no fault of their own," said Gov. Whitman. "When people have weather- related damage at home because of a severe storm, for instance, they should be able to count on the fact that an insurer does not have the right to cancel or not renew their policy."

This bill also includes claims or losses that result from a third party criminal act committed by a non-resident of the insured dwelling, and like weather-related damage, it is beyond the homeowner's control. It applies only to owner-occupied, one to four family dwellings.

Yet the bill outlines that insurers are able to offer coverage on different terms and conditions if the insured has failed to reduce the risk of future claims, such as not making repairs if they were needed.

Under previous law, insurers were able to use their own underwriting guidelines; they could cancel or not renew a homeowner's insurance policy based upon a weather-related or criminal act claim during the policy year.

The legislation, SCS for **S-950** and **S-1099**, was sponsored by Senators Anthony R. Bucco (R-Morris), Dr. Gerald Cardinale (R- Bergen) and Raymond J. Lesniak (D-Union) and Assembly Members Neil M. Cohen (D-Union) and Joseph Suliga (D-Union).

Recommendation to Death Penalty
"I feel it's only right that family members of a murder victim be allowed to attend the condemned person's execution - if that is something they choose to do," said Gov. Whitman. "While this bill doesn't ease the pain and suffering of a murder victim's family, these people are hurting enough - and we should grant them this wish, especially after all they have been through."

Including a recommendation from the Report by the Governor's Study Commission

on the Implementation of the Death Penalty, the bill amends the law concerning executions to allow members of the murder victim's family, as well as the condemned person's family, to attend the execution. Specifically, it permits two adult members of the condemned person's immediate family to be present at the condemned person's request. The bill also allows four adult members of the victim's family to be present, but prohibits disclosure of their names. And it reduces the number of physicians who must be present from two to one and reduces the number of members of the press from eight to four.

Under the previous law, both the families of the accused and the victim were prevented from attending the execution. Another provision that allows six citizen witnesses from attending still remains in the legislation.

The legislation, **A-2439**, was sponsored by Assembly Members Guy F. Talarico (R-Bergen) and Rose M. Heck (R-Bergen) and Senators Norman M. Robertson (R-Essex/Passaic) and Robert W. Singer (R-Burlington/Monmouth/Ocean).

In addition, Gov. Whitman today signed these pieces of legislation:

**A-2099**, sponsored by Assemblyman E. Scott Garrett (R- Sussex/Hunterdon/Morris), clarifies the rights of campground facilities. The bill grants the owner of a private campground facility a lien upon the personal property (located at the facility) of a campground occupant for rent, labor or other reasonable charges due under the rental agreement. Personal property is defined as any property not affixed to the land, such as recreational vehicles, trailers, boats, tents and their contents. Also, in order to provide the campground owners with a more effective means to deal with rowdy or abusive campers, the bill says that an owner may have an occupant removed if the occupant is in violation of the terms of a rental agreement.

**A-194**, sponsored by Assembly Members George F. Geist (R- Camden/Gloucester) and Gerald J. Luongo (R-Camden/ Gloucester) and Senators John J. Matheussen (R-Camden/Gloucester) and Andrew R. Ciesla (R-Monmouth/Ocean), imposes an additional penalty in certain drug-related cases and provides for deposit of such penalties in the Drug Abuse Education Fund. The bill imposes a penalty of $50 on persons who are admitted to supervisory treatment pursuant to the Pre-Trial Intervention Program or who receive a conditional discharge for drug-related offenses.

**A-2269**, sponsored by Assemblyman Bagger (R-Middlesex /Morris / Somerset/Union) makes changes to the law concerning certification of municipal tax collectors.

NJ *InTouch*

Nielsa's Law, **A-17**, was sponsored by Assembly Members Jack Collins (R-Salem/Cumberland/Gloucester) and Melvin Cottrell (R-Burlington/Monmouth/Ocean) and Senators Diane B. Allen (R-Burlington/Camden), Dr. Gerald Cardinale (R-Bergen) and Raymond J. Zane (D-Salem/Cumberland/Gloucester).

**Senior Citizens Fraudulent Claims Act**

Referring to her passage of the Senior Citizens Fraudulent Claims Act, Gov. Whitman said "We need to protect the many faces in our New Jersey family – and that includes our elderly family members. Our state has one of the largest senior citizen populations in the nation – and it's growing. That's why I applaud this Act and its goal of protecting our seniors from fraud."

Introduced following a Feb.1997 report by the Division of Consumer Affairs' Elder Fraud Task Force, the Senior Citizens Fraudulent Claims Act applies to seniors over 60 years old and aims to amend the New Jersey Consumer Fraud Act through enhanced penalties for fraud.

If the Attorney General's Office were to successfully bring an action to enforce the Consumer Fraud Act on behalf of a senior citizen, the courts will now have to order restitution at twice the amount wrongfully acquired from the senior citizen. Also, any person who fails to make such a court-ordered restitution is subject to punishment for criminal contempt. The bill amends the Consumer Fraud Act to clarify that any penalties imposed under the Act are to be exclusive of (and in addition to) any monies or property that are ordered to be paid or restored.

The Senior Citizens Fraudulent Claims Act legislation, **A-1512**, was sponsored by Assembly Members Joseph R. Malone (R-Burlington/Monmouth/Ocean) and Melvin Cottrell (R-Burlington/Monmouth/Ocean) and Senator Norman M. Robertson (R-Essex/Passaic).

In addition, Gov. Whitman signed today these pieces of legislation:

**S-1235**, sponsored by Senators Dr. Gerald Cardinale (R-Bergen) and Leonard T. Connors (R-Atlantic/Burlington/Ocean) and Assemblyman John V. Kelly (R-Bergen/Essex/Passaic), clarifies the 30-year rent control exemption for certain rental multiple dwelling units constructed without initial mortgage financing. The bill's purpose is to increase the availability of newly constructed rental housing for New Jersey residents and clarify the original intent of the Legislature in providing this exemption when it was enacted in 1987.

**S-1808**, sponsored by Senator Dr. Gerald Cardinale (R-Bergen) and Assembly Members Jeffrey W. Moran (R-Atlantic/Burlington/Ocean) and Anthony Impreveduto (D-Bergen/Hudson), exempts fair market value commercial leases and terminal rental adjustment clause (TRAC) leases from the provisions of the "Consumer Protection Leasing Act." The initiative is designed to increase leasing opportunities for State businesses as it recognizes that the consumer protections in the Act are not needed for businesses that establish "bargained-for" contracts. Most other states, including New York and California, exempt commercial leases from their leasing statutes.

**ACS, A-1352 and A-200**, sponsored by Assembly Members Carol J. Murphy (R-Essex/Morris/Passaic), Alan M. Augustine (R-Middlesex/Morris/Somerset/Union), George F. Geist (R-Camden/Gloucester), Nicholas Asselta (R-Cape May/Atlantic/Cumberland) and Charles K. Zisa (D-Bergen) and Senator John J. Matheussen (R-Camden/Gloucester), clarifies the crime of hindering a prosecution. Hindering is a crime of the third or fourth degree, or a disorderly persons offense, depending on the underlying circumstances. The bill amends the statute to say that hindering: 1) is when a person provides false information to a police officer regardless of whether the information is volunteered or is in response to an inquiry; (2) applies when false information is

*News releases are also available on our Website at: www.state.nj.us*