# EXHIBIT I

## GRIFFIN ga Alexander p.c. | *Attorneys at Law*

**Jennifer L. Alexander** †

---

**Logan R. D. Stagnitto** \*\*\*

**Alan M. DiDino** \*\*\*

Suzanne L. Reilly \*\*

Matthew Meyers \*

Henry A. Rudorfer \*\*\*

Glenford W. Warmington †

Victoria A. Lazaro \*\*\*

Anthony P. Farber \*\*\*

Jonathan Lugo \*

William Rodriguez \*

Kyle E. Grabowski \*

Anthony J. Recchia \*

Kevin Michael Rigoli \*

Daniel Karimi \*

OF COUNSEL

Robert C. Griffin \*\*\*

James B. Griffin ◊

Stephanie Wiegand \*\*\*

 \* Member: NJ Bar
 \*\* Member: NY Bar
\*\*\* Member: NJ & NY Bar
 ◊ Member: NJ & PA Bar
 † Member: NJ, NY & PA Bar

REPLY TO:

415 Route 10, 2nd Floor
Randolph, New Jersey 07869
www.lawgapc.com
Phone: 973.366.1188
Fax: 973.366.4848
attorneys@lawgapc.com

197 Route 18 South
Suite 3000, South Wing
East Brunswick, NJ 08816
Phone: 732.514.6601

11 Broadway, Suite 615
New York, New York 10004
Phone: 212.374.9790
Fax: 646.998.8029

September 12, 2022

***Via Email and Lawyer Service***
Dinah E. Hendon, Director/Rent Leveling Administrator
City of Jersey City
Department of Housing, Economic Development and Commerce
Division of Housing Preservation
Office of Landlord Tenant Relations
39 Kearny Avenue
Jersey City, New Jersey 07305
*email:* Landlord-Tenant@jcnj.org

>  **RE:**   **Portside Urban Renewal LLC, c/o Equity Residential Management, LLC**
>  **Kevin Weller**
>  **155 Washington Street, Apartment 2102**
>  **Rent Increase Dispute – Response**
>  **Our File No.: E-438 | Case No.: R22-044**

Dear Ms. Hendon:

As you are aware, my office represents Equity Residential Management, LLC, agent for Portside Urban Renewal LLC, the owner of Portside Towers ("Portside Towers"). Thank you for reaching out regarding the petition filed by Kevin Weller (the "Complainant").

Enclosed as **Exhibit A**, you will find the Complainant's most recent lease, which has a start date of April 19, 2021, and an end date of July 18, 2022. This lease indicates a monthly rent of $4,534.00. Recently, Portside Towers provided the Complainant with a renewal offer for rent in the amount of $6,102.00. This increase amounts to approximately 34.58%, which is reflective of market conditions at the current time.

If Portside Towers were subject to rent control, this increase would be in excess of the percent permitted by Jersey City's Rent Control Ordinance, which caps increases at four percent (4%). JERSEY CITY, N.J., CODE OF ORDINANCES ch. 260, § 260-3.A. However, as the Office of Landlord Tenant Relations is aware, Portside Towers maintains that it is exempt from said rent control ordinance pursuant state statue and pursuant to its location within Jersey City.

**I.    PORTSIDE TOWERS HAS PROVIDED THE APPROPRIATE DOCUMENTATION TO QUALIFY FOR A RENT CONTROL EXEMPTION UNDER N.J.S.A. § 2A:42-84.1, *ET SEQ.***

Pursuant to N.J.S.A. § 2A:42-84.1, *et seq.*, a newly constructed multiple dwelling can exempt itself from local rent control ordinances for a period of thirty (30) years, provided it completes certain prerequisites.

RE:   **Portside Urban Renewal LLC, c/o Equity Residential Management, LLC**
      **Kevin Weller**
      **155 Washington Street, Apartment 2102**
      **Rent Increase Dispute – Response**
      **Our File No.: E-438 | Case No.: R22-044**
      **Page 2 of 7**

Under statute, in order to maintain its exemption, the owner of a multiple dwelling must provide sufficient notice to the tenant of the building's exemption:

> prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control . . . .
>
> [N.J.S.A. § 2A:42-84.3.]

