# EXHIBIT B

23544

028405

**RECEIVED**

96 JUL 19 AM 11: 36

*Kenneth C. Cline Casin*
HUDSON COUNTY
REGISTER OF DEEDS

New Jersey
Loan No. A-331970
RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

The Northwestern Mutual Life Ins. Co.
720 East Wisconsin Avenue - Rm N16WC
Milwaukee, WI 53202
Attn:  Dana Russell

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

This instrument was prepared by George C. Witte, Jr., Attorney, of McCarter and English for The Northwestern Mutual Life Insurance Company, 4 Gateway Center, 12th Floor, 100 Mulberry Street, Newark, NJ 07102-4096.

## MORTGAGE, SECURITY AGREEMENT and FINANCING STATEMENT

THIS MORTGAGE, SECURITY AGREEMENT, and FINANCING STATEMENT, made as of the 18th day of July, 1996 between **PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C.**, a New Jersey limited liability company, whose address is c/o Applied Assets, Inc., Five Marine View Plaza, Suite 500, Hoboken, New Jersey 07033, herein (whether one or more in number) called "Mortgagor", and **THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**, a Wisconsin corporation, 720 E. Wisconsin Avenue, Milwaukee, WI 53202, herein called "Mortgagee";

WITNESSETH, That Mortgagor, in consideration of the indebtedness herein mentioned, does hereby grant, convey, mortgage and warrant unto Mortgagee forever, with power of sale and right of entry and possession, the following property (herein referred to as the "Property"):

    A.    the condominium units located in the City of Jersey City, County of Hudson, State of New Jersey, described in Exhibit "A" attached hereto and incorporated herein and all appurtenances thereto and all replacements thereof (the "Units"); and

1

MB5B:630051.4

7/17/96  9:07am

BK 5972 PG 329

B.    Mortgagor's interest in all engines, boilers, elevators and machinery, all heating apparatus, electrical equipment, air-conditioning equipment, water and gas fixtures, and all other fixtures of every description belonging to Mortgagor which are or may be placed in or used in connection with the Units, all of which, to the extent permitted by applicable law, shall be deemed an accession to the freehold and a part of the realty as between the parties hereto; and

C.    Mortgagor's interest in all articles of personal property of every kind and nature whatsoever, now or hereafter located in the Units and now owned or leased or hereafter acquired or leased by Mortgagor and used in connection with the operation of the Units.

Mortgagor agrees not to sell, transfer, assign or remove anything described in B and C above now or hereafter located within the Units without prior written consent from Mortgagee unless (i) such action does not constitute a sale or removal of any buildings or improvements, or (ii) such action results in the substitution or replacement with similar items of equal value or is necessary to remove obsolete items or items which are or may likely cause a breach of the provision of this instrument entitled "**Environmental**".

Without limiting the foregoing grants, Mortgagor hereby pledges to Mortgagee, and grants to Mortgagee a security interest in, all of Mortgagor's present and hereafter acquired right, title and interest in and to any and all

D.    cash and other funds now or at any time hereafter deposited by or for Mortgagor on account of tax, special assessment, replacement or other reserves required to be maintained pursuant to the Loan Documents (as hereinafter defined) with Mortgagee or a third party, or otherwise deposited with, or in the possession of, Mortgagee pursuant to the Loan Documents; and

E.    surveys, soils reports, environmental reports, guaranties, warranties, architect's contracts, construction contracts, drawings and specifications, applications, permits, surety bonds and other contracts relating to the acquisition, design, development, construction and operation of the Property; and

2

BK5972PG330

F.    all present and future rights to condemnation awards, insurance proceeds or other proceeds at any time payable to or received by Mortgagor on account of the Property or any of the foregoing personal property.

All personal property hereinabove described is hereinafter referred to as the "Personal Property".

If any of the Property is of a nature that a security interest therein can be perfected under the Uniform Commercial Code, this instrument shall constitute a security agreement and financing statement if permitted by applicable law and Mortgagor agrees to join with Mortgagee in the execution of any financing statements and to execute any other instruments that may be required for the perfection or renewal of such security interest under the Uniform Commercial Code.

TO HAVE AND TO HOLD the same unto Mortgagee for the purpose of securing:

(a)  Payment to the order of Mortgagee of the indebtedness evidenced by a promissory note of even date herewith (and any restatement, extension or renewal thereof and any amendment thereto) executed by Mortgagor for the principal sum of TWENTY-TWO MILLION FIVE HUNDRED THOUSAND DOLLARS, with final maturity no later than August 1, 2006 and with interest as therein expressed (which promissory note, as such instrument may be amended, restated, renewed and extended, is hereinafter referred to as the "Note"); and

(b)  Payment of all sums that may become due Mortgagee under the provisions of, and the performance of each agreement of Mortgagor contained in, the Loan Documents.

As used herein, "Loan Documents" means this instrument, the Note, that certain Absolute Assignment of Leases and Rents of even date herewith between Mortgagor and Mortgagee (the "Absolute Assignment"), that certain Certification of Borrower of even date herewith and any other agreement entered into by Mortgagor and delivered to Mortgagee in connection with the indebtedness evidenced by the Note, except for any separate environmental indemnity agreement, as any of the foregoing may be amended from time to time.

TO PROTECT THE SECURITY OF THIS MORTGAGE, MORTGAGOR COVENANTS AND AGREES:

3

BK5972PG331

**Payment of Debt**. Mortgagor agrees to pay the indebtedness hereby secured (the "Indebtedness") promptly and in full compliance with the terms of the Loan Documents.

