# EXHIBIT C

SAT.
REC. 10-12-98
INSTR. # 5898
BOOK 444
PAGE 009

23544

028407
RECEIVED

**PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C.,**
**a New Jersey Limited Liability Company,**

in favor of

**FLEET BANK, N.A.**

96 JUL 19 AM 11:35
HUDSON COUNTY
REGISTER OF DEEDS

**MORTGAGE, SECURITY AGREEMENT AND**
**ASSIGNMENT OF LEASES AND RENTS**

RECORD & RETURN TO:

H. HARDING BROWN, ESQ.
EPSTEIN, EPSTEIN, BROWN & BOSEK, P.C.
245 Green Village Road
P.O. Box 901
Chatham Township, New Jersey 07928-0901
(201) 593-4900

(LR\NATWEST\PORTHID.088)
(File No. 15466-080)
(53108.MTG)
(7/16/96) (IGB:lz)

53108

BK 5973 PG 016

## TABLE OF CONTENTS

ARTICLE I

TERMS, COVENANTS, CONDITIONS, REPRESENTATIONS AND WARRANTIES    4
Section 1.1.  Payment of Debt. . . . . . . . . . . . . . .    4
Section 1.2.  Maintenance of the Mortgaged Property and
    Compliance with Laws . . . . . . . . . . . . . . .    4
Section 1.3.  Alterations . . . . . . . . . . . . . . .    5
Section 1.4.  Taxes and Other Charges; Mortgage Taxes  .    6
Section 1.5.  . . . . . . . . . . . . . . . . . . . . .    7
    Warranty of Title . . . . . . . . . . . . . . . .    7
Section 1.6.  Right of Mortgagee to Defend and Uphold
    the Lien; Costs . . . . . . . . . . . . . . . . .    7
Section 1.8.  Insurance Proceeds . . . . . . . . . . . .    12
    Section 1.9.  Condemnation. . . . . . . . . . . . .    14
Section 1.10.  Condominium Provisions . . . . . . . . .    15
Section 1.11.  Estoppel Certificates . . . . . . . . . .    17
Section 1.12.  Financial Statements . . . . . . . . . .    17
Section 1.15.  Restrictions on Sales and Transfers . . .    19
Section 1.15.  Restrictions on Leasing and Further
    Encumbrances . . . . . . . . . . . . . . . . . . .    19
Section 1.15.  Liens . . . . . . . . . . . . . . . . . .    20
Section 1.16.  No Recorded Restrictions Based on Race,
    Etc . . . . . . . . . . . . . . . . . . . . . . .    20
Section 1.17.  Maintenance of Existence . . . . . . . .    20
Section 1.18.  Usury . . . . . . . . . . . . . . . . . .    21
Section 1.19.  Payment of Charges; Advances and
    Disbursements;
    Costs of Administration and Enforcement .    21
Section 1.20.  Assignment of Leases and Agreements . . .    22
Section 1.21.  Right of Inspection. . . . . . . . . . .    23
Section 1.22.  Late Charges . . . . . . . . . . . . . .    23
Section 1.23.  Environmental Matters . . . . . . . . . .    24
Section 1.24.  Trust Funds . . . . . . . . . . . . . . .    31
Section 1.25.  Further Advances . . . . . . . . . . . .    31

ARTICLE II

DEFAULTS AND REMEDIES . . . . . . . . . . . . . . . . . .    31
Section  2.1.1.  Events of Default-Optional
    Acceleration . . . . . . . . . . . . . . . . . . .    31
Section  2.1.2.  Events of Default-Automatic
    Acceleration . . . . . . . . . . . . . . . . . . .    34
Section 2.2.  Grace Provision . . . . . . . . . . . . .    35
Section 2.3.  Waiver of Automatic Stay . . . . . . . . .    35
Section 2.4.  Remedies . . . . . . . . . . . . . . . . .    36

BK5973PG017



Section 2.5.  Modification . . . . . . . . . . . . . . . . . .  43
Section 2.6.  Interest After Default . . . . . . . . . . . . .  43
Section 2.7.  Possession of the Mortgaged Property . . . .  44

ARTICLE III

MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . .  44
Section 3.1.  Notices . . . . . . . . . . . . . . . . . . . .  44
Section 3.2.  Consent to Jurisdiction; Waivers . . . . . .  46
Section 3.3.  Governing Law . . . . . . . . . . . . . . . .  46
Section 3.4.  Binding Obligations . . . . . . . . . . . . .  46
Section 3.5.  Further Assurances . . . . . . . . . . . . .  47
Section 3.6.  Captions . . . . . . . . . . . . . . . . . . .  47
Section 3.7.  Severability . . . . . . . . . . . . . . . . .  47
Section 3.8.  Set-Off . . . . . . . . . . . . . . . . . . .  47
Section 3.9.  General Conditions . . . . . . . . . . . . .  48
Section 3.10. Limitation of Liability . . . . . . . . . . .  51

SCHEDULE A:   PROPERTY DESCRIPTION

BK5973PG018

(LR/FLEET\PORTSID.000)
(File No. 16566-000)
(53166.NYB)
(7/18/96) (MMB:1g)

MORTGAGE, SECURITY AGREEMENT AND
ASSIGNMENT OF LEASES AND RENTS

By

PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C.
a New Jersey Limited Liability Company,

In Favor of

FLEET BANK, N.A.

THIS MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS made this 18th day of July, 1996, by PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C., a limited liability company duly organized, validly existing and in good standing and the laws of the State of New Jersey, having an office at 500 Marine View Plaza, Suite 500, Hoboken, New Jersey 07030 (the "Mortgagor") in favor of FLEET BANK, N.A., a national banking association, organized and existing under and by virtue of the laws of the United States of America, having an office at 208 Harristown Road, Glen Rock, New Jersey 07452 (the "Mortgagee").

WITNESSETH, that the Mortgagor is indebted to the Mortgagee for the payment of an indebtedness in the sum of up to SIXTEEN MILLION FIVE HUNDRED THOUSAND AND NO/100 ($16,500,000.00) DOLLARS lawful money of the United States, or so much as may be outstanding from time to time, to be paid, with interest thereon (as such sum may be reduced from time to time, (collectively referred to and described as the "Debt"), according to a certain note or obligation bearing even date herewith (which, as now exists, and as the same may hereafter, from time to time be extended, amended, modified, restated or superseded, hereinafter collectively referred to as the "Note").

NOW THIS INDENTURE WITNESSETH that for better securing the payment of the Debt, and the performance by the Mortgagor of the terms, covenants, conditions and obligations contained herein, in the Note and in any other documents and agreements given to secure payment of the Note according to the true intent and meaning thereof, and also for and in consideration of one dollar to the Mortgagor in hand paid by the Mortgagee at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, the Mortgagor has mortgaged, granted, bargained, sold, aliened, released, conveyed and confirmed, and by these presents does mortgage, grant, bargain, sell, alien, release,

53166

BK5973PG019

convey and confirm unto the Mortgagee, forever, and grants the Mortgagee's security interest in all of Mortgagor's right, title and interest, if any, in and to the following:

### MORTGAGED PROPERTY

A.   That certain condominium unit designated as Residential Unit Tower 1 (the "Unit"), which Unit is comprised of certain real property located at 155 Washington Street, Hoboken, New Jersey, as more particularly described in Schedule A annexed hereto and made a part hereof, (the "Land"), together with the 25 story, 295 residential unit apartment building to be constructed thereon in accordance with the terms and conditions of the Construction Loan Agreement, dated as the date hereof (the "Loan Agreement"), between Mortgagor and Mortgagee, and any other buildings and improvements now or hereafter located on the Land (collectively, the "Improvements"), together with the appurtenant forty-seven and one-half (47.5%) percentage interest in the common elements allocated to the Unit and other rights and appurtenances of the condominium project known as Portside, A Condominium (the "Condominium"). The Condominium was created pursuant to N.J.S.A. 46:8B-1 et seq. (the "Condominium Act") by recording a Master Deed dated July ____, 1996 which is to be recorded in the Office of the Register of Hudson County immediately prior to the recording of this Mortgage (the "Master Deed"). A Condominium Board (the "Board") governs the Condominium pursuant to the Master Deed and By-Laws of the Condominium (the "By-Laws") which were recorded in the like office together with the Master Deed (the Master Deed, and the By-Laws, collectively, the "Condominium Documents").

B.   All fixtures, machinery, appliances, materials, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by the Mortgagor and located in or on, or attached to, or used, or intended to be used, in connection with the operation of, or construction of the Improvements, and any extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing and all of the right, title and interest of the Mortgagor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made by the Mortgagor or on its behalf with regard thereto (the "Personal Property").

C.   All right, title and interest of the Mortgagor, if any, in and to the land in the bed of the streets or highways abutting the Unit to the center line thereof; all easements, rights of way, strips and gores of land, streets, ways, sidewalks, curbs; alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, remainders, reversions and appurtenances whatsoever, in any way belonging, relating or

83106

2

BK5973PG020

appertaining to the Unit or the Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor (the "Appurtenances").

D. All leases, lettings, occupancy agreements and licenses, (collectively, the "Leases") of portions of the Improvements or any part thereof now or hereafter entered into and all right, title and interest of the Mortgagor thereunder (including, without limitation, the cash and securities deposited thereunder), the right to receive and collect the rents, issues and profits from the Leases (the "Rents") and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of the Mortgagor of, in and to, and all proceeds of any sales or other dispositions of, the property described in Paragraphs (A), (B), (C) and this Paragraph (D).

E. All proceeds of and any unearned premiums on any insurance policies covering the Improvements or the Personal Property or the Rents, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof.

F. All awards ("Awards"), heretofore made and hereafter to be made by any municipal, state or federal authorities to the Mortgagor and all subsequent owners of the property described above in Paragraphs (A) through (D), including any awards for any changes of grade of streets affecting the property described above in Paragraphs (A) through (D) as the result of the exercise of the power of eminent domain (a "Taking").

G. All the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, contract rights, general intangibles, actions and rights in action, relating to the property described above in Paragraphs (A) through (D) and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing.

All the property, interests and rights referred to in Paragraphs (A) through (G) above and any additional property, interests or rights hereafter acquired by the Mortgagor and subject to the lien of this Mortgage or intended to be so are referred to in this Mortgage as the "Mortgaged Property".

TO HAVE AND TO HOLD the Mortgaged Property to the Mortgagee, its successors and assigns, forever subject to the terms and conditions hereof.

The Mortgagor hereby grants to the Mortgagee a security interest in all rights and property described above in Paragraphs

3

BK5973PG021

(B) and Paragraphs (D) through Paragraph (G) (collectively, the "Collateral"). This Agreement shall constitute a self-operative Security Agreement under Article 9 of the Uniform Commercial Code with respect to such rights and property, but the Mortgagor agrees to execute and deliver on demand such other instruments as the Mortgagee may reasonably request in order to create or perfect its security interest or to impose the lien hereof more specifically upon any of such rights and property. The Mortgagor hereby appoints the Mortgagee, its agent and attorney-in-fact (which appointment shall be deemed to be an agency coupled with an interest), with full power of substitution, to execute, deliver and file on its behalf any UCC-1, financing statements, UCC-3 continuation statements and any other instruments necessary to create or perfect the Mortgagee's security interest upon any of the Collateral granted in this Paragraph which the Mortgagor has failed or refused to execute and deliver to the Mortgagee within ten (10) days after notice and request by the Mortgagee to so execute and deliver. The Mortgagee shall have all the rights and remedies under this Mortgage, or under any applicable law or agreements with the Mortgagor, of a Secured Party under the Uniform Commercial Code in addition to those specified herein.

THIS MORTGAGE is intended to be a "construction mortgage" as defined in N.J.S.A. 12A:9-313(1)(c) and shall be effective as a UCC-1 financing statement pursuant to N.J.S.A. 12A:9-402(6).

And the Mortgagor covenants, represents and warrants with the Mortgagee that:

## ARTICLE I

## TERMS, COVENANTS, CONDITIONS, REPRESENTATIONS AND WARRANTIES

The Mortgagor covenants, represents and warrants to the Mortgagee as follows:

Section 1.1. Payment of Debt. The Mortgagor will pay the Debt in accordance with the terms of the Note.

Section 1.2. Maintenance of the Mortgaged Property and Compliance with Laws.

The Mortgagor, shall (at its expense in so far as is applicable by the context):

(a) maintain the Improvements in good order and repair and in such fashion that the value and utility of the Mortgaged Property will not be diminished and will make or cause to be made all necessary and appropriate repairs, replacements, and renewals thereof, whether interior or exterior, structural or non-

83108

4

structural; all repairs, replacements and renewals to be at least equal, in quality and class, to that of the original Improvements;

(b) comply with, or cause to be complied with, all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions (and) requirements (collectively, "Laws") of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers which may, as at the date of this Mortgage or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways in so far as the Mortgagor is required to comply therewith subject to Mortgagor's right to contest any laws so long as such contest does not impair Mortgagee's priority or security hereunder or subject the Mortgaged Property or any portion thereof to risk of imminent sale or forfeiture;

(c) comply with, or cause to be complied with, all requirements of the issuer of any policy(s) of insurance covering or affecting the whole or any part of the Mortgaged Property, and all orders, rules, regulations and other requirements of the New Jersey Board of Fire Underwriters (or that of any other body exercising similar functions) applicable to the Mortgaged Property or any part thereof; and

(d) not do or permit any act or thing which is contrary to the requirements or prohibitions of any document of record affecting the Mortgaged Property nor commit or permit any waste of or any nuisance in, at or on the Mortgaged Property or any part thereof.

