# EXHIBIT E

# RESIDENTIAL LEASE – TERM SHEET



**Lessor:**      **Equity Residential Management, L.L.C.,**
                 **as agent for the Owner**

**Community:** Portside Towers                    **Premises:** 001-1605

**Address:** 155 Washington Street                **Premises Address:** 100 Warren Street - 1605
                                                  Jersey City, NJ, 07302

            Jersey City, NJ, 07302
            (201) 938-0770

---

**Residents:**

**Guarantor:**

**Occupants:**

---

**LEASE TERM**
**Commencement Date:** 09/02/2011          **Expiration Date:** 09/01/2012          **Renters' Insurance Required:** Yes

**Lease Term Expiration: You must provide us with a written notice of your intent to vacate at least 60 days prior to the Expiration Date of the Lease Term. If you fail to provide us with the required notice and you move out anyway, then the Lease term will be automatically extended for an additional month following the Expiration Date, and you will be responsible for paying your current Monthly Apartment Rent until (i) the end of the one month extension or (ii) the day a new resident moves into the Premises, whichever comes first.**

---

**Total Deposits Required:** **$** 2450.00

---

**Total Monthly Rent:**    **$** 5141.00
**(includes all monthly recurring charges listed below)**

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| Monthly Apartment Rent | 5141.00 | | | | |

**Assigned Item Description**

**Concessions:** Total Recurring Concession amount $ 0.00     ; Total One-Time/ Non-Recurring Concession amount $ 0.00     . The Total Monthly Rent shown above will be adjusted by these lease concession amounts. If this Lease is terminated early, you will be required to pay us a portion of these total lease concessions as discussed in the Lease Concession paragraph of the Terms and Conditions.

---

**Total Other Fees and Charges:**    **$** 0.00
**(includes all charges listed below)**

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| | | | | | |

| | Type | Breed | Weight | License/Tag |
|---|---|---|---|---|
| **Approved Pets** | Dog | dog | 0 | |

**For additional information regarding our pet policy, please refer to the Resident Handbook and Community Policies.**

**Resident Account Number:** 19094-001-1605-1

© Equity Residential 2010.  All Rights Reserved.                    Page 1 of 2                    National Lease Form (12/28/10)

DocuSign Envelope ID: 2DED557D-27B3-4752-BDC3-F65D9624E463

**LESSOR PAYS UNCHECKED UTILITIES. RESIDENT PAYS CHECKED UTILITES**

☑ Electricity:              Direct billed by the provider.  You pay the provider
☐ Gas/Heating Oil:
☑ Water:                    Allocated based on square footage.  You will receive a bill from our billing vendor.
☑ Sewer:                    Allocated based on square footage.  You will receive a bill from our billing vendor.
☐ Central Boiler:
☑ Cable:                    Direct billed by the provider.  You pay the provider
☑ Garbage Removal:          Allocated equally among all occupied apartments. You will receive a bill from our billing vendor.
☑ Internet:                 Direct billed by the provider.  You pay the provider

**Late Fees:** Your rent is due on the 1st of each month. If we do not receive your rent and other recurring charges, in person before the close of business, or electronically by 11:59 pm central time, on day  5  , you will be charged a late fee as follows:

 10% on the 6th

**F Yri fbYX¯İYa ¯Fees:** If your payment fails to clear the bank for any reason, you will be charged a returned item fee of $ 40.00 per item.

| **Additional Lease Addenda** |
|---|
| Residential Lease - Terms and Conditions<br>Utilities Addendum<br>Rent Control Notification<br>Construction and Rehab Addendum |

By signing this Term Sheet, you acknowledge that each of the Additional Lease Addenda are attached to this term Sheet and are therefore made a part of the Lease. You further acknowledge that you have read and that you agree to all of the provisions set forth in this Term Sheet and the Additional Lease Addenda.

You also acknowledge that you have received, or will receive, (separate from this Lease) a copy of the Resident Handbook and Community Policies and a copy of the Move-In/Move-Out Inspection Form. You acknowledge and agree that the provisions contained in these two documents are incorporated into this Lease and that you will abide by the policies and procedures set forth in these documents.

**You specifically acknowledge that this Lease contains provisions extending the Lease Term if you stay beyond the Expiration Date set forth on the first page of this Term Sheet or if you fail to provide timely written notice of your intent to vacate the Premises at least 60  days prior to the Expiration Date.**

## READ THIS TERM SHEET BEFORE SIGNING

**Residents (ALL Residents must sign and date):**

_____ 7/8/2011 Date   _____ Date   _____ Date

_____ 8/3/2011 Date   _____ Date   _____ Date

_____ Date   _____ Date   _____ Date

**⊕essor:        Equity Residential Management, L.L.C.,**
**as agent for the Owner**

By: _____   07/06/2011
It's: Authorized Representative                 Date

**Resident Account Number:** 19094-001-1605-1

## RESIDENTIAL LEASE – TERMS AND CONDITIONS
### (New Jersey)

These Terms and Conditions are attached to and incorporated by reference into the Residential Lease - Term Sheet signed by Resident ("you") and Lessor ("us") with respect to your rental of the Premises identified on the Term Sheet. The Term Sheet, these Terms and Conditions, the Resident Handbook and Community Policies, the Move-In/Move-Out Inspection Form, and all Lease addenda or other agreements that may be referenced on the Term Sheet or attached hereto, make up the Lease. The party executing this Lease as the Lessor is Equity Residential Management, L.L.C., which is acting as the managing agent for the owner of the Community. Each person living in the Premises that is 18 years of age or older must sign the Lease as a resident. All others living in the Premises must be designated as occupants. Each person signing the Lease is jointly and severally liable for all of the various resident obligations under the Lease. That means that every individual resident, including all co-residents, is responsible for the entire rental amount and other obligations, even if, as roommates, you have made arrangements among yourselves to allocate the rent or other payments among yourselves.

