# EXHIBIT H

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A375527A18

# RESIDENTIAL LEASE – TERM SHEET



**Lessor:**      **Equity Residential Management, L.L.C.,**
              **as agent for the Owner**

**Community:** Portside Towers                          **Premises:** 001-1114

**Address:** 155 Washington Street                    **Premises Address:** 100 Warren Street - 1114
                                                                      Jersey City, NJ, 07302

          Jersey City, NJ, 07302
          (201) 938-0770

---

**Residents:**  ████████████████

**Guarantor:**

**Occupants:**

---

**LEASE TERM**
**Commencement Date:** 10/03/2022      **Expiration Date:** 10/04/2023      **Renters' Liability Insurance Required:** Yes

**Lease Term Expiration:  You must provide us with a written notice of your intent to vacate at least 60  days prior to your move-out date. If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short. The insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date.**

---

**Total Deposits Required:  $** 3524.00

---

**Total Monthly Rent          : $** 4360.00
**(includes all monthly recurring charges listed below)**

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| Monthly Apartment Rent | 4360.00 | | | | |

**Assigned Item Description**

**Concessions:**  Monthly Recurring Concession: $ 0.00      /per month. Total Amount of One-Time/ Non-Recurring Concession: $ 0.00      .  Total Amount of Other Recurring Concessions:  $ 0.00      .  The Total Monthly Rent shown above will be adjusted by these lease concession amounts.  If this Lease is terminated early, you may be required to pay us a portion of your concession as set forth in the Lease Concession paragraph of the Terms and Conditions.

---

**Total Other Fees and Charges:     $** 750.00
**(includes all charges listed below)**

| Charge Description | Amount | Charge Description | Amount | Charge Description | Amount |
|---|---|---|---|---|---|
| Amenity Use Fee | 750.00 | | | | |

---

| | Type | Breed | Weight | License/Tag |
|---|---|---|---|---|
| **Approved Pets** | | | | |

**For additional information regarding our pet policy, please refer to the Resident Handbook and Community Policies.**

**Resident Account Number:** 19094-001-1114-8

---

DocuSign Envelope ID: EB729DFB-91FA-4246-8258-C4A37E527A18

**LESSOR PAYS UNCHECKED UTILITIES / RESIDENT PAYS CHECKED UTILITIES**

☑ Electricity:            Direct billed by the provider.  You pay the provider

☐ Gas/Heating Oil:

☑ Water:                 Allocated based on square footage.  You will receive a bill from our billing vendor.

☑ Sewer:                 Allocated based on square footage.  You will receive a bill from our billing vendor.

☐ Central Boiler:

☑ Cable:                 Direct billed by the provider.  You pay the provider

☑ Garbage Removal:       Allocated equally among all occupied apartments. You will receive a bill from our billing vendor.

☑ Internet:              Direct billed by the provider.  You pay the provider

☐ Pest:

**Late Fees:** Your rent is due on the 1st of each month. If we do not receive your rent and other recurring charges, in person before the close of business, or electronically by 11:59 pm local time, on day 11 , you will be charged a late fee as follows:

10% on the 12th

**F Yîi f bYX˙=ÏÝa˙Fees:** If your payment fails to clear the bank for any reason, you will be charged a returned item fee of $ 40.00  per item.

| Additional Lease Addenda | |
|---|---|
| Residential Lease - Terms and Conditions | SmartHome Addendum |
| Utilities Addendum | |
| Fire Safety Plan | |
| Temporary Partition Addendum | |
| Rent Control Notification | |
| Construction and Rehab Addendum | |
| Smoke-Free Lease Addendum | |
| Parking Permit Zones Addendum | |
| Truth in Renting Statement | |
| Pet Animal Agreement | |

By signing this Term Sheet, you acknowledge that each of the Additional Lease Addenda are attached to this term Sheet and are therefore made a part of the Lease. You further acknowledge that you have read and that you agree to all of the provisions set forth in this Term Sheet and the Additional Lease Addenda.

You also acknowledge that you have received, or will receive, (separate from this Lease) a copy of the Resident Handbook and Community Policies and a copy of the Condition of Premises Inspection Form. You acknowledge and agree that the provisions contained in these two documents are incorporated into this Lease and that you will abide by the policies and procedures set forth in these documents.

**You specifically acknowledge that this Lease contains provisions extending the Lease Term if you stay beyond the Expiration Date set forth on the first page of this Term Sheet or if you fail to provide timely written notice of your intent to vacate the Premises at least 60  days prior to the Expiration Date.**

## READ THIS TERM SHEET BEFORE SIGNING

**Residents (ALL Residents must sign and date):**

DocuSigned by:

████████████████  8/25/2022 Date    _____ Date    _____ Date

████████████████  8/25/2022 Date    _____ Date    _____ Date

_____ Date    _____ Date    _____ Date

**Lessor:        Equity Residential Management, L.L.C.,
                 as agent for the Owner**

By: _____        08/23/2022
It's: Authorized Representative                    Date

**Resident Account Number:** 19094-001-1114-8

DocuSign Envelope ID: EB729DFB-91FA-4246-8258-C4A375527A18

**RESIDENTIAL LEASE – TERMS AND CONDITIONS**
**(New Jersey)**

These Terms and Conditions are attached to and incorporated by reference into the Residential Lease - Term Sheet signed by Resident ("you" or "your") and Lessor ("us" or "we") with respect to your rental of the Premises identified on the Term Sheet.  The Term Sheet, these Terms and Conditions, the Resident Handbook and Community Policies, the Move-In/Move-Out Inspection Form, and all Lease addenda or other agreements that may be referenced on the Term Sheet or attached hereto, make up the Lease.  The party executing this Lease as the Lessor is Equity Residential Management, L.L.C., which is acting as the managing agent for the owner of the Community.  Each person living in the Premises that is 18 years of age or older must sign the Lease as a resident.  All others living in the Premises must be designated as occupants.  Each person signing the Lease is jointly and severally liable for all of the various resident obligations under the Lease.  That means that every individual resident, including all co-residents, is responsible for the entire rental amount and other obligations, even if, as roommates, you have made arrangements among yourselves to allocate the rent or other payments among yourselves.

**1.    Lease Term/Month-to-Month Tenancy:**  The term of this Lease is set forth in the Lease Term section of the Term Sheet. At the end of your Lease term, if you do not move out or, if you do not sign a renewal lease, your Lease will automatically renew on a month-to-month basis.  If you stay in the Premises on a month-to-month basis following the term of the Lease, or you stay beyond your Lease end date in order to fulfill your notice requirement, you will, effective the day after your Lease term ends, pay the month-to-month rent amount included in the renewal offer we deliver to you.  Once you become a month-to-month tenant, we reserve the right to increase the month-to-month rental rate upon 30 days' notice to you.

**2.    Notice to Vacate/Early Termination:**

a.    If you plan to move out of the Premises at any time during your Lease term, including the expiration date of your Lease, you must provide us with a written notice of your intent to vacate at least 60 days prior to your move-out date. Once you are in a month-to-month status, you must give 30 days' written notice prior to your move-out date.  If you submit your notice to vacate and fail to move out on or before the notice date you provide to us, then, for each day you hold over, you will be charged holdover rent equal to two times your then-current per diem rental rate.  If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short.  The insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date.  If you move out without providing any notice at all, then, for the purposes of this paragraph, your move-out date will be considered to be your notice date. You acknowledge and understand that the purpose of this notice requirement is to provide us with adequate time to re-rent the Premises without interruption.

b.     With certain exceptions that may be allowed by applicable law, you have no right to terminate your Lease prior to the end of your Lease term. If you terminate your tenancy early, you will be in default under the Lease, and you will be responsible for paying early termination rent at the per diem rental rate that is in effect on your move-out date until the earlier of (i) the end of your Lease term; or (ii) the date a new resident moves into the Premises.  If your apartment is re-rented prior to the expiration of your lease term and the new resident's monthly apartment rent is less than your monthly apartment rent, then, for the remainder of your lease term, you will also be responsible for the difference between your monthly apartment rent and the new resident's monthly apartment rent.

c.    If you move out within the last 30 days of your Lease term, you will remain responsible for the balance of your rent and other charges through the expiration date of your lease.

d.    In all cases where you are charged early termination rent or insufficient notice rent, if a new resident moves into the Premises during the charge period, we will issue a credit to you for the number of days that the new resident was in possession of the Premises.

**3.    Move-Out Obligations:**  When you move out, you must remove all of your personal belongings and leave the Premises in substantially the same clean, undamaged, and ready-to-rent condition as existed when you took occupancy of the Premises, less ordinary wear and tear. You will be charged for replacement of any damaged or missing items, as well as all costs to clean or repair any portion of the Premises, carpeting, flooring, wall coverings, paint, counters, trim, window treatments, doors, windows, or appliances which are damaged, dirty, or unsanitary, and the removal of all trash and personal property from the Premises. Cleaning and repair of damage due to smoking of any kind or any damages or stains caused by pets, are not considered ordinary wear and tear.  In order to avoid being charged for cleaning carpets in the Premises after you move out, you must have the carpets professionally cleaned, as documented by a receipt you

provide to us. Having your carpets professionally cleaned, however, will not avoid liability for damage or permanent stains. You agree to return all keys, access cards and remotes to us to confirm you have vacated the Premises. If you fail to return these items, you agree that your move-out date will be the date we physically take possession of the premises.

**4.**      **Rent:**  You agree to pay the amount shown in the Total Monthly Charges section of the Term Sheet , in advance and without demand, on or before the first day of each calendar month.  All rent and other charges are  subject to an enforcement action if not received in a timely manner. All rent must be paid in U.S. dollars and we reserve the right to require that payments be made in one lump sum, even if there are multiple residents listed on the Lease.  We strongly encourage residents to use on-line or electronic payment methods. Unless prohibited by law, we may elect to centralize the collection sites for non-electronic payments and/or require that all payments be made electronically.  If we do so, we will notify you in writing of the requirement, and, in the case of centralized collections, the address to which you should send your payments, as well as the effective date for such change.  If we designate an off-site receivables location, you agree that all rent and other payments directed to that location must be received at the designated location on or before the due date. We do not accept cash, third party personal checks, or checks without a preprinted name and address of the account holder. If you pay by personal check, you are authorizing us to scan the check and convert it into a one-time electronic debit from the bank account against which the check was written.  Unless prohibited by law, we reserve the right to refuse payments by personal check, automatic debit or other form of electronic payment and require payment by cashier's check or money order if, for example, you have submitted previous checks or other payments to us that have failed to clear the bank.  We are not required to re-deposit a dishonored check.

**5.**      **Late Charges and Returned Item Fees:**  You acknowledge that if we do not receive your rent and other  charges on time, we will incur costs, the exact dollar amount of which is difficult or impracticable to determine.  Such costs may include, among other things, lost use of funds, bank or other charges, costs incurred in connection with accounting for and attempting to collect late payments; collection expenses; and other administrative and accounting costs.  As a result, if we do not receive your rent when it is due, we will assess late fees as described in the Late Fees section of the Term Sheet. Similarly, if any payment to us (electronic or otherwise) is returned or otherwise rejected by your financial institution for any reason, we will assess a returned item fee as described in the Returned Item Fees section of the Term Sheet, as well as all applicable late fees. The fact that a late charge is not assessed until sometime after the first day of the month does not constitute a grace period for the payment of rent. We have the right to file suit to gain possession of the Premises on the second day of the month if rent is not paid on time  The fees described in this paragraph are in addition to any other remedies we may have in the event of your default under the terms of this Lease. You agree that the late fee is a fair and reasonable estimate of actual expenses we may incur as a result of your failure to pay rent when due.

**6.**      **Application and Acceptance of Payments:**   Unless we are prohibited from doing so by law, we will apply the payments you make to us in the order of priority we determine, regardless of any notations that you make on checks, money orders or other forms of payment. We reserve the right to accept any amount less than the balance due at any given time and, if we do accept a lesser amount, such acceptance will not represent a waiver of any right we have to pursue you for the outstanding balance or possession of the Premises.  If you are chronically late with your payments of rent and other charges , we reserve the right to terminate this Lease.

**7.**      **Security Deposit:**   Upon signing this Lease, you have agreed to give us deposits as set forth in the Total Deposits section of the Term Sheet. These Total Deposits are not prepaid rent, but, rather are a good faith deposit for your fulfillment of your Lease obligations, as well as a contingency against damages to the Premises.  The Total Deposits are held in a separate interest-bearing account at the following bank:

> Bank of America
> 880 Bergen Ave
> Jersey City, NJ 07306
> Type of Account:  Interest Bearing
> Current Interest Rate:  0.00%

Pursuant to applicable law, this Lease constitutes a receipt for the Total Deposits you paid.  The interest rate shown above is the rate paid by the bank as of the date this Lease is being entered into.  This interest rate will change from time to time throughout the Lease term and, pursuant to New Jersey law, all accrued interest on your Total Deposits will be paid to you on an annual basis and at move-out.

You are not entitled to apply any part of your Total Deposits against rent and other charges  during the time you are occupying the Premises. Consistent with the requirements of state law, after you move out, we will inspect the condition of the Premises, and charge, against your Total Deposits, for any damages beyond ordinary wear and tear, excessive

cleaning or trash removal charges, as well as any outstanding balances you owe us.  If any balance of the Total Deposits remains after applying all such charges, we will refund it to you. If the move-out charges and/or other unpaid amounts remaining on your resident account at the time you move out exceed the amount of the Total Deposits, you agree to pay us the difference.  We reserve the right to charge pre-judgment interest on any balance owing after you move out.  Such interest will begin to accrue when the balance, if any, shown on the Statement of Deposit Account we issue to you is not paid within 30 days following the date set forth on the Statement of Deposit Account.  The interest charged on the outstanding balance will not exceed the rate of 18% per annum or the highest rate allowed by law, whichever is less, and will be reflected on the Statement of Deposit Account that will be issued to you after you move out. If you wish to do so, you may request us to inspect the Premises with you upon move-out. If no other arrangements are made, we will inspect the Premises within 48 hours after you move out.  If there are multiple co-residents on this Lease, you agree that, at the time you provide notice to move out, you will (i) provide a forwarding address to us for receipt of the Statement of Deposit Account; and (ii) select one co-resident, who resides at the forwarding address, to receive the refund of any Total Deposits paid.  You may also have the opportunity, upon providing an account number to us, to select to have your refund, if any, directly deposited into the bank account of the selected co-resident.  If you fail to provide us with a forwarding address and co-resident designation, we will, within the timeframe required by state law, (i) make the refund check payable to all residents listed in the Lease, and (ii) mail the refund check to the address provided or, if no forwarding address is provided, we will mail the refund check to the Premises address for forwarding by the U.S. Postal Service.

**8.      One-time Fees:**  If you have paid other fees and charges as set forth in the Total Other Fees and Charges section of the Term Sheet, you acknowledge and understand that such other fees and charges are not refundable, are not considered to be a security deposit or part of the Total Deposits, and will not be applied as a credit toward any amounts owed by you at the time you move out. The Amenity Fee set forth on the Term Sheet is a one time, non-refundable charge for use, in common with other residents, of the common areas and amenities at the Community. We will charge an additional Amenity Fee at the time you renew your lease. We have the right to increase or decrease the Amenity Fee at any time.

**9.      Lease Concessions:**  If you received any Lease concession, you must fulfill all of your obligations under this Lease for the entire Lease term.  If this Lease is terminated early, you must repay a prorata portion of the total Lease concessions you received based on the number of days remaining in your Lease term after you move out.  Any concession that is designated on the Term Sheet as a one-time or upfront concession must be applied first toward your rent and other charges during the first full calendar month of the initial term and to consecutive months thereafter until the balance of the concession credit reaches zero.  If the concession shown on the Term Sheet is designated as a recurring concession and the Lease is terminated early, the early termination rent that will be charged after you move-out will not include the deduction for the recurring concession.

**10.     Employees of Lessor:** If you are an employee of Lessor or a co-resident living with an employee of Lessor, you acknowledge and agree that the rent concession identified on the Term Sheet may or may not be provided to the employee as a condition of employment. If the requirement to live in the Premises is not a condition of employment and the value of the rent discount exceeds 20% of the monthly rent, the amount that is in excess of 20% will be included in your taxable income and you will be required to pay all applicable taxes on that amount. During any time that you are on leave of absence from your employment, if you are responsible for taxes on your rent discount, you must remit the tax amount that is generally withheld from your paycheck to the Lessor during the month in which the concession is granted. If you fail to do so, after notice to you, Lessor reserves the right to eliminate that portion of the concession in excess of 20% of the monthly rent. You also agree to pay your rent and other charges electronically each month via one of the following: (i) the one-time payment option on the resident portal; or (ii) Automatic Debit Authorization; or (iii) other electronic payment process implemented by Lessor. If you do not have a checking account, you may pay by money order or cashier's check given directly to the Community's management office. Under no circumstances are you to rent space in the Premises to occupants on a short-term basis and you are specifically prohibited from advertising and leasing the Premises through such sites as Airbnb, craigslist, Expedia, Hotels.com, or any other similar locator sites. If you breach the Lease for any reason, we may, in addition to our right to pursue remedies under the Lease for breach of Lease, terminate the employee concession and require you to pay the Monthly Apartment Rent set forth on the Term Sheet, along with other charges, without the employee concession.  If the employee's employment is terminated for any reason, your tenancy will terminate on the seventh day following the last day of employment. Unless we enter into a new Lease with you or consent in writing to allow you to remain in the Premises for a specified period of time, which is in our sole discretion, you agree to vacate the Premises by this date.  We have no obligation to enter into a new lease with you or to allow you to remain in the Premises beyond this timeframe. If we mutually agree to continue your residency, you must sign a new lease at a rate that is compliant with then-current pricing guidelines for non-employees and you must also make all deposits customarily collected from other residents at the Community, prior to the expiration of your tenancy (seven days). If you continue to occupy the Premises beyond the seven day period or the agreed upon vacate date, whichever is

DocuSign Envelope ID: EB729DFB-91FA-4246-8258-C4A3F527A18

applicable, without having signed a new lease and paying all deposits, you will be considered a "holdover" resident, as defined in this Lease and will be subject to the terms and conditions relating to such holding over.  Unless you have signed a new lease, no holding over by you or payments of money by you to Lessor shall be construed to extend the Lease term or prevent us from recovering possession of the Premises. You understand and agree that the obligations identified in the Arbitration Policy and Agreement to submit certain types of employment-related disputes to binding arbitration, do not apply to any dispute related to your tenancy or this Lease.

**11.    Failure to Pay Deposits, Other Fees and Charges and First Month's Rent:**  If you fail to pay any deposits, other fees and charges and the first month's rent (or a prorated amount if the first month is a partial month) prior to moving in, you will be in default under the Lease and we can refuse to give you possession of the Premises until you pay such amounts.

**12.    Delay in Delivery of Possession:**    You are responsible for paying rent and other charges effective with the Commencement Date shown in the Lease Term section of the Term Sheet.   If we are unable to give you possession of the Premises on the Commencement Date, we will abate the rent until we are able to do so. You agree that you will not seek reimbursement from us for any cost incurred by the delay of possession, including, but not limited to, storage or temporary lodging.   Subject to applicable law, if we fail to deliver the Premises to you within 30 days from the date promised, either you or we may terminate the Lease by providing written notice to the other.  Requirements for us to make repairs or clean the Premises that do not affect your ability to occupy them will not constitute a delay or entitle you to a rent abatement.  If we are unable to deliver the Premises but, at our discretion, offer you comparable accommodations at no additional cost, you will not be entitled to a rent abatement.

**13.    Rental Application and Resident Information Updates:**    You have provided certain information in your Application for Rental that we have relied on in connection with renting the Premises to you.  You agree to promptly notify us if any of the information you provided changes. If any of the information you provided to us on your Application or in any subsequent updates is materially false, incomplete or misleading, or if you fail to notify us of any change or if you fail to update your information, you will be in default of your obligations under this Lease.

**14.     Disclosure of Information:**  To the extent permitted by applicable law, we may provide information about you, your co-residents, or any of your occupants to third parties such as law enforcement personnel, future landlords, mortgagees, attorneys, collection agencies, and consumer reporting agencies for law-enforcement, governmental, credit, rent payment history, or other business purposes.  If we provide such information to third parties at your request, we reserve the right to charge a reasonable administrative fee for doing so.  If you and your co-residents have a guarantor, we may, without notifying you, provide information to the guarantor.

**15.    Utilities and Utility Cost Adjustments During the Lease Term:**  You are responsible for paying for all of the utilities identified on the Term Sheet that are checked, and any utilities that we have not specifically agreed to pay.  In some cases, the utility service will be provided to you by the utility company and you will pay the utility company directly.  In other cases, your utility bill may be calculated based on a submeter reading, an allocation method, or a flat fee (as more fully described in the Utilities Addendum attached to this Lease), in which case you will receive a bill for such utilities from our billing vendor and you will either pay us directly or send your payments to our billing vendor.  The Utilities section of the Term Sheet identifies which utility bills are to be billed by and paid directly to the utility company and which utility bills are to be billed by our billing vendor and either paid to us directly or, in some cases, sent to our billing vendor.   In all cases, your failure to pay the utilities in full when due shall be considered a default under the Lease.  You will not allow utilities that are in your name to be disconnected for non-payment or any other reason. If you do not connect the utilities as of your Lease start date or, if you disconnect the utilities early before moving out, and the utilities remain in our name during such timeframes, we will bill you for the utility charges incurred for the days you were in possession of or living in the Premises, along with an administrative fee of $50.00 for each utility bill we process on your behalf.  You acknowledge that if the utilities remain in our name, we will incur costs, the exact dollar amount of which is difficult or impracticable to determine.  Such costs may include, among other things, lost use of funds, bank or other charges, costs incurred in connection with paying, accounting for and attempting to collect utility payments; collection expenses; and other administrative and accounting costs. Because many utilities have long billing cycles, we may not have the actual utility bill in hand at the time we process your move out charges.  In that circumstance, we reserve the right to estimate the utility charges for you based on typical or average consumption.   We make no representation or warranty with respect to the amount of any estimated or actual utility costs associated with the provision of utility services to the Premises or the Community. To the extent we make a request of you in connection with any analysis of overall utility consumption at the Community, you authorize us, as your agent, to request and receive copies of your utility billing records directly from the utility provider.  You acknowledge that we cannot be held responsible for any outages, interruptions or fluctations in utility service that are provided to the Premises, and that you have no right to claim constructive eviction or to receive any offset

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A375527A18

or reduction of rent or diminished rental value of the Premises as a result of any such outages, interruptions, or fluctuations.

**16.     Right to Enter:** Subject to notice requirements imposed by applicable law, we and our employees and agents may enter the Premises during reasonable hours for any lawful purpose, including but not limited to inspections, maintenance, repairs and pest control procedures. We also reserve the right to enter the Premises at any time in the event of an emergency, to check for abandonment, or to abate a nuisance. If you submit a service request to us, such request for service will constitute your permission for us to enter the Premises to do the requested work. You authorize us, in the event of your death or incapacity, to grant access to the Premises and the contents therein to the individual named in the emergency contact section of your Application for Rental or otherwise named by you in connection with updating your resident information.  Once we grant access to such person, he/she may remove all personal property from the Premises and dispose of it in accordance with applicable law.  You hereby release and discharge us from any liability, claim or damages arising out of or in connection with our granting such access to the person you named.  Assuming you have submitted a notice to vacate to us, we may, during the last 30 days of your tenancy and without advance notice to you, show the Premises to prospective new residents during normal business hours. If it is necessary for you to temporarily move out in order for us to exterminate or for other reasons, you agree to do so upon at least seven days' notice or on shorter notice as may be reasonable under the circumstances.  If you are forced to temporarily move out for more than one day because of a duty, condition or event that is our responsibility under this Lease or by law and, if we do not make substitute accommodations available to you, we will abate your rent and other charges for the period of time you are unable to occupy the Premises.

**17.     Right to Exclude:**  We reserve the right to exclude from the Community you and any of your occupants or guests who violate this Lease, any of the Community's policies, or the law.  We also reserve the right to exclude anyone who disturbs other residents or our employees and agents, as well as anyone we reasonably believe represents a potential threat to other residents or to our employees and agents.  We may also exclude from the Community any person who refuses to show photo identification to us or to identify himself or herself as a resident, occupant or guest.  We may deny you or any person access to the Premises, including by changing the locks, if any court or legal order restrains or bars you or such person from the Premises.

**18.     Liens or Sales by Lessor:** This Lease is subject and subordinate to all present or future ground or underlying leases, loans, mortgages, deeds to secure debt or deeds of trust affecting the Premises and the Community which we or any subsequent owner of the Community may enter into.  You hereby appoint us as attorney-in-fact to execute and deliver any and all necessary documents to evidence such subordination of the Lease.  Foreclosure of any mortgage or any sale of the Community will not constitute a constructive eviction and, in the event of any such action, you will continue to pay your rent and other charges and perform your obligations under this Lease.  Upon any foreclosure or sale, we will be released from all obligations under this Lease that accrue after the date of the foreclosure or sale and you will look solely to the then-current owner for the performance of Lessor's duties.

**19.     Criminal Activity:**  You agree that neither you, nor any of your occupants or guests will (i) engage in any criminal activity of any kind, including, without limitation, drug related criminal activity, prostitution or criminal street gang activity, on or near the Community, (ii) engage in any act intended to facilitate such criminal activity, (iii) use or permit the Premises to be used for, or to facilitate, any criminal activity, or (iv) engage in any acts of violence or intimidation or any threats of violence, verbal or otherwise, including, but not limited to, the discharge or brandishing of firearms or other weapons, on or near the Community or otherwise.  For purposes of this section, "drug related criminal activity" includes, but is not limited to, the use of or the manufacture, sale, distribution, dispensation or possession with intent to manufacture, sell distribute, or dispense, marijuana or any other Controlled or Counterfeit Substance, as defined in the Controlled Substances Act (21 U.S.C. 802), as amended from time to time.  One or more violations of the provisions of this paragraph will be considered a breach of the Lease and good cause for the immediate termination of your tenancy and your eviction from the Premises.  Unless otherwise provided by law, proof of a violation of this paragraph shall not require criminal conviction, but may be based on our reasonable suspicion and a preponderance of the evidence. In addition, if you or any of your occupants have engaged in any criminal activity during the Lease term or otherwise, we may take action to terminate the Lease and pursue eviction-related remedies.

