**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| The Towers at Portside Urban Renewal Company, L.L.C. and Equity Residential Management, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> The City of Jersey City, the City of Jersey City Rent Leveling Board, and the City of Jersey City Bureau of Rent Leveling <br><br> Defendants, and <br><br> Portside Towers East Tenant Association, Portside Towers West Tenant Association, Kevin Weller, Jessica Brann, Joel Rothfus, and Michele Hirsch, <br><br> Defendant-Intervenors. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br>  Civil Action No. 2:23-cv-22291-MCA-JRA |

**PLAINTIFFS' RESPONSE TO DEFENDANTS AND**
**DEFENDANT-INTERVENORS' STATEMENT OF FACTS**

Plaintiffs, The Towers at Portside Urban Renewal Company L.L.C. and Equity Residential Management, LLC (together, "Portside"), pursuant to Local Rule 56.1, hereby submit this Response to Defendants' and Defendant-Intervenors' Statement of Facts in support of their opposition to Plaintiffs' Motion for Summary Judgment.

1. On January 24, 1995, the Construction Official for Jersey City, Michael J. Regan, issued a "Certificate of Continued Occupancy." ECF No. 171-12.

**RESPONSE:** Undisputed.

2. On July 18, 1996, Portside Apartments Urban Renewal Company, L.L.C., executed the Master Deed of Portside, a Condominium. Ex. A.

**RESPONSE:** Undisputed.

3.      The preamble to the July 18, 1996 deed provides that it was "intended to establish the condominium form of ownership for the Property described in Schedule A aforesaid, as shown on schedules B, C and D, to be known as Portside, A Condominium (herein after the "Condominium")." *Id.* at p. 4.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Paragraph 3 accurately quotes a portion of the July 18, 1996 Master Deed ("1996 Master Deed"). (*See* Dkt. 173-12 at 4.) However, Portside disputes Paragraph 3 to the extent it mischaracterizes the document as a whole or asks the Court to draw a legal consequence from the quoted language. Other language in the 1996 Master Deed repeatedly confirms that the 527 apartments within 100 Warren and 155 Washington will be leased to tenants, rather than owned as condominiums. Article 3 of the 1996 Master Deed, providing a "General Description" of the Portside Towers development, states:

> 3.1    The Property will consist of 5.36 acres +/-situated along Washington Avenue and Warren and Dudley Streets in the City of Jersey City, Hudson County, on which have been or will be built three (3) Buildings. One Building shall be a common area parking garage and shall be attached to the remaining two Buildings. The remaining two Buildings, **Tower 1 and Tower 2, shall be residential high-rise towers each of which will house separate residential Apartments, which Apartments will be leased to Tenants.** Residential Unit Tower 1 shall consist of the entire Tower 1, shall contain 295 residential Apartments, and will be constructed after the recording of this Master Deed. Residential Unit Tower 2 shall consist of the entire Tower 2 excluding Retail Unit A and shall contain 232 residential Apartments.

(*Id.* at 10 (emphasis added).)  Article 4 further confirms that the multiple dwelling units within 100 Warren and 155 Washington will be leased to tenants:

> 4.1(b)  Residential Unit Tower 1 includes **295 residential Apartments for rent to tenants**.
>
> […]

> 4.2(b)  Residential Unit Tower 2 includes **232 residential Apartments for rent to Tenants**.

(*Id.* at 12-13 (emphasis added).) The 1996 Master Deed refers to Portside Towers as a "condominium" only because the document reflects that each of the two towers, plus the retail space on the property, could—in their entirety—be owned "in a condominium form of ownership." (*Id.* at 4.) Indeed, a "Unit" is defined in the 1996 Master Deed as "any of the three Units within the Property," including: "(i) Residential Unit Tower 1" (i.e., 155 Washington); "(ii) Residential Unit Tower 2" (i.e., 100 Warren); and "(iii) Retail Unit A" (i.e., commercial retail spaces available for lease on the property). (*Id.* at 9.) "Apartment," meanwhile, is defined as "a residential dwelling within a Unit."  (*Id.* at 6.) Thus, the terms of the Master Deed, read together, confirm that the 527 Apartments housed within 100 Warren and 155 Washington are and were rental properties. (*See id.* at 6, 10, 12-13.)