Additionally, "at least 30 days prior to the issuance of a certificate of occupancy," the owner must file "a written statement of [its] claim of exemption," with the municipality's construction official. N.J.S.A. § 2A:42-84.4. Providing a multiple dwelling notifies the municipality and the tenant of its exemption within the requisite time frames, then it is exempt from rent control ordinances for thirty (30) years.

A.   **PORTSIDE TOWERS APPROPRIATELY NOTIFIED THE COMPLAINANT OF ITS RENT CONTROL EXEMPTION PURSUANT TO N.J.S.A. § 2A:42-84.3.**

Included within the Complainant's lease is a Rent Control Addendum (enclosed separately as **Exhibit B** for ease of reference). The Rent Control Addendum reads, in relevant part, as follows:

> Pursuant to N.J.S.A. 2A:42-84.3, we hereby notify you that the Premises and the Community are exempt from the provisions of any rent control ordinances instituted by Jersey City or West New York, as the case may be, and said Premises and Community will be exempt from any future rent control, rent stabilization or rent leveling ordinance instituted by these municipalities for a period of thirty years following the completion of construction at the Community.

By virtue of providing this Rent Control Addendum to the Complainant, Portside Towers has fulfilled its requirement pursuant to N.J.S.A. § 2A:42-84.3. Notably, Portside Towers' application forms also contains similar notification language, ensuring that this requirement was met in two (2) separate ways.

Griffin **ga** Alexander P.C. | *Attorneys at Law*

RE:   **Portside Urban Renewal LLC, c/o Equity Residential Management, LLC**
**Kevin Weller**
**155 Washington Street, Apartment 2102**
**Rent Increase Dispute – Response**
**Our File No.: E-438 | Case No.: R22-044**

**Page 3 of 7**

**B.   PORTSIDE TOWERS APPROPRIATELY NOTIFIED JERSEY CITY'S CONSTRUCTION OFFICIAL OF ITS RENT CONTROL EXEMPTION PURSUANT TO <u>N.J.S.A.</u> § 2A:42-84.4.**

Further, enclosed with this correspondence as **Exhibit C**, is a copy of the initial rent control exemption notice filed with Jersey City's Construction Code Official pursuant to <u>N.J.S.A.</u> § 2A:42-84.4. This Letter of Exemption was dated November 23, 1994. This Letter of Exemption predates the Certificate of Occupancy, enclosed as **Exhibit D**, for the building located at 155 Washington Street, which was issued on December 31, 1997. Consequently, Portside Towers has fulfilled its requirement under <u>N.J.S.A.</u> § 2A:42-84.4.

Portside Towers is one complex. All residents are part of the same Portside Towers Community. The Letter of Exemption identifies the address of the Community as 1 Washington Street. Likewise, the Certificate of Occupancy lists that same address. If the purpose of the Letter of Exemption is to inform Jersey City and its construction code officials that a property is claiming an exemption from the Rent Control Ordinance, and to allow those officials to contest such a claim of exemption if they so choose, then certainly that purpose was served by the Letter of Exemption filing. <u>This is especially true when considered in light of the fact that the earlier-opened building (now known as the 100 Warren building), had been operating as exempt from the Rent Control Ordinance since its initial multi-family occupancies</u>.

In the alternative—and only if the Office of Landlord Tenant Relations finds that the Letter of Exemption does not suffice to serve its purpose with respect to the building now known as 155 Washington—then Portside Towers contends that the weight of the evidence suggests that the Letter of Exemption was in fact filed, but Jersey City has yet to locate it in its records. This position is supported by the following facts:

(1) the building now known as 100 Warren was completed and converted to an apartment use by the same developer as the building now known as 155 Washington;

(2) the November 1994 Letter of Exemption was not initially located by the City upon our initial request;

(3) the Certificate of Occupancy dated January 24, 1995, for the building now known as 100 Warren was similarly not located by the City;

(4) it is unlikely that the developer would have filed the November 1994 letter and not filed a second Letter of Exemption were one required; and

RE:    **Portside Urban Renewal LLC, c/o Equity Residential Management, LLC**
**Kevin Weller**
**155 Washington Street, Apartment 2102**
**Rent Increase Dispute – Response**
**Our File No.: E-438 | Case No.: R22-044**

**Page 4 of 7**

(5) Portside Towers has operated as exempt from rent control since it opened over two decades ago, and no one from any City department has ever found its exemption from rent control to be invalid.