**Ownership**. Mortgagor represents that it owns the Property and has good and lawful right to convey the same and that the Property is free and clear from any and all encumbrances whatsoever, except as appears in the title insurance policy delivered to and accepted by Mortgagee. Mortgagor does hereby forever warrant and shall forever defend the title and possession thereof against the lawful claims of any and all persons whomsoever.

**Maintenance of Property and Compliance with Laws**. Mortgagor agrees to keep the Units in good condition and repair; not to commit or suffer any waste; to comply in all material respects with all laws, rules and regulations affecting the Property, subject to Mortgagor's right to contest the applicability or interpretation of any law so long as such contest does not jeopardize the Mortgagee's security or pose a risk of the sale or forfeiture of all or any part of the Property; and to permit Mortgagee to enter at all reasonable times upon prior notice for the purpose of inspection and of conducting, in a reasonable and proper manner, such tests as Mortgagee determines to be necessary in order to monitor Mortgagor's compliance with applicable laws and regulations regarding hazardous materials affecting the Property.

**Insurance**. Mortgagor agrees to keep the Property insured for the protection of Mortgagee in such manner, in such amounts and in such companies as Mortgagee may from time to time reasonably approve, and to keep the policies therefor, properly endorsed, on deposit with Mortgagee; that insurance loss proceeds (less expenses of collection) shall, at Mortgagee's option, be applied on the Indebtedness, whether due or not, or to the restoration of the Property, or be released to Mortgagor, but such application or release shall not cure or waive any default under any of the Loan Documents. If Mortgagee elects to apply the insurance loss proceeds on the Indebtedness, no prepayment privilege fee shall be due thereon.

Notwithstanding the foregoing provision, Mortgagee agrees that if (i) the cost of restoration of the Property is less than $2,250,000.00, and (ii) the casualty occurs prior to the last six (6) months of the term of the Note and prior to the date on which the Additional Collateral Provision Requirements (as hereinafter defined) shall be satisfied, then the insurance loss proceeds (less reasonable expenses of collection) shall be applied to restoration of the Property to its condition existing immediately prior to the casualty, subject to satisfaction of the following conditions:

(a)    There is no existing Event of Default (as hereinafter defined) at the time of casualty, and if there shall occur any Event of Default after the date

4

BK5972PG332

of the casualty, Mortgagee shall have no further obligation to release insurance loss proceeds hereunder;

(b)  The casualty insurer has not denied liability for payment of insurance loss proceeds as a result of any act, neglect, use or occupancy of the Property by Mortgagor or any tenant of the Property;

(c)  Mortgagee shall be satisfied that all insurance loss proceeds so held, together with supplemental funds (if required) to be made available by Mortgagor, shall be sufficient to complete the restoration of the Property. Any remaining insurance loss proceeds may, at the option of Mortgagee, be applied on the Indebtedness, whether or not due, or be released to Mortgagor;

(d)  If required by Mortgagee, Mortgagee shall be furnished a satisfactory report addressed to Mortgagee from an environmental engineer or other qualified professional satisfactory to Mortgagee to the effect that no adverse environmental impact to the Property resulted from the casualty;

(e)  Mortgagee shall release casualty insurance proceeds as restoration of the Property progresses if Mortgagee is furnished satisfactory evidence of the costs of restoration and, at the time of such release, there shall exist no default under the Loan Documents with respect to which Mortgagee shall have given Mortgagor notice pursuant to the "Notice of Default" provision herein. If the estimated cost of restoration exceeds $250,000.00, (i) the drawings and specifications for the restoration shall be approved by Mortgagee in writing prior to commencement of the restoration, and (ii) Mortgagee shall receive an administration fee equal to one percent (1.0%) of the cost of restoration, but not to exceed One Hundred Thousand Dollars ($100,000.00);

(f)  Prior to each release of funds, Mortgagor shall obtain for the benefit of Mortgagee an endorsement to Mortgagee's title insurance policy insuring against any liens arising from the restoration;

(g)  Mortgagor shall pay all costs and expenses incurred by Mortgagee including, but not limited to, outside legal fees, title insurance costs, third-party disbursement fees, third-party engineering reports and inspections deemed necessary by Mortgagee; and

5

BK5972PG333

(h)     All reciprocal easement and operating agreements, if any, shall remain in full force and effect between the parties thereto on and after restoration of the Property.

In addition, if the casualty occurs prior to the last six (6) months of the term of the Note but following the date on which the Additional Collateral Provision Requirements shall have been satisfied, the insurance loss proceeds (less reasonable expenses of collection) shall be applied to restoration of the Property to its condition existing immediately prior to the casualty, subject to satisfaction of the conditions set forth in (a) through (h), above.

In addition, Mortgagor shall provide Mortgagee with evidence of, and shall maintain or cause to be maintained, the following types of insurance in amounts and form and with companies, all satisfactory to Mortgagee:

(i)     All-risk builder's insurance for Residential Unit Tower 1, as more particularly described in that certain Master Deed of Portside, a Condominium (the "East Tower"), for the estimated replacement cost of the improvements on the standard builder's risk completed value form (non-reporting full coverage) with a deductible of not greater than $25,000; and

(ii)    All-risk property insurance covering all common elements and limited common elements of Portside, a Condominium and general liability insurance insuring Portside Condominium Owners' Association, Inc.