Section 1.3.  Alterations.

From and after the date of completion of construction of the Improvements under the Loan Agreement, none of the Improvements or any part or portion thereof, and none of the Personal Property or any part or portion thereof, shall be removed, altered or demolished without the prior written consent of the Mortgagee in each instance, provided, however, that the Mortgagor shall have the right, without the consent of the Mortgagee, to remove and dispose of, free from the lien of this Mortgage, such Personal Property as from time to time may become worn out or obsolete, provided that, simultaneously with or prior to such removal, any such Personal Property shall be replaced with Personal Property of like kind and value at least equal to that of the replaced Personal Property and free from any title retention, security interest or other encumbrance.

53100

5

BK5973PG023

## Section 1.4. Taxes and Other Charges; Mortgage Taxes.

(a) The Mortgagor will pay prior to delinquency (i) all liens of any kind, taxes of any kind and nature (including but not limited to real and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof, and (ii) taxes upon the rents, revenues, income or profits of the Mortgaged Property, or taxes arising in respect of the occupancy, use or possession of the whole or any part thereof, which, if not paid, shall result in the imposition of a lien upon the Mortgaged Property, and the Mortgagor will promptly deliver official receipts therefor to the Mortgagee.

(b) The Mortgagor will not claim any deduction from the taxable value of the Mortgaged Property by reason of this Mortgage nor shall the Mortgagor claim or be entitled to any credit against the principal and interest due and owing under the Note and this Mortgage for any taxes, assessments, water rates or other governmental or municipal charges, bonds or impositions paid by the Mortgagor relating to the Mortgaged Property.

(c) In the event of the passage after the date of this Mortgage of any law of the state wherein the Mortgaged Property is located deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for state or local purposes, or the manner of the collection of any such taxes so as to affect this Mortgage, or the Debt, the Mortgagee shall have the right to give thirty (30) days written notice to the owner of the Mortgaged Property requiring the payment of the Debt, and if such notice be given, the Debt shall become due, payable and collectible at the expiration of said thirty (30) days. Unless prohibited by applicable law, any notice given pursuant to this Subsection requiring the payment of the Debt shall provide an option to the Mortgagor, in lieu of such acceleration, to either pay to the Mortgagee an amount or amounts equal to any and all sums payable by the Mortgagee as taxes or otherwise by reason of such laws including taxes, if any, payable on the amounts so paid to the Mortgagee or, in the alternative, pay the Debt in full. If the notice as provided above be given, the payment of said sums described in the preceding sentence or the Debt, as may be the case, shall become due, payable and collectible at the expiration of the thirty (30) day period referred to above.

(d) If at any time the United States of America, any state thereof or any governmental subdivision of any such state, shall require (i) revenue or other stamps to be affixed to the Note or this Mortgage, or (ii) the payment of any taxes or fees on this

53108

6

BK5973PG024

Mortgage, or the Note or in connection with the recording of this Mortgage or any amendment, extension or modification hereof, the Mortgagor will pay the same, with interest and penalties thereon, if any.

Section 1.5.    Warranty of Title.

The Mortgagor represents and warrants that it is the owner of the Unit free of defects, liens, encumbrances and title exceptions of any nature other than the Condominium Documents and those exceptions to title as set forth in the Mortgagee's title insurance policy or the marked title insurance commitment delivered to the Mortgagee as of the date hereof and insuring the lien of this Mortgage (the "Title Policy").  The Mortgagor warrants that this Mortgage is and will be maintained as a valid first lien on the Mortgaged Property subject only to the above-mentioned exceptions, and will defend the same against the claims of all persons or entities whomsoever.  At the Mortgagor's sole cost and expense, the Mortgagor forthwith upon the execution and delivery of this Mortgage, and thereafter from time to time, will cause this Mortgage, and any security instrument creating or evidencing the lien or security interest hereof upon the Mortgaged Property and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law to publish notice of and fully to protect the lien hereof upon, and the lien of the Mortgagee in, the Mortgaged Property.

Section 1.6.    Right of Mortgagee to Defend and Uphold the Lien; Costs.

(a)  The Mortgagee shall have the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of the Mortgagor, which the Mortgagee, in its sole discretion, believes should be brought to protect its interest in or the title to the Mortgaged Property.  The Mortgagee may take such action by attorneys selected by the Mortgagee.

(b)  If any action or proceeding be commenced, whether adversary or not (including an action to foreclose this Mortgage or to collect the Debt), to which action or proceeding the Mortgagee is made a party, or in which it becomes necessary to defend, uphold or enforce the lien of this Mortgage, the Mortgagee may prosecute, defend or participate in such action or proceeding by attorneys selected by the Mortgagee.

(c)  All sums paid by the Mortgagee for the expense of any such action or proceeding described in this Section including any appellate proceeding in connection herewith (including without

22100

7

limitation, reasonable attorney's fees and disbursements at trial and appellate level) shall be paid by the Mortgagor to the Mortgagee, within ten (10) days after written demand, together with interest from the end of said ten (10) day period to and including the date of reimbursement, computed at the interest rate provided for in the Note upon the occurrence of an even of default. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(d) In the event the maturity of the principal amount of the Debt shall be accelerated by reason of a default beyond applicable grace periods under the Note, this Mortgage, or any other instrument given to secure the payments provided to be made pursuant to the Note, in addition to the costs and fees described above in Subsection (c), the Mortgagor shall pay to the Mortgagee, upon demand, together with the interest thereon at the Default Rate, the fees and costs incurred by the Mortgagee, following such acceleration, in obtaining an appraisal of the fair market value of the Mortgaged Property prepared by an appraiser, duly qualified under applicable law and governmental regulations to issue appraisals of real property to the Mortgagor in connection with the approval of loans so secured, and the fees and costs incurred by the Mortgagor in obtaining an Environmental Survey of the Mortgaged Property, as defined below in Subsection 1.24(f). Following a default and beyond any applicable grace period, and upon reasonable notice to the Mortgagor, the Mortgagee, its officers, employees, agents and contractors, may enter the Mortgaged Property to conduct the Environmental Survey. Any such fees and costs paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

## Section 1.7.  Insurance Coverage.

(a) The Mortgagor, until the Debt secured by this Mortgage shall be fully paid and satisfied, shall keep, as applicable, the Mortgagor, the Improvements and the Personal Property insured, by a company or companies and in form, amounts and with coverage and deductibles reasonably satisfactory to Mortgagee against:

(i) loss or damage by perils customarily included under standard builders "all risk" policies, and all other contingencies as may be required by the Mortgagee, which shall evidence, by endorsement, (i.e., a so-called "agreed amount"

83108

8

replacement cost endorsement insuring one hundred percent (100%) of the replacement cost of the Improvements) the agreement of the insurer to pay, upon the occurrence of an insured loss, a sum equal to the cost to repair or replace the lost or damaged Improvements and the Personal Property which shall be damaged or destroyed by reason of an insured loss, with property of a like kind and quality, without deduction for depreciation and normal wear and tear;

(ii)     the coverages provided by so called Commercial General Liability insurance, applicable to the Mortgaged Property, in such amounts as are usually carried by persons or entities owning properties similar to the Mortgaged Property wherein is being conducted the business then being conducted therein in the same general locality as that of the Mortgaged Property, but in any event for amounts not less than (A) if the Debt is $10,000,000 or less, $5,000,000.00 for each occurrence, for death, personal injury and property damage, and $5,000,000.00, in the aggregate for covered occurrences, and (B) if the Debt is in excess of $10,000,000, $10,000,000 for each occurrence for death, personal injury and property damage, and $10,000,000 in the aggregate for covered occurrences, which amounts shall be increased, from time to time, to reflect what a reasonably prudent owner or lessee of buildings or improvements similar in type and locality to that of the Mortgaged Property would carry;

(iii)     the coverages provided by explosion insurance in respect of any steam and pressure boilers and similar apparatus, if any, in the Mortgaged Property in such amounts as are usually carried by persons or entities operating similar properties in the same general locality to that of the Mortgaged Property but in any event in an amount no less than $1,000,000.00;

(iv)     the coverages provided by all-risk builders' risk insurance with respect to the Mortgaged Property during any period in which there is any construction occurring with respect to the Improvements, in an amount no less than the full replacement cost of the Improvements which are the subject of the construction;

(v)     if the Mortgaged Property is now located in an area having special flood hazards or if such area hereafter shall be designated by the United States Government, or any agency thereof, as having special flood hazards, the coverages provided by a policy insuring against floods in an amount equal to the lesser of (A) the principal amount secured by this Mortgage or (B) the maximum amount available pursuant to federal law;

(vi) insurance against such other hazards (including war damage insurance, if and when the same is available from the

9

United States Government or any agency or subdivision thereof) as may be reasonably required by the Mortgagee from time to time and as are customarily insured against with respect to like properties;

(vii)   if any part of the Mortgaged Property is now or hereafter used for the sale or dispensing of beer, wine, or any other alcoholic beverages, so called "Dram Shop" or "Innkeeper's Liability" coverage provided by insurance against claims or liability arising directly or indirectly to person or property on account of such sale of dispensing of beer, wine, or other alcoholic beverages shall also be furnished, including in such coverage loss of means of support, all in amounts as may be required by Law or as the Mortgagee may specify; and

(viii)   in addition, shall keep and maintain worker's compensation insurance to the full extent required by applicable law for all employees of the Mortgagor engaged in any work on or about the Mortgaged Property.

(b)  All companies which shall provide the insurance required by this Mortgage shall have a rating of B+ Class XII or better, in the edition of Bests Key Rating Guide current for the time when the insurance is given, and shall be qualified to do business in the State where the Mortgaged Property is located.

(c)  At the time of the execution of this Mortgage and at least thirty (30) days prior to the expiration of each policy required to be provided by the Mortgagor pursuant to the provisions of this Section, the Mortgagor shall deliver to the Mortgagee certificates of insurance evidencing the insurance coverages required above, together with copies of the actual policies of insurance promptly after Mortgagee's request therefor after same are available, with appropriate evidence of the payment of the premium therefor.

(d)  The insurance policies required to be procured pursuant to this Mortgage shall:

(i)  as to hazard insurance coverage, contain a standard New Jersey non-contributory form of mortgagee endorsement satisfactory to the Mortgagee, naming the Mortgagee, its successors and assigns as their interests may appear, as "mortgagee insured", and as "loss payee", and providing that no act, omission or negligence of the Mortgagor, or its agents, servants or employees, or of any tenant under any lease for the whole or any part of the Mortgaged Property, which might otherwise result in a forfeiture of such insurance or any part thereof, shall in any way affect the validity or enforceability of such insurance insofar as the Mortgagee is concerned;

53106

10

(ii) as to all other coverage name the Mortgagor and the Mortgagee, as named insureds, as their respective interests may appear; and

(iii)    provide, to the extent obtainable, that such policies may not be canceled or amended or in any way limited in coverage or reduced in amount without at least thirty (30) days' prior written notice to the Mortgagee, that no claims thereunder shall be paid without at least ten (10) days prior written notice to the Mortgagee and that the insurance proceeds or awards may be adjusted only after obtaining the prior written consent of the Mortgagee.

(e)  The Mortgagor, at its expense, will furnish to the Mortgagee, within ninety (90) days after demand (but not more frequently than once in each consecutive period of twenty-four (24) calendar months) proof of the then full insurable value of the Improvements and the Personal Property, such proof to be by appraisals satisfactory in form and substance to the Mortgagee and prepared by an M.A.I. appraiser (who may be an appraiser for the insurance company insuring such property) designated and paid for by the Mortgagor and approved by the Mortgagee.  No failure or omission on the part of the Mortgagee to request any such appraisals or proof shall relieve the Mortgagor of any of its obligations under this Section.

(f)  In the event that the Unit or any of the Improvements or the Personal Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, the Mortgagor shall promptly restore, replace, rebuild or alter the damaged or destroyed Improvements and Personal Property, in either case as nearly as possible to the condition the Improvements and Personal Property were in prior to such damage or destruction, without regard to the availability or adequacy of insurance proceeds provided, however, that Mortgagee shall make any insurance proceeds obtained by it available to Mortgagor to pay for such work.  If the estimated cost of such restoration or repair exceeds $1,000,000.00 (the "Casualty Amount"), the Mortgagor shall, before commencing any such work, submit to the Mortgagee for the Mortgagee's approval, which shall not be unreasonably withheld or delayed, copies of the plans and specifications therefor to be prepared by an architect or engineer selected by the Mortgagor, subject to the approval of the Mortgagee, which shall not be unreasonably withheld or delayed,  who shall then be licensed by the state in which the Mortgaged Property is located, and who shall have been placed in charge of the restoration of the Improvements.