1.  **Lease Term:** The initial term of this Lease is set forth in the Lease Term section of the Term Sheet. At the end of your initial term, if you do not move out or you do not sign a renewal lease, your Lease will automatically renew on a month-to-month basis. If you plan to move out at the end of your initial term, you must provide us with a written notice of your intent to vacate. We must receive this written notice within the time frame set forth in the Lease Term Expiration section of the Term Sheet. If you fail to provide us with the required notice and you move out anyway, then your Lease term will be automatically extended for an additional month, and you will be responsible for paying your current monthly apartment rent until (i) the end of the one month extension or (ii) the day a new resident moves into the Premises, whichever comes first. You understand that you have no right to terminate your Lease prior to the end of your initial term or any renewal term and, if you do, you will be in default of the Lease. Any early termination settlement option that we may offer to you must be addressed with us at the time you are planning to move out early. An early termination settlement option, if offered to you, cannot be exercised during the last full month of your Lease term. If you move out during the last full month of your Lease term but before the last day of your Lease term, you will be responsible for your rent and other charges, including your obligations related to the condition of the Premises, through your lease end date. At the end of the initial term of the Lease, we reserve the right to extend a renewal offer to you, allow you to stay on a month-to-month basis or terminate your lease.

2.  **Month-to-Month Tenancy:** If you stay in the Premises on a month-to-month basis following the initial term of the Lease, you will pay the month-to-month rent amount included in your renewal letter. Once you become a month-to-month tenant, we reserve the right to increase the rental rate upon 30 days' notice to you. In order to terminate a month-to-month tenancy, you must provide us with a written notice to vacate of at least 30 days. During the month-to-month tenancy, we can also give you a 30 days' notice to vacate. If you move out without giving us the amount of notice required, you will be responsible for paying rent until (i) one month following our receipt of your notice to vacate or (ii) the day a new resident moves into the Premises, whichever comes first. If you move out without providing any notice at all, then, for purposes of this paragraph, your move-out date will be considered to be your notice date.

3.  **Holding Over:** If you don't move out on or before the date in a notice to vacate, you will be required to pay holdover rent equal to two times the Total Monthly Rent set forth on the Term Sheet, prorated for the number of days you hold over.

4.  **Termination:** Upon termination of the Lease, or the termination of your right to occupy the Premises, you agree to deliver all keys, access cards and remotes to us and to move out of the Premises, leaving them in substantially the same clean, undamaged, and ready-to-rent condition as existed when you took occupancy of the Premises, less ordinary wear and tear. If the Premises are not returned in such condition, we reserve the right to charge you for the costs to repair any damage and to put the Premises back in the condition they were in upon your move-in, less ordinary wear and tear. You are not responsible for ordinary wear and tear; however, you are responsible for replacement of any damaged or missing items and for payment of all costs to clean or repair any portion of the Premises, carpeting, flooring, wall coverings, paint, counters, trim, window treatments, doors, windows, or appliances which are damaged, dirty, or unsanitary. Cleaning and repair of any damage due to smoking of any kind are not considered ordinary wear and tear. You are responsible for removing all trash and other items of your personal property and, if you do not remove such items, you will be charged for the cost of removal. Your failure to clean the Premises or to remove your trash and personal property from the Premises when you move out will constitute a condition that exceeds ordinary wear and tear. You will not be considered as having moved out, vacated and surrendered possession of the Premises until you have removed all of your personal belongings from the Premises and returned all keys, access cards and remotes to us. If you move out and fail to return all keys, access cards and remotes to us, you agree that your move-out date will be determined by us in our reasonable judgment, and that you will be charged for any missing keys, access cards and remotes.

**5.   Rent:**  You agree to pay the amount shown in the Total Monthly Rent section of the Term Sheet and all additional rent (described below), in advance and without demand, on or before the first day of each calendar month.  All fees and charges described on the Term Sheet or in this Lease, including, but not limited to, late charges, returned item fees and utility bills that are payable to us or to our utilities billing vendor, parking fees, amenity fees, attorney fees, court costs, lock out fees, pet fees, annual security deposit increases (if any), and replenishment of security deposit balances (if any), shall be deemed to be "additional rent."  Total Monthly Rent and additional rent are, together, referred to in this Lease as "rent."  All rent must be paid in U.S. dollars and we reserve the right to require that payments be made in one lump sum, even if there are multiple residents listed on the Lease.  We strongly encourage residents to use on-line or electronic payment methods. We may elect to centralize the collection sites for non-electronic payments and, if we do so, we will notify you in writing of the address to which you should send your payments, as well as the effective date for such change.  If we designate an off site receivables location, you agree that all rent and other payments directed to that location must be received at the designated location on or before the due date. We do not accept cash, third party personal checks, or checks without a preprinted name and address of the account holder. If you pay by personal check, you are authorizing us to scan the check and convert it into a one-time electronic debit from the bank account against which the check was written.  Unless prohibited by law, we reserve the right to refuse payments by personal check, automatic debit or other form of electronic payment and require payment by cashiers check or money order if, for example, you have submitted previous checks or other payments to us that have failed to clear the bank.  We are not required to re-deposit a dishonored check.

**6.   Late Charges and Returned Item Fees:**  You acknowledge that if we do not receive your rent or other lease related charges on time, we will incur costs, the exact dollar amount of which is difficult or impracticable to determine.  Such costs may include, among other things, lost use of funds, bank or other charges, costs incurred in connection with accounting for and attempting to collect late payments; collection expenses; and other administrative and accounting costs.  As a result, if we do not receive your rent when it is due, we will assess late fees as described in the Late Fees section of the Term Sheet.  Similarly, if any payment to us (electronic or otherwise) is returned or otherwise rejected by your financial institution for any reason, we will assess a returned item fee as described in the Returned Item Fees section of the Term Sheet, as well as all applicable late fees. The fact that a late charge is not assessed until sometime after the first day of the month does not constitute a grace period for the payment of rent. We have the right to file suit to gain possession of the Premises on the second day of the month if rent is not paid on time  The fees described in this paragraph are in addition to any other remedies we may have in the event of your default under the terms of this lease.