**20.     Use and Occupancy:**  The Premises are to be occupied and used solely as a private residence.  Therefore, conducting any kind of business in the Premises, or anywhere in the Community, is prohibited.  However, a lawful business conducted "at home" by computer, mail or telephone is permissible if customers, clients, patients or other business associates do not come to the Premises for business purposes.  The number of people living in the Premises is subject to applicable local occupancy standards.  Only those residents and occupants identified on the Term Sheet, and, subject to the Community's occupancy standards, children born or adopted during the Lease term, may occupy the

DocuSign Envelope ID: EB729DFB-91FA-4246-8258-C4A37F527A18

Premises without our prior written consent. If someone stays with you for more than 15 days (consecutive or otherwise) in any one month, we will consider such person to be an unauthorized occupant and, in order to allow such person to continue residing in the Premises, we must consent. If the person is age 18 or older, we may require him/her to complete an Application for Rental and pay an application fee. If we consent to such person's occupancy in the Premises, we also require that such person, unless he/she is a full-time student residing with a parent or guardian, be named on the Lease as resident. You acknowledge that we may require that any additional co-residents be screened through our credit and criminal screening process. You understand, however, that some individuals, guests, occupants, etc., who stay at the Community may not have gone through this process. All co-residents who are added as residents to the Lease are accepting the Premises in as-is condition and are agreeing to be jointly and severally liable for the condition of the Premises. You are responsible for your conduct, as well as the conduct of your occupants and guests. You, your occupants and all guests will: (i) show due consideration for neighbors and not interfere with, disturb or threaten the rights, comfort, health, safety, convenience, quiet enjoyment and use of the Community by us, other residents and occupants and any of their guests, agents or invitees; (ii) not engage in abusive, threatening or harassing conduct, including, but not limited to racist conduct, toward us, our employees, agents or representatives, or other residents, occupants or guests at the Community; (iii) you will not unreasonably interfere with our management of the Community; (iv) exercise reasonable care in the use of the Premises and maintain the Premises in a clean, safe and undamaged condition, ordinary wear and tear excepted; (v) comply with all of the policies and procedures contained in the Resident Handbook and Community Policies we delivered to you via My.EquityApartments.com or otherwise; and (vi) comply with federal, state and local laws, regulations, statutes and ordinances which are applicable to the Premises and your tenancy. We reserve the right to be the sole judge of acceptable conduct and to determine the appropriate action necessary to deal with unacceptable conduct, including, but not limited to taking action to terminate your tenancy and to pursue eviction-related remedies.

**21.      Restrictions on Assignment and Subletting/Prohibition Against Short-Term Rentals:**

a.        You may not assign this Lease or sublet the Premises without our prior written consent. If we do consent to any assignment or sublease, you will remain fully responsible and liable for the payment of the rent and other charges throughout the remainder of the Lease term.

b.        The Premises are not to be used or occupied as a hotel or for any other transient use. Under no circumstances are you to rent space in the Premises to occupants on a short-term basis (for a period of time less than 30 days), or for any short-term occupancy that may be governed by or prohibited by state or local laws, including, but not limited to, those applicable to transient housing, code violations or hotel taxes, unless you receive consent from us. Unless you are given permission by us, you are specifically prohibited from advertising the Premises for rental on sites such as Airbnb, craigslist, Expedia, Hotels.com or any other similar locator sites, regardless of whether the purpose of such advertisement is for short term or transient occupants or for long term rental. Should we become aware of any violation of these short-term stay provisions or incur any loss as a result of your violation of this provision, including but not limited to, any fines or fees assessed against us by any federal, state or local authority, or any loss in business revenue, you will indemnify us and assume full responsibility for any and all such losses that we incur.

**22.    Repair and Maintenance:**  You confirm that you have inspected the Premises, found them in a clean, rentable, and undamaged condition (other than items listed in the Move-In/Move-Out Inspection Form that you completed or will complete), and that you accept the Premises in "as is" condition. You specifically acknowledge that no condition exists in the Premises that make the Premises materially dangerous or hazardous to your life, health, or safety. If any part of the Premises is in need of maintenance or repair, you agree to notify us immediately. Damages and defects not itemized will be presumed to have first occurred during your occupancy of the Premises. You understand that you are responsible for keeping the Premises in a clean, sanitary and undamaged condition, ordinary wear and tear excepted. You are responsible for properly performing routine cleaning of all interior portions of the Premises. If you fail to keep the Premises clean (including, but not limited to eliminating dirt, filth, scum, grease, oil, mud, scuffs, holes, gouges, burns, stains, tears, cuts, rips, fleas, pests, foul scents or odors (including those relating to smoking), surface mold on caulking at the sinks, tub, shower and other locations, and other conditions which could have been avoided by careful use and routine cleaning), or if you, your occupants or any animals cause damage to the Premises in excess of ordinary wear and tear, you will be responsible for the costs to clean and/or repair such damage. Furthermore, you and your occupants are responsible for maintaining the Premises in a clean and sanitary condition, free of garbage and rubbish and in a condition that does not cause or contribute to a pest or rodent infestation.

**23.    Fair Housing Accommodations/Modifications:** We are firmly committed to the principles of Fair Housing. If you or any person residing in the Premises, as a result of a disability, requires accommodations to our rules, policies, practices or services, or a physical modification to the Premises and/or the common areas of the Community in order to

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

provide you or your occupants with equal opportunity to use and enjoy the Premises, you will notify us.  If you require physical modifications to the Premises, we may require you to enter into a modification agreement identifying the modifications to be made and any restoration obligations you may have.

**24.  Military Clause:**

a.  If you become an active duty member of the United States Armed Forces during the Lease term, then, pursuant to the provisions of the Servicemembers Civil Relief Act ("SCRA") and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official orders; (ii) provide at least 30 days' prior written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent and other charges through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the Security Deposit paragraph above.

b.  If you are an active duty member of the United States Armed Forces at the time you are signing this Lease, you affirm that the Lease end date does not extend beyond your anticipated discharge, retirement or release from the United States Armed Forces.  Pursuant to the provisions of the SCRA and other applicable laws, you may be released from your obligations under the Lease, without penalty, so long as you: (i) provide a copy of your official permanent change-of-station orders or your official orders to deploy for a period of not less than 90 days; (ii) provide at least 30 days' written notice of your anticipated move-out date; (iii) pay all outstanding balances and rent and other charges through your move-out date; and (iv) make satisfactory arrangements to pay all costs incurred by us to repair the damages caused by you, your occupants or guests, and pets, consistent with the provisions of the Security Deposit paragraph above.

c.  Notwithstanding the provisions of the Lease Concessions paragraph above, if you are exercising your right to terminate the Lease pursuant to the SCRA and this Military Clause paragraph, you will not be required to repay any portion of Lease concessions set forth on the Term Sheet.  If any resident satisfies the requirements of this paragraph, all residents in the Premises will be released from their obligations under the Lease if they also elect to vacate the Premises.

**25.  Resident Insurance.**  We strongly recommend that you secure a renters insurance policy covering your personal belongings, which also includes personal liability insurance covering your actions.  Unless there is a prohibition imposed by affordability covenants or other restrictions applicable to the Premises, we require all residents to maintain a policy of liability insurance issued by an authorized insurance company that provides limits of liability in an amount of at least $100,000 per occurrence.  If the Term Sheet indicates that Renter's Liability Insurance is required, you must furnish proof of insurance to us on or before the commencement date of the Lease and, assuming you enter into renewal leases with us, you must continue to provide evidence of coverage for all subsequent renewal terms.  You can obtain such insurance from Assurant, through Residential Insurance Agency, LLC at www.rentersdirect.com, or through the insurance agent of your choice. If you select an insurance company other than Assurant you must name the Community as an Interested Party under your policy. Please note that Residential Insurance Agency, LLC, a licensed insurance agency, is an affiliate of Lessor. Except where prohibited by law, if you fail to obtain and maintain liability insurance as required by this paragraph, you will be in violation of your lease obligations.  In such event, we will send a written notice to you demanding that you cure the violation by procuring the insurance and supplying evidence of coverage to us.  If you fail to supply evidence of such insurance to us on or before the date set forth in your notice, we reserve the right to procure liability only insurance coverage on your behalf, and to charge you for the amount of the premium paid to the insurance company, not to exceed $180.00 per year, along with an administrative fee of $40.00. You agree that this administrative fee is a fair and reasonable estimate of the administrative costs we will incur as a result of procuring the liability insurance coverage for you. If you fail to pay for the liability insurance and/or you allow the expiration or cancellation of any liability insurance policy during your tenancy, without substitute insurance being put in place, this will be considered a default under the Lease.

**26.  Corporate Units:**  If the name in the Resident section of the Term Sheet is a company or business (and not an individual person), then the company assumes all responsibility for damage to the Premises and any loss incurred by us or any third party that is caused by any person living in the Premises.  The company also agrees to indemnify us for all claims, damages, losses and expenses related in any way to the occupancy of the Premises.  The company agrees to identify all persons living in the Premises and to provide written authorization to us to release keys, key cards, and/or access cards to such occupants.  The company agrees to maintain, at its sole cost and expense, throughout the term of the Lease and any subsequent renewal terms, the following insurance: Commercial General Liability insurance on a form at least as broad as Insurance Services Office ("ISO") Commercial General Liability Coverage "occurrence" form CG 00 01 0196 or another ISO Commercial General Liability "occurrence" form providing equivalent coverage, providing broad form comprehensive general liability coverage, blanket contractual liability coverage, coverage for bodily injury (including death), property damage (including loss of use thereof), products and completed operations with an authorized insurance

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37F527A18

company with a rating of A X in a minimum amount of One Million Dollars ($1,000,000) per occurrence. The company must be named the insured and the company shall name the owner of the property, ERP Operating Limited Partnership, Equity Residential, Equity Residential Management, L.L.C., and their affiliates and agents (collectively, the "Lessor Entities") as additional insureds under the required policy. In the alternative, the company may purchase renters liability insurance for the Premises from an insurance company of company's choosing or through the program made available to residents at the Community through Residential Insurance Agency, LLC. If company elects to purchase such renters liability insurance through a company other than Residential Insurance Agency, LLC, the company must name the Community as an Interested Party under the policy. In any event, the company must, on or before the commencement date of the lease, deliver to us a certificate of insurance evidencing the coverage provided, and provide replacement certificates fifteen (15) days prior to the expiration of any required coverage.  Except where prohibited by law, if the company fails to obtain and maintain the insurance as required by this paragraph, the company will be in violation of the Lease.  In such event, we will send a written notice to the company demanding that it cure the violation by procuring the insurance and supplying evidence of coverage to us.  If the company fails to supply evidence of such insurance to us on or before the date set forth in our notice, we may procure such insurance on the company's behalf and charge the company for the amount of the premium paid to the insurance company, not to exceed $150.00 per year, along with an administrative fee of $40.00. The company agrees that this administrative fee is a fair and reasonable estimate of the administrative costs we will incur as a result of procuring the liability insurance coverage for the company.  If the company fails to pay for the liability insurance and/or the company allows the expiration or cancellation of any liability insurance policy during the company's tenancy, without substitute insurance being put in place, this will be considered a default under the Lease.

**27.   Default Remedies:**  If you fail to perform any of your obligations under this Lease, we may exercise all of our rights under this Lease, at law or in equity.  This may include giving you notice to correct or cure such default, taking action to recover possession of the Premises via the eviction process or otherwise, and/or terminating the Lease, all in accordance with applicable law.  In addition, we can recover from you all damages, costs and expenses, including, among other things, damage to the Premises, cleaning and trash removal charges, delinquent rent and other charges.  If you terminate your tenancy early, skip or are evicted, we can also recover early termination rent consistent with the provisions set forth in the Notice to Vacate/Early Termination paragraph above.  Unless otherwise prohibited by law, we can also recover the costs, including attorneys' fees and court costs, which we incur to pursue such actions against you, even if we do not file formal litigation.  These attorney fees and costs shall be collectible as additional rent as defined in the Rent paragraph above. **IF YOU ARE SUCCESSFUL IN ANY ACTION OR SUMMARY PROCEEDING ARISING OUT OF THIS LEASE, YOU SHALL RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH FROM US TO THE SAME EXTENT WE ARE ENTITLED TO RECOVER ATTORNEY'S FEES OR EXPENSES, OR BOTH AS PROVIDED IN THIS LEASE.** If you terminate your tenancy early, skip or are evicted, you must also repay us a portion of the concessions you received as described in the Lease Concessions paragraph above.  In all cases, we reserve the right to report your payment history, outstanding balances, returned item fees, late fees, defaults, and other payment-related activity to consumer reporting agencies who track such information.

**28.   Abandoned Property:**  You understand that if you leave personal property in the Premises after you move-out or if you put your property in areas of the Community that are not designated for your use, we can determine that such property has been abandoned and we can take steps to remove or dispose of the property consistent with applicable laws. Should any of your personal belongings remain in the Premises after this Lease has been terminated and delivery of possession has occurred, or if the Premises appears to have been abandoned, your property will be considered abandoned, and we may sell or dispose of it in any fashion we see fit, pursuant to N.J.S.A. 2A:18-74, et seq. You agree that the value of any personal property you leave in the Premises after you move out has a value of $0.00.

**29.   Notices:**  Except as otherwise provided by law, all notices that we provide to you will be considered delivered when we put them in the mail, personally deliver them to the premises, or send them via email. All notices from you will be considered delivered when you put them in the mail or personally deliver them to the management office during normal business hours.   By providing us with your e-mail address and cell phone number, you agree that we may communicate with you from time to time via e-mail, telephone calls and/or text messages (message and data rates may apply).  By entering into this Lease, you expressly authorize us to contact you in such manners.  If you wish to opt out of receiving e-mail communications, please unsubscribe using the link at the bottom of the emails.  If you wish to opt out of receiving text messages, please follow the instructions at the end of the text.  If you wish to opt out of receiving calls to your cell phone, please make that election by notifying the management office.  The person designated as the on-site manager for the Community is the person authorized to act on our behalf in connection with this Lease.  More formal notices, including service of process, can also be made by serving our registered service agent. In addition to U.S. mail and personal delivery options, lease renewal offers may be delivered to you via e-mail, text message and/or via a link to our resident website, My.EquityApartments.com.

**30.      Liability:**  To the maximum extent permitted by law, you agree that you will look solely to the owner's interest in the Community for the recovery of any judgment against us and that the owner, the management company, and any of their related and affiliated entities (and any of their officers, directors, trustees, employees, partners, shareholders, insurers, agents and representatives) will never be personally liable for such judgment.  Except to the extent prohibited by law, we will not be liable for any damage, loss or injury to persons or property occurring in the Premises or in other areas of the Community.  To the fullest extent permitted by law, you agree to hold us harmless and to indemnify us from any such liability or claim.

**31.      Fire and Casualty:**  If the Premises are damaged due to fire, explosion, casualty or any other health/safety issue which is not a result of your negligence or intentional conduct (or the negligence or intentional conduct of any person living in the Premises or any guest of such person), we may elect, in our sole discretion, to repair or re-build the Premises.  Rent and other charges shall remain due and owing unless we, in our sole discretion, determine that the Premises or the building is uninhabitable.  No penalty shall accrue against us for any reasonable delay in repairing the Premises by reason of adjustment of insurance proceeds, labor disputes, or any other cause beyond our reasonable control.  If you are unable to live in the Premises while we conduct the repairs, your rent will be abated during the timeframe the repairs are being conducted.  However, if we provide alternative accommodations at our expense during such repair, the rent and other charges will not be abated.  Finally, if the damage to the Premises is caused by your negligence or intentional conduct (or the negligence or intentional conduct of any person living in the Premises or any agent or guest), the rent and other charges for the Premises will not be abated, you will be responsible for paying rent and other charges on the Premises and for any costs we incur to repair the damage, and we will not provide alternative accommodations to you. If we elect to not repair the Premises or if the Premises are substantially or totally destroyed, we may elect to terminate this Lease.

**32.      Waivers:**  Our failure to insist upon strict compliance with the terms of this Lease or any delay by us in enforcing your obligations under the Lease will not constitute a waiver of our right to act on other breaches or to make demands on you to perform.  Your obligation to pay rent and other charges during the Lease term or during your continued occupancy of the Premises will continue notwithstanding our issuance of any notice, demand for possession, notice of termination of tenancy, institution of any action or forcible detainer, or any other act which might result in the termination of your right to live in the Premises.  Unless otherwise restricted by applicable law, our acceptance of rent and other charges from you after it falls due or after knowledge of your breach of any obligations under this Lease is not a waiver of our rights under this Lease nor is it an election to not proceed under any provision of this Lease or the law.

**33.      Severability:**  If any provision of this Lease is determined to be illegal, invalid, or unenforceable under present or future laws which are in effect during the Lease term, then, we will substitute similar provisions or language that will make such clause or provision legal, valid, and enforceable.   If substitute provisions are not available, then the illegal or unenforceable provision shall be removed from the Lease, but the remaining provisions in the Lease shall remain intact.

**34.      Waiver of Jury Trial:**  Unless otherwise prohibited by applicable law, we both agree to waive trial by jury in any action arising in any way from your tenancy in the Premises.

**35.      Laws Governing this Lease/Venue:**  This Lease shall be governed by the laws of the state in which the Community is located, and all legal action arising from this Lease shall be tried in the county where the Community is located.

**36.      Written Agreement:**  This Lease, which includes the Term Sheet, these Terms and Conditions, the Resident Handbook and Community Policies, the Move-In/Move-Out Inspection Form, and all Lease addenda or other agreements that may be referenced on the Term Sheet or attached hereto, contains our entire agreement. We both acknowledge that there are no oral understandings between us, and neither of us have relied on any representations, express or implied, that are not contained in this Lease.

**37.      Joint and Several Liability:**  Each resident, including all co-residents, is jointly and severally liable for each and every provision of this Lease.

**38.      General:**  You confirm that you are of legal age to enter into a binding Lease for lodging.

**39.      Additional State-Specific Requirements and Disclosures:**

**a.      Acknowledgements.**

1.      You acknowledge that you have received a copy of the Certificate of Registration for the Community pursuant to N.J.S.A. 46:8-29.

2.      You also acknowledge that you have received a copy of the Truth-In-Renting Statement and that you have been advised that a copy of the Truth-In-Renting Statement is available at the management office for inspection pursuant to N.J.S.A. 46:8-46.

3.      You also acknowledge that you have been notified that applications for and information regarding crime insurance may be obtained from New Jersey Underwriters Association Crime Insurance for Habitable Property, 744 Broad Street, Newark, New Jersey 07102, pursuant to N.J.S.A. 46:8-39.

4.      Under New Jersey law, the County Prosecutor determines whether or how to provide notice of the presence of convicted sex offenders in an area. We are not entitled to notification by the County Prosecutor under Megan's Law and are unable to obtain such information for you. You may contact the County Prosecutor for further information.

5.      Pursuant to the New Jersey Smoke Free Air Act, you agree that infiltration of second-hand smoke to the common areas of the Building and to other apartments by you, your guests or invitees is strictly prohibited.

**b.      Window Guards:  If the Premises is located above the first floor and a child ten years of age or younger is living in the Premises or is regularly present in the Premises for a substantial period of time, we will, upon receipt of your written request, provide and install child protection window guards in the Premises.  Upon your request, we will also install child protection window guards in windows in public hallways of the building that are located above the first floor. This paragraph constitutes notice to you, pursuant to N.J.S.A. 55:13A-7.14, of such requirement. If we need access to the Premises in order to install child protection window guards, you will grant us such access. You will not, nor will you allow any occupant or guest in the Premises to obstruct or interfere with the installation of any such child protection window guards, nor shall you or any occupant or guest remove or otherwise render the window guards ineffective.**

## UTILITIES ADDENDUM

This Utilities Addendum ("Addendum") is dated effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of (the "Lease") by and between Lessor and Resident for the Premises at the Community identified in the Lease.

This Addendum provides additional information regarding those utilities for which the Community receives and pays the total utility bill (or bills) for the Community, and for which you either pay us or, in some cases, pay our billing vendor on our behalf. As noted in the Utilities section of the Term Sheet and the Utilities paragraph of the Terms and Conditions, the methods used to determine your portion of the costs for these utilities may be based on a submeter reading, an allocation method, or a flat fee, as described below. The Community's total cost for these utilities may include additional fees or charges imposed by the utility company or municipality providing the service to the Community, and/or additional costs associated with the service, including costs to maintain and operate the utilities systems, but not billed by the local utility company. In these cases, such additional fees or costs may also be included in the bill you receive from our billing vendor. In some instances, these additional charges may be itemized separately on the bill you receive from our billing vendor. You should also be advised that, in most cases, the Community's bills for these utilities will include the cost to provide these utility services in the common areas of the Community, which may include swimming pools, lawns and landscaped areas. As a result, your portion of such utility bills may include a portion of the cost to provide such utility services in the common areas.

1.  If your Term Sheet indicates that a utility bill is based on a submeter reading, the reading will be used along with the Community's most recent actual bill(s) for the utility to calculate your bill by either (i) dividing the Community's cost for the utility by the usage shown on the meters for all apartments in the Community and multiplying that number by the usage shown on your meter; or (ii) dividing the Community's bill for the utility by the total usage from the master meter(s) for the Community and multiplying that number by the usage shown on your meter; or (iii) using the actual rate shown on the Community's bill for the utility multiplied by the usage shown on your meter. If the utility company charges us a fixed fee or base charge for each apartment, we will pass that charge through to you. If the Premises has a submeter in place, you will allow us and our vendors to access the Premises from time to time to read the submeter or perform repairs. You also agree that you will not tamper with, adjust, or disconnect any submeter or other measuring device that is installed in the Premises. If we are unable to read the submeter, your charges may be estimated based on prior usage or an average consumption rate.

2.  If your Term Sheet indicates that a utility is allocated based on square footage, your bill will be calculated by dividing the Community's most recent actual bill(s) for the utility by the total square footage of the occupied apartments at the Community, multiplying that amount by the square footage of the Premises, and prorating that amount based on the number of days you had possession of the Premises during the billing period.

3.  If your Term Sheet indicates that a utility is allocated based on number of occupants, your bill will be calculated by dividing the Community's most recent actual bill(s) for the utility by the total number of occupants at the Community, multiplying that amount by the number of occupants in your Premises, and prorating that amount based on the number of days you had possession of the Premises during the billing period. Rather than using the actual number of occupants for this calculation, we may elect to use a ratio occupancy that results in multiple occupants being counted on a less than a "one-for-one" basis. By way of example, ratio occupancy might allow for one person in an apartment to count as one person in the allocation formula while two persons in an apartment may count as only 1.6 persons in the allocation formula.

4.  If your Term Sheet indicates that a utility is allocated based on a combination of square footage and number of occupants, your bill will be calculated by dividing the Community's most recent actual bill(s) for the utility, applying the square footage formula described in paragraph 2 above to a portion of the cost, applying the occupancy formula described in paragraph 3 above to the remainder of the cost, and adding the two results together.

5.  If your Term Sheet indicates that a utility is allocated equally among the number of occupied apartments at the Community (regardless of square footage or number of occupants), then all occupied apartments at the Community will pay the same charge in any given month, and your bill will be calculated (i) by dividing the Community's most recent actual bill(s) for the utility by the total number of occupied apartments in the Community during the billing period and prorating that amount based on the number of days you had

possession of the Premises during the billing period; or (ii) by dividing the Community's anticipated average utility costs, adjusted from time to time when our costs change significantly, by the total number of occupied apartments in the Community, prorated based on the number of days you had possession of the Premises during the billing period. Anticipated utility costs in (ii) above may include expected increases in costs so as to keep your bill consistent where the Community's actual costs vary significantly from month to month.

6.    If your Term Sheet indicates that a utility charge is based on a flat monthly charge, then your charge for such utility will be in an amount we communicate to you at Lease signing, and will either be reflected in the Total Monthly Rent section of the Term Sheet.

7.    Our billing vendor may charge us for account set-up fees, meter maintenance fees, monthly billing fees, and other fees and charges in connection with their billing services.  If the billing vendor charges such fees, the billing vendor will include the fees on your bill and you will reimburse us for those amounts along with your payment to us for the utility charges.

8.    The utility charges for the last billing period that you occupy the Premises will not be based on the Community's most recent actual bill for the utility but will, instead, be estimated by calculating the average of at least three months' of charges for the utility (as allocated to the Premises), dividing that average by the number of days in the billing period, and then multiplying that per diem charge by the number of days you had possession of the Premises since the last billing period ended.  Where required, we will use the actual submeter reading for your last month's charge. Your charge for utilities for the final month you occupy the Premises will, if available, be communicated to you and are payable by you prior to move-out.  If the charges for the utilities are not available at the time you move out, they will be included on the Statement of Deposit Account that is created and sent to you after you move out.

9.    We reserve the right, upon written notice to you, to change the billing method for any utility.  We may be required to change the billing method or charge if, for example, the Premises contains submeters and the submeters are unable to be read, we elect to install submeters at the Community, we are required to modify the billing allocation method or formula as a result of legislative or legal requirements, or for other business reasons.  By signing the Lease, you agree that we can do this.

10.    We do not charge residents at the Community more than our actual or anticipated costs for the utilities that are allocated according to these methods, and, in some cases, if the actual bill for a utility in some months is significantly greater than the average bills for the utility, we may elect to calculate the residents' charges based on an amount that is less than the actual amount billed to the Community.  If the Community's actual utility bill is for a billing period that is longer or shorter than our billing period (which is typically a calendar month), we may prorate the bill to reflect the number of days in our billing period.

11.    You agree that it is *impractical or extremely difficult* to determine the exact amount of the utilities that you, your occupants and guests consume during the billing period and that the method used to determine your share of the Community's actual costs for the utility service, as described on the Term Sheet and in this Addendum, which may not reflect your actual usage, is fair and reasonable.