4.      The preamble also describes that the Portside Condominium Owners' Association, Inc. "has been or is about to be established as the condominium association to have the responsibility for the administration, operation and management of the Condominiums, and the improvements intended for the common use and enjoyment of the residents of the Condominium." *Id.*

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Paragraph 4 accurately quotes a portion of the 1996 Master Deed. (*See id.* at 4.) However, Portside disputes Paragraph 4 to the extent it mischaracterizes the document as a whole or asks the Court to draw a legal consequence from the quoted language. *See* Portside's response to Paragraph 3, above.

5.      While DaMattheis/Waterview Associates was the owner and developer of 100 Warren Street, (PSOF ¶ 22), a different owner, Portside Apartments Urban Renewal developed 155 Washington. ECF No. 171-13.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that the 100 Warren Certificate of Occupancy identifies DeMatteis/Waterview Associates as the owner in fee, or that the 155 Washington certificate identifies Portside Apartments Urban Renewal in the owner/fee/occupant field. (*See* Dkt. 171-4; Dkt. 171-13.) However, Portside disputes Paragraph 5 to the extent it asserts that those certificate entries establish that 100 Warren and 155 Washington were separate developments for the issues presented here. The record instead describes Portside Towers as a two-phased development on Block 60, Lot 34, with 100 Warren as the completed first phase and 155 Washington as the second phase and identifies the buildings as physically connected towers of the same apartment community. (*See* Dkt. 171-2 ¶¶13-14, 21-27, 32-36, 55-59; Dkt. 171-6 at P2, P5, P25-P26, P28-P29; Dkt. 171-16 at 4-7; Dkt. 171-26 ¶¶3-5.)

6.    A July 19, 1996 mortgage between Portside Apartments Urban Renewal Company, L.L.C. and Northwestern Mutual Life Insurance Company describes the land securing the mortgage as "Residential Unit Tower 2 and Retail Unit A situate in Portside, a Condominium, established pursuant to N.J.S.A. 46:8B-1 et seq., located on a portion of Lot 34, in Block 60, as shown on the current City of Jersey City Tax Assessment Map, in the County of Hudson, State of New Jersey." *Id.* at p. 23. Ex. B at 23.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Paragraph 6 accurately quotes from the July 19, 1996 Northwestern Mutual Life Insurance Company Mortgage (the "Northwestern Mutual Mortgage"). (*See* Dkt. 173-13 at 23.) However, Portside disputes Paragraph 6 to the extent it mischaracterizes the document as a whole or asks the Court to draw a legal consequence from the quoted language. The Northwestern Mutual Mortgage confirms that the 527 apartments within 100 Warren and 155 Washington were rental properties.

Exhibit A to the document expressly incorporates the provisions of the 1996 Master Deed, which makes clear that the 527 apartments in 100 Warren and 155 Washington would be leased to tenants. (*Id.*; *see also* Portside's response to Paragraph 3, above.)  In addition, the document lists "an Absolute Assignment of Leases and Rents ... assigning to Mortgagee all leases and rents from the East Tower," as one of the items of "Additional Collateral" (Dkt. 173-13 at 14-15), further confirming that the multiple dwellings within Portside Towers were leased for rent.

7.      A July 19, 1996 mortgage between Portside Apartments Urban Renewal Company, L.L.C. and Fleet Bank, N.A. describes the land securing the mortgage as "RESIDENTIAL UNIT TOWER 1 situate in PORTSIDE, A, CONDOMINIUM, established in accordance with N.J.S.A. 46:8B-1, et seq., together with an undivided 47.5% interest in the General Common Elements of said Condominium appurtenant to the aforesaid unit." Ex. C at 58.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Paragraph 7 accurately quotes from the July 19, 1996 Fleet Bank, N.A. Mortgage (the "Fleet Mortgage"). (*See* Dkt. 173-14 at 58.) However, Portside disputes Paragraph 7 to the extent it mischaracterizes the document as a whole or asks the Court to draw a legal consequence from the quoted language. The Fleet Mortgage confirms that the 527 apartments within 100 Warren and 155 Washington were rental properties. Schedule A to the document expressly incorporates the provisions of the 1996 Master Deed, which makes clear that the 527 apartments in 100 Warren and 155 Washington would be leased to tenants. (*Id.*; *see also* Portside's response to Paragraph 3, above.)  In addition, the Fleet Mortgage states that the "Leases of the Mortgaged Property"—i.e., 155 Washington— and "all Rents accruing therefrom are hereby transferred and assigned to the Mortgagee" (Dkt. 173-14 at 25), further confirming that the multiple dwellings within Portside Towers were leased for rent.