Notably, while Jersey City eventually procured the August 25, 1992, Certificate of Occupancy for the 100 Warren building (enclosed as **Exhibit E**), it did not locate the Certificate of Continued Occupancy dated January 24, 1995 (enclosed as **Exhibit F**). It remains possible that other relevant documentation may be located within Jersey City's archives that has not yet been uncovered.[1]

## II.    JERSEY CITY IS EQUITABLY ESTOPPED FROM REVOKING PORTSIDE TOWERS' RENT CONTROL EXEMPTION.

Portside Towers has been exempted from Jersey City's rent control ordinances and has been operating as such for years. The rent increases Portside Towers has issued to its tenants were not governed by Jersey City's Rent Control Ordinance. If Portside Towers is *not* exempt from rent control, then Jersey City has failed to enforce its own ordinances for over two (2) decades. Consequently, it is evident that Jersey City was operating under the assumption that Portside Towers was exempt from rent control pursuant to N.J.S.A. § 2A:42-84.6, pursuant to Section 260-1 of its own ordinances, or both. To now subject Portside Towers to the rent control ordinance is contrary to law, policy, and fundamental fairness.

Moreover, any deficiency in documentation of this type should not prevent Portside Towers from claiming the rent control exemption. The Appellate Division has already ruled on a similar issue. In the case of Block 268, LLC v. City of Hoboken Rent Leveling & Stabilization Bd., Hoboken argued, *inter alia*, that a landlord's claim of exemption filed with the municipal construction official was defective. 401 N.J. Super. 563, 569 (App. Div. 2008). However, the landlord's claim of exemption had never previously been challenged. Ibid. Ultimately, the court determined that a "technical non-conformity is excusable under the equitable doctrine of substantial compliance." Id., at 569-70. As such, the court ruled that the landlord was entitled to retain the rent control exemption. Id., at 572-73.

Likewise, even if the Office of Landlord Tenant Relations believes there to be some deficiency in the documentation demonstrating Portside Towers' exemption, the

---

[1] Portside Towers and its Counsel continue to investigate this matter and to communicate with the City Clerk and others with respect to whether another Letter of Exemption was filed specific to the 155 Washington building. While Portside Towers does not believe that filing is critical to a finding that the building is exempt from rent control, it reserves its right to further supplement this response should additional relevant facts be brought to light.



RE:    Portside Urban Renewal LLC, c/o Equity Residential
         Management, LLC
         Kevin Weller
         155 Washington Street, Apartment 2102
         Rent Increase Dispute – Response
         Our File No.: E-438 | Case No.: R22-044

         Page 5 of 7

fact remains that Jersey City has not challenged Portside Towers' exemption over several decades. Moreover, because all parties have been appropriately operating as if the exemption was in place during this time, any discrepancy decades ago should be viewed as "excusable under the equitable doctrine of substantial compliance."

In the present matter, Portside Towers and the Office of Landlord Tenant Relations have identified Portside Towers' claim of exemption. Portside Towers has shown that its letter claiming such exemption predated the certificate of occupancy for the building. Portside Towers has shown that it has provided the requisite notice in the Complainant's lease agreement. Consequently, it should be plain that Portside Towers is, has been, and should remain exempt from Jersey City's Rent Control Ordinance. However, even if the Office of Landlord Tenant Relations believes said documentation to been insufficient to make a claim for exemption, Portside Towers should nonetheless remain exempt. Because Jersey City has permitted Portside Towers to operate with a rent control exemption pursuant to this documentation for years—and because Jersey City has failed to identify any alleged deficiency in Portside Towers' claim until very recently—Jersey City should be equitably estopped from revoking Portside Towers' claim of exemption.