**Condemnation**.  Mortgagor hereby assigns to Mortgagee (i) any award and any other proceeds resulting from damage to, or the taking of, all or any portion of the Property in connection with condemnation proceedings or the exercise of any power of eminent domain and (ii) the proceeds from any sale or transfer in lieu thereof; and grants Mortgagee the right, at its option, to apply such award and other proceeds (less expenses of collection) on the Indebtedness (including any prepayment privilege fee in the event such condemnation or taking affects all or substantially all of the Property), whether such Indebtedness is due or not, or to the restoration of the Property or to release all or any portion thereof to Mortgagor, but such application or release shall not cure or waive any default under any of the Loan Documents.

**Taxes and Special Assessments**.  Mortgagor agrees to pay before delinquency all taxes (or payments in lieu of taxes) and special assessments of any kind that have been or may be levied or assessed against the Property, this instrument, the Note or the Indebtedness, or upon the interest of Mortgagee in the Property, this instrument, the Note or the Indebtedness, and to procure and deliver to Mortgagee the official receipt

6

BK5972PG334

of the proper officer showing timely payment of all such taxes (or payments in lieu of taxes) and assessments; provided, however, that Mortgagor shall not be required to pay any such taxes (or payments in lieu of taxes) or special assessments if the amount, applicability or validity thereof shall currently be contested in good faith by appropriate proceedings and funds sufficient to satisfy the contested amount have been deposited in an escrow satisfactory to Mortgagee.

**Personal Property.** With respect to the Personal Property, Mortgagor hereby represents, warrants and covenants as follows:

(a) Except for the security interest granted hereby, Mortgagor is, and as to portions of the Personal Property to be acquired after the date hereof will be, the sole owner of the Personal Property, free from any lien, security interest, encumbrance or adverse claim thereon of any kind whatsoever. Mortgagor shall notify Mortgagee of, and shall indemnify and defend Mortgagee and the Personal Property against, all claims and demands of all persons at any time claiming the Personal Property or any part thereof or any interest therein.

(b) Except as otherwise provided above, Mortgagor shall not lease, sell, convey or in any manner transfer the Personal Property without the prior consent of Mortgagee.

(c) Mortgagor maintains a place of business at the address set forth above in this instrument, and Mortgagor shall immediately notify Mortgagee in writing of any change in its place of business.

(d) At the request of Mortgagee, Mortgagor shall join Mortgagee in executing one or more financing statements and continuations and amendments thereof pursuant to the Uniform Commercial Code of the jurisdiction in which the Property is located in form satisfactory to Mortgagee, and Mortgagor shall pay the cost of filing the same in all public offices wherever filing is deemed by Mortgagee to be necessary or desirable.

**Other Liens.** Mortgagor agrees to keep the Property free from all other mortgage liens and from all liens prior to the lien created hereby. The creation of any other mortgage lien, whether or not prior to the lien created hereby, the creation of any prior lien or the assignment or pledge by Mortgagor of its revocable license to collect, use and enjoy rents and profits from the Property shall constitute a default under the terms of this instrument. The term "mortgage" includes a mortgage, deed of trust, deed to secure debt or any other security interest in the Property.

7

**Environmental.** A. Except as disclosed in the environmental report prepared by Fugro East, Inc., Plainsboro, New Jersey dated June 1996 (transmitted July 3, 1996), to the best of Mortgagor's knowledge, after due inquiry and investigation, the Property has never been used by previous owners and/or operators to refine, produce, store, handle, transfer, process or transport "hazardous substances", as such term is defined in N.J.S.A. 58:10-23.11b(k), and the Mortgagor has not used in the past, nor does the Mortgagor intend to use in the future, the Property for the principal or primary purpose of refining, producing, storing, handling, transferring, processing or transporting said "hazardous substances".

B. To the best of Mortgagor's knowledge after due inquiry and investigation, no lien has been attached to any revenues or the Property as a result of the chief executive of the New Jersey Spill Compensation Fund expending monies from said fund to pay for "cleanup and removal costs", as such term is defined in N.J.S.A. 58:10-23.11b(d), arising from an intentional or unintentional action or omission of Mortgagor or any previous owner and/or operator of said Property.

C. If there shall be constituted a lien against the Property, pursuant to and in accordance with the provisions of N.J.S.A. 58:10-23.11f(f) as a result of the chief executive of the New Jersey Spill Compensation Fund having expended monies from said fund to pay for "cleanup and removal costs" and/or "direct and indirect damages", as such terms are used in N.J.S.A. 58:10-23.11g, arising from an intentional or unintentional action or omission of the Mortgagor resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of "hazardous substances" as such term is defined in N.J.S.A. 58:10-23.11(b)k, into waters of the State of New Jersey or onto lands from which it might flow or drain into said waters, Mortgagor shall, within thirty (30) days from the date that Mortgagor is given notice that the lien has been placed against the Property or within such shorter period of time if the State of New Jersey shall have commenced steps to cause the Property to be sold pursuant to the lien, either (i) pay the claim and remove the lien from the Property, or (ii) furnish (a) a bond satisfactory to Mortgagee and the issuer of Mortgagee's title policy with respect to the Property in the amount of the claim out of which the lien arises, (b) a cash deposit in the amount of the claim out of which the lien arises, or (c) other security reasonably satisfactory to Mortgagee in an amount sufficient to discharge the claim out of which the lien arises.

D. Except as disclosed in the environmental report prepared by Fugro East, Inc., Plainsboro, New Jersey dated June 1996 (transmitted July 3, 1996), to the best of Mortgagor's knowledge, after due inquiry and investigation, the Property has never been used by previous owners and/or operators to generate, manufacture, refine, transport, treat, store, handle or dispose of "hazardous substances" or "hazardous

8

wastes", as such terms are defined in N.J.S.A. 13:1K-8, and Mortgagor does not intend to use the Property for such purposes.