(g)  In default of the Mortgagor's compliance with this Section, (i) the Mortgagor hereby agrees to indemnify and hold the Mortgagee harmless against all damage, loss or liability resulting

13100

11

from all risks that would have been covered by such insurance to the extent of the benefit which would have been received by the Mortgagee had the insurance coverage required to be obtained under this Subsection been obtained and maintained by the Mortgagor as required hereunder and (ii) the Mortgagee or its successors or assigns may, upon ten (10) business days' written notice to Mortgagor, but shall have no obligation to, place such insurance as described above, from time to time, in an amount in the aggregate not exceeding the amount of insurance required to be obtained under this Section, for the purpose aforesaid, and pay the premium or premiums therefor. In the event of such payment, the Mortgagor will pay to the Mortgagee, its successors or assigns such premium or premiums so paid by the Mortgagee, upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note. In addition, in the event of a default of such payment by the Mortgagor or of the delivery of policies as provided above in this Section, the Debt shall, at the option of the Mortgagee, its successors or assigns, immediately become due and payable.

(h) The insurance required pursuant to this Section may be effected by a policy of blanket insurance which may cover property in addition to the Mortgaged Property, provided that the coverage shall be the same as if the Mortgaged Property were the sole property insured and the Mortgagor shall deliver to the Mortgagee a duplicate original copy or copies thereof or original insurance certificates therefor.

## Section 1.8. Insurance Proceeds.

(a) The Mortgagor shall give the Mortgagee prompt notice of any damage or destruction by fire or casualty occurring at the Mortgaged Property and the Mortgagor shall make such temporary repairs as are necessary for the protection of the Improvements. The proceeds of any insurance paid on account of any damage or destruction to the Mortgaged Property shall be paid over to the Mortgagee to be applied as hereinafter provided. In the event any such insurance proceeds shall be paid to the Mortgagor or by two-party check delivered to the Mortgagor, the Mortgagor shall forthwith pay such insurance proceeds to the Mortgagee, or endorse such two-party check and deliver it to Mortgagee (as the case may be), and the Mortgagor shall be personally liable for any such insurance proceeds not paid to the Mortgagee, notwithstanding any

63100

12

exculpation provision contained in this Mortgage or in any other Loan Document (as defined in Section 2.1.1(h) of this Mortgage).

(b) (i)    In the event that any one or more of the Improvements or any of the Personal Property shall be damaged or destroyed, in whole or in part, by fire or other casualty ("Damage"), the Mortgagor shall give the Mortgagee prompt notice of such damage or destruction and shall make such temporary repairs as are necessary for the protection of the Improvements and the Personal Property and shall restore, repair, replace, rebuild or alter the damaged or destroyed Improvements and the Personal Property, in either case as nearly as possible to the condition the Improvements and the Personal Property were in prior to the Damage (all such temporary and permanent repairs and the restoration, replacements, rebuilding and alteration being hereafter collectively referred to as the "Restoration"), without regard to the availability or adequacy of insurance proceeds. The Restoration shall be commenced promptly and shall be prosecuted with reasonable diligence. If the General Contractor and/or the Construction Consultant (each as defined the Loan Agreement) estimate that the cost of Restoration would be in excess of the sum of (a) the amount of the net insurance proceeds available therefor, and (b) the aggregate of funds available to be disbursed under the Debt and pursuant to the Construction Escrow Agreement being delivered of even date herewith. Mortgagor shall deposit with Mortgagee the cash in the amount of such deficiency, or such security, in lieu thereof (the "Security"), as shall be reasonably satisfactory to the Mortgagee.

(ii) All insurance money paid to the Mortgagee on account of the Damage, and the Security, less the actual cost, fees and expenses, if any (including, without limitation, reasonable attorneys' fees and disbursements), of the Mortgagee incurred in connection with adjustment of the loss, (collectively, the "Deposit"), shall be held by the Mortgagee, without interest, and shall be disbursed by it subject to and conditioned upon compliance with the terms and conditions of the Construction Loan Agreement and the Construction Escrow Agreement, the terms and conditions of which are incorporated by reference herein as if fully set forth herein and the following terms and conditions:

(1)    the holder of any lien or mortgage on the Mortgaged Property subordinate to the lien of the Mortgage shall, in a manner reasonably satisfactory to the Mortgagee, have released, waived and subjected its right to the insurance proceeds described above in this Section to the terms of this Section,

(2)    Notwithstanding any provision of this Subsection to the contrary, if (a) at any time during the Restoration, the Mortgagor shall be in default under any provision of this Mortgage beyond any applicable grace period, or (b) the

13

BK5973PG031

General Contractor and/or the Construction Consultant shall determine prior to commencment of the Restoration that the Restoration cannot be completed prior to the Maturity Date as defined in the Note then, the Mortgagee shall have no obligation to apply insurance money to the Restoration and the Mortgagee shall have the right, in its discretion, to apply such insurance money to reduce the Debt, or to complete any repair or restoration, or to do any one or more of the foregoing as the Mortgagee, in its sole discretion, may determine.

(3)  Under no circumstance shall the Mortgagee become personally liable for the fulfillment of the terms, covenants, conditions or obligations contained in any lease of the Mortgaged Property or obligated to take any action to restore the Improvements or the Personal Property.

(4)  The Mortgagee and its officers, employees and agents may inspect the Mortgaged Property from time to time to determine the Mortgagor's compliance with this Section.

(5)  Excepting the cost of adjustment of insurance claims as covered in subsection (2) above, all professional, legal or administrative costs, expenses and disbursements, including reasonable attorneys' fees and disbursements, appraisal costs, engineer's or architect's fees, inspection fees and reports, and other professional services paid by the Mortgagee in connection with this Subsection shall be paid by the Mortgagor, to the Mortgagee, upon demand.

## Section 1.9.  Condemnation.

(a)  The Mortgagor shall give the Mortgagee prompt notice of any condemnation or eminent domain proceedings affecting the Mortgaged Property.

(b)  The Mortgagor will not enter into any agreement for a Taking of the Mortgaged Property, or any part thereof, without the prior written consent of the Mortgagee.

(c)  In the event the whole or any part of the Mortgaged Property shall be the subject of a Taking, or shall be voluntarily conveyed in lieu thereof prior to the payment in full of the Debt, the Mortgagor shall pay to the Mortgagee, during the period from the date of a Taking (or conveyance in lieu thereof) to the payment in full of the Debt, the difference, if any, between the interest payable thereon at the rate stipulated in the Note in respect of the Debt and the interest actually paid to the Mortgagor by the entity exercising the right of eminent domain or to whom the Mortgaged Property was conveyed in lieu of the exercise of such power.

83108

14

(d)  All Awards are hereby assigned to the Mortgagee.  The Mortgagee and its legal representatives, successors and assigns (at its or their option) are hereby irrevocably authorized and empowered to collect and receive the Awards from the authorities making the same, to give proper receipts and acquittances therefor in any of their names or in the name of the Mortgagor, and to apply the same toward the payment of the Debt, the Note or this Mortgage, in such priority and proportions as the Mortgagee in its discretion shall deem proper, although the Debt secured by this Mortgage then may not be due and payable.  If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by the Mortgagee of any Awards, the Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive any Awards, or a portion thereof sufficient to pay the Debt, whichever is less.

(e)  Notwithstanding any Taking, the Mortgagor shall continue to pay the Debt at the time and in the manner provided for in the Note and in this Mortgage and the Debt shall not be reduced until any Awards shall have been actually received and applied by the Mortgagee to the discharge of the Debt.  The Mortgagor shall file and prosecute its claim or claims for any Awards in good faith and with due diligence and cause the same to be collected and paid over to the Mortgagee.  The Mortgagor, further, hereby irrevocably appoints the Mortgagee and its officers and employees the attorney-in-fact of the Mortgagor, coupled with an interest, to file, prosecute, settle, and compromise its claims for any Awards, to receive any Awards and to endorse any instruments with respect thereto.  The Mortgagor further agrees that although it is hereby expressly agreed that the same shall not be necessary in any event, the Mortgagor shall, upon demand, of the Mortgagee, make, execute and deliver to it any and all assignments and other instruments sufficient for the purpose of assigning any Awards to the Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

## Section 1.10.  Condominium Provisions.

(a)  The Mortgagor will fully and faithfully perform and comply with the terms, conditions, and provisions of the Master Deed, By-Laws, rules and regulations of the Condominium and any other documents creating or governing the Condominium.  The Mortgagor will not, without the prior written consent of the Mortgagee, subdivide or partition the Unit or the common elements which are appurtenant to the Unit.

(b)  The principal sum, secured by this Mortgage, together with the accrued and unpaid interest thereon, will immediately become due at the option of the Mortgagee if:

53100

15

BK5973PG0033

(i)     the Mortgagor fails within any applicable grace and notice periods to fully and faithfully perform and comply with the terms, conditions and provisions of the Master Deed, By-Laws, rules and regulations of the Condominium, or any other documents creating or governing the Condominium such matters;

(ii) the Master Deed, By-Laws, rules and regulations of the Condominium or any other document creating or governing the Condominium is materially changed in a manner which materially and adversely affects the lien or security of this Mortgage, as determined by the Mortgagee in its sole discretion;

(iii) The Condominium is terminated, or the Condominium is withdrawn from the provisions of the Condominium Act.

(iv) The Condominium Act or any part or provisions thereof is determined to be invalid or unenforceable and such determination affects the lien of this Mortgage or the rights of the Mortgagee hereunder;

(v)  The Mortgagor subdivides or partitions the Unit or the common elements appurtenant to the Unit without the prior written consent of the Mortgagee, such consent not to be withheld unreasonably; provided, however, that the provisions of this clause (v) shall not preclude or prohibit the making by the Mortgagor of interior alterations or modifications to the Unit;

(vi) there is a transfer, release, creation of liens (other than any Permitted Exceptions or any liens of Northwestern affecting the common elements of the Condominium), partition, subdivision, condemnation or taking of all or part of the common elements of the Condominium which materially and adversely affects the lien or security of this Mortgage, as determined by the Mortgagee in its sole discretion; and which in the case of any lien affecting the common elements, is not discharged by payment, bonding or otherwise within thirty (30) days after Mortgagor receives notice of same, or

(vii) third party professional management of the Condominium is terminated.

(c)  The Mortgagee may pay for the account and on behalf of the Mortgagor any amount which the Mortgagor is obligated to pay, including common expenses or special assessments, to the Board or pursuant to the Master Deed, By-Laws, rules and regulations of the Condominium or any other documents creating or governing the Condominium, upon ten (10) days of prior written notice to Mortgagor given after Mortgagor's default beyond applicable grace periods in paying the same, and the Mortgagee may perform any act,

83108

16

BK 5973 PG 0 34

employ any person or entity, and cast any vote on behalf of the Mortgagor which the Mortgagor may or is obligated to do pursuant to the Master Deed, By-Laws, rules and regulations of the Condominium or any other document creating or governing the Condominium upon default by the Mortgagor beyond any notice and applicable grace periods in doing the same. All sums paid by the Mortgagee under this Section (including reasonable counsel fees and expenses) shall be paid by the Mortgagor to the Mortgagee, upon demand, together with the interest thereon at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be evidenced and secured by this Mortgage.

(d) Upon default beyond applicable grace periods by the Mortgagor in timely paying to the Mortgagee any sum required as provided above in Subsection (c), the whole of the Debt and all other sums and interest secured by this Mortgage shall immediately become due and payable at the option of the Mortgagee. Nothing contained in Subsection (c) above shall obligate the Mortgagee to pay any sums or perform any acts on behalf of the Mortgagor. Furthermore, if the Mortgagee pays such amounts or performs such acts on behalf of the Mortgagor, the same shall not constitute a waiver or forgiveness by the Mortgagee of the Mortgagor s default under this Mortgage or any estoppel against the Mortgagee from declaring the Mortgagor in default hereunder.

Section 1.11. Estoppel Certificates.

(a) The Mortgagor, within twenty (20) days of the receipt of a request from the Mortgagee, but not more frequently than twice in any twelve month period, will furnish a written statement, duly acknowledged, of the amount due on the Debt and whether any offsets and defenses exist against the Debt.

(b) The Mortgagee, within twenty (20) days of the receipt of a request from the Mortgagor, but not more frequently than twice in any twelve month period, will furnish to the Mortgagor a statement setting forth the principal balance then outstanding on the Note, accrued interest thereon to the date of the statement and the date to which such interest has been paid.

Section 1.12. Financial Statements.

(a) The Mortgagor agrees to furnish or cause to be furnished to the Mortgagee, within one hundred twenty (120) days next following the end of its fiscal or calendar year, as the case may be, with a complete financial and operating statement of the Mortgagor, and any guarantor of the payment of the Note (which

53100

17

BK 5973 PG 035

shall not include CalPERS (as defined in the Loan Agreement) and/or of this Mortgage or the completion of the Improvements (each, a "Guarantor" and collectively the "Guarantors"), each such statement shall be in a form and shall contain such information as the Mortgagee may reasonably require, and be dated as of December 31, or the last day of any fiscal year of each entity required to comply with this Section if not a calendar year, of each year during the term of this Mortgage. Each such statement shall (1) include, without limitation, a balance sheet (which, if applicable, shall be a consolidated balance sheet), an income statement, a statement of partner's capital (to the extent applicable to such entity) and a statement of cash flow and of all of its contingent liabilities, (2) be prepared in accordance with generally accepted accounting principles, in reasonable detail; and (3) be certified as correct by a Member of Mortgagor satisfactory to the Mortgagee.