**7.   Application and Acceptance of Payments:**   Unless we are prohibited from doing so by law, we will apply the payments you make to us in the order of priority we determine, regardless of any notations that you make on checks, money orders or other forms of payment.  We reserve the right to accept any amount less than the balance due at any given time and, if we do accept a lesser amount, such acceptance will not represent a waiver of any right we have to pursue you for the outstanding balance.  If you are chronically late with your rent payments, we reserve the right to terminate this Lease.

**8.   Security Deposit:**  Upon signing this Lease, you have agreed to give us deposits as set forth in the Total Deposits section of the Term Sheet.  These Total Deposits are not prepaid rent, but, rather are a good faith deposit for your fulfillment of your Lease obligations, as well as a contingency against damages to the Premises.  The Total Deposits are held in a separate interest-bearing account at the following bank:

>  Chase Bank
>  460 Bergden Boulevard
>  Palisades Park, NJ  07024
>  Type of Account:  Money Market
>  Current Interest Rate:  0.06%

Pursuant to applicable law, this Lease constitutes a receipt for the Total Deposits you paid.  The interest rate shown above is the rate paid by the bank as of the date this Lease is being entered into.  This interest rate will change from time to time throughout the Lease term and, pursuant to New Jersey law, all accrued interest on your Total Deposits will be paid to you on an annual basis and at move-out.

You are not entitled to apply any part of your Total Deposits against rent or other Lease obligations during the time you are occupying the Premises. Consistent with the requirements of state law, after you move out, we will inspect the condition of the Premises, and charge, against your Total Deposits, for any damages beyond ordinary wear and tear, excessive cleaning or trash removal charges, as well as any outstanding balances you owe us.   If any balance remains after applying all such charges, we will refund it to you.  If the move-out charges and/or other unpaid amounts remaining on your resident account at the time you move out exceed the amount of the Total Deposits, you agree to pay us the difference.  We reserve the right to charge pre-judgment interest on any balance owing after you move out.  Such interest will begin to accrue when the balance, if any, shown on the Statement of Deposit Account we issue to you is not paid

within 30 days following the date set forth on the Statement of Deposit Account.  The interest charged on the outstanding balance will not exceed the rate of 18% per annum or the highest rate allowed by law, whichever is less, and will be reflected on the Statement of Deposit Account that will be issued to you after you move out. If you wish to do so, you may request us to inspect the Premises with you upon move-out.  If no other arrangements are made, we will inspect the Premises within 48 hours after you move out.  We will make any refund check payable to all residents signing this Lease (unless all residents have authorized us to make the check payable to only some of you).  Within the timeframe required by state law, we will mail the refund check to the forwarding address you provide to us or, if you fail to provide a forwarding address, we will send it to the address of the Premises.

**9.    One-time Fees:**  If you have paid other fees and charges as set forth in the Total Other Fees and Charges section of the Term Sheet, you acknowledge and understand that such other fees and charges are not refundable, are not considered to be a security deposit or part of the Total Deposits, and will not be applied as a credit toward any amounts owing by you at the time you move out. The Amenity Fee set forth on the Term Sheet is a one time, non-refundable charge for use, in common with other residents, of the common areas and amenities at the Community. We will charge an additional Amenity Fee at the time you renew your lease.

**10. Lease Concessions:**  If you received a Lease concession, you must fulfill all of your obligations under this Lease for the entire Lease term.  Any concession that is designated on the Term Sheet as a one-time or upfront concession must be applied first toward your rent during the first month of the initial term and to consecutive months thereafter until the balance of the concession credit reaches zero.  If this Lease is terminated early, you must repay a prorata portion of the total Lease concessions you received based on the number of days remaining in your Lease term after you move out.  If the concession shown on the Term Sheet is designated as Rent Adj/Concession or is in the form of a recurring deduction from the Monthly Apartment Rent shown on the Term Sheet, and the Lease is terminated early, the rent that will be charged after you move-out will not include the deduction for the recurring concession.

**11. Failure to Pay Deposits, Other Fees and Charges and First Month's Rent:**  If you fail to pay any deposits, other fees and charges and the first month's rent (or a prorated amount if the first month is a partial month) prior to moving in, you will be in default under the Lease and we can refuse to give you possession of the Premises until you pay such amounts.

**12. Delay in Delivery of Possession:**    You are responsible for paying rent effective with the Commencement Date shown in the Lease Term section of the Term Sheet.   If we are unable to give you possession of the Premises on the Commencement Date, we will abate the rent until we are able to do so.   You agree that you will not seek reimbursement from us for any cost incurred by the delay of possession, including, but not limited to, storage or temporary lodging. Subject to applicable law, if we fail to deliver the Premises to you within 30 days from the date promised, either you or we may terminate the Lease by providing written notice to the other.  Requirements for us to make repairs or clean the Premises that do not affect your ability to occupy them will not constitute a delay or entitle you to a rent abatement.  If we are unable to deliver the Premises but, at our discretion, offer you comparable accommodations at no additional cost, you will not be entitled to a rent abatement.

**13. Rental Application and Resident Information Updates:**  You have provided certain information in your Application for Rental that we have relied on in connection with renting the Premises to you.  You agree to promptly notify us if any of the information you provided changes.  If any of the information you provided to us on your Application or in any subsequent updates is materially false, incomplete or misleading, or if you fail to notify us of any change or if you fail to update your information, you will be in default of your obligations under this Lease.

**14.   Disclosure of Information:**  To the extent permitted by applicable law, we may provide information about you, your co-residents, or any of your occupants to third parties such as law enforcement personnel, future landlords, mortgagees, attorneys, collection agencies, and consumer reporting agencies for law-enforcement, governmental, credit, rent payment history, or other business purposes.  If we provide such information to third parties at your request, we reserve the right to charge a reasonable administrative service fee for doing so.  If you and your co-residents have a guarantor, we may, without notifying you, provide information to the guarantor.