# FIRE SAFETY PLAN
## PART I - FIRE EMERGENCY INFORMATION

**BUILDING ADDRESS:**    **155 Washington Street.  Jersey City, NJ   07302**

**BUILDING OWNER REPRESENTATIVE:**

Name:                    **Equity Residential Management, L.L.C.**
Address:                 **230 West 41st Street – 12th Floor – Attn: Regional Facilities Manager**
                         **New York, NY 10036**
Telephone:               **(646) 833-3977**

**BUILDING INFORMATION:**

Year of Construction:         **1992**
Type of Construction:         **Non-combustible**
Number of Floors:             **20 Aboveground     2 Belowground   Garage 5 stories**
Sprinkler System:             **Yes**
Sprinkler System Coverage:    **Partial (see below)**

   **In compacter chute, compactor machine, garage.**

**Fire Alarm:**               **Yes**
        Location of Manual Pull stations:  **Located on all floors next to exit doors in stairwells.**

**Public Address System:**    **No**
        Location of Speakers:    **N/A**

**Means of Egress: (e.g., Unenclosed/Enclosed Interior stairs, Exterior stairs, Fire Tower Stairs, Fire Escapes, and Exits)**

| Type of Egress | Identification | Location | Leads to |
|---|---|---|---|
| Enclosed Interior Scissor Stairs | **N-East Tower** | Public Corridors | Roof  to Street |
| Enclosed Interior Scissor Stairs | **S-East Tower** | Public Corridors | Roof  to Lobby |
| Enclosed Interior Scissor Stairs | **N-West Tower** | Public Corridors | Exit to Street |
| Enclosed Interior Scissor Stairs | **N-West Tower** | Public Corridors | Exit to Street |
| Exit Garage Door | **Z** | | Exit to Street |
| Front Door | **F** | Lobby | Exit to Street |

**Other Information:**

- Two Building Towers, East Tower and North Tower
- Smoke detectors are installed in all dwelling units that do NOT notify the Fire Department.
- Emergency lighting installed in building corridors and exit stairs.

Updated 05/01/2016                    1

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

**FIRE SAFETY PLAN**
## PART II- FIRE EMERGENCY INFORMATION

**BUILDING ADDRESS: 155 Washington Street.  Jersey City, NJ   07302**

**THIS FIRE SAFETY PLAN IS INTENDED TO HELP YOU AND THE MEMBERS OF YOUR HOUSEHOLD PROTECT YOURSELVES IN THE EVENT OF THE FIRE. THIS FIRE SAFETY CONTAINS:**

- Basic fire prevention and fire preparedness measures that will reduce the Risk of fire and maximize your safety in the event of a fire.
- Basic information about your building, including the type of construction, The different ways of exiting the building, and the types of fire safety systems It may have.
- Emergency fire safety and evacuation instructions in the event of fire in your building.

**PLEASE TAKE THE TIME TO READ THIS FIRE SAFETY PLAN AND TO DISCUSS IT WITH THE MEMEBRS OF YOUR HOUSEHOLD.  FIRE PREVENTION, PREPAREDNESS, AND AWARENESS CAN SAVE YOUR LIFE!**

**IN THE EVENT OF A FIRE,**
# CALL 911
**OR**
**TRANSMIT AN ALARM FROM**
**THE NEAREST FIRE ALARM BOX**

**BASIC FIRE PREVENTION AND FIRE PREPAREDNESS MEASURES**

**These are fire safety tips that everybody should follow:**

1. Every apartment should be equipped with at least one smoke and carbon monoxide detector.  Check them periodically to make sure they work.  Most smoke detectors can be tested by pressing the test button.  Replace the batteries in the spring and fall when you move your clocks forward or back an hour, and whenever a smoke detector chirps to signal that its battery is low.  The smoke detector should be replaced on a regular basis in accordance with the manufacturer's recommendation, but at least once every ten years.

2. Carelessly handled or discarded cigarettes are the leading cause of fire deaths.  Never smoke in bed or when you are drowsy, and be especially careful when smoking on a sofa.  Be sure that you completely extinguish every cigarette in an ashtray that is deep and won't tip over. Never leave a lit smoldering cigarette on furniture.

Updated 05/01/2016                                          2

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

3.  Matches and lighters can be deadly in the hands of children.  Store them out of reach of children and teach them about the danger of fire.

4.  Do not leave cooking unattended.  Keep stove tops clean and free of items that can catch on fire.  Before you go to bed, check your kitchen to ensure that your oven is off and any coffeepot or teapot is unplugged.

5.  Never overload electrical outlets.  Replace any electrical cord that is cracked or frayed.  Never run extension cords under rugs.  Use only power strips with circuit-breakers.

6.  Keep all doorways and windows leading to fire escapes free of obstructions, and report to the owner any obstructions or accumulations of rubbish in the hallways, stairwells, fire escapes or other means of egress.

7.  Install window gates only if it is absolutely necessary for security reasons.  Install only approved window gates.   Do not install window gates with key locks.  A delay in finding or using the key could cost lives.  Maintain the window gate's opening device so it operates smoothly.  Familiarize yourself and the members of your household with the operation of the window gate.

8.  Familiarize yourself and members of your household with the locations of all stairwells, fire escapes and other means of egress.

9.  With the members of your household, prepare escape route to use in the event of a fire in the building.  Choose a meeting place a safe distance from your building where you should meet in case you get separated during a fire.

10. Exercise care in the use and placement of fresh cut decorative greens, such as Christmas trees and holiday wreaths. If possible, keep them planted or in water. Do not place them in public hallways or where they might block egress from your apartment if they catch on fire.  Keep them away from any flame, including fireplaces.  Do not keep for extended period of time; as they dry, decorative greens become easily combustible.

**FIRE SAFETY PLAN**
# PART III- FIRE EMERGENCY INFORMATION
## BUILDING INFORMATION

<u>Building Construction:</u>

In a fire emergency, the decision to leave or to stay in your apartment will depend in part on the type building you are in.

Residential buildings built before 1968 are generally classified either as "fireproof" or "non-fireproof." Residential buildings built in or after 1968 are generally classified either as "combustible" or non-combustible." The type of building generally depends on the size and height of the building.

A "non-combustible" or "fireproof" building is a building whose structural components (the supporting elements of the building, such as steel or reinforced concrete beams and floors) are constructed of materials that do not burn or are resistant to fire and therefore will not contribute to the spread of the fire. In such buildings, fires are more likely to be contained in the apartment or space in which they start and less likely to spread inside the building walls to other apartments and floors. THIS DOES NOT MEAN THAT THE BUILDING IS IMMUNE TO FIRE. While the structural components of the building may not catch fire, all of the contents of the building (including furniture, carpeting, wood floors, decorations and personal belongings) may catch on fire and generate flame, heat and large amounts of smoke, which travel throughout the building, especially if apartment or stairwell doors are left open.

A "combustible" or "non-fireproof" building has structural components (such as wood) that will burn if exposed to fire and can contribute to the spread of the fire. In such buildings, the fire can spread inside the building walls to other apartments and floors, in addition to the flame, heat and smoke that can be generated by the burning of the contents of the building.

**Be sure to check Part I (Building Information Section) of this fire safety plan to see what type of building you are in.**

<u>Means of Egress:</u>

All residential buildings have at least one means of egress (way of exiting the building), and most have at least two. There are several different types of egress:

**Interior Stairs:** All buildings have stairs leading to the street level. These stairs may be enclosed or unenclosed. Unenclosed stairwells (stairs that are not separated from hallways by walls and doors) do not prevent the spread of flame, heat and smoke. Since flame, heat and smoke generally rise, unenclosed stairwells may not ensure safe egress in the event of a fire on a lower floor. Enclosed stairs are more likely to permit safe egress

Updated 05/01/2016                    4

from the building, if the doors are kept closed.  It is important to get familiar with the means of egress available in your building.

**Exterior Stairs:**  Some buildings provide access to the apartments by means of stairs and corridors that are outdoors.  The fact that they are outdoors and do not trap heat and smoke enhances their safety in the event of a fire, provided that they are not obstructed.

**Fire Tower Stairs:**  These are generally enclosed stairwells in a "tower" separated from the building by air shafts open to the outside.  The open air shafts allow heat and smoke to escape from the building.

**Fire Escapes:**  Many older buildings are equipped with a fire escape on the outside of the building, which is accessed through a window or balcony.  Fire escapes are considered a "secondary" or alternative means of egress, and are to be used if the primary means of egress (stairwells) cannot be safely used to exit the building because they are obstructed by flame, heat or smoke.

**Exits:**  Most buildings have more than one exit.  In addition to the main entrance to the building, there may be separate side exits, rear exits, basement exits, roof exits and exits to the street from stairwells.  Some of these exits may have alarms.  Not all of these exits may lead to the street.  Roof exits may or may not allow access to adjoining buildings.

**Be sure to review Part I (Building Information Section) of this fire safety plan and familiarize yourself with different means of egress from your building.**

**Fire Sprinkler Systems**

A fire sprinkler system is a system of pipes and sprinkler heads that when triggered by the heat of a fire automatically discharges water that extinguishes the fire.  The sprinkler system will continue to discharge water until it is turned off.  When a sprinkler system activates, an alarm is sounded.

Sprinkler systems are very effective at preventing fire from spreading beyond the room in which it starts,  However, the fire may still generate smoke, which an travel throughout the building.

Residential buildings are generally not required to have sprinkler systems.  Some residential buildings are equipped with sprinkler systems, but only in compactor chutes and rooms or boiler rooms.  All apartment buildings constructed or substantially renovated after March 1999 will be required by law to be equipped with fire sprinkler systems throughout the building.

**Be sure to review Part I (Building Information Section) of this fire safety plan to learn whether your building is equipped with fire sprinkler systems.**

Updated 05/01/2016                              5

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

### Interior Fire Alarm Systems

Although generally not required, some residential buildings are equipped with interior fire alarm systems that are designed to warn building occupants of a fire in the building. Interior fire alarm systems generally consist of a panel located in a lobby or basement, with manual pull stations located near the main entrance and by each stairwell door. Interior fire alarm systems are usually manually-activated (must be pulled by hand) and do not automatically transmit a signal to the Fire Department, so a telephone call must still be made to 911 or the Fire Department Dispatcher. Do not assume that the Fire Department has been notified because you hear a fire alarm or smoke detector sounding in the building.

**Be sure to review Part I (Building Information Section) of this fire safety Plan to learn whether your building is equipped with an interior fire alarm system and whether the alarm is transmitted to the fire department, and familiarize yourself with the location of the manual pull stations and how to activate them in the event of a fire.**

### Public Address Systems:

Although generally not required, some residential buildings are equipped with public address systems that enable voice communications from a central location, usually in the building lobby. Public address systems are different from building intercoms, and usually consist of loudspeakers in building hallways and/or stairwells.

**Be sure to review Part I (Building Information Section) of this fire safety plan to learn whether your building is equipped with a public address systems.**

Updated 05/01/2016                          6

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

<p style="color:red; text-align:center; font-weight:bold">FIRE SAFETY PLAN</p>

# PART VI - FIRE EMERGENCY INFORMATION
## EMERGENCY FIRE SAFETY EVACUATION INSTRUCTIONS

---

IN THE EVENT OF A FIRE, FOLLOW THE DIRECTIONS OF FIRE DEPARTMENT PERSONNEL.  HOWEVER, THERE MAY BE EMERGENCY SITUATIONS IN WHICH YOU MAY BE REQUIRED TO DECIDE ON A COURSE OF ACTION TO PROTECT YOURSELF AND THE OTHER MEMBERS OF YOUR HOUSEHOLD.

THIS FIRE SAFETY PLAN IS INTENDED TO ASSIST YOU IN SELECTING THE SAFEST COURSE OF ACTION IN SUCH AN EMERGENCY.  PLEASE NOTE THAT NO FIRE SAFETY PLAN CAN ACCOUNT FOR ALL OF THE POSSIBLE FACTORS AND CHANGING CONDITIONS; YOU WILL HAVE TO DECIDE FOR YOURSELF WHAT IS THE SAFEST COURSE OF ACTION UNDER THE CIRCUMSTANCES.

---

**General Emergency Fire Safety Instructions**

1. Stay calm. Do not panic. Notify the Fire Department as soon as possible. Firefighters will be on the scene within minutes of receiving an alarm.

2. Because flame, heat and smoke rise, generally a fire on a floor below your apartment presents a greater threat to your safety than a fire on a floor above your apartment.

3. Do not overestimate your ability to put out a fire.  Most fires cannot be easily or safely extinguished.  Do not attempt to put the fire out once it begins to quickly spread.  If you attempt to put a fire out, make sure you have a clear path of retreat from the room.

4. If you decide to exit the building during a fire, close all doors as you exit to confine the fire.  Never use the elevator. It could stop between floors or take you to where the fire is.

5. Heat, smoke and gases emitted by burning materials can quickly choke you. If you are caught in a heavy smoke condition, get down on the floor and crawl. Take short breaths, breathing through your nose.

6. If your clothes catch fire, don't run.  Stop where you are, drop to the ground, cover your face with your hands to protect your face and lungs and roll over to smother the flames

Updated 05/01/2016                          7

**7.**
## Evacuation Instructions of the Fire is in your Apartment
(All types of building Construction)

1. Close the door to the room where the fire is, and leave the apartment.

2. Make sure **<u>EVERYONE</u>** leaves the apartment with you.

3. Take your keys.

4. Close, but do not lock, the apartment door.

5. Alert people on your floor by knocking on their doors on your way to the exit.

6. Use the nearest stairwell to exit the building.

7. **<u>DO NOT USE THE ELEVATOR.</u>**

8. Call 911 once you reach a safe location.  Do not assume the fire has been reported unless firefighters are on the scene.

9. Meet the members of your household at a predetermined location outside the building.  Notify responding firefighters if anyone is unaccounted for.

## Evacuation Instructions of the Fire is not in your Apartment

### "NON-COMBUSTIBLE" OR "FIREPROOF" BUILDINGS":

1. Stay inside your apartment and listen for instructions from firefighters unless conditions become dangerous.

2. If you must exit your apartment, first feel the apartment door and doorknob for heat.  If they are not hot, open the door slightly and check hallway for smoke, heat or fire.

3. If you can safely exit your apartment, follow the instructions above for a fire in your apartment.

4. If you cannot safely exit your apartment or building, call 911 and tell them your address, floor, apartment number and the number of people in your apartment.

5. Seal the doors to your apartment with wet towels or sheets, and seal air ducts or other openings where smoke may enter.

6. Open windows a few inches at top and bottom unless flames and smoke are coming from below.  Do not break windows.

Updated 05/01/2016                                8

7.  If conditions worsen before help arrives, get down on the floor and take short breaths through your nose.  If possible, retreat to a balcony or terrace away from the source of the smoke, heat or fire.

## "COMBUSTIBLE" OR "NON-FIREPROOF" BUILDING

1.  Feel your apartment door and doorknob for heat.  If they are not hot, open the door slightly and check the hallway for smoke, heat or fire.

2.  Exit your apartment and building if you can safely do so, following the instructions above for a fire in your apartment.

3.  If the hallway or stairwell is not safe because of smoke, heat or fire and you have access to a fire escape; use it to exit the building.  Proceed cautiously on the fire escape and always carry or hold onto small children.

4.  If you cannot use the stairs or fire escape, call 911 and tell them your address, floor, apartment number and the number of people in your apartment.

    A.  Seal the doors to your apartment with wet towels or sheets, and seal air ducts or other openings where smoke may enter.

    B.  Open windows a few inches at top and bottom unless flames and smoke are coming from below.  Do not break any windows.

    C.  If conditions in the apartment appear life-threatening, open a window and wave a towel or sheet to attract the attention of firefighters.

    D.  If smoke conditions worsen before help arrives, get down on the floor and take short breaths through your nose.  If possible, retreat to a balcony or terrace away from the source of the smoke, heat or fire.

Updated 05/01/2016                    9

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

## **Temporary Partition Addendum**
(New York City and New Jersey Only)

This Temporary Partition Addendum ("Addendum") is dated effective as of the date on, and is made a part of, the Lease or renewal lease by and between Lessor and Resident for the Premises at the Community identified in the Lease (the "Premises").

You acknowledge that you are not permitted to install any permanent, pressurized or temporary walls in the Premises.  You may, however, install temporary partitions, as long as they are compliant with local regulations and comply with certain requirements.  Specifically:

- The partition must not be pressurized;
- The partition must not be affixed to the wall;
- The partition must not block exits or interfere with the sprinkler or ventilation systems;
- There must not be a door or a lock;
- There must be at least 12 inches of space between the top of partition and the ceiling;
- The new space created by the partition must be at least 80 square feet and contain at least one window; and
- There must remain a living room of at least 150 square feet in the Premises.

If you install a wall or partition that does not comply with the above, you will be in violation of your Lease.  Additionally, you will be held responsible for all costs to remove the non-compliant wall or partition, as well as any fines or penalties we receive as a result of your noncompliance. Lastly, you are solely responsible for the upkeep and maintenance of the partition.

Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged.  In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.  Any term that is capitalized but not defined in this Addendum that is capitalized and defined in the Lease shall have the same meaning for purposes of this Addendum as it has for the purposes of the Lease.

*©Equity Residential 2022.  All Rights Reserved.*

# RENT CONTROL ADDENDUM
### (Jersey City, Hoboken and West New York Properties Only)

       This Rent Control Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

       Pursuant to N.J.S.A. 2A:42-84.3, we hereby notify you that the Premises and the Community are exempt from the provisions of any rent control ordinances instituted by Jersey City, Hoboken or West New York, as the case may be, and said Premises and Community will be exempt from any future rent control, rent stabilization or rent leveling ordinance instituted by these municipalities for a period of (i) the amortization of any initial mortgage loan obtained for the Community; or (ii) thirty years following the completion of construction at the Community, whichever is less.

## CONSTRUCTION AND REHAB ADDENDUM

This Construction and Rehab Addendum ("Addendum") is dated effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of (the "Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

We are anticipating the possibility of undertaking major construction at the Community during the term of your Lease. You acknowledge that you may, from time to time, be inconvenienced by the noise and activity that generally accompanies such construction activities. This Addendum is intended to put you on notice of such potential construction activity; however, nothing in this Addendum is intended to be a waiver of either party's rights or obligations under the Lease.

*Legal Form –Construction and Rehab Addendum (National) v2*
*Revised 04/26/12*                                                                                  *© Equity Residential 2012.  All Rights Reserved.*

## SMOKE-FREE LEASE ADDENDUM

This Smoke Free Lease Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

You acknowledge that the building in which the Premises is located, and the Community as a whole, are smoke-free living environments, which means both smoking and vaping either tobacco or marijuana is strictly prohibited. You and all of your occupants and guests are prohibited from smoking anywhere in the interior or exterior of the Premises (including balconies and patios), within twenty-five feet of any building entrance, outdoor air intake and/or operable window, or anywhere else in the Community. This policy is intended to benefit all residents of the Community. You are responsible for any violation of this non-smoking policy by you, or any of your occupants or guests.

You understand that we will take reasonable steps to enforce the smoke-free terms of the Lease and to make the Community a smoke-free environment.  However, because our ability to police, monitor or enforce the terms of this Addendum is dependent on the full cooperation of all residents, occupants and guests throughout the Community, we cannot guarantee that the Premises or the Community will be totally free from secondhand smoke.

If you or any of your occupants and guests violate the terms of this Addendum, such violation will be deemed a material default under the terms of the Lease, and we will be entitled to exercise all rights and remedies at law or in equity, consistent with the provisions of the Default Remedies paragraph in the Lease.

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

## <u>PARKING PERMIT ZONES ADDENDUM</u>

This Parking Permit Zones Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

Generally, as a matter of law, the City will not issue an on-street residential parking permit to a resident of this building because the building was required to provide off-street parking for its residents when it was constructed. The City requires that a landlord or seller make you aware of this fact before you agree to rent or buy a residence in the building. There are limited exceptions to the prohibition on the issuance of on-street permits. To determine whether or not you qualify for one of the exceptions, you need to read Section 332-58 of the Jersey City Municipal Code, which is available at https://www.municode.com/library/nj/jersey_city/codes/code_of_ordinances or contact the Division of Parking Enforcement at 201-653-6969.

Because an on-street residential parking permit is not available to residents of this building, I understand that if I rent or purchase a residence here, I will be required to pay for parking and I will NOT be eligible for an on-street residential parking permit unless I qualify for one of the exceptions.

BAB  AH

___/___/___/___/___/___/___/___/___

The landlord or seller informed me that off-street parking for a resident of this building is available at the rate of $ 0.00  per month.

BAB  AH

___/___/___/___/___/___/___/___/___

I was shown this form and read it, prior to signing my lease or contract to purchase.

BAB  AH

___/___/___/___/___/___/___/___/___

I understand that if I am eligible for an exception, I am limited to one residential permit per unit. I am ineligible for any other residential permits.

BAB  AH

___/___/___/___/___/___/___/___/___

DocuSigned by: ▮▮▮▮  8/25/2022 Date     DocuSigned by: ▮▮▮▮  8/25/2022 Date     _____ Date

▮▮▮▮ Date     _____ Date     _____ Date

▮▮▮▮ Date     _____ Date     _____ Date

**Lessor:    Equity Residential Management, L.L.C.,**
            **as agent for the Owner**

By: _____     08/23/2022
It's: Authorized Representative: _____          Date

*Legal Form – Parking Permit Zones Addendum v1*
*(New Jersey Only)*
*Revised 08/20*                          ©*Equity Residential 2020. All Rights Reserved*

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18



# TRUTH IN RENTING

A guide to the rights and responsibilities of
residential tenants and landlords in New Jersey



**Department of Community Affairs • Division of Codes and Standards**
101 South Broad Street, • PO Box 805 • Trenton, NJ 08625-0805
www.nj.gov/dca/divisions/codes

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

# Table of Contents

| | |
|---|---|
| **Overview of Truth in Renting Act** | **1** |
| **The Lease** | **2** |
| Mobile Home Leases – Private Residential Leasehold Communities Law | 3 |
| Public Housing Leases | 4 |
| Renewal of a Lease Agreement | 4 |
| Cable Installation | 5 |
| Pets | 5 |
| Termination of a Lease Agreement | 7 |
| Modification of the Rental Premises for People with Disabilities | 10 |
| Right of Entry | 11 |
| Filing a complaint for unlawful entry and detainer | 11 |
| Access to the property | 12 |
| **Security Deposits** | **12** |
| **Discrimination** | **15** |
| **Disposition of Personal Property** | **16** |
| Nonpayment and Distraint | 18 |
| **Consumer Fraud Protection** | **18** |
| **Credit Checks and Background Checks** | **18** |
| **Rent** | **18** |
| Rent Control/Rent Increases | 19 |
| Public Financed and Subsidized Housing | 20 |
| Property Tax Rebate for Tenants | 21 |
| New Jersey Homestead Property Tax Credit | 21 |
| **Identity of Landlord** | **22** |
| **Habitability** | **23** |
| Reporting Housing Code Violations | 23 |
| Child-Protection Window Guards/Screens | 24 |
| Carbon Monoxide and Smoke Detectors | 24 |
| Locks | 25 |
| State Heat and Utility Requirements | 25 |
| Rent Receivership for Substandard Housing and Diversion of Utilities | 26 |
| Multifamily Housing Preservation and Receivership | 26 |
| Public Housing Maintenance | 27 |
| Federal Lead-Based Paint Disclosure | 27 |
| State Lead-Based Paint Disclosure | 28 |
| Post of Drinking Water Test Results | 28 |
| Remedies if the landlord fails to maintain the property in a habitable condition | 29 |
| Flood Plain Notification Requirement | 31 |
| Crime Insurance Information | 32 |
| **Eviction** | **32** |
| Applicability | 33 |
| Exceptions | 33 |
| Filing a Complaint for Eviction | 33 |
| Judgment for Possession | 33 |
| "Self-help" Evictions | 34 |

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

|  |  |
|---|---|
| Causes for Eviction | **34** |
| Evictions for Owner-Occupied Two-and Three-Family Dwellings | **40** |
| Rooming and Boarding House Evictions | **40** |
| Public Housing Evictions | **41** |
| Penalties for Eviction Law Violations | **41** |
| Reprisal – Civil Rights of Tenants | **41** |
| Procedures for Recovery of Premises | **42** |
| **Foreclosure** | **42** |
| Notice Requirements to Tenants Prior to the Transfer of Title Due to a Foreclosure Action | **43** |
| Notice Requirements to Tenants After the Transfer of Title Due to a Foreclosure Action | **43** |
| **Senior Citizens and Disabled Tenants in Condominium or Cooperative Conversion** | **44** |
| Senior Citizens and Disabled Protected Tenancy | **44** |
| Tenant Protection Act of 1992 | **44** |
| Disclosure Statement to Senior Citizen Housing Residents | **44** |
| **New Jersey Judiciary Ombudsman Offices** | **46** |
| **Anti-Discrimination Offices** | **46** |
| **New Jersey's Legal Services Programs** | **47** |
| **Additional Agencies and Organizations** | **48** |

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

## <u>Greetings from the New Jersey Department of Community Affairs</u>

When an individual renter and a private individual, corporation, or government agency, the landlord, enter into an agreement to pay money in exchange for housing, a landlord tenant relationship is created. This agreement, the lease, can either be oral or memorialized in writing. Residential leases include private homes, apartment and condominium units, or mobile homes. The lease agreement entered into between the landlord and tenant sets forth the rights and responsibilities of both parties in accordance with Federal and New Jersey statutes, regulations, restrictions, and case law.

In accordance with the Truth in Renting Act, the New Jersey Department of Community Affairs has posted this reference guide to highlight important information regarding the rights and responsibilities of residential landlords and tenants in New Jersey. This publication highlights information about lease agreements, payment, and collection of rent, habitability, evictions, senior citizens and protected tenants, foreclosures, security deposits, and other topics pertaining to residential tenancies in New Jersey.

If you believe you need legal advice, contact an attorney. If you cannot afford an attorney contact legal services or public organizations that can provide legal services for both landlords and tenants.

Finally, congratulations on renting your residential unit in New Jersey. The Department hopes that you find this resource guide helpful.

## Overview of Truth in Renting Act

The Department of Community Affairs has provided this statement to highlight the primary legal rights and responsibilities of tenants and landlords of residential rental dwelling units in New Jersey. This statement is available in English and Spanish languages and it is posted on the Department of Community Affairs' website, hereinafter the Department. The Department website is:

https://www.nj.gov/dca/divisions/codes/offices/landlord_tenant_information.html

This shall serve as an informational document only and is not intended as legal advice, and it does not substitute for consulting with a lawyer about specific facts and circumstances. Further, nothing therein shall be construed as binding on or affecting judicial determinations issued by a court of competent jurisdiction.