5

8.      A June 12, 1998 deed between Portside Apartments Urban Renewal Company, L.L.C. and The Towers at Portside Urban Renewal Company, L.L.C. includes the following legal description of the land transferred:

Residential Unit Tower I and Residential Unit Tower 2 and Retail Unit A situate in "Portside, a Condominium", established in accordance with the N.J.S.A. 46:8B-1 et seq., together with an undivided 47.5%: 47.5% and 5.0% respective interest in the General Common Elements of said condominium appurtenant to the aforesaid units in accordance with and subject to the terms, conditions, covenants, and other provisions as set forth in the current Master Deed of Portside, a Condominium, dated July 18, 1996 and recorded July 19, 1996 in the Hudson County Register's Office in Deed Book 5018 page 165, as same may now or hereafter be lawfully amended.

THE land area of the property comprising "Portside, a Condominium" consists of all the real property located in the City of Jersey City, County of Hudson, State of New Jersey, and more particularly described as follows:

Ex. D at 6.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Paragraph 8 accurately quotes from the June 12, 1998 deed between Portside Apartments Urban Renewal Company, L.L.C. and The Towers at Portside Urban Renewal Company, L.L.C (the "1998 Deed"). (*See* Dkt. 173-15 at 6.) However, Portside disputes Paragraph 8 to the extent it mischaracterizes the document as a whole or asks the Court to draw a legal consequence from the quoted language. The 1998 Deed confirms that the 527 apartments within 100 Warren and 155 Washington were rental properties. Exhibit A to the document expressly incorporates the provisions of the 1996

6

Master Deed, which makes clear that the 527 apartments in 100 Warren and 155 Washington would be leased to tenants. (*Id.*; *see also* Portside's response to Paragraph 3, above.)

9.      The Rent Control Addenda that Plaintiffs provided to tenants with leases for the Buildings did not provide the information required by N.J.S.A. 2A:42-84.3. For example, a Rent Control Addendum included with a September 2011 lease for 100 Warren provides:

> Pursuant to N.J.S.A. 2A:42-84.3, we hereby notify you that the Premises and the Community are exempt from the provisions of any rent control ordinances instituted by Jersey City or West New York, as the case may be, and said Premises and Community will be exempt from any future rent control, rent stabilization or rent leveling ordinance instituted by these municipalities for a period of thirty years following the completion of construction at the Community.

Ex. E at 13. That lease defines "the Premises" as 100 Warren Street and the Community as "Portside Towers." That lease does not otherwise identify when "completion of construction at the Community" occurred.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Exhibit E contains the quoted Rent Control Addendum language, that the lease identifies the Premises as 100 Warren Street and the Community as Portside Towers, or that the lease does not state a separate calendar date for completion of construction. (*See* Dkt. 173-16 at 1, 13.) However, Portside disputes Paragraph 9 to the extent it asserts a statutory deficiency or asks the Court to draw a legal consequence from the quoted language. The Bureau found that Portside's Rent Control Addendum provided the tenant notice required by the exemption statute, and the Board did not decide tenant-notice sufficiency. (*See* Dkt. 171-2 ¶¶52, 78; Dkt. 171-3 at 8; Dkt. 171-15 at 3; Dkt. 171-16 at 3.)

7

10.    A March 2020 lease for 155 Washington contains an identical Rent Control Addendum. Ex. F at 23.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Exhibit F contains the quoted Rent Control Addendum language and identifies the Community as Portside Towers. (*See* Dkt. 173-17 at 2, 23.) However, Portside disputes Paragraph 10 to the extent it asserts that the language is legally deficient or material to the issues before the Court. The Bureau found that the Rent Control Addendum satisfied the tenant-notice requirement, and the Board declined to decide tenant-notice sufficiency. (*See* Dkt. 171-2 ¶¶52, 78; Dkt. 171-3 at 8; Dkt. 171-16 at 3.)

11.    A June 2022 lease for 100 Warren contains an identical Rent Control Addendum. Ex. G at 24.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Exhibit G contains the quoted Rent Control Addendum language and identifies the Community as Portside Towers. (*See* Dkt. 173-18 at 2, 24.) However, Portside disputes Paragraph 11 to the extent it asserts that the language is legally deficient or material to the issues before the Court. The Bureau found that the Rent Control Addendum satisfied the tenant-notice requirement, and the Board declined to decide tenant-notice sufficiency. (*See* Dkt. 171-2 ¶¶52, 78; Dkt. 171-3 at 8; Dkt. 171-15 at 3.)