### III.    ANY ERRORS IN PORTSIDE TOWERS' ANNUAL REGISTRATION DO NOT AFFECT ITS ELIGIBILITY FOR A RENT CONTROL EXEMPTION.

Portside Towers' Annual Landlord Registration Statements in recent years has stated that the property is currently subject to rent control. This inadvertent misstatement, however, does not erase Portside Towers' exemption from Jersey City's Rent Control Ordinances.

While Portside Towers may have mistakenly indicated that it was subject to rent control in its annual Registration Statements, that was a clerical error and cannot in any event invalidate State law. As discussed *supra*, Portside Towers has fulfilled all state requirements for its exemption from local rent control ordinances. Filing an Annual Landlord Registration Statement is not a requirement for an exemption under State law. Likewise, a clerical error when filing said Annual Landlord Registration Statement does not invalidate the exemption provided by State law.

Significantly, such a registration statement is not a document which the Complainant would have seen prior to applying for an initial lease, signing a lease, or preparing for the instant complaint. Put another way, the Complainant signed the initial lease agreement having been informed that Portside Towers was exempt

RE:   Portside Urban Renewal LLC, c/o Equity Residential
      Management, LLC
      Kevin Weller
      155 Washington Street, Apartment 2102
      Rent Increase Dispute – Response
      Our File No.: E-438 | Case No.: R22-044
      **Page 6 of 7**

from the local rent control ordinance and cannot claim to have relied in any way on the erroneous Registration Statements.

Regarding Portside Towers' claim of exemption, New Jersey law states in pertinent part that "within the limitations imposed by this act, the exemptions granted under this act shall not be limited, diminished, altered, or impaired during the period of exemption afforded . . . ." N.J.S.A. § 2A:42-84.6. By extension, it would be inappropriate to remove Portside Towers' rent control exemption until such time as it naturally expires.

**IV.   PORTSIDE TOWERS IS EXEMPT FROM JERSEY CITY'S RENT CONTROL ORDINANCE BECAUSE OF ITS LOCATION WITHIN A REDEVELOPMENT AREA.**

In addition to its exemption pursuant to N.J.S.A. § 2A:42-84.1, *et seq.*, Portside Towers further maintains that the building is also exempt based on its location within the City. Jersey City's Rent Control Ordinance defines which dwellings are exempt from rent control. JERSEY CITY, N.J., CODE OF ORDINANCES ch. 260, § 260-1. Specifically, Paragraph A.3 of this definition states that, among those properties exempt from rent control are:

> Newly constructed dwellings with 25 or more dwelling units located within a redevelopment area as defined in Section 5 of the Redevelopment Agencies Law . . . for which the City Council has approved a redevelopment plan, in accordance with Section 17 of the Redevelopment Agencies Law, N.J.S.A. . . . .

Portside Towers is located within the Tidewater Basin Redevelopment Area. In fact, the Tidewater Basing Redevelopment Plan includes Portside—the block in which Portside Towers is located—in the redevelopment area.

**V.   CONCLUSION.**

For the foregoing reasons, Portside Towers is exempt from Jersey City's Rent Control Ordinance. Consequently, the Complainants' Dispute regarding rent increase should be dismissed.

Griffin ga Alexander P.C. | *Attorneys at Law*

RE:    **Portside Urban Renewal LLC, c/o Equity Residential Management, LLC**
**Kevin Weller**
**155 Washington Street, Apartment 2102**
**Rent Increase Dispute – Response**
**Our File No.: E-438 | Case No.: R22-044**

**Page 7 of 7**

If you have any questions regarding the content of this letter, please contact my office.

Very truly yours,
**GRIFFIN ALEXANDER, P.C.**

**Jennifer L. Alexander, Esq.**

JLA/lrds
Enclosures
cc: Portside Urban Renewal LLC, c/o Equity Residential Management, LLC

Griffin ga Alexander P.C. | *Attorneys at Law*