**Leases.** Mortgagor represents and warrants that there is no assignment or pledge of any leases of, or rentals or income from, the Property now in effect; and covenants that, until the Indebtedness is fully paid, it (i) shall not make any such assignment or pledge to anyone other than Mortgagee, (ii) shall not, unless expressly permitted under another provision in this instrument, make any assignment or pledge to anyone of its hereinafter described revocable license to collect, use and enjoy the rents and profits, and (iii) except as is consistent with the usual and customary operation of the Property, shall not, without the prior written approval of Mortgagee, consent to a cancellation or surrender of any of said leases having at the time an unexpired term of more than two (2) years or to a release or reduction of the liability of any party to such a lease.

In consideration of the Indebtedness, Mortgagor, pursuant to the Absolute Assignment, has assigned to Mortgagee all of Mortgagor's right, title and interest in said leases, including Mortgagor's right to collect, use and enjoy the rents and profits therefrom. Mortgagee has, in the Absolute Assignment, granted to Mortgagor a license to collect, use and enjoy said rents and profits. Such license is revocable by Mortgagee pursuant to the terms of the Absolute Assignment.

**Costs, Fees and Expenses.** Mortgagor agrees to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Mortgagee hereunder; to pay all costs and expenses, including the cost of obtaining evidence of title and reasonable attorney's fees, incurred in connection with any such action or proceeding; and to pay any and all attorney's fees and expenses of collection and enforcement in the event the Note is placed in the hands of an attorney for collection, enforcement of any of the Loan Documents is undertaken or suit is brought thereon.

**Failure of Mortgagor to Act.** If Mortgagor fails to timely make any payment or timely do any act as herein provided, Mortgagee may, without obligation so to do, upon notice to (but without need to gain any consent or other permission from) Mortgagor and without releasing Mortgagor from any obligation hereof; (i) make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof, Mortgagee being authorized to enter upon the Property for such purpose; (ii) appear in and defend any action or proceeding purporting to affect the security hereof, or the rights or powers of Mortgagee; (iii) pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of Mortgagee appears to be prior or superior hereto; and (iv), in exercising any such powers, pay necessary expenses, employ counsel and pay its reasonable fees. Sums so expended

9

BK5972PG337

shall be payable by Mortgagor immediately upon demand with interest from date of expenditure at the Default Rate (as defined in the Note). All sums so expended by Mortgagee and the interest thereon shall be included in the Indebtedness and secured by the lien of this instrument.

**Event of Default.** Any default by Mortgagor in making any required payment of the Indebtedness or any default in any provision, covenant, agreement or warranty contained in any of the Loan Documents shall, except as provided in the two (2) immediately succeeding paragraphs, constitute an "Event of Default".

**Notice of Default.** A default in any payment required in the Note or any other Loan Document (a "Monetary Default") shall not constitute an Event of Default unless Mortgagee shall have given a written notice of such Monetary Default to Mortgagor and Mortgagor shall not have cured such Monetary Default by payment of all amounts in default (including payment of interest at the Default Rate, as defined in the Note, from the date of default to the date of cure on amounts owed to Mortgagee) within five (5) business days after the date on which Mortgagee shall have given such notice to Mortgagor.

Any other default under the Note or under any other Loan Document (a "Non-Monetary Default") shall not constitute an Event of Default unless Mortgagee shall have given a written notice of such Non-Monetary Default to Mortgagor and Mortgagor shall not have cured such Non-Monetary Default within thirty (30) days after the date on which Mortgagee shall have given such notice of default to Mortgagor (or, if the Non-Monetary Default is not curable within such 30-day period, Mortgagor shall not have diligently undertaken and continued to pursue the curing of such Non-Monetary Default and deposited an amount sufficient to cure such Non-Monetary Default in an escrow account satisfactory to Mortgagee).

For purposes of this provision, written notice may be delivered personally or sent by certified mail or reputable courier service with charges prepaid, by telecopier or by such other method whereby the receipt thereof may be confirmed. Notice shall be deemed given on the date received. Any notice which is rejected, the acceptance of which is refused or which is incapable of being delivered (except for facsimile if due to technical problems) for any reason shall be deemed received as of the date of attempted delivery.

In no event shall the notice and cure period provisions recited above constitute a grace period for the purposes of commencing interest at the Default Rate (as defined in the Note).

10

BK5972PG338

**Appointment of Receiver**. Upon the occurrence and during the continuance of an Event of Default, Mortgagee (without limitation or restriction by any present or future law, without regard to the solvency or insolvency at that time of any party liable for the payment of the Indebtedness, without regard to the then value of the Property, whether or not there exists a threat of imminent harm, waste or loss to the Property and or whether the same shall then be occupied by the owner of the equity of redemption as a homestead) shall have the absolute right to the appointment of a receiver of the Property and of the revenues, rents, profits and other income therefrom, and said receiver shall have (in addition to such other powers as the court making such appointment may confer) full power to collect all such income and, after paying all necessary expenses of such receivership and of operation, maintenance and repair of said Property, to apply the balance to the payment of any of the Indebtedness then due.