(b)   Promptly after a request therefor, the Mortgagor shall furnish to the Mortgagee such other financial data or information as the Mortgagee may reasonably request from time to time.

(c)   at the same time as it delivers the financial statements required under the provisions of Subsections (a) and (b) above, the Mortgagor shall furnish to the Mortgagee a certificate signed by the Mortgagor, to the effect that no default (an "Event of Default") under the Note and/or under this Mortgage or in or under any other agreement to which the Mortgagor is a party or by which it is bound, or by which any of its properties or assets may be affected, and to the best knowledge of Mortgagor, no event which, with the giving of notice or the lapse of time, or both, would constitute such an Event of Default, has occurred, and specifying in reasonable detail, the exceptions, if any, to such statement.

(d)   If any of the parties required to comply with this Section are individuals, then such individuals and the Guarantors shall furnish to the Mortgagee, within one hundred twenty (120) days of the filing thereof, a true copy of such individuals Federal Income Tax returns for the preceding calendar year.

(e)   The Mortgagee shall have the right to inspect the books and records of the Mortgagor at reasonable times and upon reasonable prior notice.

(f)   Failure to provide the financial statements, tax returns and other financial information within the time period required by this Section 1.12 shall entitle the Mortgagee within five business (5) days after prior written notice given thereafter to, in addition to and not in limitation of the other remedies the Mortgagee as afforded hereunder, to increase the rate of interest

83106

18

payable under the Note by three (3%) percent per annum for the longer of (i) thirty (30) days, or (ii) such date as the financial statements, tax returns and other financial information are delivered to the Mortgagee.

Section 1.15.  Restrictions on Sales and Transfers.

The Mortgagor shall not, without the prior consent in writing of the Mortgagee, voluntarily change the use of the Mortgaged Property or sell, transfer, or convey its interest in the Mortgaged Property or any part thereof in or by any one or series of transactions, or permit the Mortgaged Property or any part thereof or any interest therein to be sold, transferred, or conveyed.  For the purposes of this Section a "sale" shall include:  (I) if the Mortgagor is a corporation, a majority of its voting shares of stock shall be sold, transferred or pledged, or the majority interest therein shall be transferred by the issuance of new shares or otherwise, in any one or series of transactions; (II) if the Mortgagor is a partnership, joint venture, limited liability company, or similar entity, the majority of the interest or interests in the Mortgagor be sold, transferred or pledged or the majority of the interests therein be transferred or diluted by the admission of new partners, members or otherwise, in any one or series of transactions; or, if by operation of law, either the Mortgaged Property or such voting shares or interests shall be sold, transferred or pledged, in any one or series of transactions. Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to further or successive transactions.

Section 1.15.  Restrictions on Leasing and Further Encumbrances.

The Mortgagor shall not, without first obtaining the prior consent of the Mortgagee in each such instance:

(a)  mortgage, convey or grant a lien subordinate to this Mortgage on the Mortgaged Property, or on any or all of the Unit, Improvements, Personal Property or Appurtenances of which it is comprised;

(b)  collect any Rents for a period of more than one month in advance other than the security deposited in connection with a Lease;

(c)  further pledge, transfer, mortgage or otherwise encumber or assign the Leases and Rents;

(d)  execute or permit to exist any Lease except for occupancy by the lessee under and pursuant to a written lease

53158

19

substantially in the form of Mortgagor's standard lease as approved by Mortgagee;

(e) consent or agree to accept a subordination of any Lease to any mortgage or other encumbrance (other than this Mortgage) now or hereafter affecting the Mortgaged Property;

(f) create or permit to exist any easement or restrictive covenant affecting the Mortgaged Property other than those exceptions to title as set forth in the Title Policy.

Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions.

Section 1.15. Liens.

The Mortgagor shall discharge of record, by the filing of a bond pursuant to court order or otherwise, any Notice of Unpaid Balance and Right to File Lien, construction lien, mechanic's or materialmen's lien or a judgment lien filed against the Mortgaged Property, within thirty (30) days after Mortgagor has received notice thereof.

Section 1.16. No Recorded Restrictions Based on Race, Etc.

The Mortgagor shall not execute or file or record any instrument which imposes a restriction upon the sale or occupancy of the Mortgaged Property on the basis of race, sex, religion, national origin, color or creed. Upon any violation of this undertaking, the Mortgagee may, at its option, declare the unpaid balance of the Debt to be immediately due and payable.

Section 1.17. Maintenance of Existence.

The Mortgagor will, if other than a natural person, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation, partnership, limited liability company, trust or other entity under the laws of the jurisdiction of its formation or incorporation and will comply with all regulations, rules, ordinances, laws, statutes, orders and decrees of any governmental authority applicable to it or to the Mortgaged Property, or any part thereof. If the Mortgagor herein is a corporation, then the Mortgagor represents that the execution of this Mortgage has been duly authorized by the Board of Directors of the Mortgagor and this Mortgage is made in the regular and ordinary course of business. If the Mortgagor herein is a partnership, limited liability company or joint venture, then the Mortgagor represents that, as may be the case, all of its general partners, members, and, to the extent

53100

20

BK5973PG038

required by law and its organizational documents, its limited partners, members, if any, have authorized the execution of this Mortgage and this Mortgage is made in the regular and ordinary course of business.

### Section 1.18. Usury.

Nothing herein or in the Note, and none of the terms, covenants, conditions or obligations hereof or thereof shall impose or shall be deemed to impose upon the Mortgagor an obligation to make any payment, pay any interest or late charges in excess of, or do any act or take any action, or forbear from doing any act or taking any action, in violation of any statute, rule, ordinance or regulation in effect and effective as of the date of such payment, act, action or forbearance. In no event shall the Mortgagor be required to make any such illegal or impermissible payment or to take or do any such illegal or impermissible act or forbear from so doing or so taking nor shall any such failure so to pay or act or such forbearance be deemed a default hereunder. If the provisions of this Mortgage would at any time otherwise require payment by the Mortgagor to the Mortgagee of an amount of interest in excess of the maximum amount then permitted by law, the interest payments to the Mortgagee shall be reduced to the extent necessary so that the Mortgagee shall not receive interest in excess of such maximum amount. To the extent that, pursuant to the foregoing sentence, the Mortgagee shall receive interest payments hereunder in an amount less than the amount otherwise provided, such deficit (the "Interest Deficit") will accumulate and will be carried forward (without interest) until the Debt is paid in full. Interest otherwise payable to the Mortgagee hereunder for any subsequent period shall be increased by the maximum amount of the Interest Deficit that may be so added without causing the Mortgagee to receive interest in excess of the maximum amount then permitted by law. The terms, covenants, conditions and obligations hereof or of the Note requiring any such illegal or impermissible payment, act, action or forbearance on the part of the Mortgagor to be made or taken are deemed amended, modified or altered in such a manner as to bring all and each of them into conformity with the applicable statutes, rules, ordinances or regulations in respect of the Mortgagor and the Mortgagor hereby covenants and agrees to abide by, conform to and comply with any and all such terms, covenants, conditions and obligations as so amended, modified or altered.

### Section 1.19. Payment of Charges; Advances and Disbursements; Costs of Administration and Enforcement.

(a) Upon default of the Mortgagor in the performance of any term, covenant, condition or obligation by the Mortgagor to be performed under the Note or this Mortgage beyond any applicable grace periods, or to pay, when due, any of the sums which the

BK5973PG039

Mortgagor is required to pay as provided above in Section 1.4 beyond any applicable grace period, the Mortgagee may, but shall not be obligated to, cure such default, or make such payment in the name and on behalf of the Mortgagor. All sums advanced and all expenses incurred at any time by the Mortgagee pursuant to this Section 1.19, or as otherwise provided under the terms, covenants, conditions or obligations of this Mortgage or under applicable law shall be reimbursed by the Mortgagor to the Mortgagee, upon demand, and shall bear interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(b)    The Mortgagor shall bear and pay all direct and incidental expenses (including, without limitation, reasonable attorneys' fees and disbursements for legal services of every kind at trial and appellate level) relating to the enforcement of this Mortgage and the other Loan Documents (as defined in Section 2.1.1(h) of this Mortgage) in any case after any default beyond applicable grace periods. All such expenses paid by the Mortgagee shall be reimbursed by the Mortgagor to the Mortgagee, upon demand, and shall bear interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

Section 1.20. Assignment of Leases and Agreements.

(a)    The Leases of the Mortgaged Property and all Rents accruing therefrom are hereby transferred and assigned to the Mortgagee, and the Mortgagee shall have the right to enter upon the Mortgaged Property for the purpose of collecting the same and to let and operate the Mortgaged Property or any part thereof and to apply the Rents, either in whole or in part, as the Mortgagee elects, to the payment of all charges and expenses of the Mortgaged Property or in reduction of any part of the Debt or other sums due or to become due under the Note or this Mortgage. This assignment of the Rents is an absolute, unconditional and present assignment by the Mortgagor to the Mortgagee of the Rents and not merely the passing of a security interest therein, which grant shall continue in effect until the Debt and all other obligations secured by this Mortgage are paid in full. The Mortgagee hereby waives the right

83106

22

3K5973PG040

to enter upon the Mortgaged Property for the purpose of collecting the Rents and the Mortgagor shall have a license to collect and receive the Rents until an Event of Default (as hereinafter defined) hereunder, but such license of the Mortgagor may be revoked by the Mortgagee upon any such Event of Default. From and after the occurrence of an Event of Default hereunder beyond any applicable grace period, all Rents collected or received by Mortgagor shall be accepted and held for Mortgagee in trust and shall not be commingled with the funds and property of Mortgagor, but shall be promptly paid over to Mortgagee. The Mortgagee may apply all Rents or any part thereof so received hereunder, after the payment of all of its expenses including costs and attorneys' fees, to the Debt in such manner as it elects or at its option the entire amount or any part thereof so received may be released to the Mortgagor.

(b)  All future Leases entered into after the execution of this Mortgage for the whole or part of the Mortgaged Property shall contain the following provision:

"Tenant\Lessee hereby agrees not to look to the mortgagee of (i) the fee interest in the premises demised by this Lease; or (ii) the lease to which this Lease is subordinate, in such mortgagee's capacity as mortgagee, mortgagee in possession, successor in title to such interest, or otherwise for accountability for any security deposit required by the landlord hereunder, unless said sums have actually been received by said mortgagee as security for the tenant's performance of this Lease"

Section 1.21.  Right of Inspection.

The Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times upon reasonable notice.

Section 1.22.  Late Charges.

In the event that any payment shall become overdue for a period in excess of ten (10) days, a "late charge" of five/cents ($.05), or such lesser amount as may be permitted by law in respect of the Mortgagor, for each dollar so overdue may be charged by the Mortgagee for the purpose of defraying the expenses incident to handling such delinquent payment.

63100

23

BK5973PG041

### Section 1.23.  Environmental Matters.

(a)  For purposes of this Mortgage, the following terms shall have the following meanings:

"Environmental Complaint" - shall mean any judgment, lien, order, complaint, notice, citation, action, proceeding or investigation pending before any Governmental Authority, including, without limitation, any environmental regulatory body, with respect to or against or affecting the Mortgagor or relating to its business, assets, property or facilities or the Mortgaged Property, in connection with any Hazardous Material or any Hazardous Discharge or any Environmental Law.

"Environmental Laws" - shall mean any applicable federal, state or local laws, rules, regulations, resolutions, ordinances, directives or orders (whether now existing or hereafter enacted or promulgated) or any judicial or administrative interpretation of such laws, rules, regulations, resolutions, ordinances, directives or orders or any other applicable determination regarding land, water, air, health, safety or environment, including, for example but not limited to, the Federal Statutes and the State Statutes, both as hereinafter defined.

"Governmental Authority" - shall mean any federal, state, or local government, governing body, agency, court, tribunal, authority, subdivision, bureau or other recognized body having jurisdiction to enact, promulgate, interpret, enforce, review or repeal any Environmental Law.

"Hazardous Materials" - shall mean, without limitation, flammables, explosives, radioactive materials, urea formaldehyde foam insulation, polychlorinated biphenyls or related or similar materials, petroleum products, explosives, radioactive materials, or any other hazardous or toxic or harmful materials, wastes and substances or any other chemical, material, substance or element which is now or hereafter defined, determined, identified, prohibited, limited or regulated by the Environmental Laws, or any other chemical, material, substance or element which is known to be harmful to the health or safety of occupants of property or which is now or hereafter defined as a hazardous or toxic substance by any Federal, State, or local law, ordinance, rule or regulation, including, but not limited to the Toxic Substances Control Act (15 U.S.C. 2601, _et seq._), the Federal Water Pollution Control Act (33 U.S.C. 1251, _et seq._), the Clean Air Act (42 U.S.C. 7401, _et seq._), the Resource Conservation and Recovery Act (42 U.S.C. 6901 et seq.), the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. 9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. 1801 et seq.), and/or the regulations promulgated in relation thereto, all

53108

24

BK5973PG042

as the same may be amended from time to time (collectively, the "Federal Statutes"), the New Jersey Environmental Cleanup Responsibility Act, as amended by the New Jersey Industrial Site Recovery Act (N.J.S.A. 13:1k-6 et seq.) (collectively, "ISRA"); the New Jersey Spill Compensation and Control Act (N.J.S.A. 58:10-23.11b et seq.) (the "Spill Act"); the New Jersey Solid Waste Management Act, as amended (N.J.S.A. 13:1E-1, et seq.); the New Jersey Underground Storage Tank Act, as amended (N.J.S.A. 58:10A-21 et seq.); the New Jersey Water Pollution Control Act, as amended (N.J.S.A. 58:10A-1 et seq.); the New Jersey Air Pollution Control Act (N.J.S.A. 26:2C-1 et seq.); the New Jersey Worker and Community Right to Know Act (N.J.S.A. 34:5A-1 et. seq.); and the New Jersey Toxic Catastrophe Prevention Act (N.J.S.A. 13:1-19, et seq.) and the regulations promulgated in relation thereto, all as the same may be amended from time to time (collectively, the "State Statutes").