**15. Utilities and Utility Cost Adjustments During the Lease Term:**  You are responsible for paying for all of the utilities identified on the Term Sheet that are checked, and any utilities that we have not specifically agreed to pay.  In some cases, the utility service will be provided to you by the utility company and you will pay the utility company directly.  In other cases, your utility bill may be calculated based on a submeter reading, an allocation method, or a flat fee (as more fully described in the Utilities Addendum attached to this Lease), in which case you will receive a bill for such utilities from our billing vendor and you will either pay us directly or send your payments to our billing vendor.  The Utilities section of the Term Sheet identifies which utility bills are to be billed by and paid directly to the utility company and which utility bills are to be billed by our billing vendor and either paid to us directly or, in some cases, sent to our billing vendor.  Amounts

due for utility services that are billed by our billing vendor are considered additional rent, irrespective of whether you pay us directly or whether our billing vendor collects such amounts on our behalf.  In all cases, your failure to pay the utilities in full when due shall be considered a default under the Lease.  You will not allow utilities that are in your name to be disconnected for non-payment or any other reason.  If you do not connect the utilities at the time you move in or, if you disconnect the utilities early before moving out, and the utilities remain in our name during such timeframes, we will bill you for the utility charges incurred for the days you were living in the Premises, along with an administrative fee of $50.00 for each utility bill we process on your behalf.  You agree that this administrative fee is a liquidated damages provision and that such amount is a fair and reasonable estimate of the administrative costs we incur as a result of paying these bills on your behalf. We make no representation or warranty with respect to the amount of any estimated or actual utility costs associated with the provision of utility services to the Premises or the Community. To the extent we make a request of you in connection with any analysis of overall utility consumption at the Community, you authorize us, as your agent, to request and receive copies of your utility billing records directly from the utility billing provider.  You acknowledge that we cannot be held responsible for any outages, interruptions or fluctuations in utility service that are provided to the Premises, and that you have no right to claim constructive eviction or to receive any offset or reduction of rent or diminished rental value of the Premises as a result of any such outages, interruptions, or fluctuations.

**16. Right to Enter:** Subject to notice requirements imposed by applicable law, we and our employees and agents may enter the Premises during reasonable hours for any reasonable business purpose including, but not limited to, inspections, maintenance, repairs and pest control procedures.  We also reserve the right to enter the Premises at any time in the event of an emergency, to check for abandonment, or to abate a nuisance.  You authorize us, in the event of your death or incapacity, to grant access to the Premises and the contents therein to the individual named in the emergency contact section of your Application for Rental or otherwise named by you in connection with updating your resident information.  Once we grant access to such person, he/she may remove all personal property from the Premises and dispose of it in accordance with applicable law.  You hereby release and discharge us from any liability, claim or damages arising out of or in connection with our granting such access to the person you named.  Assuming you have submitted a notice to vacate to us, we may, during the last 30 days of your tenancy and without advance notice to you, show the Premises to prospective new residents during normal business hours. If it is necessary for you to temporarily move out in order for us to exterminate or for other reasons, you agree to do so upon at least seven days' notice or on shorter notice as may be reasonable under the circumstances.  If you are forced to temporarily move out for more than one day because of a duty, condition or event that is our responsibility under this Lease or by law and, if we do not make substitute accommodations available to you, we will abate your Total Monthly Rent for the period of time you are unable to occupy the Premises.

**17. Right to Exclude:**  We reserve the right to exclude from the Community you and any of your occupants or guests who violate this Lease or any of the Community's policies.  We also reserve the right to exclude anyone who disturbs other residents or our employees and agents, as well as anyone we reasonably believe represents a potential threat to other residents or to our employees and agents.  We may also exclude from the Community any person who refuses to show photo identification to us or to identify himself or herself as a resident, occupant or guest.  We may deny you or any person access to the Premises, including by changing the locks, if any court or legal order restrains or bars you or such person from the Premises.

**18. Liens or Sales by Lessor:** This Lease is subject and subordinate to all present or future ground or underlying leases, loans, mortgages, deeds to secure debt or deeds of trust affecting the Premises and the Community which we or any subsequent owner of the Community may enter into.  You hereby appoint us as attorney-in-fact to execute and deliver any and all necessary documents to evidence such subordination of the Lease.  Foreclosure of any mortgage or any sale of the Community will not constitute a constructive eviction and, in the event of any such action, you will continue to pay your rent and perform your obligations under this Lease.  Upon any foreclosure or sale, we will be released from all obligations under this Lease that accrue after the date of the foreclosure or sale and you will look solely to the then-current owner for the performance of Lessor's duties.

**19. Criminal Activity:**  You agree that neither you, nor any of your occupants or guests will (i) engage in any criminal activity of any kind, including, without limitation, drug related criminal activity, prostitution or criminal street gang activity, on or near the Community, (ii) engage in any act intended to facilitate such criminal activity, (iii) use or permit the Premises to be used for, or to facilitate, any criminal activity, or (iv) engage in any acts of violence or intimidation or any threats of violence, verbal or otherwise, including, but not limited to, the discharge or brandishing of firearms or other weapons, on or near the Community or otherwise.  For purposes of this section, "drug related criminal activity" means the use of or the manufacture, sale, distribution, dispensation or possession with intent to manufacture, sell, distribute, or dispense, marijuana or any other Controlled or Counterfeit Substance, as defined in the Controlled Substances Act (21 U.S.C. 802), as amended from time to time.  One or more violations of the provisions of this paragraph will be considered a breach of the Lease and good cause for the immediate termination of your tenancy and your eviction from the Premises.  Unless otherwise provided by law, proof of a violation of this paragraph shall not require criminal conviction, but may be based on our reasonable suspicion and a preponderance of the evidence. In addition, if you or any of your

occupants have engaged in any criminal activity during the Lease term or otherwise, we may take action to terminate the Lease and pursue eviction-related remedies.