Every landlord subject to the Truth in Renting Act, (**N.J.S.A. 46:8-43 to 51**), hereinafter the Act, is required to distribute one copy of the Truth in Renting Statement to each of their tenants within 30 days after it has been posted by the Department on its website and shall thereafter provide a copy of the most current statement to each new tenant at or prior to the time the tenant executes a lease for the rental unit.

The Act calls for distribution of the statement by the landlord to all tenants with a rental term of at least one month living in residences with more than two dwelling units, or more than three if the landlord occupies one of the units. The Act does not require distribution to residents of hotels, motels, or other guest houses serving transient or seasonal tenants (**N.J.S.A. 46:8-44**).

A landlord who violates any provisions of the Act, contrary to the legal rights of tenants shall be liable for a penalty of not more than $100.00 per offense (**N.J.S.A. 46:8-47**). Such penalty shall be collected and enforced by summary proceedings pursuant to the Penalty Enforcement Law (**N.J.S.A. 2A-58-1 et seq.**).  The Superior Court, Law Division, Special Civil Part in the county in which the rental premises are located shall have jurisdiction over such proceedings (**N.J.S.A. 46:8-47**).

The Department does not have jurisdiction over the administration of the courts, nor can the Department render legal advice. This publication is based on existing New Jersey statutes, regulations, and court cases that concern landlord-tenant relations; however, this publication is not a complete summary of all laws, regulations, and court cases that concern landlord-tenant relations in New Jersey. Any person who plans to initiate a legal action resulting from a landlord-tenant dispute may wish to consult the appropriate enforcing agency, a county legal services agency, private counsel, or an owner's, tenant's, or mobile home organization. A list of additional agencies and organizations that may be available to provide assistance is located in the appendix section of this publication.  Please be advised that this guide may be amended by the Department as required, and will be posted on the Department's website accordingly.

If you would like more detailed information on New Jersey landlord-tenant law, you may review the various state statutes identified in this guide. You may search the statutes by looking at the table of contents or you may enter a keyword in the search bar, i.e. Security Deposit Law.

1

## The Lease

In New Jersey a landlord-tenant relationship is created when a landlord allows another person to use a dwelling unit for a specified period of time in exchange for rent. A dwelling unit is defined as an apartment, a house, a room, or a mobile home or mobile home space. The tenant should read the rental agreement before signing. It is advisable for the tenant to obtain a copy of the lease for their records at the time that the lease is signed. If a new landlord takes over the building, both the new landlord and the tenant must honor the pre-existing rental agreement until it expires.

Requirements of a residential lease in New Jersey:

1. Parties to a lease must be at least 18 years old and mentally competent. (**N.J.S.A. 9:17-B-1; Morgan v. Sandford Brown Institute, 225 N.J. 289, 310 (2016)**)
2. Landlord and tenant are required to include their names in the lease agreement.
3. Lease can be either written or oral. If written, lease must be in plain language and written so the average person can understand it (**N.J.S.A. 56:12-2; Morgan v. Sandford Brown Institute, 225 N.J. 289, 310 (2016)**).
4. Any fees that the landlord intends to charge should be clearly stated, i.e. late fees and attorney fees.
5. In order to avoid confusion, it is recommended that the lease contain the following provisions:
    a. Conditions of occupancy;
    b. Description of the rental space;
    c. Renewal provisions;
    d. Late rent penalty provisions;
    e. Landlord and tenant responsibilities for the amount of rent, pets, utility expenses and owner responsibilities associated with the rental of the premises;
    f. Restrictions on subletting or assigning of the lease agreement;
    g. Requirement to provide copies of keys to the landlord by the tenant;
    h. Tenant's requirement to obtain renter's insurance; and
    i. Other provisions which clarify the terms of the lease agreement.

The landlord should provide specific information to tenants:
1. Lead paint EPA approved information pamphlet (**N.J.A.C. 5:10-6.6**);
2. Truth in Renting statement, (which does not apply to buildings of two (2) or fewer units and owner-occupied premises of three (3) or fewer units (**N.J.S.A. 46:8-44 to -46**));
3. Flood zone notification (**N.J.S.A. 46:8-50**);
4. Child protection window guards (**N.J.A.C. 5:10-27.1 (c), (d)**);
5. Bed bugs (**N.J.A.C. 5:10-10.2**);
6. Late fees (**N.J.S.A. 2A-42-6.1 to -6.3**);
7. Dishonored payment fees (**N.J.S.A. 2A:32A-1**); and
8. Domestic violence termination policy (**N.J.S.A. 46:8-9.6 to -9.7**).

2

Additionally, if clearly stated in the lease agreement, the landlord may require the tenant to pay the landlord the costs of the landlord's attorney fees and court costs in the event of an eviction action for nonpayment of rent or for other legal actions; a landlord also may assess a "late charge" when the rent is not paid by a certain date. There is a five (5) "business day" grace period for senior citizens before a late fee may be assessed. A business day does not include Saturday, Sunday, State or Federal holidays.

The written lease must expressly permit a landlord to recover reasonable attorney's fees and include late fees as part of the rent in order for a judge to consider those expenses as additional rent in a summary dispossess proceeding (**Community Realty v. Harris, 155 N.J. 212 (1998); Housing Authority & Urban Redevelopment Agency of City of Atlantic City v. Taylor, 334 N.J. Super. 572 (App. Div. 2000); Sundersan v. Royal, 386 N.J. Super. 246 (App. Div. 2005)**). If a lease contains provisions that violate state statutes, local ordinances, or governmental regulations, or a tenant believes a provision is unreasonable, the tenant has the right to  file an action in Superior Court, Law Division, Special Civil Part in the county where the building is located requesting the court to remove the provision from the lease (**N.J.S.A. 46:8-48**).

## Mobile Home Leases – Private Residential Leasehold Communities Law N.J.S.A. 46:8C-2 to -21.

Mobile homeowners or residents of private residential leasehold communities are also tenants if they rent space in either of these types of communities. Therefore, they are afforded certain protections under New Jersey statutes and regulations, i.e, the Anti-Eviction Act, Homestead Property, Tax Credit Act and special protections under the Mobile Home Act. As set forth in New Jersey case law (**Fromet Properties, Inc. v. Burl, 249 N.J. Super. 601 (App. Div. 1996); Hale v. Farrakhan, 3990 N.J. Super. 335 (App. Div. 2007); Pohlman v. Metropolitan Trailer Park, Inc., 126 N.J. Super. 114 (Ch. Div. 1973)**), it has been established that other landlord tenant laws are applicable including, but not limited to, security deposits, receivership, truth in renting, landlord tenant law, discrimination based on familial status, self-help eviction, distraint, and reprisal (*Tenant's Rights in New Jersey* written and published by Legal Services of New Jersey, 2014).

In accordance with **N.J.S.A. 46:8C-2 to -21**, a mobile home park or private residential leasehold landlord or operator is required to:

1. Offer a written lease for at least 12 months to each household within the park or community. The lease must be offered within 30 days from the time the new owner lawfully moves in;

2. Provide the occupant with a copy of all park/community rules and regulations prior to signing the lease;

3. Post a copy of park/community rules and regulations in a recreation hall or some other public location within the community where they can be easily located;

4. Fully disclose all fees, charges, and assessments, which must be based on actual costs incurred and all rules and regulations before the occupant moves in;

3

5. Provide a written notice of any fees, charges, and assessments within 30 days before a lease change become effective; and

6. Provide a copy of Truth in Renting statement.

A mobile park owner may not:

1. Force a tenant to buy equipment from a park owner or a particular outlet (**N.J.S.A. 46:8C-2**);

2. Force a tenant to either buy a mobile home or necessary equipment from a particular seller (**N.J.S.A. 46:8C-2**);

3. Force a tenant to move their mobile home within the park unless the move is reasonably necessary. If reasonably necessary, the park owner must serve the tenant with a 30-day written notice. In an emergency, the operator may move the mobile home, however, they are responsible for all damages to the home resulting from the move (**N.J.S.A. 46:8C-2**);

4. Charge a commission or fee for the sale of a mobile home unless they acted as the sales agent, nor prohibit the posting of a "for sale" on the home (**N.J.S.A. 46:8C-3**);

5. Force a tenant to make a donation or gift directly or indirectly from someone who wants to rent a space in the park (**N.J.S.A. 46:8C-2**); and

6. No landlord or operator may deny any resident the right to sell their home within the park community or require the unit to be moved solely because it is being sold (**N.J.S.A. 46:8C-2**).

A mobile park owner may reserve the right to approve the purchaser of a mobile home but approval cannot be unreasonably withheld. Any entrance fee or other payment required by the landlord to get into a park/community accepted by a landlord or operator makes the landlord or operator a disorderly person and may result in the person making the payment able to recover double the amount paid plus losses in Superior Court where the property is located.

## Public Housing Leases

Public housing authorities must follow lease regulations developed by the U.S. Department of Housing and Urban Development (HUD) as well as existing state laws. The HUD regulations reference both provisions that must be included in housing authority leases and provisions that must not be included: questions regarding public housing can be directed to the U.S. Department of Housing and Urban Development, New Jersey State Office, 1 Newark Center, Attn: Public Housing, Newark, New Jersey 07102-5260, (973) 622-7900.

## Renewal of a Lease Agreement

Many written leases contain a clause detailing what needs to be done to renew or extend the current lease term. The lease may, for instance, have a clause that states that unless either the landlord or tenant terminates the lease, it will renew automatically. Most yearly leases require a 60 to 90-day notice to the landlord by the tenant requesting terminatation of the existing lease. If

4

a tenant fails to give proper written notice or if notice of intent to terminate is not given in time, the lease will renew automatically.

A yearly lease that is not renewed automatically becomes a month to month lease when the current lease term ends. A month to month lease will renew automatically for another month unless the landlord or tenant acts to terminate the lease. This rule applies to both oral and written leases (**N.J.S.A. 46:8-10**).

When the lease term ends, the landlord can offer the tenant a new lease with amended terms and conditions. In order to do this, the landlord must provide the tenant with written notice terminating the existing lease and offering a new lease. The landlord's notice must clearly detail the changes made to the existing lease.

No landlord of residential rental properties except those in owner occupied two or three family dwellings, motels or hotels, transient, or seasonal units may fail to renew any lease, regardless of whether it is written or oral unless they have good cause not to renew the lease. The good causes for eviction are detailed under the section entitled, "Eviction," (**N.J.S.A. 2A:18:61.3**). Tenants of two- or three- family owner occupied buildings should refer to the section entitled, "Evictions for Owner-Occupied Two and Three Family Dwellings."

## Cable Installation

A landlord may not forbid or prevent installation of cable service or unreasonably restrict the tenant from installing an individual satellite dish or require advance payment for permission to install cable or satellite.

Installation must be in compliance with the Federal Communications (FCC) Regulations (**47 C.F.R. Section 1.4000**). If a tenant or landlord wishes to file a complaint regarding the lease or local government restrictions regarding installation of cable or a satellite dish, they may contact the Office of the Secretary, Federal Communications Commission, 445 12th Street S.W. – Washington D.C. 20554; Attn: Media Bureau.

A landlord may restrict installation of cable or a satellite dish communication system in common areas such as the stairwells, roofs, or exterior walls of a multiple dwelling. Landlord may also restrict installation to prevent damage to the property, if there is a safety risk, or the property is a historic property or in a historic district.

A landlord may disallow the installation of an individually owned satellite dish if there is a common antenna available for use by the residents and the costs are the same for the tenant (**N.J.S.A. 48:5A-49/47 C.F.R. 1.4000**).

## Pets

Generally, landlords have a right to include a "no pets," provision in the lease agreement. There is no state law that prohibits landlords from requiring lease agreements that exclude pets in rental property, except in certain senior citizen housing projects and for handicapped, blind, or deaf tenants. **George Young v. Victor Savinon, et al., 201 N.J. Super. 1**, established the precedent that allows tenants in certain circumstances to keep their existing pets at their rental

5

units. In this case, the court found that tenants that were allowed to have pets and actually had pets living in their rental units at the beginning of their tenancy and continued to have those pets throughout their tenancies could not have their leases changed (upon renewal) by the new (or existing) landlord to prohibit the tenants from keeping the pets that they currently had. However, the landlord could prohibit the housing of any additional pets that those tenants may acquire in the future. A landlord may also prohibit existing and future tenants who do not own or maintain pets from caring for or maintaining pets on the premises.

The Pets in Housing Projects law, **N.J.S.A. 2A:42-103, et seq.**, defines "senior citizen housing project," as any building or structure having three or more rental dwelling units. It does not apply to owner-occupied premises that do not have more than three rental dwelling units, or any health care facility. Any senior citizen residing in a senior citizen housing project and providing written notice to the landlord is allowed to own or care for a pet.

A landlord may refuse to renew a tenant's lease because of a pet, under the following circumstances:

1. If the pet's existence or behavior violates federal, state, or local building, health or use codes;
2. If the tenant fails to properly care for the pet;
3. If the tenant fails to control the pet, when taking the pet to or from the building, or if the tenant fails to take prompt action to remove any pet waste when requested by the landlord; and
4. If the tenant fails to keep the pet's waste functions confined to areas that do not interfere with the common areas or entrance and exist of anyone to or from the senior citizen housing project.

A municipal court may declare a dog to be potentially dangerous if the dog:

1. Causes bodily injury to a person during an unprovoked attack, and poses a serious threat of bodily injury to a person;
2. Poses a threat or severely injured or killed another pet; or
3. The dog has been trained or encouraged to engage in unprovoked attacks on people or other pets.

A landlord may require a tenant to remove a pet from the rental premises if the pet is a continuing nuisance to the welfare or property of the landlord or the other residents. If the tenant does not remove the pet, the landlord may file for an eviction action for violating the lease due to a continuing nuisance created by the pet. The landlord has the burden of proving that the pet is a continuing nuisance. A continuing nuisance means that the pet's existence interferes with the health, security, and comfort of other tenants or the number, size, breed, or species of the pet is inappropriate for the type of housing accommodations.

Landlords have the right to create reasonable written rules and regulations regarding the care and maintenance of pets. These rules and regulations should be incorporated into the tenant's lease.

6

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

The Law Against Discrimination as set forth in **N.J.S.A. 10:5-29.2**, prohibits discrimination against handicapped, blind, or deaf people in renting or leasing housing accommodations. A handicapped, blind, or deaf person who has a service or guide dog, or who obtains a service or guide dog, shall have full and equal access to all housing accommodations and shall not be required to pay extra compensation. Any lease or rental agreement prohibiting pets shall not apply to a service or guide dog owned by a handicapped, blind, or deaf tenant. The tenant is responsible for any damages done to the premises by the service or guide dog.

Tenants should maintain control of their pets and obey any lease requirements regarding the care and control of a pet's behavior, designated activity/walking areas and waste cleanup. Tenants should obey all Federal, State, and Local laws regarding the maintenance of their pets. Pets should not create a continuing nuisance for other residents or the landlord. Landlords are not responsible for the actions of a tenant's pet, unless the landlord is aware of the pet's vicious propensity and fails to take action. If tenants do not obey pertinent laws, rules, and regulations, the landlord may have cause to ask the tenant to remove the pet from the premises or the landlord may have cause for an eviction action.

### Termination of a Lease Agreement

The only reason a landlord can terminate a lease is if they offer a new lease to the tenant with different terms, i.e. higher rent or new rules and regulations, and the tenant does not agree. A landlord cannot evict a tenant just because the lease term has ended. It is important to note that termination is distinguishable from eviction. For more detailed information, see the eviction section of this publication.

If a tenant moves out before the end of the lease, the landlord may be able to hold the tenant responsible for the rent that becomes due until the premises is rented again, or until the lease ends, whichever occurs first. If the tenant moves out before the lease term has expired, the landlord must attempt to re-rent the apartment for the remaining months on the lease and prove that there was an attempt to re-rent the unit, i.e. advertising the premises for rent and interviewing tenants (**Sommer v. Kridel, 74 N.J. 446 (1977); McGuire v. City of Jersey City, 125 N.J. 310 (1991); Fanarjian v. Moskowitz, 237 N.J. Super. 395 (App. Div. 1989)**).

A tenant may terminate a lease for the following reasons:

1. **Moving out because of bad conditions** - if the landlord fails to make needed repairs the tenant must have proof of the bad conditions. If this is the case, the law holds the landlord responsible for breaking the lease by failing to fulfill their contractual obligation to provide safe and decent housing. This is called constructive eviction (**Reste Realty Corp v. Cooper, 53 N.J. 444 (1969); Harel Assoc. v. Cooper Healthcare Prof. Serv., Inc., 271 N.J. Super. 405 (App. Div. 1994)**).

2. **Housing that is not handicapped accessible** - if a landlord cannot or will not make a dwelling unit handicapped-accessible, at the landlord's own expense, for a disabled tenant or a member of the tenant's immediate family who is disabled as a result of the loss of one or more limbs or who requires an assistive device to move about, the lease can be terminated on the 40th day following receipt by the landlord of a notice of lease

7

termination and certification from a treating physician on a form submitted by the tenant to the landlord (**N.J.S.A. 46:8-9.2**).

The same procedure applies to the termination of the lease in the event of the death of the tenant or the tenant's spouse, except that a specific form is not prescribed (**N.J.S.A. 46:8-9.1**). These provisions for early termination do not apply to any lease that specifically provides otherwise.

3. **Lease Termination Due to Disabling Illness** - under the Lease Termination Due to Disabling Illness, Accident or Death Law, a tenant may break their lease, under certain conditions. A 40-day written notice of lease termination is required in each instance. The tenant must vacate and return possession of the property to the landlord at least five working days prior to the 40th day following the landlord's receipt of the notice to terminate. Rent must be paid until the termination date (**N.J.S.A. 46:8-9.2**).

   A. In certain circumstances, a tenant suffering a disabling illness or accident resulting in a loss of income may break a lease having a term of one or more years after submitting a form prescribed by law (**N.J.S.A. 46:8-9.2**).
   B. Tenants 62 years of age or older that are accepted into an assisted living facility, a nursing home, or a continuing care retirement community may break their lease. The tenant, spouse, or legal representative must provide the landlord with written notice of termination of the lease and attach a certification from a treating physician stating that the tenant or spouse needs to be in an assisted living facility, nursing home, or continuing care retirement community and documentation that the tenant has been accepted into one of those facilities (**N.J.S.A. 46:8-9.2**).
   C. Tenants 62 years of age or older that do not already reside in low- or moderate-income housing and are accepted into low- or moderate-income housing may break their lease agreements. The tenant, spouse, or legal representative must provide the landlord with a written notice of termination of the lease and attach documentation i.e., a lease or intent to lease low or moderate housing (**N.J.S.A. 46:8-9.2**).

4. **Termination of the Lease Due to Domestic Violence** - according to the New Jersey Safe Housing Act (**N.J.S.A. 46:8-9.4 et seq.**) victims of domestic violence may terminate their lease without penalty prior to the expiration of the lease by providing the landlord with a written notice that the tenant or a child of the tenant faces an imminent threat of serious physical harm from a specific person, (that must be identified in the written notice), if the tenant remains on the premises, and by fulfilling any of the following requirements:

   A. Has a certified copy of a permanent restraining order issued by a court under the Prevention of Domestic Violence Act of 1991 (**N.J.S.A. 2C:25-17 et seq.**) and protecting the tenant or child from the person named in the written notice;

   B. Has a certified copy of a permanent restraining order from another jurisdiction issued pursuant to that jurisdiction's laws concerning domestic violence, and protecting the tenant or child from the person named in the written notice;

   C. A law enforcement agency record documenting the domestic violence, or certifying that the tenant or a child of the tenant is a victim of domestic violence;

8

**D.** Medical documentation of the domestic violence provided by a health care provider;

**E.** Certification, provided by a certified Domestic Violence Specialist, or the director of a designated domestic violence agency, that the tenant or a child of the tenant is a victim of domestic violence; or

**F.** Other documentation or certification, provided by a licensed social worker, that the tenant or a child of the tenant is a victim of domestic violence.

Lease Termination due to domestic violence shall take effect on the thirtieth day following receipt by the landlord of one of the documents listed above and a written notice from the tenant that they intend to vacate the premises and terminate the lease. The rent shall be pro-rated up to the time of the lease termination (**N.J.S.A. 46:8-9.4 et seq.**).

If there are tenants on the lease other than the tenant who has given notice of termination of the lease due to domestic violence, the co-tenant's lease also terminates. The co-tenant may enter into a new lease agreement with the landlord at the landlord's option.

Where the leased premises are under the control of a public housing authority or redevelopment agency, the victim of domestic violence must give notice in accordance with any relevant regulations pertaining to public housing leases.

If a tenant terminates the lease agreement prior to the expiration of the lease pursuant to the Safe Housing Act, (**N.J.S.A. 46:8-9.6**), the tenant is entitled to the return of their security deposit. Within 15 business days after the lease is terminated, the landlord shall make available the return of the tenant's security deposit, plus any interest earned, to the tenant or the tenant's agent. In addition, within three business days after the lease is terminated, the landlord must notify the tenant in writing of when and where the tenant can pick up the security deposit. The notice must be given by personal delivery or mailed to the last known address, indicating the location of the security deposit and the hours in which the tenant may pick up their security deposit. The landlord must provide a duplicate notice to the relocation officer. If there is no relocation officer, notice must be provided to the municipal clerk. The security deposit must be available for return during normal business hours for thirty (30) days in the municipality where the rental property is located. The security deposit must be accompanied by an itemized list of the interest earned and any deductions. Any security money not demanded by and returned to the tenant or the tenant's designated agent within 30 days shall be redeposited or reinvested by the landlord, in accordance with the Security Deposit law. The landlord may charge the tenant for any money due the landlord under the terms of the lease, including damages to the property that are not ordinary wear and tear and any rent due and owing at the time the lease is terminated (**N.J.S.A. 46:8-19**

A landlord shall not disclose information documenting domestic violence that has been provided to the landlord by a victim of domestic violence. The information shall not be entered into any shared databases or provided to any person or entity. However, the information may be used as evidence in an eviction proceeding, legal action for unpaid rent or damages from the tenancy, with the consent of the tenant, or as otherwise allowed by law.

9

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

This law does not apply to transient or seasonal rentals.

5. **Service Members Civil Relief Act** - a service member leasing an apartment before entering the military has the legal right under this act to terminate the lease under the following circumstances (**50 U.S.C.A. § 3955**):

**A.** At any time after the renter's entry into military service; or

**B.** The service member, while in military service, executes the lease and thereafter receives military orders for a permanent change of station outside of the continental United States or to deploy with a military unit for a period of not less than 90 days.

The service member must provide the landlord written notice of termination of the lease and a copy of the military orders. Notice of termination of the lease must be provided in advance. Termination of the lease is effective on the last day of the month following the month in which the notice is delivered. The service member will incur no further monetary responsibility after providing the landlord with the proper notices. The landlord is required to return the security deposit in accordance with the applicable Security Deposit Law (**N.J.S.A. 46:8-26**).

Moreover, if the rent does not exceed $3,991.90 per month, eviction actions may be stayed by the courts for three (3) months unless the court finds that the tenant's ability to pay rent is not materially affected by reason of the military service. This amount is current as of 2020 and increases each year in accordance with the CPI component for housing.

For further information about the act including specific notice requirements and time frames, military personnel can contact the Legal Assistance Section of Fort Dix and McGuire Air Force Base at (609) 754-2010 or the Reserve Office of Fort Monmouth Legal Services at (732) 532- 4371.

## Modification of the Rental Premises for People with Disabilities

It is illegal for a landlord to refuse to rent to a tenant because of the tenant's handicap or disability. The landlord is not required to modify existing rental premises occupied, or to be occupied, by a person with a disability. However, the landlord also cannot refuse to make reasonable changes (at the expense of the disabled person) as may be necessary to afford the disabled person full enjoyment of the premises. The tenant may be required to restore the premises to the condition that existed before the modification, except for reasonable wear and tear. The landlord may also require a description of the modifications and proof of required permits (**N.J.A.C. 13:13-3.4(f)**).

The landlord may require the tenant deposit money into an escrow account each month to cover the costs of removal of the modifications when the tenant moves out. The landlord can only require the tenant to deposit the money into the escrow account if they can prove that the costs of restoring the premises to its original condition will be expensive. Payments into an escrow account must be affordable and must cease when the amount needed to restore the unit to its original condition is reached.  Interest on the account goes to the tenant.

10

New Jersey State Law also allows a disabled tenant to terminate the lease agreement if the unit is not handicapped accessible. A lease can be terminated if the landlord refuses to make the unit handicapped accessible after the tenant requests that the unit be made handicapped accessible and the landlord is unable or unwilling to do so (**N.J.S.A. 46:8-9.2**).

## Right of Entry

In general, a landlord does not have the right to enter a residential rental premises without consent of the tenant or a judgement from the Superior Court of New Jersey. There is no case law in New Jersey that either requires a tenant to give a landlord a key or prohibits a landlord from keeping a key to a rented unit. The landlord does not have the right to come into the dwelling unit whenever he or she wants to enter. However, the courts have generally approved lease provisions that require the tenant provide the landlord with a key citing emergency circumstances where the lack of a key could result in the loss of life or property in the case of an emergency. Unless otherwise clearly stated in the lease agreement, a tenant disputing the landlord's right to a key can simply refuse to provide the landlord with a key. The landlord may then seek an action for eviction based on the tenant's refusal to provide the landlord with a key. The court may deny the landlord the right to have a key if the tenant can prove that the landlord has abused the right to enter the premises. Moreover, the landlord may be liable to the tenant for damage or stolen property if the landlord is known to have a key and known to enter the rental unit when the tenant is not home. In a written lease, the landlord's duty not to enter the premises in called the covenant of quiet enjoyment which means that the tenant can control who may or may not enter the dwelling unit (**N.J.S.A. 2A-39-1**).