12.    An October 2022 lease for 100 Warren contains a modified Rent Control Addendum, stating that:

Pursuant to N.J.S.A. 2A:42-84.3, we hereby notify you that the Premises and the Community are exempt from the provisions of any rent control ordinances instituted by Jersey City, Hoboken or West New York, as the case may be, and said Premises and Community will be exempt from any future rent control, rent stabilization or rent leveling ordinance instituted by these municipalities for a period of (i) the amortization of any initial

8

mortgage loan obtained for the Community; or (ii) thirty years following the completion of construction at the Community, whichever is less.

Ex. H at 25. The October 2022 lease does not include any information identifying the amortization period of any initial mortgage or when construction at the community was completed. *Id.*

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Exhibit H contains the quoted Rent Control Addendum language, identifies the Community as Portside Towers, and does not state a specific amortization period or a separate calendar completion date. (*See* Dkt. 173-19 at 2, 25.) However, Portside disputes Paragraph 12 to the extent it asserts a statutory deficiency or legal consequence. The Bureau found that the absence of initial mortgage information was not fatal to Portside's exemption claim, and the Board did not base its decision on the sufficiency of any notice of exemption to tenants. (*See* Dkt. 171-2 ¶¶72-78; Dkt. 171-3 at 8; Dkt. 171-15 at 6; Dkt. 171-16 at 7.)

13.     In August 2022, a resident of 100 Warren received his lease renewal that included a 16% rent increase. Ex. I, September 2022 email chain, at 7. The resident questioned whether the increase violated Jersey City's Rent Control Ordinance and noted that even if 100 Warren ever qualified for an exemption, the exemption expired on August 25, 2022. *Id.* Although Plaintiffs now concede that any exemption 100 Warren ever had expired in August 2022, as of September 1, 2022 they maintained that "100 Warren is, indeed, exempt from Jersey City rent control." *Id.* at 6.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that Exhibit I includes the resident statements quoted in Paragraph 13 and a September 1, 2022 email stating that "100 Warren is, indeed, exempt from Jersey City rent control." (Dkt. 173-20 at 6-7.) Portside also does not dispute that its Statement of Material Facts states that the Bureau held the State

Exemption applied to 100 Warren through August 24, 2022. (Dkt. 171-2 ¶61.) However, Portside

disputes Paragraph 13 to the extent it characterizes Portside as conceding the exemption for 100

Warren expired in August 2022, or asserts that the September 2022 email chain establishes any

legal or material consequence beyond what the emails state.

14.     None of the leases described above included information concerning the rent paid

by the prior tenant. Exs. E - H.

**RESPONSE:** Undisputed in part, disputed in part. Portside does not dispute that the Rent

Control Addenda cited in Paragraphs 9 through 12 do not state the rent paid by any prior tenant.

However, Portside disputes Paragraph 14 to the extent it asserts that the language is legally

deficient or material to the issues before the Court. The Bureau found that the Rent Control

Addendum satisfied the tenant-notice requirement, and the Board declined to decide tenant-notice

sufficiency. (*See* Dkt. 171-2 ¶¶52, 78; Dkt. 171-3 at 8; Dkt. 171-15 at 3; Dkt. 171-16 at 3.)

Dated:    May 29, 2026                          Respectfully submitted,

                                                The Towers at Portside Urban Renewal Company
                                                L.L.C. and Equity Residential Management, LLC

                                                By:    /s/ *Derek D. Reed*

                                                *Attorney for Plaintiffs The Towers at Portside Urban
                                                Renewal Company L.L.C. and Equity Residential
                                                Management, LLC*

                                                Derek D. Reed, Esq. (Attorney ID # 038062003)
                                                Jeffrey Plaza, Esq.
                                                EHRLICH, PETRIELLO, GUDIN,
                                                PLAZA & REED
                                                A Professional Corporation
                                                60 Park Place, 18th Floor
                                                Newark, New Jersey 07102
                                                (973) 643-0040

                                                Terri L. Mascherin (*pro hac vice*)
                                                Andrew W. Vail (*pro hac vice*)

10

Daniel J. Weiss (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois  60654
Phone:  (312) 222-9350
Facsimile:  (312) 840-7375

*Attorneys for Plaintiffs*

11