**Foreclosure**. Upon the occurrence and during the continuance of an Event of Default, the entire unpaid Indebtedness shall, at the option of Mortgagee, become immediately due and payable for all purposes without any notice or demand, except as required by law, (ALL OTHER NOTICE OF THE EXERCISE OF SUCH OPTION, OR OF THE INTENT TO EXERCISE SUCH OPTION, BEING HEREBY EXPRESSLY WAIVED), and Mortgagee may, in addition to exercising any rights it may have with respect to the Personal Property under the Uniform Commercial Code of the jurisdiction in which the Property is located, institute proceedings in any court of competent jurisdiction to foreclose this instrument as a mortgage, or to enforce any of the covenants hereof, or Mortgagee may, either personally or by agent or attorney in fact, enter upon and take possession of the Property and may manage, rent or lease the Property or any portion thereof upon such terms as Mortgagee may deem expedient, and collect, receive and receipt for all rentals and other income therefrom and apply the sums so received as hereinafter provided in case of sale. Mortgagee is hereby further authorized and empowered, as agent or attorney in fact, either after or without such entry, to sell and dispose of the Property en masse or in separate parcels (as Mortgagee may think best), and all the right, title and interest of Mortgagor therein, by advertisement or in any manner provided by the laws of the jurisdiction in which the Property is located, (MORTGAGOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO A HEARING PRIOR TO SUCH SALE), and to issue, execute and deliver a deed of conveyance, all as then may be provided by law; and Mortgagee shall, out of the proceeds or avails of such sale, after first paying and retaining all fees, charges, costs of advertising the Property and of making said sale, and attorneys' fees as herein provided, apply such proceeds to the Indebtedness, including all sums advanced or expended by Mortgagee or the legal holder of the Indebtedness, with interest from date of advance or expenditure at the Default Rate (as defined in the Note), rendering the excess, if any, as provided by law; such sale or sales and said deed or deeds so made shall be a perpetual bar, both in law and equity, against

11

BK 5972 PG 339

Mortgagor, the heirs, successors and assigns of Mortgagor, and all other persons claiming the Property aforesaid, or any part thereof, by, from, through or under Mortgagor. The legal holder of the Indebtedness may purchase the Property or any part thereof, and it shall not be obligatory upon any purchaser at any such sale to see to the application of the purchase money.

**Due on Sale**. The present ownership and management of the Property is a material consideration to Mortgagee in making the loan secured by this instrument, and Mortgagor shall not, without the prior written consent of Mortgagee in each instance (i) convey title to all or any part of the Property, (ii) enter into any contract to convey (land contract/installment sales contract/contract for deed), title to all or any part of the Property which gives a purchaser possession of, or income from, the Property prior to a transfer of title to all or any part of the Property ("Contract to Convey"), or (iii) cause or permit a change in the proportionate ownership of Mortgagor. Except if resulting from (a) an exercise by any one of the members of Mortgagor of the buy-sell rights set forth in Section 8.5 of the Operating Agreement of Borrower, and provided that Mortgagee shall approve any new leasing/management firm in connection therewith, or (b) the death or legal incompetency of any individual, any conveyance, entering into a Contract to Convey, or a change in the proportionate ownership of Mortgagor shall constitute a default under the terms of this instrument.

For purposes of this instrument, a "change in the proportionate ownership of Mortgagor" means any conveyance, assignment or transfer resulting in (i) the Barry Family owning, directly or indirectly, less than a ten percent (10%) interest in Mortgagor; (ii) the Tycher Family owning, directly or indirectly, less than a five percent (5%) interest in Mortgagor; or (iii) CALPERS (as hereinafter defined) owning, directly or indirectly, less than a sixty-five percent (65%) interest in Mortgagor.

Notwithstanding the above, a transfer of ownership interests to or among the Barry Family shall be permitted. For purposes hereof, the "Barry Family" shall mean Joseph Barry, his spouse, his descendants and their spouses, any trusts or estates for the benefit of said parties, and any entities owned and controlled (ownership and voting interests in excess of fifty percent [50%]) by said parties.

Notwithstanding the above, a transfer of ownership interests to or among the Tycher Family shall be permitted. For purposes hereof, the "Tycher Family" shall mean Marshall Tycher, his spouse, his descendants and their spouses, any trusts or estates for the benefit of said parties, and any entities owned and controlled (ownership and voting interests in excess of fifty percent [50%]) by said parties.

12

BK 5972 PG 340

For purposes hereof, "CALPERS" shall mean the State of California Public Employees Retirement System or any wholly-owned subsidiary thereof.

**Financial Statements.** Mortgagor agrees to furnish to Mortgagee, at Mortgagor's expense and within ninety (90) days after the close of each fiscal year ("Financial Statements Due Date"), annual audited financial statements on the Property (the "Statements"), including the following:

(a)     a balance sheet; and

(b)     a statement of cash flows; and

(c)     an income statement of operations with a detailed line item breakdown of all operating expenses and a separate supplemental schedule listing the capitalized costs associated with tenant improvements, leasing commissions and capital improvements.

Mortgagor also agrees to provide Mortgagee a current rent roll listing, to the extent such tenants pay percentage rent under their leases, tenant sales, sales per square foot and percentage rents for all retail spaces (the "Rent Roll") by the Financial Statements Due Date.

The Statements shall be prepared in accordance with generally accepted accounting principles by a certified public accountant satisfactory to Mortgagee. Mortgagor acknowledges that Mortgagee requires such Statements and Rent Roll in order to record accurately the value of the Property for financial and regulatory reporting. If Mortgagor does not furnish, or cause to be furnished, the Statements and Rent Roll to Mortgagee by the Financial Statements Due Date, within thirty (30) days after Mortgagee shall have given written notice to Mortgagor that the Statements and Rent Roll have not been received as required,

(x) interest on the unpaid principal balance of the Indebtedness shall as of the Financial Statements Due Date, accrue and become payable at a rate equal to the sum of the Interest Rate (as defined in the Note) plus one percent (1%) per annum (the "Increased Rate"); and

(y) Mortgagee may elect to obtain an independent appraisal and audit of the Property at Mortgagor's expense, and Mortgagor agrees that it will, upon request, promptly make Mortgagor's books and records regarding the Property available to Mortgagee and the person(s) performing the appraisal and audit (which obligation Mortgagor agrees can be specifically enforced by Mortgagee).