"Hazardous Discharge" - shall mean any release of a Hazardous Material caused by the seeping, spilling, leaking, pumping, pouring, emitting, using, emptying, discharging, injecting, escaping, leaching, dumping or disposing of any Hazardous Material into the environment.

"Major Facility" - shall have the meaning ascribed to it in ISRA.

(b) The Mortgagor covenants, represents and warrants that:

(i)    to the best of the Mortgagor's knowledge, after due inquiry and investigation and except as may be set forth in any environmental report or survey delivered to Mortgagor in connection with the Loan, none of the real property owned or occupied by the Mortgagor and located in the state in which the Mortgaged Property is situated, including, but not limited to the Mortgaged Property, has ever been used by previous owners, operators or occupants or the Mortgagor to generate, manufacture, refine, transport, treat, store, handle or dispose, transfer, produce, process or in any manner deal with any Hazardous Material in violation of any Environmental Law, except as otherwise described by Mortgagor to Mortgagee in writing;

(ii)    the Mortgagor has not received a summons, citation, directive, letter or other communication, from any Government Authority concerning any intentional or unintentional action or omission on the Mortgagor's part which had resulted in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of "Hazardous Substances" into waters or onto lands of the State of New Jersey, or into waters outside the jurisdiction of the State of New Jersey where damage may have

25

BK5973PG043

resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State of New Jersey;

((iii)   to the best of the Mortgagor's knowledge, no lien has been attached to any revenues or any real or personal property owned by the Mortgagor and located in the state where the Mortgaged Property is located, including, but not limited to the Mortgaged Property,> for "Damages" and/or "Cleanup and Removal Costs", as such terms are defined in any Environmental Law, arising from an intentional or unintentional act or omission in violation thereof by the Mortgagor or by any previous owner and/or operator of such real or personal property, including, but not limited to the Mortgaged Property;

(iv)   the Mortgagor has duly complied in all material respects, and shall continue to comply in all material respects, with the provisions of the Environmental Laws governing it, its business, assets, property, facilities and the Mortgaged Property, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws;

(v)   the Mortgagor shall not, and shall not permit any of its officers, partners, members, employees, agents, contractors, licensees, tenants, occupants or others to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce, process or in any manner deal with any Hazardous Material on the Mortgaged Property in violation of Environmental Laws;

(vi)   there is not now outstanding any Environmental Complaint issued by any Governmental Authority to the Mortgagor or relating to the Mortgagor's business, assets, property, and facilities or the Mortgaged Property under any Environmental Law, and to the best of Mortgagor's knowledge except as set forth in any environmental report or survey delivered to Mortgagee, there is not now existing any condition which, if known by the proper authorities, could result in any Environmental Complaint except in accordance with all Environmental Laws applicable thereto;

(vii)   to the best of Mortgagor's knowledge, the Mortgagor has, and will continue to have, all necessary licenses, certificates and permits under the Environmental Laws relating to the Mortgagor and its facilities, property, assets, and business, and the Mortgaged Property and the foregoing are in compliance with all Environmental Laws;

(viii)   to the best of Mortgagor's knowledge except as may be set forth in any environmental report or survey delivered

53196

26

BK 5973 PG 044

to Mortgagee, none of the real property owned or occupied by the Mortgagor and located in the State of New Jersey, including, but not limited to, the Mortgaged Property, has been or is now being used as a Major Facility, and such real property, including, but not limited to the Mortgaged Property, will not be used as a Major Facility after completion of the construction, renovation, restoration and other developmental work, if any, which the Mortgagor intends to undertake thereon;

(ix) the Mortgagor hereby agrees that in the event the provisions of ISRA become applicable to the Mortgaged Property subsequent to the date hereof, the Mortgagor shall give prompt written notice thereof to the Mortgagee and shall take immediate requisite action to insure full compliance with such Act.

(c) If the Mortgagor receives any notice of (i) the presence of Hazardous Materials on the Mortgaged Property, (ii) any violation of or noncompliance with any Environmental Law, (iii) the occurrence of a Hazardous Discharge on or about any asset, business, facility or property of the Mortgagor or caused by the Mortgagor, or (iv) any Environmental Complaint affecting the Mortgagor or the Mortgaged Property or the Mortgagor's operations, assets, business, facilities or properties, then the Mortgagor will give written notice of the foregoing to the Mortgagee within ten (10) days of receipt thereof and shall (1) promptly comply with the Environmental Laws and all other laws, regulations, resolutions and ordinances to correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint and (2) shall (i) post a bond from a surety or (ii) cause a lending institution to issue a letter of credit for the benefit of the Mortgagee, and any Governmental Authority requiring the same; the surety or the lending institution, and the form, the substance and the amount of the bond or letter of credit to be satisfactory to the Mortgagee and satisfactory to the applicable Governmental Authority, or shall give to the Mortgagee and the applicable Governmental Authority such other security satisfactory in form, substance and amount to both the Mortgagee and the applicable Governmental Authority to assure that the Mortgagor does correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint.

(d) Notwithstanding the foregoing provisions of Subsection (c) above, the Mortgagor shall have the right (i) to contest (a "Contest") by appropriate administrative, legal or equitable proceedings, diligently prosecuted, in good faith, in its name or in the name of the Mortgagee if required by law, at the sole cost and expense of the Mortgagor, the validity or applicability of any Environmental Laws, or any Environmental Complaint against the Mortgaged Property or the Borrower, and

53100

27

BK5973PG045



(ii) to postpone compliance with the Environmental Laws until the final determination of such Contest without violating the provisions of this Mortgage provided, however:

(i) enforcement proceedings with respect to any and all Environmental Laws are deferred or stayed during the pendency of the Contest,

(ii) the Mortgagee shall not be subject to any civil or criminal or other penalties or liabilities, costs or expenses by reason of any such Contest or postponement in complying with the Environmental Laws;

(iii) the Mortgagor shall (i) post a bond, cause the issuance of a letter of credit or provide such other security required under the provisions of Subsection (c) above,

(iv) the lien of this Mortgage shall not be impaired in the reasonable judgment of the Mortgagee and no default beyond applicable grace periods shall exist under this Mortgage,

(v) any Contest shall be instituted promptly after Mortgagor receives notice of the existence of any Environmental Law which imposes an obligation upon the Mortgagor or the Mortgagee or any Mortgagor receives notice of any Environmental Complaint which asserts any obligation or liability affecting any Mortgagor, the Mortgagee or all or any portion of the Mortgaged Property, and such Contest shall at all times be diligently prosecuted until a final disposition is obtained that negates such assertion of obligation or liability, and

(vi) the Mortgagor shall notify the Mortgagee, in writing within ten (10) days after commencement of a Contest, and shall give the Mortgagee a monthly report, during the period of a Contest, on the Mortgagor's progress with respect thereto, and shall promptly give the Mortgagee such other information with respect thereto as the Mortgagee shall reasonably request.

(vii) The Mortgagee will, at the expense of the Mortgagor, execute and deliver any documents jurisdictionally necessary or proper to prosecute such Contest proceedings. The Mortgagee, at the cost and expense of the Mortgagee, shall have the right (but not the obligation) to join in any Contest.

(e) Without limitation of the Mortgagee's rights under this Mortgage or applicable law, the Mortgagee shall have the right, but not the obligation, to exercise any of its rights to cure as provided in this Mortgage or to enter onto the Mortgaged Property or to take such other actions as it deems necessary or advisable to correct, contain, cleanup, remove, resolve or minimize

53108

28

the impact of, or otherwise deal with, any such Hazardous Material, Hazardous Discharge or Environmental Complaint upon its receipt of any notice from any person or entity or Governmental Authority, informing the Mortgagee of such Hazardous Material, Hazardous Discharge or Environmental Complaint, which if true, could adversely affect the Mortgagor or any part of the Mortgaged Property or which, in the sole opinion of the Mortgagee, could adversely affect its collateral security under this Mortgage; provided, however, that Mortgagee shall not exercise any of such rights unless Mortgagor shall fail to promptly commence and diligently prosecute any such actions after receipt of notice from Mortgagee. All reasonable costs and expenses incurred and paid by the Mortgagee in the exercise of any such rights shall be paid by the Mortgagor to the Mortgagee upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(f) Upon reasonable notice to the Mortgagor, the Mortgagee, its officers, employees, agents and contractors, may enter the Mortgaged Property to inspect it and to conduct, complete and take such tests, samples, analyses and other processes (an "Environmental Survey") as the Mortgagee shall require to determine the Mortgagor's compliance with this Subsection and the Environmental Laws. The costs, expenses and fees of the Mortgagee of such entry, inspection, tests, samples, analyses and processes shall be secured by this Mortgage and paid, and reimbursed by the Mortgagor to the Mortgagee, upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee, with interest thereon at the rate provided to be paid on the indebtedness secured by this Mortgage, shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(g) Upon written request, the Mortgagor shall provide to the Mortgagee (to the extent in Mortgagor's possession) the following information pertaining to all operations conducted in or on the Mortgaged Property:

(i) copies of all licenses, certificates and permits under the Environmental Laws;

83108

29

BK5973PG047

(ii) material safety data sheets and maps, diagrams and site plans showing the location of all storage areas and storage tanks for all Hazardous Materials or other chemicals in, used at, manufactured at, brought to or stored at the Mortgaged Property;

(iii) copies of all materials filed with any Governmental Authority;

(iv) a description of the operations and processes of the Mortgagor; and

(v) any other information which the Mortgagee may reasonably require.

(h)  The Mortgagor covenants and agrees, at its sole cost and expense, to indemnify, protect, and save the Mortgagee harmless against and from any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including, without limitation, costs and reasonable attorneys' fees and disbursement, generally, and at trial and appellate level and experts' fees and disbursements) (any of the foregoing, an "Indemnified Claim") which may at any time be imposed upon, incurred by or asserted or awarded against the Mortgagee and arising from or out of:

(i)  the Mortgagor's failure to perform and comply with this Section, or

(ii) any Hazardous Material, any Hazardous Discharge, any Environmental Complaint, or any Environmental Law applicable to the Mortgagor, its operations, business, assets, property or facilities, or the Mortgaged Property, or

(iii) the imposition of any lien against the Mortgaged Property to the extent of damages caused by, or the extent of the recovery of any costs for the cleanup, release or threatened release of any Hazardous Material; or

(iv) any action against the Mortgagor under this indemnity or the assertion by the Indemnitor of any defense to its obligations hereunder.  Notwithstanding the foregoing, the Mortgagor shall not be liable for any Indemnified Claim to the extent arising out of the negligence or willful misconduct of Lender, its successors or assigns or any subsequent owner of the Mortgaged Property who takes title by foreclosure or deed-in-lieu thereof or any affiliates, officers, directors, stockholders, agents, partners and employees of any of them,

83100

30

BK5973PG0048

### Section 1.24. Trust Funds.

The Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement and the Mortgagor will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose.

### Section 1.25. Further Advances.

In addition to the Note, this Mortgage is intended to secure and provide for the payment and performance of any and all obligations now due and owing or which may hereafter be or become due or owing by the Mortgagor to the Mortgagee; however, the maximum amount secured by this Mortgage at execution or which under any contingency may be secured hereby at any time in the future shall not exceed in the aggregate (i) the stated principal amount of this Mortgage (ii) interest, and (iii) all other amounts advanced by the Mortgagee and secured by this Mortgage in accordance with the terms, covenants, conditions or obligations of this Mortgage for the protection of the Mortgaged Property or the preservation of the lien of this Mortgage or both. The obligation of the Mortgagee to make further or future advances or re-advances shall be optional with the Mortgagee. Advances and re-advances may be made under the provisions hereof, or otherwise, to the present or any future owner of the Mortgaged Property.