**20. Use and Occupancy:**   The Premises are to be occupied and used solely as a private residence.   Therefore, conducting any kind of business in the Premises, or anywhere in the Community, is prohibited.   However, a lawful business conducted "at home" by computer, mail or telephone is permissible if customers, clients, patients or other business associates do not come to the Premises for business purposes.   The number of people living in the Premises is subject to applicable local occupancy standards.   Only those residents and occupants identified on the Term Sheet, and, subject to the Community's occupancy standards, children born or adopted during the Lease term, may occupy the Premises without our prior written consent. If someone stays with you for more than fourteen days (consecutive or otherwise) in any one month, we will consider such person to be an unauthorized occupant and, in order to allow such person to continue residing in the Premises, we must consent.  If the person is age 18 or older, we may require him/her to complete an Application for Rental and pay an application fee.   If we consent to such person's occupancy in the Premises, we also require that such person, unless he/she is a full-time student residing with a parent or guardian, be named on the Lease as resident. You are responsible for your conduct, as well as the conduct of your occupants and guests. You, your occupants and all guests will:  (i) show due consideration for neighbors and not interfere with, disturb or threaten the rights, comfort, health, safety, convenience, quiet enjoyment and use of the Community by us, other residents and occupants and any of their guests, agents or invitees; (ii) not engage in abusive, threatening or harassing conduct toward us or any employees, agents or representatives or unreasonably interfere with our management of the Community; (iii) exercise reasonable care in the use of the Premises and maintain the Premises in a clean, safe and undamaged condition, ordinary wear and tear excepted; (iv) comply with all of the policies and procedures contained in the Resident Handbook and Community Policies we delivered to you; and (v) comply with federal, state and local laws, regulations, statutes and ordinances which are applicable to the Premises and your tenancy. We reserve the right to be the sole judge of acceptable conduct and to determine the appropriate action necessary to deal with unacceptable conduct.

**21. Assignment or Subletting by Resident:**  You may not assign this Lease or sublet the Premises without our prior written consent.  If we do consent to any assignment or sublease, you will remain fully responsible and liable for the payment of the rent throughout the remainder of the Lease term.

**22. Repair and Maintenance:**  You confirm that you have inspected the Premises, found them in a clean, rentable, and undamaged condition (other than items listed in the Move-In/Move-Out Inspection Form that you completed or will complete), and that you accept the Premises in "as is" condition.  Damages and defects not itemized will be presumed to have first occurred during your occupancy of the Premises.  You understand that you are responsible for keeping the Premises in a clean, sanitary and undamaged condition, ordinary wear and tear excepted.  You are responsible for properly performing routine cleaning of all interior portions of the Premises.  Your failure to perform cleaning (including, but not limited to dirt, filth, scum, grease, oil, mud, scuffs, holes, gouges, burns, stains, tears, cuts, rips, fleas, pests, foul scents or odors, surface mold on caulking at the sinks, tub, shower and other locations, and other conditions which could have been avoided by careful use and routine cleaning) constitutes either negligence or an intentional act that results in extraordinary damages to the Premises in excess of ordinary wear and tear, for which you are liable.  You will be responsible for all such damage to the Premises caused by you, any of your occupants or guests, and your pets, and you will be responsible for all cleaning and trash removal charges we incur as a result of your use of the Premises.  You also agree that you will notify us immediately if any part of the Premises is in need of maintenance or repair.

**23. Fair Housing Accommodations/Modifications:** We are firmly committed to the principles of Fair Housing.  If you or any person residing in the Premises, as a result of a disability, requires accommodations to our rules, policies, practices or services, or a physical modification to the Premises and/or the common areas of the Community in order to provide you or your occupants with equal opportunity to use and enjoy the Premises, you will notify us.  If you require physical modifications to the Premises, we may require you to enter into a modification agreement identifying the modifications to be made and any restoration obligations you may have.

**24. Military Clause:**

**a.**   If you become an active duty member of the United States Armed Forces during the Lease term, then, pursuant to the provisions of the Servicemembers Civil Relief Act ("SCRA") and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official orders; (ii) provide at least 30 days' prior written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the Security Deposit paragraph above.

**b.**   If you are an active duty member of the United States Armed Forces at the time you are signing this Lease, you affirm that the Lease end date does not extend beyond your anticipated discharge, retirement or release from the United States

Armed Forces.    Pursuant to the provisions of the SCRA and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official permanent change-of-station orders or your official orders to deploy for a period of not less than 90 days; (ii) provide at least 30 days' written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the provisions of the Security Deposit paragraph above.

c.    Notwithstanding the provisions of the Lease Concessions paragraph above, if you are exercising your right to terminate the Lease pursuant to the SCRA and this Military Clause paragraph, you will not be required to repay any portion of Lease concessions set forth on the Term Sheet.  If any resident satisfies the requirements of this paragraph, all residents in the Premises will be released from their obligations under the Lease if they also elect to vacate the Premises.

**25. Resident Insurance.**  We strongly recommend that you secure a renters insurance policy covering your personal belongings, which also includes personal liability insurance covering your actions.  Unless there is a prohibition imposed by affordability covenants or other restrictions applicable to the Premises, we require all residents to maintain a policy of liability insurance issued by an authorized insurance company that provides limits of liability in an amount of at least $50,000 per occurrence.  Unless the box labeled "Renters Insurance Required" on the Term Sheet is unchecked, you must furnish proof of insurance to us on or before the commencement date of the Lease and, assuming you enter into renewal leases with us, you must continue to provide evidence of coverage for all subsequent renewal terms.  You can obtain such insurance through Residential Insurance Agency, LLC or through the insurance agent of your choice. If you select an insurance company other than Residential Insurance Agency, LLC, you must name the Community as an Interested Party under your policy. Except where prohibited by law, if you fail to obtain and maintain liability insurance as required by this paragraph, you will be in violation of your lease obligations.  In such event, we will send a written notice to you demanding that you cure the violation by procuring the insurance and supplying evidence of coverage to us.  If you fail to supply evidence of such insurance to us on or before the date set forth in your notice, we reserve the right to procure liability only insurance coverage on your behalf, and to charge you for the amount of the premium paid to the insurance company, not to exceed $150.00 per year, along with an administrative fee of $40.00. You agree that this administrative fee is a liquidated damages provision and that such amount is a fair and reasonable estimate of the administrative costs we will incur as a result of procuring the liability insurance coverage for you.  The premium payment made by us on your behalf, and the administrative fee we charge to procure the insurance for you, will be considered additional rent.   If you fail to pay for the liability insurance and/or you allow the expiration or cancellation of any liability insurance policy during your tenancy, without substitute insurance being put in place, this will be considered a default under the Lease.