A landlord shall be guilty of an unlawful entry and detainer if they enter the rental premises peacefully or forcibly and then detain or keep possession of the property or take the property by force, the threat of force, or remove the tenant's personal property without consent of the tenant or a judgment from the Superior Court of New Jersey. With the exceptions noted above, if a landlord enters a tenant's unit while the tenant is not home, without the tenant's permission, it is forceable entry (**N.J.S.A. 2A:39-2**). If a tenant willfully and without force holds over or remains at the property after they have been given a written notice demanding delivery of possession (Notice to Quit) of the rental premises from the tenant to the landlord, the tenant shall be guilty of an unlawful detainer. If the tenant is found guilty of an unlawful detainer, the tenant shall pay the landlord double the rent for the holdover time that the tenant possesses the premises (**N.J.S.A. 2A:39-2**).

## Filing a complaint for unlawful entry and detainer

Any legal action for a forcible unlawful entry and detainer, forcible detainer, and unlawful detainer shall be brought before the Superior Court, and the court may hear and make a determination in that action. If a landlord enters the rental premises unlawfully, a trespass complaint may be filed by the tenant with the local police department, under the New Jersey Criminal Code for "defiant trespass" (**N.J.S.A. 2A:39-6**).

A tenant or landlord depending on the judge's decision shall be entitled to possession of the real property and shall recover all damages that may have been caused by the unlawful entry

11

and detainer, including, court costs and attorney's fees. When it is not appropriate to return the person to possession of the premises, treble (3x) damages shall be awarded (**N.J.S.A. 2A:39-8**).

## Access to the property

The Bureau of Housing Inspection, or an authorized representative, has the authority to enter and inspect at any reasonable time any multiple dwelling (**N.J.A.C. 5:10-1.1 et seq.**). A multiple dwelling is a building with three or more independent dwelling units. It is the duty of the landlord to notify the tenant when the Bureau of Housing Inspection has scheduled the property for an inspection.

The Bureau of Housing Inspection regulations also provide that upon reasonable notification tenants must give the landlord and the landlord's employees access to the dwelling unit for the purpose of inspection and maintenance. Reasonable notification is normally one day. However, in the case of safety or structural emergencies immediate access shall be granted (**N.J.A.C. 5:10-1.2**).

Consent of the tenant is required for inspection of the tenant's private living quarters that are subject to the lease agreement except in the following cases (**N.J.A.C. 5:10-1.10 (d)**):

1.  In case of emergencies where a condition exists that pose an immediate threat to the safety or health of persons using or near the premises.

2.  Where access to the premises has been denied and inspection is required to implement the requirements of the Bureau of Housing Inspection.

A landlord may request entry to a rental unit to perform other services or to show the unit for re-renting or sale. However, there is no statute or available case law that obligates a tenant to allow a landlord access to the rental premises for purposes other than inspection, maintenance, and repair. Therefore, the issue of entry in other cases should be addressed in the terms of the lease agreement. Disputes that arise regarding a landlord's right of entry must be decided on a case-by-case basis in court.

## Security Deposits

The Security Deposit Law applies to most residential rental properties, including mobile homes. The exception is an owner-occupied two-, or three-family dwelling. A tenant in an owner-occupied two-, or three-family dwelling may, however, make this provision applicable to their tenancy 30 days after sending a written request to the landlord that the landlord fulfill the requirements of the Security Deposit Law. In New Jersey, the landlord is not required to collect a security deposit from the tenant, however, if they do, they must follow prescribed rules and regulations (**N.J.S.A. 46:8-26**).

The maximum-security deposit to be collected by the landlord cannot be more than one and one-half times one month's rent (**N.J.S.A. 46:8B-21.2**). It can be less. Any additional yearly security deposit increase may not exceed 10% of the current security deposit. A landlord may not charge a pet security deposit if it exceeds one and one-half times one month's rent when combined with the regular security deposit. In the case of **Brownstone Arms v. Asher, 121 N.J. Super. 401**

12

**(1972), and <u>Reilly v. Weiss</u>, 406 N.J. Super. 71 (2009)**, the courts determined that advanced rents in excess of one and one-half times the monthly rental payment violate the Security Deposit Law. Therefore, any prepaid funds held to secure future rents are considered to be a part of the security deposit. This includes the last month's rent. It does not matter how the prepaid funds are labeled. The landlord may only require one and one-half times the tenant's monthly rent as security and the first month's rent at the inception of the lease. That means the landlord may not require more than two and one-half times the monthly rent at the inception of the lease, this includes the security deposit and the first month's rent. There is no time limitation within the statute for making the request for a deposit.

The security deposit money continues to be the property of the person making the deposit and must be held in trust by the person receiving the money. This means that the person who receives the money must not use the money in any way not permitted by law. The security deposit shall not be comingled with the personal property or become an asset of the landlord.

A landlord or designee who receives security deposit money for ten or less units must deposit that money in an insured bank or savings and loan association located in New Jersey in an interest-bearing account at the current interest rate at the time of deposit. A landlord or designee who receives security deposit money for 10 or more units has the option of investing the money in an insured money market fund of a New Jersey-based investment company where the investments mature in one year or less, or deposit that money in a State or federally charted bank, or savings, and loan association located in New Jersey in an account bearing a variable rate of interest. This section of the Security Deposit Law does not apply to security deposits for seasonal use or rental. Seasonal use or rental means use or rental for a term of not more than 125 consecutive days for residential purposes by a person having a permanent place of residence elsewhere. Seasonal use or rental does not mean use or rental of living quarters for seasonal, temporary, or migrant farm workers in connection with work or place where work is being performed. The landlord shall have the burden of proving that the use or rental of the residential property is seasonal (**N.J.S.A. 46:8-19 (d)**).

The interest or earnings paid on the security deposit belongs to the tenant and shall be paid to the tenant in cash or credited toward rent due and owing on the renewal or anniversary of the tenant's lease or on January 31, if the tenant has been given written notice, that the interest payments will be paid on January 31 of each year (**N.J.S.A. 46:8-19 (c)**).

Within 30 days of receipt of the security deposit and at the time of each annual interest payment, the landlord must notify the tenant in writing of the name and address of the banking institution or investment company in which the money is deposited, the amount of the deposit, type of account, and current rate of interest for the account. In addition, the landlord must notify the tenant within 30 days of transferring security deposit money to a new landlord or moving the security deposit to another account or bank. If a tenant does not receive proper notice or is not paid interest as required, the tenant may use the security deposit for payment of rent by giving the landlord written notice that the security money plus interest at the rate of 7% per annum be applied to rent payments or payments due or to become due from the tenant. However, if the tenant does not receive the annual notice at the time of the annual interest payment, or is not paid the annual

13

interest, as required, the tenant must give the landlord written notice and allow the landlord 30 days to comply with the annual interest payment and notice requirements. If the landlord does not reply within the allotted time, the tenant can use his security deposit toward his rent. If the tenant's security deposit gets applied to his rent, the landlord may not make further demand for an additional security deposit (**N.J.S.A. 46:8-19.1 (c)**).

Within 30 days after the termination of a tenancy, a landlord must return the security deposit, plus interest earned less deductions, to the tenant (**N.J.S.A. 46:8-21.1**). Deductions may include the cost of any damages over and above normal wear and tear, and any other money due the landlord under the terms of the lease. The landlord must return the money either by personal delivery, registered, or certified mail. If there are any deductions made from the security deposit by the landlord, an itemized list of these deductions must also be sent to the tenant by registered or certified mail within 30 days from the termination of the tenancy. If the amount of money owed to the landlord for damages or unpaid rent is greater than the amount of the security deposit, the landlord may sue for the difference. No deductions shall be made from a security deposit of a tenant who remains in possession of the rental premises.

If a landlord fails to return the security deposit within 30 days, or the tenant disagrees with the amount deducted, the tenant may sue for double the amount of the security deposit that the tenant contends was wrongfully withheld. If the tenant is successful, the court may award the tenant double the amount wrongly withheld, together with court costs and reasonable attorney's fees (**N.J.S.A. 46:8-21.1**). However, if the tenant breaks the lease and moves out of the dwelling unit prior to the expiration of the lease, without legal cause, the lease is not considered to be terminated. The lease is considered to be terminated once the unit is re-rented or the lease expires, whichever occurs first, provided that the tenant notified the landlord as required by the lease agreement. The date the rental unit is re-rented determines the date of the termination of the breached lease, **J.C. Mitchell v. First Real Estate, 287 N.J. Super 546 (1996)**. Therefore, in the case of a broken lease agreement by the tenant, the 30 days that the landlord shall return the tenant's security deposit does not start until the landlord re-rents the rental unit, or until the lease expires, whichever occurs first.

Within five (5) business days after a tenant is displaced by fire, flood, condemnation, or evacuation, the landlord must return the security deposit. The law requires the return when either an authorized public official has posted a notice prohibiting occupancy or has certified that the displacement is expected to continue longer than seven (7) days. Within three (3) business days of having received notice of the displacement, the landlord must let the tenant know where the security deposit can be collected. The landlord may arrange to have the municipal clerk hold the security deposit so that the tenant may collect it at the clerk's office. If the tenant has not collected the deposit within 30 days, the landlord can redeposit it with the banking institution or investment company with which it was deposited before the displacement. If the tenant is later able to move back into the dwelling unit but has already collected the deposit, the tenant must again pay the landlord a security deposit (one-third will be due immediately, another one-third in 30 days, and the last one-third in 60 days) (**N.J.S.A. 46:8-21.1**).

14

If the property is sold or transferred it is the duty of the new owner to obtain the security deposit, plus accrued interest on the tenant's deposit, that was collected by the former owner. Whether or not the deposit and interest are transferred, the new owner is responsible for the investment of the security deposit, giving all notices and paying interest, and for the return of the security deposit, plus any accrued earnings or interest (**N.J.S.A. 46:8-21**).

The Small Claims section of the Special Civil Part of the Superior Court, Law Division in the county where the unit is located or in the county where the landlord resides has jurisdiction in actions involving security deposits where the amount does not exceed $5,000, including any applicable penalties, but not including court costs. For actions over $5,000 but not exceeding $15,000, a person must file in the Special Civil Part of the Superior Court Law Division, New Jersey Court Rule 6:11 (**N.J.S.A. 46:8-21.4**). There is no State agency that has jurisdiction over security deposit disputes. All disputes must be settled through court action.

Any landlord who willfully and intentionally withholds a security deposit made by or on behalf of a tenant who has received financial assistance through any State or federal program, including welfare or rental assistance, may be penalized. The landlord may be liable for a civil penalty of not less than $500 or not more than $2,000 for each offense. The penalty shall be collected and enforced by summary proceedings pursuant to the Penalty Enforcement Law (**N.J.S.A. 2A:58-12**). The State entity which made the deposits on behalf of the tenant will be entitled to any penalty amounts recovered. A tenant receiving governmental financial assistance is not required to file an action to recover security deposits withheld by a landlord in violation of this law in order to continue participation in the governmental program (**N.J.S.A. 46:8-21.1; N.J.S.A. 46:8-21.5**).

Any person who unlawfully uses security deposit monies may be criminally charged as a disorderly person and may be subject to a fine of not less than $200 or imprisonment for not more than 30 days, or both (**N.J.S.A. 46:8-25**).

## Discrimination

Under State and federal laws, it is illegal for a landlord or rental agency to refuse to rent or discriminate in the rental of housing units. The New Jersey Law Against Discrimination (LAD), **N.J.S.A. 10:5-12(g) to -(h)**, prohibits discrimination when selling or renting property and requires equal treatment in the sale or rental of housing regardless of race, creed, color, national origin, ancestry, sex, marital status, civil union status, domestic partnership status, familial status, affectional or sexual orientation, gender identity or expression, mental and physical disability, nationality, or source of lawful income.

The law applies to all landlord-tenant relationships, except those involving two-family owner occupied dwellings, rooms in an owner or resident-occupied single home, and residences planned exclusively for and occupied by one sex, i.e. YMCA and age-restricted housing, as it pertains to familial status (**N.J.S.A. 10:5-5(n)**).

15

A landlord may refuse to rent to an individual or family if they do not have sufficient income, family is too large for the unit, overcrowded occupancy would result in violation of zoning laws, or credit history is poor (**42 U.S.C.A. § 3601 to -3610**).

Under the LAD and the Fair Housing Amendments Act, the refusal to rent to a family that includes children, with the exception of housing built for older persons and owner-occupied structures with no more than two dwelling units is prohibited under **42 U.S.C.A. § 3601 to -3610**.

A complaint against a person who refuses to rent, or who attempts to cancel a lease based on illegal discrimination may be filed in a court of competent jurisdiction, i.e. New Jersey Superior Court. Discrimination complaints pertaining to New Jersey state law violations should be reported to the proper field office of the Division of Civil Rights, New Jersey Department of Law and Public Safety. Addresses and contact information of the various regional offices are located in the appendix section of this publication. If there is a federal violation, a complaint may be filed with the U.S. Department of Housing and Urban Development or the U.S. Attorney. For additional information regarding discrimination on housing in New Jersey, the website is http://www.nj.gov/oag/dcr/index.html

If a complaint is filed with one of the three agencies referenced above these agencies are required to investigate the complaint and take action and remedy the situation if it is found that discrimination has actually occurred. A landlord that discriminates may be required to pay monetary damages and be required to rent the unit to the complainant if a violation is determined to have occurred. Under the LAD, landlords who violate this law are subject to substantial fines and penalties, up to $10,000 for a first offense (**N.J.S.A. 10:5-14.1a(a)**).

### Disposition of Personal Property

In accordance with **N.J.S.A. 2A:18-72**, a landlord of residential property may dispose of any personal property, tangible goods, manufactured, or mobile homes left on the premises after having given notice to the tenant prior to disposition of the property; or the tenant has provided the landlord with a written notice that they are relinquishing possession of the premises. The landlord may dispose of the property if they believe that the tenant has left the property on the premises with no intention of asserting any further claim to the property and the premises. Additionally, the landlord must satisfy the following conditions:

1. Written notice to the tenant with the requirements of the Abandoned Property Law concerning delivery and storage. The notice shall be sent by certified mail return receipt requested or by receipted first class mail addressed to the tenant at tenant's last known address and at any alternate address known to the landlord (**N.J.S.A. 2A:18-73**); and
2. A warrant for removal has been executed and possession of the property has been restored to the landlord (**N.J.S.A. 2A:18-72(b)**); or
3. The tenant has given written notice that they are voluntarily relinquishing possession of the premises (**N.J.S.A. 2A:18-72(b)**).

If the abandoned property is not removed:

1. The landlord may sell the property at a public or private sale (**N.J.S.A. 2A:18-78(a)**); or

16

**2.** The landlord may destroy or otherwise dispose of the property if the landlord reasonably determines that the value of the property is so low that the cost of storage and conducting a public sale would probably exceed the amount that would be realized from the sale (**N.J.S.A. 2A:18-78(b)**); or

**3.** The landlord may sell items of value and destroy or otherwise dispose of the remaining property (**N.J.S.A. 2A:18-78(c)**).

If the tenant claims the property within the timeframe provided in the notice, the landlord must make the property available for removal by the tenant without payment by the tenant of any unpaid rent.

After notifying a tenant as required by sections **N.J.S.A. 2A:18-73 to -74** (contents of notice for abandoned property), a landlord shall store all goods and other personal property of the tenant in a place of safekeeping and shall exercise reasonable care for the property, except that the landlord may promptly dispose of perishable food and shall allow an animal control agency or humane society to remove any abandoned pets. A landlord shall be entitled to reasonable storage charges and costs incidental to storage. A landlord may store property in a commercial storage facility, in which case the storage cost shall include the actual storage charge plus the reasonable cost of removal of the property to the place of storage.

If a tenant responds in writing or orally to the landlord, on or before the day specified in the required notice, that they intend to remove the property from the premises, or from the place of safekeeping if the landlord has stored the property and does not do so within the time specified in the notice or within 15 days after the written response, whichever is later, the tenant's property shall be conclusively presumed to be abandoned (**N.J.S.A. 2A:18-76**).

Upon removal of property, a tenant shall reimburse the landlord for the reasonable cost of storage for the period the property was in the landlord's safekeeping, including the reasonable cost of removal of the property to a place of storage. A landlord shall not be entitled to reimbursement for storage and removal costs which are greater than the fair market value of such costs in the locale of the rental property. A landlord shall not be responsible for any loss to a tenant resulting from storage of property unless the loss was caused by the landlord's deliberate or negligent act or omission (**N.J.S.A. 2A:18-77**).

A landlord may deduct from the proceeds of any sale the reasonable costs of notice, storage and sale and any unpaid rent and charges not covered by a security deposit. After deducting these amounts, the landlord shall remit to the tenant the remaining proceeds, if any, together with an itemized accounting. If the tenant, after due diligence, cannot be found the remaining proceeds shall be deposited with the Superior Court and, if not claimed within 10 years, shall escheat to the State (**N.J.S.A. 2A:18-80**).

Compliance in good faith by the landlord with the requirements of the law constitutes a complete defense in any action brought by a tenant against a landlord for loss or damage to the property, however, if the landlord seizes and retains a tenant's property without complying with the law, the tenant is relieved of any liability for reimbursement of the landlord's cost and is entitled to recover up to twice the actual damages sustained (**N.J.S.A. 2A:18-82**).

17

## Nonpayment and Distraint

A landlord is prohibited from taking or holding a residential tenant's possessions for nonpayment of rent. The legal term for this practice is "distraint." A landlord cannot use distraint for money owed on a lease or other agreement for a unit used only as a residence (**N.J.S.A. 2A:33-1 to -23**).

A tenant may sue for damages resulting from distraint for nonpayment of rent in Superior Court, Special Civil Part, in the county the building is located or the county in which the landlord resides. The court may award double damages and costs of legal action to a tenant whose property was wrongfully distrained, (**N.J.S.A. 2A:33-19**). Any tenant who removes or conceals any of his personal property with the intent to delay, hinder, or defraud the landlord shall be liable for the damages to the landlord if the action of the tenant appears to be willful, the landlord shall be entitled to recover double damages (**N.J.S.A. 2A:33-21**).

When a tenant threatens to leave the unit without payment of rent and a landlord has not yet received a judgement from the court, the landlord may seek a temporary restraining order to prohibit the tenant from leaving the jurisdiction of the court (**Court Rule 4:51-5**).

## Consumer Fraud Protection

Deception, fraud, misrepresentation, or knowing failure or refusal to provide important information in connection with the sale or advertisement of real estate is illegal in New Jersey (**N.J.S.A. 56:8-2**). An aggrieved consumer may sue for triple damages plus attorney's fees for consumer fraud (**N.J.S.A. 56:8-19**). A tenant may contact the Department of Law and Public Safety, Division of Consumer Affairs, Office of Consumer Protection, 124 Halsey Street, Newark, New Jersey 07101, (973) 504-6200, https://www.njconsumeraffairs.gov for further information concerning the Consumer Fraud Act.

## Credit Checks and Background Checks

Landlords may access credit reports for prospective tenants from credit bureaus or tenant screening agencies. The landlord may use the information provided in deciding whether to approve or deny an applicant. If a tenant's application is denied due their credit report, the landlord must provide the tenant with the name, address, and telephone number of the credit reporting or screening agency that supplied the negative report (**15 U.S.C.A. § 1681m**). The landlord is allowed to charge the tenant for the cost of the report. The landlord may also request reasonable rental application fees or employment verification. For more information about the Fair Credit Reporting Act, call toll-free 1-877-FTC-HELP (1-877-382-4357), or visit their website at www.ftc.gov. Landlords may also perform background checks through public records.

Furthermore, landlords may attempt to verify the validity of any information a tenant provides on his or her rental application.

## Rent

A tenant has the responsibility to pay the full amount of rent on time. An owner has the responsibility to maintain the dwelling in a habitable condition.

18

A tenant who remains in a unit after giving his or her landlord written notice of intent to leave may be held responsible for double the rent payments for the months that the tenant continues to occupy the unit without a lease. The payment of double rent payments shall continue to be paid during the time period in which the tenant continues in possession of the premises after giving written notice of intention to leave the premises (**N.J.S.A. 2A:42-5**). The amount due and owing to the landlord is recoverable by any action in any court of competent jurisdiction (**N.J.S.A. 2A:42-6**).

Any senior citizen receiving a Social Security Old Page Pension, a Railroad Retirement Pension, or any other governmental pension in lieu of a Social Security Old Age Pension, and any recipients of Social Security Disability Benefits, Supplemental Security Income, or benefits under Work First New Jersey, must be given a period of five (5) business days grace period for payment when the rent is due on the first of the month. No delinquency or late charge may be assessed during the grace period. Any landlord who fails to allow this grace period may be criminally prosecuted as a disorderly person (**N.J.S.A. 2A:42-6.1 to -6.3**).

### Rent Control/Rent Increases

The State of New Jersey has no laws that establish, govern or control rents. Municipalities may pass an ordinance establishing rent control or rent leveling. Locally created boards enforce these ordinances. Rent control ordinances have been upheld as a valid exercise of the municipal police power where there is a housing shortage (**Iganamort v. Borough of Fort Lee, 120 N.J. Super. 286 (1973); Helmsley v. Borough of Fort Lee, 78 N.J. 200 (1978); Orange Taxpayers Council, Inc. v. City of Orange, 83 N.J. 246 (1980)**))

Under the Newly Constructed Multiple Dwellings Law (**N.J.S.A. 2A:42-84.5**), newly constructed multiple dwellings shall be exempt from any local rent control ordinances for a period of 30 years following completion of construction of the building. Rents that are subsidized by governmental funding may also be exempt from local rent control ordinances. A tenant may contact the Rent Control Board or municipal clerk in their town to find out if their rental unit is covered by a rent control or rent leveling ordinance.

Although the State of New Jersey does not have any laws that establish, govern, or control rents, a landlord can increase rents if they follow certain procedures. A landlord cannot raise the rent mid-lease term. The old lease must be terminated, and the new lease must have the increased rental payment. The landlord has to offer the tenant a new lease with the increased rent once the old lease has been terminated. In order to terminate a lease, the landlord must take the following steps (**N.J.S.A. 2A:18-61.1(f)**):

1. Landlord must give the tenant proper written notice, which informs the tenant that the current lease is terminated, and the tenant can remain in the premises by signing a new lease at an increased rent.
2. Written notice must also state that end of the current lease, tenant has the right to continue renting the premises at the increased rent.

19

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

Notice requirements for rent increases are contained in the Anti-Eviction Act (**N.J.S.A. 2A:18-61.1 et seq.**). This law provides that before an owner can evict a tenant for nonpayment of an increased rent, they must first serve the tenant with a valid notice to quit and notice of rent increase. This notice does not mean that the tenant must actually leave; the tenant has the right to remain as long as they pay any legal increase in rent. The increase in rent must not be unconscionable; it must not be so unreasonable as to shock the conscience of a fair and honest person and must comply with any municipal ordinances governing rent increases.

The definition of unconscionable is fact sensitive. Factors used in defining unconscionable are the amount of the increase; the landlord's expenses and profitability; how the existing and proposed rent compared to rents charged at similar rental properties in the same geographic area; the relative bargaining position of the parties; and the Judge's general knowledge (**Fromet Properties v. Buel**, 294 N.J. Super. 601 (App. Div. 1996); **Hale v. Farrakhan**, 390 N.J. Super. 335 (App. Div. 2007)).

If an increase is determined to be unconscionable or a tenant has not received proper notice, the tenant may file a complaint with a municipal rent control board where one exists. Where there is no municipal rent control and a rent increase is charged that a tenant does not pay on the ground that it is unconscionable, the landlord may file an eviction action for non-payment of the rent increase. A judge would decide if the increase was unconscionable or not. If the court finds that the rent increase is not unconscionable or in violation of a rent control ordinance, the tenant will have to pay the increase in order to avoid being evicted.

If a building is converted to a condominium or cooperative form of ownership, or to fee simple ownership of units, rents may not be increased to cover costs resulting solely from the conversion (**N.J.S.A. 2A:18-61.31**). This does not mean that rents may not be increased to cover the cost of new services or amenities. This prohibition applies to all tenants in the building regardless of whether they are eligible for protected tenancy as senior citizens or disabled persons.

**Public Financed and Subsidized Housing**

Housing developments owned or subsidized by the U.S. Department of Housing and Urban Development (HUD), as well as unsubsidized developments with HUD-insured mortgages determined by HUD to have certain economic problems, are not subject to municipal rent control. For further information on the proper notice of a rent increase (the allowable amount of each rent increase in HUD buildings), contact the U.S. Department of Housing and Urban Development, New Jersey State Office, 1 Newark Center, Newark, New Jersey 07102-5260, (973) 622-7900. Likewise, rents fixed and controlled by the New Jersey Housing and Mortgage Finance Agency (NJHMFA) in projects it finances are not subject to municipal rent control ordinances. For further information on the proper notice of a rent increase or the allowable amount of rent increase in a NJHMFA project, contact the New Jersey Housing and Mortgage Finance Agency, 637 South Clinton Ave., Post Office Box 18550, Trenton, New Jersey 08650-2085, (609) 278-7400.

20

**Property Tax Rebate for Tenants**

The Tenants' Property Tax Rebate Act (**N.J.S.A. 54:4-6.2 to – 6.13; N.J.A.C. 5:33-3.1 et seq.**), as amended in 1998, may require owners of properties with five (5) or more rental units to pass on to their tenants as a rent credit or cash rebate, the full amount of any current property tax reduction. Reductions are calculated by comparing the current year's taxes with a previous year (beginning with 1998) that shows a larger tax amount. The difference is the amount to be rebated to tenants. Municipalities with rent control ordinances that do not permit landlords to pass tax increases along to tenants are not subject to the law. The law also contains exceptions for certain types of rental properties. See **N.J.S.A. 54:4-6.3** for the list of the types of properties that are exempt.

In each municipality, where a rebate is due, a notice of property tax reduction (**N.J.S.A. 54:4-6.7**) is sent from the local tax collector to the building owners within 30 days after tax bills are issued to the building owner. Generally, rebates are to be distributed in monthly installments at rent payment dates, beginning within 30 days after receipt of Notice of Tax Reduction. The first rebate is to be cumulative from January and all are to be completed by December 31. However, if the notice is received after November 1, the rebate is to be completed by June 30 of the following year.

Under the law, in eligible municipalities, a property rebate is due to tenants only when property taxes are reduced because of: 1) a municipal wide revaluation of all real estate and only in the first year the revaluation takes effect, 2) generally, when the property tax rate in the current year is lower than the base year (usually 1998), 3) taxpayers in the municipality receive tax rate credit through the Regional Efficiency Aid Program (REAP) (**N.J.S.A. 54:4-8.76 et seq.**). The entire amount of the REAP credit must be passed through to tenants.