13

BK 5972 PG 341

The amount of the payments due under the Note during the time in which the Increased Rate shall be in effect shall be changed to an amount which is sufficient to amortize the then-unpaid principal balance at the Increased Rate during the then-remaining portion of a period of (i) thirty (30) years commencing with the Amortization Period Commencement Date (as defined in the Note), or (ii) if an Additional Collateral Failure (as hereinafter defined) shall have occurred, twenty (20) years commencing with the Additional Collateral Due Date (as hereinafter defined). Interest shall continue to accrue and be due and payable monthly at the Increased Rate until the Statements and Rent Roll shall be furnished to Mortgagee as required. Commencing on the date on which the Statements and Rent Roll are received by Mortgagee, interest on the unpaid principal balance shall again accrue at the Interest Rate and the payments due during the remainder of the term of the Note shall be changed to an amount which is sufficient to amortize the then-unpaid principal balance at the Interest Rate during the then-remaining portion of a period of (i) thirty (30) years commencing with the Amortization Period Commencement Date or (ii) if an Additional Collateral Failure shall have occurred, twenty (20) years commencing with the Additional Collateral Due Date. Notwithstanding the foregoing, Mortgagee shall have the right to conduct an independent audit at its own expense at any time.

If an Additional Collateral Failure (as herein defined) shall exist at the time the Interest Rate shall be increased in accordance with the provision above, then the Increased Rate shall be defined as the sum of the Interest Rate plus two percent (2%) per annum.

**Additional Collateral**.  Prior to the second anniversary of the date hereof (the "Additional Collateral Due Date"), Mortgagor shall have:

(i)     completed the construction of the East Tower substantially in accordance with the drawings and specifications approved by Mortgagee;

(ii)    obtained a satisfactory certificate of occupancy for the East Tower from the appropriate governmental authority;

(iii)   furnished to Mortgagee a recently certified as-built survey for the Property and the East Tower prepared in accordance with the survey requirements;

(iv)    furnished to Mortgagee a satisfactory Consultant's Report (as defined in the Commitment) covering the East Tower;

(v)     furnished to Mortgagee a satisfactory updated Environmental Report (as defined in the Commitment) covering the East Tower;

14

BK5972PG342

(vi)     executed and delivered to Mortgagee (x) a Mortgage, Security Agreement and Financing Statement substantially in the form of this instrument granting Mortgagee a first lien on the East Tower, (y) an Absolute Assignment of Leases and Rents substantially in the form of the Absolute Assignment assigning to Mortgagee all leases and rents from the East Tower, and (z) a satisfactory endorsement to Mortgagee's title policy;

(vii)    paid any and all indebtedness secured by the East Tower.

Items (i) through (vii) above shall, collectively, hereinafter be referred to as the "Additional Collateral Provision Requirements." Notwithstanding the foregoing, if there shall occur a delay in the construction of the East Tower or in the satisfaction of the Additional Collateral Provision Requirements, in either case as a result of "Force Majeure" (as hereinafter defined), the Additional Collateral Due Date shall be extended on a day-for-day basis for each day of delay approved by Mortgagee, so long as:

(i)      within two (2) days of an event for which Mortgagor claims or intends to claim delay pursuant hereto, Mortgagor shall give Mortgagee written notice of the delay, the reasons therefor and the length or anticipated length thereof;

(ii)     as soon as the delay shall end, Mortgagor shall give Mortgagee written notice thereof; and

(iii)    under no circumstances shall the Additional Collateral Due Date be extended in the aggregate for more than eight (8) months.

For purposes of this "**Additional Collateral**" provision only, the time within which any party hereto shall be required to perform any act under this instrument, other than the payment of money, shall be extended by a period of time equal to the number of days during which performance of such act is unavoidably delayed by labor strikes, civil disturbances such as insurrection, riots and war, and acts of God (any such event, a "Force Majeure").

Notwithstanding anything herein to the contrary, the failure of Mortgagor to satisfy item (vi) of the Additional Collateral Provision Requirements within ninety (90) days after the satisfaction of items (i) and (ii) of the Additional Collateral Provision Requirements shall constitute a default hereunder.

**Mortgagor's Failure to Provide Full Collateral**: If, on the Additional Collateral Due Date, the Additional Collateral Provision Requirements shall not have been

15

BK5972PG343

satisfied (an "Additional Collateral Failure"), interest on the unpaid principal balance of the Indebtedness shall, as of the Additional Collateral Due Date, accrue and be payable at the rate of nine percent (9.0%) per annum (the "Revised Rate").

The amounts of the payments due during the time in which the Revised Rate is in effect shall be changed to an amount which is sufficient to amortize the then-unpaid principal balance at the Revised Rate during the then-remaining portion of a period of twenty (20) years commencing on the Additional Collateral Due Date.

Commencing on the date on which the Additional Collateral Provision Requirements shall be satisfied, interest on the unpaid principal balance of the Note shall again accrue at the Interest Rate and the payments due during the remainder of the term of the Loan shall be changed to an amount which is sufficient to amortize the then-unpaid principal balance of the Note at the Interest Rate during the then-remaining portion of a period of thirty (30) years commencing on the Initial Amortization Date.