## ARTICLE II

### DEFAULTS AND REMEDIES

### Section 2.1.1. Events of Default-Optional Acceleration.

The Debt shall become due, at the option of the Mortgagee, upon the occurrence of any of the following events, which event shall be an "Event of Default":

(a) after default in the payment of any installment of principal or interest beyond any applicable grace period in accordance with the terms of the Note,

(b) after default in the payment of any other sum of money required to be paid or expended under this Mortgage, the Note, or any other Loan Document (as hereinafter defined) within five (5) business days after its due date,

(c) if any warranty, representation or certification made herein or in any financial statement furnished pursuant hereto or in connection with the indebtedness evidenced by the Note and

83100

31

BK5973PG049

secured by this Mortgage (the "Loan") shall have been materially false as of the date made,

(d)   after the cancellation, lapse or termination of any insurance policy required to be maintained with respect to the Mortgaged Property under Section 1.7 hereof,

(e)   after default after ten (10) days notice and demand in (i) delivering the policies insuring the Improvements or the Personal Property against loss as hereinafter provided in Section 1.7 hereof or (ii) reimbursing the Mortgagee for premiums paid on such insurance, as hereinabove provided for,

(f)   after default within twenty (20) days after written request in furnishing a statement of the amount due on this Mortgage and whether any offsets or defenses exist against the Debt, as hereinabove provided for,

(g)   if the Mortgagor does or permits to be done anything that may in any way impair the lien of this Mortgage or impair the value of the Mortgaged Property, or any of the Improvements or weaken or diminish the security intended to be given under and by virtue of this Mortgage, subject to notice and opportunity to cure as provided in Section 2.2 hereof,

(h)   the occurrence of an Event of Default (as defined in the Loan Agreement);

(j)   any default beyond any applicable grace period of (i) the Mortgagor, (ii) under any bond, note, loan agreement, guarantee, or any other instrument or agreement in connection with the borrowing of money or the obtaining of advances or credit, or of any instrument given to secure the same, to which such party and Mortgagee or its affiliates are parties, which default would permit the acceleration of such indebtedness,

(k)   if a default beyond any applicable grace period occurs under any mortgage which is prior, equal or subordinate to the lien of this Mortgage and the mortgagee under any such prior, equal or subordinate mortgage commences a foreclosure action in connection with said mortgage as a result of such default;

(l)   the further mortgage, pledge or encumbrance by the Mortgagor of the Mortgaged Property or any part thereof or any interest therein without the prior written consent of the Mortgagee;

53166

32

(m)  the further  assignment  or  encumbrance  by  the Mortgagor, of the Rents arising from the Mortgaged Property, or any part thereof, without the prior written consent of the Mortgagee in each instance;

(n)  if the Mortgagor leases all or any part of the Mortgaged Property in violation of the terms and conditions of this Mortgage;

(o)  the occurrence, in the reasonable judgment of the Mortgagee, of a material adverse change in the identity, control, financial condition or operation of the Mortgagor, a Guarantor  or the Mortgaged Property, subject to notice and opportunity to cure as provided in Section 2.2 hereof,

(p)  if the Mortgaged Property ceases to be managed (including primary responsibility for leasing) by Applied Property Management Co., Inc., a New Jersey Corporation,  or such other person or entity as may be approved (which approval shall not be unreasonably withheld or delayed) by the Mortgagee in writing pursuant to a written agreement satisfactory to the Mortgagee in form and substance;

(q)  Subject to Mortgagee's right to contest same, any default, for thirty (30) days after notice and demand, in the payment of any taxes of any kind and nature, assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof after same become delinquent;

(r)  any failure for thirty (30) days after notice and demand to exhibit to the Mortgagee receipted bills for any taxes of any kind and nature, assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions herein referred to; or

(s)  the death of a Guarantor, unless the Estate of the first deceased Guarantor shall acknowledge and assume the decedent's Guarantor's obligations in writing within sixty (60) days of the date of such death and reaffirms in writing the obligations of the Estate to the Mortgagee.  In the event of the death, however, of the surviving Guarantor, then and in that event, at the option of the Mortgagee, in its sole discretion, the Mortgagee shall deem the same to be an Event of Default hereunder;

83100

33

BK5973PG051

### Section 2.1.2.  Events of Default-Automatic Acceleration.



The Debt shall forthwith and automatically become due, upon the occurrence of any of the following events which event shall also be an "Event of Default":

if the Mortgagor or any Guarantor shall:

(i)    call a meeting of or make an assignment for the benefit of creditors,

(ii)    file a petition in bankruptcy, under Title 11 of the U.S. Code, as amended (the "Bankruptcy Code"), or be adjudicated insolvent or bankrupt, file a petition in bankruptcy, or be adjudicated insolvent or bankrupt,

(iii)    be the subject of an order for relief under the Bankruptcy Code, or petition or apply to any tribunal for the appointment of a receiver or a trustee for it or a substantial part of its assets,

(iv) file any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, whether now or hereafter in effect,

(v)  have filed against it a petition, application or proceeding described above in subdivision (iv), or such a petition, application or proceeding shall have been commenced against it, which remains undismissed or unstayed for a period of ninety (90) days or more,

(vi) by any act indicate its consent to, approval of or acquiescence in any petition, application or proceeding described above in subdivision (iv) or in the appointment of a custodian, receiver or any trustee for it or any substantial part of any of its property,

(vii)    suffer    any    such    custodianship, receivership or trusteeship to continue undischarged for a period of ninety (90) days or more,

(viii)    conceal, remove or permit to be concealed or removed, any part of its property, with intent to hinder, delay or defraud its creditors or any of them,

(ix) make or suffer a transfer of any of its property which is determined to be fraudulent by any court of

34

BK5973PG052

competent jurisdiction under any bankruptcy, fraudulent conveyance or similar law,

(x)  make any transfer of the Mortgaged Property to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid,

(xi) shall suffer or permit, while insolvent, any creditor to obtain a lien upon any of its property through legal proceedings or distraint which is not vacated within sixty (60) days from the date thereof, or

Section 2.2.  Grace Provision.

If the Mortgagor shall fail to perform any of the terms, covenants, provisions or conditions of this Mortgage which provide for the payment of a sum of money only the Mortgagor shall have ten (10) days without notice after the date provided in this Mortgage to cure such default and if the default is of such nature that it cannot be cured by the payment of a sum of money only then the Mortgagor shall have a period of thirty (30) days where no time period is provided for performance (or such other number of days for performance as may be elsewhere provided in this Mortgage) after notice from the Mortgagee to cure such default.  However, if such non-monetary default cannot reasonably be cured within such thirty (30) day period (or such other number of days for performance as may be elsewhere provided in this Mortgage) and the Mortgagor shall have commenced to cure such default within such thirty (30) day period (or such other number of days for performance as may be elsewhere provided in this Mortgage) and thereafter diligently and expeditiously proceeds to cure the same, such thirty (30) day period (or such other number of days for performance as may be elsewhere provided in this Mortgage) shall be extended for so long as it shall require the Mortgagor, in the expeditious exercise of due diligence, to cure such default, it being understood that no extension shall be for a period beyond one hundred twenty (120) days; _provided_, _however_, that the extension of the grace period provided in this sentence shall not be applicable to the delivery of any financial statements or information required pursuant to Section 1.12 of this Mortgage. Any payment of the whole or any part of the principal sum due under the Note after the date provided therein for the making of such payment, shall bear interest at the Default Rate, beginning from such date that the payment was due.

Section 2.3.  Waiver of Automatic Stay.

The Mortgagor agrees that, in the event that the Mortgagor, any Guarantor or any of the persons, parties or entities constituting the Mortgagor or any such Guarantor shall (i) file

83186

35

BK5973PG053

with any bankruptcy court of competent jurisdiction or be the subject of any petition under the Bankruptcy Code, (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced-in the appointment of any trustee, receiver, conservator, or liquidator, or (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, the Mortgagee shall thereupon be entitled and the Mortgagor irrevocably consents to immediate and unconditional relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to the Mortgagee as provided for herein, in the Note, or in any other of the Loan Documents delivered in connection herewith and as otherwise provided by law, and the Mortgagor hereby irrevocably waives any right to object to such relief and will not contest any motion by the Mortgagee seeking relief from the automatic stay and the Mortgagor will cooperate with the Mortgagee, in any manner requested by the Mortgagee, in its efforts to obtain relief from any such stay or other prohibition.

Section 2.4.  Remedies.

(a) Upon the occurrence of any Event of Default, the Mortgagee may, in addition to any rights or remedies available to it hereunder or at law, take such action as it deems advisable to protect and enforce its rights against the Mortgagor and in and to the Mortgaged Property, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as the Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of the Mortgagee:

(i)        declare the entire unpaid Debt to be immediately due and payable;

(ii)       enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys, and dispossess the Mortgagor and its agents and servants therefrom, and thereupon the Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business

53188

36

thereat, (B) complete any construction on the Mortgaged Property in such manner and form as the Mortgagee deems advisable, (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property, (d) exercise all rights and powers of the Mortgagor with respect to the Mortgaged Property, whether in the name of the Mortgagor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all earnings, revenues, rents, issues, profits and other income of the Mortgaged Property and every part thereof, and (E) apply the receipts from the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments, insurance and other charges in connection with the Mortgaged Property, as well as compensation for the services of the Mortgagee, its agents and employees;

(iii) institute a proceeding or proceedings, for the complete or partial foreclosure of this Mortgage;

(iv) sell the Mortgaged Property, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and personal property, and at such time and place and upon such terms, as it may deem expedient, or as may be required by applicable law, and in the event of a sale of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Mortgaged Property;

(v) institute an action, suit or proceeding in equity for the specific performance of any covenants, conditions or agreements contained herein or in the Note;

(vi) recover judgment on the Note before, during, after or in lieu of any proceedings for the enforcement of this Mortgage;

(vii) obtain the appointment of a receiver, custodian, trustee, liquidator or conservator of the Mortgaged Property, to be vested with the fullest powers permitted under applicable law, as a matter of right without regard to, or the necessity to disprove, the adequacy of the security for the Debt or the solvency of Mortgagor or any other person liable for the payment of the Debt, and Mortgagor and each other person so liable waives or shall be deemed to have waived such necessity and consents or shall be deemed to have consented to such appointment;

83108

37

BK5973PG055

(viii)    with or without the entrance upon the Mortgaged Property, collect, receive, sue for and recover in its own name all rents, issues, profits and cash collateral derived from the Mortgaged Property; and after deducting therefrom all costs, expenses and liabilities of every character incurred by Mortgagee in collecting the same and in using, operating, managing, preserving and controlling the Mortgaged Property, and otherwise in exercising Mortgagee's rights under subsection (ii) of this Section, including all amounts necessary to pay impositions, insurance premiums and other charges in connection with the Premises, as well as compensation for the services of Mortgagee and its attorneys, agents and employees, apply the monies arising as aforesaid to the unpaid balance of the Note and any other portion of the Debt remaining unpaid;

(ix)    pursue such other remedies as the Mortgagee may have under one or more of the other Loan Documents and/or any other collateral given as security for the Loan; and

(x)    pursue such remedies as the Mortgagee may have under applicable law.

In the event that Mortgagee shall exercise any of the rights or remedies set forth in subsections (ii) and (viii) of this Section, Mortgagee shall not be deemed to have entered upon or taken possession of the Mortgaged Property except upon the exercise of its option to do so, evidenced by its demand and overt act for such purpose, nor shall it be deemed a mortgagee in possession by reason of such entry or taking possession. Mortgagee shall not be liable to account for any action taken pursuant to any such exercise other than for Rents actually received by Mortgagee, nor, liable for any loss sustained by Mortgagor resulting from any failure to let the Premises, or from any other act or omission of Mortgagee except to the extent such loss is caused by the willful misconduct or bad faith of Mortgagee.

(b)    The proceeds or avails of any sale made under or by virtue of this Section 2.4, together with any other sums which then may be held by the Mortgagee under this Mortgage, whether under the provisions of this Section 2.4 or otherwise, shall be applied as follows:

First:    To the payment of the costs and expenses of any such sale, including, without limitation, compensation to the Mortgagee, its agents and counsel, and of any judicial proceedings, including, without limitation, the costs and legal expenses of the Mortgagee in foreclosing or otherwise enforcing this Mortgage, wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Mortgagee under this Mortgage, together with interest at the Default Rate, and all taxes or

#3108

38

assessments, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold.

*Second:* To the payment of the whole amount then due, owing or unpaid upon the Note for principal and interest with interest on the unpaid principal at the Default Rate from and after the happening of any Event of Default described above in Section 2.1 until the same is paid.

*Third:* To the payment of any other sums required to be paid by the Mortgagor pursuant to any provision of this Mortgage, the Note and/all other Loan Documents.

*Fourth:* To the payment of the surplus, if any, to whosoever may be lawfully entitled to receive the same.

The Mortgagee and any receiver or custodian of the Mortgaged Property or any part thereof shall be liable to account for only those rents, issues and profits actually received by it.

(c)  The Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, the Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)  Upon the completion of any sale or sales made by the Mortgagee under or by virtue of this Section 2.4, the Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, granting, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. The Mortgagee is hereby irrevocably appointed the true and lawful attorney-in-fact of the Mortgagor (coupled with an interest), in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Mortgagee may execute all necessary instruments of conveyance, assignment, transfer and delivery, and may substitute one or more persons or entities with like power, the Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, the Mortgagor, if so requested by the Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to the Mortgagee or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of the Mortgagee, for such purpose, and as may be designated in such request. Any such sale or sales made under or

13100

39

BK5973PG057

by virtue of this Section 2.4, whether made under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against the Mortgagor and against any and all persons or entities claiming or who may claim the same, or any part thereof, either from, through or under the Mortgagor.