**26. Corporate Units:**  If the name in the Resident section of the Term Sheet is a company or business (and not an individual person), then the company assumes all responsibility for damage to the Premises and any loss incurred by us or any third party that is caused by any person living in the Premises.  The company also agrees to indemnify us for all claims, damages, losses and expenses related in any way to the occupancy of the Premises.  The company agrees to identify all persons living in the Premises and to provide written authorization to us to release keys, key cards, and/or access cards to such occupants.  The company will not allow the Premises to be used or occupied as a hotel.  The company agrees to maintain, at its sole cost and expense, throughout the term of the Lease and any subsequent renewal terms, the following insurance: Commercial General Liability insurance on a form at least as broad as Insurance Services Office ("ISO") Commercial General Liability Coverage "occurrence" form CG 00 01 0196 or another ISO Commercial General Liability "occurrence" form providing equivalent coverage, providing broad form comprehensive general liability coverage, blanket contractual liability coverage, coverage for bodily injury (including death), property damage (including loss of use thereof), products and completed operations with an authorized insurance company with a rating of A X in a minimum amount of One Million Dollars ($1,000,000) per occurrence. The company must be named the insured and the company shall name the owner of the property, ERP Operating Limited Partnership, Equity Residential, Equity Residential Management, L.L.C., and their affiliates and agents (collectively, the "Lessor Entities") as additional insureds under the required policy. In the alternative, the company may purchase renters liability insurance for the Premises from an insurance company of company's choosing or through the program made available to residents at the Community through Residential Insurance Agency, LLC. If company elects to purchase such renters liability insurance through a company other than Residential Insurance Agency, LLC, the company must name the Community as an Interested Party under the policy. In any event, the company must, on or before the commencement date of the lease, deliver to us a certificate of insurance evidencing the coverage provided, and provide replacement certificates fifteen (15) days prior to the expiration of any required coverage.  Except where prohibited by law, if the company fails to obtain and maintain the insurance as required by this paragraph, the company will be in violation of the Lease.  In such event, we will send a written notice to the company demanding that it cure the violation by procuring the insurance and supplying evidence of coverage to us.  If the company fails to supply evidence of such insurance to us on or before the date set forth in our notice, we may procure such insurance on the company's behalf and charge the company for the amount of the premium paid to the insurance company, not to exceed $150.00 per year, along with an administrative fee of $25. The company agrees that this administrative fee is a liquidated damages provision and that such amount is a fair and reasonable estimate of the

administrative costs we will incur as a result of procuring the liability insurance coverage for the company.  The premium payment made by us on the company's behalf, and the administrative fee we charge to procure the insurance for the company, will be considered additional rent.   If the company fails to pay for the liability insurance and/or the company allows the expiration or cancellation of any liability insurance policy during the company's tenancy, without substitute insurance being put in place, this will be considered a default under the Lease.

**27. Default Remedies:**  If you fail to perform any of your obligations under this Lease, we may exercise all of our rights under this Lease, at law or in equity.  This may include giving you notice to correct or cure such default, taking action to recover possession of the Premises via the eviction process or otherwise, and/or terminating the Lease, all in accordance with applicable law.  In addition, we can recover from you all damages, costs and expenses, including, among other things, damage to the Premises, cleaning and trash removal charges, delinquent Total Monthly Rent and additional rent (described in paragraph 5 above) such as utilities, late fees, and returned item fees.  We can also recover rent for the Premises for the time it takes for a new resident to move in or until the end of your current Lease term, whichever comes first.  We can also recover the costs, including attorneys' fees and court costs, which we incur to pursue such actions against you, even if we do not file formal litigation.  These attorney fees and costs shall be collectible as additional rent as defined in the Rent paragraph above.   If the Lease is terminated early, you must also repay us a portion of the concessions you received as described in the Lease Concessions paragraph above.  In all cases, we reserve the right to report your payment history, outstanding balances, returned item fees, late fees, defaults, and other payment-related activity to consumer reporting agencies who track such information.

**28. Abandoned Property:**  You understand that if you leave personal property in the Premises after you move-out or if you put your property in areas of the Community that are not designated for your use, we can determine that such property has been abandoned and we can take steps to remove or dispose of the property consistent with applicable laws. Should any of your personal belongings remain in the Premises after this Lease has been terminated and delivery of possession has occurred, or if the Premises appears to have been abandoned, your property will be considered abandoned, and we may sell or dispose of it in any fashion we see fit, pursuant to N.J.S.A. 2A:18-74, et seq.

**29. Notices:**  All notices that we provide to you will be considered delivered when we put them in the U.S. Mail and send them via first class or certified mail; when we personally hand them to you or someone else who is living in the Premises, or when we leave them in the Premises when no one is home by attaching them to the outside of the door.  All notices from you will be considered delivered when you put them in the U.S. Mail addressed to the management office and send them via first class or certified mail, or when you personally deliver them to one of our employees at the management office during normal business hours.  The person designated as the on-site manager for the Community is the person authorized to act on our behalf in connection with this Lease.  More formal notices, including service of process, can also be made by serving our registered service agent.

**30. Liability:**  To the maximum extent permitted by law, you agree that you will look solely to the owner's interest in the Community for the recovery of any judgment against us and that the owner, the management company, and any of their related and affiliated entities (and any of their officers, directors, trustees, employees, partners, shareholders, insurers, agents and representatives) will never be personally liable for such judgment.  Except to the extent prohibited by law, we will not be liable for any damage, loss or injury to persons or property occurring in the Premises or in other areas of the Community.  To the fullest extent permitted by law, you agree to hold us harmless and to indemnify us from any such liability or claim.