The law and rules contain details on eligibility and other issues beyond what is covered in this publication. For additional information, please direct all questions about the program to the Tenant Property Tax Rebate Program, Division of Local Government Services, P.O. Box 803, Trenton, New Jersey 08625-0803, (609) 984-5076, or via e-mail at dlgs@dca.nj.gov, or on the website at www.nj.gov/dca. The program also has a handbook titled "Tenant and Landlord Guide to the Tenant Property Tax Rebate Act," which can be obtained at no cost by writing or e-mailing the above address.

**New Jersey Homestead Property Tax Credit**

Residential tenants may be eligible for a tax credit under the Homestead Property Tax Credit Act, if they were tenants during the year for which the tax return is filed. In order to qualify, applicants must meet income eligibility requirements. This is not a credit on rent payments and is not paid by or through the landlord. The benefit is paid through the New Jersey Division of Taxation. The homestead benefit may come in the form of a rebate or credit. Tenants may apply for a homestead rebate or credit by filling out the application on the New Jersey Gross Income Tax Form. This form must be filed by April 15th of each year with the New Jersey Division of Taxation. Even tenants who are not required to file a return for income taxes may still apply for the credit. Questions concerning this credit should be directed to the New Jersey Division of Taxation,

21

Taxpayers Information Service, 50 Barrack Street, Post Office Box 269, Trenton, NJ 08646, (609) 292-6400 or (800) 323-4400. (See Homestead Property Tax Credit Act, N.J.S.A. 54:4-8.57 through 8.75).

### Identity of Landlord

A landlord who owns a one or two-family non-owner-occupied home is required by law to file a registration statement with the clerk of the municipality in which the building is located. If the building has three (3) or more units, the statement must be filed with the Bureau of Housing Inspection, Post Office Box 810, Trenton, New Jersey 08625-0810, on a registration form provided by the Bureau. The Bureau sends a validated copy of the filed registration form to the municipal clerk. Owner-occupied two-family homes are not required to be registered. The landlord registration law prohibits a landlord from evicting a tenant in the building if the landlord has not been properly registered (**N.J.S.A. 46:8-27 to -37**).

The registration statement must be given in writing to each tenant and posted in a place in the building where it can be easily seen. The document must state the date of preparation and contain the names and addresses of the following: 1) the owner or owners of the building and the owners of the rental business if not the same person; 2) the registered agent and corporate officers if the owner is a corporation; 3) a person who resides in or has an office in the same county as the building and is authorized to accept service of process, if the owner is not located in the county; 4) the managing agent; 5) regular maintenance personnel; 6) the owner's representative who must be available and able to act in an emergency (the representative's telephone number must be listed); 7) every holder of a recorded mortgage on the building; 8) if fuel oil is used to provide heat to the building and it is furnished by the owner, the name, and address of the fuel oil dealer and the grade of oil used must also be included (**N.J.S.A. 46:8-28**).

Every landlord required to file a certificate of registration must file an amended registration with the correct agency (Bureau of Housing Inspection or clerk of the municipality) within 20 days after any changes to the information on the certificate. No fee shall be charged for filing an amendment except where ownership of the property has changed, (**N.J.S.A. 46:8-28.2**). Amended registration statements must also be posted in the building and each tenant must be notified in writing within seven (7) days after filing the amended statement. In any eviction action by a landlord who has failed to follow the provisions of this law, the court is required by law to reserve judgement and continue the case – that is, to keep the case open and not issue a judgement for eviction – for up to 90 days to allow the landlord time to comply. If the landlord has not-complied within the allotted time, the court must dismiss the case, which means that the tenant is not evicted.

The Superior Court, Law Division, Special Civil Part and the municipal court in the municipality in which the premises are located have concurrent jurisdiction to enforce penalties sought against landlords who violate the requirements of the Landlord Identity law. The maximum penalty is $500.00 for each offense, recoverable by a summary proceeding under "The Penalty Enforcement Law" (**N.J.S.A 2A:58-1 et seq.**). The Attorney General, the municipality in which the premises are located, or any other person may institute the summary proceeding. The court will remit any penalty recovered to the municipality in which the subject premises is located unless the

22

action is brought by the Attorney General, in which case the penalty is remitted to the State (**N.J.S.A. 46:8-35**).

## Habitability

Many citizens in the State reside in dwelling units that fail to meet minimum standards of safety and sanitation. All units shall be maintained as so to be fit for human use and habitation and to prevent progressive deterioration of the unit to the detriment of the health, safety, and well-being of its occupants. Both landlords and tenants have certain obligations for maintenance of these dwelling units. These obligations are based on lease provisions, New Jersey Statutes, local municipal ordinances, and court decisions, and require that proper and timely notice be given by the tenant to the landlord where there are safety and sanitation conditions that must be corrected.

Tenants have the right to safe, sanitary, and decent housing. Residential leases carry an implied warranty of habitability. The New Jersey Supreme Court has held that a landlord offering two units or more for rent implies that it is habitable and agrees to keep it in that condition. Upon terminating the lease, a tenant is responsible for maintaining and returning the property to the landlord in the same condition that the tenant received it, except for normal wear and tear. When damage has been caused by malicious or abnormal use by the tenant, the tenant is responsible for the repair (**Marini v. Ireland, 56 N.J. 130 (1970); Dowler v. Boczkowski, 148 N.J. 512 (1997)**).

### Reporting Housing Code Violations:

All buildings with three or more rental units must comply with the regulations for the maintenance of Hotels and Multiple Dwellings and must be registered with the Bureau of Housing Inspection (BHI) in the Department of Community Affairs. BHI is responsible for the Statewide enforcement of the Hotel and Multiple Dwelling Law and the regulations for maintenance of Hotel and Multiple Dwellings (**N.J.S.A. 55:13A-1 et seq.**).

To file a complaint against a landlord, for housing code violations contact the Bureau of Housing Inspection at (609) 633-6241. Multiple dwellings are to be inspected for violations in the following manner: inspection will be scheduled on a seven, five, or two-year schedule depending on the number of violations and abatements on the property. Under this tiered system inspections will take place as follows: (1) Every seven years when no violations are found or all violations are abated before the first reinspection; (2) Every five years in dwellings where all violations are abated by the second or third reinspection; (3) Every two years in dwellings where all violations are not abated by the third reinspection. The law also requires that the owner of each multiple dwelling of three or more units must file a certificate of registration. Once the certificate of registration is obtained, it must be prominently placed in a conspicuous site on the property. This certificate of registration must be filed annually. Should the information change, the owner must file an amended registration statement. Violation of this law can result in a $200.00 penalty per violation (**N.J.S.A. 55-13A-12(d)**). One- and two-unit buildings that are not owner-occupied must comply with any applicable local ordinances and must register with the Clerk in the municipality in which the residential property is located. No registration is required for owner-occupied two-family houses.

23

The Hotel and Multiple Dwelling Law gives the Commissioner of the Department of Community Affairs power to issue and enforce regulations and to levy penalties to ensure that multiple dwellings are maintained so that they do not endanger the health, safety, or welfare of the tenants or the general public. Both landlords and tenants must maintain buildings so that there is no violation of these regulations. Tenants must take care of their units and report any code violations to the landlord or superintendent and upon one-day notice, shall allow the landlord or his representative to enter the unit to make any inspections, repairs, or alterations required in order to meet code requirements. In case of an emergency, immediate access shall be granted. The landlord must keep the property in good repair, clean, free of infestation and free of any hazards or nuisances that might be harmful to the health or safety of the occupants, and must provide basic maintenance, including heat, building security, smoke alarm systems or detectors, and properly functioning plumbing and electrical systems, etc. (**N.J.A.C. 5:10-5.1**).

## Child-Protection Window Guards/Screens

This requirement does not apply to seasonal rental units (units rented from May 1 to October 1 each year). Nor does this requirement apply to owner-occupied units, condominiums and co-ops (**N.J.S.A. 55:13A-7.13(a)1 to –(b)2**).

Leases must contain a notice advising tenants that, upon written request by the tenant, the owner is required to provide, install, and maintain window guards in dwelling units with children 10 years of age or younger. In addition, bi-annual written notices must be given to tenants informing them of the window guard regulation. Furthermore, landlords must give first-floor tenants notice that they may also request window guards to protect the safety of their children, if the windows are more than six feet above ground or if there are other hazardous conditions that make the installation of the window guards necessary (**N.J.A.C. 5:10-27.1(c) to –(d)**). By law the landlord may charge a tenant no more than twenty dollars ($20.00) for each window guard installed in the tenant's apartment (**N.J.A.C. 5:10-27 Appx. 27B**).

Screens suited to protect the interior of the building against insects must be provided and kept in good repair for each exterior door, except exterior doors which do not provide ventilation. Screens shall also be provided, maintained and installed for each openable window in living and common areas. Screens are not required for units or common areas on the 6th floor or above.

## Carbon Monoxide and Smoke Detectors

Both one- and two-household dwellings as well as living space in hotels and multiple dwellings must be equipped with smoke detectors and carbon monoxide alarms. In the case of one- and two-family houses the requirement is enforced upon any change in occupancy or any time a permit is required for work being undertaken (**N.J.S.A. 52:27D-192**). An owner of a one- or two-family house must obtain a Certificate of Smoke Detector and Carbon Monoxide Detector Alarm Compliance from the local fire official responsible for the enforcement of the Uniform Fire Safety Act. The requirement is enforced by the New Jersey Department of Community Affairs under the Regulations for the Maintenance of Hotels and Multiple Dwellings with respect to multiple dwellings (**N.J.A.C. 5:10-28.1**).

24

No carbon monoxide alarm is required in any building that does not contain any fuel-burning appliances and does not have an attached garage. The enforcing agency may issue a certificate for a seasonal rental unit for a period of 12 months, regardless of the number or frequency of changes in tenancy (**N.J.A.C. 5:70-2.3, 2.9, & 4.19**).

At the request of a tenant who is deaf or hearing impaired and residing in a multiple dwelling or rooming and boarding house, the landlord must provide and install a visual alarm type carbon monoxide detector and smoke detector for that unit or, in the case of a rooming or boarding house resident, for the resident's sleeping area. The tenant should make his or her request in writing to the landlord (**N.J.A.C. 5:10-28.1, 5:27-14.1, 5:70-4.9**).

## Locks

For a dwelling unit to be insurable, it must be equipped with locks that meet the federal standards as described below. State law requires that every landlord of a multiple dwelling equip the building with locks meeting federal standards. These standards are the same as those required under the New Jersey Hotel and Multiple Dwelling Regulations.

The regulations call for each exterior doorway to be protected by a door which, if not a sliding door, is equipped with a deadbolt lock using either an interlocking vertical bolt and striker, or a minimum ½-inch throw deadbolt, or a minimum ½-inch throw self-locking latch. For further information on locks, write to the Code Administrator for the county the building is in, Bureau of Housing Inspection, Department of Community Affairs, P.O. Box 810, Trenton, NJ 08625-0810, (609) 633-6225. In buildings of fewer than three (3) units, the tenant should contact the municipal building inspector or health officer for enforcement of any existing local ordinances (**N.J.A.C. 5:10-19.2**).

## State Heat and Utility Requirements

The Hotel and Multiple Dwelling regulations establish heating standards for buildings with three (3) or more units. For buildings with fewer than three (3) units, tenants need to contact their municipal building or health offices for enforcement of local ordinances regarding heating. Every unit or dwelling space must have a heating system that will provide and maintain heat at least 68 degrees F. from October 1 to May 1, from 6:00 a.m. to 11:00 p.m. and 65 degrees F. at other hours, supplying the required fuel or energy, and maintained the heating system in good condition so that it can provide the required amount of heat. However, a landlord and a tenant may agree that the tenant will supply heat to a dwelling unit when the unit is served by separate heating equipment and the source of that heat can be separately computed and billed (**N.J.A.C. 5:10-14.4**). To file a complaint pertaining to heating and utilities from anywhere in the State of New Jersey, contact the Bureau of Housing Inspection at (609) 633-6241.

The State Board of Public Utilities (BPU) enforces regulations that prohibit utility companies from shutting off utilities in tenant-occupied buildings whose owners have failed to make payments until tenants have been given notice and an opportunity to agree to make future payments (**N.J.A.C. 14:3-3A5 to -3A:8**). The office of the BPU is located at 44 S. Clinton Avenue, Post Office Box 350, Trenton, NJ 08625, (609) 777-3300.

25

The Board of Public Utilities also handles complaints regarding diversion of service. The utility company that provides service to the rental property will provide an application for requesting a diversion of service investigation. There is no cost to have the investigation performed. If the investigation reveals that a tenant is being billed for service used by another, the landlord will be contacted to have the problem corrected. For the Utility Residential Customer's Bill of Rights, please visit https://www.state.nj.us/bpu/assistance/rights/. The Utility Residential Customer's Bill of Rights is a concise, plain language explanation of the BPU regulations as set forth in **N.J.A.C. 14:3-1.1 et seq.**

For emergency action in the event of failure to provide required heat, a tenant can contact the local health officer immediately after giving, or attempting to give, notice to the landlord. When the heating equipment in a residential unit fails and the landlord does not take appropriate action after receiving proper notice form the tenant, the local board of health may act as an agent for the landlord and order the repairs necessary to restore the equipment to operating conditions (**N.J.S.A. 26:3-31(p)**).

### Rent Receivership for Substandard Housing and Diversion of Utilities

In the event that a dwelling unit fails to meet minimum standards of safety and sanitation, the Rent Receivership Law permits the public officer of a municipality or tenant(s) of a dwelling to petition the court for a judgment directing the deposit of rents with the court and the appointment of an administrator who must use the money to correct the unsafe conditions (rent receiver) (**N.J.S.A. 2A:42-85 to -95**).

If a tenant's utility service has been wrongfully diverted by the owners or some other party without the consent of the tenant, and the charges are being billed to the tenant whose services have been diverted, and the landlord has been notified by a public officer, the tenant or a utility company, and the landlord has failed to take necessary action to correct the wrongful diversion within 30 days of receipt of the notice, the tenant may file a complaint in Superior Court for Rent Receivership (to deposit rent money with the court until the problem is corrected) or in Small Claims Court. The notice to the landlord regarding the wrongful diversion should be sent by certified mail (**N.J.S.A. 2A:42-87**).

### Multifamily Housing Preservation and Receivership

Any interested party may bring a court action to have a receiver appointed for multifamily buildings which are substandard and deteriorating. Interested parties should file a complaint in Superior Court in the county in which the building is located to have a receiver appointed to take charge and manage the building. Any receiver appointed will be under the direction and control of the court. In order for the building to be eligible for receivership it must meet one of the following criteria (**N.J.S.A. 2A:42-117**):

**1.** The building is in violation of any State or municipal code to such an extent as to endanger the health and safety of the tenants as of the date of the filing of the complaint with the court, and the violation(s) have persisted, unfixed for at least 90 days; or

26

2. The building is the site of a clear and convincing pattern of recurrent code violations, which may be shown by proofs that the building has been cited for such violations at least 4 separate times within the prior 12 months or 6 separate times within the preceding 2 years and the owner has failed to take action.

## Public Housing Maintenance

Public Housing Authority leases must contain the rights and responsibilities of both the Housing Authority and the tenant in the event there is extensive damage to a property and conditions are created that are hazardous to life, health, or safety of the occupants. A Public Housing Authority lease must include a provision for standard alternative accommodations, if available, where necessary repairs cannot be accomplished within a reasonable time period. For more information regarding public housing leases you may contact the, U.S. Department of Housing and Urban Development, (HUD), New Jersey State Office, 1 Newark Center, Attn: Public Housing, Newark, N.J. 07102-5260, (973) 622-7900.

## Federal Lead-Based Paint Disclosure

Under rules adopted jointly by the U.S. Environmental Protection Agency (EPA) and the U.S. Department of Housing and Urban Development (HUD) in 1994, landlords of certain types of buildings must notify prospective tenants of lead-based paint hazards in the dwelling they wish to rent and provide them with information about the identification and control of such hazards. More specifically, if the dwelling to be rented was constructed prior to 1978, contains bedrooms and is to be rented for more than 100 days, the landlord must provide the tenant, before the lease is signed, an EPA pamphlet entitled, "Protect Your Family from Lead in Your Home" (**42 U.S.C.S. § 4851 et al.**).

In addition, the landlord must ensure that the lease agreement includes a federal disclosure form. On the form, the landlord must state whether they are aware of the presence of any lead-based paint or lead based hazards in the property. If the landlord has a lead evaluation report of the property, the report must be attached to the form.

The federal regulations only require landlords to disclose known lead hazards. They do not require landlords to conduct any investigations to determine whether there are lead-based paint hazards in their rental properties. Therefore, the fact that the landlord is unaware of a lead hazard does not mean that one does not exist. Lead-based paint hazards may still be present and, if they are, young children residing in those buildings are at risk of childhood lead poisoning.

Housing for the elderly or persons with disabilities are exempt from the lead paint disclosure requirement unless a child under the age of six (6) resides with the tenants. For specific questions about childhood lead poisoning or single copies of the pamphlet titled, "Protect Your Family from Lead in Your Home," forms and rules, call the National Lead Information Center (NLIC) at (800) 424-5323 (LEAD). Requests can be faxed to (585) 232-3111, and information can also be found on the HUD Office of Lead Hazard Control and Healthy Homes website, which is: https://www.hud.gov/program_offices/healthy_homes. Noncompliance with the guide include civil and administrative penalties.

27

For bulk copies of the "Protect Your Family from Lead in Your Home" (Stock number 055-000-00507) pamphlet, call (202) 512-1800.

## State Lead-Based Paint Disclosure

Multiple Dwellings and one- and two-family tenant occupied residential buildings, including all common areas, constructed before 1978, are required to undergo a combined inspection and risk assessment, and lead hazard control work, or periodically treat the property for lead-based paint hazards. However, this rule does not apply to the following: a dwelling unit that has been certified as having a lead-free interior; an owner-occupied dwelling unit; a seasonal dwelling unit which is rented for less than 6 months' duration each year; or housing for the elderly or a residential property designed exclusively for persons with disabilities, unless a child less than six (6) years of age is expected to reside in the dwelling unit. The owner must post a notice advising tenants to report deteriorated paint and shall respond to any reported problem within 30 days. The notice shall include the landlord's name, address, and telephone number, however, the landlord shall respond to any report of deteriorated paint within one week if there is a pregnant woman or child under the age of six (6) in the unit or if the problem is in a common area (**N.J.A.C. 5:10-6.6(h)2(i)**). The Bureau of Housing Inspection is responsible for the inspection of multiple dwellings for compliance with the state lead paint requirements.

Tenant notification and landlord response requirements are as follows: Landlords shall distribute the pamphlet for Lead Safe Maintenance prior to commencement of repair work that will disturb more than two (2) square feet of lead-based paint, unless the tenant has received the pamphlet within the past 12 months (**N.J.A.C. 5:10-6.6(h)1**). The pamphlet may be obtained by contacting the Bureau of Housing Inspection, P.O. Box 810, Trenton, N.J. 08625, (609) 633-6225 or at www.nj.gov/dca/codes.

Occupants will not be permitted to enter the worksite during hazard reduction activities and will be temporarily relocated to a safe and similarly assessible dwelling unit, unless the treatment will not cause a hazard. The occupant's belongings must also be moved from the contaminated area or protected by an impermeable covering. A warning sign shall be posted at each entry to a room where hazard reduction activities are conducted when occupants are present; or at each main and secondary entryway to a building form which occupants have been relocated (**24 C.F.R. 35.1345**).

A local board of health has the authority to order the removal of lead paint from the interior of a dwelling unit when it causes a danger to occupants.

## Post of Drinking Water Test Results

## 1. Public Water Systems:

Public water systems are defined as those having at least 15 service connections or regularly serve an average of at least 25 individuals daily at least 60 days or more out of the year (**N.J.S.A. 58:12A-3**).

28

The landlord of a multiple dwelling who is required to prepare a Consumer Confidence Report pursuant to the "Safe Drinking Water Act Amendments of 1996," (**42 U.S.C.S. § 300f et al.**), or who receives a Consumer Confidence Report from the owner or operator of a public community water system, shall post each Consumer Confidence Report it prepares or receives in each common area routinely used by tenants living in a multiple dwelling unit or, if there is no common area routinely used by tenants, the landlord of the multiple dwelling unit must transmit a copy of the Consumer Confidence Report to each dwelling unit.

The landlord of a multiple dwelling unit who is a supplier of water but is not required to prepare a Consumer Confidence Report pursuant to the "Safe Drinking Water Act Amendments of 1996," and who is required to conduct tests of its drinking water by the Department of Environmental Protection, must post a chart setting forth the results of the water tests, including the level of detection and, as appropriate for each contaminant, the maximum containment level, highest level allowed, action level, treatment technique, or other expression of an acceptable level, for each contaminant, in each common area routinely used by the tenants living in a multiple dwelling unit, or if there is no common area routinely used by the tenant, the owner of the multiple dwelling unit must transmit a copy of the chart to each dwelling unit. The chart also must include in bold print the statement required to be included in a Consumer Confidence Report, pursuant to **40 C.F. R. 141.154(a)**.

### 2. Private Water Systems:

Private water systems are defined as any water system that does not meet the definition of a public water system.

The Private Well Testing Act (**N.J.S.A. 58:12A-26 et seq.**) requires private potable wells to be tested in accordance with the law. All landlords of property supplied by a private potable well must provide a copy of the test results to all tenants of the property. Testing is required at least once every five (5) years. The landlord is required to provide a copy of new test results to each rental unit within 30 days of receiving those results. Any new tenant of a rental unit is to be provided a written copy of the most recent test results by the landlord (**N.J.S.A. 58:12A-32**). The New Jersey Department of Environmental Protection will notify local health authorities of failed well tests. For further information or questions about the Private Well Testing Act, contact the New Jersey Department of Environmental Protection (NJDEP), 401 East State Street, Post Office Box 426, Trenton, New Jersey 08625-0426, (609) 292-5550.

### Remedies if the landlord fails to maintain the property in a habitable condition

### 1. Repair and Deduct

If the landlord does not keep the premises in a habitable condition, a tenant may repair any vital deficiencies and deduct the amount of the repair from the rent. The landlord's failure to maintain the property could also lead to what is called a constructive eviction by the tenant (see below for explanation). The tenant may seek rent abatement (a reduction in rent) or withhold the rent or a portion of the rent if the property is not habitable (**Marini v. Ireland, 56 N.J. 130 (1970); Dowler v. Boczkowski, 148 N.J. 512 (1997)**)

29

DocuSign Envelope ID: EB729DFB-91FA-4316-8258-C4A37E527A18

Before applying the remedies of repair and deduct, constructive eviction, rent abatement, or withholding the rent or a portion of the rent, the following must apply:

1. The defect must be of a "vital facility." Vital facilities are those items necessary to make the rental unit habitable. Example of defects of vital facilities include broken toilets, no hot or cold water, lack of heat or electricity, broken windows, or air conditioning.
2. The tenant must not have caused the condition.
3. The tenant must have notified the landlord that the deficient condition existed and allowed the landlord adequate time to fix the defect. ***Notice to the landlord should be given by the tenant in writing and by certified mail, return receipt requested.***

A maintenance problem that does not threaten residents' safety, or does not affect habitability, does not provide a basis for rent withholding or repair and deduct. Rent withholding was authorized when the New Jersey Supreme Court held that the obligation of a tenant to pay rent and the obligation, (whether written or not) on the part of a landlord to maintain the property in a livable condition are mutually dependent (**Berzito v. Gambino Rental Abatement, 114 N.J. Super. 124 (1971), 63 N.J. 460 (1973); Housing Authority of City of Newark v. Scott, 137 N.J. Super. 110 (App. Div. 1975)**)).

The New Jersey Supreme Court has permitted the self-help remedy of "repair and deduct." A landlord promises at the beginning of a lease that the vital facilities needed to make the dwelling unit livable are in good condition and the property will be maintained. When there are defects in the vital facilities, a tenant must first notify the landlord of the situation and allow a reasonable amount of time for the landlord to make repairs or replacements. If a landlord fails to take action, a tenant may have the repairs made and deduct the cost from future rent. However, a landlord may still take a tenant to court for nonpayment of rent. As a defense, the tenant would have to prove the presence of defects, the failure of the owner to act despite having received reasonable notice, and the need to make repairs. In the event the matter goes to court, the tenant will very likely be required to deposit the full amount of the rent with the court. If there is a finding in favor of the landlord, in most cases, the unpaid rent must be paid by the end of the court day to avoid eviction.

If there are defects in the vital facilities and the landlord has not repaired them after receiving proper and timely notice from the tenant, the tenant may either seek a decrease in rent by court action or simply withhold rent. A landlord may bring an eviction action for nonpayment of rent. As a defense, the tenant must prove the necessity to make repairs and the failure of the landlord to act despite having received reasonable notice. To avoid possible eviction in the event the court finds in favor of the landlord, the tenant should save the amount of money withheld so that he will be able to pay it if ordered by the judge. It is advisable to set up a separate bank account for this purpose.

As to air conditioning, the Superior Court, Appellate Division has held that air conditioning that is part of the original tenancy may be considered a "vital facility," and air conditioning failure affects the habitability of the premises.

**2. Constructive eviction** – Constructive eviction occurs when a tenant breaks the lease without penalties because the landlord is guilty of neglect or default, which makes the premises unsafe,

30

unfit, or unsuitable for occupancy. **Reste Realty v. Cooper, 53 N.J. 444 (1969)**, established the foundation for constructive eviction. If a tenant invokes the remedy of constructive eviction, and the landlord is found to be negligent in maintaining the rental unit, the tenant is entitled to the return of the security deposit and is not responsible for the rent for the balance of the lease or the cost of re-renting the property.

3.  **Rent abatement (reduction)** – Upon entering into a lease, the tenant's promise to pay rent and the landlord's warranty of habitability are interdependent. In **Berzito v. Gambino, 63 N.J. 460 (1973)**, the court held that a tenant claiming that the landlord did not maintain the property in a habitable condition may initiate an action to recover all or part of the deposit paid when the lease was finalized or all of the rent paid. If the court finds that the landlord did not maintain the property in a habitable condition, the tenant will be charged only with the reasonable rental value of the property in its imperfect condition during the tenancy.