**Condominium Provisions.** Mortgagor agrees to cause Portside Condominium Association, Inc. (the "Association") to operate the project in which the Property is located in a manner consistent with the condominium declaration and by-laws and all applicable laws; to observe all of the provisions of the condominium declaration and by-laws; that should the Association fail to maintain the insurance required by the condominium declaration and by-laws, Mortgagee may, but without obligation to do so, and without notice to, demand upon and without releasing Mortgagor from any obligation hereof, effect such insurance and pay the premiums therefor and charge such sum to Mortgagor at the Default Rate (as defined in the Note); Mortgagor hereby assigns to Mortgagee, as collateral security for payment of the Indebtedness, its membership and voting rights in the Association, provided that so long as there is no default in any terms or conditions of this instrument or the Note, Mortgagor shall continue to exercise said membership and voting rights in the Association notwithstanding this assignment; Mortgagor hereby appoints Mortgagee as its attorney-in-fact with full authority to examine, at any reasonable time upon notice, the books and records of the Association.

Mortgagor agrees that (i) Mortgagee shall have the right to inspect the Property and the common elements and the limited common elements appurtenant thereto during normal business hours upon notice, (ii) Mortgagor shall cause the Association to provide Mortgagee with written notice of the events noted in Article 11 of the Master Deed, (iii) if a common element or elements, a limited common element or elements or any part thereof is damaged or destroyed, Mortgagor shall cause the Association to repair and restore such damaged or destroyed common element and/or limited common element, and (iv) if a common element or elements, a limited common element or elements or any part thereof is taken, injured or destroyed by eminent

16

domain, Mortgagor shall cause the Association to repair or restore such common element and/or limited common element to the extent practicable.

**Deposits by Mortgagor**. To assure the timely payment of real estate taxes (including the Annual Service Charge payable under the Amended Financial Agreement with the City of Jersey City dated as of March 29, 1996) and special assessments, Mortgagor agrees to deposit, prior to the initial advance of principal of the Note, (i) an amount equal to the real estate taxes, Annual Service Charge and special assessments on the Property which have accrued, but remain unpaid for the period prior to the initial advance of principal of the Note, and (ii) thereafter, monthly payments in amounts necessary to fully pay the next scheduled payment of such amounts, as determined by Mortgagee. (Such amounts shall be held by Mortgagee. If at any time the funds so held by Mortgagee, or in such other account, shall be insufficient to pay any of said expenses, Mortgagor shall, upon receipt of notice thereof, immediately deposit such additional funds as may be necessary to remove the deficiency. All funds so deposited shall be irrevocably appropriated to Mortgagee to be applied to the payment of such real estate taxes, Annual Service Charge and special assessments and, at the option of Mortgagee after default, the Indebtedness.)

Interest on such deposits shall accrue to the benefit of Mortgagor. The average daily balance of the funds so held by Mortgagee during a month (the "Applicable Month") shall be credited with interest on the first day of the following month at a rate equal to the 30-Day United States Treasury Bill Yield. As used herein, the "30-Day United States Treasury Bill Yield" means the "Ask Yield" on the first business day of the Applicable Month for United States Treasury bills maturing the closest to 30 days from the first day of the Applicable Month as reported in The Wall Street Journal or a similar yield as reasonably determined by Mortgagee.

**Financial Agreement**. Mortgagor agrees to (i) comply with all of the terms and conditions of the Amended Financial Agreement with the City of Jersey City dated as of March 29, 1996, (ii) not to amend said Financial Agreement without the consent of Mortgagee, and (iii) to provide Mortgagee with a copy of the annual auditor's report to be filed with the City of Jersey City. Mortgagor agrees that a default under the Financial Agreement shall constitute a default under this Mortgage.

**Liens Discharged by Proceeds**. Mortgagee shall be subrogated to the lien of any and all prior encumbrances, liens or charges paid and discharged from the proceeds of the Note, and even though said prior liens have been released of record, the repayment of the Note shall be secured by such liens on the portion of the Property affected thereby to the extent of such payments, respectively.

17

**Modification of Terms**. Without affecting the liability of Mortgagor or any other person (except any person expressly released in writing) for payment of the Indebtedness or for performance of any obligation contained herein and without affecting the rights of Mortgagee with respect to any security not expressly released in writing, Mortgagee may, at any time and from time to time, either before or after the maturity of the Note, without notice or consent: (i) release any person liable for payment of all or any part of the Indebtedness or for performance of any obligation; (ii) make any agreement extending the time or otherwise altering the terms of payment of all or any part of the Indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof; (iii) exercise or refrain from exercising or waive any right Mortgagee may have; (iv) accept additional security of any kind; and/or (v) release or otherwise deal with any property, real or personal, securing the Indebtedness, including all or any part of the Property.

**Exercise of Options**. Whenever, by the terms of this instrument, of the Note or any of the other Loan Documents, Mortgagee is given any option, such option may be exercised when the right accrues or at any time thereafter, and no acceptance by Mortgagee of payment of Indebtedness in default shall constitute a waiver of any default then existing and continuing or thereafter occurring.

**Nature and Succession of Agreements**. Each of the provisions, covenants and agreements contained herein shall inure to the benefit of, and be binding on, the heirs, executors, administrators, successors, grantees, lessees and assigns of the parties hereto, respectively, and the term "Mortgagee" shall include the owner and holder of the Note.