(e)   Upon any sale made under or by virtue of this Section 2.4 (whether made under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale), the Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may take settlement for the purchase price by crediting upon the Debt of the Mortgagor secured by this Mortgage the net sale price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which the Mortgagee is authorized to deduct under this Mortgage.

(f)   The obligation of this Mortgage and of the Note shall continue until the Debt is paid in full notwithstanding any action or actions or partial foreclosure which may be brought to recover any amount or amounts for installments of principal, interest, taxes, assessments, water and sewer charges, rents and rates or insurance or other sums or charges due and payable under the provisions of this Mortgage.

(g)   No recovery of any judgment by the Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of the Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, power or remedies of the Mortgagee hereunder, but such liens, rights, powers and remedies of the Mortgagee shall continue unimpaired as before, and notwithstanding any statutory rate of interest applicable with respect to judgments, after the entering or execution of any judgment, the Debt shall bear interest at the rate or rates payable under the Note and this Mortgage until the Debt shall have been paid in full.

(h)   In the event of a foreclosure of this Mortgage or the succession by the Mortgagee to the interests of the Mortgagor hereunder, the purchaser of the Mortgaged Property or such successor shall succeed to all rights of the Mortgagor, including any right to proceeds of insurance and to unearned premiums, and in and to all policies or certificates of insurance assigned and delivered to the Mortgagee pursuant to this Mortgage.

53168

40

(i) During such time that the Mortgagor shall be in default beyond any applicable grace period under this Mortgage, or under the Note, the Mortgagee, in the event that the Mortgagor shall not file a protest against any proposed assessed valuation of the Mortgaged Property at least thirty (30) days prior to the last date on which such protest may be legally filed, or having filed such protest and the same having been denied, shall not have commenced a proceeding for the reduction of said assessed valuation at least fifteen (15) days prior to the last date of which such proceedings may be legally commenced, the Mortgagee may, but shall have no obligation to, file such protest or commence and prosecute such proceeding, in its own name or in the name of the Mortgagor, and the Mortgagor agrees to cooperate fully, in good faith, with the Mortgagee in the conduct of any such proceeding. All expenses of any such filing by the Mortgagee or its commencement of any such proceeding, including, but limited to, reasonable counsel fees, shall be borne by the Mortgagor, and if paid by the Mortgagee shall be reimbursed by the Mortgagor to the Mortgagee, its successors or assigns, upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. All expenses incurred by the Mortgagee, as described above in this Subsection, and the interest thereon, shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(j) THE MORTGAGOR HEREBY WAIVES THE RIGHT TO TRIAL BY JURY, THE RIGHT TO CLAIM ANY OFFSET, AND THE RIGHT TO ASSERT A COUNTERCLAIM (OTHER THAN MANDATORY COUNTERCLAIMS) IN ANY ACTION OR PROCEEDING BROUGHT BY THE MORTGAGEE TO ENFORCE ANY OF ITS RIGHTS UNDER THE NOTE OR UNDER THIS MORTGAGE.

(k) The Mortgagor shall not be relieved of the Mortgagor's obligation to pay the Debt at the time and in the manner provided for in the Note and this Mortgage by reason of (i) failure of the Mortgagee to comply with any request of the Mortgagor or any guarantor of the payment of the Note and/or of this Mortgage to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or of any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property or any other security for the Debt or the release of any individual or entity guaranteeing the payment of the Note and/or of this Mortgage, or (iii) the extension or modification of this Mortgage or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Note and/or of this Mortgage or any portion thereof, without first

41

having obtained the consent of the Mortgagor, and in the last event, the Mortgagor shall continue to be obligated to pay the Debt at the time and in the manner provided in the Note and this Mortgage, as so extended or modified, unless expressly released and discharged by the Mortgagee. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien, encumbrance, right, title or interest in or to the Mortgaged Property, the Mortgagee may release any person or entity at any time liable for the payment of the Debt or any portion thereof or any individual or entity guaranteeing the payment of the Note and/or of this Mortgage or any part of the security held for the Debt or with respect to any guarantee, and may extend the time of payment or otherwise modify any of the terms, covenants, conditions or obligations of the Note and/or this Mortgage, including, without limitation, a modification of the interest rate payable on the principal balance of the Note, without in any manner impairing or affecting this Mortgage or the lien thereof or the priority of this Mortgage, as so extended and modified, as security for the Debt over any such subordinate lien, encumbrance, right, title and interest. The Mortgagee may resort for the payment of the Debt to any other security or guarantee held by the Mortgagee in such order and manner as the Mortgagee, in its discretion, may elect. The Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every additional right and remedy now or hereafter afforded by law or equity.

(l) The Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right to the Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

(m) The Mortgagee shall have the right to receive and accept partial payment of any sum or sums which constitute a part of the Debt or the interest accrued thereon and such receipt and acceptance by the Mortgagee shall not be deemed a waiver or modification of any default or defaults by the Mortgagor existing at such time.

(n) All remedies provided in this Mortgage are distinct from and cumulative to any other right or remedy under this Mortgage, the Note, any guarantee of the payment of the Note and/or of this Mortgage or any other agreement between, among others, if any, the Mortgagor and the Mortgagee executed simultaneously or in connection herewith, or afforded by law or equity, and may be exercised concurrently, independently or successively. Wherever in this Mortgage the prior consent of the Mortgagee is required, the

42

BK5973PG060

consent of the Mortgagee given as to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions. Any such consents shall be in writing.

(o) Any forbearance by the Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens/or charges\by the Mortgagee or other corrective or security protecting measures by the Mortgagee shall not be a waiver of the Mortgagee's right to accelerate the maturity of the Debt.

(p) In any action or proceeding to foreclose this Mortgage, or to recover or collect the Debt, the provisions of law respecting the recovery of costs, disbursements and allowances shall also be applicable.

### Section 2.5.  Modification.

This Mortgage is subject to modification as defined in N.J.S.A. 46: §9-8.1 et seq., as the same may be modified from time to time.

### Section 2.6.  Interest After Default.

If Mortgagor shall default beyond applicable grace periods with respect to any payment due hereunder or under the Note, whether on any stated due date, any accelerated due date or any other date or at any other time specified under any of the terms, covenants, conditions or obligations hereof or thereof, then and in such event, the Mortgagor shall pay interest on the amount in default or the entire outstanding and unpaid principal balance of the Debt after acceleration, from and after the date on which such amount first became due, at the Default Rate (as hereinafter defined) and such interest shall be due and payable, on demand, at such rate, which rate shall survive a judgment of foreclosure and sale which may occur by reason of a default under this Mortgage, and shall not specifically be merged therein, until the entire amount due is paid to the Mortgagee, whether or not any action shall have been taken or proceeding commenced to recover the same or to foreclose this Mortgage.  All accrued but unpaid interest shall be secured by this Mortgage as part of the Debt together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate.  Nothing in this Section 2.6 or in any other provision of this Mortgage shall constitute an extension of the time of payment of the Debt or shall increase the maximum principal amount which may under any contingency be secured by this Mortgage.  For the purpose of this Mortgage "Default Rate" shall be

53100

43

a rate of interest to the date of payment of the sum due to the Mortgagee, which shall be the higher of (i) five percent (5%) per annum in excess of the interest rate then prevailing under the Note from (x) the stated due date of such payment, (y) the day any sum is paid by the Mortgagee which, pursuant to this Mortgage, the Mortgagor is required to reimburse to the Mortgagee, or (z) the accelerated or stated maturity date of the Note, whichever is the case, or (ii) five percent (5%) per annum in excess of the Prime Rate, determined on a daily basis, from (x) the stated due date of such payment, (y) the day any sum is paid by the Mortgagee which, pursuant to this Mortgage, the Mortgagor is required to reimburse to the Mortgagee, or (z) the accelerated or stated maturity date of the Note, whichever is the case, but in no event more than the highest rate permitted by the applicable usury law in respect of the Mortgagor. For the purpose of this Section 2.6, the Prime Rate of the Mortgagee shall be the rate of interest established from time to time by the Mortgagee as its Prime Rate (the "Prime Rate") which rate hereunder shall change with each change in the Prime Rate and shall become effective on the date the Mortgagee announces the change in the Prime Rate at its head office in New York City.

### Section 2.7. Possession of the Mortgaged Property.

Upon the occurrence beyond any applicable grace period of any Event of Default hereunder, it is agreed that the Mortgagor, if it is then the occupant of the Mortgaged Property or any part thereof, shall immediately surrender possession of the space so occupied to the Mortgagee, custodian, trustee, receiver, liquidator or conservator of the Mortgaged Property, as may be the case, and if the Mortgagor is permitted to remain in possession, the possession shall be as a month-to-month tenant of the Mortgagee, and, on demand, the Mortgagor shall pay to the Mortgagee monthly, in advance, a reasonable rental for the space so occupied and in default thereof the Mortgagor may be dispossessed by the usual summary proceedings. The covenants herein contained may be enforced by a receiver of the Mortgaged Property or any part thereof. Nothing in this Section 2.7 shall be deemed to be a waiver of the provisions of this Mortgage prohibiting the sale or other disposition of the Mortgaged Property without the Mortgagee's prior written consent.

### ARTICLE III

### MISCELLANEOUS

### Section 3.1. Notices.

All notices and demands or other communications required or otherwise given pursuant to this Mortgage shall be in writing and shall be personally delivered, delivered by overnight courier or

53168

44

BK5973PG062

mailed by registered or certified mail, postage prepaid, with return receipt requested, addressed as follows:

If to the Mortgagor:

PORTSIDE APARTMENTS URBAN
RENEWAL COMPANY, L.L.C.
5 Marine View Plaza
Suite 500
Hoboken, New Jersey 07030

With a copy to:

Barbara Oif Stack, Esquire
General Counsel
The Applied Companies
5 Marine View Plaza
Suite 500
Hoboken, New Jersey 07030

and

Kevin J. O'Shea, Esquire
Paul, Hastings, Janofsky & Walker
399 Park Avenue, 31st Floor
New York, New York 10022

If to the Mortgagee:

FLEET BANK, N.A.
208 Harristown Road
Glen Rock, New Jersey 07452
Attention: Michael P. Crilley,
          Regional Vice President
          Commercial Real Estate Division

and

FLEET BANK, N.A.
208 Harristown Road
Glen Rock, New Jersey 07452
Attention: Winifred D. Gleason
          Loan Administration
          Commercial Real Estate Division

Any party may change the person or address to whom or which notices are to be given hereunder, by notice duly given hereunder; provided, however, that any such notice shall be deemed to have been given hereunder only when actually received by the party to which it is addressed. Any notice or other communication given

33100

45

BK5973PG063



hereunder shall be deemed to have been given or delivered, if personally delivered, upon delivery; if sent by overnight courier, on the first (1st) business day of the Mortgagee after being sent, and if sent by mail, on the third (3rd) business day of the Mortgagee after mailing. Each party shall be entitled to rely on all communications which purport to be given on behalf of any other party hereto and purport to be signed by an authorized signatory of such party or the above indicated attorneys.

Section 3.2.    Consent to Jurisdiction; Waivers.

(a)    The Mortgagor hereby consents to the jurisdiction of the courts of the State of New Jersey and the state where the Mortgaged Property is located if the Mortgaged Property is not located in the State of New Jersey in any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage.    In    addition,    the    Mortgagor    irrevocably    and unconditionally waives any objection which the Mortgagor may now or hereafter have to the laying of venue of any of the aforesaid actions, suits, or proceedings arising out of or in connection with the Note or this Mortgage brought in any of the aforesaid courts, and hereby further irrevocably and unconditionally waives the right to plead or claim that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum; and

(b)    The Mortgagor waives the requirements of personal service in connection with any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage, and consents that all service of process may be made by certified mail, return receipt requested, addressed to the Mortgagor at the address of the Mortgagor set forth above in Section 3.1 as such address may be changed as therein set forth.

Section 3.3.    Governing Law.

Except to the extent that the law of the state where the Mortgaged Property is located must be applied because this Mortgage constitutes a lien on premises located in that state, this Mortgage shall be construed in accordance with the laws of the State of New Jersey.

Section 3.4.    Binding Obligations.

The terms, covenants, provisions and conditions herein contained shall bind and inure to the benefit of the heirs, distributees, executors, administrators, successors and assigns of the parties hereto but the foregoing provisions of this Section shall not constitute a waiver of the provisions of Sections 1.13 and 1.14 above.

53106

46

### Section 3.5.    Further Assurances.

The Mortgagor will, at the request of the Mortgagee and at the cost and expense of the Mortgagor (a) promptly correct any defect, error or omission which may be discovered in the contents of this Mortgage, or in the execution, acknowledgment or recordation hereof; or (b) promptly do, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, mortgages, deeds of trust, amendments, supplements, assignments, estoppel certificates, financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments as the Mortgagee may reasonably require from time to time in order to (i) effectuate the purposes of this Mortgage, (ii) subject to the lien and security interest hereby created any of the Mortgagor's properties, rights or interests covered or now or hereafter intended to be covered hereby, (iii) perfect and maintain such lien and security interest, or (iv) convey, grant, assign, transfer and confirm unto the Mortgagee the rights granted or now or hereafter intended to be granted to the Mortgagee hereunder or under any other instrument executed in connection with this Mortgage or which the Mortgagor may be or become bound to convey, mortgage or assign to the Mortgagee in order to carry out the intention or facilitate the performance of the provisions of this Mortgage. The Mortgagor hereby appoints the Mortgagee as its attorney-in-fact to execute, acknowledge and deliver for and in the name of the Mortgagor any and all of the instruments mentioned in this Section 3.5 in the event that Mortgagor shall fail to execute and deliver same within fifteen (15) days after demand by Mortgagee and this power, being coupled with an interest, shall be irrevocable as long as any part of the Debt remedies unpaid.