**31. Fire and Casualty:**   If you cannot occupy the Premises because of a fire, explosion, casualty or any other health/safety issue which is not a result of your negligence or intentional conduct (or the negligence or intentional conduct of any person living in the Premises or any guest of such person), we shall determine, in our sole discretion, whether the Premises or the building is damaged or destroyed, and we may elect, in our sole discretion, to repair or re-build the Premises.  Rent shall remain due and owing unless we, in our sole discretion, determine that the Premises or the building is uninhabitable.  No penalty shall accrue against us for any reasonable delay in repairing the Premises by reason of adjustment of insurance proceeds, labor disputes, or any other cause beyond our reasonable control.  While we repair the Premises, the rent will be abated during the timeframe the repairs are being conducted.  If we provide alternative accommodations at our expense during such repair, the rent will not be abated.  Finally, if the damage to the Premises is caused by your negligence or intentional conduct (or the negligence or intentional conduct of any person living in the Premises or any guest), the rent for the Premises will not be abated, you will be responsible for paying rent on the Premises and for any costs we incur to repair the damage, and we will not provide alternative accommodations to you. If we elect to not repair the Premises or if the Premises are substantially or totally destroyed, we can elect to terminate this Lease.

**32. Waivers:**  Our failure to insist upon strict compliance with the terms of this Lease or any delay by us in enforcing your obligations under the Lease will not constitute a waiver of our right to act on other breaches or to make demands on you

to perform.  Your obligation to pay rent during the Lease term or during your continued occupancy of the Premises will continue notwithstanding our issuance of any notice, demand for possession, notice of termination of tenancy, institution of any action or forcible detainer, or any other act which might result in the termination of your right to live in the Premises. Unless otherwise restricted by applicable law, our acceptance of rent from you after it falls due or after knowledge of your breach of any obligations under this Lease is not a waiver of our rights under this Lease nor is it an election to not proceed under any provision of this Lease or the law.

**33. Severability:**  If any provision of this Lease is determined to be illegal, invalid, or unenforceable under present or future laws which are in effect during the Lease term, then, we will substitute similar provisions or language that will make such clause or provision legal, valid, and enforceable.   If substitute provisions are not available, then the illegal or unenforceable provision shall be removed from the Lease, but the remaining provisions in the Lease shall remain intact.

**34. Waiver of Jury Trial:**  Unless otherwise prohibited by applicable law, we both agree to waive trial by jury in any action arising in any way from your tenancy in the Premises.

**35. Laws Governing this Lease/Venue:**  This Lease shall be governed by the laws of the state in which the Community is located, and all legal action arising from this Lease shall be tried in the county where the Community is located.

**36. Written Agreement:**  This Lease, which includes the Term Sheet, these Terms and Conditions, the Resident Handbook and Community Policies, the Move-In/Move-Out Inspection Form, and all Lease addenda or other agreements that may be referenced on the Term Sheet or attached hereto, contains our entire agreement. We both acknowledge that there are no oral understandings between us, and neither of us have relied on any representations, express or implied, that are not contained in this Lease.

**37. Joint and Several Liability:**  Each resident, including all co-residents, is jointly and severally liable for each and every provision of this Lease.

**38. General:**  You confirm that you are of legal age to enter into a binding Lease for lodging.

**39. Additional State-Specific Requirements and Disclosures:**

a. **Acknowledgements.**
   1. You acknowledge that you have received a copy of the Certificate of Registration for the Community pursuant to N.J.S.A. 46:8-29.

   2. You also acknowledge that you have received a copy of the Truth-In-Renting Statement and that you have been advised that a copy of the Truth-In-Renting Statement is available at the management office for inspection pursuant to N.J.S.A. 46:8-46.

   3. You also acknowledge that you have been notified that applications for and information regarding crime insurance may be obtained from New Jersey Underwriters Association Crime Insurance for Habitable Property, 744 Broad Street, Newark, New Jersey 07102, pursuant to N.J.S.A. 46:8-39.

b. **Window Guards:**  If the Premises is located above the first floor and a child ten years of age or younger is living in the Premises or is regularly present in the Premises for a substantial period of time, we will, upon receipt of your written request, provide and install child protection window guards in the Premises.  Upon your request, we will also install child protection window guards in windows in public hallways of the building that are located above the first floor.  This paragraph constitutes notice to you, pursuant to N.J.S.A. 55:13A-7.14, of such requirement. If we need access to the Premises in order to install child protection window guards, you will grant us such access. You will not, nor will you allow any occupant or guest in the Premises to obstruct or interfere with the installation of any such child protection window guards, nor shall you or any occupant or guest remove or otherwise render the window guards ineffective.

## UTILITIES ADDENDUM

This Utilities Addendum ("Addendum") is dated effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of (the "Lease") by and between Lessor and Resident for the Premises at the Community identified in the Lease.

This Addendum provides additional information regarding those utilities for which the Community receives and pays the total utility bill (or bills) for the Community, and for which you either pay us or, in some cases, pay our billing vendor on our behalf. As noted in the Utilities section of the Term Sheet and the Utilities paragraph of the Terms and Conditions, the methods used to determine your portion of the costs for these utilities may be based on a submeter reading, an allocation method, or a flat fee, as described below. The Community's bills for these utilities may include additional fees or charges imposed by the utility company or municipality providing the service to the Community, in which case, such additional fees or charges may also be included in the bill you receive from our billing vendor. In some instances, these additional fees and charges will be itemized separately on the bill you receive from our billing vendor. You should also be advised that, in most cases, the Community's bills for these utilities will include the cost to provide these utility services in the common areas of the Community, which may include swimming pools, lawns and landscaped areas. As a result, your portion of such utility bills may include a portion of the cost to provide such utility services in the common areas.