4. **Withholding the rent or a portion of the rent** – If the landlord breaches his obligation of maintaining the property at an adequate standard of habitability, a tenant may withhold the rent or a portion of the rent to be used as a set-off, because of the deficient condition. If the landlord institutes an eviction proceeding for non-payment of rent, the tenant is entitled to use the landlord's breach of obligation to provide a habitable residence as a defense and justification for the set-off (deduction of rental payment) (**Marini v. Ireland, 56 N.J. 130 (1970)**)

5.  **Rent Receivership** – The law promoting safe and sanitary housing for tenants of substandard dwellings (**N.J.S.A. 2A:42-85 et seq.**) was enacted after the **Berzito** decision. The law authorizes tenants in substandard dwelling units to deposit their rents with a court-appointed administrator for use in remedying defective conditions. If there is a difference in the market value of the premises in its defective condition and the amount of rent that the tenant paid to the court administrator, the tenant may be entitled to a rent abatement and may only be charged the reasonable rental value of the property in its imperfect condition. To use this remedy, a tenant or housing inspector may file a complaint in the court of the municipality in which the property is located.

*Note: Not every defect or inconvenience is considered a breach of the warranty of habitability. Each case must be judged on its own facts. To avoid eviction, any rent withheld by the tenant should be saved and accessible in case the court requires the tenant to pay the outstanding rent.*

In emergency situations created by the landlord or resulting from his negligence, the landlord may be responsible to bear a tenant's expenses in obtaining alternative housing during the emergency. Expenses may be deducted from the rent. However, the expenses must be reasonable.

## Flood Plain Notification Requirement

If the rental property has been determined to be located in a flood zone or area, the landlord must notify each new tenant prior to occupancy that the rental property is located in a flood zone

31

or area. This notice is not required to be given in one- and two-unit residential buildings, or in an owner-occupied three-family dwelling, or in hotels, motels, or other guest housing serving transient or seasonal guests (**N.J.S.A. 46:8-50**).

## Crime Insurance Information

Crime insurance is available through the New Jersey Insurance Underwriters Association, Crime Insurance Indemnity Plan. To apply for crime insurance, contact the New Jersey Insurance Underwriters Association, Crime Insurance for Habitable Property, 570 Broad Street, Post Office Box 32609, Newark, New Jersey, 07102, (973) 622-3838 directly for an application. This insurance is applicable to coverage from losses from theft and/or burglaries. A tenant may also purchase renter's insurance from a private insurance company to cover damages to his or her personal property. Please visit www.njiua.org for additional information on insurance coverage.

## Eviction

The Anti-Eviction Act, **N.J.S.A. 2A:18-61.1 to 61.12**, was created to protect blameless tenants from eviction and was adopted in recognition of the housing shortage in the State. A landlord may recover possession of a dwelling unit used as a residence only by consent of the tenants or through the legal process of eviction. In an eviction action, when a landlord obtains a judgment of possession of the unit from a court, the landlord is entitled to a warrant for removal. This warrant will direct an officer of the court to remove all persons from the dwelling unit and give the landlord full possession. The warrant may also direct the officer of the court to remove the tenants' belongings. It is the landlord's responsibility to obtain the warrant for removal and have it enforced (**N.J.S.A. 2A:18-61.1**).

An eviction is an actual removal of a tenant from the premises. A landlord must have good cause to evict a tenant (**N.J.S.A. 2A:18-53**). There are several grounds for a good cause eviction. Each cause, except for nonpayment of rent, must be described in detail by the landlord in a written notice to the tenant. A "Notice to Quit" is required for all good cause evictions, except for an eviction for nonpayment of rent (**N.J.S.A. 2A:18-61.2**). A "Notice to Quit" is a notice given by the landlord terminating the tenancy and ordering the tenant to vacate the premises. However, a Judgment for Possession must be entered by the Court before the tenant is required to move. In some cases, a "Notice to Cease" may also be required. A "Notice to Cease" serves as a warning notice; this notice tells the tenant to stop the wrongful conduct. If the tenant does not comply with the "Notice to Cease," a "Notice to Quit" may be served on the tenant. There is no statutory time period for a "Notice to Cease," however, the period of time for a resident to comply with the notice must be reasonable under the circumstances (**Brunswick Street Assocs. v. Gerard, 357 N.J. Super. 598 (2002)**).

After serving a "Notice to Quit," on the tenant, the landlord may file suit for an eviction. If a suit for eviction is filed and the landlord wins his case, he may be granted a Judgment for Possession. A Judgment for Possession terminates the tenancy and allows the landlord to have the tenant evicted from the rental premises. No residential landlord may evict or fail to renew a lease, whether it is a written or an oral lease without good cause. The landlord must be able to prove in court that he has grounds for an eviction.

32

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

**Applicability**

The Anti-Eviction Act applies to most residential rental properties including single-family homes, mobile homes and land in a mobile home park, apartment buildings, and complexes. This law also applies to rooming and boarding homes (**N.J.S.A. 2A:18-53 to -84**).

**Exceptions**

This law may not apply to two- or three-unit owner-occupied premises with two (2) or fewer rental units. It does not apply to hotel guests, motel guests, or guest houses rented to a transient guest or seasonal tenant. However, hotel and motel guests are covered under this law if, the occupant has no alternate residence and resides at the hotel or motel on a continual basis. Additionally, this law does not apply to a unit held in trust on behalf of a member of the immediate family, if that family member is developmentally disabled, and permanently occupies the dwelling unit.

**Filing a Complaint for Eviction**

An Eviction Action Complaint must be filed with the Office of the Clerk of the Special Civil Part in the county where the rental premises are located. A Landlord-Tenant complaint form (to be used by the landlord) is available from the Clerk of the Special Civil Part in the county where the rental premises are located.

Both the landlord and the tenant must appear at the court hearing. If the landlord or his attorney fails to appear, the complaint may be dismissed. If the tenant does not appear, a default judgment may be entered against the tenant allowing the landlord to evict the tenant from the premises.

**Judgment for Possession**

If the landlord is granted a judgment for possession, the landlord may apply to the Clerk of the Special Civil Part for a warrant for possession, which allows the landlord to force the tenant to move out of the premises. The warrant for possession may not be issued until three (3) business days after the judgment for possession is granted. The tenant has three (3) business days to move all persons and belongings from the premises. If the tenant does not move after three (3) business days from the time the warrant for possession was served on the tenant, the landlord may arrange for the Court Officer to have the tenant evicted or locked out (**N.J.S.A. 2A:18-57**).

Following the eviction, the landlord must allow the tenant to remove their personal belongings from the premises. A landlord cannot keep the tenant's belongings but can arrange for their storage. A landlord must apply for a warrant for possession within 30 days from the date of the judgment for possession unless the judgment is vacated through a court order or other written agreement signed by the landlord and tenant.

A tenant may ask the court for permission to stay in the premises due to special circumstances that moving may cause. This action is a stay of eviction. If permission is granted, the tenant may not stay in the premises for more than one year, unless there is an agreed upon extension between landlord and tenant. All rent due ordinarily must be paid for permission to be granted by the court (**N.J.S.A. 2A:18-59.1**).

33

**"Self-help" Evictions**

Self-help evictions occur when the landlord or someone acting on the landlord's behalf enters into the dwelling unit without the permission of the tenant and without a judgment from the Court and forces the tenant to move. A lockout occurs when the landlord padlocks the door or changes the locks while the tenant are not home and then refuses to allow the tenant back into the premises. A lockout also occurs when the landlord shuts off the utilities in attempt to force the tenant to move. Self-help evictions, or lockouts, made by the landlord are illegal in New Jersey.

If a landlord attempts a self-help eviction or lockout, the tenant should call the police. If the landlord refuses to allow the tenant back into the premises after the police have warned the landlord about the illegal procedures, the landlord may be charged with disorderly conduct.

"Self-help" eviction is entry into a dwelling unit and removal of tenants without their consent or without a judgment from a court, are not permitted in New Jersey under any circumstances**.** A landlord or any other person who enters an apartment or property without a court order authorizing such entry and/or holds a tenant's belongings unlawfully by force or threat of monies owed may be liable for damages to the tenant (**N.J.S.A. 2A:39-1**).

A landlord or their agent may not padlock, disconnect utilities or otherwise block entry to a rental premise while the tenant still lives there. Also, the removal of a tenant's belongings from a premise by a landlord after the eviction may be done only in accordance with the Abandoned Property Law, N.J.S.A. 2A:18-72 to 84, Only an officer of the court can legally physically evict a tenant, after a judge has issued a Warrant for Removal.

A person who is illegally evicted may file a complaint with the Clerk of the Landlord-Tenant Section, Special Civil Part of the Law Division, or the Chancery Division, of the Superior Court, in the county in which the act was committed. In a successful action by a tenant evicted through forcible entry and detainer, the court may award possession of the dwelling unit and all damages, including court costs and reasonable attorney fees. If the dwelling unit cannot be returned to the tenant as a result of the self-help eviction, the court may award damages.

**Causes for Eviction**

Listed below are the statutory grounds for eviction as set forth in the Anti-Eviction Statute.

A. **Failure to Pay Rent**

If a tenant fails to pay rent, the landlord may immediately take legal action to have the tenant evicted. The landlord is not required to give the tenant notice before filing an eviction suit, except if the tenant resides in federally subsidized housing. If the tenant resides in federally subsidized housing a 14-day notice must be given before filing a suite for eviction (**N.J.S.A. 2A:18-61.1(a)**). *Note: A tenant may **not** be evicted for nonpayment of rent, if the tenant used the unpaid portion of rent to continue utility services to the rental premises after receiving notice that the services were in danger of being discontinued, and if the landlord was responsible for the payment of those utility services and did not make the payments required to retain the use of those services. These utilities include electric, gas, water, and sewer. The money used to pay for the continuance of those services shall be considered a portion of the rental payment.*

34

**B. Disorderly Conduct**

If after given written Notice to Cease disorderly conduct, the tenant continues the disorderly conduct and that conduct destroys the peace and quiet of the other tenants living in the building or neighborhood, the landlord may file a suite for eviction. ***A Notice to Quit must be served on the tenant at least three days prior to filing a suit for eviction*** (**N.J.S.A. 2A:18-61.1(b)**)**.**

**C. Damage or Destruction to the Property**

The tenant may be evicted if they have intentionally or by reason of gross negligence caused or allowed destruction, damage, or injury to the property. ***A Notice to Quit must be served on the tenant at least three days prior to filing a suit for eviction*** (**N.J.S.A.:2A-18-61.1(c)**).

**D. Substantial Violation or Breach of the Landlord's Rules and Regulations**

If after given a written Notice to Cease violating or breaching reasonable rules and regulations contained in the lease or accepted in writing by the tenant, the tenant continues to substantially violate or breach the rules and regulations, the landlord may file a suit for eviction. ***A Notice to Quit must be served on the tenant at least one month prior to filing the suit for eviction. In addition, any notices must be given on or before the start of a new month*** (**N.J.S.A. 2A:18-61.1(d)**)**.**

**E. Violation or Breach of Covenants or Agreements Contained in the Lease**

**1)** If the tenant continues to substantially violate or breach the reasonable covenants or agreements contained in the lease, after given written Notice to Cease violating or breaching those covenants or agreements and if the landlord has reserved a right of re-entry in the lease, the landlord may file a suit for eviction. ***A Notice to Quit must be served on the tenant at least one month prior to filing the suit for this type of eviction.***

**2)** In public housing, if the tenant has substantially violated or breached any of the covenants or agreements contained in the lease, pertaining to illegal uses of controlled dangerous substances, or other illegal activities, the landlord may file a suit for eviction. The covenant or agreement must conform to federal guidelines and must have been in effect at the beginning of the lease term. The landlord does not have to give Notice to Cease the illegal activity before filing a Notice to Quit. ***A Notice to Quit must be served on the tenant in accordance with federal regulations pertaining to public housing*** (**N.J.S.A. 2A:18-61.1(e)**)**.**

*Note: A public housing authority may evict a tenant when a member of the tenant's household or guest engages in drug-related activity, even if the tenant did not know of the drug related activity. Dept. of Housing and Urban Development v. Rucker, 122 S.Ct. 1230 (2002).*

**F. Failure to Pay Rent Increase**

If a tenant fails to pay rent after being given notice of a rent increase and a Notice to Quit, the landlord may file a suit for eviction. The rent increase must not be unconscionable and must comply with all other laws or municipal ordinances, including rent control. ***A Notice***

35

*to Quit must be served on the tenant at least one month prior to filing the suit for eviction* (**N.J.S.A. 2A:18-61.1(f)***).*

*Note: If the tenant believes the rent increase is unconscionable, they may withhold a portion of the rent. They may withhold the difference between the old rent rate and the new increased rate. However, the landlord may file suit for eviction and the court would determine if the rent increase is unconscionable.*

G. **Health and Safety Violation or Removal from the Rental Market**
A tenant may be evicted if the following conditions apply:

**1)** The landlord has been cited by an inspector and needs to board up or demolish the property because of substantial health and safety violations and because it is financially difficult to abate the violations.

**2)** The landlord needs to abate health and safety violations and it is not possible to do so, while the tenant resides at the property. In addition, upon request, the landlord must provide the Department of Community Affairs with information as required under the law, so that the Department may prepare a report informing all parties and the court of the feasibility of the landlord to abate the violations without removing the tenants from the property.

**3)** The landlord needs to correct an illegal occupancy and it is not possible to correct this violation without removing the tenant.

**4)** A governmental agency wants to permanently take the property off the rental market, so that it can redevelop or clear land in a blighted area (**N.J.S.A. 2A:18-61.1(g)**).

*A Notice to Quit must be served on the tenant at least three months before filing a suit for eviction. The tenant can't be evicted until relocation assistance is provided.*

*Note: Tenants evicted under this cause may be eligible for financial and other assistance for relocation. If eligible, this assistance must be provided before the tenant can be evicted. Information on relocation assistance can be obtained from the Relocation Assistance Program of the Division of Codes and Standards, P.O. Box 802, Trenton, New Jersey 08625, (609) 984-7609.*

*Any tenant evicted under G 3) (illegal occupancy) is entitled to relocation assistance in an amount equal to six times the tenant's monthly rent. The landlord is responsible for paying the tenant's relocation expenses. Any tenant who does not receive the required payment from the landlord at least five days prior to their removal from the premises, may receive payment from a revolving relocation assistance fund established by the municipality. The landlord will be required to repay the money to the municipality* (**N.J.S.A. 2A:18-61.1(g) or 2A:18-61.1(h); Kona Miah v. Ahmed, 179. N.J. 511 (2004)**).

*However, if the municipality has not established a relocation assistance fund, and the landlord does not pay the relocation funds within the required time, interest will accrue on the unpaid balance at the rate of 18% per year until the amount due, including interest is paid in full to the tenant. The amount due to the tenant is a lien on the property.*

36

*The tenant may file a lien statement with the county clerk or registrar in order to enforce the lien* (**N.J.A.C. 5:11-8.5(c)**).

**H.** **The Landlord Wants to Permanently Retire the Property from Residential Use**
If the landlord wants to permanently retire a building or mobile home park from residential use, provided the circumstances covered under section (G) above do not apply, the landlord may file suit for eviction. *A Notice to Quit must be served on the tenant at least 18 months prior to filing the suit for eviction. No legal action may be taken until the lease expires* (**N.J.S.A. 2A:18-61.1(h)**).

**I.** **Refusal to Accept Reasonable Changes in the Terms and Conditions of the Lease**
When the lease expires, the landlord may propose reasonable but substantial changes to the terms and conditions of the lease. If after written notice the tenant refuses to accept those changes the landlord may file a suit for eviction and the court will determine if the proposed changes are reasonable. In cases where a tenant has received a notice of termination on any of the grounds listed in section (K) below, has a protected tenancy status pursuant to the "Senior Citizens and Disabled Protected Tenancy Act," or pursuant to the "Tenant Protection Act of 1992," the landlord or owner shall have the burden of proof that any changes in the terms and conditions of the lease, rental, or regulations are reasonable and does not substantially reduce the rights and privileges that the tenant was entitled to prior to the conversion. *A Notice to Quit must be served on the tenant at least one month before filing suit for eviction* (**N.J.S.A. 2A:18-61.1(i)**).

*Note: The Senior Citizens and Disabled Protected Tenancy Act protects qualifying tenants from changes in the terms of the tenancy or rent increases, which rests solely on the landlord's decision to convert the rental premises.*

**J.** **Tenant Continuously Fails to Pay Rent or Habitually Pays Late**
If the tenant continuously fails to pay rent or habitually pays late, after written Notice to Cease, the landlord may file a suit for eviction. *A Notice to Quit must be served on the tenant at least one month before filing a suit for eviction* (**N.J.S.A. 2A:18-61.1(j)**).

*Note: The Courts have ruled that habitual late payments means more than one (1) late payment following the Notice to Cease. Also, the N.J. Supreme Court ruled that a landlord, after giving a tenant a notice to cease late payments, must continue to give the tenant reasonable and sufficient notice when accepting further late payments, that continued late payments from the tenant would result in an eviction action. If the landlord does not give this continued notice, the original Notice to Cease given to the tenant may be considered to be waived by the Court.*

**K.** **Conversion to Condominium, Cooperative, or Fee Simple Ownership**
If the landlord or owner of a building or mobile home park is converting the property from the rental market to a condominium, cooperative, or fee simple ownership of two or more dwelling units or park sites, except as hereinafter provided in subsection (L) below, the landlord may file a suit for eviction. The landlord must comply with the regulations governing conversion to condominiums and cooperatives, before a warrant for possession shall be issued. Up to five, one-year stays of eviction shall be granted by the court if the

37

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

tenant has *not* been offered a reasonable opportunity to examine and rent comparable housing. However, not more than a one-year stay shall be granted if the landlord allows the tenant five months' free rent as compensation for hardship in relocation. No action for possession shall be brought against a senior citizen tenant or disabled tenant with protected tenancy status pursuant to the "Senior Citizens and Disabled Protected Tenancy Act of 1992," as long as the agency has not terminated the protected tenancy status or the protected tenancy period has not expired. *A Notice to Quit must be served on the tenant at least three years before filing a suit for eviction. No legal action may be taken until the lease expires* (**N.J.S.A. 2A:18-61.1(k)**).

L. **Tenancy After Conversion to Condominium, Cooperative, or Fee Simple Ownership**
**1)** The landlord may file for eviction, if the owner of a building or mobile home park, which is constructed as or being converted to a condominium, cooperative or fee simple ownership, seeks to evict a tenant or sublessee whose initial tenancy began after the master deed, or agreement establishing the cooperative or subdivision plat was recorded, because the owner has contracted to sell the unit to a buyer who seeks to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing. However, no action shall be brought against a tenant under paragraph one (1) of this subsection unless the tenant was given a statement, informing the tenant that the property is being converted. *A Notice to Quit must be served on the tenant at least two months prior to filing suit for eviction. No legal action may be taken until the lease expires.*

**2)** The landlord may file for eviction, if the owner of three or less condominium or cooperative units seeks to evict a tenant whose initial tenancy began, by rental, after the master deed or agreement establishing the cooperative was recorded, because the owner seeks to personally occupy the unit, or has contracted to sell the unit to a buyer who seeks to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing. *A Notice to Quit must be served on the tenant at least two months prior to filing suit for eviction. No legal action may be taken until the lease expires.*

**3)** The landlord may file for eviction, if the owner of a building with three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing. *A Notice to Quit must be served on the tenant at least two months prior to filing suit for eviction. No legal action may be taken until the lease expires* (**N.J.S.A. 2A:18-61.1(l)**).

M. **Tenancy Based on Employment**
If a tenant resides in the property on the condition that, he is employed by the landlord as a superintendent, janitor, or in some other job and that employment is terminated the landlord may file a suit for eviction. *A Notice to Quit must be served on the tenant three days prior to filing a suit for eviction* (**N.J.S.A. 2A:18-61.1(m)**).

N. **Conviction of a Drug Offense Committed on the Property**
The landlord may file a suit for eviction, if the tenant, including juveniles who have been found by the Court to be delinquent, has been convicted of or pleaded guilty to drug offenses that took place on the property, and has not in connection with his sentence either

38

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

(1) successfully completed or (2) been admitted to and continues during probation participation toward completion of a drug rehabilitation program. Also, if the tenant lets a person who has been convicted of or pleaded guilty to drug offenses, occupy the premises for residential purposes whether it is continuously or occasionally, the landlord may file for eviction. This does not apply to a tenant allowing a juvenile to reside at the property where the juvenile has been found to be delinquent due to use or possession of drugs. *No eviction suit may be brought more than two years after: the juvenile was found to be delinquent; conviction of the person; of after the person's release from incarceration, whichever is later. A Notice to Quit must be served on the tenant at least three days prior to filing suit for eviction* (**N.J.S.A. 2A:18-61.1(n)**).

O. **Conviction of Assaulting or Threatening the Landlord, The Landlord's Family, or Employees**
The landlord may file for eviction, if the tenant has been convicted of or pleaded guilty to, or if a juvenile has been found by the court to be delinquent due to an offense involving assault or terrorist threats against the landlord, a member of the landlord's family or an employee of the landlord. Also, if the tenant permits a person he knows has been convicted of or has pleaded guilty to these offenses to reside at the premises continuously or occasionally, the landlord may file a suit for eviction. *No eviction suit may be brought more than two years after: the juvenile was found to be delinquent; conviction of the person; or after the person's release from incarceration, whichever is later. A Notice to Quit must be served on the tenant at least three days prior to filing a suit for* (**N.J.S.A. 2A-18-61.1(o)**).

P. **Civil Court Action that Holds Tenant Liable for Involvement in Criminal Activities**
The landlord may file for eviction, if the tenant is found by a civil court proceeding (not criminal) to be liable for involvement in theft of property located on the premises, involvement in assaults or terrorist threats against the landlord, a member of the landlord's family or an employee of the landlord, or involved in illegal drug activities that takes place on the premises and that tenant has not in connection with his sentence for the drug offense either (1) successfully completed or (2) been admitted to and continues during probation participation towards completion of a drug rehabilitation program. Also, if the tenant permits a person he knows has been convicted of or has pleaded guilty to these actions, to reside at the premises continuously or occasionally, the landlord may file for eviction. This does not apply to a tenant allowing a juvenile to reside at the property where the juvenile has been found to be delinquent due to the use or possession of drugs. *No eviction suit may be brought more than two years after: the juvenile was found to be delinquent; conviction of the person; or after the person's release from incarceration, whichever is later. A Notice to Quit must be served on the tenant at least three days prior to filing suit for eviction* (**N.J.S.A. 2A:18-61.1(p)**).

Q. **Conviction for Theft of Property**
The landlord may file for eviction, if the tenant has been convicted of or pleaded guilty to, or if a juvenile has been found to be delinquent by the Court due to an offense involving theft of property from the landlord or from tenants residing in the same building or complex. Also, if the tenant permits a person he knows has been convicted of or has pleaded

39

guilty to these actions to reside at the premises continuously or occasionally, the landlord may file for eviction. ***A Notice to Quit must be served on the tenant at least three days prior to filing suit for eviction*** (**N.J.S.A. 2A:18-61.1(q)**).

### R.  Conviction for Human Trafficking

The landlord may file for eviction, if the tenant in a civil action is found to have committed a violation of the human trafficking provisions set forth in section 1 of P.L. 2005, c.77 (**2C:13-8**) within or upon the leased premises, building, or complex of the building and land appurtenant thereto, or the mobile home park, in which those premises are located, or, being the tenant or lessee of such leased premises, knowingly harbors or harbored a person engaged in human trafficking, or permits or permitted such a person to occupy those premises for residential purposes, whether continuously or intermittently. No action for removal pursuant to this subsection may be brought more than two years after the alleged violation has terminated (**N.J.S.A. 2A:18-61.1(r)**).

### Evictions for Owner-Occupied Two-and Three-Family Dwellings

Tenants of landlord-occupied two- and three-family dwellings can be removed only when a court issues an order for eviction. However, in these cases, the landlord must prove that the tenant (a) is staying after the expiration of the term of the lease, (b) is staying after a failure to pay rent, (c) is disorderly so as to destroy the peace and quiet of other tenants, (d) willfully destroys or damages the premises, (e) constantly violates the written rules and regulations or (f) violates any lease provision where the lease reserves a right of re-entry for such violations. A three (3) month notice to quit must be given if an at will tenancy or year-to-year tenancy exists. A one (1) month notice to quit is required for a month-to-month tenancy and other types of tenancies are entitled to a one (1) month notice to quit**.** No further notice is required before bringing action in court to evict in the case of a tenant staying after a failure to pay rent. A three-day written Notice to Quit is required for any of the causes described as disorderly, destructive or violative of written rules or lease provisions (**N.J.S.A. 2A:18-61.2(a)**)**.** In addition to the causes listed above, a tenant residing in an owner- occupied two- or three-family dwelling may be evicted if the landlord can show that the tenant is staying after the expiration of the lease and the landlord has given the tenant a written notice for delivery of possession of the property. Under this cause of not renewing the lease, a three-month notice to quit must be given if an at will tenancy or year-to year tenancy exists. A one-month notice to quit is required for a month-to-month tenancy.

### Rooming and Boarding House Evictions

The Regulations Governing Rooming and Boarding Houses, which are enforced by the Bureau of Rooming and Boarding House Standards of the Department of Community Affairs, require owners of rooming and boarding houses to follow the good causes and notice requirements of the Eviction Law when evicting residents, except if otherwise ordered by the Bureau (**N.J.A.C. 5:27-3.3(c)**). There is a further requirement that the owner give at least three (3) working days' notice to the County Welfare Board before starting the eviction action for any resident (**N.J.A.C. 5:26-3.4(c)**).

Any building having at least two (2) living units occupied by persons unrelated to each other without private kitchens and bathrooms is a rooming or boarding house if it does not meet one (1) of the exceptions in the Rooming and Boarding House Act (**N.J.S.A. 55:13B-3**). These

40

exceptions include hotels with more than 85 percent temporary occupancy by people with homes elsewhere, school and college dormitories, buildings housing only college students and certain residences for the disabled. For additional information concerning rooming and boarding houses, contact the Bureau of Rooming and Boarding House Standards, Post Office Box 804, Trenton, NJ 08625-0804, (609) 633-6251 or (609) 984-1704.