**Legal Enforceability**. No provision of this instrument, the Note or any other Loan Documents shall require the payment of interest or other obligation in excess of the maximum permitted by law. If any such excess payment is provided for in any Loan Documents or shall be adjudicated to be so provided, the provisions of this paragraph shall govern and Mortgagor shall not be obligated to pay the amount of such interest or other obligation to the extent that it is in excess of the amount permitted by law.

**Limitation of Liability**. Notwithstanding any provision contained herein to the contrary, the personal liability of Mortgagor shall be limited as provided in the Note.

**Captions**. The captions contained herein are for convenience and reference only and in no way define, limit or describe the scope or intent of, or in any way affect this instrument.

18

BK5972PG346

**Governing Law.** This instrument, the interpretation hereof and the rights, obligations, duties and liabilities hereunder shall be governed and controlled by the laws of the state in which the Property is located.

IN WITNESS WHEREOF, this instrument has been executed by the Mortgagor as of the day and year first above written.

MORTGAGOR HEREBY ACKNOWLEDGES THAT MORTGAGOR HAS RECEIVED FROM THE MORTGAGEE WITHOUT CHARGE A TRUE COPY OF THIS INSTRUMENT STAMPED "COPY" AND ON WHICH SUCH COPY IS A CERTIFICATION BY THE MORTGAGEE OR THE MORTGAGEE'S ATTORNEY THAT SUCH INSTRUMENT IS A TRUE COPY OF THIS MORTGAGE.

[SIGNATURES CONTAINED ON FOLLOWING PAGE]

19

BK5972PG347



**PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C.,** a New Jersey limited liability company

By:  HUDSON-PORTSIDE ASSOCIATES, a New Jersey general partnership, Member

By:  NEW PORTSIDE ASSOCIATES, L.P., a New Jersey limited partnership, General Partner

By: APPLIED ASSETS, INC., a New Jersey corporation, General Partner

By: _____ (seal)
JOSEPH BARRY, President

(corporate seal)

Attest: _____ (seal)
Secretary

By:  ROSELAND-PORTSIDE, L.L.C., a New Jersey limited liability company, General Partner

By: _____ (seal)
MARSHALL B. TYCHER, Member

20

BK5972PG348

STATE OF NEW JERSEY )
)  ss:
COUNTY OF ESSEX  )

Be it remembered that on the 18th day of July, 1996, before me, the subscriber, a Notary Public of New Jersey, personally appeared ̶B̶a̶r̶b̶a̶r̶a̶ ̶S̶l̶a̶c̶k̶, to me known who, being by me duly sworn according to law, on her/his oath does depose and make proof to my satisfaction that s/he is the Secretary of Applied Assets, Inc., a New Jersey corporation, and well knows the seal of Applied Assets, Inc., the General Partner of New Portside Associates, L.P., a New Jersey limited partnership, a General Partner of Hudson-Portside Associates, a New Jersey general partnership, a Member of PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C., the Mortgagor in the foregoing Mortgage, Security Agreement and Financing Statement named; that the seal affixed to said instrument is the corporate seal of said corporation, that it was so affixed by virtue of the authority from the Board of Directors of said corporation; that JOSEPH BARRY is the President of said corporation; that s/he saw said JOSEPH BARRY as such President affix said seal thereto, sign and deliver said Mortgage, Security Agreement and Financing Statement as General Partner of New Portside Associates, L.P., as General Partner of Hudson-Portside Associates, as a Member of PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C., and heard JOSEPH BARRY declare that he signed, sealed and delivered the same as the voluntary act and deed of said corporation, by virtue of such authority, and that this deponent signed his/her name thereto, at the same time as a subscribing witness.

_____
Barbara A j Slack.          Secretary

Sworn to and subscribed before me
the day and year aforesaid.

_____
Notary Public.

CONNIE C. SATO
A Notary Public of New Jersey
My Commission Expires August 2, 2000

21

BK5972PG349

STATE OF NEW JERSEY

COUNTY OF ESSEX                ss:

Be it remembered that on this 18th day of July, 1996, before me, the subscriber, a
Notary Public of New Jersey, personally appeared MARSHALL B. TYCHER who, I
am satisfied, as a Member of Roseland-Portside, L.L.C., as General Partner of
Hudson-Portside Associates, as a Member of PORTSIDE APARTMENTS URBAN
RENEWAL COMPANY, L.L.C., the Mortgagor named in and who executed the
within indenture, and I having first made known to him the contents thereof, he did
thereupon acknowledge that he signed, sealed and delivered the same as his voluntary
act and deed, for the purposes therein expressed.

Notary Public

CONNIE C. SATO
A Notary Public of New Jersey
My Commission Expires August 2, 20

22

## EXHIBIT "A"

Residential Unit Tower 2 and Retail Unit A situate in Portside, a
Condominium, established pursuant to N.J.S.A. 46:8B-1 et seq.,
located on a portion of Lot 34, in Block 60, as shown on the
current City of Jersey City Tax Assessment Map, in the County of
Hudson, State of New Jersey, together with an undivided 47.5% and
5% respective interest in the General Common Elements of said
condominium appurtenant to the aforesaid units in accordance
with, and subject to the terms, conditions, covenants,
restrictions, reservations, easements, lien as for assessments,
and other provisions as set forth in the Master Deed of Portside,
a Condominium, dated July 18, 1996 about to be recorded in the
Office of the Hudson County Register, as same may now or
hereafter be lawfully amended, all as more particularly shown on
that certain Survey dated July 14, 1994, revised through July 12,
1996 prepared by Albert N. Faraldi Group, P.C.

BK5972PG351



BK5972PG352    END OF LIBER

Unofficial Copy