### Section 3.6.    Captions.

The title of this document and the captions used herein are inserted only as a matter of convenience and for reference and shall in no way define, limit or describe the scope or intent of this Mortgage or any of the provisions hereof.

### Section 3.7.    Severability.

If any term, covenant, condition or obligation of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such term, covenant, condition or obligation.

### Section 3.8.    Set-Off.

The Mortgagor, to further secure the Debt, hereby (a) pledges and grants to the Mortgagee a security interest in and to and a lien on, any and all deposits (other than any account which holds

63100

47

security deposits for tenants under Leases) (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Mortgagee or any affiliate thereof to or for the credit or account of the Mortgagor (collectively, "Deposits"); and (b) irrevocably authorizes and directs the Mortgagee or any affiliate thereof at any time and from time to time upon the occurrence of an Event of Default beyond any applicable grace period under this Mortgage, or a default beyond any applicable grace period under the Note or any other Loan Document, without notice to the Mortgagor (any such notice being expressly waived by the Mortgagor) and to the fullest extent permitted by law, to set off and apply any such Deposits against any and all obligations of the Mortgagor now or hereafter existing under the Loan Documents, or to hold such Deposits for future application against obligations thereafter arising under any of the Loan Documents irrespective of whether or not the Mortgagee shall have made any demand under any of the Loan Documents and although such obligations may be contingent or unmatured. From and after the date of the occurrence of any default under any of the Loan Documents beyond any applicable grace periods, the Mortgagee shall have dominion and control over such Deposits and shall have the sole ability to make withdrawals with respect to such Deposits. The Mortgagee agrees promptly to notify the Mortgagor after any such application made by the Mortgagee; provided, however, that the failure to give such notice shall not affect the validity of such application. The rights of the Mortgagee under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Mortgagee may have hereunder or under applicable laws.

Section 3.9. General Conditions.

(a) No provision of this Mortgage may be waived, changed, amended, modified or discharged orally and no executory agreement shall be effective to modify or discharge it in whole or in part, unless it is in writing and signed by the party against whom enforcement of the waiver, change, amendment, modification or discharge is sought.

(b) The Mortgagee may take or release other security for the payment of the Loan, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Loan without prejudice to any of its rights under this Mortgage.

(c) No remedy herein conferred upon or reserved to the Mortgagee is intended to be exclusive or any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. No delay

83108

48.

BK5973PG066

or omission of the Mortgagee in exercising any right or power accruing upon any Event of Default shall impair any such right or power, or shall be construed to be a waiver of any such Event of Default, or any acquiescence therein. Nothing in this Mortgage or in the Note shall affect the obligation of the Mortgagor to pay the Debt in the manner and, at the time and place therein respectively expressed. All rights and remedies of the Mortgagee shall be cumulative and may be exercised singly or concurrently. Notwithstanding anything herein contained to the contrary, the Mortgagor: (i) will not (A) at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect any of the terms, covenants, conditions or obligations of this Mortgage, or (B) claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision hereof, or pursuant to the decree, judgment or order of any court of competent jurisdiction; (ii) waives all benefit or advantage of any such law or laws; (iii) covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted; and (iv) waives all right to have the Mortgaged Property, or any other property of the Mortgagor to which the Mortgagee has, or may in the future have, a claim, marshaled upon any foreclosure hereof.

(d) No waiver by the Mortgagee or modification of the terms hereof shall be effective unless it is in writing, and then only in the specific instance and for the specific purpose for which given and, notwithstanding anything to the contrary herein, all such waivers and modifications may be given or withheld in the sole judgment of the Mortgagee. Without limiting the generality of the foregoing, any payment made by the Mortgagee for insurance premiums, taxes, assessments, water rates, sewer rentals, levies, fees or any other charges affecting the Mortgaged Property, shall not constitute a waiver of the Mortgagor's default in making such payments and shall not obligate the Mortgagee to make any further payments. The Mortgagor hereby irrevocably waives any right to claim that any provision of this Mortgage, including the provisions set forth in this Subsection, have been waived orally or by the acts or omissions of the Mortgagee.

(e) The information set forth on the cover and/or back page hereof is hereby incorporated herein.

49

(f) THE MORTGAGOR ACKNOWLEDGES THAT IT HAS RECEIVED A TRUE COPY OF THIS MORTGAGE WITHOUT COST THEREOF.

(g) If the Mortgagor shall request the Mortgagee's consent or approval pursuant to any of the provisions of this Mortgage or otherwise, and the Mortgagee shall fail or refuse in good faith to give, or shall delay in giving in good faith, such consent or approval, the Mortgagor shall in no event make, or be entitled to make, any claim for damages (nor shall the Mortgagor assert, or be entitled to assert, any such claim by way of defense, set-off, or counterclaim) based upon any claim or assertion by the Mortgagor that the Mortgagee unreasonably withheld or delayed its consent or approval, and the Mortgagor hereby waives any and all rights that it may have, from whatever source derived, to make or assert any such claim. The Mortgagor's sole remedy for any such failure, refusal, or delay shall be an action for a declaratory judgment, specific performance, or injunction, and such remedies shall be available only in those instances where the Mortgagee has expressly agreed in writing not to unreasonably withhold or delay its consent or approval or where, as a matter of law, the Mortgagee may not unreasonably withhold or delay the same.

(h) This Mortgage shall (i) be binding upon the Mortgagor and its successors and assigns, and (ii) inure, together with all rights and remedies of the Mortgagee hereunder, to the benefit of the Mortgagee and its successors, transferees and assigns. Without limiting the generality of clause (ii) of the immediately preceding sentence, the Mortgagee may assign or otherwise transfer all or any portion of its rights and obligations under any Loan Document, to any other person or entity, and such other person or entity shall thereupon become vested with all of the rights and obligations in respect thereof granted to the Mortgagee herein or otherwise. None of the rights or obligations of the Mortgagor hereunder may be assigned or otherwise transferred without the prior written consent of the Mortgagee.

(i) Without limiting the generality of Subsection (h) above, the Mortgagor hereby acknowledges that the Mortgagee may sell, grant or assign participation interest(s) in the Loan and in the Mortgagee's rights and obligations in respect of the Loan Documents, including this Mortgage, to one or more lending institutions satisfactory to the Mortgagee, on terms satisfactory to the Mortgagee. In the event that the Mortgagee shall sell, grant or assign participation interest(s) in the Loan and in the Mortgagee's rights and obligations in respect of the Loan Documents, (i) the Mortgagee may, in its sole discretion, disclose financial and other information to prospective participant(s) with respect to the Mortgagor, (ii) the Mortgagor shall cooperate with the Mortgagee in connection with any such participation and shall execute any and all documents which may be required or desirable,

63108

50

3K5973PG068

in the Mortgagee's or such participants' judgment, to effectuate any such participation(s), and (iii) each representation and agreement made by the Mortgagor in this Mortgage or in any of the other Loan Documents' shall run to, and each reference to the Mortgagee shall be deemed to refer to, the Mortgagee and all of its participants(s). ⟨ ⟩ Notwithstanding the foregoing, no such participation or assignment shall result in any additional cost to Mortgagor or increase Mortgagor's obligations or diminish Mortgagor's rights hereunder or result in any material change in the Loan Documents.

(j) If the Mortgagor consists of more than one person or entity, the obligations and liabilities of each such person or entity hereunder shall be joint and several. The relative words herein of single or plural number, or masculine or feminine or neuter gender shall be read as if written in the single or plural, or in the male, neuter or female gender, as the context and as the case may be.

(k) Any check, draft, money order or other instrument given in payment of all or any portion of the Note or pursuant to this Mortgage may be accepted by the Mortgagee and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Mortgagee, except to the extent that actual cash proceeds of such instrument are unconditionally received by the Mortgagee and applied as the case may be to the Debt in the manner provided in the Note or to the sum due under this Mortgage.

(l) If the Mortgagor shall well and truly pay to the Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every term, covenant, condition and obligation set forth in this Mortgage and in the Note, then these presents and the Estate hereby granted shall cease, determine and be void and Mortgagee shall promptly execute and deliver a discharge of this Mortgage in recordable form.

(m) This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

### Section 3.10. Limitation of Liability.

No claim made by the Mortgagor, any Guarantor, any specified person, or any other person against the Mortgagee or the affiliates, directors, officers, employees, attorneys or agents of the Mortgagee for any special, indirect or consequential damages or, to the fullest extent permitted by law for any punitive damages in respect of any claim or cause of action (whether based on

83196

51



contract, tort, statutory liability, or any other ground) based on, arising out of or related to any loan document or the transactions contemplated hereby or any act, omission or event occurring in connection therewith, and the Mortgagor (for itself and on behalf of each Guarantor and each specified person) hereby waives, releases and agrees never to sue upon any claim for any such damages, whether such clam now exists or hereafter arises and whether or not it is now known or suspected to exist in its favor.

### Section 3.11.    Incorporation of Loan Agreement

This Mortgage is governed by and made pursuant to the Loan Agreement, and all the terms, covenants and conditions of the Loan Agreement are incorporated herein by reference as if set forth at length herein, including the terms thereof enabling the Mortgagee to declare a default under this Mortgage upon the occurrence of a default or Event of Default as defined or specified in the Loan Agreement.   The occurrence of an Event of Default as defined or specified in the Loan Agreement shall constitute an Event of Default under this Mortgage, and the Debt shall become due and payable at the option of the Mortgagee.  In the event of any inconsistency between the terms, covenants and conditions of this Mortgage and the Loan Agreement, the Loan Agreement shall control.

52

BK5973PG070

IN WITNESS WHEREOF this Mortgage has been duly executed by the Mortgagor on the day and year first above written.

WITNESS:

PORTSIDE APARTMENTS URBAN
RENEWAL COMPANY, L.L.C.,
a New Jersey Limited Liability
Company,

    BY: HUDSON-PORTSIDE ASSOCIATES,
       a New Jersey general
       partnership, Member-Manager

       BY:  NEW PORTSIDE ASSOCIATES,
          L.P., a New Jersey
          Limited Partnership, Partner

          BY:  APPLIED ASSETS, INC.
             a New Jersey Corporation,
             Its General Partner

             BY:_____
                JOSEPH BARRY,
                President

       BY:  ROSELAND-PORTSIDE,
          L.L.C., a New Jersey
          Limited Liability Company
          Partner

          BY:_____
_____
EDITH M. CANNIZZARO
             MARSHALL B. TYCHER,
             Manager



53

BK5973PG071

STATE OF NEW JERSEY )
                    )  SS.
COUNTY OF MORRIS    )

BE IT REMEMBERED, that on this 18th day of July, 1996, before me, the subscriber, an officer duly authorized pursuant to N.J.S.A. 46:14-6  to take acknowledgments for use in the State of New Jersey, personally appeared JOSEPH BARRY, as President of Applied Assets, Inc., a New Jersey Corporation, and MARSHALL B. TYCHER, Manager of Roseland-Portside, L.L.C., Partners of Hudson-Portside Associates, a New Jersey Partnership, Manager-Member of PORTSIDE APARTMENTS URBAN RENEWAL COMPANY, L.L.C., the limited liability company named therein having first made known to them the contents thereof, they did thereupon acknowledge that the said Instrument made by the said company and delivered by them as such Members, is the voluntary act and deed of the Company for the uses and purposes therein expressed.

_____
A Notary Public of the State of
New Jersey

EDITH M. CANNIZZARO
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires June 22, 1998

53106

BK 5973 PG 072

(LZ\FLEET\PORTSID.000)
(SCH.A-LEGAL)
(File No. 15666-000)
(7-17-96)(SMB:lr)

SCHEDULE "A"

Legal Description

All the real property located in the City of Jersey City, County of Hudson, State of New Jersey and more particularly described as follows:

Known and designated as RESIDENTIAL UNIT TOWER 1 situate in PORTSIDE, A CONDOMINIUM, established in accordance with N.J.S.A. 46:8B-1, et seq., together with an undivided 47.5% interest in the General Common Elements of said Condominium appurtenant to the aforesaid unit in accordance with and subject to the terms, conditions, covenants, restrictions, reservations, easements, lien for assessments, and other provisions as set forth in the current Master Deed of PORTSIDE, A CONDOMINIUM, dated July 18, 1996, and about to be recorded in the Hudson County Register's Office as same may be now or hereafter lawfully amended.

FOR INFORMATION ONLY: Being known as P/O Lot 34 Block 60 as shown on the tax assessment map of the CITY OF JERSEY CITY.

BK 5973 PG 073

Unofficial Copy

129-00

BK5973PG074