1.  If your Term Sheet indicates that a utility bill is based on a submeter reading, the reading will be used along with the Community's most recent actual bill for the utility to calculate your bill by either (i) dividing the Community's bill for the utility by the usage shown on the meters for all apartments in the Community and multiplying that number by the usage shown on your meter; or (ii) dividing the Community's bill for the utility by the total usage from the master meter(s) for the Community and multiplying that number by the usage shown on your meter; or (iii) using the actual rate shown on the Community's bill for the utility multiplied by the usage shown on your meter. If the utility company charges us a fixed fee or base charge for each apartment, we will pass that charge through to you. If the Premises has a submeter in place, you will allow us and our vendors to access the Premises from time to time to read the submeter or perform repairs. You also agree that you will not tamper with, adjust, or disconnect any submeter or other measuring device that is installed in the Premises. If we are unable to read the submeter, your charges may be estimated based on prior usage or an average consumption rate.

2.  If your Term Sheet indicates that a utility is allocated based on square footage, your bill will be calculated by dividing the Community's bill for the utility by the total square footage of the apartments at the Community, multiplying that amount by the square footage of the Premises, and prorating that amount based on the number of days you had possession of the Premises during the billing period.

3.  If your Term Sheet indicates that a utility is allocated based on number of occupants, your bill will be calculated by dividing the Community's bill for the utility by the total number of occupants at the Community, multiplying that amount by the number of occupants in your Premises, and prorating that amount based on the number of days you had possession of the Premises during the billing period. Rather than using the actual number of occupants for this calculation, we may elect to use a ratio occupancy that results in multiple occupants being counted on a less than a "one-for-one" basis. By way of example, ratio occupancy might allow for one person in an apartment to count as one person in the allocation formula while two persons in an apartment may count as only 1.6 persons in the allocation formula.

4.  If your Term Sheet indicates that a utility is allocated based on a combination of square footage and number of occupants, your bill will be calculated by dividing the Community's bill for the utility, applying the square footage formula described in paragraph 2 above to a portion of the bill, applying the occupancy formula described in paragraph 3 above to the remainder of the bill, and adding the two results together.

5.  If your Term Sheet indicates that a utility is allocated equally among the number of occupied units at the Community (regardless of square footage or number of occupants), then your bill will be calculated (i) by dividing the Community's bill for the utility by the total number of occupied apartments in the Community during the billing period and prorating that amount based on the number of days you had possession of the Premises during the billing period; or (ii) in an amount that is based on the Community's average bills over a period of time, prorated based on the number of days you had possession of the Premises during the billing period.

6. If your Term Sheet indicates that a utility charge is based on a flat monthly charge, then your charge for such utility will be fixed for the term of your Lease in an amount we communicate to you at Lease signing, and will either be reflected in the Total Monthly Rent section of the Term Sheet or on the bill you receive from our billing vendor.

7. Our billing vendor may charge us for account set-up fees, meter maintenance fees, monthly billing fees, and other fees and charges in connection with their billing services.  If the billing vendor charges such fees, the billing vendor will include the fees on your bill and you will reimburse us for those amounts along with your payment to us for the utility charges.

8. The utility charges for the last billing period that you occupy the Premises will not be based on the Community's most recent actual bill for the utility but will, instead, be estimated by calculating the average of at least three months' of charges for the utility (as allocated to the Premises), dividing that average by the number of days in the billing period, and then multiplying that per diem charge by the number of days you had possession of the Premises since the last billing period ended.  Where required, we will use the actual submeter reading for your last month's charge. Your charge for utilities for the final month you occupy the Premises will, if available, be communicated to you and are payable by you prior to move-out.  If the charges for the utilities are not available at the time you move out, they will be included on the Statement of Deposit Account that is created and sent to you after you move out.

9. We reserve the right, upon written notice to you, to change the billing method for any utility.  We may be required to change this billing method if, for example, the Premises contains submeters and the submeters are unable to be read, we elect to install submeters at the Community, we are required to modify the billing allocation method or formula as a result of legislative or legal requirements, or for other business reasons.  By signing the Lease, you agree that we can do this.

10. We do not charge residents at the Community more than we pay for the utilities that are allocated according to these methods and, in some cases, if the actual bill for a utility in some months is significantly greater than the average bills for the utility, we may elect to calculate the residents' charges based on an amount that is less than the actual amount billed to the Community.  If the Community's actual utility bill is for a billing period that is longer or shorter than our billing period (which is typically a calendar month), we may prorate the bill to reflect the number of days in our billing period.

11. You agree that it is *impractical or extremely difficult* to determine the exact amount of the utilities that you, your occupants and guests consume during the billing period and that the method used to determine your share of the Community's actual bill for the utility service, as described on the Term Sheet and in this Addendum, which may not reflect your actual usage, is fair and reasonable.

DocuSign Envelope ID: 2DED557D-27B3-47F2-BDC3-F65D9624E468

## RENT CONTROL ADDENDUM
### (Jersey City and West New York Properties Only)

This Rent Control Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

Pursuant to N.J.S.A. 2A:42-84.3, we hereby notify you that the Premises and the Community are exempt from the provisions of any rent control ordinances instituted by Jersey City or West New York, as the case may be, and said Premises and Community will be exempt from any future rent control, rent stabilization or rent leveling ordinance instituted by these municipalities for a period of thirty years following the completion of construction at the Community.

*Legal Form – Notification of Rent Control Exemption v5*
*(Jersey City and West New York Properties Only) (New Jersey)*
*Revised 02/12/08*                                              *©Equity Residential 2008. All Rights Reserved*

## <u>CONSTRUCTION AND REHAB ADDENDUM</u>

This Construction and Rehab Addendum ("Addendum") is dated effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of (the "Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

We are anticipating the possibility of undertaking major construction at the Community. You may be inconvenienced by the noise and activity that generally accompanies construction activities.   Additionally, during the construction process, some areas of the Community, including recreational facilities, may be unavailable. Inconveniences caused by the construction work will not entitle you to offset your rental obligations, nor will they provide the basis for a complaint against us for rent relief or constructive eviction.

If the nature of the construction renders the Premises uninhabitable, we may cancel the Lease upon thirty (30) days' prior written notice to you, in which case, the Lease will terminate, and you must surrender possession of the Premises on the thirtieth (30th) day after the date of the notice.

*Legal Form –Construction and Rehab Addendum (National) v1*
*Revised 02/12/08*                                                                                    © *Equity Residential 2008.  All Rights Reserved.*