### Public Housing Evictions

Public housing authorities must follow State laws regarding evictions as well as the regulations of the U.S. Department of Housing and Urban Development (HUD) (**N.J.S.A. 2A:18-61.1; 24 C.F.R. 966 et seq.**). In the case of an eviction, a public housing tenant may request a hearing from the housing authority after receiving a notice of termination of tenancy. A housing authority may not begin an eviction action in court until the decision of the hearing officer or the hearing panel has been mailed or delivered to the tenant and a notice to vacate has been served**.**

### Penalties for Eviction Law Violations

When a tenant vacates a dwelling unit after having been given notice that the landlord wishes to personally occupy the unit the landlord must occupy the unit for at least six (6) months. If instead the landlord permits personal occupancy of the unit by another tenant or registration of conversion of the property to a condominium or cooperative, the landlord is liable to the former tenant for three (3) times the damages suffered plus attorney fees and costs (**N.J.S.A. 2A:18-61.6(a)**).

When a tenant vacates a dwelling unit after having been given notice that the landlord seeks to permanently board up or demolish the building or to permanently retire it from residential use, the landlord must not use this property for residential use for a period of five (5) years. If the landlord allows any residential use of the unit during the five (5) year period from the date the unit became vacant, the landlord, or the former landlord, may be liable to the tenant for three (3) times the damages plus attorney fees and costs. Additionally, the landlord or former landlord may be liable for a civil penalty up to $10,000.00 for each violation of this law and the property may not be registered as a planned real estate development during the five-year period following the date on which any dwelling unit in the property became vacant as a result of an eviction notice stating that the property was being permanently removed from residential use (**N.J.S.A. 2A:18-61.6(c)**).

### Reprisal - Civil Rights of Tenants

A landlord cannot take reprisal action against a tenant by eviction, substantial alteration of a lease or its terms, or refusal to renew a lease when a tenant exercises certain civil rights (**N.J.S.A. 2A:42-10.10**).  The law against reprisal applies to all rental properties used for dwelling purposes, including mobile homes, except owner-occupied two- or three-family dwellings. These civil rights are:

1. A tenant attempts to enforce any rights under the lease or State or local laws.

2. A tenant has made a good faith complaint to a governmental authority about a landlord's violation of any health or safety law, regulation, code, or ordinance. A tenant must have first notified the landlord in writing and given the landlord a reasonable time to correct the violation before making the complaint.

41

3. A tenant has been an organizer, or member, of any lawful organization, including a tenant organization.

4. A tenant refuses to comply with changes in the lease or agreement, if the change(s), have been made by the owner because the tenant took any of the above actions. If a landlord does take reprisal action, the tenant may sue the landlord for damages in a civil action.

## Procedures for Recovery of Premises

A landlord may recover possession of a dwelling unit through a summary dispossess action in the Landlord-Tenant Section, Special Civil Part of the Superior Court Law Division in the county where the building is located. Monetary damages must be recovered in a separate civil action in Superior Court. Actions for rent recovery in the Special Civil Part cannot exceed $15,000.00.

When a landlord obtains a judgment for possession from the Special Civil Part, the warrant of removal cannot be issued until three (3) days after the judgment and only between the hours of 8:00 a.m. and 6:00 p.m. The warrant of removal cannot be executed until a minimum of three (3) days and two (2) days for seasonal tenants in buildings with five (5) or fewer units, have elapsed since it was issued. The Fair Eviction Notice Act requires any warrant for removal to include a notice that the tenant has a right to request more time (called a "stay of execution"). The court will continue the case for up to 10 days after the execution of the warrant for the purpose of hearing applications by the tenant for lawful relief.

## Foreclosure

Recent changes to federal law have strengthened a tenant's rights in foreclosure proceedings. However, the federal law does not preempt any State or local law that provides longer time periods or other additional protections for tenants in foreclosure proceedings. Foreclosure alone is not grounds for eviction in New Jersey. In **Chase Manhattan Bank v. Josephson, 135 N.J. 209 (1994)** the court held that when a lender or other buyer takes possession of the property, the residential tenant comes with the property. Before a tenant can be evicted due to foreclosure, the landlord must provide the tenant with a 90-day notice to quit when the foreclosed property has been purchased by a buyer who wants to personally occupy it as his or her primary residence. However, if a tenant has a lease agreement that goes beyond the 90 days the landlord may not take action to evict the tenant until after the lease expires and the 90-day notice to quit has been given. The 90-day notice may be given 90 days before the lease expires. Month-to-month tenants and two- and three-family owner-occupied units are not exempt from the 90-day notice requirements.

Any person acquiring a foreclosed property containing one or more residential rental units must provide notices to the tenants in English and Spanish, within 10 business days after the sale, letting tenants know that ownership has changed hands and that the tenants are not required to move because of the foreclosure. In buildings with 10 or fewer dwelling units, the new owner must make a good faith effort to obtain the names of all the tenants occupying the property. Notices must be addressed to tenants by name, unless the new owner is unable to identify the tenant by name, then the owner shall address the notice to "Tenant." The notice must also be placed on the front door of each tenant's unit and sent to each tenant via certified and regular mail (**N.J.S.A. 2A:50-69 et seq.**).

42

In a residential property containing more than 10 dwelling units, the new owner must provide notice to tenants occupying the property by conspicuously displaying a copy of the "NOTICE TO TENANTS" in a prominent location, such as a common area of the building or other structure on the property. If there is no common area, the notice must be posted in a conspicuous location in each building, such as the walls of the front vestibule or any foyer or hallway near the main entrance of the building (**N.J.S.A. 2A:50-70(c)2**).

### Notice Requirements to Tenants Prior to the Transfer of Title Due to a Foreclosure Action

Any written or verbal communication, including a summons and complaint, an initial written or verbal communication by a foreclosing creditor, or any communication written or verbal that requests a tenant to vacate the property before the foreclosure or sale of the property, requires the foreclosing creditor to give notice to the tenants as outlined in the New Jersey Court Rules, entitled "Notice to Residential Tenants of Rights During Foreclosure," (**APPENDIX XII-K**).

### Notice Requirements to Tenants After the Transfer of Title Due to a Foreclosure Action

When making a bona fide monetary offer to induce tenants to move, the new owner must provide a separate and different notice from the notice required to be given by a foreclosing creditor. The new owner must provide a copy of the "NOTICE TO TENANTS" and give it with the initial and final written or verbal offer to the tenant.

The foreclosing agency, including a bank, creditor, or a new landlord may make a written bona fide (good faith) monetary offer requesting that the tenant vacate the property, without "good cause." An acceptance of the offer by the tenant must be in writing and include an acknowledgement of the date of the receipt of the offer, and an understanding that the tenant had a five-day review period to accept or reject the offer presented.

However, it is important to note that the acceptance of a bona fide monetary offer is voluntary. The tenant shall not be pressured by anyone, including the person making the offer to accept any offer to vacate the property. Pursuant to the New Jersey Foreclosure Fairness Act (**N.J.S.A. 2A:50-69 et seq.**), pressure tactics include but are not limited to (**N.J.S.A. 2A:50-71(b)**):

**1.** Mischaracterizing or misrepresenting the rights of the tenant under the law;

**2.** Implying the tenant is obligated to accept the offer;

**3.** Implying that there will be consequences against the tenant for failing to accept the offer;

**4.** Harassment, including but not limited to discontinuance of utilities, failure to maintain common areas or facilities, or any other failure to maintain the premises in a habitable condition; and

**5.** An increase in rent in excess of any rent control or rent leveling ordinance, or if the property is not subject to rent control, an unreasonable or unconscionable rent increase.

43

## Senior Citizens and Disabled Tenants in Condominium or Cooperative Conversion

### Senior Citizens and Disabled Protected Tenancy

The Senior Citizens and Disabled Protected Tenancy Act protects senior citizens who meet certain eligibility requirements (**N.J.S.A. 2A:18-61.22 to -61.39; N.J.A.C. 5:24-2.1 to -2.11**). To qualify, tenants must : (1) be at least 62 years of age before the date of the conversion recording of the condominium or cooperative; or (2) be permanently disabled; or (3) be honorably discharged from any military service under certain circumstances from any branch of the U.S. Armed Forces and disabled at 60% or higher resulting from said service and, (4) live in a building being converted to a condominium, cooperative; or fee simple ownership of units at least one (1) year prior to the conversion recording date. Tenants may be protected from eviction for 40 years if their family income is not more than three (3) times the average per person income in their county or $50,000.00, whichever is greater (**N.J.S.A. 2A:18-61.28**). The date the conversion is recorded is the date on which a master deed or deed to a cooperative corporation, or a subdivision deed or map legally establishing separate lots, is filed. The landlord or converter is required to notify all tenants of their right to file for protected tenancy if they may be eligible. Generally, applications for protected tenancy must be filed with the designated municipal official or the administrative agent within 60 days, although later filings may be accepted if there is good reason for the late filing and the conversion has not yet taken place. Tenants in Hudson County (**N.J.S.A. 2A:18-61.40 to -61.59; N.J.A.C. 5:24-3.1 to -3.4**) may be eligible for additional protected tenancy established under the Tenant Protection Act of 1992. For copies of the law, regulations or forms, landlords or converters, tenants, and local officials may visit our website at:

[www.nj.gov/dca/divisions/codes/offices/landlord_tenant_information.html](http://www.nj.gov/dca/divisions/codes/offices/landlord_tenant_information.html).

For help in filling out the forms, a tenant should contact the appropriate municipal administrative agent who sent the forms to him or her.

### Tenant Protection Act of 1992

The Tenant Protection Law of 1992 amendment extends protections to qualified tenants in qualified counties in buildings converted or being converted who were not eligible for Protected Tenancy as either Senior Citizens or Disabled Persons under the "Senior Citizens and Disabled Protected Tenancy Act of 1981" (**N.J.S.A. 2A:18-61.40 to -61.59; N.J.A.C. 5:24-3.1 to -3.4**). At the present time, the only qualified county is Hudson County (**N.J.A.C. 5:24-3.2(b)**). Tenants in Hudson County with questions or in need of assistance in filling out the required forms should contact the Administrative Agent of their municipality.

### Disclosure Statement to Senior Citizen Housing Residents

Every landlord of a senior citizen housing project and every landlord of a unit within a senior citizen housing project that is a planned unit development, shall, upon signing or renewal of a lease, give a copy of the Truth-In-Renting Statement and the Landlord Identity Statement, as well as a Statement that sets forth the telephone numbers of the State and local offices for the municipality designated to receive reports of housing emergencies and complaints. If the project is organized or operated as a planned real estate development, the governing board or body must provide copies of the Public Offering Statement registered with the New Jersey Department of

44

Community Affairs, along with a copy of the current bylaws. The tenant must sign a receipt for these Statements and documents. The Statements and documents must be posted in one (1) or more locations accessible to the tenants (**N.J.S.A. 2A:42-113**).

45

## New Jersey Judiciary Ombudsman Offices
HTTPS://WWW.NJCOURTS.GOV/PUBLIC/OMBUDS.HTML

The Ombudsman provides assistance to citizens. The services include helping parties who do not have attorneys, by explaining court procedures, programs and service; confidentially receiving and documenting complaints from the public related to misunderstandings, conflicts, mistreatment or discrimination in the courthouse; and acting as a mediator to resolve conflicts between the public and the courts.

The Ombudsman also serves as a point of contact to citizens who may need assistance in coordinating multiple court services during their visit to the courthouse, makes referrals to other agencies of government, takes customer suggestions, and develops court tours and outreach programs.

| VICINAGE | OMBUDSMAN | TELEPHONE NUMBERS |
|---|---|---|
| AOC Probation Services | Maurice Hart | 609-815-3810 ext. 16314 |
| Atlantic/Cape May | Ellen Procida-Fisher | 609-402-0100 ext. 47230 |
| Bergen | Kelly Gibson | 201-221-0700 ext. 25103 |
| Burlington | Heshim J. Thomas | 609-288-9500 ext. 38118 |
| Camden | Vannessa A. Ravenelle | 856-650-9100 ext. 43090 |
| Cumberland/Gloucester/Salem | Vanessa Cardwell | 856-878-5050 ext. 15159 |
| Essex | Sarah Hatcher | 973-776-9300 ext. 56886 |
| Hudson | Pauline D. Daniels | 201-748-4400 ext. 60145 |
| Mercer | Audrey Jones-Butler | 609-571-4200 ext. 74205 |
| Middlesex | Luis Hernandez | 732-645-4300 ext. 88748 |
| Monmouth | Rebekah Heilman | 732-358-8700 ext. 87260 |
| Morris/Sussex | Jennifer V. Shultis | 862-397-5700 ext. 75160 |
| Ocean | James Castaneda | 732-504-0700 ext. 64470 |
| Passaic | June Zieder | 973-653-2910 ext. 24032 |
| Somerset/Hunterdon/Warren | Elizabeth Raimondo | 908-332-7700 ext. 13240 |
| Superior Court Clerk's Office | Sven Pfahlert | 609-815-2900 ext. 52757 |
| Union | David Beverly | 908-787-1650 ext. 21028 |

## Anti-Discrimination Offices
### STATE OF NEW JERSEY
### DEPARTMENT OF LAW AND PUBLIC SAFETY
### DIVISION OF CIVIL RIGHTS
HTTPS://WWW.NJ.GOV/OAG/DCR/LOCALCONTACT.HTML

**CENTRAL REGIONAL OFFICE**
140 EAST FRONT STREET, 6TH FLOOR
PO BOX 090
TRENTON, NJ 08625
TELEPHONE: 609-292-4605

**NORTHERN REGIONAL OFFICE**
31 CLINTON STREET, 3RD FLOOR
NEWARK, NEW JERSEY 07102
TELEPHONE: 973-648-2700

**SOUTHERN REGIONAL OFFICE**
5 EXECUTIVE CAMPUS, SUITE 107
CHERRY HILL, NJ 08034
TELEPHONE: 856-486-4080

**SOUTH SHORE REGIONAL OFFICE**
1325 BOARDWALK, 1ST FLOOR
TENNESSEE AVE & BOARDWALK
ATLANTIC CITY, NJ 08401
TELEPHONE: 609-441-3100

46

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

## New Jersey's Legal Services Programs
### LEGAL SERVICES OF NEW JERSEY
PO BOX 1357

EDISON, NJ 08818-1357

(732) 572-9100

WWW.LSNJ.ORG/DIRECTORY.HTM

**ATLANTIC COUNTY**
SOUTH JERSEY LEGAL SERVICES
1300 ATLANTIC AVENUE, MEZZANINE FLOOR
ATLANTIC CITY, NJ 08401
(609) 348-4200

**BERGEN COUNTY**
NORTHEAST NEW JERSEY LEGAL SERVICES
190 MOORE STREET, 1ST FLOOR
HACKENSACK, NEW JERSEY 07601
(201) 487-2166

**BURLINGTON COUNTY**
SOUTH JERSEY LEGAL SERVICES
107 HIGH STREET
MOUNT HOLLY, NJ 08060
(609) 261-1088

**CAMDEN COUNTY**
SOUTH JERSEY LEGAL SERVICES
745 MARKET STREET
CAMDEN, NJ 08102
1(800) 496-4570
(856) 964-2010

**CAPE MAY COUNTY**
SOUTH JERSEY LEGAL SERVICES
1261 ROUTE 9 SOUTH
CAPE MAY COURT HOUSE, NJ 08210
(609) 465-3001

**CUMBERLAND COUNTY**
SOUTH JERSEY LEGAL SERVICES
415 W. LANDIS AVENUE, 2ND FLOOR
VINELAND, NJ 08360
(856) 691-0494

**ESSEX COUNTY**
ESSEX-NEWARK LEGAL SERVICES
5 COMMERCE STREET, 2ND FLOOR
NEWARK, NJ 07102
(973) 624-4500

**GLOUCESTER COUNTY**
SOUTH JERSEY LEGAL SERVICES
47 NEWTON AVENUE
WOODBURY, NJ 08096
(856) 848-5360

**HUDSON COUNTY**
NORTHEAST NEW JERSEY LEGAL SERVICES
574 SUMMIT AVENUE, 2ND FLOOR
JERSEY CITY, NJ 07306
(201) 792-6363

**HUNTERDON COUNTY**
LEGAL SERVICES OF NORTHWEST JERSEY
82 PARK AVENUE
FLEMINGTON, NJ 08822
(908) 782-7979

**MERCER COUNTY**
CENTRAL JERSEY LEGAL SERVICES
198 WEST STATE STREET
TRENTON, NJ 08608
(609) 695-6249

**MIDDLESEX COUNTY**
CENTRAL JERSEY LEGAL SERVICES
317 GEORGE STREET, SUITE 201
NEW BRUNSWICK, NJ 08901
(732) 249-7600

313 STATE STREET, SUITE 308
PERTH AMBOY, NJ 08861
(732) 324-1613

47

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

**MONMOUTH COUNTY**
SOUTH JERSEY LEGAL SERVICES
303 WEST MAIN STREET, 3RD FLOOR
FREEHOLD, NJ 07728
(732) 414-6750

**MORRIS COUNTY**
LEGAL SERVICES OF NORTHWEST JERSEY
30 SCHUYLER PLACE, 2ND FLOOR
MORRISTOWN, NJ 07963
(973) 285-6911

**OCEAN COUNTY**
SOUTH JERSEY LEGAL SERVICES
215 MAIN STREET
TOMS RIVER, NJ 08753
(732) 608-7794

**PASSAIC COUNTY**
NORTHEAST NEW JERSEY LEGAL SERVICES
152 MARKET STREET, 6TH FLOOR
PATERSON, NJ 07505
(973) 523-2900

**SALEM COUNTY**
SOUTH JERSEY LEGAL SERVICES
415 W. LANDIS AVENUE, 2ND FLOOR
VINELAND, NJ 08360
(856) 691-0494

**SOMERSET COUNTY**
LEGAL SERVICES OF NORTHWEST JERSEY
90 EAST MAIN STREET, 3RD FLOOR
SOMERVILLE, NJ 08876
(908) 231-0840

**SUSSEX COUNTY**
LEGAL SERVICES OF NORTHWEST JERSEY
18 CHURCH STREET, SUITE 120
NEWTON, NJ 07860
(973) 383-7400

**UNION COUNTY**
CENTRAL JERSEY LEGAL SERVICES
60 PRINCE STREET
ELIZABETH, NJ 07208
(908) 354-4340

**WARREN COUNTY**
LEGAL SERVICES OF NORTHWEST JERSEY
91 FRONT STREET
BELVIDERE, NJ 07823
(908) 475-2010

## Additional Agencies and Organizations

The following is a list of public agencies and private organizations that offer informational services to landlords and/or tenants. It is provided solely for reference purposes and no endorsement is expressed or implied. Organizations interested in being included may contact the Department. The Department reserves the right to determine which organizations or agencies will be included.

If you are a tenant and need information, contact:

New Jersey Tenants Organization
96 Linwood Plaza #233
Fort Lee, NJ 07024
201-342-3775
https://www.njto.org

48

If you are a landlord or tenant  and need assistance, contact:

> NJ Apartment Association
> 104 Interchange Plaza, Suite 201
> Monroe Twp., NJ 08831
> (732) 992-0600
> https://njaa.com/

Information for landlords (costs for service), contact:

> Property Owners Association (POA)
> 1072 Madison Avenue
> Lakewood, NJ 08701
> (732) 780-1966        Fax (732) 780-1611
> https://www.poanj.org

For persons owning a mobile home trailer and renting the land in a mobile home park, contact:

> Manufactured Home Owners Association of New Jersey, Inc.
> P.O. Box 104
> Jackson, NJ 08527
> (732) 534-0085
> https://www.mhoanj.org

For owners of mobile home parks and landlords of rented trailers, contact:

> New Jersey Manufactured Housing Association
> 2741 Nottingham Way
> Trenton, NJ 08619
> (609) 588-9040
> https://njmha.org

For questions concerning mobile home construction, contact:

> NJ Department of Community Affairs
> Office of Code Services, Industrialized Buildings Unit
> Post Office Box 816

49

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

Trenton, NJ 08625-0816
(609) 984-7974

For mobile home parks designating themselves as adult parks only, contact:

Office of Fair Housing & Equal Opportunities
New York/New Jersey Regional Office
26 Federal Plaza, Room 3532
New York, NY 10278-0068
(212) 542-7519 or 1(800) 496-4294  TTY (212) 264-0927

For additional questions on mobile homes, contact a private attorney of your choice. For a referral to an attorney, contact your County Bar Association listed in your telephone directory or the Legal Services office in your county.

If you are being faced with an eviction action or condominium conversion, you may obtain information concerning the rights you possess under these circumstances by viewing the Eviction Law from:

https://www.state.nj.us/dca/divisions/codes/offices/landlord_tenant_information.html

If Spanish is your primary language and you need assistance, please contact the Center for Hispanic Policy, Research and Development (CHPRD). The CHPRD can provide a list of local resources available to the Hispanic Community. For additional information, the CHPRD can be contacted at:

Center for Hispanic Policy, Research and Development
PO Box 301
Trenton, NJ 08625-0301
(609) 943-4990
https://nj.gov/state/chprd.shtml

For information on housing codes and maintenance requirements for multiple dwellings (apartment buildings with 3 or more dwelling units) or to obtain a copy of the regulations for the maintenance of hotels and multiple dwellings you may write or call:
Department of Community Affairs
Bureau of Housing Inspection
P.O. Box 810
Trenton, NJ 08625-0810,
(609) 633-6210

50

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

If you are a tenant living in public housing subsidized by HUD and you would like to file a complaint regarding maintenance, discrimination, illegal practice or other resident concerns you may contact:

U.S. Department of Housing and Urban Development
One Newark Center
1085 Raymond Blvd., 13th Floor
Newark, New Jersey 07102-5260
(973) 622-7900
Multifamily Housing Complaint Line 1(800) 685-8470, TTY 1(800) 432-2209

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

## PET/ANIMAL ADDENDUM

This Pet/Animal Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

No animals are permitted at the premises at any time without our specific written permission and payment of all the applicable pet fees and deposits, including visiting animals.

We may, at our discretion, deny any animal if we believe it to be a threat to others. American Pit Bull Terrier, American Bully, American Staffordshire Terrier, Staffordshire Bull Terrier or any dogs that are cross breeds of or are related to such breeds are not permitted, unless prohibited by law. At our discretion, you may be required to have a licensed veterinarian verify your animal's weight and breed. We may also request a photograph of your animal for your resident file. Wild (not domesticated) animals and hybrids of wild animals, including wolf and coyote hybrids, are also prohibited, as are monkeys, snakes, ferrets, rabbits, pot belly pigs, and miniature horses.

You certify that, to the best of your knowledge, your animal is not dangerous or potentially dangerous and has not inflicted injury on or bitten a human or domestic animal, chased or approached a person upon the streets, sidewalks or any public grounds in a menacing fashion or apparent attitude of attack, nor does your animal have a tendency or disposition to attack unprovoked, to cause injury or otherwise threaten the safety of humans or domestic animals.

Your animal must be on a leash and under your control at all times when walking through the lobby of the building and throughout all other common areas in the building and in the community, including hallways, elevators and parking areas. Never leave your animal on the balcony or patio unsupervised or while you are away. If, at any time, we believe your animal is annoying, bothersome, a nuisance, or a threat to any person or animal, we may require you to remove it from the community. Your animal must be current on their vaccinations and have all required licenses and tags. You are required to comply with any local Sanitation and Health Department ordinance that prohibits animals in the pool area.

You are responsible for all costs we incur to repair damage, remove odors or treat for pests such as fleas and ticks. Any damage caused by your animal, including personal injury, or property damage either in the Premises or anywhere in the Community, is your responsibility. You agree to indemnify and hold Lessor harmless from and against any and all damages, claims, causes of action, liabilities, injuries suffered by persons, or damage to property of any kind, whatsoever, which arise out of, or are caused by your animal and any errors, omissions, or negligence in the supervision of your animal; including without limitation, injuries caused by the animal, bites and diseases caused or carried by the animal.

You are required to immediately pick up and properly dispose of all animal waste. Allowing an animal to relieve itself on a balcony or patio is strictly prohibited.

If the Community currently participates in a Dog Identification Program, or implements this program in the future, you agree to register your dog's DNA with the Community's leasing office prior to moving in, within ten days of acquiring a dog or within thirty days of the inception of a new program. And, you agree to pay any costs associated with registering your dog's DNA,

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

where applicable.  A DNA sample will be obtained by swabbing the inside of the dog's cheek. The sample will then be submitted to a lab for analysis and the resulting DNA profile will be registered with the DNA Registry. All un-scooped waste found on the Community grounds will be analyzed for DNA and, once the dog is identified, the owner of the dog will be charged for all costs related to clean-up and testing. Estimated costs are around $100 per incident, vary by location and are subject to change at any time.

If your Community currently utilizes the services of PetScreening.com (or other similar pet registration service), or your Community implements a pet registration service in the future, you agree to register your pet or pets with the pet registration service prior to moving in, within ten days of acquiring a pet, or within thirty days following the inception of the program. And, you agree to pay any costs associated with registering your pet with the pet registration service, where applicable. If you do not have a pet or pets, you must still visit the pet registration service and confirm that you have no pets.

You understand and acknowledge that you may be required to permanently remove your animal from the Premises if you do not comply with your responsibilities listed in this Agreement, including, but not limited to, failing to register your dog's DNA or failing to register your pet with the pet registration service. Any continued non-compliance with the requirements of this Agreement will be deemed a material default under the terms of the Lease and we will exercise all rights and remedies at law or in equity, consistent with the provisions of the Default Remedies paragraph in the Lease.

DocuSign Envelope ID: EB729DFB-91FA-4216-8258-C4A37E527A18

## SMARTHOME ADDENDUM
### (Participating Communities Only)

This Smart Home Addendum ("Addendum") is dated effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of (the "Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

The Premises have been or will be equipped with Smart Home technology which includes a keyless entry system. The keyless entry system may also provide the option of using a manual key to access the Premises. If you do not wish to access the Premises using the keyless entry system, please contact the Management Office.

Policies, procedures and instructions relating to the Smart Home technology will be provided to you. Your failure to comply with such policies, procedures and instructions will constitute a default under the terms of your Lease.

*© Equity Residential 2019.  All Rights Reserved.*